**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC., | |
| and | |
| ROCHE SEQUENCING SOLUTIONS, INC., | C.A. No. 22-1597-CJB |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| PARSE BIOSCIENCES, INC., | *EXHIBIT N FILED UNDER SEAL* |
| Defendant. | |

PARSE BIOSCIENCES, INC.,

   and

UNIVERSITY OF WASHINGTON,

   Counterclaim Plaintiffs,

   v.

SCALE BIOSCIENCES, INC.,

   Counterclaim Defendant.

## PARSE BIOSCIENCES, INC.'S ANSWER TO THE FIRST SUPPLEMENTAL COMPLAINT, SECOND AMENDED PATENT COUNTERCLAIMS OF PARSE BIOSCIENCES, INC. AND THE UNIVERSITY OF WASHINGTON, AND TORT COUNTERCLAIMS OF PARSE BIOSCIENCES, INC.

### PARSE'S ANSWER TO THE FIRST SUPPLEMENTAL COMPLAINT

Defendant/Counterclaimant Parse Biosciences, Inc. ("Parse"), by and through its attorneys, hereby responds to the numbered paragraphs in the First Supplemental Complaint ("First Supplemental Complaint") filed by Plaintiffs Scale Biosciences, Inc. ("Scale") and Roche Sequencing Solutions, Inc. ("Roche") as follows:

### NATURE OF THE ACTION

1.    Paragraph 1 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse admits that the First Supplemental Complaint purports to allege

infringement of United States Patent Nos. 10,626,442 ("'442 Patent"), 10,982,256 ("'256 Patent"), 11,512,341 ("'341 Patent"), and 11,634,752 (the "'752 Patent") (collectively the "Asserted Scale Patents") under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.  To the extent Plaintiffs purport to bring an action subject to the Declaratory Judgment Act, Title 28, United States Code, including §§ 2201, 2202, it is denied.

## THE PARTIES

2.      Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2.

3.      Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3.

4.      Parse admits that it is a Delaware corporation.  Parse denies any remaining allegations in Paragraph 4.  Parse's principal place of business is 700 Dexter Avenue, Suite 600, Seattle, Washington 98109.

## JURISDICTION AND VENUE

5.      Paragraph 5 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse admits that the First Supplemental Complaint purports to allege a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.  To the extent Plaintiffs purport to bring an action subject to the Declaratory Judgment Act, Title 28, United States Code, including §§ 2201, 2202, it is denied.

6.      Admitted.

7.      Admitted.

8.      Admitted.

## **BACKGROUND**

9.      Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9.

10.     Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10.

11.     Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11.

12.     Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12.

13.     Parse admits that Scale advertises products on its website that purport to have at least some of the features described in Paragraph 13.  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of any remaining allegations in Paragraph 13.

14.     Parse admits that Scale advertises on its website products that purport to have the characteristics described in Paragraph 14.  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of any remaining allegations in Paragraph 14.

15.     Parse admits that it was formerly known as "Split Biosciences" or "Split Bio." Parse further admits that it offers single-cell genomics products, including a line of single-cell gene expression products, initially marketed under the name "Single Cell Whole Transcriptome" and more recently commercialized under the designation "Evercode Whole Transcriptome" or "Evercode WT," which achieves combinatorial barcoding steps within the cell itself.  Parse further admits that it has marketed its Evercode WT kits in two versions—v1 and v2—and has offered each version in three configurations designed to process different numbers of cells and samples— Evercode WT Mini, Evercode WT, and Evercode WT Mega.  Parse denies any remaining allegations in Paragraph 15.

16.     Parse admits that it began offering its Evercode TCR Products in February 2023. Parse denies any remaining allegations in Paragraph 16, including all characterizations of the cited material.

17.     Parse admits that it has offered Gene Capture and CRISPR Detect as add-on products/services to its Evercode WT Products and Evercode TCR Products.  Parse further admits that it began selling the Gene Capture product in February 2023 and the CRISPR Detect product in June 2023.  Parse further admits that the cited webpage contains the excerpted images.  Parse denies any remaining allegations in Paragraph 17, including all characterizations of the cited material.

18.     Parse admits that its Evercode WT Products and Evercode TCR Products can be used together (with or without the Gene Capture or CRISPR Detect products) with Parse's Evercode Cell Fixation and Evercode Nuclei Fixation products. Parse further admits that the cited webpage contains the excerpted image.  Parse denies any remaining allegations in Paragraph 18, including all characterizations of the cited material.

19.     Parse admits that the First Supplemental Complaint purports to define the terms "Accused Products."  Parse denies any remaining allegations in Paragraph 19.

20.     Parse admits that it provides certain Accused Products—including reagents, other consumables, and data analysis software—to its customers.  Parse admits that its technology is based on a split-pool combinatorial barcoding method called SPLiT-seq.  Parse denies any remaining allegations in Paragraph 20, including all characterizations of the cited material.

21.     Parse admits that Parse commercially launched a configuration that purports to enable users to process up to 100,000 single cells and 48 samples.  Parse admits that in late 2021, Parse began offering additional configurations, including its Evercode WT Mini kit that purports

to enable users to process up to 10,000 single cells and its Evercode WT Mega kit that purports to enable users to process up to one million single cells.  Parse further states that the cited webpages speak for themselves.  Parse notes that the URL https://www.parsebiosciences.com/products/evercode-whole-transcriptomemega leads to a webpage that states "Page Not Found."  The following URL relates to Evercode™ WT Mega: https://www.parsebiosciences.com/products/evercode-whole-transcriptome-mega.  Parse denies any remaining allegations in Paragraph 21, including all characterizations of the cited material.

22.     Parse admits that it commercially launched its Evercode TCR Products on or about February 7, 2023, which enable users to measure whole transcriptomes and paired TCR sequences in up to one million cells.  Parse denies any remaining allegations in Paragraph 22, including all characterizations of the cited material.

23.     Parse admits that it has stated that its Evercode WT Products and Evercode TCR are used to convert single cells or nuclei into individualized reaction compartments and that the cells or nuclei can be paired with unique cellular barcodes through a nonautomated method of pooling, tagging, re-pooling, and re-tagging.  Parse further states that the cited webpage speaks for itself.  Parse denies any remaining allegations in Paragraph 23, including all characterizations of the cited material.

24.     Parse admits that it has offered products whose barcode tagging allows a user to track a molecule of interest and the cell of origin of that molecule, and as a result detect and quantify the relative level of the molecule of interest.  Parse further admits that the cited webpage contains the excerpted image.  Parse denies any remaining allegations in Paragraph 24, including all characterizations of the cited material.

25.     Admitted.

26.     Admitted.

## THE ASSERTED SCALE PATENTS

27.     Parse admits that Exhibit A to the First Supplemental Complaint appears to be a copy of the '442 Patent.  Parse further admits that on April 21, 2020, the '442 Patent, titled "Methods of Identifying Multiple Epitopes in Cells," was issued by the USPTO.  Parse further admits that the face of the '442 Patent states "Assignee: Roche Sequencing Solutions, Inc." and lists "Appl. No.: 15/597,917" as well as "Continuation of application No. 13/981,711, filed as application No. PCT/US2012/023411 on Jan. 31, 2012" and "Provisional application No. 61/437,854, filed on Jan. 31, 2011, provisional application No. 61/444,067, filed on Feb. 17, 2011."  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that Roche Sequencing Solutions, Inc. ("RSS") is the owner by assignment of the '442 Patent.  Parse denies any remaining allegations in Paragraph 27.

28.     Parse admits that Exhibit B to the First Supplemental Complaint appears to be a copy of the '256 Patent.  Parse further admits that on April 20, 2021, the '256 Patent, titled "Methods of Identifying Multiple Epitopes in Cells," was issued by the USPTO.  Parse further admits that the face of the '256 Patent states "Assignee: Roche Sequencing Solutions, Inc." and lists "Appl. No. 16/147,250" as well as "Continuation of application No. 13/981,711, filed as application No. PCT/US2012/023411 on Jan. 31, 2012" and "Provisional application No. 61/444,067, filed on Feb. 17, 2011, provisional application No. 61/437,854, filed on Jan. 31, 2011."  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that RSS is the owner by assignment of the '256 Patent.  Parse denies any remaining allegations in Paragraph 28.

29.     Parse admits that Exhibit C to the First Supplemental Complaint appears to be a copy of the '341 Patent.  Parse further admits that on November 29, 2022, the '341 Patent, titled "Methods of Identifying Multiple Epitopes in Cells," was issued by the USPTO.  Parse further admits that the face of the '341 Patent states "Assignee: Roche Sequencing Solutions, Inc." and lists "Appl. No. 17/870,641" as well as "Continuation of application No. 16/795,203, filed on Feb. 19, 2020, which is a continuation of application No. 16/147,250, filed on Sep. 28, 2018, . . . which is a continuation of application No. 13/981,711, filed as application No. PCT/US2012/023411 on Jan. 31, 2012" and "Provisional application No. 61/444,067, filed on Feb. 17, 2011, provisional application No. 61/437,854, filed on Jan. 31, 2011."  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that RSS is the owner by assignment of the '341 Patent.  Parse denies any remaining allegations in Paragraph 29.

30.     Parse admits that Exhibit D to the First Supplemental Complaint appears to be a copy of the '752 Patent.  Parse further admits that on April 25, 2023, the '752 Patent, titled "Kit for Split-Pool Barcoding Target Molecules that Are in or on Cells or Cell Organelles," was issued by the USPTO.  Parse further admits that the face of the '752 Patent states "Assignee: Roche Sequencing Solutions, Inc." and lists "Appl. No. 17/951,003" as well as "Continuation of application No. 17/870,641, filed on Jul. 21, 2022, . . . which is a continuation of application No. 16/795,203, filed on Feb. 19, 2020, now abandoned, which is a continuation of application No. 16/147,250, filed on Sep. 28, 2018, . . . which is a continuation of application No. 13/981,711, filed as application No. PCT/US2012/023411 on Jan. 31, 2012" and "Provisional application No. 61/444,067, filed on Feb. 17, 2011, provisional application No. 61/437,854, filed on Jan. 31, 2011."  Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity

of the allegation that RSS is the owner by assignment of the '752 Patent.  Parse denies any remaining allegations in Paragraph 30.

31.     Parse admits that it received a letter from Scale, that the letter is dated June 10, 2021, and that the letter states that it "appears" that use of the Single Cell Whole Transcriptome Kit is covered by claims of the '256 Patent.  Parse denies any remaining allegations in Paragraph 31.

32.     Parse admits that its counsel received a letter from Scale's counsel dated March 1, 2022, and that the letter states that claims of the '442 Patent cover the use of Parse's Single Cell Whole Transcriptome Kit.  Parse denies any remaining allegations in Paragraph 32.

33.     Parse admits that it had knowledge of the '341 Patent at least as of the date it received service of the original Complaint with its appended exhibits.  Parse denies any remaining allegations in Paragraph 33.

