# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCALE BIOSCIENCES, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> *Defendant*, | **REDACTED VERSION** <br> **Filed: April 24, 2025** <br><br><br> Civil Action No. 1:22-cv-01597-CJB |
| PARSE BIOSCIENCES, INC. and UNIVERSITY OF WASHINGTON, <br><br> *Counterclaim-Plaintiffs*, <br><br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> *Counterclaim-Defendant*. |  |

**DECLARATION OF LIOR PACHTER, PH.D. IN
RESPONSE TO THE MARCH 24, 2025 SECOND DECLARATION OF
<u>PETER A. SIMS, PH.D. REGARDING THE ASSERTED SCALEBIO CLAIMS</u>**

████████████████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     THE PERSON OF ORDINARY SKILL IN THE ART ....................................2

III.    CLAIM CONSTRUCTION....................................................................................3

    A.    Claims 1, 2, 6−11, and 14 of the '752 Patent Include Kits Comprising a UBA within Their Scope. ..............................................................................3

    B.    Claim 11 of the '442 Patent Encompasses Indirectly Hybridizing the Common Linker to a Target RNA. ...................................................................4

        1.    A POSA would understand a common linker to hybridize indirectly to a target RNA in view of the '442 patent specification, the language of the claims, and the plain and ordinary meaning of "common." ...................................................................5

        2.    Dr. Sims infringement opinions ███████████████████ ......................................................................7

    C.    Claims 1, 2, 5, and 6 of the '256 Patent.................................................................8

IV.     LACK OF WRITTEN DESCRIPTION AND ENABLEMENT ........................9

    A.    Claims 1, 2, 6−11, and 14 of the '752 Patent........................................................9

    B.    Claim 11 of the '442 Patent and Claims 1, 2, 5, and 6 of the '256 Patent.............10

        1.    Dr. Sims Statements that Have No Bearing on the Lack of Written Description and Enablement of the '442 and '256 Patent Claims.............10

        2.    Dr. Sims Does Not Address that Nucleic Acid Aptamers Are Not Limited to Interacting with Nucleic Acid Targets by Hybridization.........11

            a.    The common specification of the '442 and '256 patents discloses that aptamers are obtained through an iterative in vitro selection process....................................................................12

            b.    The art discloses that nucleic acid aptamers interact with targets using more than hybridization through Watson−Crick base pairing............................................................13

    C.    My Conclusions Regarding the Second Sims Declaration's Overlooking of How Nucleic Acid Aptamers Interact with Their Nucleic Acid Targets.............20

     D.     Nucleic Aptamers that Utilize Both Hybridization- and Non-Hybridization-based Interactions Would Meet the Limitations of Claim 11 of the '442 Patent and Claims 1, 2, 5, and 6 of the '256 Patent............................23

V.     RESPONSE TO DR. SIMS'S OPINION REGARDING DESIGNING AN ANTIBODY UBA FOR A GIVEN TARGET MOLECULE.............................................23

VI.     CROSS-REACTING ANTIBODIES ARE NOT DESIRABLE .......................................24

VII.     THE SPECIFICATION OF THE SCALEBIO ASSERTED PATENTS DISCLOSES UBAS THAT UNIQUELY BIND TO MORE THAN ONE SPECIFIC TARGET MOLECULE. ....................................................................................25

██████████████████████

## I.    INTRODUCTION

1.    I submit this Declaration on behalf of Parse Biosciences, Inc. ("Parse") in the above matter. If called to testify at trial in the above matter, I may testify with regard to the opinions and bases set forth below.

2.    **Exhibit A** attached to this Declaration contains a true and correct copy of excerpts from my October 10, 2024 "Opening Expert Report of Lior Pachter, Ph.D. on the Invalidity of U.S. Patent Nos. 10,626,442, 10,982,256, 11,512,341, and 11,634,752," ("Pachter Opening Rpt.") which I provided in this case.

3.    **Exhibit B** attached to this Declaration contains a true and correct copy of excerpts from my December 13, 2024 "Reply Expert Report of Lior Pachter, Ph.D. on the Invalidity of U.S. Patent Nos. 10,626,442, 10,982,256, 11,512,341, and 11,634,752," ("Pachter Reply Rpt.") which I provided in this case.

4.    I incorporate by reference those excerpted portions of my expert reports into this Declaration as if set forth herein.

5.    My professional and educational background are set forth in my Opening Report. *See* Ex. A, ¶¶ 4−9.

6.    In this Declaration, I provide opinions in response to the March 24, 2025 Second Declaration of Peter A. Sims, Ph.D. Regarding the Asserted ScaleBio Claims ("Second Sims Declaration") (D.I. 368).

7.    In preparing this Declaration, I have considered each of U.S. Patent No. 10,626,442 ("the '442 Patent"), U.S. Patent No. 10,982,256 ("the '256 Patent"), U.S. Patent No. 11,521,341 ("the '341 Patent"), and U.S. Patent No. 11,634,752 ("the '752 Patent") (collectively, the "ScaleBio Asserted Patents"), and each of the documents cited herein, in light

██████████████████████████

of general knowledge in the art before the relevant date.[1] I understand that each of the aforementioned patents is assigned to Scale Biosciences, Inc. ("ScaleBio"). In formulating my opinions, I have relied upon my experience, education, and knowledge in the relevant art. In formulating my opinions, I have also considered the viewpoint of a person of ordinary skill in the art ("POSA," as defined below) (*i.e.*, one of ordinary skill in the field of molecular biology) prior to the relevant date.

