# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCALE BIOSCIENCES, INC.,<br><br>    and<br><br>ROCHE SEQUENCING SOLUTIONS, INC.,<br><br>       Plaintiffs,<br>v.<br><br>PARSE BIOSCIENCES, INC.,<br><br>       Defendant. | Civil Action No.  1:22-CV-01597-CJB<br><br>**REDACTED**<br>**PUBLIC VERSION** |
| PARSE BIOSCIENCES, INC.,<br><br>    and<br><br>UNIVERSITY OF WASHINGTON,<br><br>       Counterclaim Plaintiffs,<br>v.<br><br>SCALE BIOSCIENCES, INC.,<br><br>       Counterclaim Defendant. | |

**SCALE BIOSCIENCES, INC.'S**
**REPLY BRIEF IN SUPPORT OF ITS**
**SUMMARY JUDGMENT AND *DAUBERT* MOTIONS**

## <u>TABLE OF CONTENTS</u>

I.    Parse Infringes Claims 1, 2, 6 and 7 of Patent No. 11,634,752. ........................................... 1

    A.    The Preamble of Claim 1 of the '752 Patent Is Not Limiting........................................ 1

    B.    "Target Molecules" Need Not Have a Known Individual Identity Sufficient to Distinguish the Molecules Being Detected or Quantified. ............................................ 1

    C.    Each Set of APS Oligonucleotides Need Only Comprise at Least 10 APS Oligonucleotides That Satisfy the Specified Sequence Requirements. ....................... 5

    D.    The Accused Parse Kits Infringe Claims 1, 2, 6, and 7 of the '752 Patent.................. 6

II.    The Asserted Claims of ScaleBio's U.S. Patent No. 11,634,752 Are Not Invalid. ............... 7

    A.    Parse Did Not Rebut ScaleBio's Showing that the Asserted '752 Claims Are Not Anticipated by Brenner, Franch, Freskgard, or Seelig. ......................................... 7

    B.    The Asserted '752 Claims Are Not Invalid for Lack of Written Description or Lack of Enablement............................................................................................... 8

III.    Use of the Accused ScaleBio Products Does Not Infringe the Asserted Parse Claims........ 9

    A.    Use of the Accused ScaleBio Products Does Not Perform the "Multiple Rounds of Appending Well-Specific Tags … Within Intact Cells" Required by the Court's Construction of the Preamble. ............................................................. 9

    B.    Use of the Accused ScaleBio Products Does Not Involve "Appending Well-Specific Tags <u>to cDNAs</u>" When Performing Step (b)'s Reverse Transcription......... 12

    C.    Use of the Accused ScaleBio Products Does Not "Coupl[e] the Secondary Nucleic Acid Tags That Were Provided in Step (h) to the Primary Nucleic Acid-Tagged cDNA Molecules That Were Produced in Step (e)," as Required by Step (i) Under the Parties Agreed-Upon Construction. .......................................... 14

IV.    The Claims of the Asserted Parse Patents Are Invalid. ..................................................... 16

    A.    The Challenged Claims of the '065 Patent Lack Written Description. ..................... 16

        1.    The Specification Does Not Disclose the Claimed Use of Reverse Transcription Primers Without "a 5' Overhang Sequence."................................16

        2.    The Specification Does Not Disclose The Claimed Use of Reverse Transcription Primers That "Comprise a Barcode Sequence."...........................19

    B.    The Challenged Claims of the '355 and '856 Patents Are Anticipated. .................... 20

V.    Parse's Experts Should Be Precluded from Providing Certain Opinions. .......................... 20

    A.    Dr. McDuff's Opinions Regarding ███████████████ ████████████████████ Should Be Excluded. .................................................... 21

        1.    Dr. McDuff's Calculation of an "Effective Royalty Rate" Is Unreliable. ..........21

        2.    Dr. McDuff's Use of ███████████████ For His Apportionment Analysis Only Compounds the Unreliability of His Opinion.............................24

B.     Dr. Satija and Dr. Pachter Do Not Meet Their Own Definition of a POSA and Should Be Precluded From Testifying From the Perspective of a POSA. ................ 25

## TABLE OF AUTHORITIES

**Cases**

*Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*,
674 F.3d 1365 (Fed. Cir. 2012) ............................................................... 13

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
111 F.4th 1358 (Fed. Cir. 2024) ............................................................. 18

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019) ................................................................ 1

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) *(en banc)* .............................................. 17

*Atlas IP, LLC v. Medtronic, Inc.*,
809 F.3d 599 (Fed. Cir. 2015) ................................................................ 11

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
750 F.2d 1569 (Fed. Cir. 1984) .............................................................. 18

*AVM Techs., LLC v. Intel Corp.*,
2017 WL 1787562 (D. Del. May 1, 2017) .............................................. 23

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
C.A No. 15-152-RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018) .............................. 23, 24

*Capon v. Eschar*,
418 F.3d 1349 (Fed. Cir. 2005) .............................................................. 18

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com. Inc.*,
289 F.3d 801 (Fed. Cir. 2002) .................................................................. 1

*Cobalt Boats, LLC v. Brunswick Corp.*,
773 F. App'x 611 (Fed. Cir. 2019) ......................................................... 13

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ................................................................ 7

*D Three Enterprises, LLC v. SunModo Corp.*,
890 F.3d 1042 (Fed. Cir. 2018) ......................................................... 19, 20

*Edwards Lifesci. AG v. Corevalve, Inc.*,
699 F.3d 1305 (Fed. Cir. 2012) ................................................................ 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) *(en banc)* .............................................. 15

*Georgia-Pacific Corp. v. U.S. Plywood-Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)..........................................................................21, 23

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
  336 U.S. 271 (1949).......................................................................................................17

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
  640 F. App'x 951 (Fed. Cir. 2016) .................................................................................1

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009).....................................................................................16

*In re Entresto*,
  125 F.4th 1090 (Fed. Cir. 2025) .....................................................................................8

*In re Smythe*,
  480 F.2d 1376 (C.C.P.A. 1973) ...............................................................................17, 18

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
  331 F.3d 860 (Fed. Cir. 2003).......................................................................................23

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
  933 F.3d 1345 (Fed. Cir. 2019).......................................................................................5

*Lochner Techs., LLC v. Vizio, Inc.*,
  567 F. App'x 931 (Fed. Cir. 2014) .................................................................................8

*Microsoft Corp. v. GeoTag, Inc.*,
  817 F.3d 1305 (Fed. Cir. 2016).....................................................................................13

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
  122 F.4th 860 (Fed. Cir. 2024) .....................................................................................14

*Mondis Tech., Ltd. v. LG Elecs, Inc.*,
  2011 WL 2417367 (E.D. Tex. Jun. 14, 2011).................................................................23

*O2 Micro Int'l v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)................................................................................15, 16

*Oatey Co. v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008).......................................................................................5

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*,
  323 F. Supp. 3d 566 (D. Del. 2018).........................................................................18, 19

*Symantec Corp. v. Comput. Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008).......................................................................................3

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
    No. CV 16-706-LPS, 2021 WL 1910037 (D. Del. May 12, 2021)........................................ 6

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017)........................................................................................ 10

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)......................................................................................... 6

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
    15 F.4th 1136 (Fed. Cir. 2021) ....................................................................................... 14

*TwinStrand Bioscis., Inc. v. Guardant Health, Inc.*,
    No. CV 21-1126-GBW-SRF, 2023 WL 3773700 (D. Del. June 2, 2023)............................... 6