## <u>COUNT I</u>

34.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

35.     Parse admits that one or more Parse officer, employee, or agent has used one or more of the Accused Products in the United States for purposes of customer support and training, product development, quality control, and comparative testing.  Parse denies any remaining allegations in Paragraph 35.

36.     Parse admits that claim 1 of the '442 Patent contains the quoted language.

37.     Paragraph 37 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 37 is denied.

38.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language.  Parse denies any remaining allegations in Paragraph 38, including all characterizations of the cited material.

39.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 39, including all characterizations of the cited material.

40.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 40, including all characterizations of the cited material.

41.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 41, including all characterizations of the cited material.

42.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 42, including all characterizations of the cited material.

43.     Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 43, including all characterizations of the cited material.

44.    Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 44, including all characterizations of the cited material.

45.    Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 45, including all characterizations of the cited material.

46.    Parse admits that claim 1 of the '442 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 46, including all characterizations of the cited material.

47.    Paragraph 47 contains a legal conclusion to which no answer is required.  To the extent an answer is required, Paragraph 47 is denied.

48.    Paragraph 48 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 48 is denied.

49.    Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 49.

50.    Denied.

51.    Paragraph 51 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 51 is denied.

## COUNT II

52.    Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

53.    Parse admits that it had knowledge of the '442 Patent upon Parse's receipt of the letter from Scale's counsel dated March 1, 2022, referencing the '442 Patent.  Parse denies any remaining allegations in Paragraph 53.

54.    Paragraph 54 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 54.

55.    Paragraph 55 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 55 is denied.

56.    Paragraph 56 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 56 is denied.

57.    Paragraph 57 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 57 is denied.

58.    Paragraph 58 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 58 is denied.

59.    Paragraph 59 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 59 is denied.

60.    Paragraph 60 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 60 is denied.

61.    Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 61.

62.    Denied.

63.    Paragraph 63 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 63 is denied.

## COUNT III

64.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

65.     Paragraph 65 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 65 is denied.

66.     Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that Plaintiffs will seek monetary damages in the future.  Parse denies any remaining allegations in Paragraph 66.

67.     Denied.

## COUNT IV

68.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

69.     Parse admits that claim 1 of the '256 Patent contains the quoted language.

70.     Paragraph 70 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 70 is denied.

71.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language.  Parse denies any remaining allegations in Paragraph 71, including all characterizations of the cited material.

72.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 72, including all characterizations of the cited material.

73.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse

denies any remaining allegations in Paragraph 73, including all characterizations of the cited material.

74.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 74, including all characterizations of the cited material.

75.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 75, including all characterizations of the cited material.

76.     Parse admits that claim 1 of the '256 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language.  Parse denies any remaining allegations in Paragraph 76, including all characterizations of the cited material.

77.     Paragraph 77 contains a legal conclusion to which no answer is required.  To the extent an answer is required, Paragraph 77 is denied.

78.     Paragraph 78 contains a legal conclusion to which no answer is required.  To the extent an answer is required, Paragraph 78 is denied.

79.     Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 79.

80.     Denied.

81.     Paragraph 81 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 81 is denied.

**COUNT V**

82.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

83.     Parse admits that it had knowledge of the '256 Patent upon Parse's receipt of the letter from Scale dated June 10, 2021, referencing the '256 Patent.  Parse denies any remaining allegations in Paragraph 83.

84.     Paragraph 84 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 84.

85.     Paragraph 85 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 85 is denied.

86.     Paragraph 86 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 86 is denied.

87.     Paragraph 87 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 87 is denied.

88.     Paragraph 88 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 88 is denied.

89.     Paragraph 89 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 89 is denied.

90.     Paragraph 90 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 90 is denied.

91.     Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 91.

92.     Denied.

93.     Paragraph 93 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 93 is denied.

## COUNT VI

94.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

95.     Paragraph 95 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 95 is denied.

96.     Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that Plaintiffs will seek monetary damages in the future.  Parse denies any remaining allegations in Paragraph 96.

97.     Denied.

## COUNT VII

98.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

99.     Parse admits that claim 1 of the '341 Patent contains the quoted language.

100.    Paragraph 100 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 100 is denied.

101.    Parse admits that claim 1 of the '341 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language.  Parse denies any remaining allegations in Paragraph 101, including all characterizations of the cited material.

102.    Parse admits that claim 1 of the '341 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 102, including all characterizations of the cited material.

103.     Parse admits that claim 1 of the '341 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 103, including all characterizations of the cited material.

104.     Parse admits that claim 1 of the '341 Patent contains the quoted language.  Parse further admits that the cited webpages contain the quoted language and excerpted images.  Parse denies any remaining allegations in Paragraph 104, including all characterizations of the cited material.

105.     Paragraph 105 contains a legal conclusion to which no answer is required.  To the extent an answer is required, Paragraph 105 is denied.

106.     Paragraph 106 contains a legal conclusion to which no answer is required.  To the extent an answer is required, Paragraph 106 is denied.

107.     Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 107.

108.     Denied.

109.     Paragraph 109 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 109 is denied.

## <u>COUNT VIII</u>

110.     Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

111.     Parse admits that it is aware of the '442 Patent, the '256 Patent, and the '341 Patent.  Parse denies any remaining allegations in Paragraph 111.

112.    Parse admits that it had knowledge of the '341 Patent at least as of the date it received service of the original Complaint with its appended exhibits.  Parse denies any remaining allegations in Paragraph 112.

113.    Paragraph 113 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 113 is denied.

114.    Paragraph 114 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 114 is denied.

115.    Paragraph 115 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 115 is denied.

116.    Paragraph 116 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 116 is denied.

117.    Paragraph 117 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 117 is denied.

118.    Paragraph 118 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 118 is denied.

119.    Paragraph 119 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 119 is denied.

120.    Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 120.

121.    Denied.

122.    Paragraph 122 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 122 is denied.

## COUNT IX

123.    Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

124.    Parse admits that it had knowledge of the '341 Patent at least as of the date it received service of the original Complaint with its appended exhibits.

125.    Paragraph 125 contains legal conclusions to which no answer is required. To the extent an answer is required, Paragraph 125 is denied.

126.    Parse lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that Plaintiffs will seek monetary damages in the future.  Parse denies any remaining allegations in Paragraph 126.

127.    Denied.

## COUNT X

128.    Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

129.    Parse admits that claim 1 of the '752 Patent contains the quoted language.

130.    Paragraph 130 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 130 is denied.

131.    Paragraph 131 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 131 is denied.

132.    Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 132, including all characterizations of the cited material.

133.    Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 133, including all characterizations of the cited material.

134.     Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 134, including all characterizations of the cited material.

135.     Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 135, including all characterizations of the cited material.

136.     Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 136, including all characterizations of the cited material.

137.     Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 137, including all characterizations of the cited material.

138.     Parse admits that claim 1 of the '752 Patent contains the quoted language.  Parse states that the cited materials speak for themselves.  Parse denies any remaining allegations in Paragraph 138, including all characterizations of the cited material.

139.     Paragraph 139 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 139 is denied.

140.     Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 140.

141.     Denied.

142.     Paragraph 142 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 142 is denied.

## **COUNT XI**

143.    Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

144.    Parse admits that it is aware of the '442 Patent, the '256 Patent, the '341 Patent, and the '752 Patent.  Parse denies any remaining allegations in Paragraph 144.

145.    Paragraph 145 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 145.

146.    Paragraph 146 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 146.

147.    Paragraph 147 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 147.

148.    Paragraph 148 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 148.

149.    Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 149.

150.    Denied.

151.    Paragraph 151 contains legal conclusions to which no answer is required.  To the extent an answer is required, Parse denies the allegations in Paragraph 151.

## COUNT XII

152.    Parse's responses to the foregoing paragraphs in the First Supplemental Complaint are incorporated by reference herein and restated as if restated and set forth in full.

153.    Parse admits that the '752 Patent is asserted in the First Supplemental Complaint.  Parse denies any remaining allegations in Paragraph 153.

154.    Paragraph 154 contains legal conclusions to which no answer is required.  To the extent an answer is required, Paragraph 154 is denied.

155.    Parse admits that the First Supplemental Complaint states that Plaintiffs seek monetary damages.  Parse denies any remaining allegations in Paragraph 155.

156.    Denied.

## GENERAL DENIAL

Parse denies any remaining allegations not expressly admitted or responded to herein.

## RESPONSE TO PLAINTIFFS' REQUEST FOR RELIEF

Parse denies that Plaintiffs are entitled to the relief requested in Paragraphs a.-f. of the Request for Relief or to any relief whatsoever.

## DEMAND FOR JURY TRIAL

Parse admits that the First Supplemental Complaint demands a jury trial.  Parse likewise demands and requests a jury trial on all issues so triable.

## DEFENSES

## FIRST DEFENSE
## (INVALIDITY)

The Asserted Scale Patents are invalid for failure to meet one or more of the conditions of patentability as set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or pursuant to common law and/or equitable doctrines.

## SECOND DEFENSE
## (NON-INFRINGEMENT)

Parse has not infringed and does not infringe any valid and enforceable claim of the Asserted Scale Patents directly or indirectly, either literally, or under the doctrine of equivalents.

## THIRD DEFENSE
## (NO EXCEPTIONAL CASE)

This suit is not an exceptional case under 35 U.S.C. § 285.

## FOURTH DEFENSE

21

**(UNCLEAN HANDS)**

Scale has unclean hands because it has misrepresented the scope of its patent rights to the market.

**FIFTH DEFENSE**
**(PATENT MISUSE)**

Scale has engaged in patent misuse by misrepresenting the scope of its patent rights to the market.

**RESERVATION OF DEFENSES**

Parse reserves the right to assert additional defenses based on information learned or obtained in the course of this action.

**SECOND AMENDED PATENT COUNTERCLAIMS OF PARSE AND UW AND TORT COUNTERCLAIMS OF PARSE**

Parse Biosciences, Inc. ("Parse") and the University of Washington ("UW") (collectively "Counterclaimants") allege the following Second Amended Patent Counterclaims against Scale Biosciences, Inc. ("Scale") and Parse asserts the following Tort Counterclaims against Scale:

**NATURE OF THE ACTION**

1.      Pursuant to the Patent Laws of the United States, Counterclaimants assert counterclaims for patent infringement.  Counterclaimants seek injunctive relief and damages under 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, arising from Scale's willful infringement of one or more claims of U.S. Patent No. 10,900,065 ("'065 Patent"), U.S. Patent No. 11,168,355 ("'355 Patent"), and U.S. Patent No. 11,427,856 ("'856 Patent") (collectively the "Asserted Parse Patents").

2.      Parse further asserts counterclaims for unfair competition, tortious interference, trade libel, and trade defamation under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Washington statutory and common law.

## PARTIES

3.      Parse is a Delaware corporation with a principal place of business at 700 Dexter Avenue, Suite 600, Seattle, Washington 98109.

4.      UW is a public institution of higher education and an agency of the State of Washington, with its principal place of business in the city of Seattle, Washington.  UW has at all relevant times been the sole assignee and the true and legal owner of the Asserted Parse Patents.