## II.    THE PERSON OF ORDINARY SKILL IN THE ART

8.    I understand that patent claims are interpreted from the perspective of a POSA to which the patent pertains. I understand that a POSA is a hypothetical person who may have the combined understanding of those of ordinary skill in various fields pertinent to the subject matter of a patent at the time of the invention. I further understand that a POSA is presumed to know the teachings of all prior art at the time of the invention.

9.    I previously provided my understanding of a POSA and my opinion regarding the level of skill of a POSA in my Opening Report. Ex. A, ¶¶ 10−12. As I stated in my Reply Report, I do not perceive any significant differences between the levels of skill of a POSA proposed in my Opening Report and proposed by Dr. Sims in his Rebuttal Report that would change my opinions. Ex. B., ¶ 8. My opinions would remain the same under either of the proposed definitions of a POSA. I had the qualifications of a POSA under either of the proposed definitions of a POSA, as of the relevant date.

---

[1] As discussed in Section VI of my Opening Report, it is my opinion that the ScaleBio Asserted Patents are not entitled claim priority to any application filed earlier than May 17, 2017 or September 28, 2018.

██████████████████████

## III.    CLAIM CONSTRUCTION

10.    I set forth my understanding of the legal standards for claim construction in my Opening Report. Ex. A, ¶¶ 67−72. I also set forth in my Opening Report my understanding of certain terms or phrases from claims in the ScaleBio Asserted Patents that are agreed upon constructions from the parties or have been construed by the Court. *Id.* at ¶¶ 73−80. I offer no opinion on the propriety of the Court's claim constructions.

11.    Dr. Sims discusses his understanding of terms of the ScaleBio Asserted Patents in ¶¶ 10−28 of the Second Sims Declaration. I have no opinions regarding Dr. Sims's understandings, other than to state the following.

### A.    Claims 1, 2, 6−11, and 14 of the '752 Patent Include Kits Comprising a UBA within Their Scope

12.    I understand that an independent claim includes within its scope elements recited within its dependent claims.

13.    Claim 5 of the '752 patent recites:

> The kit of claim 1, wherein the APS oligonucleotides of at least one of the sets of APS oligonucleotides comprise a unique binding agent (UBA).

'752 patent, 58:13−15. Because claim 5 depends from claim 1 of the '752 patent, I understand that the kits of claim 1 must necessarily include APSs comprising a UBA within in its scope.

14.    The functional language of claim 1 also supports this conclusion. Claim 1 requires that the claimed APS oligonucleotides "are configured to link together in an ordered fashion in the presence of the one or more linking oligonucleotides *to form all or part of a cell or organelle origination barcode*." *Id.* at 57:66−58:3 (emphasis added). To "form all or part of a cell or organelle origination barcode," the APSs must function to identify the cell or organelle from which a given target molecule originates.

███████████████████████

15.     Yet, the only way an APS would be able to identify the cell or organelle from which a given target molecule originates requires a UBA. As I stated in my Opening and Reply Reports, the ScaleBio Asserted Patents do not disclose or enable any method of coupling an APS to a target molecule other than through a UBA binding the target molecule. Ex. A, ¶¶ 185, 188, 190−192, 210, 212, 218, 461−463; Ex. B, ¶¶ 87−102, 114−117, 132−134, 142−146, 168−170, 182, 268−273.

16.     Given the above, a POSA would understand that a kit containing a UBA is within the scope of claim 1 of the '752 patent.

17.     And because none of the other asserted claims of the '752 patent otherwise limit the relevant scope as to a UBA, they also must include a UBA within their scope. *See* '752 patent, claims 2, 6−11, and 14.

**B.      Claim 11 of the '442 Patent Encompasses Indirectly Hybridizing the Common Linker to a Target RNA**

18.     Claim 1 of the '442 patent recites, in part:

A method of uniquely labeling target molecules within a plurality of cells, the method comprising:

(a) coupling a common linker sequence to target molecules within the plurality of cells….

'442 patent, 57:62−65.

19.     Claim 11 depends from claim 1 and further recites, "step (a) comprises hybridizing the common linker to the RNA". *Id.* at 58:62−64.

20.     Dr. Sims opines that this phrase in claim 11 would be understood by a POSA as requiring the "common linker" to be a nucleic acid. Second Sims Declaration, ¶ 20. Dr. Sims also opines that when practicing claim 11 using an aptamer as a UBA comprising a common linker, the aptamer must be a nucleic acid aptamer. *Id.* at ¶¶ 22, 56.

4

███████████████████

21.    To support his opinions, Dr. Sims points to several references disclosing how hybridization works scientifically. *Id.* at ¶¶ 17−21, 38−43, 50−52. From this and disclosures in the '442 patent specification, Dr. Sims concludes that an aptamer functions identically to a primer when binding a nucleic acid target. *Id.* at ¶¶ 44−49, 52−59. That is, it is Dr. Sims's opinion that nucleic acid aptamers use only Watson-Crick base pairing rules. *Id.* at ¶ 59. As discussed below in Section IV.B., this comparison ignores how nucleic acid aptamers can function to bind nucleic acid aptamers outside of Watson-Crick base pairing.

        **1.    A POSA would understand a common linker to hybridize indirectly to a target RNA in view of the '442 patent specification, the language of the claims, and the plain and ordinary meaning of "common."**

22.    In terms of claim construction, a POSA would understand the element of "hybridizing the common linker to the RNA" to encompass indirect hybridization. That would include indirect hybridization of the common linker through direct hybridization of a nucleic acid aptamer to a target RNA molecule.