## TABLE OF EXHIBITS

| Ex. | Name | Description |
|---|---|---|
| *Exhibits Filed With ScaleBio's Motions (D.I. 308, 309, 313, 319, 324, 326 & 327)* | | |
| 1 | '442 Patent | U.S Patent No. 10,626,442 |
| 4 | '752 Patent | U.S. Patent No. 11,634,752 |
| 5 | '065 Patent | U.S. Patent No. 10,900,065 |
| 6 | '355 Patent | U.S. Patent No. 11,168,355 |
| 7 | '856 Patent | U.S. Patent No. 11,427,856 |
| 8 | Parse's Invalidity Contentions | Excerpts of Parse's Final Invalidity Contentions |
| 9 | Pachter Op. Rep. | October 10, 2024 Opening Expert Report of Lior Pachter, Ph.D. on the Invalidity of U.S. Patent Nos. 10,626,442, 10,982,256, 11,512,341, and 11,634,752 |
| 10 | Pachter Reb. Rep. | November 12, 2024 Rebuttal Expert Report of Lior Pachter, Ph.D. on Non-Infringement |
| 11 | Pachter Reply Rep. | December 13, 2024 Reply Expert Report of Lior Pachter, Ph.D. on Invalidity of U.S. Patent Nos. 10,626,442, 10,982,256, 11,512,341, and 11,634,752 |
| 12 | Sims Op. Rep. | Excerpts of the October 10, 2024 Opening Expert Report of Peter A. Sims, Ph.D. regarding Parse's Infringement of the Asserted ScaleBio Claims |
| 14 | Sims Reply. Rep. | Excerpts of the December 13, 2024 Reply Expert Report of Peter A. Sims Ph.D. Regarding Parse's Infringement of the Asserted ScaleBio Claims |
| 20 | '065 FH | Excerpts of the File History of U.S. Application No. 14/941,433 |
| 22 | Satija Op. Rep. | October 10, 2024 Opening Expert Report of Rahul Satija, Ph.D. on Infringement |
| 23 | Satija Reb. Rep. | November 12, 2024 Rebuttal Report of Rahul Satija, Ph.D. on Validity of U.S. Patents 10,900,065, 11,168,355, 11,427,856 |
| 24 | Satija Reply Rep. | December 13, 2024 Reply Expert Report of Rahul Satija, Ph.D. on Infringement |
| 29 | Shalek Op. Rep. | Excerpts of the October 10, 2024 Opening Expert Report of Alex K. Shalek, Ph.D. Regarding Invalidity of the Challenged Parse Claims |

| Ex. | Name | Description |
|---|---|---|
| 30 | Shalek Reb. Rep. | Excerpts of the November 12, 2024 Rebuttal Expert Report of Alex K. Shalek, Ph.D. Regarding Non-Infringement of the Asserted Parse Claims |
| 31 | Shalek Reply Rep. | Excerpts of the December 13, 2024 Reply Expert Report of Alex K. Shalek, Ph.D. Regarding Invalidity of the Challenged Parse Claims |
| 34 | ██████ Agreement | License Agreement between ████ and █████████ ., █████████ |
| 36 | McDuff Op. Rep. | October 10, 2024 Opening Expert Report of DeForest McDuff, Ph.D. |
| 37 | McDuff Reb. Rep. | November 12, 2024 Rebuttal Expert Report of DeForest McDuff, Ph.D. |
| 46 | ████████ ████████ ████ | ██████████████████ ███ produced at PARSE0550012 |
| 47 | ████████ ████████ | ████████████████, produced at PARSE0704049 |
| 48 | ████████ ████████ ████████ ████ | ████████████, provided in Ex. A to Parse Biosciences, Inc.'s Third Supplemental Objections and Responses to Scale Biosciences, Inc.'s Second Set of Interrogatories (Nos. 12-18) |
| 54 | '752 FH | Certified File History for U.S. Application No. 17/951,003, as received from the U.S. Patent and Trademark Office |
| *Exhibits Filed With Parse's Motions (D.I. 328, 329 & 362)* | | |
| 16 | Mooney Reply Rep. | Excerpts from the Reply Expert Report of Drew D. Mooney Regarding Damages Arising from Parse's Infringement of the Asserted Scale Claims, dated December 13, 2024 |
| 25 | Pachter Tr. | Excerpts from the transcript of the Videotaped Deposition of Lior S. Pachter, Ph.D., taken February 10, 2025 |
| A | Sims Op. Rep. | Excerpts from the Opening Expert Report of Peter A. Sims, Ph.D. Regarding Parse's Infringement of the Asserted Scale Claims, dated October 10, 2024 |
| C | Sims Reply Rep. | Excerpts from the Reply Expert Report of Peter A. Sims, Ph.D. Regarding Parse's Infringement of the Asserted Scale Claims, dated December 13, 2024 |
| M | '065 File History | Excerpts from Certified Copy of the File History for U.S. Patent Application No. 14/941,433 (PARSE0000033–1031) |

| Ex. | Name | Description |
|---|---|---|
| N | Scale User Manual | ScaleBio Single Cell RNA Sequencing Kit v1.1 Protocol (Doc. ID 102796, Rev. A, Nov. 2023) (SCALEBIO0160902–935) |
| H | Shalek Tr. | Excerpts from the transcript of the Videotaped Deposition of Alex K. Shalek, Ph.D., taken January 17, 2025 |
| I | Satija Tr. | Excerpts from the transcript of the Videotaped Deposition of Rahul Satija, Ph.D., taken January 22, 2025 |
| L | Pachter Tr. | Excerpts from the transcript of the Videotaped Deposition of Lior S. Pachter, Ph.D., taken February 10, 2025 |
| | *Exhibits Filed Herewith* | |
| 56 | McDuff Tr. | Excerpts of the Transcript of the Deposition of Robert DeForest McDuff, Ph.D, taken on January 28, 2025 |
| 57 | Pachter Tr. | Excerpts of the Transcript of the Deposition of Lior S. Pachter, Ph.D, taken on February 10, 2025 |
| 58 | Nolan Tr. | Excerpts of the Transcript of the Deposition of Garry P. Nolan, Ph.D, taken September 17, 2024 |
| 59 | | Redacted Answer Br., *AVM Techs. LLC, v. Intel Corp.*, No. 1:15-cv-00033-RGA (Mar. 7, 2017) (D.I. 514) |

## I.    Parse Infringes Claims 1, 2, 6 and 7 of Patent No. 11,634,752.

ScaleBio's summary judgment motion that Parse infringes the '752 Patent should be granted.  D.I. 307 (ScaleBio Br.) at 3-13.  *Cf.* D.I. 359 (Parse Ans.) at 4-14.

### A.    The Preamble of Claim 1 of the '752 Patent Is Not Limiting.

Parse has flip-flopped on this issue; its attempted denial (D.I. 359 (Parse Ans.) at 11 n.4) is belied by its Final Invalidity Contentions, which "***contend***[] that the preamble of the '752 patent claims is ***not limiting***"  D.I. 308, Ex. 8 at 13 n.4.[1]  Parse argues the preamble "recite[s] additional structure or steps underscored as important by the specification" (D.I. 359 (Parse Ans.) at 11), citing statements that allegedly identify "the very ***purpose*** of the kit [as being] to detect 'target molecules'…."  *Id*. at 12.  But that is not the sole purpose of the kit.  D.I. 308, Ex. 4 ('752 Patent) at 50:14-15 ("The kits can be used ***for any purpose*** apparent to those skilled in the art, including those described above.").  Even if it were, that would not make the preamble limiting.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com. Inc.*, 289 F.3d 801, 807 (Fed. Cir. 2002) (purpose in preamble not limiting "because it merely states an intended use for the claimed system"); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640 F. App'x 951, 956 (Fed. Cir. 2016) ("The specification's regular use of the preamble language, 'medical implant,' is of no additional import here; it reiterates that a 'medical implant' is one use for [the claimed compound].").  *See also Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1329 (Fed. Cir. 2019) (preamble language is not necessarily limiting even when "underscored as important by the specification.").

### B.    "Target Molecules" Need Not Have a Known Individual Identity Sufficient to Distinguish the Molecules Being Detected or Quantified.

If the preamble is held not limiting, the construction of "target molecules" is irrelevant to infringement of the '752 Patent, but is relevant to other patents asserted by ScaleBio. "Target

---

[1] All emphasis added, and all original emphasis and internal citations removed, unless noted.

molecules" should be construed according to the patent's express definition to mean "molecules of interest that are being detected or quantified," for the reasons stated in ScaleBio's opening brief (D.I. 307 at 5-7) and answering brief (D.I. 366 at 22-29). The Court recognized that "the patent specification defines the term in just this way." D.I. 119 (*Markman* Order). ScaleBio has never changed its construction of this term and only asks the Court to negate Parse's attempts to add additional requirements. To address Parse's latest construction, the Court should add: "Target molecules need not have a known individual identity sufficient to distinguish the molecules being detected or quantified," or simply, "Nothing more is required."