5.      On information and belief, Scale is a Delaware corporation with its principal place of business at 3210 Merryfield Row, San Diego, California 92121.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the federal-law Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121.  This Court has subject matter jurisdiction over the state-law Counterclaims pursuant to 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Scale because Scale submitted to personal jurisdiction by filing the Complaint and because Scale is a Delaware corporation.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400 because Scale resides in this district.

## BACKGROUND

A.      **Parse's Innovative Single-Cell Sequencing Technology**

9.      Parse is a Seattle-based company with the mission of accelerating progress in human health and scientific research.  Parse's foundational Evercode™ combinatorial barcoding technology is driving the next generation of discoveries in the field of single cell RNA sequencing,

providing researchers with the ability to perform single cell sequencing with unprecedented scale and ease. Parse's pioneering approach for single cell sequencing has already enabled groundbreaking discoveries, which have led to new understandings of cancer treatment, tissue repair, stem cell therapy, kidney and liver disease, brain development, and the immune system.

10.    The Parse Evercode™ single-cell technology enables large scale experiments without the limitations of today's microfluidics approaches. This technology allows researchers to profile anywhere from 10,000 to 1 million cells and up to 96 samples in a single experiment. The technology makes it possible to fix samples as they are available, so they can be run together in a single experiment. Parse's Evercode™ single-cell technology detects high numbers of genes and transcripts per cell, providing researchers the ability to understand their biology with single cell resolution. Parse's products have been used across more than 700 labs to conduct groundbreaking research. For example, a recent study published in the journal Nature used Parse's Evercode™ Whole Transcriptome products to understand how specific genetic variants affect immune responses to COVID-19, with certain variants dramatically increasing the risk of severe illness and death. Many of these studies were made possible by the added scalability and flexibility enabled by Parse's proprietary approach to single cell sequencing. Parse's technology has made single cell sequencing accessible to any lab, by removing the need for expensive and specialized equipment.

11.    Parse is led by CEO and Co-Founder Alex Rosenberg, Ph.D., who co-invented the single cell technology that inspired Parse's foundational Evercode™ platform and is a named inventor on the Asserted Parse Patents.

B.    **The Asserted Parse Patents**

12.    The Asserted Parse Patents are directed to methods and kits for labeling cellular molecules.  Parse is the exclusive licensee of the Asserted Parse Patents in the fields of use and territories applicable to this action.  The license states that Parse has the right to prosecute these Counterclaims.

13.    UW is the owner by assignment, and Parse is the exclusive licensee, of the '065 Patent, titled Methods and Kits for Labeling Cellular Molecules.  The '065 Patent was duly issued by the USPTO on January 26, 2021, and remains unexpired.  The '065 Patent issued from U.S. Application No. 14/941,433, which claims priority to U.S. Provisional Application No. 62/080,055, filed on November 14, 2014.  A true and correct copy of the '065 Patent is attached to these Counterclaims as Exhibit A.

14.    The '065 Patent includes claim 1, which recites:

A method of cell-specifically labeling RNA molecules within a plurality of cells, the method comprising:

(a) providing a plurality of permeabilized cells in admixture, wherein each of the plurality of cells comprises ribonucleic acid (RNA) molecules;

(b) without lysing the cells, reverse transcribing the RNA molecules within the plurality of cells, thereby generating complementary deoxyribonucleic acid (cDNA) molecules within the plurality of cells, wherein primers used to reverse transcribe the RNA molecules comprise a poly(T) sequence, a mix of random sequences, or both a poly(T) sequence and a mix of random sequences;

(c) dividing the plurality of cells comprising the cDNA molecules into a plurality of primary aliquots, wherein the plurality of primary aliquots comprises a first primary aliquot and a second primary aliquot;

(d) providing primary nucleic acid tags to the plurality of primary aliquots, wherein the primary nucleic acid tags provided to the first primary aliquot are different in sequence from the primary nucleic acid tags provided to the second primary aliquot;

25

(e) coupling the provided primary nucleic acid tags of (d) to the cDNA molecules from each of the plurality of primary aliquots, thereby tagging the cDNA molecules with the primary nucleic acid tags and producing primary nucleic acid-tagged cDNA molecules, whereby the primary nucleic acid-tagged cDNA molecules of the first primary aliquot are tagged with a different primary nucleic acid tag than the primary nucleic acid-tagged cDNA molecules of the second primary aliquot;

(f) combining the plurality of primary aliquots;

(g) dividing the combined primary aliquots of (f) into a plurality of secondary aliquots, wherein the plurality of secondary aliquots comprises a first secondary aliquot and a second secondary aliquot;

(h) providing secondary nucleic acid tags to the plurality of secondary aliquots, wherein the secondary nucleic acid tags provided to the first secondary aliquot are different in sequence from the secondary nucleic acid tags provided to the second secondary aliquot; and

(i) coupling the provided secondary nucleic acid tags of (h) to the primary nucleic acid-tagged cDNA molecules of (e) thereby tagging the primary nucleic acid-tagged cDNA molecules with the secondary nucleic acid tags and producing secondary nucleic acid-tagged cDNA molecules, whereby the secondary nucleic acid-tagged cDNA molecules of the first secondary aliquot are tagged with a different secondary nucleic acid tag than the secondary nucleic acid-tagged cDNA molecules of the second secondary aliquot.

15.    UW is the owner by assignment, and Parse is the exclusive licensee, of the '355 Patent, titled Methods and Kits for Labeling Cellular Molecules.  The '355 Patent was duly issued by the USPTO on November 9, 2021, and remains unexpired.  The '355 Patent issued from U.S. Application No. 17/249,257, which is a continuation of U.S. Application No. 17/122,321, filed on December 15, 2020, which is a continuation of U.S. Application No. 14/941,433, filed on November 13, 2015, and which claims priority to U.S. Provisional Application No. 62/080,055, filed on November 14, 2014.  A true and correct copy of the '355 Patent is attached to these Counterclaims as Exhibit B.

16.    The '355 Patent includes claim 1, which recites:

A method of cell-specifically labeling RNA molecules within a plurality of cells, the method comprising:

(a) providing a plurality of fixed, permeabilized cells in admixture, wherein each of the plurality of cells comprises ribonucleic acid (RNA) molecules;

(b) without lysing the cells, reverse transcribing the RNA molecules within the plurality of cells, thereby generating complementary deoxyribonucleic acid (cDNA) molecules within the plurality of cells, wherein primers used to reverse transcribe the RNA molecules comprise a poly(T) sequence, a mix of random sequences, or both a poly(T) sequence and a mix of random sequences, wherein each primer further comprises a barcode sequence;

(c) dividing the plurality of cells comprising the cDNA molecules into a plurality of primary aliquots, wherein the plurality of primary aliquots comprises a first primary aliquot and a second primary aliquot;

(d) providing primary nucleic acid tags to the plurality of primary aliquots, wherein the primary nucleic acid tags provided to the first primary aliquot are different in sequence from the primary nucleic acid tags provided to the second primary aliquot;

(e) coupling the provided primary nucleic acid tags of (d) to the cDNA molecules from each of the plurality of primary aliquots, thereby tagging the cDNA molecules with the primary nucleic acid tags and producing primary nucleic acid-tagged cDNA molecules, whereby the primary nucleic acid-tagged cDNA molecules of the first primary aliquot are tagged with a different primary nucleic acid tag than the primary nucleic acid-tagged cDNA molecules of the second primary aliquot;

(f) combining the plurality of primary aliquots;

(g) dividing the combined primary aliquots of (f) into a plurality of secondary aliquots, wherein the plurality of secondary aliquots comprises a first secondary aliquot and a second secondary aliquot;

(h) providing secondary nucleic acid tags to the plurality of secondary aliquots, wherein the secondary nucleic acid tags provided to the first secondary aliquot are different in sequence from the secondary nucleic acid tags provided to the second secondary aliquot; and

(i) coupling the provided secondary nucleic acid tags of (h) to the primary nucleic acid-tagged cDNA molecules of (e) thereby tagging the primary nucleic acid-tagged cDNA molecules with the secondary nucleic acid tags and producing secondary nucleic acid-tagged cDNA molecules, whereby the secondary nucleic acid-tagged cDNA molecules of the first secondary aliquot are tagged with a different secondary nucleic acid tag than the

secondary nucleic acid-tagged cDNA molecules of the second secondary aliquot.

17.     UW is the owner by assignment, and Parse is the exclusive licensee, of the '856 Patent, titled Methods and Kits for Labeling Cellular Molecules.  The '856 Patent was duly issued by the USPTO on August 30, 2022, and remains unexpired.  The '856 Patent issued from U.S. Application No. 17/521,263, which is a continuation of U.S. Application No. 17/249,257, filed on February 25, 2021, which is a continuation of U.S. Application No. 17/122,321, filed on December 15, 2020, which is a continuation of U.S. Application No. 14/941,433, filed on November 13, 2015, which claims priority to U.S. Provisional Application No. 62/080,055, filed on November 14, 2014.  A true and correct copy of the '856 Patent is attached to these Counterclaims as Exhibit C.

18.     The '856 Patent includes claim 1, which recites:

A method of cell-specifically labeling RNA molecules within a plurality of cells, the method comprising:

(a) providing a plurality of fixed, permeabilized cells in admixture in a well or compartment, wherein each of the plurality of cells comprises ribonucleic acid (RNA) molecules;

(b) without lysing the cells, reverse transcribing the RNA molecules within the plurality of cells, thereby generating complementary deoxyribonucleic acid (cDNA) molecules within the plurality of cells, wherein primers used to reverse transcribe the RNA molecules comprise a poly(T) sequence, a mix of random sequences, or both a poly(T) sequence and a mix of random sequences, wherein each primer further comprises a first barcode sequence; wherein the first barcode sequence is specific to each well or compartment;

(c) dividing the plurality of cells comprising the cDNA molecules into a plurality of primary aliquots, wherein the plurality of primary aliquots comprises a first primary aliquot and a second primary aliquot;

(d) providing primary nucleic acid tags comprising a second barcode sequence to the plurality of primary aliquots, wherein the primary nucleic acid tags comprising a second barcode sequence provided to the first

primary aliquot are different in sequence from the primary nucleic acid tags provided to the second primary aliquot;

(e) coupling the provided primary nucleic acid tags comprising a second barcode sequence of (d) to the cDNA molecules from each of the plurality of primary aliquots, thereby tagging the cDNA molecules with the primary nucleic acid tags comprising a second barcode sequence and producing primary nucleic acid-tagged cDNA molecules, whereby the primary nucleic acid-tagged cDNA molecules of the first primary aliquot are tagged with a different primary nucleic acid tag than the primary nucleic acid-tagged cDNA molecules of the second primary aliquot;

(f) combining the plurality of primary aliquots;

(g) dividing the combined primary aliquots of (f) into a plurality of secondary aliquots, wherein the plurality of secondary aliquots comprises a first secondary aliquot and a second secondary aliquot;

(h) providing secondary nucleic acid tags comprising a third barcode sequence to the plurality of secondary aliquots, wherein the secondary nucleic acid tags comprising a third barcode sequence provided to the first secondary aliquot are different in sequence from the secondary nucleic acid tags provided to the second secondary aliquot; and

(i) coupling the provided secondary nucleic acid tags comprising a third barcode sequence of (h) to the primary nucleic acid-tagged cDNA molecules of (e) thereby tagging the primary nucleic acid-tagged cDNA molecules with the secondary nucleic acid tags comprising a third barcode sequence and producing secondary nucleic acid-tagged cDNA molecules, whereby the secondary nucleic acid-tagged cDNA molecules of the first secondary aliquot are tagged with a different secondary nucleic acid tag than the secondary nucleic acid-tagged cDNA molecules of the second secondary aliquot.