23.    This is because, *first*, directly hybridizing a common linker to a target RNA would make no sense in the context of how a common linker is disclosed in the '442 patent. Indeed, the '442 patent specification always discloses and depicts the claimed "common linker" as being coupled to the epitope specific barcode ("ESB"). '442 patent, 2:37−38, 3:28−29, 4:56−57, 7:60−62, 9:5−6, 10:26−32, 11:17−23, 20:49−53, 24:62−25:6, 34:17−24, 34:53−59, 35:60−62. And the '442 patent always discloses and depicts the ESB as being coupled to the UBA. *See, e.g.*, Ex. A, ¶¶ 190−192; Ex. B, 142−146. For example, Figure 2 of the '442 patent shows the common linker coupled to an ESB, which is in turn coupled to a UBA:



*Id.* at Fig. 2. Likewise, Figures 3 and 4 of the '442 patent depict the common linker coupled to an ESB coupled to a UBA:



*Id.* at Fig. 3



6

█████████████████████████████████████████████

*Id.* at Fig. 4.

24.    *Second*, having the common linker directly hybridized to the target RNA would also not make sense in the claimed method. To that end, the claimed method requires coupling the common linker to primary nucleic acid tags, *e.g.*, APSs. This can be seen in Figure 4 of the '442 patent, reproduced above. If the common linker were fully hybridized along its whole length to a target RNA, it would not have any bases available for coupling to the primary nucleic acid tag.

25.    A POSA, therefore, would understand in view of the '442 patent specification, the claim language, and the plain and ordinary meaning of the term "common" that the "common linker" can associate or "hybridize" to the target indirectly.

26.    In other words, claim 11 of the '442 patent should be understood to encompass nucleic acid aptamers comprising a common linker that indirectly hybridizes to the target RNA through an aptamer's hybridization and association with the target RNA.

**2.    Dr. Sims's infringement opinions** ███████████████████
████████████████████.

27.    Dr. Sims's infringement opinions ████████████. In alleging infringement of the "common linker" element in the claims of the '442 patent by Parse's products, Dr. Sims states that "██████████████████████████████████████████ ████████████████████████████████." Ex. C (Sims Opening Rpt.), ¶ 121.

28.    Dr. Sims also provides ████████████████████████████ ██████████████████████████████████:



*Id.* (annotation in original).

29.    Further, to accuse Parse's products of infringement of the element of claim 11 of the '442 patent that recites "hybridizing the common linker to the RNA," Dr. Sims points to ████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. *Id.* at ¶ 182.

30.    More specifically, Dr. Sims alleges that t███████████████████████ ████████████████████████████████████████████████████ ██████████████████████████. *Id.*; *see also* ¶ 28, above (████████████████████ ████████████████████████████████████████). Dr. Sims points to ██████████████████████████████████████████████████████████ ██████████████████████. Second Sims Declaration, ¶ 182; *see also* ¶ 28, above.

**C.    Claims 1, 2, 5, and 6 of the '256 Patent**

31.    Claim 1 of the '256 patent recites, in part:

A method for identifying whether a plurality of nucleic acid targets is present in a plurality of cells comprising:

a) binding to the nucleic acid targets in the plurality of cells a plurality of unique binding agent (UBA) nucleic acid tags….

'256 patent, 58:10−14.

████████████████████████████

32.     Dr. Sims states that "'binding to the nucleic acid targets in the plurality of cells a plurality of unique binding agent (UBA) nucleic acid tags' in step (a) [of claim 1] includes hybridization of those nucleic acid." Second Sims Declaration, ¶¶ 23−27. I note that Dr. Sims states "includes," which does not exclude other mechanisms by which nucleic acid targets can be bound by UBA nucleic acid tags, such as by aptamers that use a combination of hybridization and non-hybridization mechanisms to bind to a target nucleic acid molecule, as discussed in Section IV.B., below.

## IV.    LACK OF WRITTEN DESCRIPTION AND ENABLEMENT

33.     I set forth my understanding of the legal standards for written description and enablement in my Opening Report. Ex. A, ¶¶ 20−26.

### A.    Claims 1, 2, 6−11, and 14 of the '752 Patent

34.     As discussed above in ¶¶ 12−16, I understand within the scope of claims 1, 2, 6−11, and 14 of the '752 patent are kits that also contain a UBA. But, as set forth in my Opening and Reply Reports, the '752 patent does not provide written description support or enablement for the full scope of UBAs that bind to the full scope of potential target molecules encompassed by those claims. Ex. A, ¶¶ 162−178, 194−196, 205, 216, 217; Ex. B, ¶¶ 53−72, 147−146, 181.

35.     Dr. Sims's opinions regarding how APSs and linker oligos hybridize are of no moment. That is because how hybridization works scientifically is of no relevance to the lack of written description support and enablement for the full scope of UBAs encompassed by claims 1, 2, 6−11, and 14 of the '752 patent, which includes both UBA-antibodies and UBA-aptamers.

36.     I will also note that Figure 4 of the '752 patent to which Dr. Sims cites (*see* ¶¶ 23−24, above) does not depict direct hybridization of a common linker to a target molecule, which is relevant to the understanding of claim 11 of the '442 patent I discuss above in ¶¶ 12−16. Second Sims Declaration, ¶ 35.