Parse faults ScaleBio's previous proposed clarification for "introduc[ing] three new terms that Scale does not define." D.I. 359 (Parse Ans.) at 4. But that formulation simply rejected the additional limitations as Parse previously proposed and argued them. ScaleBio has updated its proposed clarification to account for Parse's new construction. The record refutes Parse's contention that its expert "***never stated*** that he understood 'target molecules' to be 'further limited to [molecules] … whose presence or quantity varies between individual cells.'" *Id*. In fact, Dr. Pachter recited and adopted Parse's proposed construction, including those very words, in both his Opening and Rebuttal Expert Reports. D.I. 308, Ex. 9 (Pachter Op. Rep.) ¶ 78; *id*., Ex. 10 (Pachter Reb. Rep.) ¶¶ 72-73. And he reiterated at his deposition that "it's very clear to me that the patents, when speaking of target molecules, were referring, as Parse has proposed, to molecules -- ***specific molecules with a known individual identity whose presence or quantity varies between individual cells***." Ex. 57 (Pachter Tr.) at 186:15-187:8.

Parse's answering brief relies on cropped quotes from the specification in a flawed attempt to limit the invention to particular disclosed embodiments. D.I. 359 (Parse Ans.) at 5 (replacing "The present invention ***relates in part***" with "The '752 patent ***is directed to***"; *cf*. D.I.

308, Ex. 4 ('752 Patent) at 1:61-64); *id.* (replacing "The target molecules detected using the compositions and methods of the invention **can be**" with "The 'target molecules' **should be**"; *cf.* D.I. 308, Ex. 4 ('752 Patent) at 49:60-64); *id.* at 6 (omitting the sentence "**In some embodiments**, the invention provides **an UBA population** for use in a multiplexed assay" before quoting: "each UBA **in the population** is specific for a target molecule.  Thus **the UBA** provides the specificity for the target molecule recognized in the cell."; *cf.* D.I. 308, Ex. 4 ('752 Patent) at 16:49-53).  *See also id.* (relying on particular embodiments that utilize "target-molecule specific" UBAs; *cf.* D.I. 118 (*Markman* Order) (noting: "The specification also makes reference to a single UBA binding to 'at least one target molecule.'" (quoting D.I. 308, Ex. 1 ('442 Patent) at 6:54-56)).

Parse argues that "[f]or a researcher to choose a suitable UBA, she would need to know the individual identity of a target molecule she is trying to detect *a priori*," and "[w]ithout this knowledge, it would be impossible to select an appropriate UBA—like asking a locksmith to design a key without specifying a lock."  D.I. 359 (Parse Ans.) at 6 (citing D.I. 308, Ex. 10 (Pachter Reb. Rep.) ¶¶ 84, 139).  The cited Pachter paragraphs identify no scientific evidence to support this proposition, but merely purport to construe the intrinsic evidence, which is "unhelpful."  *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1289 n.3 & 1290-91 (Fed. Cir. 2008).  The actual scientific evidence of record shows that scientists could design antibodies to bind target antigens whose identity, sequence and structure were unknown, by harnessing the immune systems of animals such as mice in conjunction with hybridoma technology.  D.I. 368 (Sims 2nd Dec.) ¶ 68.  Production of antibodies in this way led to the identification of the antigen that was later called "PSMA," whose discovery was a substantial advance in the field of prostatic cancer.  *Id.* ¶¶ 65-67.  This refutes Parse's attempt to minimize the specification's teaching that target molecules "can have either a known or unknown structure

3

or sequence." D.I. 308, Ex. 1 ('442 Patent) at 33:66-67. Parse contends it is "impossible" for a target-specific UBA to bind, label, or detect a "target molecule" with a completely unknown structure or sequence. D.I. 359 (Parse Ans.) at 7. Yet that is exactly what happened with the antigen later dubbed PSMA. Parse's attempt to minimize the specification's disclosure of cross-reacting antibodies also fails. *See* D.I. 308, Ex. 1 ('442 Patent) at 36:5-8 (disclosing an antibody UBA specific for "a phospho-epitope on a kinase such as Stat-3"). Dr. Pachter argues that Stat-3 alpha, beta, gamma and delta are "isoforms of a single gene" but admits that they differ in their amino acid sequences. D.I. 329, Ex. 25 (Pachter Tr.) at 252:14-253:15. In other words, they are distinct molecular entities. D.I. 368 (Sims 2nd Dec.) ¶ 69. Moreover, the specification also exemplifies an antibody UBA against a target called "ERK-2." D.I. 308, Ex. 1 ('442 Patent) at 57:34. But ERKs are a family of proteins encoded by distinct genes and include at least ERK-1, ERK-2 and ERK-3. D.I. 368 (Sims 2nd Dec.) ¶ 70. Monoclonal antibodies cross-react with ERK-1 and ERK-2, *id.*, refuting Parse's argument that an antibody must bind a unique target.

Nor does Parse's reliance on the specificity of binding support its proposed construction. *Cf.* D.I. 359 (Parse Ans.) at 6. For nucleic acid UBAs and nucleic acid targets, "sequence-specific" binding means that each nucleic acid UBA will bind specifically to ***any*** target molecules that contain the complementary sequence. That binding is specific to the sequence in the target, even if multiple target molecules include that sequence and could each bind to the UBA. D.I. 326, Ex. 14 (Sims Reply Rep.) ¶ 30. Antibody UBAs selectively bind to portions of antigens ("epitopes") in a conformation-specific manner. *Id.* ¶ 37. An antibody specific for an epitope will bind to ***any*** antigen that contains the epitope. *Id*.

The Court should construe "target molecules" to mean "molecules of interest that are being detected or quantified" and should clarify that nothing more is required.

### C.     Each Set of APS Oligonucleotides Need Only Comprise at Least 10 APS Oligonucleotides That Satisfy the Specified Sequence Requirements.

Parse's construction improperly expands the "sets" of APS oligonucleotides required by element (i) to swallow every oligonucleotide that might be provided in a kit.  As ScaleBio stated, a "set" need only include "at least 10 oligonucleotides" that satisfy the specified sequence requirements (including a distinguishing internal sequence).  D.I. 307 (ScaleBio Br.) at 8.  The claim does not exclude copies of these oligonucleotides in the kit, as Parse contends.  This is true even under Parse's proposed construction of the "at least 10 APS oligonucleotides…" limitation, since the claim uses an open-ended transition: "1.  A kit … *comprising* …."  Even if the "set" cannot include duplicate oligonucleotides, as Parse contends, the claimed kit can.

As ScaleBio explained (*id*. at 9) and Parse admits, Figure 4 of the '752 patent "depicts an embodiment where a reaction vessel contains multiple copies of the same APS oligonucleotide." D.I. 359 (Parse Ans.) at 9.  Parse contends this embodiment "was not *claimed*" (*id.*), but that unsupported assertion is contradicted by the prosecution history.  The preliminary amendment adding claim 1 (then numbered as claim 329) specifically identified Figure 4 as providing support for the new claim.  *See* D.I. 324, Ex. 54 ('752 FH) at SCALEBIO0013414.  "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented."  *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1352-53 (Fed. Cir. 2019) (giving effect to inventor's argument during prosecution that the figure supported the amended claim).  Parse's contention that the claim excludes this embodiment should be rejected.  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("[W]here claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary.").

Parse would improperly limit claim 1 to exemplary embodiments.  Parse's examples of "***some*** embodiments" where APSs comprise a "unique counter tag" and "synthetic" APSs with a "unique sequence" (D.I. 308, Ex. 4 ('752 Patent) at 4:6-9, 8:1-8, 12:31-38, 17:4-14), do not support its attempt to limit claim 1, as "[t]he logical implication of this language is that some embodiments do ***not*** require" APSs to comprise these unique sequences.  *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. CV 16-706-LPS, 2021 WL 1910037, at *4 (D. Del. May 12, 2021); *see also TwinStrand Bioscis., Inc. v. Guardant Health, Inc.*, No. CV 21-1126-GBW-SRF, 2023 WL 3773700, at *6 (D. Del. June 2, 2023).  Similarly, Parse would transmute the word "can" into "must" with its remaining example from the specification.  D.I. 308, Ex. 4 ('752 Patent) at 26:18-21.  The Federal Circuit "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002).  Parse's construction should be rejected.