## C.   Scale's Infringement

19.   Parse and Scale are direct competitors in the field of single-cell sequencing.

20.   Scale purports to be a "Single-Cell Omics" company founded in 2019 that has transitioned from research and development to commercial stage with the release of its first generation single-cell RNA sequencing (scRNAseq) profiling and analysis products.  Scale has purportedly developed and brought to market single cell sequencing library preparation

technology, reagents, and software that enables cost-effective single cell analysis applicable across a broad range of systems, sample types, and applications. *See* Scale Biosciences, Technology, https://scale.bio/#technology (last visited Jan. 31, 2023) (Ex. L at 3-4). Scale purports to commercially offer "single-cell profiling and analysis solutions" that "enable a unique combination of increased throughput, multi-omics support, high data quality and lower overall prep and sequencing costs." Scale Biosciences, Technology, https://scale.bio/#technology (last visited Jan. 31, 2023) (Ex. L at 3-4). Scale further states that its single-cell technology increases "the throughput of on-market systems by adding upstream combinatorial indexing technology using the ScaleBio ATACseq pre-indexing kit," in combination "with a stand-alone scRNAseq kit using 3 levels of indexing." Steemers, F. *et al.*, *Single-cell profiling on the zebrafish brain and retina using combinatorial indexing* (2023) (Ex. M).

21.     Scale purports to have recently commercialized combinatorial indexing library preparation kits to accomplish transcriptomic and epigenetic profiling, including Scale's "scRNAseq 3' gene expression library preparation kit" along with analysis software. Scale's scRNAseq 3' gene expression library preparation kits, as well as reagents (i.e. fixation solutions), other consumables, and data analysis software used or provided by Scale in connection with those kits, as well as any other Scale products having substantially the same functions and uses as those kits, are collectively referred to herein as the "Accused Scale Products."

22.     On information and belief, Scale provides the Accused Scale Products to consumers. Scale states on its website that its combinatorial indexing based single-cell profiling and analysis solutions enable increased levels of sample multiplexing, increased cell throughput, and support for a broad range of genomic, epigenomic, transcriptomic, proteogenomic, and multi-omic applications. *See also* Ex. M. Scale asserts in its publications and press releases that it is

developing combinatorial indexing technology to support single-cell profiling of protein, mRNA, DNA – essentially any cellular constituent that can be tagged.  *See* BusinessWire, Scale Biosciences (ScaleBio) Introduces New Disruptive Single-Cell Profiling and Analysis Solutions, Sets New Standards, https://www.businesswire.com/news/home/20221215005736/en/ (last visited Jan. 30, 2023) (Ex. D). Scale additionally purports to offer "a stand-alone scRNAseq kit using 3 levels of indexing."  Ex. M.

23.     Scale's founders have published several articles which, on information and belief, describe potential methods of use of the Accused Scale Products.  These articles include the following, which are attached to these Counterclaims as Exhibits E-K:

- Cao, J., et al., A human cell atlas of fetal gene expression, 370 Science 808, (2020) (Ex. E);

- Cao, J., et al., The single-cell transcriptional landscape of mammalian organogenesis. Nature 566, 496–502 (2019) (Ex. F);

- Cao, J., et al., Joint profiling of chromatin accessibility and gene expression in thousands of single cells. Science 361, 1380–1385 (2018) (Ex. G);

- Cao, J., et al., Sci-fate characterizes the dynamics of gene expression in single cells, Nat. Biotech. 38, 980-988 (2020) (Ex. H);

- Srivatsan, S.R. et al., Massively multiplex chemical transcriptomics at single-cell resolution, Science 367, 6473 (2019) (also available on Scale's website, at https://scale.bio/#Resources) (Ex. I);

- Martin, B., et al. An optimized protocol for single cell transcriptional profiling by combinatorial indexing, *Nat. Protoc.* 18(1), 188-207 (2023) (Ex. J); and

- Cao, J., and Shendure, J., 2020. sci- RNA-seq3. protocols.io (Ex. K).

24.     On information and belief, the first of the commercially available kits, Scale's scRNAseq 3' gene expression library preparation kit and analysis software, launched commercially on or about December 15, 2023, and purports to enable the indexing of up to 96 samples and up to 125,000 cells in a single experiment in support of larger and more complex

single-cell studies and purports to be compatible with mouse and human cell lines, PBMCs and nuclei sample types.  *See* Ex. L at 6-7, Scale Biosciences, ScaleBio Product Offerings, https://scale.bio/#product (last visited Jan. 31, 2023); *see also* Ex. M ("A 50:50 mix of human K562 and mouse 3T3 cells were processed through the 3-level scRNAseq workflow . . . Similar observations could be made for PBMCs processed through the workflow, with major cell types easily identified.").

25.     Scale's single cell sequencing products purportedly provide single-cell combinatorial indexing applications and workflows, including single-cell transcriptome profiling for high throughput analyses.  *See* Ex. L at 6-7, Scale Biosciences, ScaleBio Product Offerings, https://scale.bio/#product (last visited Jan. 31, 2023).



Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 30, 2023); *see also* Ex. M ("Combinatorial indexing can be effectively applied to single cell applications to increase throughput while decreasing cost.").

26.     On information and belief, Scale offers combinatorial indexing preparation kits and analysis software which use individual cells or nuclei as a container for barcoding reactions allowing them to be used with standard consumables.  *See* Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023).  In addition, Scale purports to offer scRNAseq 3', a three-level single-cell combinatorial indexing which uses a method of pooling, mixing, and redistributing cells or nuclei for repeated rounds of barcoding,

thus creating a diverse pool of labels, which allows the number of cells profiled to be scaled up exponentially with repeated rounds of pooling and splitting or additional barcodes in each round. *See* Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023); *see also, e.g.*, Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 Summary (2020).



Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023). In addition, Scale describes its scRNA-seq combinatorial indexing method as involving "3 rounds of indexing produce 3.5 million unique combinations. After plate-based workflow libraries are then sequenced and indices demultiplexed to assign reads to individual cells or nuclei."



Ex. M.

27.     Scale purports that its single-cell omics technology is used to investigate cell to cell heterogeneity and function and to differentiate between study samples at the cellular level.

Moreover, in addition to barcoding analytes, Scale purports that barcodes can also be used to identify samples and enable larger multi-modal study designs.



Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023).

28.    On information and belief, Scale uses at least the methods referred to as scRNAseq 3' and/or sci-RNA-seq3 (collectively the "Scale Methods") in connection with the use of the Accused Scale Products.

29.    On information and belief, Scale has provided and/or will provide instructions, tutorials, support, recommendations, and suggestions on how to use the Accused Scale Products, including how to use the Scale Methods, in Scale's marketing materials, brochures, instructions, and manuals, as well as at seminars, conferences, and meetings.

**D.    Scale's False and Misleading Statements to the Market**

30.    On June 16, 2023, Parse received the following e-mail from a potential customer stating that they were considering integrating the technology of Parse or Scale and were "looking into long term collaboration with Parse or Scalebio" and had received a "warning" from Scale (the "False Warning"):



Calum Marrs <calum@parsebiosciences.com>

**RE: FW: Questions about the single cell kit**

16 June 2023 at 11:44

To: Calum Marrs <calum@parsebiosciences.com>
Cc:

Hi Calum,

We've got a project approved for following sample setup:

- Batch 1: 114 samples: Q3-Q4 2023
- Batch 2: 50 samples: Q4 2023
- Batch 3: 300 samples: 2024

So we are now looking to integrate your technology or Scale biosciences. The technology is more or less comparable. However, we have a main concern about some licensing issues that are apparently going on?

We've got this warning from Scalebio people:

*One thing that I would like to mention is that ScaleBio has exclusive licence to use all Intellectual Properties and patents around quantum barcoding and combinatorial indexing. These IPs belong to third party companies such as Roche and Illumina. Parse is developing products around those IPs without the needed licensing, hence ScaleBio (with Roche) initiated legal action against Parse (info here and here). I would keep this in mind before setting up a long term project with Parse, as they may have to change the configuration of their products, if not even interrupting activities.*

Would it be possible to clarify this situation? We are looking into long term collaboration with Parse or Scalebio...

Thanks for your honesty!

Exhibit N.

31.     The False Warning includes multiple false and misleading statements, which were made in writing by Scale to thsis potential customer.  Those false and misleading statements include that "ScaleBio has exclusive licence [sic] to use all Intellectual Properties and patents around quantum barcoding and combinatorial indexing," that all such intellectual property "belong[s] to third party companies such as Roche and Illumina," and that "Parse is developing products around those IPs without the needed licensing."

32.     These statements are objectively and literally false and misleading at least because UW owns multiple patents in the field of combinatorial indexing (and quantum barcoding,

depending on one's interpretation of that term), which it has licensed to Parse and not to Scale. This includes the three Asserted Parse Patents that UW and Parse are asserting against Scale in this action, which are licensed to Parse and not to Scale.

33.     Scale made these statements in bad faith, with knowledge of the Asserted Parse Patents and therefore knowledge that the statements were false and misleading.

34.     This knowledge is demonstrated by Scale's Answer in this action.  Scale admits in its Answer that it "received a letter dated December 31, 2021 referencing the '065 Patent from counsel representing Parse." D.I. 30 at ¶ 45.  Scale also admits in its Answer that all of the Asserted Parse Patents list UW as an assignee.  *Id.* at ¶¶ 12, 14, 16.  Scale further admits in its Answer that it "has not secured a license to practice any of the Asserted Parse Patents," and that "Counterclaimants have not consented to ScaleBio's manufacture, use, offer to sell, sale, or importation of the Accused Scale Products or the use of the Scale Methods."  *Id.* at ¶¶ 30, 49, 58.

35.     Scale's sales and marketing efforts—including but not limited to the False Warning—have included making additional false and misleading statements regarding the nature and/or existence of the parties' intellectual property and where and how their technology originated.

36.     As shown below, Scale attended and hosted a booth at the ABRF Annual Meeting in Boston, Massachusetts, on or around May 7-10, 2023 ("ABRF"):



37.     During and shortly following ABRF, actual and/or potential Parse customers who attended ABRF communicated concerns regarding the intellectual property dispute between Scale and Parse.  One attendee informed Parse that they had spoken with Scale representatives at ABRF and that a Scale representative indicated that Parse had stolen Scale's technology.