37.    Notwithstanding the irrelevance of Dr. Sims's discussions regarding the '752 patent claims, as discussed below in Sections IV.B. and V, Dr. Sims's opinions in the Second Sims Declaration do not address the lack of written description and enablement support for antibody and apatamer UBAs.

**B.    Claim 11 of the '442 Patent and Claims 1, 2, 5, and 6 of the '256 Patent**

38.    I set forth my opinions regarding the lack of written description and enablement of claim 11 of the '442 patent and claims 1, 2, 5, and 6 of the '256 patent in my Opening and Reply Reports. Ex. A, ¶¶ 162−181, 190−209; Ex. B, ¶¶ 53−103, 122−131, 142−163, 174−178.

**1.    Dr. Sims's Statements that Have No Bearing on the Lack of Written Description and Enablement of the '442 and '256 Patent Claims**

39.    For claim 11 of the '442 patent and claims 1, 2, 5, and 6 of the '256 patent, Dr. Sims spends several paragraphs discussing hybridization of nucleic acids. Second Sims Declaration, ¶¶ 38−43. These paragraphs set forth scientific facts regarding nucleic acid hybridization, with which I agree. Nevertheless, these paragraphs are not relevant to the issues Dr. Sims overlooks with respect to how nucleic acid aptamers function when binding to nucleic acid targets.

40.    Next, Dr. Sims discusses portions of the common specification of the '442 and '256 patents and opines that the "UBA can be 'an antisense DNA for a target mRNA,' which refers to DNA that is complementary to mRNA and so can bind to the mRNA." *Id.* at ¶¶ 45−48. As I stated in my Opening Report, this is not disclosure of a UBA acting as a primer, but rather a probe, which Dr. Sims appears to acknowledge. *See, e.g.*, Ex. A, ¶ 166; Second Sims Declaration, ¶¶ 47−48. Nevertheless, my opinions regarding this disclosure of "an antisense DNA for a target mRNA" in the '442 and '256 patents has no bearing on the lack of written description and enablement for the full scope of aptamers and possible target molecules

encompassed by claim 11 of the '442 patent and claims 1, 2, 5, and 6 of the '256 patent, as discussed below.

41.    Dr. Sims's statements regarding the knowledge in the art regarding reverse transcription of poly-T containing mRNAs also have no bearing on the lack of written description and enablement for the full scope of aptamers and possible target molecules encompassed by claim 11 of the '442 patent and claims 1, 2, 5, and 6 of the '256 patent, as discussed below. Second Sims Declaration, ¶¶ 49–53.

### 2.    Dr. Sims Does Not Address that Nucleic Acid Aptamers Are Not Limited to Interacting with Nucleic Acid Targets by Hybridization

42.    Dr. Sims takes the position that "[t]he manner in which nucleic acid aptamers can bind to nucleic acid targets is the same as the manner by which any other nucleic acids can bind to such targets—namely, hybridization." Second Sims Declaration, ¶ 57. Dr. Sims further states that "nucleic acid aptamers that hybridize to nucleic acid targets … can be designed directly using complementary sequences selected according to the Watson-Crick base pairing rules." *Id.* at ¶ 59. From this, Dr. Sims concludes that "designing, synthesizing, and using a nucleic acid aptamer to bind a nucleic target is no different or more challenging than doing so for any other nucleic acid probe or primer and well within the skill of a POSA." *Id.* Dr. Sims does not cite any evidence showing that is how nucleic acid aptamers function to bind nucleic acid targets, however.

43.    In reaching that conclusion, Dr. Sims also completely overlooks that nucleic acid apatamers do not interact with target nucleic acid molecules by solely the simple mechanics of Watson-Crick base-pairing hybridization. Dr. Sims does not address the intricacies of aptamer structures and mechanics beyond Watson-Crick base-pairing, nor why nucleic acid aptamers should be found described or enabled by the '442 and '256 patents when taking that into account.

████████████████████████████

a. **The common specification of the '442 and '256 patents discloses that aptamers are obtained through an iterative *in vitro* selection process.**

44.    As Dr. Sims recognizes (at ¶ 58) that the common specification of the '442 and '256 patents discloses that aptamers, including nucleic acid aptamers, are obtained through a process called <u>s</u>ystematic <u>e</u>volution of <u>l</u>igands by <u>e</u>xponential <u>a</u>mplification ("SELEX"):

> Nucleic acid aptamers, including speigelmers, are identified by an in vitro selection process known as systematic evolution of ligands by exponential amplification (SELEX). In the SELEX process very large combinatorial libraries of oligonucleotides, for example 1014 [sic] to 1015 [sic] individual sequences, often as large as 60-100 nucleotides long, are routinely screened by an iterative process of in vitro selection and amplification. Most targets are affinity enriched within 8-15 cycles and the process has been automated allowing for faster aptamer isolation.

*See*, *e.g.*, '442 patent, 19:35−44.[2]

45.    Dr. Sims, however, discounts this passage as not being relevant "to identify[ing] nucleic acid aptamers that hybridize to nucleic acid targets" because he believes "those aptamers can be designed directly using complementary sequences selected according to the Watson−Crick base pairing rules." Second Sims Declaration, ¶¶ 58−59. Dr. Sims, thus, concludes that "designing, synthesizing, and using a nucleic acid aptamer to bind a nucleic [acid] target is no different or more challenging than doing so for any other nucleic acid probe or primer." *Id.* at ¶ 59.