### D.    The Accused Parse Kits Infringe Claims 1, 2, 6, and 7 of the '752 Patent.

Parse kits satisfy every limitation of claims 1, 2, 6, and 7 of the '752 Patent.  D.I. 307 (ScaleBio Br.) at 9-13.  Parse's contrary arguments fail as a matter of claim construction.

**Target molecules:**  If the Court holds the preamble is not limiting, "target molecules" is not an element of the claims that must be met.  Even if the preamble were limiting, the evidence shows that the accused kits are for split-pool barcoding "target molecules" under ScaleBio's proposed construction of the term.  Parse relies on its expert's testimony that barcoding by its kits is "untargeted" because the ████ label all RNA molecules and "***at the time of*** ████ ***binding***, the ***individual identity*** of ***each*** barcoded RNA is unknown and indistinguishable from other molecules."  D.I. 359 (Parse Ans.) at 12-13.  But "target molecules," properly construed, does not require that the "individual identity" of each barcoded target be known at the time of

████ binding.  Accordingly, even if the preamble is held to be limiting, there is no genuine dispute that the kits are for barcoding "target molecules," as properly construed.

**At least 10 APS oligonucleotides:**  Parse contends that ScaleBio failed to show two sets of APS oligonucleotides wherein "each set comprises at least 10 APS oligonucleotides that each comprise … an internal sequence that distinguishes the APS oligonucleotides in the set from one another."  D.I. 359 (Parse Ans.) at 13.  The Accused Parse Products provide ████████████ ████████████████████████████████ (i.e., at least 10).  D.I. 297 (ScaleBio's Facts) at A9-A10.  The ███████████████████████ and Parse admits that "[e]ach well of the Barcode Round 2 plate or Barcode Round 3 plate contains oligonucleotides."  D.I. 369 (Parse Counter-Statement) ¶ 6.  ██████████████████ "at least 10" oligonucleotides with distinct internal sequences that share common 3' and 5' end sequences, as required by the "at least 10" element of claim 1.  D.I. 307 (ScaleBio Br.) at 10-13.

Claim 1 permits additional components, including copies of the "at least 10 APS oligonucleotides" in each set, because it has an open transition, "comprising," which "creates a presumption … that the claim does not exclude additional, unrecited elements."  *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001).  The claim is met if there are two sets of at least 10 APS oligonucleotides that satisfy the stated sequence requirements, even when there are also copies of those at least 10 oligonucleotides.

## II.    The Asserted Claims of ScaleBio's U.S. Patent No. 11,634,752 Are Not Invalid.

ScaleBio's summary judgment motion that the "Asserted '752 Claims" are not invalid should be granted.  D.I. 307 (ScaleBio Br.) at 13-22.  *Cf.* D.I. 359 (Parse Ans.) at 14-20.

### A.    Parse Did Not Rebut ScaleBio's Showing that the Asserted '752 Claims Are Not Anticipated by Brenner, Franch, Freskgard, or Seelig.

ScaleBio moved for summary judgment that the Asserted '752 Claims are not anticipated

by Brenner, Franch, or Freskgard (D.I. 307 (ScaleBio Br.) at 13-17), or by Seelig (*id*. at 20-22). Parse's answering brief does not rebut ScaleBio's showing of no anticipation, but "only addresses its written description and enablement defenses."  D.I. 359 (Parse Ans.) at 14 n.5.

Accordingly, the Court should at least grant partial summary judgment that the Asserted '752 Claims are not anticipated by Brenner, Franch, Freskgard, or Seelig.

### B.    The Asserted '752 Claims Are Not Invalid for Lack of Written Description or Lack of Enablement.

Parse's attempt to rebut ScaleBio's showing on written description and enablement fails because, as ScaleBio previously explained in detail (D.I. 366 (ScaleBio Ans.) at 1-9), the patent need only describe and enable the invention as claimed.  Parse focuses on what the Asserted '752 Claims "cover" (*id*. at 15) rather than on "that which is claimed" as determined by the recited limitations, which "conflate[s] the distinct issues of patentability and infringement."  *In re Entresto*, 125 F.4th 1090, 1098 (Fed. Cir. 2025).  The Court explained that the specification need not disclose and enable everything "cover[ed]" by the claims, but only what is "claimed."  *Id*. at 1097 ("[T]he invention is, for purposes of the 'written description' inquiry, *whatever is now claimed*." (emphasis original)); *id*. at 1099 ("[A] specification must only enable the claimed invention.").  The reasoning in *Entresto* reaffirms the general rule that the written description and enablement requirements concern the claimed invention, not whatever the claim may encompass. *See Lochner Techs., LLC v. Vizio, Inc*., 567 F. App'x 931, 938-39 (Fed. Cir. 2014) (vacating finding of invalidity based on "the district court's belief that use of an open-ended term 'including' requires patentees to disclose the recited as well as unrecited elements," because "there is no precedent requiring a patentee to disclose or enable unclaimed elements.

Consequently, Parse's reliance on *unasserted* claim 5, which requires a UBA, is misplaced.  UBAs are not part of the invention as claimed in the Asserted '752 Claims.

Accordingly, Parse's purported evidence of a lack of description and enablement of UBAs does not raise a material dispute of fact that precludes granting summary judgment.

Parse's reliance on alleged deficiencies in written description and enablement that "doom Scale's '442 and '256 patents" (D.I. 359 (Parse Ans.) at 18) is likewise misplaced.  Those patents claim *methods* of labeling target molecules and identifying the presence of nucleic acid targets, respectively.  The Asserted '752 Claims are directed to a *product*: a kit.  Methods of using the kit are not the claimed invention, and the patent need not describe or enable all such uses.  *Edwards Lifesci. AG v. Corevalve, Inc.*, 699 F.3d 1305, 1309 (Fed. Cir. 2012).  Accordingly, Parse's evidence about description and enablement of the '442 and '256 Patents does not raise a material dispute of fact that precludes granting summary judgment.

## III.    Use of the Accused ScaleBio Products Does Not Infringe the Asserted Parse Claims.

ScaleBio's summary judgment motion for non-infringement of the Asserted Parse Claims should be granted.  D.I. 307 (ScaleBio Br.) at 22-33.  *Cf.* D.I. 359 (Parse Ans.) at 20-36.

### A.    Use of the Accused ScaleBio Products Does Not Perform the "Multiple Rounds of Appending Well-Specific Tags … Within Intact Cells" Required by the Court's Construction of the Preamble.

The Court adopted ScaleBio's proposed construction of the preamble.  D.I. 241.  During the *Markman* briefing, Parse admitted that under ScaleBio's construction, "*every* step of the labeling method must take place 'within intact cells.'"  D.I. 101 at 53 (emphasis original); *see id.* at 54 ("Scale's construction requires that every step occur 'within intact cells….'").  Now that the Court has adopted ScaleBio's construction, Parse has flip-flopped and asserts that actually "*every* step of the labeling method" does not include step (i).  *See* D.I. 359 (Parse Ans.) at 21.

Parse attempts to evade its prior admission by suggesting that the phrase "multiple rounds" in the Court's construction does not require both steps (e) and (i) to occur within intact cells.  D.I. 359 (Parse Ans.) at 22-23.  But those were the only two recited rounds in the claim

under prosecution that required appending "well-specific tags."  D.I. 307 (ScaleBio Br.) at 24-25. The claims use the open-ended transition, "comprising," so do not exclude other unrecited steps, including after cell lysis.  But the applicant's statements about "multiple rounds of appending well-specific tags" in the "presently claimed method" clearly referred to steps (e) and (i).  D.I. 309, Ex. 20 ('065 FH) at PARSE0000964-70.  No other understanding is reasonable.

Parse suggests that reverse transcription within intact cells "would have been a distinction over the prior art."  D.I. 359 (Parse. Ans.) at 22-23.  But disclaimer holds applicants "to the actual arguments made, not the arguments that could have been made."  *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017).  And Parse has no response to the fact that the applicant was clear that the claims require ***both*** (1) that "the cells … **must not be lysed** prior to reverse transcription" ***and also*** (2) "**multiple rounds** of well-specific tagging of **unlysed cells**."  D.I. 309, Ex. 20 ('065 FH) at PARSE0000970 (emphasis original); *see id.* at PARSE0000964 ("Elements that are important to the analysis are underlined and in bold.").