38.     Multiple additional actual and/or potential Parse customers have informed Parse that they communicated with Scale in the United States and that after such communications, they were concerned whether Parse would still exist or be able to offer products in a year.   On

information and belief, this is due to false and misleading statements made by Scale, including statements like the False Warning and the aforementioned statements made at ABRF.

39.     On information and belief, the Scale sales and marketing activities described above are part of and indicative of a broader sales and marketing campaign by Scale within and outside the United States that includes making false and misleading statements to persuade actual and potential Parse customers that Parse stole and/or is infringing upon Scale technology and/or intellectual property, that Parse will soon cease to exist as a result, and that customers should therefore work with Scale instead of Parse.

40.     By engaging in the conduct described above, Scale has induced termination of Parse business expectancies.

41.     Parse is and has been irreparably damaged in its business by Scale's false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

**PATENT COUNTERCLAIMS**
**(BY PARSE AND UW)**

**COUNT I**
**(INFRINGEMENT OF U.S. PATENT NO. 10,900,065)**

42.     Counterclaimants incorporate by reference and re-allege the foregoing paragraphs of their Counterclaims.

43.     Scale has no right or license to practice the '065 Patent.  Counterclaimants have not consented to Scale's manufacture, use, offer to sell, sale, or import of the Accused Scale Products or the use of the Scale Methods.

44.     On information and belief, Scale has directly infringed, and continues to directly infringe, at least claims 1, 5, 9, 12, 17, 20, and 23-25 of the '065 Patent by making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

45.     On information and belief, use of the Accused Scale Products, including by the Scale Methods, meets all the limitations of the asserted claims of the '065 Patent.

46.     For example, as shown below, use of the Accused Scale Products, including by the Scale Methods, meet each limitation of claim 1 of the '065 Patent.

47.     **Preamble: "A method of cell-specifically labeling RNA molecules within a plurality of cells, the method comprising"**

To the extent the preamble is limiting, use of the Accused Scale Products, including by the Scale Methods, meets the preamble.  For example, Scale states, "[o]ur single-cell profiling and analysis solutions enable increased levels of sample indexing and cell throughput for larger, more complex studies."  Ex. L, Scale Biosciences, https://scale.bio (last visited Jan. 30, 2023).  Scale further states that its "scRNAseq 3' gene expression library preparation kit and analysis software enables the indexing of up to 96 samples and up to 125,000 of cells in a single experiment in support of larger and more complex single-cell studies." Ex. L at 6-7, Scale Biosciences. *Products*, Transcriptomic Profiling, https://scale.bio/#product (last visited Jan. 30, 2023).  In addition, Scale states that "ScaleBio's combinatorial indexing based single-cell profiling and analysis solutions enable increased levels of sample multiplexing, increased cell throughput, and support for a broad range of genomic, epigenomic, transcriptomic, proteogenomic, multi-omic applications."  Ex. L

at 3-4, Scale Bioscience, *Technology*, https://scale.bio/#technology (last visited Jan. 30, 2023); *see also* Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) ("We used a three-level combinatorial indexing assay (sci-RNA-seq3) to profile gene expression in ~4,000,000 single cells from 15 fetal organs."); Ex. I, Srivatsan, S.R. et al., Massively multiplex chemical transcriptomics at single-cell resolution, *Science* 367, 6473 (2019) ("Single-cell combinatorial indexing (sci-) methods use split-pool barcoding to uniquely label the molecular contents of large numbers of single cells or nuclei (24).").  Scale also purports that its three-level stand-alone scRNA-seq combinatorial indexing technology can "effectively applied to single cell applications to increase throughput."  Ex. M.  Further, Scale asserts that its scRNA-seq technique is applicable to a plurality of cells (targeting at least "approximately 13,000 cells) and is effective using a "mix of human K562 and mouse 3T3 cells."  *Id.*  Therefore, to the extent the preamble is limiting, use of the Accused Scale Products, including by the Scale Methods, meets the preamble of claim 1.

48.    **(a) "providing a plurality of permeabilized cells in admixture, wherein each of the plurality of cells comprises ribonucleic acid (RNA) molecules"**

Use of the Accused Scale Products, including by the Scale Methods, comprises a step that meets limitation (a).  For example, Scale states that "[p]ermeabilized cells are distributed in a multi-well plate…" Ex. L at 3-4, Scale Bioscience, *Technology*, https://scale.bio/#technology (last visited Jan. 30, 2023).  The Scale Methods are also described in Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) (Ex. E), *i.e.,* ("For renal and digestive organs where ribonucleases (RNases) and proteases are abundant, we used fixed cells rather than nuclei, which increased cell and mRNA recovery.").  Further, Scale's three-level stand-alone scRNA-seq indexing kit may be used with "[a] 50:50 mix of human K562 and mouse 3T3 cells . . . mixed together prior to being processed through the ScaleBio scRNA-seq workflow. 10 wells of the final

distribution plate . . . carried forward for sequencing target[ed] approximately 13,000 cells," and also purports to result in "[h]igh median unique molecule counts . . . demonstrating that fixed and permeabilized cells retain RNA adequately throughout the plate-based workflow." Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (a) of claim 1.

49.     **(b) "without lysing the cells, reverse transcribing the RNA molecules within the plurality of cells, thereby generating complementary deoxyribonucleic acid (cDNA) molecules within the plurality of cells, wherein primers used to reverse transcribe the RNA molecules comprise a poly(T) sequence, a mix of random sequences, or both a poly(T) sequence and a mix of random sequences"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (b).  For instance, Scale states, "[c]ombinatorial indexing technology and methods leverage the cell as a compartment." Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023); *see also* Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) ("We distributed 20,000 fixed cells (instead of 80,000 nuclei) per well for reverse transcription (RT).").   In addition, as replicated below, Scale's reverse transcription primers include at least a poly(T) sequence (red circles added):



Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, Summary (2020); *see also id.* ("For each well, 80,000 nuclei (16 μL) were mixed with 8 μl of 25 μM anchored

oligo-dT                  primer                  (5′-/5Phos/CAGAGCNNNNNNNNN[10bp barcode]TTTTTTTTTTTTTTTTTTTTTTTTTTTTTT-3′, where "N" is any base; IDT) and 2 μL 10 mM dNTP mix (Thermo)…"); *see also* Ex. K, Cao, J., and Shendure, J., 2020. sci- RNA-seq3. protocols.io. ("For each well of 4 x 96 well plates, add 80,000 nuclei in 22ul nuclei buffer (with wide bore tips); 2ul 10mM dNTP; and 2ul indexed oligo-dT primer (100uM)").  Moreover, the Scale Methods as described, for example, in Martin, B., et al. An optimized protocol for single cell transcriptional profiling by combinatorial indexing, *Nat. Protoc.* 18(1), 188-207 (2023) (Ex. J), indicate that "[t]he first index is introduced during reverse transcription with barcoded oligo-dT primers."  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (b) of claim 1.

50.     **(c) "dividing the plurality of cells comprising the cDNA molecules into a plurality of primary aliquots, wherein the plurality of primary aliquots comprises a first primary aliquot and a second primary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (c).  For example, as illustrated below, Scale's method divides the plurality of cells – which contain cDNA – into primary aliquots, which consist of at least a first and second primary aliquot, and Cao's Figure (replicated below) shows division amongst individual plate-based wells:



Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red box

added); *see also id.,* Supplementary Materials ("After reverse transcription reaction, 60 µL nuclei

dilution buffer (10 mM Tris-HCl, pH 7.4, 10 mM NaCl, 3 mM MgCl2 and 1% BSA) was added

into each well. Nuclei [or cells] from all wells were pooled together and spun down at 500xg for

10 min. Nuclei [or modified protocol using cells] were then resuspended in nuclei wash buffer and

redistributed into another four 96-well plates…"); Ex. K, Cao, J., and Shendure, J., 2020. sci-RNA-

seq3. protocols.io ("Resuspend the cells in 4.3ml NSB, and distribute 10ul into each well of 4 x

96 well plates.").  In addition, Scale states that its three-level stand-alone scRNA-seq indexing kit

provides a method of combinatorial indexing using "repeated rounds of distributing cells across

plates and subsequent well-based barcoding." Ex. M. Use of the Accused Scale Products, including

by the Scale Methods, therefore meets limitation (c) of claim 1.

51.     **(d) "providing primary nucleic acid tags to the plurality of primary aliquots, wherein the primary nucleic acid tags provided to the first primary aliquot are different in sequence from the primary nucleic acid tags provided to the second primary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that

meets limitation (d).  For example, Scale's website indicates a plurality of aliquots, each aliquot

comprising primary nucleic acid tags that are different for each primary aliquot:



Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last

visited Jan. 30, 2023) (red circles added to illustrate at least a first primary aliquot and a second

primary aliquot.  The Scale Methods require providing primary nucleic acid tags to the primary

aliquots. The nucleic acid tags provided to each well are unique, and so the first and second primary aliquots receive nucleic acid tags that have different sequences. *See, e.g.,* Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) ("Nuclei [or cells] were then resuspended in nuclei wash buffer and redistributed into another four 96-well plates with each well including . . . 8 µL barcoded ligation adaptor (100 µM, 5'-GCTCTG[9 bp or 10 bp barcode A]/dideoxyU/ACGACGCTCTTCCGATCT[reverse complement of barcode A]-3')."). Further, as represented in the schematic below, the Scale Methods also indicate a plurality of primary aliquots (red box added):



*See id.,* Summary ("After reverse transcription reaction, 60 µL nuclei dilution buffer (10 mM Tris-HCl, pH 7.4, 10 mM NaCl, 3 mM MgCl2 and 1% BSA) was added into each well. Nuclei from all wells were pooled together and spun down at 500xg for 10 min. Nuclei were then resuspended in nuclei wash buffer and redistributed into another four 96-well plates with each well including 20 µL Quick ligase buffer (NEB, M2200L), 2 µL Quick DNA ligase (NEB, M2200L), 10 µL nuclei in nuclei wash buffer, 8µL barcoded ligation adaptor (100 uM, 5'- GCTCTG[9 bp or 10 bp barcode A]/dideoxyU/ACGACGCTCTTCCGATCT[reverse complement of barcode A]-3')."). Use of the

Accused Scale Products, including by the Scale Methods, therefore meets limitation (d) of claim 1.

52.    **(e) coupling the provided primary nucleic acid tags of (d) to the cDNA molecules from each of the plurality of primary aliquots, thereby tagging the cDNA molecules with the primary nucleic acid tags and producing primary nucleic acid-tagged cDNA molecules, whereby the primary nucleic acid-tagged cDNA molecules of the first primary aliquot are tagged with a different primary nucleic acid tag than the primary nucleic acid-tagged cDNA molecules of the second primary aliquot;**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (e).  For example, Scale indicates that "[t]hese barcoded cells are pooled, then randomly re-distributed for another round of barcoding or indexing." Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023). And Scale's website illustrates primary nucleic acid tags ("barcoding or indexing") coupled to the cDNA molecules from each of the plurality of primary aliquots:



Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023). *See, e.g.*, Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, Summary (2020) ("The ligation reaction was conducted at 25°C for 10min."). Additionally, the Accused Scale Products and Scale Methods as described in Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, Summary (2020) (Ex. E) and represented by the illustration below, show primary nucleic acid-tagged cDNA molecules, with the primary nucleic acid-tagged cDNA molecules tagged ("barcoded" or "indexed") with primary

45

nucleic acid tags differing from the primary nucleic acid-tagged cDNA molecules of a second

primary aliquot:



Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (e)

of claim 1.