46.    I will note, however, at his deposition, Dr. Sims testified that SELEX could be used to design nucleic acid aptamers for nucleic acid targets. Dr. Sims was pointed to a passage

---

[2] It appears that the '442 patent contains typographical errors in reciting "1014 to 1015 sequences." *Id.* This is because, in the context of SELEX, a POSA would understand that this statement should be a reference to $10^{14}$ to $10^{15}$ sequences to generate a sufficient number of variable sequences for use in the method. *See*, *e.g.,* ¶¶ 51 and 63, below.

12

in the '256 patent that states that "[a]ptamers bind target molecules in a highly specific, conformation-dependent manner" and agreed with it. Ex. D (Sims Tr.), 107:3−18 (discussing '256 patent, 19:30−33). Dr. Sims also agreed that, in the context of the '256 patent, nucleic acid aptamers could be the UBA that binds nucleic acid targets. *Id.* at 115:20−116:10. And Dr. Sims testified that such aptamers could be obtained through directed evolution processes, such as SELEX. *Id.* at 116:11−117:16, 121:21−122:8, 124:4−23.

47.    As discussed below in Section IV.B.2.b., Dr. Sims's new opinions in his Second Declaration overlook the non-Watson-Crick based mechanics of how nucleic acid aptamers interact with a target molecule and the complex, trial and error process of strategies like SELEX. Indeed, the number of possible aptamers capable of being produced with SELEX is unknowably vast, even for one target, much less all of the nucleic acid targets within the scope of claim 11 of the '442 patent and 1, 2, 5, and 6 of the '256 patent. Indeed, as I testified at my deposition, "There's many, many different antibodies, [an] enormous unfathomable number of aptamers.… [I]t's very hard to know amongst this enormous universe of aptamers [that] might be 200 base pairs long. So that's something like $4^{200}$ different aptamers you could consider to try to bind the specific, let's say, protein you would -- from this unfathomably large universe, you would have to go select some aptamers." Ex. E (Pachter Tr.), 137:21−139:20, Errata at 10.

### b.    The art discloses that nucleic acid aptamers interact with targets using more than hybridization through Watson-Crick base pairing.

48.    Dr. Sims's narrow, unsupported view of how nucleic acid aptamers interact with nucleic acid targets ignores that the art as of the relevant date for the ScaleBio Asserted Patents discloses that nucleic acid aptamers interact with targets using more than Watson-Crick base pairing rules.

49.    In fact, nucleic acid "[a]ptamers are RNA or DNA oligonucleotides identified within a randomly synthesized library, through an in vitro selection procedure," with "[t]he selected candidates display[ing] a pre-determined property of interest with respect to a given target." Ex. F (Toulmé, J., *et al.*, "Regulating eukaryotic gene expression with aptamers," *FEBS Lett.* 567(1):55−62 (June 1, 2004) ("Toulmé")), 55.

50.    To that end, aptamers are not always intentionally designed and obtained "according to established rules, e.g., Watson-Crick base pairing for antisense" nucleic acids. *Id.* Rather, iterative processes, such as SELEX, can be used to obtain aptamers that are "oligonucleotide ligands of high affinity" for a desired target. *Id.* An example of such nucleic acid aptamers, coined R06 and 5−39, use non-Watson-Crick base pairing to interact with their target nucleic acids, in addition to hybridization.

            i.    **The R06 aptamer uses more than Watson-Crick-based hybridization to interact with its target RNA.**

51.    The R06 aptamer was discovered by Frédéric Ducongé and Jean-Jacques Toulmé in 1999. *See* Ex. G (Ducongé, F. & Toulmé, J., "In vitro selection identifies key determinants for loop-loop interactions: RNA aptamers selective for the TAR RNA element of HIV-1," *RNA* 5(12):1605−1614 (Dec. 1999) ("Ducongé")), 1606. Using SELEX on a starting pool of about $10^{11}$ oligonucleotide candidates of 98 nucleotides in length, Ducongé and Toulmé found the R06 aptamer to be a high affinity ligand for the TAR element in the HIV-1 RNA sequence. *Id.* at 1605−1606. The TAR element is a 59 nucleotide long stem-loop at the 5′ end of every HIV-1 RNA transcript. *Id.* at 1605.

52.    Through the iterative SELEX process, Ducongé and Toulmé found "a consensus octamer, 5′-GUCCCAGA-3′, the six central bases of which were complementary to the TAR RNA loop," *i.e.*, they could hybridize with the TAR element in what is termed a "kissing

complex." Ex. F, 56. "However, complementarity between the loops did not fully account for the binding capability of R06, suggesting that non-canonical interactions between TAR and the aptamer were crucial." *Id.* Indeed, Toulmé reported that "[c]ompared to the aptamer, the selected octameric sequence [alone] was a very poor ligand of TAR." *Id.* And assays showed a lack of association of the octamer sequence alone to TAR, whereas the aptamer "gave rise to clear association and dissociation phases." *Id.* at 56−57.

53.    Toulmé, moreover, reported that an interaction between the G and A bases, which is not canonical G-C base pairing, was required for stability of the R06 aptamer-TAR interaction. *Id.* at 57. For instance, Toulmé stated that replacing the G-A bases with G-C or U-A pairs gave rise to aptamers with a less stable aptamer-TAR complex or with decreased thermal stability, respectively. *Id.*

54.    In other words, more than classic Watson-Crick base pairing and hybridization between the R06 aptamer and the TAR element was required for the two to stability interact. Based on this, Toulmé stated that the results of the SELEX process "validated the usefulness of an in vitro combinatorial approach over a rational one," *i.e.*, over an approach using classic Watson-Crick base pairing as is done for primers and probes, "to identify high affinity RNA ligands." *Id.* at 57.