Parse likewise has no response to the fact that the diagram illustrating the "commercial embodiment" of the claims depicts both (1) reverse transcription in step 1 and (2) two rounds that the diagram ***expressly refers*** to as "*append[ing]*" additional well-specific barcodes in steps 3 and 5, all occurring before cell lysis in step 7.  *Id.* at PARSE0000965-66.  The applicant made clear the significance of the enzymatic ligation reaction in those two "append[ing]" rounds: "***Critically***, the initial reverse transcription reaction and all subsequent enzymatic reactions take place separately within each individual cell of the cell population…."  *Id.* at PARSE0000965.

Parse argues that the primer can comprise a "barcode sequence," as in claim 25.  D.I. 359 (Parse Ans.) at 24.  But Parse cannot explain away that claim 1 encompasses primers without

such a "barcode sequence," so in arguing that the claims require "well-specific tags," the applicant could not have meant step (b)'s primers.  D.I. 307 (ScaleBio Br.) at 24-25.

Parse cites claim 1 of the '355 and '865 Patents (D.I. 359 (Parse Ans.) at 29) but ignores ScaleBio's arguments about those claims (D.I. 307 (ScaleBio Br.) at 26).  Steps (e) and (i) of those claims did not materially change relative to the claims subject to the disclaimer, which issued in the '065 Patent.  Thus, as the Court previously explained, "there is no question here that if disclaimer was made as to the claims of the 065 patent (as it was), then it should also apply as to the use of the same term in the 856 and 355 patents."  D.I. 241.

Parse relies on "claim differentiation" regarding dependent claims that add requirements to steps (f) and (g).  D.I. 359 (Parse Ans.) at 26-27.  But Parse's disclaimer concerns steps (e) and (i).  Thus, whatever claim differentiation might say about steps (f) and (g), it is not a reason to construe steps (e) and (i) differently.  *See Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 607 (Fed. Cir. 2015) (urging caution "in assessing the force of claim differentiation").  In any event, claim differentiation would not override the applicant's disclaimer.

Parse asserts that the specification discloses ligating tags "before or after the lysing." D.I. 359 (Parse Ans.) at 27 (quoting D.I. 308, Ex. 7 at 5:35-39).  But Parse omits the rest of the sentence, which explains that the ligation occurs to tags that are already "bound to the cDNAs." D.I. 308, Ex. 7 at 5:35-37.  Thus, this embodiment is consistent with the applicant's disclaimer, because it involves binding tags to cDNA in cells *followed by* ligation before or after lysis.

Parse blatantly mischaracterizes ScaleBio's expert, Dr. Shalek, as purportedly "agree[ing] that the RT barcode is appended to cDNA."  D.I. 359 (Parse Ans.) at 24-25, 28-29, 30 n.10, 31. In reality, Dr. Shalek was (a) quoting Rosenberg for the proposition that the reverse transcription primer has a barcode sequence, (b) explaining that reverse transcription appends one *nucleotide*

11

at a time, and (c) addressing how "primers comprising a variety of well-specific barcodes" can be "a part of the tagging process." D.I. 327, Ex. 29 (Shalek Op. Rep.) ¶¶ 158, 257.a; D.I. 362, Ex. H (Shalek Tr.) at 246:12-247:15. Dr. Shalek provided a detailed explanation of his opinion that "synthesizing cDNA using the primer does not append the primer or its barcode to cDNA." *E.g.*, D.I. 327, Ex. 30 (Shalek Reb. Rep.) ¶ 231; *see id.* ¶¶ 231-249; D.I. 327 (Shalek Dec.) ¶¶ 37-50. Parse's reliance on mischaracterizations reveals where it thinks the actual evidence points.

Parse identifies no reason that the Accused ScaleBio Products infringe if the applicant's disclaimer means, as Parse previously assured the Court, "*every* step of the labeling method must take place 'within intact cells.'" D.I. 101 at 53 (emphasis original). Summary judgment that use of the Accused ScaleBio Products does not infringe the Asserted Parse Claims should be granted.

## B. Use of the Accused ScaleBio Products Does Not Involve "Appending Well-Specific Tags <u>to cDNAs</u>" When Performing Step (b)'s Reverse Transcription.

Parse admits that the reverse transcription performed when using the Accused ScaleBio Products appends ***one nucleotide at a time*** to the primer. D.I. 307 (ScaleBio Br.) at 29-30; D.I. 301 (ScaleBio's Facts) ¶ C19 (stating reverse transcription "synthesize[s] cDNA by ***adding nucleotide bases, one at a time***"); D.I. 372 (Parse Resp.) ¶ C19 ("Undisputed").

Parse also admits that "cDNA" as used in the art refers to a ***biopolymer*** composed of nucleotides. ScaleBio's Facts include that ordinary meaning: "Nucleic acids, including DNA and RNA, are biopolymers, and are linear chains of individual building blocks known as 'nucleotides.'" D.I. 301 (ScaleBio's Facts) ¶ C17. Parse disputed the Fact "in part" but only to assert that "cDNA is formed once a nucleotide hybridizes to the RNA ***and attaches*** to the adjacent nucleotide"—i.e., multiple nucleotides in a biopolymer. D.I. 372 (Parse Resp.) ¶ C17.

Since one nucleotide is not a biopolymer of nucleotides—and therefore is not cDNA—the reverse transcription that occurs in the Accused ScaleBio Products does not "append[] well-specific tags *to cDNAs*."  D.I. 241.  Summary judgment of non-infringement should be granted.

Leaving to the jury the question of whether "cDNA" in the Court's construction encompasses a single nucleotide, as Parse suggests (D.I. 359 (Parse Ans.) at 30-31), would be inappropriate.  *Cobalt Boats, LLC v. Brunswick Corp.*, 773 F. App'x 611, 614 (Fed. Cir. 2019) ("It is not appropriate to leave to the jury the task of resolving claim construction disputes."); *Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012) ("[I]n those cases in which the correct construction of a claim term necessitates a derivative construction of a non-claim term, a court may perform the derivative construction in order to elucidate the claim's meaning.").  The cases Parse cites resolved the dispute about claim scope, leaving for the jury the question of whether that construction was met.  The Court should hold that "cDNA" refers to "a polymer of nucleotides, not a single nucleotide."

Parse relies on a litany of irrelevant opinions from Dr. Satija.  D.I. 359 (Parse Ans.) at 31-32.  **First**, some opinions rely on appending one nucleotide at a time, which the undisputed ordinary meaning of "cDNA" excludes.  D.I. 313, Ex. 24 (Satija Reply Rep.) ¶¶ 60-61;  D.I. 362, Ex. I at 218:12-221:6, 223:3-224:6 (to which ScaleBio objects); D.I. 372 (Parse Resp.) ¶ C17.  **Second**, some opinions urge that, even if the *step* of reverse transcription does not append cDNA to the primer, the *result* is that the cDNA is "appended" to the primer.  D.I. 313, Ex. 24 (Satija Reply Rep.) ¶¶ 62-67; D.I. 313, Ex. 22 (Satija Op. Rep.) ¶¶ 168-172, 381-392, 598-609.  But the claims require rounds of "appending well-specific tags to cDNA" in intact cells not merely the result of tags being appended to cDNA by some other method.  *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1314-1315 (Fed. Cir. 2016) (explaining that infringement requires "performing

all of the claim limitations" and "[m]erely producing that same result in a different way does not suffice"). **Third**, some opinions are conclusory assertions that the claim language is met (D.I. 313, Ex. 24 (Satija Reply Rep.) ¶¶ 52-54, 86-89), which "do not create a genuine issue of material fact." *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 875 (Fed. Cir. 2024). **Fourth**, some opinions address the doctrine of equivalents (D.I. 313, Ex. 22 (Satija Op. Rep.) ¶¶ 362-363, 569-570, 787-788), which cannot recapture disclaimed subject matter. *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1145 (Fed. Cir. 2021).