53. **(f) "combining the plurality of primary aliquots"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that

meets limitation (f). For example, Scale states, "[t]hese barcoded cells are pooled…" Ex. L at 3-

4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30,

2023). This step is depicted in a figure in Cao, J., et al., A human cell atlas of fetal gene expression,

370 *Science* 808, Summary (2020) (Ex. E) sci-RNA-seq3 publication (red circle added):



*See also id.* ("Nuclei from all wells were pooled together and spun down at 500×g for 10 min.").
The schematic below also demonstrates how the combinatorial indexing technology employed in
Scale's three-level stand-alone scRNA-seq indexing kit purportedly distributes and subsequently
combines primary aliquots:



Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets
limitation (f) of claim 1.

54.     **(g) "dividing the combined primary aliquots of (f) into a plurality of secondary
aliquots, wherein the plurality of secondary aliquots comprises a first secondary aliquot and
a second secondary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that
meets limitation (g).  For example, Scale indicates that "[t]he number of cells or nuclei profiled
can be scaled up exponentially with repeated rounds of pooling and splitting to enable single-cell
experiments with up to 96 samples and 100,000 to millions of cells…"   Ex. L at 5, Scale
Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31,
2023).  In addition, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808,
(2020) (Ex. E), also describes a modified method of sci-RNA-seq 3' which uses "fixed cells" that
"were processed similarly to the fixed nuclei…" ("[n]uclei [or cells] were washed once with nuclei
wash buffer, filtered with 1 ml Flowmi cell strainer (VWR, 10204-924) once, counted and
redistributed into eight 96-well plates[.]").  As shown below, a representative schematic of the

protocol of the Scale Methods shows the combined primary aliquots divided into a plurality of secondary aliquots:



Ex. E, Summary, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red circle added).  Moreover, a representative schematic of the protocol of the Scale Methods also illustrates the combined primary aliquots divided into a plurality of secondary aliquots:



Ex. F, Cao, J., et al., The single-cell transcriptional landscape of mammalian organogenesis. *Nature* 566, 496–502 (2019) Supplementary Materials Figure 1a ("Nuclei [or cells] were then resuspended in nuclei wash buffer and redistributed into another four 96-well plates…").  Use of

the Accused Scale Products, including by the Scale Methods, therefore meets limitation (g) of claim 1.

55.    **(h) "providing secondary nucleic acid tags to the plurality of secondary aliquots, wherein the secondary nucleic acid tags provided to the first secondary aliquot are different in sequence from the secondary nucleic acid tags provided to the second secondary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (h).  For example, Scale states: "[t]hese barcoded cells are pooled, then randomly re-distributed for another round of barcoding or indexing" and further represents that "[t]his process is completed when the desired barcode space has been achieved."  Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023).  This is illustrated in the Cao Summary representative image below:



Ex. E, Summary, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red circle added) ("For PCR amplification, each well (16 μL product) was mixed with 2 μL of 10 μM indexed P5 primer (5′-AATGATACGGCGACCACCGAGATCTACAC[i5]ACACTCTTTCCCTACACGACGCTCTT CCGATCT-  3′;  IDT),  2  μL  of  10  μM  P7  primer  (5′-CAAGCAGAAGACGGCATACGAGAT[i7]GTCTCGTGGGCTCGG-3′,  IDT),  and  20  μL

NEBNext High- Fidelity 2X PCR Master Mix (NEB, M0541L).").  Additionally, Scale states that its three-level stand-alone scRNA-seq indexing workflow "uses repeated rounds of distributing cells across plates and subsequent well-based barcoding," and therefore, the "repeated rounds creates a unique combinatorial barcode for the molecules in each individual cell." Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (h) of claim 1.

56.     **(i) "coupling the provided secondary nucleic acid tags of (h) to the primary nucleic acid-tagged cDNA molecules of (e) thereby tagging the primary nucleic acid-tagged cDNA molecules with the secondary nucleic acid tags and producing secondary nucleic acid-tagged cDNA molecules, whereby the secondary nucleic acid-tagged cDNA molecules of the first secondary aliquot are tagged with a different secondary nucleic acid tag than the secondary nucleic acid-tagged cDNA molecules of the second secondary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (i).  For example, Scale describes their method of combinatorial indexing based single-cell profiling as allowing for "[t]he number of cells or nuclei profiled can be scaled up exponentially with repeated rounds of pooling and splitting to enable single-cell experiments." Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023); *see also, e.g.*, Ex. J, Martin, B., et al. An optimized protocol for single cell transcriptional profiling by combinatorial indexing, *Nat. Protoc.* 18(1), 188-207(2023) ("After indexed reverse transcription, the nuclei are pooled and split into a new plate to add a second index via ligation, and then the nuclei are pooled and split again. After second-strand synthesis and tagmentation, the third index is added by PCR.").  Scale's three-level stand-alone scRNA-seq indexing kit purports to provide a workflow implementing "repeated rounds" of well-based barcoding to create "a unique combinatorial barcode for the molecules in each individual cell," and suggests that the "3 rounds of indexing produce 3.5 million unique combinations."



Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (i) of claim 1.

57.     Parse began marking certain Parse products as practicing the '065 Patent in February of 2021.

58.     Scale received actual notice of the '065 Patent prior to the initiation of the present lawsuit and no later than December 31, 2021, via a letter dated December 31, 2021, from Parse's counsel to Scale's counsel.  Scale nevertheless willfully continues to make, use, offer to sell, sell, and/or import in the United States the Accused Scale Products.

59.     On information and belief, Scale has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '065 Patent, by contributing to the infringement of others through the making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

60.     Counterclaimants are and have been irreparably damaged by Scale's infringement, and unless Scale's infringing activities are enjoined by this Court, Counterclaimants will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to their reputation, relationships, and goodwill with their customers, vendors, distributors, industry professionals, and others.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 11,168,355)

61.     Counterclaimants incorporate by reference and re-allege the foregoing paragraphs of their Counterclaims.

62.     Scale has no right or license to practice the '355 Patent.  Counterclaimants have not consented to Scale's manufacture, use, offer to sell, sale, or import of the Accused Scale Products or the use of the Scale Methods.

63.     On information and belief, Scale has directly infringed, and continues to directly infringe, at least claims 1, 5-6, 14, 19, 22, and 25-26 of the '355 Patent by making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

64.     On information and belief, use of the Accused Scale Products, including by the Scale Methods,  meets all the limitations of the asserted claims of the '355 Patent.

65.     For example, for the reasons stated in Count I above, use of the Accused Scale Products, including by the Scale Methods, meets each limitation of claim 1 of the '355 Patent.

66.     On information and belief, Scale has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '355 Patent, by contributing to the infringement of others through the making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

67.     Parse began marking certain Parse products as practicing the '355 Patent in November of 2021.

68.     Scale has been on actual notice of the family from which the '355 Patent issued since no later than December 31, 2021, via a letter dated December 31, 2021, from Parse's counsel to Scale's counsel.  On information and belief, Scale has been on actual notice of the '355 Patent

since its issuance.  Scale nevertheless willfully continues to make, use, offer to sell, sell, and/or import in the United States the Accused Scale Products.

69.     Counterclaimants are and have been irreparably damaged by Scale's infringement, and unless Scale's infringing activities are enjoined by this Court, Counterclaimants will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to their reputation, relationships, and goodwill with their customers, vendors, distributors, industry professionals, and others.

## <u>COUNT III</u>
### (INFRINGEMENT OF U.S. PATENT NO. 11,427,856)

70.     Counterclaimants incorporate by reference and re-allege the foregoing paragraphs of their Counterclaims.

71.     Scale has no right or license to practice the '856 Patent.  Counterclaimants have not consented to Scale's manufacture, use, offer to sell, sale, or import of the Accused Scale Products or the use of the Scale Methods.

72.     On information and belief, Scale has directly infringed, and continues to directly infringe, at least claims 1, 5-7, 14, 19, 22, and 25-26 of the '856 Patent by making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

73.     On information and belief, use of the Accused Scale Products, including by the Scale Methods, meet all the limitations of the asserted claims of the '856 Patent.

74.     For example, as shown below, use of the Accused Scale Products, including by the Scale Methods, meet each limitation of claim 1 of the '856 Patent.

75.     **Preamble: "A method of cell-specifically labeling RNA molecules within a plurality of cells, the method comprising"**

To the extent the preamble is limiting, use of the Accused Scale Products, including by the Scale Methods, meets the preamble.  For example, Scale states, "[o]ur single-cell profiling and analysis solutions enable increased levels of sample indexing and cell throughput for larger, more complex studies."  Ex. L, Scale Biosciences. https://scale.bio (last visited Jan. 31, 2023).  Scale further states that its "scRNAseq 3' gene expression library preparation kit and analysis software enables the indexing of up to 96 samples and up to 125,000 of cells in a single experiment in support of larger and more complex single-cell studies."  Ex. L at 6-7, Scale Biosciences. *Products*, Transcriptomic Profiling, https://scale.bio/#product (last visited Jan. 31, 2023).  In addition, Scale states that "ScaleBio's combinatorial indexing based single-cell profiling and analysis solutions enable increased levels of sample multiplexing, increased cell throughput, and support for a broad range of genomic, epigenomic, transcriptomic, proteogenomic, multi-omic applications."  Ex. L at 3-4, Scale Bioscience, *Technology*, https://scale.bio/#technology (last visited Jan. 31, 2023); *see also* Ex. L at 6-7, Scale Biosciences, *Products*, Epigenetic Profiling, https://scale.bio/#product (last visited Jan. 31, 2023).  According to publications and press releases available on Scale's website, Scale states that it is developing combinatorial indexing technology to support the single-cell profiling of protein, mRNA, DNA – essentially any cellular constituent that can be tagged.  *See* Ex. D, BusinessWire, Scale Biosciences (ScaleBio) Introduces New Disruptive Single-Cell Profiling and Analysis Solutions, Sets New Standards, https://www.businesswire.com/news/home/20221215005736/en/ (last visited Jan. 31, 2023).  Scale also purports that its three-level stand-alone scRNA-seq combinatorial indexing technology can "effectively applied to single cell applications to increase throughput."  Ex. M.  Further, Scale asserts that its scRNA-seq technique is applicable to a plurality of cells (targeting at least "approximately 13,000 cells) and is effective using a "mix of human K562 and mouse 3T3 cells."

*Id.* Therefore, to the extent the preamble is limiting, use of the Accused Scale Products, including by the Scale Methods, meets the preamble of claim 1.