55.    Toulmé also noted that "[t]hese results indicate that depending on the chemistry of the random pool, the selection process evolved not only to optimize the Watson-Crick interactions that primarily drive loop–loop interactions but also to favour *non-canonical interactions*," *i.e.*, non-Watson-Crick-based aptamer-target interactions "*that significantly contribute to the thermodynamic stability* of kissing complexes." *Id.* at 58 (emphases added).

56.    In sum, the R06 aptamer demonstrates that nucleic acid aptamers can interact with their nucleic acid targets through more than just Watson-Crick-based hybridization, but also through other *crucial* non-Watson-Crick-based interactions between the target and the aptamer. This is further demonstrated through structural studies performed with a portion of the R06 aptamer and the HIV-1 TAR element, as discussed below.

### ii.    Structural studies of the R06-TAR complex demonstrate non-Watson-Crick based interactions.

57.    In 2008, Melckebeke investigated the interaction of portions of the R06 aptamer (termed TAR*$_{GA}$) and the TAR element using "high-field NMR spectroscopy and liquid-crystalline NMR methodology to obtain a high-resolution solution structure of the TAR-aptamer complex of highest stability." Ex. H (Melckebeke, H., *et al.*, "Liquid-crystal NMR structure of HIV TAR RNA bound to its SELEX RNA aptamer reveals the origins of the high stability of the complex," *PNAS* 105(27):9210−9215 (July 8, 2008) ("Melckebeke")), 9210−9211.

58.    The studies also revealed that TAR and TAR*$_{GA}$ form a helical structure that involves base pair stacking between TAR and TAR*$_{GA}$ outside of the regions of complementarity of the two RNA sequences, as shown in Figure 3 of Melckebeke, reproduced below (bases of TAR*$_{GA}$ are indicated with *):



*Id.* at 9212, Fig. 3. Bases G*5 and A*12 of TAR*$_{GA}$, which take part in this base-pair stacking, are outside of the central 6-mer of the R06 octamer that base pairs with the TAR element. *See* ¶ 53, above; *see also* ¶ 60, below. And as discussed above in ¶ 53, the G*5 and A*12 interaction is critical for the interaction of the R06 aptamer and the TAR element.

59.     Melckebeke also observed hydrogen bonding between the sugars of the TAR and TAR*$_{GA}$ nucleotides that lead to the high affinity of the TAR-TAR*$_{GA}$ complex interaction, as shown in Figure 5 of Melckebeke reproduced below (bases of TAR*$_{GA}$ are indicated with *; hydrogen bonds are the dotted lines):



Ex. H, 9212−9213, Fig. 5. As shown in the figure above, the sugars of C5 and C6 in TAR hydrogen bond with sugars in U*6 and G*5 of TAR*$_{GA}$, respectively.

60.    As depicted below in Figure 2a from Melckebeke, those hydrogen bonds occur between TAR and TAR*$_{GA}$ bases that do not utilize classical Watson-Crick base pairing; in fact G-C and C-U pairing does not occur under Watson-Crick base pairing rules:



*Id.* at 9211, Fig. 2a (annotated with black boxes indicating the C5-U*6 and C6-G*5 interactions; horizontal lines in original figure depict Watson-Crick base pairing, which does not occur in the C5-U*6 and C6-G*5 interactions, where the bases are vertically adjacent from each other in the figure).

61.    Thus, Dr. Sims ignores that Watson-Crick base pairing is insufficient for the full scope of aptamers capable of binding a given nucleic acid target. And these hydrogen bonds demonstrate the non-canonical (non-Watson-Crick) interactions of R06 and TAR discussed in ¶¶ 51−56, above.

18

### iii. A second nucleic acid aptamer demonstrates that aptamer structures needed for target nucleic acid binding are not predictable or interchangeable.

62.     The art also discloses that not all nucleic acid aptamers will interact with their targets in a predictable manner. For example, in 2002, Aldaz-Carroll identified nucleic acid aptamers to an untranslated stem-loop domain of hepatitis C virus mRNA, called SL1. Ex. I (Aldaz-Carroll, L., *et al.*, "Apical loop-internal loop interactions: a new RNA-RNA recognition motif identified through in vitro selection against RNA hairpins of the hepatitis C virus mRNA," *Biochemistry* 41(18):5883−5893 (May 7, 2007) ("Aldaz-Carroll")), 5883. Using a SELEX procedure starting with a library of $10^{13}$ different RNA sequences containing a randomized 40-nucleotide central sequence, Aldaz-Carroll identified 62 RNA-based aptamer candidates having various affinities for SL1. *Id.* at 5885−5886. Those candidates could also be grouped into three different classes based on their sequences and predicted tertiary structures. *Id.*

63.     Focusing on one aptamer, called 5−39, Aldaz-Carroll found that it contained a central 6-mer sequence (5´-AGUAUC-3´) that was complementary for the SL1 loop and flanked on both sides with a G-C rich stem. *Id.* at 5886. As was seen for the R06 aptamer (*see* ¶ 52, above) Aldaz-Carroll reported that a 9-mer oligo containing the 6-mer sequence complementary to SL1 bound very poorly to SL1 compared to the intact aptamer. Ex. I, 5887. From that, Aldaz-Carroll concluded that the "affinity of 5−39 for SL1" was not solely "due to the sequence of the internal [5−39] loop complementary to the SL1 apical loop" and "additional interactions contribute to the stability of the aptamer-SL1 complex." *Id.*

64.     Aldaz-Carroll also found that deleting nucleotides in the 5−39 aptamer that were not complementary to the SL1 loop abolished binding of the 5−39 aptamer to SL1 or reduced stability of the aptamer-SL1 complex. *Id.* Other alterations to the 5−39 aptamer also affected

19

binding, leading Aldaz-Carroll to conclude that "the context in which the antisense sequence is presented is of key importance." *Id.* at 5890.