    **C.**    **Use of the Accused ScaleBio Products Does Not "Coupl[e] the Secondary Nucleic Acid Tags That Were Provided in Step (h) to the Primary Nucleic Acid-Tagged cDNA Molecules That Were Produced in Step (e)," as Required by Step (i) Under the Parties Agreed-Upon Construction.**

Here too, the relevant facts are undisputed: Tagmentation occurs after the Indexed Ligation reaction that Parse relies on to meet step (e), Tagmentation alters the molecules made by the Indexed Ligation, prior to the Indexed PCR reaction that Parse relies on to meet step (i). D.I. 301 (ScaleBio's Facts) ¶¶ C21-C26; D.I. 372 (Parse Resp.) ¶¶ C21-C26 ("Undisputed").

As a matter of claim construction law, "the primary nucleic acid-tagged cDNA molecules that were produced in step (e)" in the parties' agreed-upon construction of step (i) must be the same molecules that were produced in step (e). D.I. 307 (ScaleBio Br.) at 30-31 (collecting cases). Parse's only response is to assert that Dr. Satija disagrees (D.I. 359 (Parse Ans.) at 33), but this is a legal question. Since Parse cannot point to any molecules that were (1) produced in the Indexed Ligation reaction and (2) then used in the Indexed PCR reaction, summary judgment that use of the Accused ScaleBio Products does not infringe should be granted.

Parse relies on claim 9 of the '065 Patent, which recites "subsequent to (b), coupling an adapter sequence to each of the cDNA molecules by integrating the adapter sequence into the cDNA molecules using a transposase." D.I. 359 (Parse Ans.) at 34. That additional step can

occur after step (i), which clearly requires using "the primary nucleic acid-tagged cDNA molecules that were produced in step (e)." Dependent claim 9 cannot broaden claim 1.

Parse asserts that "Dr. Satija also opined that the specification describes performing standard NGS techniques like tagmentation before performing step (i) of the claims." D.I. 359 (Parse Ans.) at 34. In reality, the specification says nothing about tagmentation being performed on cDNA, before or after step (i), and Dr. Satija does not identify anything to the contrary. Regardless, the claims do not require such techniques at any particular time, so nothing in the specification about those techniques changes the claim language of step (i).

Parse asserts that prosecution history estoppel does not apply on the basis of tangentiality. D.I. 359 (Parse Ans.) at 35-36. Proving tangentiality is "a question of law to be determined by the court, not a jury," on which "the patentee bears the burden." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367-68 (Fed. Cir. 2003) (en banc) (finding estoppel and no exception for tangentiality based on an amendment to resolve a § 112 issue). But Parse's admission that the amendment "clarified … the molecules to which the secondary tag was coupled" (D.I. 359 (Parse Ans.) at 35) disproves the tangential relation exception. The amendment clarified that issue by identifying "the primary nucleic acid-tagged cDNA molecules of (e)," which directly refutes Parse's DOE assertion that step (i) is met with other molecules that are not those produced in step (e). Further, the inquiry "focuses on the patentee's objectively apparent reason for the narrowing amendment," and "that reason should be discernible from the prosecution history record." *Festo*, 344 F.3d at 1369. The objectively apparent reason for the amendment was to require the secondary nucleic acid tags to be added to the primary nucleic acid-tagged cDNA molecules produced in step (e), as the claim language clearly states. *See O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1365 (Fed. Cir. 2008). Accordingly,

15

Parse's asserted equivalent is not tangential to the reason for the amendment.  *Id.*

## IV.    The Claims of the Asserted Parse Patents Are Invalid.

ScaleBio's summary judgment motion for invalidity of the claims of Asserted Parse

Patents should be granted.  D.I. 307 (ScaleBio Br.) at 33-42.  *Cf.* D.I. 359 (Parse Ans.) at 36-43.

### A.    The Challenged Claims of the '065 Patent Lack Written Description.

#### 1.    The Specification Does Not Disclose the Claimed Use of Reverse Transcription Primers Without "a 5' Overhang Sequence."

Parse admits that: (1) the original claims of the '065 Patent's application required a

"reverse transcription primer *comprising a 5' overhang sequence*" (D.I. 374 (Parse Resp.)

(admitting Fact D4)); (2) the claims were broadened in prosecution and the issued claims of the

'065 Patent are "silent with respect to whether the reverse transcription primer has a 5' overhang

sequence" (*id.* (responding to Fact D6)); (3) the claimed "reverse transcription primer" includes

primers that lack "a 5' overhang sequence" (D.I. 359 (Parse Ans.) at 36-37 (describing such

primers as a "slice of the claim scope")); and (4) the '065 Patent does not disclose a reverse

transcription primer lacking "a 5' overhang sequence" (*see* D.I. 359 (Parse Ans.) at 36-41; D.I.

313, Ex. 23 (Satija Reb. Rep.) ¶ 89 (asserting that "would make little sense")).

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368 (Fed. Cir. 2009),

concerning a similar situation.  The originally filed claims recited valves that included a "spike,"

but were amended during prosecution to remove the "spike" limitation, and issued as "spikeless"

claims.  *Id.* at 1377.  Because spikeless claims "do not include a spike limitation" the Court held

them invalid for lack of written description as "the specification describes only medical valves

with spikes."  *Id.* at 1378.  Under *ICU Medical*, the challenged claims of the '065 Patent are

invalid for the same reason.  D.I. 307 (ScaleBio Br.) at 34.  Parse responds only by asserting that

written description is purportedly not required for reverse transcription primers without "a 5'

overhang sequence" because such primers are supposedly "inoperable."  D.I. 359 (Parse Ans.) at 36-37.  Parse is wrong for each of the following two independent reasons:

**First**, Parse is wrong in contending that inoperative embodiments of the claimed invention are exempt from the written description requirement.  *See id.* at 36-37 (citing *In re Smythe*, 480 F.2d 1376 (C.C.P.A. 1973)).  In *Smythe*, the Court held that claims reciting an "inert fluid" as a "segmentizing medium" ***had written description*** in the specification.  480 F.2d at 1384 (holding that the description "would convey to [a POSA] the knowledge that the applicants invented a sample analyzer with an inert *fluid* segmentizing medium." (emphasis original)).

In the portion of *Smythe* cited by Parse, the Court rejected the Board's reliance on the alleged inclusion of inoperative embodiments as ***an additional ground*** of invalidity for lack of written description.  *Id.* at 1385 (finding "no basis" for the Board's conclusion that "use of the word fluid makes the claim so broad as to include inoperative fluids").  *Smythe* did not hold that "a patent specification need not describe embodiments of a claim that may fall within a claim's scope, but that would be predictably inoperable," as Parse contends.  D.I. 359 (Parse Ans.) at 37.  Any such reading of *Smythe* is foreclosed by *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353 (Fed. Cir. 2010) (en banc) (requiring a written description of "the complete and final invention with all its claimed limitations").

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271 (1949) further refutes Parse's mischaracterization of *Smythe*.  There, the claims were invalid because "they overclaim the invention" disclosed in the specification and were not saved by the inoperativeness of the undisclosed embodiments.  336 U.S. at 276-77.  The claims lacked written description support for the inoperative embodiments and were invalid *notwithstanding* inoperativeness.

Parse attempts to distinguish *Graver Tank* based on the number of inoperable

embodiments.   D.I. 359 (Parse Ans.) at 38-39.  However, nothing in the Supreme Court's decision turned on the number of inoperable embodiments; the decision does not even mention how many such embodiments exist; and the claims were invalid simply because they claimed more than had been disclosed.  336 U.S. at 276-77.  Those inoperative embodiments were not exempt from the written description requirement, as Parse would misread *Smythe* to suggest.

Parse's position is not supported by *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569 (Fed. Cir. 1984), which concerned enablement, not written description.  *Id*. at 1576.  Dr. Satija's testimony that RT primers lacking a 5' overhang "would be predictably inoperable" (D.I. 359 (Parse Ans.) at 38) concerns enablement but is irrelevant to written description.  *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1376 (Fed. Cir. 2024) ("One final cautionary point. Whether a claimed invention would 'work,' or whether it is operable, goes more directly to the utility requirement or the enablement requirement, not the written description requirement.").  Nor is Parse's position supported by its citation (D.I. 359 (Parse Ans.) at 40) to *Capon v. Eschar*, 418 F.3d 1349 (Fed. Cir. 2005), which explained that the POSA's knowledge helped justify a finding of written description support.  *Id.* at 1358.  But here, Parse asserts that written description support is not required at all.