76.    **(a) "providing a plurality of fixed, permeabilized cells in admixture in a well or compartment, wherein each of the plurality of cells comprises ribonucleic acid (RNA) molecules"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (a).  For example, Scale states that its "combinatorial indexing technology uses individual cells or nuclei as container for barcoding reactions."  Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023).  *See also* Ex. L at 3-4, Scale Bioscience, *Technology*, https://scale.bio/#technology (last visited Jan. 31, 2023) ("[p]ermeabilized cells are distributed in a multi-well plate…"); *see* Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) ("For renal and digestive organs where ribonucleases (RNases) and proteases are abundant, we used fixed cells rather than nuclei, which increased cell and mRNA recovery.").  Further, Scale states that its three-level stand-alone scRNA-seq indexing kit may be used with "[a] 50:50 mix of human K562 and mouse 3T3 cells . . . mixed together prior to being processed through the ScaleBio scRNA-seq workflow. 10 wells of the final distribution plate… carried forward for sequencing target[ed] approximately 13,000 cells," and also purports to result in "[h]igh median unique molecule counts . . . demonstrating that fixed and permeabilized cells retain RNA adequately throughout the plate-based workflow."  Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (a) of claim 1.

77.    **(b) "without lysing the cells, reverse transcribing the RNA molecules within the plurality of cells, thereby generating complementary deoxyribonucleic acid (cDNA) molecules within the plurality of cells, wherein primers used to reverse transcribe the RNA molecules comprise a poly(T) sequence, a mix of random sequences, or both a poly(T) sequence and a mix of random sequences, wherein each primer further comprises a first**

**barcode sequence; wherein the first barcode sequence is specific to each well or compartment"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (b).  For example, Scale states that "[t]he simple workflow starts with permeabilized samples which are distributed in a multi-well plate, barcodes customized for downstream application are then added to cellular analytes, adding a sequence that is uniform for all cells or nuclei within a single well."  Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 30, 2023).  Further, Scale states that it offers "[c]ombinatorial indexing technology and methods leverage the cell as a compartment."  Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023).  Moreover, the Scale Methods as outlined in Cao, J., et al., Joint profiling of chromatin accessibility and gene expression in thousands of single cells. *Science* 361, 1380–1385 (2018) (Ex. G) indicate that "A first RNA-seq "index" is introduced by in situ reverse transcription (RT) with a polythymidine [poly(T)] primer that bears a well-specific barcode and a unique molecular identifier (UMI)."

In addition, as replicated below, Scale's reverse transcription primers include at least a poly(T) sequence:



Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808 (2020) ("For each well, 80,000 nuclei (16 μL) were mixed with 8 μl of 25 μM anchored oligo-dT primer (5′-/5Phos/CAGAGCNNNNNNNN[10bp barcode]TTTTTTTTTTTTTTTTTTTTTTTTTTTTTT-3′, where "N" is any base; IDT) and 2 μL 10 mM dNTP mix (Thermo Fisher Scientific, R0192), denatured at 55°C for 5 min and immediately placed on ice. 14 μL of first-strand reaction mix, containing 8 μL 5X Superscript IV First-Strand Buffer (Invitrogen, 18090200), 2 μl 100 mM DTT (Invitrogen, 18090200), 2 μl SuperScript IV reverse transcriptase (200 U/μl, Invitrogen, 18090200), 2 μL RNaseOUT Recombinant Ribonuclease Inhibitor (Invitrogen, 10777019), was then added to each well. Reverse transcription was carried out by incubating plates by gradient temperature (4°C 2 minutes, 10°C 2 minutes, 20°C 2 minutes, 30°C 2 minutes, 40°C 2 minutes, 50°C 2 minutes and 55°C 10 minutes).").  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (b) of claim 1.

78.    **(c) "dividing the plurality of cells comprising the cDNA molecules into a plurality of primary aliquots, wherein the plurality of primary aliquots comprises a first primary aliquot and a second primary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (c).  For example, as illustrated below, Scale's method divides the plurality of cells – which contain cDNA – into primary aliquots, which consist of at least a first and second primary aliquot, and Cao's Figure (replicated below) shows division amongst individual plate-based wells:

57



Ex. E, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red box

added); *see also id.,* Supplementary Materials ("After reverse transcription reaction, 60 µL nuclei

dilution buffer (10 mM Tris-HCl, pH 7.4, 10 mM NaCl, 3 mM MgCl2 and 1% BSA) was added

into each well. Nuclei [or cells] from all wells were pooled together and spun down at 500xg for

10 min. Nuclei [or modified protocol using cells] were then resuspended in nuclei wash buffer and

redistributed into another four 96-well plates…"); Ex. K, Cao, J., and Shendure, J., 2020. sci-RNA-

seq3. protocols.io ("Resuspend the cells in 4.3ml NSB, and distribute 10ul into each well of 4 x

96 well plates.").  In addition, Scale states that its three-level stand-alone scRNA-seq indexing kit

provides a method of combinatorial indexing using "repeated rounds of distributing cells across

plates and subsequent well-based barcoding." Ex. M. Use of the Accused Scale Products, including

by the Scale Methods, therefore meets limitation (c) of claim 1.

79.      **(d) "providing primary nucleic acid tags comprising a second barcode
sequence to the plurality of primary aliquots, wherein the primary nucleic acid tags
comprising a second barcode sequence provided to the first primary aliquot are different in
sequence from the primary nucleic acid tags provided to the second primary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, meets limitation (d).

For example, Scale asserts that "The barcoded cells are pooled, mixed, and redistributed for

another round of barcoding." Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow

Video, https://scale.bio/ (last visited Jan. 31, 2023); *see also* Ex. E, Cao, J., et al., A human cell

atlas of fetal gene expression, 370 *Science* 808, (2020) Supplementary Materials ("Nuclei [or cells]

were then resuspended in nuclei wash buffer and redistributed into another four 96-well plates

with each well including 20 μL Quick ligase buffer (NEB, M2200L), 2 μL Quick DNA ligase

(NEB, M2200L), 10 μL nuclei in nuclei wash buffer, 8μL barcoded ligation adaptor (100 uM, 5'-

GCTCTG[9 bp or 10 bp barcode A]/dideoxyU/ACGACGCTCTTCCGATCT[reverse complement

of barcode A]-3').").   Use of the Accused Scale Products, including by the Scale Methods,

therefore meets limitation (d) of claim 1.

80.    **(e) "coupling the provided primary nucleic acid tags comprising a second barcode sequence of (d) to the cDNA molecules from each of the plurality of primary aliquots, thereby tagging the cDNA molecules with the primary nucleic acid tags comprising a second barcode sequence and producing primary nucleic acid-tagged cDNA molecules, whereby the primary nucleic acid-tagged cDNA molecules of the first primary aliquot are tagged with a different primary nucleic acid tag than the primary nucleic acid-tagged cDNA molecules of the second primary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that

meets limitation (e).   For example, Scale states "[t]he barcoded cells are pooled, mixed, and

redistributed for another round of barcoding. The combination of barcodes from multiple rounds

creates an increasingly diverse pool of labels, allowing the number of cells profiled to be scaled

up exponentially with repeated rounds of pooling and splitting or additional barcodes in each

round."   Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video,

https://scale.bio/ (last visited Jan. 31, 2023); *see also* Ex. F, Cao, J., et al., The single-cell

transcriptional landscape of mammalian organogenesis. Nature 566, 496–502 (2019) ("Of note,

for a single experiment, we have 384 barcodes introduced at the reverse transcription step, 384

barcodes introduced by hairpin ligation and 768 barcodes introduced by PCR.   The ligation

reaction was done at 16°C for 3 hours.").   Additionally, the Accused Scale Products and Scale

Methods as described in Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, Summary (2020) (Ex. E) and represented by the illustration below, show primary nucleic acid-tagged cDNA molecules, with the primary nucleic acid-tagged cDNA molecules tagged ("barcoded" or "indexed") with primary nucleic acid tags differing from the primary nucleic acid-tagged cDNA molecules of a second primary aliquot:



Also, Scale's three-level stand-alone scRNA-seq indexing kit purports to use "repeated rounds of distributing cells across plates and subsequent well-based barcoding," and as a result, the "repeated rounds creates a unique combinatorial barcode for the molecules in each individual cell."  Ex. M. Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (e) of claim 1.

81.    **(f) "combining the plurality of primary aliquots"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (f).  For example, Scale states, "[t]hese barcoded cells are pooled…"  Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023).  This step is depicted in a figure in Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, Summary (2020) (Ex. E) sci-RNA-seq3 publication (red circle added):



*See also id.* ("Nuclei from all wells were pooled together and spun down at 500×g for 10 min.").

The schematic below also demonstrates how the combinatorial indexing technology employed in Scale's three-level stand-alone scRNA-seq indexing kit purportedly distributes and subsequently combines primary aliquots:



Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (f) of claim 1.

82. **(g) "dividing the combined primary aliquots of (f) into a plurality of secondary aliquots, wherein the plurality of secondary aliquots comprises a first secondary aliquot and a second secondary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (g).  For example, Scale indicates that "[t]he number of cells or nuclei profiled can be scaled up exponentially with repeated rounds of pooling and splitting to enable single-cell experiments with up to 96 samples and 100,00 to millions of cells…"  Ex. L at 5, Scale

61

Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023).  In addition, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (Ex. E) also describes a modified method of sci-RNA-seq 3' which uses "fixed cells" that "were processed similarly to the fixed nuclei…"  As shown below, a representative schematic of the protocol of the Scale Methods shows the combined primary aliquots divided into a plurality of secondary aliquots:



Ex. E, Summary, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red circle added). Moreover, a representative schematic of the protocol of the Scale Methods also illustrates the combined primary aliquots divided into a plurality of secondary aliquots:



Ex. F, Cao, J., et al., The single-cell transcriptional landscape of mammalian organogenesis. *Nature* 566, 496–502 (2019) Supplementary Materials Figure 1a ("Nuclei [or cells] were then resuspended in nuclei wash buffer and redistributed into another four 96-well plates…").  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (g).

83.    **(h) "providing secondary nucleic acid tags comprising a third barcode sequence to the plurality of secondary aliquots, wherein the secondary nucleic acid tags comprising a third barcode sequence provided to the first secondary aliquot are different in sequence from the secondary nucleic acid tags provided to the second secondary aliquot"**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (h).  For example, Scale asserts that "[t]he combination of barcodes from multiple rounds creates an increasingly diverse pool of labels, allowing the number of cells profiled to be scaled up exponentially with repeated rounds of pooling and splitting or additional barcodes in each round. In this way, hundreds of thousands to millions of cells can be profiled with a very low probability of two cells sharing a combination."  Ex. L at 5, Scale Biosciences, ScaleBio Technology and Workflow Video, https://scale.bio/ (last visited Jan. 31, 2023). Cao Summary Figure, shown below, presents another example:



Ex. E, Summary, Cao, J., et al., A human cell atlas of fetal gene expression, 370 *Science* 808, (2020) (red circle added).  Additionally, Scale states that its three-level stand-alone scRNA-seq indexing workflow "uses repeated rounds of distributing cells across plates and subsequent well-based barcoding," and therefore, the "repeated rounds creates a unique combinatorial barcode for the molecules in each individual cell."  Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (h) of claim 1.