65.    Aldaz-Carroll additionally found that aptamers for SL1 that the highest affinity for SL1 did not form "kissing complexes," like the R06 aptamer, but rather what the researchers called apical-loop-internal loop ("ALIL") complexes. *Id.* at 5891−5892. These characteristics indicate that (1) aptamer structures other than "kissing complexes" are possibilities for aptamer-target interactions; and (2) one cannot predict ahead of time what type of interaction will lead to the best affinity.

66.    Also, the 5−39 aptamer closes its loop that interacts with SL1 with a U-A base combination and requires flanking G-C rich sequences. *Id.* at 5887−5888, Fig. 3A−B (A[9] and U[10]). This is unlike the R06 aptamer that uses a G-A base combination to close its loop that interacts with TAR. *See* ¶¶ 53, 60, above. That further demonstrates that not all nucleic acid aptamer-target complexes can be generalized and easily designed, as Dr. Sims alleges one would do for a probe or primer.

**C.    My Conclusions Regarding the Second Sims Declaration's Overlooking of How Nucleic Acid Aptamers Interact with Their Nucleic Acid Targets**

67.    In view of Section IV.B., above, it is apparent that Dr. Sims has ignored that while nucleic acid aptamers hybridize to their target, they also rely on non-Watson-Crick interactions outside of hybridization to achieve stable interactions with their target. As the ScaleBio Asserted Patents and the art both indicate, such aptamers can be discovered through iterative, unpredicatble *in vitro* selection processes, such as SELEX.

68.    Thus, obtaining the full scope of nucleic acid aptamers capable of binding to a nucleic acid target is not as simple as designing a primer or probe that will have the right melting temperature or hybridization characteristics, as Dr. Sims states. Second Sims Declaration, ¶ 59.

████████████████████████████

Indeed, I testified as much at my deposition, stating, "I do disagree that -- with Dr. Sims that the '752 Patent is enabled without using a UBA and an ESB, which are not at all simple to readily obtain in the way that a primer might be for PCR." Ex. E, 137:5−137:17, Errata at 10. This is because, as I testified, "finding … aptamers that are suitable for specific targeting is very difficult" and "it's very different from PCR where for a specific amplification, you know what sequence you'd like to get as a primer." *Id.* at 137:17−138:7, Errata at 10. Indeed, "it's very hard to know amongst this enormous universe of aptamers [that] might be 200 base pairs long" what will bind a given target and "it would be a very, very different task" *Id.* at 138:8−140:1, Errata at 10; *see also* 140:8, 142:9−21, Errata at 10, 11.

69.    This is because, as the art above indicates, nucleic acid aptamer-nucleic acid target interactions cannot be predicted based on sequence or even a common aptamer structure or aptamer-target interaction mechanism. The art, moreover, demonstrates that using just an oligomer containing a sequence complementary to a target RNA, which would be akin to a primer or probe, did not result in an interaction between the oligomer and the target. *See* ¶¶ 52, 63, above.

70.    The drawing below depicts generally how the nucleic aptamers can interact with their targets using both canonical Watson-Crick base pairing and non-canonical non-Watson-Crick interactions.



71.    In view of the above, even if Dr. Sims's opinions accurately reflect the art for nucleic acid probes and primers, his opinions cannot be true for all nucleic acid aptamers. Indeed, for any given target nucleic acid, there is a finite few nucleic acid probes and/or primers capable of binding to the target (*i.e.*, those complementary to the target's sequence). Yet, for the same target nucleic acid, there is an unknown number of nucleic acid aptamers that are capable of binding to it. *See* ¶ 47, above. As discussed above in Sections IV.B. and IV.C., this is due to the unpredictable and non-canonical nature in which nucleic acid aptamers bind to their nucleic acid targets. Indeed, the art discussed in Section IV.B. indicates that nucleic acid aptamers cannot stably interact with their intended targets relying solely on Watson-Crick base pairing rules.

72.    Ultimately, it is telling that Dr. Sims has not cited to any references in the Second Sims Declaration describing how nucleic acid aptamers for nucleic acid targets are obtained or that they only interact through simple hybridization.

**D.    Nucleic Aptamers that Utilize Both Hybridization- and Non-Hybridization-based Interactions Would Meet the Limitations of Claim 11 of the '442 Patent and Claims 1, 2, 5, and 6 of the '256 Patent**

73.    Aptamers that hybridize to their target and also rely on other target interactions, while also comprising a common linker portion would meet the limitation of claim 11 of the '442 patent that requires "hybridizing the common linker to the RNA." This is because such "hybridization" of the common linker would be indirect. As discussed above in Section III, this is how a POSA would interpret this limitation. It is also how Dr. Sims has interpreted this limitation.

74.    Such aptamers would also meet the limitation of a UBA nucleic acid tag that "bind[s] to [a] nucleic acid target[]" via hybridization, as Dr. Sims opines, is included within the scope of claims 1, 2, 5, and 6 of the '256 patent.