This District previously considered and rejected the argument Parse makes here. In *Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566 (D. Del. 2018), the Court explained, "specification contains a detailed description of one embodiment," but "the claims are far broader than the disclosure."  *Id.* at 625, 628.  Judge Bryson of the Federal Circuit, sitting by designation, rejected the patent owner's argument that the challenged claims were valid because the challenger had not proved that any undisclosed embodiment was operative:

> A patentee may not draft claims that are sweepingly broad and then defend against a
> challenge to their breadth by pointing out that the challenger has failed to show that

18

there are any operative embodiments within the broad scope of the claims other than those that were specifically disclosed in the specification.

*Id.* at 629.  Parse is wrong that inoperable embodiments of the claimed invention need not be described, and summary judgment should be granted for this reason alone.

**Second**, Parse attempts to create a dispute of fact about the purported inoperativeness but points only to immaterial issues.  Parse argues that an RT lacking a 5' overhang sequence would be "inefficient," but admits that the claims do not require any level of efficiency.  D.I. 359 (Parse Ans.) at 40.  Parse asserts there are challenges with starting "with minute amounts of material," but nothing in the claims requires any particular amount of starting material.  *Id.*; *see id.* at 40-41.  Parse argues that omitting a 5' overhang sequence would create "sequencing errors," but the challenged claims do not require sequencing.  *Id.* at 41.  Consequently, for this additional reason, summary judgment that the challenged claims of the '065 Patent are invalid should be granted.

### 2.    The Specification Does Not Disclose The Claimed Use of Reverse Transcription Primers That "Comprise a Barcode Sequence."

Parse's evidence is conclusory and does not create a genuine dispute of fact.  Parse quotes part of paragraph 43 of the '433 Application and asserts that its expert "Dr. Satija has pointed" to that paragraph.  D.I. 359 (Parse Ans.) at 42.  In fact, Dr. Satija merely quoted a partial phrase from the paragraph; he did not explain why a POSA would understand that phrase alone as disclosing the limitation or would disregard the rest of the paragraph.  *See* D.I. 313, Ex. 23 (Satija Reb. Rep.) ¶ 97.  Such "[c]onclusory expert assertions do not give rise to a genuine issue of material fact."  *D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) (holding claims invalid for lack of written description where the expert "did not specifically address *why*" the cited material disclosed the limitation (emphasis original)).

Parse asserts that Dr. Satija also identified other "passages and figures."  D.I. 359 (Parse Ans.) at 42 (citing D.I. 375 (Parse's Facts) ¶¶ 20 & 21).  Dr. Satija's opinions are unsupported

*non sequiturs*.  He cites that material and baldly asserts that "POSA would have understood this disclosure to indicate that the reverse transcription primer can comprise a barcode sequence." D.I. 313, Ex. 23 (Satija Reb. Rep.) ¶ 97; *see id.* ¶ 98 (similar).  Again, such conclusory assertions do not avoid summary judgment.  *D Three Enterprises*, 890 F.3d at 1051.  This is not a "battle of the experts."  D.I. 359 (Parse Ans.) at 42.  ScaleBio's detailed expert analysis shows why the specification does not disclose the limitation.  D.I. 307 (ScaleBio Br.) at 38-40 (citing D.I. 327, Ex. 29 (Shalek Op. Rep.) ¶¶ 107-110, Ex. 31 (Shalek Reply Rep.) ¶¶ 39-50).  Parse relies on conclusory *non sequiturs*.  Summary judgment of invalidity should be granted.

### B.    The Challenged Claims of the '355 and '856 Patents Are Anticipated.

Parse does not dispute that "Rosenberg disclosed all the elements of" the challenged claims of the '355 and '856 Patents; Parse's only response is that Rosenberg is not prior art.  D.I. 307 (ScaleBio Br.) at 41-42; D.I. 359 (Parse Ans.) at 42-43.  *Compare* D.I. 303 (ScaleBio's Facts) at D12-D29, *with* D.I. 374 (Parse Resp.) at D12-D29 (not addressing whether Rosenberg discloses the claim limitations).  Consequently, Parse admits that Rosenberg anticipates the challenged claims of the '355 and '856 Patents if the Court holds that there is no descriptive support for reverse transcription primers that either (a) lack "a 5' overhang sequence" or (b) "comprise a barcode sequence."  D.I. 307 (ScaleBio Br.) at 41.  Parse ignores ScaleBio's additional reason that the challenged claims of the '856 Patent lack support—namely, that even if the specification discloses reverse transcription primers comprising a barcode sequence, the specification does not disclose that the primer's "barcode sequence *is specific to each well or compartment*."  *Id.*  Consequently, the Court should grant summary judgment that the challenged claims of the '355 and '856 Patents are anticipated.

## V.    Parse's Experts Should Be Precluded from Providing Certain Opinions.

ScaleBio's motions to preclude certain Parse expert testimony should be granted.  D.I.

307 (ScaleBio Br.) at 42-50.  *Cf.* D.I. 359 (Parse Ans.) at 43-50.

    **A.**    **Dr. McDuff's Opinions Regarding** ████████████████ ████████████████████████████████ **Should Be Excluded.**

Parse concedes that Dr. McDuff's *Georgia Pacific* royalty analysis is driven in two separate (and additive) ways by ████████████████████████████. D.I. 359 (Parse Ans.) at 43.  What Parse and Dr. McDuff conspicuously fail to point to, however, is ***any support whatsoever*** for such a disproportionate reliance on ████████████ that does not inform the relevant question—which is, ███████████████████████████████

████████████████████████████████████████████

████████ Now acknowledging that ████████████████████████

████████████████ (*id.* at 47), it is clear that Dr. McDuff simply searched for any number in that Agreement to assemble a calculation for driving his starting point royalty as low as possible. This ends-driven analysis is unreliable and should be excluded.

    **1.**    **Dr. McDuff's Calculation of an "Effective Royalty Rate" Is Unreliable.**

Dr. McDuff's reasonable royalty analysis starts by calculating an "effective" royalty rate of ███ far lower than the negotiated rate of ████████████████.  He then ████████████████ ████████████ to arrive at a starting point royalty from which he then applies the *Georgia Pacific* factors.  D.I. 319, Ex. 37 (McDuff Reb. Rep.) ¶¶ 104-115.  This insistence on starting with an "effective" royalty rate improperly focuses on the ***outcome*** of how ████████████████████ played out, and ignores how ScaleBio actually valued the licensed assets in that Agreement.

When ████████ ScaleBio had to bargain for and agree to a royalty rate for ██████████ ████████████████████████████████████████████████████ ████████████████████.  D.I. 313, Ex. 34, SCALEBIO_000007.  Dr. McDuff concedes that as of the execution date of ████████████████, ScaleBio had not ██████████████████████

21

███████████████████████████████████████████████. Ex. 56 (McDuff

Tr.) at 181:5-9.  In short, ScaleBio ██████████████████████████████████

██████████████████ Events playing out *after that time* reflect subsequent decisions and

later-arising facts that depart from the actual valuation of the licensed IP assets by the

negotiating parties, as even Dr. McDuff agrees when he dismisses evidence that ScaleBio made

*higher* than █████████████████████████████████████████████████

███████ D.I. 328, Ex. 16 (Mooney Reply Rep.) ¶¶ 82-85; D.I. 319, Ex. 37, ¶ 79.