84.    **(i) "coupling the provided secondary nucleic acid tags comprising a third barcode sequence of (h) to the primary nucleic acid-tagged cDNA molecules of (e) thereby tagging the primary nucleic acid-tagged cDNA molecules with the secondary nucleic acid tags comprising a third barcode sequence and producing secondary nucleic acid-tagged cDNA molecules, whereby the secondary nucleic acid-tagged cDNA molecules of the first secondary aliquot are tagged with a different secondary nucleic acid tag than the secondary nucleic acid-tagged cDNA molecules of the second secondary aliquot."**

Use of the Accused Scale Products, including by the Scale Methods, includes a step that meets limitation (i).  For example, Scale describes their method of combinatorial indexing based single-cell profiling as allowing for "[t]he number of cells or nuclei profiled can be scaled up exponentially with repeated rounds of pooling and splitting to enable single-cell experiments."  Ex. L at 3-4, Scale Bioscience, *Technology*, How it Works, https://scale.bio/#technology (last visited Jan. 30, 2023); *see also, e.g.*, Ex. J, Martin, B., et al. An optimized protocol for single cell transcriptional profiling by combinatorial indexing, *Nat. Protoc.* 18(1), 188-207(2023) ("After indexed reverse transcription, the nuclei are pooled and split into a new plate to add a second index via ligation, and then the nuclei are pooled and split again. After second-strand synthesis and tagmentation, the third index is added by PCR.").  Scale's three-level stand-alone scRNA-seq indexing kit purports to provide a workflow implementing "repeated rounds" of well-based barcoding to create "a unique combinatorial barcode for the molecules in each individual cell," and suggests that the "3 rounds of indexing produce 3.5 million unique combinations."



Ex. M.  Use of the Accused Scale Products, including by the Scale Methods, therefore meets limitation (i) of claim 1.

85.     On information and belief, Scale has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '856 Patent, by contributing to the infringement of others through the making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the Accused Scale Products.

86.     Parse began marking certain Parse products as practicing the '856 Patent in September of 2022.

87.     Scale has been on actual notice of the family from which the '856 Patent issued since no later than December 31, 2021, via a letter dated December 31, 2021, from Parse's counsel to Scale's counsel.  On information and belief, Scale has been on notice of the '856 Patent since its issuance.  Scale nevertheless willfully continues to make, use, offer to sell, sell, and/or import in the United States the Accused Scale Products.

88.     Counterclaimants are and have been irreparably damaged by Scale's infringement, and unless Scale's infringing activities are enjoined by this Court, Counterclaimants will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to their reputation, relationships, and goodwill with their customers, vendors, distributors, industry professionals, and others.

**TORT COUNTERCLAIMS**
**(BY PARSE)**

**COUNT IV**
**(UNFAIR COMPETITION, LANHAM ACT SECTION 43(A))**

89.　　Parse incorporates by reference and re-alleges the foregoing paragraphs of its Counterclaims.

90.　　Scale has made false and misleading statements in a commercial advertisement to actual and/or potential customers of Parse regarding the intellectual property rights of the parties, and Scale has caused these statements to enter into interstate commerce.

91.　　Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

92.　　Scale made these false and misleading statements knowing they were false and misleading and in bad faith.

93.　　Scale's statements are likely to confuse or deceive a substantial segment of its audience, and this deception is material, in that it is likely to influence the purchasing decision.

94.　　Scale's false and misleading statements constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95.　　Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

96.　　Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.　Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this

Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

**COUNT V**
**(UNFAIR COMPETITION, RCW 19.86.020)**

97.     Parse incorporates by reference and re-alleges the foregoing paragraphs of its Counterclaims.

98.     Scale has made false and misleading statements to actual and/or potential customers of Parse regarding the intellectual property rights of the parties.

99.     Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

100.    Scale made these false and misleading statements knowing they were false and misleading and in bad faith.

101.    Scale's statements are likely to confuse or deceive a substantial segment of its audience, and this deception is material, in that it is likely to influence the purchasing decision.

102.    Scale's false and misleading statements have occurred in the conduct of trade or commerce and have had, and unless enjoined by this court, will continue to have, an impact on the public interest.

103.    Scale's false and misleading statements constitute unfair competition, an unfair or deceptive act in trade, or an unfair or deceptive practice, under Washington State's Consumer Protection Act, RCW 19.86.020.

104.    Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

105.     Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## COUNT VI
## (UNFAIR COMPETITION, COMMON LAW)

106.     Parse incorporates by reference and re-alleges the foregoing paragraphs of their Counterclaims.

107.     Scale has made false and misleading statements to actual and/or potential customers of Parse regarding the intellectual property rights of the parties.

108.     Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

109.     Scale made these false and misleading statements knowing they were false and misleading and in bad faith.

110.     Scale's statements are likely to confuse or deceive a substantial segment of its audience, and this deception is material, in that it is likely to influence the purchasing decision.

111.     Scale's false and misleading statements have occurred in the conduct of trade or commerce and have had, and unless enjoined by this court, will continue to have, an impact on the public interest.

112.     Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

113.     Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

### COUNT VII
### (TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY)

114.     Parse incorporates by reference and re-alleges the foregoing paragraphs of its Counterclaims.

115.     Parse has valid business expectancies with actual and potential customers.

116.     Scale had knowledge of these expectancies.

117.     Scale has made false and misleading statements to actual and/or potential customers of Parse regarding the intellectual property rights of the parties.

118.     Scale has induced termination of Parse business expectancies by encouraging actual and/or potential customers not to deal with Parse.

119.     Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

120.     Scale made these false and misleading statements knowing they were false and misleading and in bad faith.

121.    Scale's false and misleading statements constitute tortious interference with business expectancy.

122.    Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

123.    Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## COUNT VIII
### (TRADE LIBEL)

124.    Parse incorporates by reference and re-alleges the foregoing paragraphs of its Counterclaims.

125.    Scale published false and misleading statements to actual and/or potential customers of Parse regarding the intellectual property rights of the parties.

126.    Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

127.    Scale made these false and misleading statements knowing they were false and misleading, with malice, and in bad faith.

128.    Scale's false and misleading statements are defamatory *per se*.

129.     Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

130.     Scale's false and misleading statements are harmful to Parse's pecuniary interests and are intended to harm Parse's pecuniary interests.

131.     Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## COUNT IX
### (DEFAMATION)

132.     Parse incorporates by reference and re-alleges the foregoing paragraphs of its Counterclaims.

133.     Scale published false and misleading statements to potential customers of Parse regarding the intellectual property rights of the parties.

134.     Scale's statements are false and misleading at least in light of patents owned by UW, which are licensed to Parse and not to Scale.

135.     Scale made these false and misleading statements knowing they were false and misleading, with malice, and in bad faith.

136.     Scale's false and misleading statements are defamatory *per se*.

137.     Scale's false and misleading statements have a tendency to harm, have harmed, and will continue to harm Parse and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

138.     Scale's false and misleading statements are harmful to Parse's pecuniary interests and are intended to harm Parse's pecuniary interests.

139.     Parse has been and is likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the good will associated with its products.  Parse is and has been irreparably damaged in its business or property by Scale's false and misleading statements, and unless Scale's false and misleading statements are enjoined by this Court, Parse will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## PRAYER FOR RELIEF

WHEREFORE, Parse prays for the following relief:

### Relief on the Asserted Scale Patents

a)     A judgment on the Complaint in favor of Parse and that Scale not be awarded any relief on the Complaint;

b)     A judgment declaring that the manufacture, use, offer for sale, sale, or importation of the Accused Parse Products do not infringe any valid claim of the Asserted Scale Patents; and

c)     A judgment that Scale's filing of this case, as well as its refusal to narrow the case or dismiss it, constitutes an exceptional case justifying an award of attorneys' fees pursuant to 35 U.S.C. § 285.

WHEREFORE, Counterclaimants pray for the following relief:

### Relief on the Asserted Parse Patents

d)      A judgment that Scale has directly and indirectly infringed one or more claims of each of the Asserted Parse Patents;

e)      A judgment that Scale's infringement has been willful;

f)      A judgment permanently enjoining Scale, its officers, directors, agents, servants, and employees, affiliates, subsidiaries, or others controlled by Scale, and all persons in active concert or participation with Scale, from infringing the Asserted Parse Patents—including direct infringement or indirect infringement by inducement and/or contributory infringement of the Asserted Parse Patents;

g)      An award of damages adequate to compensate Counterclaimants for the infringement that has occurred, together with prejudgment interest from the date the infringement began, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284;

h)      An award of increased damages under 35 U.S.C. § 284 of up to three times the amount of damages assessed;

i)      A finding in favor of Counterclaimants that this is an exceptional case under 35 U.S.C. § 285 as to the Counterclaims, and an award to Counterclaimants of their costs, including their reasonable attorneys' fees, and other expenses incurred in connection with the Counterclaims;

j)      A judgment awarding Counterclaimants their costs, attorneys' fees and other relief, both legal and equitable, to which they may be justly entitled; and

k)      A judgment awarding Counterclaimants such other and further relief as the Court deems just and proper.

WHEREFORE, Parse prays for the following relief:

**Relief on Parse's Tort Counterclaims**

l)      A judgment in favor of Parse and against Scale on the Tort Counterclaims of unfair competition, tortious interference, trade libel, and defamation;

m)      A judgment permanently enjoining and restraining Scale, its shareholders, agents, servants, representatives and employees, and any other persons acting in concert with it or otherwise participating in their aid, from making false and misleading statements that have a tendency to harm Parse, its business relationships, the conduct of its business, or its ability to enter into sales and business relationships, including without limitation statements that are the same as or similar to the False Warning;

n)      An injunction requiring Scale to correct all prior false and misleading statements that have a tendency to harm Parse, its business relationships, the conduct of its business, or its ability to enter into sales and business relationships, including without limitation statements that are the same as or similar to the False Warning;

o)      An award of damages and civil penalties, together with prejudgment interest;

p)      An award of enhanced damages under 15 U.S.C. § 1117(a) and RCW 19.86.090;

q)      A judgment awarding Parse its costs, attorneys' fees and other relief, both legal and equitable, to which it may be justly entitled; and

r)      A judgment awarding Parse such other and further relief as the Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Counterclaimants demand a jury trial, pursuant to Fed. R. Civ. P. 38(b), and D. Del. Local Rule 38.1, as to all issues that may be tried by a jury.

DATED:  August 30, 2023

*Of Counsel:*

Anne Elise Herold Li
James K. Stronski
Robert B. Kornweiss
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY 10022-2524
Telephone: (212) 223-4000
ALi@crowell.com
JStronski@crowell.com
RKornweiss@crowell.com

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)
Robert M. Vrana (# 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
rvrana@ycst.com

*Attorneys for Parse Biosciences, Inc. and the University of Washington*

75