**V.    RESPONSE TO DR. SIMS'S OPINION REGARDING DESIGNING AN ANTIBODY UBA FOR A GIVEN TARGET MOLECULE**

75.    Dr. Sims spends several paragraphs addressing whether "a POSA would have needed to know at least an epitope on a target sufficient to distinguish it from all the others in order to design a UBA that is specific for that target," and concluding "'no.'" Second Sims Declaration, ¶¶ 63−70. Dr. Sims, however, misses the mark.

76.    Monoclonal antibodies, such as the 7E11-C5 antibody Dr. Sims discusses, have been raised without first knowing the identity of the epitope they bind on a given target. However, in the process of obtaining such antibodies, a POSA would seek to determine whether that the antibody is sufficiently specific for a single target (*see also* Section VI, below), such that

23

a given antibody's target, *i.e.*, antigen, can be distinguished from other molecules. Ex. J, (Bodor, G., *et al.*, "Development of Monoclonal Antibodies for an Assay of Cardiac Troponin-l and Preliminary Results in Suspected Cases of Myocardial Infarction," *Clin. Chem.* 38(11):2203−2214 (Nov. 1992) ("Bodor")), 2207−2208, Fig. 2.

77.    Thus, while the exact amino-acid sequence or complete structure of a prostate-specific membrane antigen ("PSMA") was not known at the time the 7E11-C5 was developed, its individual identity as a protein specifically found in cancerous prostate cells was known. *See*, *e.g.*, Second Sims Declaration, ¶ 66; D.I. 376-10 (Ex. L (Horoszewicz 1987), 929, Table 1).

78.    Dr. Sims's opinions, nevertheless, ultimately amount to the tail wagging the dog. Even if the identity of a PSMA was not known at the time the 7E11-C5 antibody was obtained, the claimed methods and kits require using a given antibody to bind a specific target, *e.g.*, PSMA. As such, the antibody used must function in the claimed method to bind its target, whether or not where on the target the antibody binds is known. And even the antibody discussed by Dr. Sims was sufficient to distinguish its target from other molecules being detected. As I discussed in my Opening and Reply Reports, this causes enablement and written description issues for the claimed methods and kits. Ex. A, ¶¶ 162−178, 194−196, 205, 216, 217; Ex. B, ¶¶ 53−72, 147−146, 181.

## VI.    CROSS-REACTING ANTIBODIES ARE NOT DESIRABLE

79.    Dr. Sims closes the Second Sims Declaration by opining that antibodies that cross-react, *i.e.*, antibodies that recognize more than one target, can be desirable. Second Sims Declaration, ¶¶ 69−70.

80.    Cross-reactivity arises when an antibody has both on-target and off-target binding. Off-target binding through cross-reactivity is not a desirable or useful thing. For example, off-target binding in the immune system can cause a person's antibodies to mistakenly

24

identify the person's own cells as foreign pathogens and attack them. This leads to issues such as autoimmune diseases and allergies, which are important concepts in immunology and an undesired outcome of cross-reactive antibodies. Ex. K (Ferreira, F., *et al.*, "Allergic Corss-Reactivity: From Gene to the Clinic," *Allergy* 59(3):243−267 (Mar. 2004) ("Ferreira")), 243; *see generally* Ex. L (Lawson, C., "Evidence for Mimicry by Viral Antigens in Animal Models of Autoimmune Disease Including Myocarditis," *Cell. Mol. Life Sci.* 57(4)552−560 (Apr. 2000) ("Lawson")).

81.    In the context of the claimed methods, cross-reacting antibodies would not be desirable because one would not know if the results obtained show, for example, accurate quantification of a given target molecule in a given cell. In other words, by utilizing cross-reacting antibodies in the claimed methods, one would create noise that creeps in on or drowns out the actual signal, introducing inaccuracies into the claimed method.

82.    Dr. Sims's opinions that cross-reacting antibodies are some desirable feature is, therefore, nonsensical.

## VII.    THE SPECIFICATION OF THE SCALEBIO ASSERTED PATENTS DISCLOSES UBAS THAT UNIQUELY BIND TO MORE THAN ONE SPECIFIC TARGET MOLECULE

83.    As set forth in my Opening Report, I understand that the Court has ordered that the terms "unique binding agent" and "UBA" are to be construed to mean "a molecule or assembly that is designed to bind with at least one target molecule, at least one target molecule surrogate, or both." Ex. A, ¶ 76 (citing Oral Order (D.I. 118)).

84.    The common specification of the ScaleBio Asserted Patents discloses that a UBA can be an antibody, which can be "any immunoreactive component(s) of an antibody molecule that immunospecifically bind to at least one epitope," which includes "diabodies." '442 patent, 17:66−18:10. A protocol cited in the common specification (*id.* at 18:13−20 (citing <u>Antibody</u>

Engineering) is instructive as to what diabodies are: "[d]iabodies are small dimeric bivalent or bispecific antibody fragments" that have "two antigen binding sites" and "recogni[ze] two different antigens." Ex. M (Antibody Engineering), 619.

85.    The common specification of the ScaleBio Asserted Patents, therefore, expressly discloses UBAs that uniquely bind to more than one specific "target molecule," *i.e.*, diabodies. Indeed, diabodies are essentially two different antibody fragments fused together that results in an antibody with two different unique binding sites. And each binding site on the diabody will be specific for a distinct "target molecule" with a known individual identity. *Id.*

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed in Pasadena, California this  16th  day of April, 2025.

Lior Pachter, Ph.D.