Likewise, the fact that ScaleBio and Parse would have recognized that ████████

████████████ ███████████ (D.I. 359 (Parse Ans.) at 44) does *not* lend reliability to

Dr. McDuff's "effective" rate because it incorrectly presumes the parties would behave as if

negotiating ████████████████████████████████████████████

██████████████████████████████████████. ███████████████

█████████████████████████████████████████████████

████████████████████████████████. Even still, ScaleBio █████████

█████████████████████████████████████████████

████████████████████████ At the hypothetical negotiation,██

███████ the two parties are certain that the Accused Parse Products practice the valid Asserted

ScaleBio Patents, and know that such products will compete with ScaleBio's own forthcoming

single-cell sequencing offerings.  With a commercially successful competitive product, ████

██████████ ██████ would have had a minimal impact on the amount ScaleBio would seek

for the infringement of its patents—patents it had itself already valued as justifying a ████████

royalty when it negotiated ██████████████████████████████.  As

ScaleBio's expert recognizes, ScaleBio would not start a hypothetical negotiation at a rate lower

than this for Parse's infringement of that IP.  D.I. 328, Ex. 16 (Mooney Reply) ¶¶ 98-99. *Mondis Tech., Ltd. v. LG Elecs, Inc.*, 2011 WL 2417367, at *4-*6 (E.D. Tex. Jun. 14, 2011) (permitting evidence that hypothetical royalty could be up to three times the rate in pre-litigation comparable licenses—"[T]he parties executed the license in the 'real-world' with uncertainty regarding the validity of the patents and infringement of the licensed products. In the hypothetical negotiation, however, the patent is assumed to be valid and the accused products are assumed to infringe…the patentee in the 'hypothetical-world' is in a better bargaining position.").

Finally, while ███████████ "*may … play a role* in crafting the hypothetical license" (D.I. 359 at 45), neither Parse nor Dr. McDuff explains why such provision should play a role *here*.  All the ██████-related cases Parse cites are easily distinguishable.  The *Integra* case merely noted that ████████████ may be considered (without providing any analysis) in hypothetical negotiations over research tool technologies where reach-through royalties may be at play.  *Integra,* 331 F.3d at 871-72.  None of those circumstances exist here.  In *AVM,* the "context" Parse relies on is the expert's explanation that ████████████████ are relevant "for companies … who sell complex products with hundreds or thousands of features [and] cannot afford to pay disproportionately large royalties for patents to individual features" and that "lump sum royalties [] help control patent stacking."  Redacted Answer Br. at 14-15, *AVM Techs. v. Intel*, No. 1:15-cv-00033-RGA (D. Del. Mar. 7, 2017) (D.I. 514) (Ex. 59).  But the experts here agree that the Asserted ScaleBio Patents relate to the complete saleable kits and that a running royalty is appropriate. D.I. 366 at 36-37.  Finally, as Parse concedes via silence, the *Bio-Rad* case did not relate to using ████████████ to conduct internal apportionment.  *See infra,* p. 24.  There is no justification for Dr. McDuff's use of the ██████████████████ to calculate an "effective" royalty rate as the starting point for his *Georgia-Pacific* analysis.

2. **Dr. McDuff's Use of the** ████████████ **For His Apportionment Analysis Only Compounds the Unreliability of His Opinion.**

Having utilized the ████████████████████████ to determine an "effective" royalty rate, Dr. McDuff returns to that same provision to try to account for the difference between that agreement ████████████████ and the hypothetical negotiation (over the ████ Asserted ScaleBio Patents). His analysis is unreliable.

First, Dr. McDuff failed to cite a single article, case, or any other source in which a ████████████████ was reliably found to shed light on how parties would apportion the total licensed IP in an agreement relative to some portion of that IP that is later infringed by a competitor. The lack of any such citation in Parse's answering brief confirms the validity of ScaleBio's critique. And Parse's continued reliance on the *Bio-Rad* case remains misguided. Parse correctly captures the crux of ScaleBio's critique of this case as failing to meaningfully support Dr. McDuff's analysis because it ***"did not relate to using a*** ████████████ ***to apportion the asserted patents from the total licensed IP."*** D.I. 359 (Parse Ans.) at 48. However, rather than respond to this critique, explain why ScaleBio is incorrect, or point to anything in *Bio-Rad* that would support the opposite conclusion, Parse dismisses it as "miss[ing] the point." *Id.* But, the lack of any support for linking the value analysis of a ████████████ with the value analysis of an internal apportionment question, ***is precisely the point.*** Parse acknowledges "the absence of any direction in the ████████████████████ ████████████████" and thus concedes that Dr. McDuff's arbitrary use of the ████████████████ lacks such direction. D.I. 359 (Parse Ans.) at 47.

That leaves only Dr. McDuff's sweeping but unsupported statement that a ████████ ████████ provides "a reasonable proxy" for how "the parties at the hypothetical negotiation would value a license to just" the Asserted ScaleBio Patents. D.I. 359 (Parse Ans.) at 46. But

Dr. McDuff's bare assertion does not cloak the point in reliability, particularly where (as discussed above) the circumstance of parties agreeing to a ██████████████████████████ ████████████████ is **distinct** from how parties would value the valid, infringed, ScaleBio Asserted Patents to which Parse requires a license for its already-commercialized, competitive product.  Dr. McDuff's testimony is unreliable and should be excluded.

### B.  Dr. Satija and Dr. Pachter Do Not Meet Their Own Definition of a POSA and Should Be Precluded From Testifying From the Perspective of a POSA.

Parse does not dispute that its two technical experts (Dr. Pachter and Dr. Satija) both lack an advanced degree in the fields that they identified as those that a POSA would "typically" have.  D.I. 359 (Parse Ans.) at 48-50.  The deficiency is particularly acute for Dr. Pachter.  Parse admits that he studied "methods for *analysis of genome sequences*."  *Id.* at 49 (emphasis from Parse).  But Parse ignores that the Asserted ScaleBio Patents on which he opines concern the performance of molecular techniques, not the analysis of resulting data.  *Id.* at 49 (emphasis from Parse); *cf.* D.I. 362, Ex. L (Pachter Tr.) at 25:4-6 ("Well, I was not trained in wet lab experimental biology. So as a student I did not perform experiments myself.").  Parse suggests a comparison with the named inventors of the Asserted Parse Patents.  D.I. 359 (Parse Ans.) at 50.  But Parse ignores that the Asserted *ScaleBio* Patents were invented by Dr. Garry Nolan, whose Ph.D. is in Genetics.  D.I. 308, Ex. 1 ('442 Patent) at field [72]; Ex. 58 (Nolan Tr.) at 19:10-14.  Parse relies on Dr. Pachter's subsequent experience (D.I. 359 (Parse Ans.) at 50), which does nothing to prove the relatedness of his degree and is irrelevant to the subject matter of the Asserted ScaleBio Patents.  *E.g.*, D.I. 362, Ex. L (Pachter Tr.) at 27:7-20 (admitted that he has never made cDNA, fixed cells, or performed split-pool barcoding).  Dr. Pachter is undoubtedly a POSA in many things—just not in the subject matter of the Asserted ScaleBio Patents.

OF COUNSEL:

Stephen S. Rabinowitz
srabinowitz@wolfgreenfield.com
WOLF, GREENFIELD, & SACKS, P.C.
605 Third Avenue
New York, NY 10158
212.697.7890

Chelsea A. Loughran
cloughran@wolfgreenfield.com
Stuart V. C. Duncan Smith
sduncansmith@wolfgreenfield.com
Emma L. Frank
efrank@wolfgreenfield.com
Arden E. Bonzo
abonzo@wolfgreenfield.com
WOLF, GREENFIELD, & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000

*/s/ Sara M. Metzler*
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
RICHARDS, LAYTON, & FINGER, P.A.
920 North King Street
One Rodney Square
Wilmington, DE 19801
302.651.7700
farnan@rlf.com
metzler@rlf.com

*Counsel for Plaintiff Scale Biosciences, Inc.*

Dated: April 17, 2025

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2025, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

<table>
<tr>
<td>

**<u>BY ELECTRONIC MAIL</u>**
Karen L. Pascale
Robert M. Vrana
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

</td>
<td>

**<u>BY ELECTRONIC MAIL</u>**
Byron L. Pickard
R. Wilson Powers III, Ph.D.
Chandrika Vira
Christopher M. Gallo, Ph.D.
Brady P. Gleason
David Y. Wang
Louis P. Panzica, Jr.
Jamie Dohopolski
Ryan N. Kaiser
Cristen A. Corry
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005

</td>
</tr>
</table>

*/s/ Sara M. Metzler*
Sara M. Metzler (#6509)
metzler@rlf.com
