```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE



SCALE BIOSCIENCES, INC.,)
et al.,                 )
                        )
        Plaintiffs,     )  C.A. No. 22-1597-CJB
                        )
v.                      )
                        )
PARSE BIOSCIENCES, INC.,)
et al.,                 )
                        )
        Defendants.     )



               Thursday, June 12, 2025
               11:00 a.m.
               Courtroom 2A

               844 King Street
               Wilmington, Delaware



BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
    United States Magistrate Judge



APPEARANCES:

        RICHARDS, LAYTON & FINGER, P.A.
        BY:  KELLY E. FARNAN, ESQ.
        BY:  SARA M. METZLER, ESQ.

        -and-

        WOLF, GREENFIELD & SACHS, P.C.
        BY:  STEPHEN RABINOWITZ, ESQ.
        BY:  CHELSEA LOUGHRAN, ESQ.
        BY:  STUART DUNCAN SMITH, ESQ.
        BY:  EMMA L. FRANK, ESQ,
        BY:  ARDEN E. BONZO

        -and-
```

```
 1    APPEARANCES CONTINUED:

 2

 3          WILMER CUTLER, PICKERING, HALE & DORR, LLP
           BY:  BARISH OZDAMAR, ESQ.

 4                          Counsel for the Plaintiffs

 5

 6          YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
           BY:  KAREN L. PASCALE, ESQ.

 7          -and-

 8          STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
           BY:  BYRON L. PICKARD, ESQ.

 9          BY:  RALPH W. POWERS, III, ESQ.
           BY:  BRADY P. GLEASON, ESQ.

10

11                          Counsel for the Defendants

12

13                   ----------------------------

14
```

11:04:16 15          COURT CLERK:  All rise.  The United States

11:04:19 16   District Court for the District of Delaware is now in

11:04:21 17   session.  The Honorable Christopher J. Burke presiding.

11:04:24 18          THE COURT:  All right.  Please be seated,

11:04:26 19   everybody.  Good morning.

11:04:27 20          All right.  So before we go on the record, let

11:04:33 21   me just say that we have counsel for both sides here with

11:04:36 22   us.  We also have our court reporter.  We thank her for her

11:04:40 23   service as always.

11:04:41 24          So let's now go on the record in this matter and

11:04:43 25   for the record, let me say that we're here day in civil

| | |
|---|---|
| 11:04:50 1 | action number 22-1597-CJB here in our court.  This is -- |
| 11:05:00 2 | these are a case in which we have claims from both sides, |
| 11:05:06 3 | but I'll refer today to Scale BioSciences, Inc., and Roche |
| 11:05:13 4 | Sequencing Solutions, Inc., as the plaintiffs, just for ease |
| 11:05:18 5 | of reference.  I may also refer to them as Scale.  Not |
| 11:05:22 6 | trying to diss Roche in any way, but just to make it easier |
| 11:05:26 7 | for me.  And then we've got, in the first affirmative case |
| 11:05:32 8 | the defendant Parse BioSciences, Inc.  And for today's |
| 11:05:36 9 | purposes I'll refer to them as defendant or Parse.  Of |
| 11:05:40 10 | course I know Parse too has affirmative claims in the case. |
| 11:05:43 11 | And we're here today for oral argument on a summary |
| 11:05:49 12 | judgement motion that each side has selected. |
| 11:05:52 13 | Before we go further, let's have counsel for |
| 11:05:54 14 | each side identify themselves for the record.  We'll start |
| 11:05:57 15 | first with counsel for the plaintiff, Scale's side.  We'll |
| 11:06:02 16 | begin there with Delaware counsel. |
| 11:06:06 17 | Ms. Farnan, good morning. |
| 11:06:06 18 | MS. FARNAN:  Good morning, Your Honor.  Kelly |
| 11:06:07 19 | Farnan from Richards, Layton & Finger on behalf of Scale and |
| 11:06:10 20 | Roche day.  I'm also joined by Sara Metzler from my office. |
| 11:06:12 21 | And on behalf of Scale, I have my co-counsel from Wolf |
| 11:06:17 22 | Greenfield, Stephen Rabinowitz, Stuart Smith, Chelsea |
| 11:06:20 23 | Loughran, Emma Frank, Arden Bonzo, and we also have Dylan |
| 11:06:26 24 | Green assisting with our technology. |
| 11:06:28 25 | On behalf of Roche today, I'm joined by Barish |

11:06:32  1    Ozdamar from WilmerHale.

11:06:34  2              And then we have two special guests with us

11:06:39  3    today.  We have Cecelia Quirk, who is a summer associate at

11:06:40  4    my firm.  She is at Notre Dame Law School and wants to be a

11:06:45  5    patent lawyer and is studying for the patent bar right now.

11:06:48  6              THE COURT:  Well, that's not fun, but Delaware

11:06:49  7    is a great place to work.

11:06:52  8              MS. FARNAN:  Thank you for the plug, Your Honor.

          9    We appreciate it.

11:06:54 10              And then we also are joined by Miranda

11:06:56 11    Calderone.  She is at Brown.  She's pre law, still in

11:06:59 12    college, pre law.  She is part of the Student Athletes

         13    Mentorship Program.  She's Ms. Loughran's mentee, so she's

11:07:04 14    excited to be here today to see a patent hearing.  So we

11:07:06 15    appreciate Your Honor letting them be here.

11:07:09 16              THE COURT:  Okay.  Great.  Welcome.

11:07:11 17              All right.  We'll do the same thing for

11:07:13 18    defendants' side.  Ms. Pascale, good morning.

11:07:16 19              MS. PASCALE:  Good morning, Your Honor.  Karen

11:07:17 20    Pascale from Young, Conaway, Stargatt & Taylor for Parse

11:07:21 21    BioSciences and University of Washington.  I'm joined today

11:07:24 22    by my co-counsel from the Sterne Kessler firm, if I might

11:07:29 23    introduce Byron Pickard --

         24              MR. PICKARD:  Good morning, Your Honor.

11:07:32 25              MS. PASCALE:  -- Trey Powers --

|  |  |
|---|---|
| 1 | MR. POWERS:  Good morning, Your Honor. |
| 11:07:33 2 | MS. PASCALE:  -- and Brady Gleason -- |
| 3 | MR. GLEASON:  Good morning, Your Honor. |
| 11:07:36 4 | MS. PASCALE:  And I believe Mr. Pickard will be |
| 11:07:39 5 | presenting argument today for Parse. |
| 11:07:41 6 | THE COURT:  Okay.  Thank you. |
| 11:07:43 7 | I should say, Ms. Pascale reminded me, that at |
| 11:07:46 8 | least some of the responsive claims from Parse's side, we |
| 11:07:49 9 | received from Washington, who is also a counterclaim |
| 11:07:52 10 | plaintiff.  I think -- is this the first time I've seen in |
| 11:07:59 11 | person defendants' or Parse's counsel, is that right? |
| 11:08:04 12 | MS. PASCALE:  I think that's right, Your Honor. |
| 11:08:09 13 | THE COURT:  Okay.  Well, welcome personally. |
| 11:08:09 14 | So let me just say a couple things |
| 11:08:13 15 | administratively just about the process.  First thing I want |
| 11:08:18 16 | to say is, you know, having spent a lot of time prepping, I |
| 11:08:22 17 | want to say off the top I really appreciate counsels' work |
| 11:08:26 18 | in arguments in their papers.  Just as a general matter, for |
| 11:08:32 19 | me, being a judge on this court is great because you get to |
| 11:08:36 20 | work on some really interesting cases, including cases like |
| 11:08:40 21 | this, an intellectual property matter, that involve |
| 11:08:41 22 | difficult technology to grasp and so you need the benefit of |
| 11:08:45 23 | really good lawyers who are good explainers to help you |
| 11:08:48 24 | through the process of making good decisions.  Certainly |
| 11:08:51 25 | have that here in this case, as I can see from the briefs, |

11:08:55  1    so just want to say up front I appreciate the work you're

11:08:59  2    doing.  I know it's not easy work and I'm grateful for it in

11:09:03  3    this case.

11:09:04  4              I'll also say that because I'm going to ask you

11:09:06  5    questions in this hearing and sometimes those questions are

11:09:10  6    going to be pretty pointed and other times I might say,

11:09:12  7    well, I'm disappointed about this or that or whatever.  But

11:09:13  8    I'm doing that only because I need to try to make a good

11:09:17  9    record and help me make the hard calls here.  But up front I

11:09:20 10    want to tell you you're doing a great job.  I really

11:09:21 11    appreciate you having in our court.  It's a pleasure for me

11:09:24 12    to be working with you.  Okay?

11:09:25 13              Second -- now each side picked a motion.  Now, I

11:09:29 14    had asked, because got a lot on my plate, for the sides to

11:09:35 15    select just one motion that each wanted to argue that was

11:09:39 16    important to them.  I also gave some guidance, which is I

11:09:43 17    would really appreciate it if you could focus on something

11:09:46 18    around the magnitude of a total of 30 pages of briefing or

11:09:51 19    less.  Plaintiffs' side, they did that, they gave me 29

11:09:56 20    pages of briefing.  Defendants' side kind of blew by that

11:09:59 21    and said here's 41 pages for our motion.  So what we're

11:10:03 22    going to do is we're going to have argument first on

11:10:08 23    plaintiffs' motion, on the entirety of the briefing that

11:10:13 24    they designated.  Then we're going to have argument on

11:10:19 25    defendants' motion, but I know we're going to have argument

11:10:25 1    with regard to the defendants' motion for summary judgement

11:10:29 2    number one as to the '752 Patent and the issue.  I am not

11:10:34 3    sure we will get to argument on the remaining.  We may.

11:10:38 4    We'll see how the time goes.

11:10:40 5            So what we'll do is I'll hear first plaintiffs'

11:10:43 6    motion.  I gave the parties, I think at their request, three

11:10:47 7    hours of total time.  We'll break it up in to an hour and a

11:10:51 8    half per motion, meaning that per motion the sides get

11:10:55 9    45 minutes to argue.  We'll keep track of time up here.  I

11:10:59 10   will try to let you know when you got five minutes left.

11:11:03 11   And just keep in mind I'm going to be asking questions, so

11:11:07 12   hope the folks will be kind of answering the questions that

11:11:10 13   I've got about the motions, though I'll try to give you the

11:11:13 14   chance to add anything else you wish to add before we

11:11:16 15   conclude.  We'll also take a break in the middle.  So we'll

11:11:20 16   hear plaintiffs' motion first, take a break, and then we'll

11:11:20 17   hear defendants' motion.

11:11:22 18           If you have slides, I'd ask that when you first

11:11:27 19   get up for your motion that those slides, you hand them up

11:11:30 20   to my law clerk.  We need two copies.  If you're using

11:11:32 21   slides, I'll be following along with you by looking up at

11:11:35 22   the screen.  If I'm not looking at you, I'm not trying to be

11:11:37 23   disrespectful, it's just easier for me to follow by doing it

11:11:39 24   that way.

11:11:40 25           All right.  So I think those -- oh, lastly, I

11:11:44 1    think somebody asked, I forget which side, if, even though

11:11:48 2    this was an in-person hearing, if we could make it available

11:11:53 3    via audio to folks who are in-house back at the office.  And

11:11:57 4    we don't do that as a regular matter and I just want to

11:12:01 5    explain why.  Part of it is that we at the Court have

11:12:04 6    limited options for that.  We literally have a phone in the

11:12:07 7    courtroom, but through practice it's not feasible for the

11:12:11 8    person to hear what's going on even on speaker.  We also

11:12:14 9    have a possibility of doing that through our AV system, but

11:12:17 10   over time it's very glitchy and often might take some work

11:12:21 11   to make it happen or not with a fix.  Just administratively,

11:12:26 12   it's challenging.  And otherwise, it's really one of those

11:12:30 13   scenarios where if we do it for one case we have to be able

11:12:33 14   to do it for all.  We just don't have the administrative

11:12:35 15   capability to have in-person hearings but also people

11:12:39 16   listening in, so we had to decline that request.  We will do

11:12:43 17   it in emergent situations.  One time we had some pretrial

11:12:45 18   conference, the day before arguing counsel got COVID, so in

11:12:48 19   that case we tried to find a way to make it work.  So that's

11:12:50 20   the reason why we had to decline, not -- again, not trying

11:12:54 21   to be disrespectful to the folks who were asking.  Okay?

11:12:57 22   Just wanted to mention that and explain why we were doing

11:13:00 23   what we were doing.

11:13:01 24           With all that said, let's take up plaintiffs'

11:13:04 25   motion first and I'll turn to plaintiffs' counsel and we'll

11:13:09  1    get ready to begin unless there's any procedural issue.

11:13:13  2              All right.  Mr. Rabinowitz.

11:13:17  3              MR. RABINOWITZ:  Good morning, Your Honor.

11:13:18  4              THE COURT:  Good morning.

11:13:22  5              MR. RABINOWITZ:  May I approach with copies of

11:13:25  6    our slides?

11:13:27  7              THE COURT:  You may.  Welcome, Mr. Rabinowitz.

11:13:59  8    Its been a while since we've seen you in person.

11:14:02  9              MR. RABINOWITZ:  Thank you, Your Honor.  It's a

11:14:04 10    pleasure to be back before you today.

11:14:07 11              So, Your Honor, ScaleBio moves for summary

11:14:17 12    judgement that Parse in infringes Claims 1, 2, 6, and 7 of

11:14:21 13    the '752 Patent.

11:14:23 14              Claim 1 is the only independent claim at issue

11:14:26 15    in this motion.  It is directed to a kit that is defined in

11:14:32 16    structural terms as comprising recited components.  The

11:14:37 17    first recited component is at least two sets of APS

11:14:43 18    oligonucleotides with specified sequence requirements.  I'll

11:14:53 19    come back to that in a moment.  The second element is one or

11:14:55 20    more linking oligonucleotides with specified complementary

11:15:00 21    characteristics.  That's element two.  And the wherein

11:15:04 22    clause specifies how the different sets of APS

11:15:08 23    oligonucleotides are configured interact in the presence of

11:15:12 24    the linking oligonucleotides.

11:15:13 25              Claims 2, 6 and 7 each depend from Claim 1.

11:15:16  1          THE COURT:  And for our purposes we're going to

11:15:18  2   be focused on Claim 1 today?

11:15:20  3          MR. RABINOWITZ:  That's correct, Your Honor.

11:15:22  4   ScaleBio provided expert testimony from Dr. Sims with

11:15:27  5   supporting documentation affirmatively showing that each

11:15:30  6   element of the claims is met.

11:15:32  7          Let me briefly show the evidence for Claim 1

11:15:35  8   before I get to Parse's defenses.

11:15:39  9          THE COURT:  Can I just ask, Mr. Rabinowitz, do

11:15:42 10   you understand -- I'll certainly ask the other side.  We

11:15:50 11   know we're going to have -- I'm sorry.

11:15:58 12          MR. POWERS:  I'm sorry.  One of the slides that

11:15:59 13   I believe Mr. Rabinowitz is about to get to has the precise

11:15:59 14   oligonucleotide nucleotide sequences.  That is confidential

11:16:00 15   information, so I just simply ask that, in that portion

11:16:03 16   where Mr. Rabinowitz shows that, we evacuate the courtroom

11:16:06 17   under the protective order.

11:16:09 18          THE COURT:  Maybe the easier way to do it, since

11:16:09 19   we're literally talking about one slide or that slide,

11:16:15 20   assuming both sides know what we're talking about, tell me

11:16:17 21   to look at it, not put it up on the screen, I'll just look

11:16:21 22   at it in the hard copy version I have here.  Keep everybody

11:16:26 23   in the courtroom.  Okay.

11:16:27 24          But anyway, Mr. Rabinowitz, we know we're going

11:16:30 25   to be fighting about two claim construction disputes, I

11:16:35  1    think.

11:16:36  2                    MR. RABINOWITZ:  Actually three, Your Honor.

11:16:39  3    Two defenses, three claim construction disputes.

11:16:39  4                    THE COURT:  With regard to this issue.  And

11:16:43  5    we'll talk about those.  Say you win them, you prevail in

11:16:52  6    persuading me that you're right as to each of those claim

11:16:56  7    construction disputes that relate to this motion.  Do you

11:16:58  8    understand the other side to have some separate argument?

11:17:01  9                    MR. RABINOWITZ:  No, Your Honor.  They have not

11:17:03 10    raised any other argument.  That's why I wanted to point out

11:17:05 11    we have affirmatively gone forward with evidence showing

11:17:10 12    infringement because each element of the claims is met.

11:17:13 13    They have opposed based on two defenses which turn on the

11:17:17 14    three claim construction issues.  There is actually no

11:17:20 15    dispute about what the kits contain or how they're

11:17:24 16    configured.  The only dispute is a legal one about the scope

11:17:27 17    of the claims.

11:17:29 18                    So as Dr. Sims pointed out, there are three

11:17:34 19    plates.  The Round 2 plate provides the first set of at

11:17:40 20    least 10 APS oligonucleotides.  It has 96 wells; in other

11:17:44 21    words, at least 10.  The Round 3 plate provides the second

11:17:48 22    set of at least 10 APS oligonucleotides.  And it also has 96

11:17:54 23    wells so it meets the at least 10 requirement.

11:17:57 24                    I won't show the next slide, but if Your Honor

11:17:59 25    will turn to it, in each plate -- this is now Slide 5, that

11:18:08  1    all the APS oligonucleotides have a common 5-prime end

11:18:13  2    sequence.  And on Slide 6, as Dr. Sims has demonstrated, in

11:18:18  3    each plate all the APS oligonucleotides have a common

11:18:21  4    3-prime end sequence.  And on Slide 7, again, as Dr. Sims

11:18:27  5    showed, in each plate all the APS oligonucleotides have an

11:18:31  6    internal sequence that is well-specific.  And that

11:18:35  7    distinguishes the APS oligonucleotides in one well from the

11:18:39  8    APS oligonucleotides in every other well of that plate.

11:18:44  9            So there's no dispute about what the accused

11:18:48 10    kits contain or how they're configured.

11:18:53 11            Parse's opposition turns on two defenses that

11:19:00 12    involve three issues of claim construction.  The first

11:19:03 13    defense, it's called A, is whether Claim 1, element (i)

11:19:09 14    excludes multiple copies of the "at least 10 APS

11:19:14 15    oligonucleotides."  The second defense, whether -- in order

11:19:17 16    to establish the second defense, Parse must prevail on both

11:19:22 17    the following claim construction issues; first, whether the

11:19:24 18    preamble of Claim 1 is limiting; and second, whether the

11:19:29 19    "target molecules" should be construed in the manner that

11:19:33 20    Parse proposes.

11:19:34 21            THE COURT:  And I think you're including the

11:19:35 22    preamble as the third claim construction related issue.

11:19:41 23            MR. RABINOWITZ:  Yes.

         24            THE COURT:  Okay.  Go ahead.

11:19:42 25            MR. RABINOWITZ:  So let's address the first

11:19:43  1    issue.  An opposition is that the element(i) does not

11:19:48  2    exclude multiple copies of the at least 10 APS

11:19:54  3    oligonucleotides.  This is shown by the claim language, the

11:19:57  4    specification, and the prosecution history.  And this is

11:20:01  5    true for either of two rationales and it arises from the

11:20:05  6    fact that the claim language uses the word "comprising" both

11:20:08  7    in the transition after the preamble and in defining each

11:20:13  8    set of APS oligonucleotides.

11:20:15  9            THE COURT:  And can I pause here and ask you,

11:20:17 10    we're having a claim construction dispute, so of course I

11:20:21 11    would need to know what's the term in dispute and what is

11:20:27 12    Scale's proposed claim construction.  So can you point me in

11:20:32 13    the briefing to the place where in words you lay out your

11:20:35 14    proposed construction for this?

11:20:37 15            MR. RABINOWITZ:  Your Honor, this is somewhat of

11:20:39 16    an unusual dispute.  It's a dispute about the scope of the

11:20:42 17    claim, but it doesn't turn on the interpretation of any

11:20:45 18    particular phrase, it really turns on the structure of the

11:20:48 19    claim.  And so what I've highlighted would be the term in

11:20:52 20    dispute, "comprising at least two sets of APS

11:20:57 21    oligonucleotides wherein each set comprising at least 10 APS

11:21:05 22    oligonucleotides that each comprise an internal sequence

11:21:07 23    that distinguishes the APS oligonucleotides in the set from

11:21:11 24    one another."  The way the Your Honor would resolve this, we

11:21:15 25    would ask that a set can be any 10 or more APS

11:21:20  1   oligonucleotides that satisfy the 10 sequence requirements

11:21:22  2   and element(i) permits additional oligonucleotides such as

11:21:26  3   copies of the APS oligonucleotides that constitute the set.

11:21:29  4           THE COURT:  And I don't mean to beat -- I mean,

11:21:32  5   that's part of the reason why we need to have this stuff in

11:21:36  6   the briefing is because a write the decision I need to know

11:21:39  7   exactly what I'm going to be writing and when we're going to

11:21:43  8   have a hearing I need to know what I need to be preparing

11:21:43  9   for.  So it has to be the case that whatever it is that you

11:21:46 10   just said now, which went by really fast, something like it

11:21:50 11   must have been referenced in the briefs.

11:21:52 12           MR. RABINOWITZ:  Yes, Your Honor.  We, both in

11:21:55 13   our opening brief and in our reply brief, we took the

11:22:00 14   position and that is really the nub of the dispute, whether

11:22:03 15   element(i) permits additional copies of the at least 10 APS

11:22:09 16   oligonucleotides.

11:22:09 17           THE COURT:  We know that the issue here is -- so

11:22:11 18   the claims require at least two sets or, for our purposes,

11:22:16 19   we think of it as two sets of what?  Two sets of APS

11:22:24 20   oligonucleotides.  The dispute here, if I understand it is,

11:22:27 21   we've got those two sets, can the two sets have copies of --

11:22:37 22           MR. RABINOWITZ:  So we would say the issue is

11:22:39 23   whether the claim permits -- we would say the claim is

11:22:43 24   satisfied if you have two sets and each set can be any 10

11:22:48 25   APS oligonucleotides that satisfy the sequence requirements.

11:22:52 1    And the claim, because it is a comprising claim, is open to

11:22:55 2    additional elements and those can be copies of the APS

11:23:01 3    oligonucleotides that satisfy -- that constitute the sets.

11:23:06 4            THE COURT:  Okay.  Let me let you continue.

11:23:08 5    Hopefully it will be clearer as you go forward.

11:23:11 6            MR. RABINOWITZ:  So, Your Honor, that is the

11:23:13 7    most straightforward reason to reach that conclusion.  And

11:23:21 8    again, we would say a set can be any 10 APS oligonucleotides

11:23:25 9    that satisfies the common 5-prime prime end, common 3-prime

11:23:30 10   prime end and the internal sequence that distinguishes.  And

11:23:34 11   it is immaterial to Claim 1 whether the plates or claimed

11:23:42 12   kit contains additional components such as copies of the

11:23:46 13   oligonucleotides that satisfy the sequence requirement.  And

11:23:53 14   this is -- Parse's construction should be rejected because

11:23:57 15   it would exclude the embodiment depicted in Fig. 4 and Fig.

11:24:00 16   4 I believe is critical.

11:24:02 17           THE COURT:  Maybe, again, could you just go back

11:24:05 18   to the previous slide?  In layman's terms we have to have an

11:24:09 19   understanding of what are we fighting about.  So let's take

11:24:13 20   one set, one set of qualifying APS oligonucleotides.

11:24:17 21           MR. RABINOWITZ:  So if we go back to the plates.

11:24:20 22   Your Honor, I don't want to go back to the objected to

11:24:23 23   slide, but if we consider the first plate it says 96 wells,

11:24:28 24   each well has multiple copies of an APS oligonucleotide.  In

11:24:33 25   that plate, all the APS oligonucleotides have the same

11:24:36 1    5-prime end sequence and 3-prime end sequence and then the

11:24:41 2    internal sequence in each well is different from the

11:24:44 3    internal sequence in all the other wells.  So if you

11:24:47 4    consider any 10 wells and consider one oligonucleotide from

11:24:51 5    each well, that's a set of at least 10.  Once you've

11:24:57 6    satisfied that required, because the claim is an open claim

11:25:00 7    comprising, it doesn't matter that you have copies,

11:25:03 8    additional copies in the well.  You've satisfied the at

11:25:07 9    least 10 and the claim does not exclude copies.  And the

11:25:12 10   proof that it cannot probably be construed to exclude copies

11:25:15 11   is given by Fig. 4.

11:25:20 12            THE COURT:  So let's look -- let's just look at

11:25:23 13   Slide 4.

11:25:25 14            MR. RABINOWITZ:  So this is Fig. 4.  Fig. 4 is

11:25:29 15   in --

11:25:29 16            THE COURT:  I mean Slide 4.  If we can go back

11:25:33 17   to Slide 4.  This is the accused product.

11:25:39 18            MR. RABINOWITZ:  That's correct.

11:25:41 19            THE COURT:  Okay.  So point out the first set,

11:25:45 20   the accused first set of APS oligonucleotides.

11:25:51 21            MR. RABINOWITZ:  So there's three plates, one

11:25:54 22   above the other.  The middle one would be Round 2.  It

11:25:59 23   contains 96 wells, and each well contains multiple copies of

11:26:06 24   an oligonucleotide.  So one oligonucleotide from any 10 of

11:26:08 25   those wells would constitute the set of at least 10.  And

11:26:15 1  it's undisputed, all the oligonucleotides have a common

11:26:20 2  5-prime end sequence.  All the oligonucleotides have a

11:26:22 3  common 3-prime end sequence.  And in each well the

11:26:28 4  oligonucleotides have a well-specific sequence that's unique

11:26:31 5  to that well.  So if you consider any 10 oligonucleotides

11:26:34 6  from at least 10 wells, you've got a set of at least 10 that

11:26:39 7  satisfies the sequence requirement in the claim.

11:26:41 8           THE COURT:  So each of those circles is a well?

11:26:44 9           MR. RABINOWITZ:  Is a well.  It's a physical

11:26:46 10 well in which liquid is present.

11:26:52 11          THE COURT:  It has at least --

11:26:52 12          MR. RABINOWITZ:  You have let's say thousands of

11:26:55 13 copies of an APS oligonucleotide and they are -- they have

11:27:01 14 the same 3-prime and 5-prime end sequences across the plate,

11:27:06 15 but each well as a unique internal sequence between the

11:27:10 16 3-prime and 5-prime prime and it is unique to the well, so

11:27:14 17 that any 10 oligonucleotides chosen from 10 wells will

11:27:18 18 satisfy the claim.

11:27:20 19          THE COURT:  It will go easier if you let me keep

11:27:23 20 talking instead of interrupting.  So each well has a whole

11:27:28 21 bunch of oligonucleotides in it?

11:27:29 22          MR. RABINOWITZ:  Yes.

11:27:30 23          THE COURT:  And all the oligonucleotides in each

11:27:32 24 well are copies of each other.

11:27:35 25          MR. RABINOWITZ:  Yes.  Well, there are

11:27:37  1     additional oligonucleotides, but each well contains multiple

11:27:44  2     copies, identical copies of oligonucleotide.

11:27:47  3              THE COURT:  Well, what you're saying is if you

11:27:49  4     go into one of those wells and picked out an oligonucleotide

11:27:52  5     and looked at its structure and you did that for like nine

11:27:57  6     other wells, nine other oligonucleotides in nine other

11:28:00  7     wells, and you said okay, there's 10, you're saying those 10

11:28:04  8     that you picked out, again, one from each well, they would

11:28:07  9     meet the requirements of the claim?

11:28:09 10              MR. RABINOWITZ:  Yes, they would meet the

11:28:11 11     requirement for a set of at least 10.

11:28:13 12              THE COURT:  Okay.  But the issue is, in each

11:28:17 13     one, which has -- like, say we picked one oligonucleotide

11:28:21 14     out of them, but there's lots of other oligonucleotides in

11:28:24 15     the well and a number of them are copies of maybe the one we

11:28:27 16     picked out.

11:28:28 17              MR. RABINOWITZ:  That's the issue, Your Honor,

11:28:30 18     yes.

11:28:30 19              THE COURT:  And they are saying that the claim

11:28:35 20     is not met.

11:28:35 21              MR. RABINOWITZ:  Correct.

11:28:36 22              THE COURT:  Okay.  Let me let you continue.

11:28:41 23              MR. RABINOWITZ:  So Fig. 4 depicts the process

11:28:46 24     and it shows an APS oligonucleotide that's on the upper

11:28:52 25     right.  That's this structure over here.  And it shows -- in

11:28:55  1   the first line it shows the ensemble being split into 10

11:29:00  2   tubes.  They're not wells in this instance, they're tubes.

11:29:04  3   And in the second row they show an oligonucleotide being

11:29:07  4   added to each tube.  But as you can see from the circles at

11:29:11  5   the bottom, it's not a single copy that's added.  Multiple

11:29:16  6   copies of the same oligonucleotide are being added to each

11:29:20  7   tube and so in the -- in this figure there are three copies

11:29:26  8   depicted of each APS oligonucleotide.  They're different.

11:29:29  9   They have different internal sequence, that's why they're

11:29:33 10   called 1, 2 through 20, but they are provided as multiple

11:29:36 11   copies.

11:29:37 12            THE COURT:  In the briefing, this is literally a

11:29:39 13   question I had.  In Fig. 4, what is defined for the reaction

11:29:45 14   vessel that I'm supposed to be looking at.  In essence, I

11:29:48 15   can tell from the briefing Fig. 4 is important.  I think

11:29:52 16   you're staying Fig. 4 is an example of something -- I mean,

11:29:55 17   the claims don't use the word "wells," but Fig. 4 is an

11:30:01 18   example of multiple copies of the same oligonucleotide, you

11:30:05 19   say, being present and depicted embodiments of the claimed

11:30:11 20   invention.  And again, I was like, where's that?  So I

11:30:14 21   couldn't really tell.  So you have to really walk me

11:30:17 22   through -- where is an example of, did you say, of the same

11:30:21 23   oligonucleotide can copied?

11:30:24 24            MR. RABINOWITZ:  Here, Your Honor, the bottom

11:30:32 25   row.  The three APS -- this is the structure of APS

11:30:36  1    oligonucleotide on the right, and it's colored to indicate

11:30:39  2    the different ones that are added to each tube or well, and

11:30:43  3    you can see in this picture there are three copies being

11:30:46  4    added to each tube.

11:30:51  5              THE COURT:  How do I see that?

11:30:54  6              MR. RABINOWITZ:  Because it shows you three

11:31:00  7    different, three different UBAs with ESBs and each of them

11:31:08  8    has the same APS oligonucleotide.

11:31:11  9              THE COURT:  Is the thing that tells me that each

11:31:16 10    has the same oligonucleotide that they all have that number

11:31:20 11    one in them that's highlighted?

11:31:21 12              MR. RABINOWITZ:  Yes.  You can see in the second

11:31:23 13    row that the designation, the coloring and the numbering

11:31:26 14    refers to the identity of the APS.  If you compare the

11:31:30 15    figure on the right, which shows -- depicts the APS, that is

11:31:35 16    what is depicted in the second row.  It's being added to

11:31:39 17    each.

11:31:39 18              THE COURT:  You're saying the APS

11:31:41 19    oligonucleotide, what this picture is showing me is that,

11:31:44 20    look where it is in this thing that I'm now going to

11:31:48 21    replicate for you down in these circles below, it's the

11:31:52 22    little box on the right?

11:31:54 23              MR. RABINOWITZ:  Yes.

11:31:54 24              THE COURT:  And that by seeing that the little

11:31:56 25    box on the right in each of these wells has the exact same

11:32:00   1    number, that's telling me that the APS oligonucleotide in

11:32:06   2    that well is copied three times?

11:32:09   3              MR. RABINOWITZ:  It is provided as multiple

11:32:11   4    copies.  Multiple copies were added.  As a practical matter,

11:32:15   5    if you added one, it's not practical to do that, you'd need

11:32:18   6    thousands of copies to make it work.

11:32:20   7              THE COURT:  Okay.

11:32:21   8              MR. RABINOWITZ:  So they've added multiple

11:32:24   9    copies.  They're depicting three here in the figure.  But

11:32:29  10    certainly multiple copies of each APS oligonucleotide are

11:32:32  11    added and point is that the sequence is unique to each tube

11:32:34  12    or well, but they provide it as multiple copies.

11:32:39  13              THE COURT:  Okay.

11:32:41  14              MR. RABINOWITZ:  And then, so Fig. 4 is in two

11:32:44  15    parts and the figures are -- in the patent they're

11:32:47  16    designated as sheets 1 through N.  So this one is called

11:32:51  17    Sheet 5 in the patent.  The next one is the second part of

11:32:55  18    Fig. 4 and they've done repeated rounds of this and now you

11:32:58  19    can see that in this round it's depicting nine copies that

11:33:04  20    have been added to that particular well no. 4.

11:33:08  21              THE COURT:  So no. 4 is 1-2 or one well?

11:33:12  22              MR. RABINOWITZ:  No. 2 can be a tube or a well,

11:33:16  23    different containers, and to each container they've added in

11:33:21  24    each round an APS oligonucleotide that is unique but in

11:33:25  25    multiple copies.

11:33:26  1              THE COURT:  Forgive me for all the questions,

11:33:28  2      but the way you're describing this with these color-coded

11:33:34  3      numbers I don't think that was replicated in the briefing.

11:33:37  4              MR. RABINOWITZ:  I believe it was actually given

11:33:39  5      like this, Your Honor.

11:33:40  6              THE COURT:  Okay.  I may have missed it.

11:33:46  7              Can we go back to the claim itself?  If I'm

11:33:49  8      understanding right, like a key part of the dispute here is

11:33:52  9      the last portion of subpart 1 of the claim.  For whatever

11:33:58 10      reason it's not what you discussed a lot in your briefing.

11:34:02 11      Isn't that right?  Isn't kind of one of the things they're

11:34:05 12      fighting about is what those words mean and they think those

11:34:09 13      words "beginning with an internal sequence" help their

11:34:13 14      argument.

11:34:13 15              MR. RABINOWITZ:  Well, Your Honor, they said in

11:34:15 16      their opposition the internal sequence cannot be -- must

11:34:21 17      distinguish each APS oligonucleotide in the set from one

11:34:24 18      another.  We responded in our reply brief, even under that

11:34:28 19      interpretation of the internal sequence requirement, because

11:34:30 20      the set can be any 10 APS oligonucleotides that satisfy the

11:34:35 21      sequence requirements and because the claim says comprising,

11:34:39 22      it is -- it -- the claim permits the presence of additional

11:34:45 23      oligonucleotides such as copies.

11:34:49 24              THE COURT:  My one question for you about this

11:34:51 25      was it seems like on multiple occasions in your briefing

11:34:54 1    you're trying to make a point about the imported claims

11:34:57 2    using the word "comprising" or "comprise," but each time I

11:35:00 3    didn't understand what you're trying to argue, so help me

11:35:03 4    understand where we're talking about this, just to get the

11:35:06 5    dispute, because part of it is about word play, part of it

11:35:10 6    is like what do the words in this claim mean.  And

11:35:13 7    particularly, I think if I have it right, I think it's the

11:35:16 8    words in the "an internal sequence" component and then maybe

11:35:20 9    up at the top, you know, the "at least 10 APS

11:35:23 10   oligonucleotides" wording.  I think the parties are fighting

11:35:25 11   about, like, what do those words mean when put together, but

11:35:29 12   what do they literally mean.

11:35:31 13           MR. RABINOWITZ:  It's about the structure of how

11:35:33 14   they interact with each other.  So we would say, if you --

11:35:36 15   again, if you consider one oligonucleotide from each well

11:35:41 16   and you have at least any 10 of them, you have 10

11:35:44 17   oligonucleotides with an internal sequence that

11:35:47 18   distinguishes the APS oligonucleotides in the set of 10 from

11:35:52 19   all the others.

11:35:54 20           THE COURT:  Can you do it this way with me?  I

11:35:56 21   think like this just helps me.  You know, literally what

11:35:59 22   does the claim say?  So it says, okay, we've got two sets at

11:36:04 23   least, two sets of APS oligonucleotides.  Okay.  We have two

11:36:08 24   sets of APS oligonucleotides.  And each set has to comprise,

11:36:14 25   which would be like include, right?

11:36:17  1          MR. RABINOWITZ:  Yes.

11:36:17  2          THE COURT:  At least 10 APS oligonucleotides.

11:36:21  3  So each set's got at least 10 of these things.  And your

11:36:28  4  point is, I think, at least 10 APS oligonucleotides then

11:36:33  5  each comprise.  So what are we talking about?  We're talking

11:36:36  6  about the at least 10.

11:36:38  7          MR. RABINOWITZ:  Correct.

11:36:38  8          THE COURT:  That qualify.

11:36:40  9          MR. RABINOWITZ:  Yes, one from each of 10 wells.

11:36:42 10          THE COURT:  One from each of 10 wells.  And your

11:36:51 11  at least 10 APS oligonucleotides we talked about earlier,

11:36:55 12  what 10 are you going to be pointing to?  You're going to be

11:36:58 13  pointing to one from each of 10 wells.

11:37:01 14          MR. RABINOWITZ:  One from each of 10 wells.

11:37:03 15          THE COURT:  Okay.  And each of those, each of

11:37:06 16  those at least 10 oligonucleotides have to meet the

11:37:09 17  requirements have sub 1 --

11:37:11 18          MR. RABINOWITZ:  -- the end sequences.  And then

11:37:13 19  last requirement is, and an internal sequence, internal

11:37:19 20  sequence, so I'm thinking of the oligonucleotide which has a

11:37:22 21  lot of -- it's got a lot of letters.

11:37:26 22          MR. RABINOWITZ:  So, Your Honor, if you look at

11:37:28 23  Slide 7, it shows you the internal sequences that are unique

11:37:33 24  to each well.

11:37:35 25          THE COURT:  Got it.  And so what you say this

11:37:39  1    last part means is, there's an internal sequence that

11:37:43  2    distinguishes the APS oligonucleotides in the set from one

11:37:49  3    another.  So you're saying, look, I picked one out of each

11:37:53  4    of the 10 wells, the internal sequence of each of those 10

11:37:57  5    are going to be different.

11:37:58  6                MR. RABINOWITZ:  Correct.  That's not disputed.

11:38:01  7                THE COURT:  And as long as that's the case,

11:38:03  8    we're good.

11:38:04  9                MR. RABINOWITZ:  We have a set of at least 10

11:38:06 10    and because the claim says "comprising," you can have other

11:38:09 11    things like copies.

11:38:10 12                THE COURT:  But what they are arguing -- I don't

11:38:12 13    think I guys in your briefing -- what they're arguing that

11:38:16 14    last phrase means is blank, and here's why I think that's

11:38:20 15    wrong.  Can you do that for me?

11:38:22 16                MR. RABINOWITZ:  Well, so -- No.  They're saying

11:38:23 17    that you must have 10 -- there must -- the internal sequence

11:38:27 18    must be different throughout the set.  But they are saying

11:38:31 19    the set is all the APS oligonucleotides in the plate.  And

11:38:36 20    because you have multiple copies in one well, and because

11:38:39 21    the set must include those copies, they're not unique.

11:38:45 22                THE COURT:  So I think what is really going on

11:38:48 23    is we're having a dispute about what can be a qualifying

11:38:51 24    set?

11:38:52 25                MR. RABINOWITZ:  It could be viewed that way.

11:38:54  1            THE COURT:  Because are you saying what they're

11:38:55  2     arguing is that they see the word "set" there and it says

11:39:01  3     "internal sequence distinguishes the APS oligonucleotides in

11:39:04  4     the set from one another."  We know your set is a set of 10,

11:39:08  5     but one from each different well.

11:39:10  6            MR. RABINOWITZ:  Correct.

11:39:11  7            THE COURT:  But they're probably saying a set is

11:39:13  8     just the oligonucleotides in one well and they're not

11:39:16  9     different from each other.

11:39:18 10            MR. RABINOWITZ:  I think they're saying the set

11:39:19 11     is all the oligonucleotides in the entire plate.

11:39:22 12            THE COURT:  All and everything.

11:39:23 13            MR. RABINOWITZ:  And now because you have

11:39:25 14     copies, they're not distinct from one another on the plate.

11:39:27 15            THE COURT:  I see.  So there's this big plate.

11:39:32 16     If it constitutes a set, they're saying that if there's any

11:39:38 17     copies in there, everything in the set is not distinct from

11:39:42 18     one another?

11:39:43 19            MR. RABINOWITZ:  Correct.  That's their position

11:39:45 20     as I understand it.

11:39:47 21            THE COURT:  So it's really about a dispute about

11:39:51 22     what can -- what is or can be the qualifying set or no?

11:39:54 23            MR. RABINOWITZ:  Yes, it can be viewed that way.

11:39:57 24     We say the sets can be any 10 oligonucleotides that have

11:40:01 25     that -- that satisfy the sequence requirements.  And the

11:40:05  1    claim limits copies to be present as well.

11:40:09  2        THE COURT:  Well, no one was telling me, like,

11:40:10  3    the claim term at issue is set and here are the

11:40:11  4    constructions, so maybe the parties don't see it the way

11:40:15  5    I've described it.

11:40:16  6        MR. RABINOWITZ:  I think that's one way to view

11:40:18  7    it.  I think that would enable Your Honor to resolve this.

11:40:22  8    And the critical point from our point of view is Fig. 4

11:40:26  9    shows that you have multiple copies in each container.  In

11:40:30  10   the case of the accused product, it's a well.  And so a

11:40:35  11   construction -- and Parse admits this, their proposed

11:40:40  12   construction would exclude Fig. 4.  They call it an

11:40:45  13   embodiment that is not claimed.

11:40:46  14       THE COURT:  You say the claim recites to a

11:40:48  15   portion of the prosecution history where it appears that, or

11:40:50  16   at least you say that what became Claim 1, Claim 329 --

11:40:55  17       MR. RABINOWITZ:  It has the exactly same

11:40:57  18   language.  And when they added it to the application, they

11:41:00  19   specifically relied on Fig. 4 as providing the support.

11:41:06  20       THE COURT:  You're saying this is the patentee

11:41:08  21   pointing to Fig. 4 as support for Claim 1, i.e. suggesting

11:41:12  22   that Fig. 4 depicts an embodiment, potential embodiment.

11:41:17  23       MR. RABINOWITZ:  Yes, Your Honor.  In any case,

11:41:19  24   it is disfavored unless the claim language absolutely

11:41:23  25   requires to construe a claim to exclude embodiments.  But

11:41:26 1   where the embodiment is the very one that was relied on

11:41:29 2   during prosecution to justify the claim, that would be an

11:41:33 3   erroneous claim construction.

11:41:35 4        THE COURT:  And then lastly, just going back to

11:41:37 5   Fig. 4 again, looking at it in light of what we know the

11:41:41 6   claim language to be, do you have a slide with the claim

11:41:45 7   language on it?

11:41:47 8        MR. RABINOWITZ:  No.  That was the description,

11:41:49 9   but this is the claim language.  That was the description in

11:41:53 10   the specification of Fig. 4.

11:41:54 11        THE COURT:  Okay.  Not trying to mess up your

11:41:58 12   slide focus.  I'll turn to Fig. 4.  So can you just walk me

11:42:03 13   through how Fig. 4 tracks to the language of the claim in

11:42:07 14   the way you understand it?

11:42:08 15        MR. RABINOWITZ:  So the collection would be in

11:42:11 16   kits.  It would comprise at least two sets of APS

11:42:19 17   oligonucleotides and that would be --

11:42:22 18        THE COURT:  Where is one of the possible sets in

11:42:24 19   Fig. 4 located?

11:42:26 20        MR. RABINOWITZ:  So what Fig. 4 indicates is

11:42:29 21   that you've gone through multiple rounds of adding the APS

11:42:34 22   oligonucleotides.  So they've been successfully added to the

11:42:37 23   tubes.  So the first set are the ones that were added in --

11:42:43 24   on Slide 11 in the first round.  And the second set were the

11:42:48 25   ones that were added in -- on Slide 12 at Sheet 6 in the

11:42:53  1    subsequent rounds.  So you need multiple sets to do repeated

11:42:58  2    rounds.

11:42:58  3              THE COURT:  But so like, for example, maybe just

11:43:02  4    focusing on the first page of Fig. 4, so we're looking

11:43:07  5    for -- we're going to be looking for a qualifying set of APS

11:43:12  6    oligonucleotides.  Where is that depicted in the first page

11:43:17  7    of Fig. 4?

11:43:18  8              MR. RABINOWITZ:  So if you look at the APS

11:43:20  9    oligonucleotides that were added, it shows 20 tubes.  So you

11:43:24 10    need at least 20 APS oligonucleotides, and they're color

11:43:29 11    coded and numbered to indicate that the ones added to no. 1

11:43:33 12    are distinct from that added to Tube 2, which is distinct

11:43:38 13    from Tube 3, et cetera.  That's why they're numbered and

11:43:42 14    colored differently.

11:43:43 15              THE COURT:  What I'm really asking, maybe at a

11:43:45 16    more basic level, are you saying Tube 1 is a set?

11:43:49 17              MR. RABINOWITZ:  Saying that if you select one

11:43:51 18    from Tube 1, one from Tube 2, one from Tube 3 up to Tube 10,

11:43:56 19    you have a set of at least 10 oligonucleotides and they are

11:44:01 20    different because they have different internal sequences.

11:44:03 21              THE COURT:  Okay.  So a qualifying set is one

11:44:05 22    oligonucleotide from say each of the tubes?

11:44:07 23              MR. RABINOWITZ:  Correct.

11:44:07 24              THE COURT:  But what Fig. 4 the first page is

11:44:11 25    depicting is that in each of those tubes they're going to be

11:44:14  1    copies, but that's okay.

11:44:16  2                MR. RABINOWITZ:  It shows the presence of

11:44:19  3    copies, and that's okay.

11:44:22  4                THE COURT:  And then where is the -- so a set,

11:44:26  5    qualifying set would be one from each of at least 10

11:44:31  6    tubes --

11:44:31  7                MR. RABINOWITZ:  Correct.

11:44:33  8                THE COURT:  -- that are depicted in Fig. 4.

11:44:35  9    Where would be the other set?

11:44:37  10                MR. RABINOWITZ:  The other set -- so Sheet 5

11:44:39  11    show the set that was used to add in that round.  The next

11:44:42  12    one, on Slide 12, there are repeated rounds.  You have to

11:44:47  13    have another set or other sets to add, one set for each

11:44:50  14    round.

11:44:52  15                THE COURT:  Okay.  So where there's a reference

11:44:55  16    to repeated rounds, that's another one oligonucleotide from

11:45:02  17    each of those tubes?

11:45:04  18                MR. RABINOWITZ:  Right.

11:45:04  19                THE COURT:  To get to 10, that's how you have a

11:45:08  20    second set?

11:45:10  21                MR. RABINOWITZ:  That's why you have at least 10

11:45:10  22    sets, if you're going to do multiple rounds.

11:45:11  23                THE COURT:  But we know that if one set is

11:45:13  24    depicted on the first sheet and one set is depicted on the

11:45:16  25    second sheet, but if the position is well, in that -- in

11:45:21 1    that set, if any oligonucleotide is a copy, the claim says

11:45:26 2    no, that can't be right, you say because there's plenty of

11:45:29 3    copies?

11:45:30 4                    MR. RABINOWITZ:  Correct.

11:45:30 5                    THE COURT:  Copies within each well?

11:45:32 6                    MR. RABINOWITZ:  Correct.

11:45:33 7                    THE COURT:  Okay.  All right.

11:45:36 8                    MR. RABINOWITZ:  And that is the dispute with

11:45:38 9    respect to Defense A.

11:45:40 10                    THE COURT:  Okay.

11:45:45 11                    MR. RABINOWITZ:  Defense B, the first part is

11:45:47 12    whether the preamble of Claim 1 is limiting.  Here's the

11:45:53 13    preamble in the context of the claim.  And Parse's position

11:45:59 14    has flip-flopped in this litigation.

11:46:01 15                    THE COURT:  Just as a heads up, I will ask them

11:46:04 16    about this.

11:46:06 17                    MR. RABINOWITZ:  In the final invalidity

11:46:07 18    contentions represented by their current counsel, they

11:46:10 19    affirmative contend that the preamble of the claim is not

11:46:14 20    limiting.

11:46:14 21                    THE COURT:  So your point is, look, if in your

11:46:19 22    contentions you take a position with regard to both

11:46:23 23    infringement and validity, and then later you try to alter

11:46:26 24    that position, you can't do that without amending the

11:46:30 25    contention and you can't do it late.  And you're essentially

11:46:33  1  saying that they are doing that unduly late?

11:46:37  2          MR. RABINOWITZ:  I think that's true.  And I

11:46:38  3  think it should also make the Court skeptical, because even

11:46:42  4  if they hadn't taken this position, they would still be

11:46:45  5  wrong.

          6          THE COURT:  But are you arguing affirmatively

11:46:46  7  waived?

11:46:46  8          MR. RABINOWITZ:  We're arguing the Court should

11:46:49  9  hold that the preamble is not limiting, first because they

11:46:52 10  are not entitled to change position.

11:46:54 11          THE COURT:  That's what I'm asking.  So you're

11:46:57 12  affirming -- maybe waiver is the wrong -- you are arguing

11:47:00 13  that they are precluded from taking a contrary position than

11:47:04 14  they did in their prior contentions because to do so now

11:47:08 15  would be late and unduly prejudicial.

11:47:12 16          MR. RABINOWITZ:  I think that's correct, Your

11:47:13 17  Honor.  And separately because that is simply wrong as a

11:47:17 18  matter of law even if they hadn't taken that position.

11:47:19 19          THE COURT:  And even on the second piece of

11:47:21 20  that, I think we know that they're going for the *Catalina*

11:47:27 21  line of -- but if the thing is super important to the claim

11:47:31 22  or patent, and saying, look, I mean target molecules are

11:47:37 23  super important.

11:47:39 24          MR. RABINOWITZ:  I don't think that's a

11:47:40 25  plausible construction in *Catalina*, if I can show you.

11:47:43    1          THE COURT:  Sure.

11:47:44    2          MR. RABINOWITZ:  So *Catalina* said the general

11:47:46    3    principle if the preamble -- it limits the invention if it

11:47:50    4    recites essential structure or steps that is necessary to

11:47:53    5    give life, meaning, and vitality.  They disavowed that

11:47:55    6    already in their contentions.  The converse case, the

11:47:59    7    "preamble is not limiting 'where the patentee defines a

11:48:03    8    structurally complete invention and uses the preamble only

11:48:07    9    to state a purpose or intended use.'"  That's what we have

11:48:10   10    here.

11:48:10   11          THE COURT:  Right.  But either of those we know

11:48:10   12    are what they're hanging their hat on for *Catalina*.  So why

11:48:12   13    don't we go to the piece of *Catalina* we do know.

11:48:15   14          MR. RABINOWITZ:  And *Catalina* explained that

11:48:18   15    that's the reason for -- the policy reason is that

11:48:22   16    composition claims are defined by the construction, not the

11:48:26   17    use.  There's an exception if the applicant clearly

11:48:27   18    unmistakably relies on the statement of use or benefit to

11:48:30   19    distinguish prior art.  That did not happen in this case.

11:48:35   20    No one contends it.  And in *Artic Cat* the Federal Circuit

11:48:41   21    built on *Catalina* and said the principle announcing *Catalina*

11:48:45   22    is in fact a rule that has a statutory basis.  Statutory

11:48:49   23    distinction between composition claims and method claims.

11:48:52   24    And in addition, *Arctic Cat* found the preamble was not

11:48:57   25    limiting because it didn't impose any structural requirement

11:49:00  1    on the claims apart from what was taken in the body of the

11:49:05  2    claims.

11:49:05  3              Now, the cases on which Parse is relying are

11:49:09  4    instances where the preamble did impose additional

11:49:13  5    structural requirements.  The first one is *Corning Glass*.

11:49:17  6    And there the preamble restricted the invention to fibers

11:49:22  7    that work as wave guides.  Therefore, the Court concluded

11:49:25  8    the preamble does not merely state a purpose or intended

11:49:31  9    use.  And the other case is *General Electric v. Nintendo*.

11:49:35 10    There again the preamble restricted the specific structure

11:49:43 11    and therefore the Court concluded the claimed preamble did

11:49:47 12    not merely state a purpose or intended use.

11:49:50 13              Here, in our claims --

11:49:52 14              THE COURT:  Just to cut to it.  The question I'm

11:49:55 15    asking, I don't know if it's coming through.  *Catalina* says

11:49:59 16    a lot of things about circumstances in which it could be the

11:50:03 17    case that a preamble is limiting.  It gives a number of

11:50:09 18    different examples.  One of the examples it gives is the

11:50:11 19    preamble recites the central structure or steps.  A second,

11:50:16 20    is it necessary to give life, meaning, and vitality to the

11:50:20 21    claim.  But we know they're saying it here in their

11:50:21 22    briefing, right?  They're pointing to a third piece of

11:50:25 23    language in *Catalina*, but one that they say actually is the

11:50:28 24    one that's applicable here even if the others may not be.

11:50:31 25    We know the piece of language they're pointing to is part of

11:50:35  1    *Catalina* that says, well, if you have preamble language that

11:50:38  2    recites additional structure or steps underscored as

11:50:41  3    important by the specification, the preamble may operate as

11:50:44  4    a claim limitation.  That's what at issue here, right?

11:50:46  5    That's the one path they're going for.  So my question is,

11:50:49  6    what does *Catalina* mean by that?  I know you cited *Arctic*

11:50:54  7    *Cat* as an example where it's possible the Federal Circuit

11:50:56  8    may say, well, even if something is super important, the

11:50:59  9    preamble is not limiting although I think *Arctic Cat* turns

11:51:03 10    on that.  What does the Federal Circuit mean by that piece

11:51:06 11    of language and why doesn't it apply here to target

11:51:11 12    molecules?

11:51:11 13              MR. RABINOWITZ:  Because target molecules are

11:51:14 14    not a component of the kit.  The kit does not -- it does not

11:51:19 15    contain target molecules.  Target molecules are in cells or

11:51:26 16    cell organelles.  The preamble makes that clear.

11:51:26 17              THE COURT:  It's just another way of saying that

11:51:29 18    the preamble doesn't recite a central structure of the

11:51:33 19    claim?

11:51:34 20              MR. RABINOWITZ:  The preamble does not recite

11:51:34 21    anything which Parse contends is structure in the claim.  It

11:51:37 22    only recites the intended use and they admit that in their

11:51:41 23    briefing.

11:51:42 24              THE COURT:  No.  I think, put differently, we're

11:51:43 25    talking about Claim 1 of the '752.  What's Claim 1?  It's a

11:51:46  1    claim to a kit.  A claim to a kit what?  A kit that has

11:51:50  2    certain components that are required.

          3                    MR. RABINOWITZ:  Correct.

11:51:52  4                    THE COURT:  A, B, C.  I think your point is,

11:51:54  5    look, the structure of Claim 1 is a kit that is required to

11:51:58  6    have A, B, C.  Can you have A, B, C without worrying about

11:52:02  7    target molecules?  Absolutely.  That's your best argument.

11:52:06  8    But we know that they have at least a counter argument to

11:52:09  9    that because they point to this language about how, well,

11:52:11 10    maybe if the structure -- if the specification recites

11:52:14 11    additional structure that is underscored as important.  They

11:52:19 12    say, well, target molecules, that's structure, and it's sure

11:52:23 13    important to the patent, it's in the title.  Tell me about

11:52:25 14    what the case law means when it says that and why it's

11:52:28 15    applicable here, is what I'm asking.

11:52:30 16                    MR. RABINOWITZ:  Because those are the two cases

11:52:33 17    where I just discussed where it identified structural

11:52:36 18    features of the claimed composition.  Here the target

11:52:40 19    molecules are not part of the structure of the case.

11:52:42 20                    THE COURT:  So, Mr. Rabinowitz, is what you're

11:52:43 21    saying, Judge, look, yes, does *Catalina* say the preamble can

11:52:47 22    be limiting when the specification recites additional

11:52:50 23    structure or steps that it underscores as important?  Yes.

11:52:54 24    But in all the cases you're going to find in the Federal

11:52:57 25    Circuit where it says that, and actually finds the preamble

11:52:59 1    limiting, the thing, the thing that was supposed to be so

11:53:02 2    important, it's actually going to be a piece of necessary

11:53:05 3    structure in the claims and we don't have that here.

11:53:07 4         MR. RABINOWITZ:  Correct.  It must constrain the

11:53:09 5    structure of the claims somehow.

11:53:11 6         THE COURT:  And an example, a good case example

11:53:13 7    and maybe the best, you would say, Judge, if you're going

11:53:15 8    back and looking at the cases, is my Slide on blank, which

11:53:17 9    case would you say?

11:53:19 10        MR. RABINOWITZ:  I think here's the argument

11:53:20 11   they're making.  So they first say, the purpose of the case

11:53:24 12   is to detect target molecules.  And they say it's really

11:53:28 13   important because the specification, the patent refers to

11:53:32 14   target molecules 200 times and it's stated in the title of

11:53:36 15   the patent.

11:53:36 16        THE COURT:  And that kind of hurts them in your

11:53:38 17   view because we have this language in *Catalina* that, you

11:53:38 18   know, the intended purpose or use, maybe, of a -- of the

11:53:42 19   claims recited in the preamble is not ultimately going to

11:53:46 20   get you there.

11:53:46 21        MR. RABINOWITZ:  Correct.  And, in fact, in

11:53:52 22   *Howmedica,* that's the exact argument that was made.

11:53:54 23   "'Medical implant' permeates the specification."  How many

11:53:54 24   times it appears there.  And the Court said it "merely

11:53:58 25   describes a use or purpose."  And "The specification's

11:54:01 1    regular use of the preamble language...is of no additional

11:54:04 2    import."

11:54:05 3             THE COURT:  Okay.  So Howmedica might be a good

11:54:09 4    case.  I don't know if it's a case that uses this, you know,

11:54:12 5    specification deems important language, but you're saying a

11:54:16 6    good case at least about the purpose issue?

11:54:18 7             MR. RABINOWITZ:  Yeah.  And the whole marker

11:54:21 8    when a preamble is not limiting is when you have a

11:54:24 9    structurally defined claim and it only defines the purpose

11:54:27 10   or the use and doesn't impose structural requirements on

11:54:31 11   the --

11:54:32 12            THE COURT:  Maybe what you're saying on the flip

11:54:34 13   side is, look, Judge, I don't care how important a word is

11:54:37 14   in a patent, I don't care if it's in the title, I don't care

11:54:40 15   if it's used 200 times, it's pretty clear that that word is

11:54:44 16   being referenced in a preamble as the purpose to which an

11:54:48 17   otherwise structurally complete invention would be put, you

11:54:51 18   will never have a limiting preamble.

11:54:53 19            MR. RABINOWITZ:  I think with one exception is

11:54:55 20   if you rely on it during prosecution to distinguish the art.

11:54:58 21            THE COURT:  Okay.  And you're saying they're not

11:55:00 22   going to show you any case that's different.

11:55:03 23            MR. RABINOWITZ:  Correct.

11:55:03 24            THE COURT:  All right.  Let's talk about the

11:55:06 25   target molecules.

1           MR. RABINOWITZ:  Target molecules, Your Honor --

2           THE COURT:  And I'm going to give each side a

11:55:07 3   couple extra minutes.  You're at about five minutes left.

11:55:11 4           MR. RABINOWITZ:  So it's part of the preamble.

11:55:13 5   Obviously it's not relevant to this motion if the Court

11:55:19 6   finds the preamble not limiting.  It is relevant to other

11:55:20 7   patents, though.

11:55:20 8           THE COURT:  So is what you're saying, first find

11:55:22 9   the preamble is not limiting.  If you do for the '752, you

11:55:26 10  don't have to worry about target molecules, but I still want

11:55:30 11  you to decide target molecule issue because you're going to

11:55:33 12  need it for the other patents.

11:55:33 13          MR. RABINOWITZ:  The '442 Patent, for example.

11:55:35 14  It's at issue there.

11:55:36 15          THE COURT:  Got ya.  Like don't just stop there,

11:55:40 16  even if you find in our favor is what you're saying?

11:55:42 17          MR. RABINOWITZ:  Correct.  I think the Court

11:55:43 18  will need to construe this.  As you know, Your Honor, we

11:55:48 19  tried once before with this.

11:55:49 20          THE COURT:  And I wonder if, are we not having

11:55:52 21  like the same problem again?

11:55:54 22          MR. RABINOWITZ:  Let me show you what happened.

11:55:56 23          THE COURT:  Okay.

11:55:56 24          MR. RABINOWITZ:  So again, they have changed

11:55:59 25  their position three times.  So these were the proposals

11:56:03 1   that we made before the Markman hearing.  We said,

11:56:08 2   "Molecules of interest that are being detected or

11:56:10 3   quantified."  They said, "Specific molecules with a known

11:56:14 4   individual identity whose presence or quantity it varies

11:56:19 5   between individual cells."  At the Markman hearing, Your

11:56:23 6   Honor will remember, they disavowed "presence or quantity

11:56:26 7   varies between individual cells" and altered their Slide

11:56:28 8   during the course of the hearing.  They disavowed that

11:56:32 9   requirement.

11:56:32 10          Number two.  Then in the -- when the expert

11:56:36 11  reports were exchanged, their expert reasserted, number one,

11:56:42 12  including the requirement for varying between cells in his

11:56:46 13  opening report and his rebuttal report.  And we were

11:56:50 14  incredulous about this.  He was asked at his deposition, he

11:56:55 15  swore under oath that that was what the term meant in his

11:56:58 16  understanding.

11:56:59 17          So here's the present position that the parties

11:57:02 18  are urging on the Court.  ScaleBio's position hasn't

11:57:06 19  changed.  We say "target molecules" should be construed to

11:57:09 20  mean "molecules of interest that are being detected or

11:57:13 21  quantified."  The only addition we've made, in obedience to

11:57:17 22  what Your Honor said in the partial claim construction

11:57:20 23  order, is we added a second sentence to negate the

11:57:23 24  additional requirements that they're seeking to impose.

11:57:27 25  Either nothing more is required or else just the direct

11:57:32 1    negative of what they said.  In our opening brief, because

11:57:34 2    we didn't know what they are saying now, the sentence

11:57:38 3    negated what their expert said in his reports.

11:57:41 4              THE COURT:  Right.

11:57:42 5              MR. RABINOWITZ:  Now that its been clarified in

11:57:45 6    the briefing, the alternative could be, "need not have a

11:57:50 7    known individual identity," et cetera.

11:57:52 8              THE COURT:  So put differently, now that we know

11:57:52 9    how it all shook out, one or the other of those things is

11:57:57 10   your proposed additional construction for this term?

11:57:59 11             MR. RABINOWITZ:  If the Court wants to clarify

11:58:01 12   this beyond *Campbell*, yes.

11:58:03 13             THE COURT:  One way or the other you have to

11:58:05 14   tell the jury something.

11:58:07 15             MR. RABINOWITZ:  "Nothing more is required"

11:58:10 16   would probably be the simplest.

11:58:13 17             THE COURT:  Okay.  On the substance?

11:58:14 18             MR. RABINOWITZ:  On the substance.  The

11:58:17 19   construction proposed by ScaleBio gives affect to the

11:58:21 20   express definition in the patent specification.  And

11:58:28 21   herein -- "words of classic expressed definition are used

11:58:31 22   herein."  That's magic language in a patent to show that the

11:58:35 23   inventor is defining the term.  "Molecules of interest,

11:58:39 24   parts of it or the whole molecule, being detected and/or

11:58:43 25   quantified."  That's all it requires.  And the Court in its

11:58:46  1    oral order recognizes that "the patent specification defines

11:58:50  2    the term in just this way."  So all that would be required

11:58:54  3    is to remove "at least" from the partial construction that

11:58:58  4    Your Honor gave and to clarify "nothing more is required."

11:59:01  5              THE COURT:  Okay.  And maybe -- I know just in

11:59:08  6    terms of -- and you're just about at your time here, so

11:59:12  7    we'll end and I'll just ask this question and get your

11:59:16  8    answer and we'll hear from the other side.  And I'm sorry,

11:59:21  9    was that page 1 to 2 of your reply brief?  I think it was,

11:59:26 10    where your kind of negative proposed constructions were

11:59:30 11    included?

11:59:32 12              MR. RABINOWITZ:  Yes.  Yes, Your Honor.  On this

11:59:35 13    slide.

11:59:35 14              THE COURT:  I think it's page 2, maybe, of your

11:59:38 15    reply.

11:59:40 16              MR. RABINOWITZ:  Page 1 to 2 of our reply brief.

11:59:43 17              THE COURT:  And the part at the very end, which

11:59:45 18    is the stuff you'd like me to add, is I think on the top of

11:59:49 19    page 2?

11:59:49 20              MR. RABINOWITZ:  Correct.

11:59:50 21              THE COURT:  Which is, "Target molecules need not

11:59:52 22    have a known individual identity sufficient to distinguish

11:59:56 23    the molecules being detected or quantified."

12:00:01 24              MR. RABINOWITZ:  I think it might be simpler

12:00:03 25    just to say "nothing more is required" just for the jury.

12:00:06 1            THE COURT:  In terms of this, though, if we're

12:00:09 2    trying to break down what is the real substance of our

12:00:11 3    dispute, we have a claim construction, we have a dispute

12:00:14 4    with regard to this term, so what is it?  You know, I think

12:00:17 5    probably the words in your first proposal "need not have a

12:00:21 6    known individual identity," it's getting to it.  Because I

12:00:26 7    think we know they think the target molecules have to have a

12:00:32 8    known individual identity, whatever that means.  Isn't that

12:00:36 9    what's can fought about here?

12:00:38 10           MR. RABINOWITZ:  Yes.  They're trying to impose

12:00:40 11   that requirement.  We say that's wrong firstly because

12:00:42 12   there's an express definition, secondly because their

12:00:45 13   reasoning is flawed.  Their reasoning goes in two steps.

12:00:50 14   The first step, they say, "each UBA is specific for a target

12:00:55 15   molecule."  Then they say, "in order to choose a suitable

12:00:59 16   UBA for that target molecule, the researcher must know the

12:01:04 17   individual identity on that target molecule in advance."

12:01:07 18   For example, their answering brief on page 6 says exactly

12:01:10 19   that.  Because the words "no individual identity" do not

12:01:15 20   appear anywhere in the claims or the specification.

12:01:17 21           THE COURT:  And I think your position and your

12:01:20 22   expert's position is that can you have UBAs that are

12:01:28 23   searching for and that connect with target molecules whose

12:01:33 24   identity is not known in advance?  You say yes.  And in

12:01:36 25   terms of the patent, I think probably you point to this

12:01:41 1    STAT3 disclosure.

12:01:42 2            MR. RABINOWITZ:  Well, we do, but actually their

12:01:46 3    construction would exclude "a novel transcript."  A

12:01:53 4    transcript that is novel is something that was arisen from

12:01:56 5    some chromosome, a rearrangement or some random event.  It's

12:02:01 6    existence is not know and cannot be known before it's

12:02:01 7    detected.  So because the patent includes embodiments where

12:02:05 8    you're detecting a novel transcript, a target cannot be

12:02:09 9    required to be known in advance.

12:02:11 10           THE COURT:  I know there's two parts of the

12:02:13 11   spec.  That's one.  There's another that where you feel the

12:02:17 12   language is essentially saying you don't have to know the

12:02:23 13   individual identity of the target molecule in advance.  "A

12:02:26 14   novel transcript," I think you're saying is essentially

12:02:29 15   synonymous with "target molecules."  An individualized

12:02:33 16   entity that's not known in advance, it's novel, that's why

12:02:35 17   it's novel.

12:02:36 18           MR. RABINOWITZ:  Right.  That's an example.  But

12:02:38 19   as a more practical example, let me show you this.  This is

12:02:42 20   an example of a UBA, which is a poly-T oligonucleotide.  It

12:02:50 21   has a unique specificity.  It will bind only to poly-A, but

12:02:56 22   poly-A can be present in a class of target molecules such as

12:03:02 23   poly-A tailed mRNA.  That's, in fact, what the kits at issue

12:03:07 24   are used for.

12:03:08 25           THE COURT:  We'll stop here just try to keep us

12:03:11  1    on time.  We'll hear from the other side.  Just in your

12:03:12  2    rebuttal -- I'm going to give you five minutes for rebuttal.

12:03:14  3    I'll also give the defense and extra five minutes of time.

12:03:18  4    What I'd like to get a better sense of, we got a couple real

12:03:23  5    world examples in the briefing in which you're saying

12:03:25  6    essentially, hey, look, here are examples out there in the

12:03:29  7    world of UBAs searching for target molecules whose known

12:03:34  8    individual identity is not known in advance.  STAT3 is one,

12:03:40  9    TSMA is another, ERK is another.  I'd just like you to focus

12:03:43 10    on one and be like, here's what the evidence shows about

12:03:45 11    that, let me just walk you through how you know that STAT3,

12:03:49 12    for example, it actually meets our construction.  I'm not

12:03:51 13    going to ask you to do it now, but we'll do it on rebuttal.

12:03:55 14             MR. RABINOWITZ:  All right.

12:04:00 15             THE COURT:  All right.  Thank you, Mr.

12:04:01 16    Rabinowitz.  And I guess the last thing to think about,

12:04:03 17    again as we're talking about rebuttal, is I really wonder if

12:04:05 18    we're -- what does "known individual identity" mean?  Does

12:04:09 19    it mean the entire identity is known or the entire identity

12:04:12 20    is unknown?  Because this was the problem we were having at

12:04:16 21    the first claim construction.  I hope we're not having it

12:04:19 22    again.  Or would everybody concede that, yeah, you can have

12:04:22 23    a known individual identity, even though a part of it or

12:04:26 24    does it have to be all of it?  Some of it?  Just wonder if

12:04:30 25    that's correct.

12:04:31  1        MR. RABINOWITZ:  Your Honor, I'll leave you with

12:04:33  2   this, because I think it will help frame what is about to

12:04:37  3   come.  When you do transcript analysis, that's what the kits

12:04:40  4   are for, you're trying to see which genes are active in each

12:04:44  5   cell.  And the way you do that is by looking at which mRNA

12:04:49  6   is present in the cell.  When the genes turn on it makes you

12:04:55  7   use a poly-T UBA, which will interact with any mRNA that has

12:05:04  8   poly-A on it, which is almost all of them.  And the question

12:05:07  9   you are asking is, which ones are present in the cell?  So

12:05:11 10   you know what the class is that you're looking for, but you

12:05:14 11   do not know the individual identities.

12:05:16 12        THE COURT:  Tell me if what you're saying in

12:05:19 13   layman's terms is, Judge, look, I'm not telling you that you

12:05:22 14   wouldn't know any aspect of the target molecule in advance.

12:05:25 15   Indeed, this science is premised on the idea you would know

12:05:29 16   some portion of it, but we think what they mean by "no

12:05:33 17   individual identity" is know the entire identity of the

12:05:37 18   target molecule.

12:05:37 19        MR. RABINOWITZ:  Well, to know -- to know which

12:05:41 20   mRNAs are they, you need to know their names, their

12:05:47 21   identities.  They are saying you need to know which

12:05:50 22   particular ones you're looking for.

12:05:52 23        THE COURT:  I just wonder if the rub is

12:05:54 24   somewhere in there and I wonder if both sides were really

12:05:57 25   getting to it in the briefing.  I think it's the same issue

12:06:00  1    that came up before, but we'll see.  Maybe not.

      2          Okay.  Mr. Rabinowitz, I'm going to stop you

12:06:03  3    there so we can keep moving, but thank you for your

      4    presentation.

12:06:04  5          Let me hear from counsel for defendants' side.

12:06:09  6    Mr. Pickard, do you have slides?

      7          MR. PICKARD:  Yes, we do.  I just want to get

12:06:48  8    the screen --

12:06:48  9          THE COURT:  So we're going to give defendant

12:06:51 10    45 minutes of time.  And like with plaintiff, we'll save

12:06:53 11    five minutes for rebuttal for defendants.

12:06:55 12          MR. PICKARD:  Good afternoon, Your Honor.  Byron

12:06:58 13    Pickard on behalf of Parse and University of Washington.

12:07:01 14          I'd like to jump right in on our first issue, if

12:07:06 15    you advance the Slide 3, this question of what is needed in

12:07:14 16    terms of this internal sequence to distinguish among the

12:07:18 17    oligonucleotides in the set.  And I think the proper

12:07:22 18    starting place is the claim language.

12:07:24 19          THE COURT:  And what term do you think is being

12:07:27 20    construed here?  What needs to be construed?

12:07:30 21          MR. PICKARD:  Well, I think the most important

12:07:32 22    term is "set," but I don't think Your Honor needs to

12:07:35 23    construe it and I'll explain that in a moment.

12:07:37 24          So when we look at the claim, we have at least

12:07:40 25    two sets, okay.  And the sets have to have the 10 oligos.

12:07:44  1    But when we get down to the final requirement -- some of the

12:07:48  2    claim element has been ellipsized for simplicity.  What's

12:07:52  3    important is whatever that set is, the oligonucleotides in

12:07:55  4    that set must be different from one another.  And the reason

12:07:59  5    I lean on that is the because the theory that Scale has

12:08:03  6    advanced is not the theory that the set is let's take 10

12:08:08  7    wells and let's select one molecule from each.  That's not

12:08:12  8    what their witness said and I'm going to show you that.

12:08:14  9    They have defined the set under a different theory, and that

12:08:18 10    is that the plates or the wells in their entirety.

12:08:22 11             THE COURT:  But I think, put differently, what

12:08:23 12    you just said is, because I think this was the case, it's

12:08:26 13    pretty key for you the language that's in the last part of

12:08:29 14    this subsection one of the claim, the "an internal sequence"

12:08:33 15    language all the way to the end, that does a lot of work for

12:08:35 16    you in terms of your proposal, right?

12:08:37 17             MR. PICKARD:  Yes.  We think that language "each

12:08:39 18    set" and "within the set," baseline has to be, well, what is

12:08:42 19    the set.  And Your Honor asked the question of my colleague

12:08:46 20    while he was up here, and I think he said that the set was

12:08:50 21    these 10 wells, all of it.  And they agree that those 10

12:08:55 22    wells have many copies.  Okay.  Now today they want to say,

12:08:58 23    well, let's go through an abstract intellectual exercise and

12:09:02 24    let's imagine we pull one oligonucleotide from each of those

12:09:05 25    10 wells.  That's not what their witness has done.  That's

12:09:08  1    not been their theory.  And had that been their theory we

12:09:12  2    probably would be having a fight about what a set is.  They

12:09:15  3    didn't advance that.  The way they treat set is fine by us.

12:09:18  4           THE COURT:  To the extent I end up asking some

12:09:21  5    questions about how does this claim construction dispute

12:09:25  6    relate to the actual infringement dispute, obviously I'm

12:09:28  7    going to construe those claims in the way I'm supposed to,

12:09:31  8    which is by looking at the intrinsic and extrinsic evidence

12:09:32  9    about the word's meaning.  If I'm asking questions about the

12:09:34 10    infringement dispute or about what is the allegation, it's

12:09:36 11    only so I can understand the plaintiffs' claim construction

12:09:40 12    at issue.

12:09:41 13           MR. PICKARD:  For this particular issue, the

12:09:44 14    tangible context of what's going on with the accused

12:09:47 15    products is actually very important.  So that's claim

12:09:50 16    language.

12:09:50 17           THE COURT:  But before you leave it, I just want

12:09:52 18    to make sure -- walk me through, see, Judge, here's what's

12:09:56 19    happening.  What they want to say is, they want to call --

12:10:00 20    they want to say that a set can be blank.  And so see when

12:10:05 21    they do that, then you can have at least 10 APS

12:10:10 22    oligonucleotides that do blank, but we think it can't --

12:10:13 23    that can't be right because it's got to be a set is blank

12:10:16 24    and that would track -- do you know what I mean?  Can you

12:10:20 25    walk through the language and how it would look now that

12:10:23  1    we're looking at the claim itself?

12:10:25  2            MR. PICKARD:  Yeah.  So I might toggle between

12:10:27  3    the accused product and the claim language.  So if we start

12:10:30  4    with the romanette (i), "at least two sets of assayable

12:10:41  5    polymer subunit oligonucleotides..."  What is a set?

12:10:42  6    Advance to Slide 4.

12:10:43  7            THE COURT:  I mean, the claim says a set has to

12:10:47  8    just include at least 10 APS oligonucleotides, just get 10

12:10:50  9    of them together.

12:10:51 10            MR. PICKARD:  That's exactly right.

12:10:52 11            THE COURT:  As long as they meet the other claim

12:10:55 12    requirements.

12:10:55 13            MR. PICKARD:  So we can see an example of their

12:10:58 14    theory.  We've got several plates in our kits, each plate

12:11:01 15    has those wells and they have the well-specific oligos.

12:11:05 16            THE COURT:  The rectangle is the plates, the

12:11:08 17    circles are the wells?

12:11:08 18            MR. PICKARD:  Yes.  If you can imagine, it's a

12:11:09 19    physical plate with little circular wells that you can put

12:11:14 20    fluid in and your oligonucleotides in there.  Within each

12:11:17 21    well there are many, many copies of one kind of oligo, but

12:11:21 22    each well is different from each other.

12:11:23 23            THE COURT:  Each well, lots of oligos, at least

12:11:27 24    copies of lots of oligos, but the oligos is one well may be

12:11:31 25    different from the oligos in a different well.

12:11:35 1          MR. PICKARD:  Yes.  We don't dispute that well 1

12:11:37 2   is distinct and so on.  Within well 1 there is no

12:11:44 3   distinction among the oligos.  They're all the same.  Your

12:11:49 4   Honor, I couldn't tell from your expression --

12:11:49 5          THE COURT:  Oh, I'm sorry.  Maybe I'm -- sorry.

12:11:52 6   Say the last part again.

12:11:53 7          MR. PICKARD:  So my point is if we look at the

12:11:56 8   well and say well 1, it has members that have distinct

12:12:00 9   sequences from all of the other wells, wells 2 through 96.

12:12:04 10          THE COURT:  Like well 1 --

11          MR. PICKARD:  Well 1.

12:12:06 12          THE COURT:  Got a big circle, it's a well,

12:12:08 13   physical thing, it's a well, it's got a lot of

12:12:11 14   oligonucleotides in it.

12:12:12 15          MR. PICKARD:  It does.  And all of those oligos

12:12:15 16   in well 1 and well 2, all of the contents are identical

12:12:19 17   copies of of the same oligo.

12:12:21 18          THE COURT:  Is that the case for all of the

12:12:22 19   wells in the accused product?  Like each well has got -- I'm

12:12:26 20   looking at one well, there's a bunch of oligonucleotides in

12:12:30 21   it, they are all copies of each other?

12:12:32 22          MR. PICKARD:  That's right.

12:12:32 23          THE COURT:  But each well, go over to well 2,

12:12:35 24   it's got a ton of oligonucleotides.  If you picked one of

12:12:39 25   those oligonucleotides out of well 2 and picked one of them

12:12:42  1    out of well 1, they are different from each other.

12:12:45  2                MR. PICKARD:  Yes, they are.

12:12:46  3                THE COURT:  And they might, at least the

12:12:47  4    plaintiff says, they match the other requirements of the

12:12:50  5    claims.  But so I got -- okay.  Got it so far.

12:12:55  6                MR. PICKARD:  So that's the starting point.  But

12:12:57  7    I think if you go back to the claim language, the starting

12:13:00  8    point for any analysis on this is the question, what is the

12:13:03  9    set?

12:13:03 10                THE COURT:  It's about set, right?

12:13:05 11                MR. PICKARD:  So I want to show you what they

12:13:08 12    have said.  They are the master of their infringement

12:13:11 13    theory.  And this is what their witness has said.  So go to

12:13:14 14    Slide 5.  They rely on Dr. Sims.  And Dr. Sims, he's not

12:13:18 15    actually very precise about what he says in the sentence,

12:13:21 16    but this is his opening expert report on infringement.  This

12:13:25 17    is before they had perhaps understood fully what our

12:13:29 18    position was, but he points to the two plates as providing

12:13:32 19    the sets.  It's not highlighted, but if you look at the

12:13:36 20    sentence before the highlighting, talks about the "Barcode

12:13:41 21    Oligos."  Those are the APSs.  That's what he's calling

12:13:46 22    them.  Says there's APSs, "'Barcode Oligos' in the wells."

12:13:50 23    So what Dr. Sims is doing in his opening report is he's

12:13:54 24    defining the set as Well 1, Well 2, through Well 10.  That's

12:13:59 25    how he gets to at least 10 different kinds of APSs.

12:14:03 1          In rebuttal our expert says there's a problem,

12:14:06 2   go back to the claims.  Having defined the wells as the

12:14:11 3   sets, you now have a problem because know the oligos in the

12:14:15 4   set are not distinct from one another from all others in the

12:14:18 5   set.

12:14:23 6          THE COURT:  If each well is a set.

7          MR. PICKARD:  Yes.

12:14:25 8          THE COURT:  We've already established that that

12:14:27 9   set is going to have lots of copies of the same oligo.

12:14:32 10          MR. PICKARD:  Yes.

12:14:33 11          THE COURT:  And so that would be a problem.

12:14:35 12          MR. PICKARD:  It's just inconsistent with the

12:14:38 13   plain language of what's in the claim.  The claim doesn't

12:14:40 14   say, oh, let's say -- let's pick 10 and say are these 10

12:14:46 15   distinct.  That might have been a possibility for their

12:14:49 16   theory, but that's not their theory.  Their theory is let's

12:14:52 17   pick 10 wells, all of them, and analyze that as the set.

12:14:56 18   And they have a major problem when we get to that final

12:14:59 19   requirement for what those sets comprise.  The sets are not

12:15:03 20   just 10 individual oligos, they're sets of 10 wells that

12:15:07 21   contain millions and millions of oligos.

12:15:09 22          THE COURT:  I think what you're doing now,

12:15:12 23   you're not pointing to a claim construction dispute, you're

12:15:16 24   pointing to an infringement dispute.

12:15:17 25          MR. PICKARD:  That's right.  Your Honor has sort

12:15:19  1    of zeroed in on the idea what a set is is very important.

12:15:23  2    I'm saying you don't need to construe set because what they

12:15:27  3    have in their infringement theory, what they point to as

12:15:29  4    being a set -- it their theory is let's pick one from Well 1

12:15:33  5    and one from Well 2, I think we do have a dispute, but

12:15:37  6    that's not their theory at least as supported by their

12:15:40  7    witness.

12:15:41  8              THE COURT:  I guess when I read the briefs I

12:15:44  9    could clearly tell, as to these issues, that we were having

12:15:47 10    what Mr. Rabinowitz calls three claim construction disputes

12:15:53 11    if you consider the preamble a claim construction dispute.

12:15:56 12    And there was lots of fights about what the claim terms at

12:15:59 13    issue, whatever they were, mean.  And when we got to the

12:16:02 14    part of like the briefing, it's like, okay, you run through

12:16:05 15    all that, you got to make those decisions, anything else to

12:16:08 16    decide?  It didn't seem to me or I couldn't tell that anyone

12:16:11 17    was clearly saying, well, look, even like in your end, even

12:16:15 18    if you go with them on all three of these issues that we

12:16:19 19    just discussed in the briefing on all these pages, we have a

12:16:24 20    different argument, separate argument as to why we'd prevail

12:16:26 21    on the motion.  I didn't see that in the briefing.  To me it

12:16:27 22    seems like it was all about those three claim construction

12:16:30 23    issues and that was it.  Is that wrong?

12:16:33 24              Did you make an argument in your brief opposing

12:16:36 25    summary judgement that if you lost on each of the three

12:16:39  1    claim construction disputes we were having, nevertheless

12:16:41  2    there was a fourth infringement related argument that you

12:16:43  3    could demonstrate an issue of fact on?  I didn't think you

12:16:47  4    did, but if you did, I couldn't tell.

12:16:49  5            MR. PICKARD:  It didn't roll out as a claim

12:16:52  6    construction issue, but I think the fundamental point I'm

12:16:55  7    raising with Your Honor was made and that is their theory is

12:16:59  8    the set is all of these and that can't be squared with the

12:17:02  9    plain language because our claim construction argument is

          10    about the plain language.

12:17:06 11            Now, if Your Honor finds the claim language can

12:17:06 12    tolerate copies, then we don't have a response for that on

12:17:12 13    this point.  In that sense it is a claim construction issue,

12:17:15 14    but I think that one of the things that's been lost in the

12:17:18 15    briefing is the starting point of what their infringement

12:17:21 16    theory is.

12:17:22 17            THE COURT:  Can my construction tolerate copies?

12:17:25 18    Copies of what?

12:17:28 19            MR. PICKARD:  Multiple copies of -- let me

12:17:32 20    rephrase that, because that was probably imprecise.  If your

12:17:36 21    construction would allow for a set to include multiple

12:17:40 22    copies of a given APS, then this falls away.  My point is

12:17:47 23    simply that their theory has drawn the set box, if you will,

12:17:52 24    around a massive collection of APSs, many of which are

12:18:05 25    identical to one another.

12:18:07 1                    THE COURT:  If week could go back to the claim

12:18:09 2       language again.

12:18:11 3                    MR. PICKARD:  Yes.

12:18:12 4                    THE COURT:  I wondered if -- where the claim

12:18:17 5       construction dispute was, was, look, as long as you get 10

12:18:22 6       of the APS oligos that are part of the set, and as long as

12:18:28 7       any 10 of them are different from each other, you can have

12:18:33 8       copies.  That I thought maybe was the plaintiffs' position.

12:18:37 9                    MR. PICKARD:  That's what I understand their

12:18:39 10      position to be.

12:18:40 11                   THE COURT:  And your position was, no, the way

12:18:45 12      the claim reads is if you have any copies in the set, then

12:18:54 13      you're out of luck.

12:18:55 14                   MR. PICKARD:  That's right.

12:18:56 15                   THE COURT:  And so that's the issue.  That does

12:18:59 16      sound like a claim construction dispute about the words in

12:19:02 17      the claim and what they mean.  But I wonder if it's the one

12:19:09 18      we've be spending a ton of time on so far.  But that seems

12:19:14 19      like it relates more to the words "at least 10," you know,

12:19:18 20      and like --

12:19:20 21                   It's going fine.  Check back with us in like an

12:19:30 22      hour.

12:19:32 23                   To put it differently, maybe the issue is less

12:19:36 24      about "set," but what "at least 10 APS oligonucleotides"

12:19:42 25      means.  "At least 10."  Do you know what I mean?  I don't

12:19:45 1    know.

12:19:45 2                    MR. PICKARD:  I do.  The way I worked through

12:19:47 3    the issue, Your Honor, is the composition of what the set is

12:19:53 4    comprised of has to have at least 10.  They have elected to

12:19:57 5    pick, you know, millions.

12:19:58 6                    THE COURT:  So the set has to have at least 10

12:20:01 7    qualifying APS oligonucleotides?

12:20:03 8                    MR. PICKARD:  Yes.

12:20:04 9                    THE COURT:  And then we go down to the last

12:20:06 10   requirement of sub 1.

12:20:08 11                   MR. PICKARD:  Right.  And so but the -- I'm

12:20:10 12   sorry if I interrupted you, by the way.

12:20:12 13                   THE COURT:  Sure.

12:20:13 14                   MR. PICKARD:  What the language says is that the

12:20:17 15   internal sequence, so you've got the 5-prime, 3-prime ends,

12:20:21 16   something in the middle, that's got to distinguish the APS

12:20:24 17   oligonucleotides in the set, not just 10 from the set, but

12:20:27 18   the set.  They have to be different from one another.

12:20:31 19                   THE COURT:  I think what's happening is, when we

12:20:33 20   get to those words "in the set," are we now not just focused

12:20:38 21   on the "at least 10?"  I think the plaintiff -- I think

12:20:41 22   what's happening is the plaintiff wants me to go into the

12:20:45 23   rest of sub 1 thinking we did "at least 10," so just think

12:20:48 24   about any 10, any 10 in the thing as long as the "at least

12:20:54 25   10" -- and it's all we're going to be thinking about for the

12:20:57 1   rest of this sub 1 -- they have to be different.  I think

12:21:02 2   you're using the last piece to be saying, we're not so

12:21:05 3   focused on just the "at least 10" anymore.

12:21:08 4              MR. PICKARD:  Exactly.

12:21:09 5              THE COURT:  What we're focused on now is back to

12:21:12 6   the whole set.

12:21:13 7              MR. PICKARD:  That's what the claim language

12:21:15 8   says.

12:21:16 9              THE COURT:  It's really a dispute about what

12:21:18 10  that last piece means in light of what came before it is the

12:21:22 11  real claim construction dispute.  Does that seem right?

12:21:25 12             MR. PICKARD:  I think that's right, Your Honor,

12:21:26 13  from my understanding.  We think that language "in the set,"

12:21:28 14  that appears in the wherein phrase "wherein each set," the

12:21:31 15  set could comprise just 10, but their alleged set is a vast

12:21:36 16  number of, you know, maybe millions of oligos.

12:21:40 17             THE COURT:  Walk through with me, though.

12:21:42 18             MR. PICKARD:  Yes.

12:21:43 19             THE COURT:  So we've got the wherein phrase that

12:21:48 20  says, "wherein each set comprises at least 10 APS

12:21:52 21  oligonucleotides."  Would you agree with me that so far they

12:21:56 22  can be any 10 in the set?

12:21:58 23             MR. PICKARD:  So far, if we're not reading

12:22:00 24  ahead, yep.

12:22:01 25             THE COURT:  Okay.  And now we're going to be

12:22:03  1    talking about -- what's the rest of the stuff we're going to

12:22:06  2    be talking about in the sub of the claim?  It's a set of 10

12:22:09  3    APS oligonucleotides that each comprise --

12:22:15  4              MR. PICKARD:  Right.  They've got to have the

12:22:15  5    5-prime and 3-prime features.  Those are not in dispute.  So

12:22:15  6    I've left those out of the slide.

12:22:16  7              THE COURT:  But I think what the plaintiff is

12:22:18  8    saying, we're now in a world, before we go further, the only

12:22:21  9    thing we're thinking about, the only thing we care about is

12:22:24 10    just that the "at least 10."  So we're talking about that

12:22:29 11    "at least 10" must each comprise.  So when we get to the

12:22:33 12    third sub requirement we got to still be talking about just

12:22:34 13    the "at least 10," not the whole set.  Is that what the

12:22:38 14    fight is?

12:22:39 15              MR. PICKARD:  I think that's right.  They might

12:22:41 16    have a point if the claim said something like the APS

12:22:44 17    oligonucleotides of the 10 must be distinguishable from one

12:22:49 18    another.  That's not what they claim.  They claim the set.

12:22:52 19    That's why it's very important to go back and ask, what is

12:22:56 20    the set at least as they've alleged it.  The reason I say I

12:22:58 21    want to go back, Your Honor asked, do we have the fight

12:23:00 22    about the meaning of set.  The reason I don't think we do is

12:23:04 23    because they've picked their big category of things to call

12:23:07 24    the set.  We're fine with that.

12:23:08 25              THE COURT:  You think their set now is the whole

12:23:12  1    plate?

12:23:12  2            MR. PICKARD:  I think their set, the best I can

12:23:16  3    tell from Mr. Sims and what Mr. Rabinowitz said today, their

12:23:17  4    set is 10 wells, the contents of 10 separate wells.

12:23:21  5            THE COURT:  Okay.

12:23:23  6            MR. PICKARD:  And I have some slides from Mr.

12:23:27  7    Sims, so that will be helpful.

12:23:28  8            THE COURT:  Yes.

12:23:28  9            MR. PICKARD:  So if that's how they want to

12:23:30 10    construe sets, we're going to have a dispute.  But if they

12:23:34 11    want to say, well, gosh, we'll just sort of in the abstract

12:23:37 12    pick out this oligo, then I'm not sure that's a fair reading

12:23:40 13    of set.

12:23:40 14            THE COURT:  Hold on.  The claim says, "wherein

12:23:43 15    each set comprises at least 10 APS oligonucleotides."  We

12:23:48 16    know that their at least 10, the ones they want to count on,

12:23:51 17    are one of these they've picked from each of 10 wells.  So

12:23:58 18    if we know that, we know that their set that comprises at

12:24:01 19    least 10 has to be big enough to encompass each of those at

12:24:06 20    least 10 wells, and that's got to be claimed, right, that

12:24:10 21    whole plate?

12:24:11 22            MR. PICKARD:  Yes.  Whether it's the plate of

12:24:11 23    the 10 actually I don't think it changes anything anyway,

12:24:13 24    but --

12:24:13 25            THE COURT:  Okay.  It's really all about -- it's

12:24:16  1    all about when you get to the last component here, do we

12:24:19  2    stop talking about just the at least 10 and go back to

12:24:23  3    talking about the set or are we still talking about the at

12:24:26  4    least 10?

12:24:26  5          MR. PICKARD:  I think we're talking about the

12:24:28  6    set.  And simply reading the claim language gets you there.

12:24:35  7          THE COURT:  But how would we be doing that if

12:24:38  8    the prior language said "at least 10 APS oligonucleotides

12:24:41  9    that each comprise" and we got a colon and we have three

12:24:46 10    limitations.  Everything that goes below it has got to be

12:24:49 11    talking about the thing above it, the "at least 10 APS

12:24:53 12    oligonucleotides that each comprise."  I'm going to tell you

12:24:55 13    three things that these at least 10 must have is what

12:24:59 14    they're saying?

12:25:00 15          MR. PICKARD:  Right.  And they are modifying the

12:25:02 16    10s in the following sentence, and saying as to each of

12:25:08 17    those ten -- or more, there could be more -- has to have an

12:25:10 18    internal sequence that distinguishes the 10 or more from

12:25:13 19    others in the set.  So they can't have a set and then zero

12:25:18 20    in on a subset, if you will, because the claims talk about

12:25:22 21    the set not a subset or not the 10 or more.

12:25:25 22          THE COURT:  They have to -- the words "the APS

12:25:27 23    oligonucleotides in the set" in the last limitation at sub

12:25:33 24    (i), that can't be -- I think you're saying or they're

12:25:38 25    saying, that's got to be a reference back to just the 10,

12:25:42  1    and you're saying, no, by invoking the word "set" there

12:25:47  2    we're now talking about the entire set.

12:25:49  3              MR. PICKARD:  Right.  And I think maybe the most

12:25:51  4    helpful thing is maybe the definite article "the" when

12:25:55  5    referring to "the set," so it does -- everywhere you see --

12:25:58  6    there's two comprising.  There's "each set comprising,"

12:26:02  7    right, and then there's 10 APSs.  When we get into what the

12:26:08  8    APSs are comprised of, every time the set is mentioned it's

12:26:12  9    the set, each set of the claim and their theory is the set

12:26:17 10    is 10, 10 wells and all of their oligo contents.

12:26:21 11              THE COURT:  If it was true that that limitation,

12:26:23 12    when it says an "internal sequence," internal of what?

12:26:27 13    Internal sequence of the oligonucleotide, right, that

12:26:30 14    distinguishes the APS oligonucleotides in the set from one

12:26:33 15    another, if that was somehow a reference back now to every

12:26:39 16    oligonucleotide in the whole plate, we know that there's

12:26:42 17    going to be copies that are not different from each other,

12:26:45 18    right?

12:26:46 19              MR. PICKARD:  I'm sorry, are we talking now

12:26:49 20    about our accused product or talking about the claim scope?

12:26:52 21              THE COURT:  I think here I'm applying the claim

12:26:54 22    language, as I think you read it, to the accused product.

12:26:57 23    So I think what I'm trying to say is that, if in reading

12:27:01 24    that last limitation, "an internal sequence that

12:27:06 25    distinguishes the APS oligonucleotides in the set from one

12:27:08  1    another," if the reference to the words "in the set" there

12:27:11  2    now take us back to the whole set, let's consider the whole

12:27:14  3    set to be the whole plate.

        4                MR. PICKARD:  Sure.

12:27:16  5                THE COURT:  We know that there are APS

12:27:20  6    oligonucleotides in the whole set that are copies of each

12:27:22  7    other.

12:27:23  8                MR. PICKARD:  Yes.

12:27:24  9                THE COURT:  And so it wouldn't be the case that

12:27:27 10    the APS oligonucleotides in the set are all distinguished

12:27:30 11    from each other, right?

12:27:31 12                MR. PICKARD:  Correct.  And that's why I believe

12:27:34 13    we don't infringe.

12:27:35 14                THE COURT:  But if that's a reference instead

12:27:37 15    back to just the "at least 10," and only 10 maybe, then your

12:27:47 16    position would not be correct, I think.  Is that right?

12:27:50 17                MR. PICKARD:  I don't think it would be a

12:27:52 18    pathway to non-infringement because we don't believe that

12:27:54 19    you could pick 10 separate oligos that were not identical to

12:28:00 20    one another from our kit.

12:28:02 21                THE COURT:  Maybe put differently, what I'm

12:28:05 22    trying to say if "an internal sequence that distinguishes

12:28:08 23    the APS oligonucleotides in the set from one another" is a

12:28:12 24    reference back only to "at least 10" oligonucleotides in the

12:28:16 25    set, that only at least 10 of them have to have internal

12:28:22  1    sequences distinguishing them from one another, you lose and

12:28:26  2    the plaintiff wins.

12:28:28  3              MR. PICKARD:  On this issue, yes.

12:28:29  4              THE COURT:  On this issue, yes.  Okay.  This is

12:28:32  5    the whole thing.  I think just as a briefing matter, what we

12:28:35  6    just did here, just now, this is the dispute.  This is the

12:28:38  7    dispute.  And just think about the briefing, like how much

12:28:41  8    of the briefing talked exactly about this in this way, this

12:28:44  9    is it.  Okay.  So right.

12:28:46 10              MR. PICKARD:  Apologize for that.

12:28:48 11              THE COURT:  Again, I'm not criticizing.  It's

12:28:50 12    hard for me to understand too.  So like then the question

12:28:57 13    becomes, I mean, ultimately, if they can show me an

12:29:02 14    embodiment in the patent that mirrors their articulation of

12:29:07 15    the construction, the one you're trying to block, then that

12:29:11 16    could be 2 to your position.

12:29:13 17              MR. PICKARD:  Only so long as that embodiment is

12:29:15 18    consistent with the language of the claim.

12:29:17 19              THE COURT:  So I mean I think the way they're

12:29:20 20    trying to do that is with regard to Fig. 4.  So I think you

12:29:24 21    need to walk me through Fig. 4 and tell me why it doesn't

12:29:27 22    hurt you.  Do you know what I'm saying?

12:29:29 23              MR. PICKARD:  I do, Your Honor.  So I guess for

12:29:32 24    starters on Fig. 4, I don't know if we have a picture of it

12:29:37 25    here, but Your Honor has the patent.

12:29:39  1          THE COURT:  I have it, yeah.

12:29:41  2          MR. PICKARD:  I think for starters one of the

12:29:43  3    things you'll observe is Fig. 4 doesn't make the

12:29:49  4    description, doesn't talk about sets in a helpful way, as a

12:29:52  5    starting point.

12:29:52  6          THE COURT:  How come I wouldn't look at Fig. 4

12:29:56  7    and say the patent is telling me this infringes Claim 1 or

12:29:59  8    this reads on Claim 1, Fig. 4?  Wouldn't the patent be

12:30:02  9    telling me that?  You say it doesn't tell me that because

12:30:05 10    it's not claimed in Claim 1, right?

12:30:07 11          MR. PICKARD:  Yeah.  And our first point is we

12:30:08 12    start with the plain language of the claims.  And I

12:30:10 13    appreciate Your Honor is struggling with that and but our

12:30:15 14    position is Fig. 4 by itself, you can't reconcile it with

12:30:18 15    the plain language of the claims because there are copies in

12:30:21 16    those various wells.

12:30:22 17          THE COURT:  Put differently, you acknowledge

12:30:25 18    that if Fig. 4 reads on Claim 1, if Fig. 4 is an example of

12:30:34 19    something that meets the limitations of Claim 1, that would

12:30:38 20    be problematic for your position?

12:30:40 21          MR. PICKARD:  It would.  And I want to make

12:30:41 22    another point about Fig. 4, because it's come up in the

12:30:45 23    other side's briefing.  I think they talked about Claim 329,

12:30:48 24    which has became the issue pointed to in the patent. They

12:30:52 25    say, oh, look, we pointed to Fig. 4 in our prosecution

12:30:54  1    history as support.  But they didn't just point to Fig. 4.

12:30:57  2    If we could move ahead to Slide 9.

12:31:02  3              THE COURT:  Before we leave it, the reason why

12:31:05  4    Fig. 4 could be problematic, unless you can convince me that

12:31:09  5    it is not claimed, not claimed in Claim 1, is because its

12:31:18  6    got an example of what's got to be a set that's got

12:31:22  7    oligonucleotides that are copies of each other in it.  Is

12:31:30  8    that right?

12:31:30  9              MR. PICKARD:  I think that's right.  A couple

12:31:33 10    of -- the patent doesn't actually describe what the sets are

12:31:38 11    in Fig. 4, and this idea of picking out individual oligos is

12:31:42 12    not described as how we get to a set or even the 10 of Fig.

12:31:46 13    4.

12:31:47 14              The point I wanted to make about the prosecution

12:31:49 15    is the following, is that they didn't just point to Fig. 4

12:31:52 16    as support for these claims.  And if Your Honor will look at

12:31:58 17    the part of the record where they did cite Fig. 4, you'll

12:32:03 18    see they also cited paragraphs in the prosecution, which

12:32:06 19    appear in the '752 Patent as follows.  And the point here is

12:32:09 20    that it says, "In some embodiments, an individual APS, ESB,

12:32:12 21    or linking oligonucleotide molecule comprises a unique

12:32:17 22    counter tag."  And so this is an example of where -- they're

12:32:21 23    not just claiming Fig. 4.  They're claiming Fig. 4 and this

12:32:24 24    idea that, oh, it also includes this unique code, counter

12:32:30 25    tag.  And so it's not so clear that what they've claimed is

12:32:34  1    an embodiment, not clear at all, in fact, that has multiple

12:32:39  2    copies within the scope of the claim.

12:32:44  3              THE COURT:  And what you're -- it may be

12:32:47  4    because -- may be the case that the plaintiff raised the

12:32:53  5    prosecution history that excerpt maybe only in the reply

12:32:59  6    brief, is that right?

12:32:59  7              MR. PICKARD:  I'm not sure, Your Honor.

12:33:01  8              THE COURT:  If they did, this is maybe your

12:33:03  9    first chance to tell me why that's not so great for them as

12:33:07 10    they think it is.  This is all just to say, whatever you're

12:33:09 11    telling me right you've never heard before.  So now I'm

12:33:09 12    trying to figure out what you're saying.  But I think your

12:33:15 13    position in the briefing was Fig. 4 is not claimed.

12:33:20 14              MR. PICKARD:  Right.

12:33:21 15              THE COURT:  How will I know that?  Like, I think

12:33:23 16    that sentence cites nothing.  It's just your statement and

12:33:27 17    they come back and they say, I got a piece of evidence

12:33:29 18    actually that suggests it was claimed.  These guys just have

12:33:34 19    a statement with no citation.

12:33:37 20              MR. PICKARD:  I think the best tool, if you

12:33:39 21    will, is go to the plain language of the claims, which is

12:33:41 22    always the starting point.  And the claims consistently --

12:33:44 23    the claim consistently recites "in the set," "in the set."

12:33:47 24              THE COURT:  Is that just another way of saying,

12:33:49 25    Judge, look, yes, if Fig. 4 is understood to read on Claim

12:33:56  1   1, our position would be in trouble.  But in the end of the

12:33:59  2   day, Fig. 4 can't contradict what we think is the clear

12:34:03  3   plain meaning of Claim 1.  And if you agree with us on that

12:34:07  4   clear, plain meaning, who cares what Fig. 4 says.  Whether

12:34:10  5   they think it's claimed or not or whatever, the claim's

12:34:11  6   claiming and the words matter.  That's what you're saying?

12:34:14  7              MR. PICKARD:  Exactly.

12:34:15  8              THE COURT:  Okay.  Got it.  And if you were

12:34:18  9   making a separate point about this that relates to this, I

12:34:22 10   wasn't following.

12:34:23 11              MR. PICKARD:  I apologize.  This wasn't in the

12:34:26 12   brief.  My point is simply that when they pointed to support

12:34:30 13   from Fig. 4 for what was then Claim 329, today Claim 1, they

12:34:37 14   didn't cite Fig. 4, they cited lots of language and said,

12:34:41 15   oh, by the way, APSs can have these unique codes as well.

12:34:45 16   And in light of that, it's entirely consistent with what we

12:34:48 17   say is the plain meaning of the claim language.

12:34:52 18              If we could, I just would like to go back to Dr.

12:35:02 19   Sims' evidence.  This is from his opening report.  And as I

12:35:05 20   had started to say a little while ago, we first pointed out

12:35:08 21   in our rebuttal report, we have a problem here because what

12:35:12 22   you're calling a set includes any copies of each and every

12:35:16 23   oligo in your set.  And in reply, go to the next slide, this

12:35:19 24   is the reply declaration or report from Dr. Sims.  He again

12:35:26 25   talks about the set as follows.  And he ends, you know, the

12:35:30  1    sets are in the Round 2 sets -- Round 2 oligos, sorry,

       2    comprised of at least 10.  And then he finishes, the

12:35:37  3    oligonucleotides in the 10 or more wells.  I just want to

12:35:40  4    hammer home for, Your Honor, that's been their theory.  This

12:35:43  5    idea that they were selecting individual oligos is not a

12:35:48  6    theory that Dr. Sims has endorsed in his reports.

12:35:51  7            THE COURT:  That sounds like maybe an issue

12:35:53  8    that -- I think we would acknowledge that what I need to do

12:35:54  9    to resolve this motion is I need to assess these three claim

12:36:00 10    construction disputes.

12:36:01 11            MR. PICKARD:  That's right.  I do think that

12:36:02 12    this is an example where having some context is very helpful

12:36:06 13    to understand what's at issue.  And that's all.

12:36:09 14            THE COURT:  And again, this is kind of

12:36:11 15    simplistic, but if on each of the three issues I were to

12:36:16 16    agree with the plaintiff and disagree with you, I think the

12:36:20 17    plaintiff is saying, Judge, you stop there and you grant us

12:36:23 18    summary judgement, because those are the three issues we set

12:36:27 19    up for you.  The briefing makes it clear that if we win, say

12:36:29 20    we win on "the preamble is not limiting" or we win on our

12:36:34 21    position and dispute about "target molecule," and we also

12:36:38 22    win on our dispute about "at least 10," you grant us summary

12:36:41 23    judgement.  There's no fourth thing.

12:36:43 24            MR. PICKARD:  That's right, Your Honor.

12:36:44 25            THE COURT:  And you agree with that?

12:36:46  1    MR. PICKARD:  Right.  I think what's motivated

12:36:49  2  my desire to share this Your Honor in part is because, you

12:36:52  3  know, I get a sense from the other side that, well, even if

12:36:53  4  we're right, they're okay, right, under our reading, because

12:36:57  5  week just sort of narrow it to 10.  I'm saying you can't

12:37:01  6  narrow it to 10 on this summary judgement record because

12:37:04  7  you've already put a stake in across 10 wells.

12:37:09  8    THE COURT:  Okay.

12:37:10  9    MR. PICKARD:  I think that's the message I'm

12:37:13 10  trying to deliver there.  All right.

12:37:15 11    THE COURT:  Got it.  Okay.  You want to do --

12:37:19 12  you got 15 minutes left in your initial time.  Want to do

12:37:26 13  the preamble or do you want to do target molecule?

12:37:29 14    MR. PICKARD:  Why don't we start with the

12:37:30 15  preamble.

12:37:30 16    THE COURT:  Actually, do me a favor.  I'll asked

12:37:33 17  my courtroom deputy to turn the time off for a second.  I

12:37:33 18  just want to ask you about something, because there's

12:37:37 19  this -- there's the statement in your brief that unless you

12:37:43 20  can explain it, I think it's just flatly false or at least I

12:37:49 21  don't understand how it's not flatly false.  And because of

12:37:53 22  it, it seems trouble.  Like, how can they say this with a

12:37:57 23  straight face in words?  And it's the thing about what your

12:38:00 24  expert previously was or was not opining with regard to the

12:38:05 25  now, I think, discarded portion of a proposed construction.

12:38:13  1   And more particularly, I think we're talking about the

12:38:16  2   answering brief, your answering brief, pages 4 to 5.  And it

12:38:22  3   says, "Scale also misinterprets Parse's proposed

12:38:28  4   construction."  And this is the sentence.  "Parse's expert

12:38:32  5   never stated that he understood target molecules to be

12:38:37  6   further limiting to molecules whose presence or quantity

12:38:45  7   varies between individual sets."  Now, I think the whole bit

12:38:47  8   about presence or quantity, turns out that's not going to be

12:38:51  9   relevant to me resolving this dispute because the parties'

12:38:54 10   positions have changed and now it's more focused.  I'm

12:38:57 11   really just -- I'm just more concerned with your statement

12:39:01 12   back when it might have been.  How can it be correct that

12:39:04 13   your expert never stated that he understood target molecules

12:39:08 14   to be defined that way when like he did multiple times

12:39:11 15   repeatedly, didn't he?

12:39:13 16          MR. PICKARD:  Your Honor, I don't have an answer

12:39:15 17   for that at the moment.  I would like to get back to that.

12:39:19 18   But the best I can offer right now is that perhaps this was

12:39:22 19   something that slipped through in the haste of the

12:39:25 20   tremendous amount of work.  It's not an excuse.  It is an

12:39:29 21   explanation.

12:39:29 22          THE COURT:  Yeah.  Understood.  I would just

12:39:32 23   say, like, if what I think is right, which is they cite

12:39:36 24   multiple different portions of the record in which your

12:39:40 25   expert did, in fact, say exactly that.  I think it's just

12:39:45  1    flat wrong.  And it could be wrong because somebody made a

12:39:49  2    mistake.  The worst would be if it's not, like someone is

12:39:55  3    just trying to say something that's not true is true.  So I

          4    think it's worth, at least on your end, going back and

12:39:58  5    looking at like what happened here.  But it's, I understand,

12:40:03  6    a lot of work.  You guys came on late, but that is

12:40:06  7    potentially troubling.  Again, not that this is going to

12:40:08  8    matter for the substance of my decision, it's just when I

12:40:10  9    see that, it's like, if defendant will say that, what else

12:40:14 10    will they say that I can't rely on?  You know what I mean?

12:40:17 11            MR. PICKARD:  I hear you loud and clear.

12:40:19 12            THE COURT:  Great.  Let's put the clock back on.

12:40:22 13    And let's go to the substance of the preamble issue.  And

12:40:25 14    there, I mean -- oh, and then another thing, this is

12:40:31 15    related, this is on the clock, because this matter, it's

12:40:34 16    like didn't you previously, in your final invalidity

12:40:38 17    contentions, say, hey, this preamble is not limiting, full

12:40:43 18    stop, we're done?  You somehow claim you didn't say it,

12:40:47 19    though.  We should look at it.

12:40:49 20            MR. PICKARD:  We should.  I have a slide for

12:40:51 21    Your Honor.

12:40:51 22            THE COURT:  Yeah, let's look at it.  Because I

12:40:55 23    think it's probably right that if you clearly did take that

12:40:58 24    position and that only now months later you're changing it,

12:41:03 25    I think what it would be untimely and it would be

12:41:08  1    particularly problematic if that is what's happening and you

12:41:11  2    didn't at least acknowledge that in the briefing and try to

12:41:13  3    have some explanation where the words that seem to say X

12:41:16  4    don't mean X.  Do you know what I mean?

12:41:19  5              MR. PICKARD:  So the footnote that I think my

12:41:21  6    colleague pointed to does have that language saying the

12:41:24  7    preamble is not limiting.

12:41:26  8              Going back and looking at the final contentions,

12:41:29  9    it appears what happened was we were taking alternate

12:41:33 10    positions in our invalidity case.

12:41:35 11              THE COURT:  This is before you guys got in?

12:41:38 12              MR. PICKARD:  No, this was after.

12:41:39 13              THE COURT:  Okay.

12:41:39 14              MR. PICKARD:  And you see examples of us going

12:41:45 15    the other direction, to the extent it is limiting, here are

12:41:49 16    our theories.  We did that like 8 or 9 times.  I think that

12:41:52 17    footnote was a bit of sloppy drafting and I don't think

12:41:56 18    there's any prejudice to the other side.  I do not see

12:41:59 19    anywhere in their reports where their experts relied on that

12:42:03 20    and so forth.  It was never our intent to take that position

12:42:08 21    that the preamble is not limiting.

12:42:09 22              THE COURT:  And just, it's -- can you just --

12:42:15 23    I'm just trying to find where the contentions are in the

12:42:18 24    record.

12:42:22 25              MR. PICKARD:  So I think there's only some

12:42:24  1    excised versions of it that the other side put in.

12:42:29  2             THE COURT:  Can either side point me to the

12:42:31  3    exhibit in the record where the contentions at issue are?

12:42:40  4             MR. RABINOWITZ:  Yes, Your Honor.  We submitted

12:42:41  5    it as D.I. 308, Exhibit 8.

12:42:45  6             THE COURT:  So Exhibit 8.  All right.  Hold on.

12:42:55  7             And I think, yes, this is just an excerpt, but

12:42:58  8    it's essentially, so, yeah, we're talking about on page 13,

12:43:04  9    footnote 4.  In the body we're talking about the '752

12:43:13 10    Patent, and you say, "to the extent the preamble has said

12:43:17 11    that these patent claims is limiting footnote 4."  Footnote

12:43:21 12    4 is "Parse contends that the preamble of the '752 Patent

12:43:24 13    claims is not limiting because it does not..."  And "it does

12:43:28 14    not" appears full stop, you know.  It doesn't seem like a

12:43:33 15    mistake.  Seems like that's your position, that's your

12:43:37 16    contention.  They know it now, they can bank on it, and to

12:43:41 17    change it now when it really matters months later on a dime

12:43:44 18    like that could be bad.  Anything more you want to say about

12:43:47 19    this, because it could be a real issue?

12:43:49 20             MR. PICKARD:  Your Honor, the best I can offer

12:43:51 21    is that was simply an error in our drafting.  The document

12:43:56 22    was quite big, many, many positions, many pages.

12:43:59 23             THE COURT:  Okay.  All right.

12:44:02 24             MR. PICKARD:  As I said before, I don't think

12:44:04 25    there's been any prejudice here.

12:44:06  1          THE COURT:  Let's say if we get past that issue

12:44:08  2   just in terms of the substance, I know you're -- I think

12:44:12  3   you're probably not disputing a couple things about the

12:44:15  4   preamble.  One, tell me, I think you're not disputing that

12:44:20  5   the preamble, you know, or after the preamble, the claim

12:44:24  6   probably does have a complete structure.  You don't need

12:44:29  7   target molecules to have the claimed kit.

12:44:31  8          MR. PICKARD:  Actually, we can put up the claim.

12:44:33  9   I don't agree on that point --

12:44:35 10          THE COURT:  Okay.

12:44:37 11          MR. PICKARD:  -- in the following sense.  This

12:44:38 12   is important.  So we have a portion of Claim 1 up here, Your

12:44:44 13   Honor.  And just to reorient, we've got the APSs.  They get

12:44:48 14   assembled in the claim into what's called a COB or cell

         15   origination barcode, which Your Honor has construed.  And we

         16   see that construction here at the bottom.  So at the end of

12:45:00 17   the claim to form the COB.  What is a COB?  A COB is a

12:45:03 18   thing, provides a code that indicate the cell or organelle

12:45:06 19   of origin.  And the reason that reflects structural

12:45:10 20   incompleteness is the question is, origin of what?  And it's

12:45:13 21   the target molecule for which the origin is being pointed

12:45:16 22   out.

12:45:17 23          THE COURT:  You argued this in your briefing?

12:45:19 24          MR. PICKARD:  It's not in the briefing, but this

12:45:21 25   shows our point.  This is the purpose of the claims.  And

12:45:24  1    it's not simply, oh, that it's described in the patent as

12:45:27  2    such, but the claims itself show that what this is really

12:45:31  3    about is about labeling target molecules.

12:45:34  4              THE COURT:  I guess, you know, just to press,

12:45:36  5    you could have a kit that has all the components of the body

12:45:41  6    of Claim 1, and that could be a complete structural kit,

12:45:46  7    right?

12:45:47  8              MR. PICKARD:  So long as your COB is suitable

12:45:52  9    for being associated with the target molecule.

12:45:55 10              THE COURT:  I mean, otherwise they point to a

12:45:58 11    portion of the patent that says -- and we know target

12:46:01 12    molecules are really important, certainly talk a lot about

12:46:04 13    how we target them.  But you point to a portion of the

12:46:07 14    patent that says, oh, you use these different, "any

12:46:10 15    purpose."

12:46:10 16              MR. PICKARD:  I haven't heard of another

12:46:11 17    purpose, by the way.  The patent says that there's a lot of

12:46:14 18    what I would call defensive language in the patent, for

12:46:16 19    sure.

12:46:17 20              THE COURT:  So if you can use a kit for some

12:46:19 21    other purpose, whatever it might be, doesn't have to do with

12:46:24 22    target molecules and otherwise it doesn't seem like target

12:46:27 23    molecule -- you need a target molecule to make up a kit.

12:46:29 24    How come they don't win on the substance?

12:46:32 25              MR. PICKARD:  Well, because you need to have

12:46:34  1    these components of the claim need to be suitable for

12:46:38  2    barcoding target molecules, otherwise the COB has no

12:46:42  3    meaning.  If it can't barcode a target molecule, it's not

12:46:45  4    suitable for, you know, specifying the cell or originating

12:46:52  5    cell for the thing, which is the target molecule.

12:46:54  6         THE COURT:  I think your acknowledging this COB

12:46:57  7    argument is a new one.  But the last part of the claim

12:47:06  8    says -- where are we in sub (i)?  Oh yeah, the wherein

12:47:09  9    clause?

12:47:10 10         MR. PICKARD:  Yeah.  So --

12:47:14 11         THE COURT:  "The APS oligonucleotides are

12:47:16 12    configured to link together to form all or part of a cell or

12:47:22 13    organelle origination barcode."  Something about that

12:47:28 14    language is telling me we got to have target molecules in

12:47:32 15    the mix?

12:47:32 16         MR. PICKARD:  If you look at Your Honor's

12:47:34 17    construction, the feature that makes a COB a COB is its

12:47:39 18    ability to indicate the cell or organelle origin and the

12:47:44 19    thing for which the origination we're trying to discern in

12:47:48 20    the claims is target molecules.  It's the only thing

12:47:51 21    described in the spec.  COBs are there to tell you where

12:47:54 22    target molecules come from, what cells, what organelles.

12:47:57 23         THE COURT:  And the last question on the

12:47:59 24    preamble would be, I know you're pointing to some language

12:48:02 25    in *Catalina* that talks about, you know, if there's a

12:48:04  1    structure that the specification calls out as particularly

12:48:07  2    important, maybe that could be an example where the preamble

12:48:10  3    is limiting.  And I know you say target molecules are pretty

12:48:14  4    important to this patent, but Mr. Rabinowitz says you're not

12:48:17  5    going to find a Federal Circuit case that uses that kind of

12:48:20  6    language and actually concludes the preamble is limiting

12:48:23  7    where there wasn't also an argument that the structure at

12:48:26  8    issue, the thing that they're saying the spec calls out is

12:48:30  9    particularly important, was at least structural to the

12:48:33 10    claimed kit, right?

12:48:34 11              MR. PICKARD:  This shows that structural

12:48:37 12    necessity in the body of the claims.

12:48:40 13              THE COURT:  Okay.  All right.  Why don't we talk

12:48:43 14    about -- you have six minutes left.  Again, I'll reserve

12:48:46 15    five minutes of your time for -- an extra five minutes for

12:48:49 16    rebuttal, but why don't we talk the substance of the target

12:48:53 17    molecules issue.

12:48:53 18              MR. PICKARD:  I think where the parties dispute

12:48:57 19    on "target molecule" or really trying to get at is whether

12:49:01 20    "target molecule" is the individual thing or a class of

12:49:04 21    molecules.  I think that's where the two sides are driving

12:49:07 22    at with their proposed constructions.

12:49:14 23              And if we go through the intrinsic record, all

12:49:20 24    of the examples talk about detecting individual molecules.

12:49:23 25    But since I have a short time, I want to jump ahead to some

12:49:27  1    extrinsic evidence.

12:49:28  2              THE COURT:  On the intrinsic, though, we know

12:49:32  3    some of the parts of the patent -- I mean, isn't it hard to

12:49:34  4    argue that a target molecule has to have a known individual

12:49:35  5    identity when the spec literally states that the target

12:49:39  6    molecule can have an unknown structure?

12:49:40  7              MR. PICKARD:  Well, can have an unknown

12:49:42  8    structure or sequence.  And that is -- our point there is

12:49:44  9    that -- what we think is being said is that the entirety of

12:49:48 10    the structure sequence doesn't need to be.  Our point is you

12:49:52 11    need to know about the individual identity of the particular

12:49:56 12    molecules.

12:49:57 13              THE COURT:  So to the extent that we're having a

12:49:59 14    fight about this term "target molecule," and more

12:50:04 15    particularly whether they have to be molecules with a "known

12:50:07 16    individual identity," as you said that word a lot, but that

12:50:12 17    phrase a lot, what you're saying is do we mean by "known

12:50:16 18    identity identity" that you have -- that you have to know

12:50:23 19    the entire identity?

12:50:24 20              MR. PICKARD:  No.  We're not saying you need to

12:50:27 21    know every little structural feature of the molecule,

12:50:30 22    nothing like that.  We're simply saying that the known

12:50:33 23    identity must be sufficiently particular to separate

12:50:39 24    individual molecules from one another.

12:50:41 25              THE COURT:  So the fight we're really having

12:50:43  1    here, the real dispositive fight is how much of the identity

12:50:47  2    is known.

12:50:50  3              MR. PICKARD:  I think that's fair, yeah.

12:50:52  4              THE COURT:  Isn't that the same fight -- isn't

12:50:55  5    that the same thing that only at the last Markman we

12:50:58  6    discovered we were having that same fight and it wasn't

12:51:01  7    briefed?  Isn't that the same thing we were fighting back

12:51:03  8    then?  I know you weren't here before, but you must have

12:51:07  9    read the --

12:51:07  10             MR. PICKARD:  I think we're having a different

12:51:09  11   fight about -- some of the same language is about whether

12:51:12  12   we're talking about classes of molecules qualifying as

12:51:15  13   targets or individual molecules.

12:51:16  14             THE COURT:  So your proposal, at least the way

12:51:19  15   they've phrased it, is that you are saying a target molecule

12:51:23  16   should be construed to mean "molecules of interest with a

12:51:26  17   known individual identity."  This is your brief.  This is

12:51:35  18   your brief.  You propose that target molecules be construed

12:51:38  19   to mean "molecules of interest with a known individual

12:51:41  20   identity sufficient to distinguish the molecules being

12:51:46  21   detected or quantified."  Is that fair to say, that's your

12:51:49  22   proposed construction for the term?

12:51:51  23             MR. PICKARD:  That's right.

12:51:52  24             THE COURT:  What does it mean to be a molecule

12:51:56  25   "of interest with a known individual identity?"  You think

12:51:58  1    the parties agree on that?

12:52:00  2            MR. PICKARD:  You mean on the particular

12:52:02  3    language "known individual identity?"  I don't know the

12:52:05  4    answer to that, whether we have a shared understanding.

12:52:07  5            THE COURT:  I wonder if we have a disagreement

12:52:09  6    on that.

12:52:10  7            MR. PICKARD:  I think we do in the following

12:52:12  8    sense.  What we mean by that is it's not enough to know a

12:52:15  9    feature of a class of molecules, that you need to know about

12:52:20 10    the identity of individual molecules to be a target molecule

12:52:24 11    in the meaning of the spec.  I think their position is that

12:52:27 12    you don't need to know things about individual, you just

12:52:29 13    need to know something about classes.  That's enough.

12:52:32 14            THE COURT:  So put differently, the real

12:52:34 15    dispute, if your construction is going to be edited, would

12:52:38 16    be something like the following, molecules of interest with

12:52:40 17    a known individual identity, parenthesis, and by that I

12:52:43 18    mean, you know, more than just the class of the molecule in

12:52:48 19    terms of its identity, end parenthesis.  Something like

12:52:51 20    that?

12:52:51 21            MR. PICKARD:  Yes.  It's a challenging concept,

12:52:54 22    but that gets you pretty close.

12:52:56 23            THE COURT:  Okay.  It's more than a class is

12:52:58 24    what you think the real dispute is.

12:53:00 25            MR. PICKARD:  Yes.

12:53:01  1                    THE COURT:  Did that get briefed really, though?

12:53:04  2      I wonder.  Did that get briefed?  I guess maybe it did.

12:53:07  3      I'll let you continue and show me kind of --

12:53:11  4                    MR. PICKARD:  Yeah, I would like to -- in our

12:53:13  5      brief we pointed to parts of the '752 spec about individual

12:53:18  6      molecules.

12:53:19  7                    I think I'd like to spend my remaining time on

12:53:23  8      what we call *Nolan 2014*.  So the inventor of the asserted

12:53:37  9      patent is Garry Nolan, a 2014 priority date.  Dr. Nolan

12:53:39 10      filed some new applications.  And he described those

12:53:42 11      applications -- we call it *Nolan 2014*.  He describes those

12:53:46 12      applications in the lower box here as an extension of the

12:53:49 13      patents-in-suit.  Okay.  So that just sets the table for

12:53:54 14      what comes next.

12:53:55 15                    Move ahead a slide.  The *Nolan 2014* patent in

12:53:59 16      many ways uses the same language, precisely the same

12:54:03 17      language as the '752 and the other asserted patents when

12:54:08 18      talking about targeted approaches.  We see in the top two

12:54:12 19      boxes, it's got the same epitope.  The target molecule you

12:54:16 20      see in the asserted patents.  This is the UBA language,

12:54:21 21      hybridizing to a single species of target molecule.  And the

12:54:22 22      final box, that's from the '752 Patent.  You see a lot of

12:54:26 23      the same language in the two patents when talking about what

12:54:30 24      the UBA does and how it targets molecules.

12:54:33 25                    However, when *Nolan 2014* talks about what it

12:54:38 1    calls an untargeted approach, I think this contrast is

12:54:42 2    helpful.  The top box is talking about using UBAs.  Unique

12:54:46 3    binding agents is what it means.  Capable of binding or

12:54:51 4    hybridizing to a single species of target molecule.

12:54:55 5              THE COURT:  You're at your time, but I'll let

12:54:57 6    you finish out this point.  This business about *Nolan 2014*,

12:55:00 7    is this in the briefs?

12:55:01 8              MR. PICKARD:  It is in the briefs, yes.

12:55:03 9              THE COURT:  It is.  Where?  Or I mean -- I want

12:55:06 10   to track it, because I read it, so, but it's not hidden, so

12:55:11 11   I just want to find what we're talking about.  It's got to

12:55:20 12   be -- your answering brief is going to be between page 4 and

12:55:26 13   something.

12:55:27 14             MR. PICKARD:  My colleague is going to help me.

12:55:42 15             THE COURT:  What is it?  What page?  What we're

12:55:58 16   talking about ends at 14.

12:56:01 17             MR. PICKARD:  I didn't quite catch that, Your

12:56:03 18   Honor.  I'm sorry.

12:56:04 19             THE COURT:  I'm just saying the relevant portion

12:56:06 20   of your answering brief, the discussion section for this,

12:56:09 21   this motion, goes from pages 4 to 14.  The relevant portion

12:56:14 22   of your answering brief that discusses the concept of target

12:56:18 23   molecules goes from 4 to --

12:56:22 24             MR. PICKARD:  Yeah.  Apologies.  So the fight

12:56:26 25   over target molecules is spilled into I think two or three

12:56:31  1    different MSJ briefs.

12:56:33  2              THE COURT:  Okay.

12:56:34  3              MR. PICKARD:  A lot of cross references going on

12:56:36  4    there.  So it is difficult sometimes to track all the

12:56:41  5    arguments on target molecules, but this is --

12:56:44  6              THE COURT:  Okay.  So maybe let me just ask you,

12:56:47  7    because I want to kind of keep us to our time.  Can you just

12:56:50  8    say, Judge, the only point I'm trying to make with *Nolan*

12:56:54  9    *2014* is blank.

12:56:55 10              MR. PICKARD:  On the top we see *Nolan 2014*

12:56:58 11    discussing UBAs in a targeted approach.  This is the

12:57:03 12    extension, when Nolan 2014 talks about targeting classes of

12:57:08 13    molecules this is how it's described.  It doesn't use the

12:57:12 14    unique binding agent.  It uses a non-specific agent.  And

12:57:16 15    this is an example.  "Comprising a poly-dT oligonucleotide

12:57:19 16    probe."  It goes on.  It doesn't use the language target

12:57:24 17    molecules.  And what's I think very helpful about this

12:57:26 18    disclosure, this is precisely what goes on in the accused

12:57:29 19    products.  The poly-T primers that you've heard about,

12:57:34 20    that's what our products use.  That's how you get a class of

12:57:41 21    messenger RNA molecules.  Here *Nolan 2014* says these aren't

         22    target molecules.  This is something different.  We don't

12:57:45 23    even use unique binding agents because it's not unique.  We

12:57:47 24    use a non-specific binding agent to do, for example, what's

12:57:51 25    the poly-T.  Now poly-T happens to be what's in our product.

12:57:56  1    I think this puts in clear relief the distinction between

12:57:59  2    the targeted approach of the 2012 patent, the asserted

12:58:02  3    patents, and what we're doing, the untargeted approach.

12:58:06  4            THE COURT:  Okay.  We'll have to leave it there.

12:58:08  5    I'll give you five minutes of rebuttal.

12:58:10  6            MR. PICKARD:  And I just got a note.  So page 29

12:58:13  7    of our answering brief has this discussion -- of our opening

12:58:19  8    brief, I'm sorry.  So we had briefed the target issue in our

12:58:26  9    opening own MSJ brief and you see an abbreviated form of

12:58:30 10    that in our answering brief.

12:58:32 11            THE COURT:  But in terms of the arguments as to

12:58:34 12    the motion we're talking about, it's somewhere else.

12:58:39 13            MR. PICKARD:  It's in the briefing.  The parties

12:58:40 14    have talked about targeting throughout.  Apologies on some

12:58:45 15    of the difficulties tracking that.

12:58:46 16            THE COURT:  Okay.  Thank you, Mr. Pickard.  I'll

12:58:55 17    give each side a brief five minutes for rebuttal and we will

12:59:00 18    a take a brief break.

12:59:01 19            Mr. Rabinowitz.

12:59:24 20            MR. RABINOWITZ:  Your Honor, if I can just

12:59:28 21    respond briefly to what was said about the theory that Dr.

12:59:34 22    Sims put forth about infringement.  This is claim

12:59:38 23    construction issue number one, so our theory is a set is any

12:59:43 24    10 APS oligonucleotides, one from Well 1, one from Well 2,

12:59:47 25    one from Well 3 and so on.

12:59:50  1            THE COURT:  Any set in a blank.  In a what?

12:59:52  2            MR. RABINOWITZ:  It any set in a plate.

12:59:54  3            THE COURT:  In a plate.

12:59:55  4            MR. RABINOWITZ:  So the plate, you choose one

12:59:57  5    from Well 1, one from Well 2.  And Dr. Sims set forth

13:00:01  6    exactly that theory in his reply report.

13:00:04  7            THE COURT:  Because I think Claim 1, like it

13:00:06  8    talks about sets, but presumably there's some boundary on

13:00:10  9    what a qualifying set could be, it's got to be somewhere and

13:00:14 10    for you it's in the plate.

13:00:16 11            MR. RABINOWITZ:  In patent claims the word "set"

13:00:18 12    is often used to refer to a collection, so you can refer

13:00:22 13    later to the set.  It's like a Markush group.  It's a set

13:00:27 14    that comprises 10 APS oligonucleotides, at least 10 that

13:00:32 15    have these properties.

13:00:33 16            THE COURT:  Just has to be anywhere in the kit,

13:00:36 17    right?

13:00:37 18            MR. RABINOWITZ:  Correct.

13:00:38 19            THE COURT:  Just has to be two of them.

13:00:42 20            MR. RABINOWITZ:  Right.  Has to be two sets.

13:00:43 21    And in his reply expert report D.I. 326, Exhibit 14, on page

13:00:55 22    130, paragraph 290, Dr. Sims identified the two plates.  In

13:01:14 23    Plate P1 he identified a number of wells.  In Well $P_1A$ he

13:01:21 24    identified all the copies of the oligonucleotides, APS $P_1A_1$,

13:01:29 25    et cetera, through APS $P_1Ax$.

13:01:34  1           And then in paragraph 291 he said in this

13:01:37  2    scenario there are at least two sets of APS

13:01:42  3    oligonucleotides.  For example, the first set includes the

13:01:45  4    following APS oligonucleotide:  $P_1A_1$, $P_1B_1$, $P_1C_1$.  He's

13:01:51  5    picking one oligonucleotide from each well to make up the

13:01:55  6    set.

13:01:56  7           THE COURT:  Each well in that plate?

13:01:58  8           MR. RABINOWITZ:  Each well in that plate.  And

13:01:59  9    he does the same for Plate 2.

13:02:01 10           THE COURT:  Okay.

13:02:02 11           MR. RABINOWITZ:  So the notion that he didn't

13:02:03 12    set forth this theory of infringement is unjustified.

13:02:07 13           And then I would also point out, Your Honor,

13:02:12 14    that -- can I have Slide 3, please?  Claim 2, one of the

13:02:26 15    dependent claims that depends on Claim 1, requires that the

13:02:30 16    different APS oligonucleotides in the set are in different

13:02:37 17    wells on a multi-well plate.  That is consistent with our

13:02:41 18    construction of the claim and for our theory of

13:02:43 19    infringement.

13:02:43 20           THE COURT:  The other question I have for you

13:02:44 21    before your time about is "target molecule" issue.  We know

13:02:47 22    their proposal or their construction is that the term be

13:02:54 23    construed to mean "molecules of interest with a known

13:02:55 24    individual identity..."  And I think today what we heard is,

13:03:00 25    it's actually, it's more like molecules of interest with a

13:03:03  1    known individual identity.  And by known individual identity

13:03:07  2    we mean knowing more than just the class of the molecule.

13:03:10  3              MR. RABINOWITZ:  As I understand it, if you

13:03:12  4    analogize it to people, it's not enough to know that this is

13:03:15  5    am American, you must know that it's John Smith.  That's

13:03:19  6    their theory.

13:03:20  7              THE COURT:  And the thing I worry about is, we

13:03:22  8    had a bunch of examples in the record that maybe like you

13:03:25  9    pointed to, like STAT3 PSMA.  I just wonder like, are those

13:03:33 10    all examples where we know the class but don't know more?

13:03:36 11    And so they'd say, yeah, those examples, they don't help

13:03:41 12    because when we say "known individual identity" we mean more

13:03:46 13    than just a class.  This is my worry, that maybe the whole

13:03:49 14    fight really came down to what does it mean to have a known

13:03:53 15    individual identity, and then do we have enough in the

13:03:57 16    briefing to answer the question the second time around.

13:03:59 17              MR. RABINOWITZ:  Your Honor, the opposition is

13:04:02 18    that the Court should simply give effect to the definition

13:04:05 19    that is provided in the specification and that the Court has

13:04:09 20    ruled is the definition provided in the specification.

13:04:12 21              THE COURT:  Can I just ask then, more

13:04:14 22    specifically, and this will be the last question.  I mean,

13:04:17 23    this STAT3 example was in paragraph 36 or column 36 of the

13:04:23 24    patent, and I understood at some level that, like, there a

13:04:28 25    UBA could be seeking out, I think, STAT3 alpha or STAT3 beta

13:04:33 1    or STAT3 gamma or STAT3 delta.  And I wonder if what was

13:04:37 2    going on, it's not well explained I don't think, is like you

13:04:39 3    were saying, hey, STAT3, that's a target molecule.  But

13:04:44 4    look, STAT3 has a bunch of -- there's a bunch of -- there

13:04:49 5    are a bunch of STAT3 molecules that qualify as STAT3 alpha,

13:04:56 6    beta, and you don't necessarily know if you're seeking alpha

13:05:00 7    or beta.  Is that what's happening here?

13:05:02 8            MR. RABINOWITZ:  Here's an illustration of the

13:05:03 9    general point and I'd like to show you some of the evidence.

13:05:07 10   I'd just like to show you, first, though, Slide 39.  And the

13:05:14 11   concession that counsel made a moment ago is critical.  That

13:05:20 12   their theory that the "known individual identity" is a

13:05:26 13   phrase that does not occur anywhere in the claims or the

13:05:29 14   specification, the way they get there is first they say that

13:05:35 15   the target must be an individual molecule.  And secondly,

13:05:38 16   they say in order to make a UBA against an individual

13:05:45 17   molecule it must have a known individual identity.  This is

13:05:46 18   the Court's claim construction order of UBA.  And they're

13:05:51 19   trying to recover the ground they lost and have a redo of

13:05:57 20   the issue that the Court has already decided in determining

13:06:00 21   a UBA is designed to bind to at least one target molecule,

13:06:05 22   not just one.  And in your order Your Honor identified

13:06:08 23   references, multiple references in the specification to a

13:06:11 24   single UBA binding to at least one target molecule.

13:06:14 25            In other words, it can be a target or a single

13:06:17  1    one or it can be a class.

13:06:19  2                And so if I can just show you by reference to

13:06:22  3    antibodies how this works --

13:06:24  4                THE COURT:  Again, I got to keep us to our time

13:06:28  5    so I'll let you make kind of one example.

13:06:30  6                MR. RABINOWITZ:  One more.  So Slide 44.  And I

13:06:33  7    apologize, in the printed version there's the reference is

13:06:37  8    incorrect.  It should be Exhibit 14.  It was 13 in the

13:06:46  9    printed slides.  It's the Sims reply report.  This is an

13:06:53 10    illustration on how this works.  This is an antibody and the

13:06:59 11    antibody is specific for a single epitope, a structural

13:07:03 12    shape which it recognizes.  And the one on the left, the

13:07:09 13    epitope has structure.  However, that epitope can occur on

13:07:12 14    multiple antigens, so the antibody is not specific for a

13:07:18 15    single target, it's specific for a class of targets.  And

13:07:23 16    the STAT3 is an example this.  Because the epitope occurs on

13:07:28 17    STAT3 alpha, STAT3 beta, et cetera, the antibody in question

13:07:34 18    is specific for a class, not for an individual molecule.

13:07:40 19    And the same is true of the ERK with the other example that

13:07:45 20    Dr. Sims provided.

13:07:46 21                THE COURT:  But I guess as part of what you're

13:07:49 22    saying, STAT3 alpha, that's a molecule.  STAT3 beta, that's

13:07:53 23    another molecule.

13:07:53 24                MR. RABINOWITZ:  That's another molecule.

13:07:55 25                THE COURT:  But the UBA in that scenario is not,

13:08:01  1    quote unquote, doesn't know the known individual identity of

13:08:06  2    the target molecule because it doesn't know that it's

13:08:09  3    necessarily looking for alpha or beta.

13:08:11  4           MR. RABINOWITZ:  It will bind to any member of

13:08:14  5    the class.

13:08:14  6           THE COURT:  And I think you're cutting it off at

13:08:18  7    the class and I just wonder if that's the problem, because I

13:08:24  8    think you're saying it doesn't have to know anything more

13:08:27  9    than the class.  Maybe that's not --

13:08:31 10           MR. RABINOWITZ:  The only thing you need to know

13:08:32 11    is that it will bind to the UBA.  That's all.

13:08:35 12           THE COURT:  And so where they say you need to

13:08:39 13    know that it could bind to the UBA at greater than a class

13:08:43 14    level --

13:08:44 15           MR. RABINOWITZ:  They would say you need to know

13:08:45 16    the individual identity, and that's because, I mean,

13:08:48 17    they've -- this is now the third different claim

13:08:52 18    construction they've proposed in order to try to create a

13:08:54 19    non-infringement position.  The way these things work in

13:08:57 20    practice is you have a UBA, which is a poly-T, it binds to a

13:09:02 21    poly-A sequence.  That sequence defines a class of

13:09:06 22    structures and the reason you're doing the experiment is

13:09:10 23    because you do not know which members of the class are being

13:09:13 24    expressed in any given cell.  And the purpose of the kit is

13:09:18 25    to determine which members of the class are present.  So the

13:09:21  1    only thing you know is, I'm going to detect things that bind

13:09:24  2    to a poly-T sequence.  You don't know anything about the

13:09:27  3    identity of the molecules you're looking for.

13:09:33  4              THE COURT:  Okay.  Thank you.

13:09:36  5              MR. RABINOWITZ:  Your Honor, one thing, if I

13:09:37  6    may.  When we pointed out the position they had taken on the

13:09:41  7    final invalidity contentions, in their responsive -- in

13:09:46  8    their answering brief, they didn't say it was an error.

13:09:49  9    I'll just point Your Honor to page 11, footnote 4 of their

13:09:55 10    answering brief.  That is the position they took.

13:09:57 11              THE COURT:  Okay.  Thank you.  All right.  Let

13:10:02 12    me hear from the other side, give them their five minutes of

13:10:07 13    rebuttal.

13:10:10 14              MR. PICKARD:  Just a few points, Your Honor.

13:10:13 15    Mr. Rabinowitz ended with the discussion of how this works

13:10:16 16    in practice and then we talk about poly-T primers and target

13:10:21 17    molecule.  None of that is in the 2012 asserted patents.

13:10:25 18    There's no poly-T primers.  What he's talking about are the

13:10:29 19    accused products.  And I submit that's not the appropriate

13:10:31 20    way to go about claim construction.  We do see an example of

13:10:36 21    the poly-T in the later 2014 Nolan application, extends 2012

13:10:41 22    and there it talks about that as an unspecified binding

13:10:45 23    agent.

13:10:46 24              THE COURT:  Could you talk about the patent's

13:10:52 25    reference to the STAT3 and the point that their expert is

13:10:58 1    making about it?  I think in their briefing they gave a

13:11:04 2    couple of examples supported by their expert's testimony.  I

13:11:10 3    think it essentially was circumstances in which they were

13:11:13 4    saying this is a -- this is a description of something that

13:11:18 5    would match what Claim 1 is talking about and that's a

13:11:21 6    description of a circumstance in which you don't know the

13:11:26 7    known individual identity and the way the other side means

13:11:31 8    it for the target molecule that you're using to connect to.

13:11:34 9    And they said, one of these is actually referenced in the

13:11:38 10   patent, STAT3, in column 36, but there's a couple other

13:11:41 11   examples that their expert gives too.  And so when I read

13:11:44 12   that and I go, okay, if that's correct, then suddenly the

13:11:51 13   defendants would be wrong.  Can you just engage with those

13:11:53 14   examples and why aren't they persuasive?

13:11:57 15            MR. PICKARD:  So in the example of the STAT3,

13:12:01 16   what we have there is an individual molecule, STAT3, that it

13:12:02 17   exists in several isoforms, so it's nothing like class such

13:12:06 18   as messenger RNA, which gives us --

13:12:10 19            THE COURT:  When you say isoforms, there's

13:12:13 20   several isoforms like STAT3 alpha, STAT3 beta?  Or is that

13:12:17 21   something different?

13:12:18 22            MR. PICKARD:  Exactly that.

13:12:19 23            THE COURT:  But I think they say look, each of

13:12:21 24   those is a molecule, a separate molecule, and you don't know

13:12:24 25   the entirety of that molecule when your UBA is going out and

13:12:27  1    looking.  So since each of those separate STAT3 examples are

13:12:31  2    each molecules, you wouldn't know the individual identity of

13:12:36  3    the target molecule with regard to an example that otherwise

13:12:38  4    reads on the claims.  I think that's what gist of what

13:12:44  5    they're trying to do with that example.  Why is that wrong?

13:12:47  6             MR. PICKARD:  I think it's wrong because you got

13:12:50  7    to those with the context of the invention.  We're dealing

13:12:52  8    with biological systems and so total precision is not

13:12:56  9    needed.  And an example of STAT3 is arguably single molecule

13:13:02 10    in several isoforms.  That's just fundamentally different

13:13:06 11    than the broad category.

13:13:08 12             THE COURT:  Is it different in your mind -- I

13:13:10 13    don't know, but maybe they were saying the STAT3 is the

13:13:14 14    class, but the specific molecule could be STAT3 alpha, STAT3

13:13:19 15    beta, and so the patent is telling you, hey, just knowing

13:13:22 16    the class is fine, that means that's a target molecule, all

13:13:26 17    those are target molecules.

13:13:27 18             MR. PICKARD:  Well, the patent doesn't talk

13:13:29 19    about STAT3 in that language.  I don't think it talks about

13:13:33 20    the isoforms at all.  So I don't --

13:13:36 21             THE COURT:  You're going too far.

13:13:41 22             MR. PICKARD:  These are just extremely minor

13:13:43 23    differences between STAT3 molecules.

13:13:47 24             THE COURT:  Okay.

13:13:48 25             MR. PICKARD:  Very different than the broad

13:13:51  1    class of the messenger RNA which has a diversity of

13:13:54  2    sequences that's in tens, hundreds of thousands, I think.

13:13:58  3            THE COURT:  Anything further, Mr. Pickard before

13:13:59  4    we conclude.

13:14:01  5            MR. PICKARD:  No.  Just one final point on Dr.

13:14:04  6    Sims' infringement theories.  The paragraphs 290 and 291,

13:14:07  7    you will not find those I believe in their statement of

13:14:12  8    material facts.  Their summary judgement was the one where

13:14:12  9    the 10 wells are the set.  I just want to be clear on that.

13:14:19 10            THE COURT:  So the --

13:14:21 11            MR. PICKARD:  I'm sorry.  Mr. Rabinowitz pointed

13:14:23 12    to certain paragraphs.  It was 290 and 291 from Dr. Sims'.

13:14:27 13    And I just wanted to point out that their theory in their

13:14:30 14    MSJ is not that, it's the 10 well theory as I've illustrated

13:14:34 15    for Your Honor.

13:14:34 16            THE COURT:  But I guess the reason why I was

13:14:38 17    asking about that is in a world where they prevail, I'm not

13:14:44 18    saying they will, as to this patent on the couple battles

13:14:50 19    we're having on the brief.  So think of a world where I

13:14:54 20    determine that the preamble is not limiting, so as it

13:14:57 21    relates to patent, the target molecule issue I need not even

13:15:01 22    decide.  I think about a world where I go their way and not

13:15:07 23    your way on the "at least 10" issue.  I think from the

13:15:11 24    briefing the way it's teed up is, I will grant summary

13:15:13 25    judgement to the plaintiff.  And whatever it is you're

13:15:17  1    saying about, you know, 290 and 291 and their statement of

13:15:21  2    facts, et cetera, are you saying, Judge, I'm telling you

13:15:25  3    that's not correct?  Are you saying I have some other

13:15:30  4    non-infringement argument?

13:15:31  5                    MR. PICKARD:  No, no, Your Honor.  I just

13:15:33  6    wanted -- so statements were made and I just wanted to

13:15:38  7    clarify the state of the record.  I think you have the

13:15:40  8    dynamics.

13:15:43  9                    THE COURT:  Okay.  Thank you, Mr. Pickard.

13:15:44 10    Little later than I thought, but I appreciate everone's

13:15:48 11    patience.  Let's take a break.  It's 1:15.  Let's come back

13:15:52 12    at 1:25 to finish out the last motion.  And we'll go from

13:15:57 13    there.

13:15:57 14                    All right.  The Court will stand in a brief

13:16:00 15    recess.  Thank you.

13:16:05 16                    COURT CLERK:  All rise.

13:16:07 17                    (A brief recess was taken.)

13:27:47 18                    COURT CLERK:  All rise.

13:27:50 19                    THE COURT:  Please be seated, everybody.

13:27:52 20                    Okay.  Ate yogurt real quick in the ten minutes.

13:27:59 21    That's lunch.  Judge Robinson, we'd have like 25 minutes for

13:28:05 22    lunch in trial, just remember her being upstairs eating a

13:28:08 23    banana while probably trying to edit cross to get back in

13:28:13 24    trial.  Tough road here for the lawyers and our staff too.

13:28:17 25    We really appreciate all of you.

13:28:21  1          All right.  Let's do motion two.  And as I said,

13:28:24  2     I want to particularly focus on MSJ #1 as to the '752 and

13:28:31  3     the issue relating to *Entresto*.  I want to make sure I get

13:28:35  4     all my questions answered as to that.  That may eat up

13:28:42  5     almost all the time and if we have any extra time we might

13:28:45  6     get to the other issue, but we'll start there.

13:28:48  7          MR. PICKARD:  All right.  You can put up

13:28:51  8     Slide -- just handed up Slide 3, Your Honor.  Getting the

13:29:01  9     presentation lined up, sorry.

13:29:02 10          THE COURT:  Sure.

13:29:09 11          MR. PICKARD:  I'm prepared to talk about all

13:29:12 12     three patents, but obviously focus on '752, and I'll take

13:29:17 13     Your Honor's lead if you want to talk about the others.

13:29:18 14          I'm sure Your Honor has by now figured out that,

13:29:21 15     hopefully as we have, that I think the issue on the

13:29:24 16     enablement and the written description of the '752 has

13:29:28 17     reduced to a purely legal line.  Scale does not challenge

13:29:34 18     for the showing we've made on an evidentiary basis.  Their

13:29:38 19     position, as best I can tell, is that for legal reasons that

13:29:42 20     they simply do not need to describe or enable UBAs in the

13:29:47 21     asserted claims of the '752.  So --

13:29:54 22          THE COURT:  Okay.  Go ahead.

13:29:56 23          MR. PICKARD:  Thank you.

13:29:57 24          And if we could turn, Brady, to Slide 6.

13:30:03 25          I think their argument perhaps reduces to this

13:30:07  1    position in their answering brief, this idea that UBAs are

13:30:11  2    not embodiments of the APS oligonucleotides.  I think their

13:30:18  3    banner headline is they only need to describe and enable

13:30:21  4    what's claimed, which case law certainly says that, but what

13:30:24  5    that means is a slippery issue, I think, in some instances.

13:30:29  6              If you look at --

13:30:30  7              THE COURT:  Right.  That they do not -- I think

13:30:33  8    you think may be the case, that the whole question is

13:30:41  9    whether the patent has to enable UBAs.  And probably the

13:30:47 10    full scope of like all UBAs.

13:30:50 11              MR. PICKARD:  Correct.  I think that is the

13:30:52 12    issue.  They say they don't have to.  We think they do.

13:30:55 13              THE COURT:  Okay.

13:30:56 14              MR. PICKARD:  And I think we're agreed that the

13:30:59 15    claims cover UBAs, but their point is that Claim 1 doesn't

13:31:02 16    recite that.  And I'm not quite what they mean by that, but

13:31:06 17    I think this top quote from their answering brief gives us a

13:31:09 18    clue and I think the position is that UBAs are not an

13:31:12 19    embodiment of the APS oligonucleotides of the asserted

13:31:17 20    claims of the '752 Patent.

13:31:20 21              Go to the next Slide.

13:31:21 22              THE COURT:  I have it circled, UBAs are not

13:31:25 23    embodiments of APSs.

13:31:25 24              MR. PICKARD:  We don't think that's right.  And

13:31:27 25    I think we can answer that question simply by looking at the

13:31:30 1    patent.  Your Honor is familiar with the case law.

13:31:32 2    Obviously the more you claim the more you've got to describe

13:31:36 3    and enable.  Continue on.

13:31:38 4              This is a quote from McRO, as we cited in our

13:31:43 5    brief.  And one of the cases in their brief cites this case

13:31:46 6    favorably.  I think the important language is that "such

13:31:49 7    analysis has routinely involved concrete identification of

13:31:52 8    at least some embodiment or embodiments asserted not to be

13:31:58 9    enabled."  So I think there's some common ground here.  We

13:31:59 10   both agree that if UBAs are an embodiment of the APS

13:32:02 11   oligonucleotides of the '752 patents claims then they need

13:32:06 12   to be enabled and described.

13:32:07 13             THE COURT:  And particularly, we're talking

13:32:10 14   about Claim 1 here, because it is one of the asserted claims

13:32:15 15   and the other asserted claims are all dependent.

13:32:18 16             MR. PICKARD:  That's right.

13:32:19 17             THE COURT:  Claim 5 is not an asserted claim.

13:32:23 18             MR. PICKARD:  Right.

13:32:24 19             THE COURT:  But it is dependent on Claim 1.

13:32:27 20             MR. PICKARD:  That's right.  And that's where we

13:32:29 21   see the assertion.  I think what's important to draw from

13:32:36 22   what's shown here is that Claim 1 recites the APS

13:32:40 23   oligonucleotides we've talked a lot about.  And then Claim

13:32:43 24   5, it doesn't just add UBAs as another feature of the kits.

13:32:47 25   What Claim 5 does is it narrows the claimed APSs of the

13:32:54 1    independent claim to also include or to comprise the UBAs.

13:32:59 2                THE COURT:  To "only," not to "also."  Not to

13:33:01 3    "also" include, but to "only" include UBAs.

13:33:07 4                MR. PICKARD:  Correct.  And so to my mind this

13:33:10 5    is very clear showing that UBAs are an embodiment of APSs

13:33:16 6    because they are explained as such.  And I think if Your

13:33:21 7    Honor looks at the patent specs, you'll see many examples

13:33:23 8    where --

13:33:23 9                THE COURT:  Put differently.  So in Claim 1 we

13:33:27 10   have the phrase "APS oligonucleotides."  What is the scope

13:33:31 11   of that claim term?  What does it include?  In terms of what

13:33:36 12   is claimed, what is claimed there by the use of that phrase,

13:33:39 13   you say, it must include -- it's not limited to, but

13:33:46 14   includes unique binding agents, presumably all of them.

13:33:51 15               MR. PICKARD:  Yes.

13:33:51 16               THE COURT:  And so you're saying the scope of

13:33:56 17   Claim 1 includes unique binding agents.

13:34:02 18               MR. PICKARD:  Yes.

13:34:02 19               THE COURT:  And Amgen tells us we got to enable

13:34:05 20   the full scope of the claim.

13:34:06 21               MR. PICKARD:  That's precisely our position.  As

13:34:09 22   I understand Scale's position, well, we don't really have to

13:34:12 23   do that for Claim 1.  Might have to do it for Claim 5, but

         24   we don't have to do it for Claim 1 because it's not -- I

13:34:17 25   think what they're saying is it's not expressly recited

13:34:18  1    there, even though --

13:34:19  2                THE COURT:  I'll ask them in a second.

13:34:22  3                MR. PICKARD:  Yeah.

13:34:22  4                THE COURT:  You think what they're saying is

13:34:24  5    well -- do you think they dispute that Claim 1's term "APS

13:34:30  6    oligonucleotides" includes unique binding agents?

13:34:34  7                MR. PICKARD:  I don't think they do.  I've not

13:34:36  8    seen that in their brief.

13:34:38  9                THE COURT:  So the argument must be that because

13:34:40 10    the words "unique binding agents" aren't literally found in

13:34:44 11    Claim 1 they don't have to be enabled?

13:34:47 12                MR. PICKARD:  I get that flavor from their

13:34:49 13    briefing.  That's why I go back to that earlier slide.  I

13:34:53 14    think they're also saying it's not expressly recited and

13:34:54 15    that's maybe again a --

13:34:56 16                THE COURT:  What does that mean, "expressly

13:34:57 17    recited," do you think?

13:35:00 18                MR. PICKARD:  I think what they mean is that

13:35:02 19    unless it says "UBA" in the claim, they don't have to enable

13:35:06 20    it.

13:35:06 21                THE COURT:  That the word "UBA" is literally in

13:35:08 22    the text of the claim.

13:35:10 23                MR. PICKARD:  Right.  And our position is, well,

13:35:11 24    that's wrong.  The law says full scope.  Got that.  But more

13:35:15 25    importantly some of the other case we cite and the McRO

13:35:19  1    case, as you showed Your Honor, we point to an embodiment

13:35:22  2    that's enabled.  That is enough.  And I think Claim 5 shows

13:35:26  3    quite clearly that UBAs are an embodiment of the claimed

13:35:29  4    APSs of Claim 1.

13:35:30  5            THE COURT:  And there's no factual dispute that

13:35:33  6    UBAs are not fully enabled, correct, or sufficiently

13:35:38  7    described in the patent to fully enable all UBAs?

13:35:43  8            MR. PICKARD:  Right.  Describe or enable, but --

13:35:47  9            THE COURT:  But we know that they are relying,

13:35:50 10    in significant part, on the Federal Circuit's decision in

13:35:54 11    Entresto.

13:35:57 12            MR. PICKARD:  Yes.

13:35:57 13            THE COURT:  And I think it is worth walking

13:35:59 14    through it, because the case is important, obviously, to

13:36:01 15    this motion.  And I'm not totally -- maybe if you are, it

13:36:06 16    will help me -- but exactly what the decision is doing

13:36:10 17    there.  Here's the thing I'm unsure about.  Tell me if you

13:36:15 18    are unsure too or not.  I think to me it seemed like the

13:36:18 19    district judge, I think it was Judge Andrews here.

13:36:21 20            MR. PICKARD:  It was, yes.

13:36:22 21            THE COURT:  I think he was finding -- he was

13:36:24 22    concluding that the scope of the claim term included

13:36:28 23    complexes.  Like that, I thought that I understood maybe

13:36:32 24    that he was saying there's -- I forget what the claim term

13:36:36 25    itself was, but could you do it in combination?  Yeah.

13:36:40  1    Could it be a complex?  Yeah.  You could say it's not

       2    excluded in either one of those options, so they're both

13:36:46  3    included, but I do think that the Federal Circuit decision

13:36:49  4    here says no.  Do you know what I'm saying?

13:36:53  5              MR. PICKARD:  There is a hint of not something

13:36:56  6    stronger in the decision that there's something wrong with

13:36:59  7    the claim construction.  And the criticism seems to me to be

13:37:05  8    the fact that the appellant stipulated to infringement and

13:37:09  9    apparently didn't challenge the construction in the appeal

13:37:13 10    on that.  You can see that --

13:37:14 11              THE COURT:  And I know a key fact for the

13:37:17 12    appellate court was that, I guess this complex option, it

13:37:23 13    literally didn't exist until years after the patent was

13:37:26 14    issued, and so, like, how could it be claimed.

13:37:30 15              MR. PICKARD:  Right.

13:37:31 16              THE COURT:  But I -- although, I mean, isn't it

13:37:34 17    the case that you can literally claim if you use the right

13:37:38 18    language stuff.  Not enable it, but you can literally claim

13:37:42 19    things.  The words can include something that may not yet

13:37:45 20    have been done, right?

13:37:47 21              MR. PICKARD:  Yeah, I think your patent -- later

13:37:49 22    arising technology can infringe earlier issued patents.

13:37:53 23    Color TV could infringe certain black and white TV patents,

13:37:58 24    for example.  But I think what the decision fundamentally

13:38:03 25    stands for is when -- and I'm looking now, trying to get the

13:38:06  1    pin cite.  I think it's at 1098.  And it begins, there's a

13:38:12  2    header 4 on my copy.  "The fact that the '659 does not

13:38:18  3    describe complex..."  Your Honor's with me?

          4              THE COURT:  Yeah, I'm with you.

13:38:19  5              MR. PICKARD:  And then it goes on to say -- they

13:38:21  6    say that doesn't matter for the validity.  And the reason

13:38:25  7    that that panel gave was that complex is not claimed.

13:38:30  8              THE COURT:  It's not claimed.

13:38:32  9              MR. PICKARD:  Not claimed.  And I find that a

13:38:34 10    bit frustrating because they don't really explain what that

13:38:37 11    means except in one way and that's in the parenthetical not

13:38:42 12    discovered until four years after the priority date.  So

13:38:45 13    what I read this decision to be, look, you've got to

13:38:48 14    describe and enable the full scope and all the embodiments,

13:38:51 15    but you don't have to describe things that simply weren't

13:38:55 16    known about at the time of the invention.  That would be

13:38:57 17    unfair.  And we say --

13:38:58 18              THE COURT:  But do you think it's saying that --

13:39:01 19    like, it could be saying that the claim term at issue, I'm

13:39:09 20    not sure what the -- if the claim term at issue was -- I

13:39:16 21    don't know --

13:39:16 22              MR. PICKARD:  I think it was a combination.

13:39:21 23              THE COURT:  Okay.  A combination or --

13:39:22 24              MR. PICKARD:  An accused product and a complex.

13:39:24 25              THE COURT:  And okay, yeah, maybe it was a

13:39:27  1    composition, dot, dot, dot, administered in combination.

13:39:29  2    But the Court could be saying, look, that claim language, it

13:39:34  3    does not claim, it does not include a complex.  You know,

13:39:39  4    we're talking about pharmaceuticals here, right?

13:39:43  5             MR. PICKARD:  Yeah.  I think the decision is not

13:39:45  6    so clear on that point.  There's a hint on the --

13:39:50  7             THE COURT:  But it says that complex is not what

13:39:53  8    is claimed.

13:39:53  9             MR. PICKARD:  Yes.

13:39:54 10             THE COURT:  So it must be saying it's not

13:39:56 11    claimed, it's not found within the bounds of the claim

13:39:59 12    language in Claim 1.

13:40:01 13             MR. PICKARD:  Right.  And the reason they give

13:40:03 14    is it was later arising technology.  And I don't know the

13:40:06 15    answer, from Entresto itself whether, if the appellant had

13:40:11 16    made some different litigation decisions if they could have

13:40:14 17    gotten out from under their stipulation of infringement on

13:40:17 18    the claim construction issue, because in light of that stip,

13:40:20 19    stipulation and the fact that the '659 does not claim the

13:40:23 20    complex, any further issue regarding such complexes is not

13:40:26 21    before it.  So there's this --

13:40:28 22             THE COURT:  But then there's a footnote, I

13:40:30 23    think, right?

13:40:33 24             MR. PICKARD:  Footnote 5, I believe.

13:40:34 25             THE COURT:  Right.  So where it says -- so so

13:40:37  1  far, like, of course it could be good evidence that a

13:40:40  2  complex is not claimed if it was in the record that this

13:40:45  3  type of complex was not discovered until years after the

13:40:48  4  patent issued because you're trying to figure out what the

13:40:51  5  words in the patent mean presumably at the time it was

13:40:56  6  drafted.  And then the footnote 5 says, "To the extent MSN

13:40:59  7  maintains that the claims were construed to claim

13:41:02  8  complexes" -- and I'm going to butcher the words --

13:41:12  9  "valsartan-sacubitril" --

13:41:12  10        MR. PICKARD:  Just call it sacubitril complexes.

13:41:14  11        THE COURT:  Complexes.  So maybe there was a

13:41:17  12  question in the Court's mind about whether the construction

13:41:22  13  included complexes.

13:41:24  14        MR. PICKARD:  Seems to be that.  I read that

13:41:26  15  little bit in the opinion to kind of be a glancing blow at

13:41:29  16  why didn't you guys challenge the construction.

13:41:31  17        THE COURT:  And then the Court was saying if

13:41:33  18  that's happening, then that construction is error and I'm

13:41:36  19  telling you that these claims don't cover complexes, don't

13:41:39  20  cover meaning, it's not within the claim scope.

13:41:42  21        MR. PICKARD:  That's one way to read it, yeah.

13:41:44  22  I think the most helpful language is at the end of that

13:41:48  23  footnote because the complexes were undisputedly unknown at

13:41:53  24  the time of the invention.  The '659 Patent could not have

13:41:56  25  been construed as claiming those complexes as a matter of

13:41:59  1    law.  What that would have meant for infringement, I don't

13:42:02  2    know.  Entresto doesn't quite go there, but it's clear from

13:42:06  3    Entresto later arising you don't have to describe

13:42:09  4    enablement.

13:42:10  5            THE COURT:  But for our purposes we're just

13:42:12  6    trying to figure out what lessons we have to glean from this

13:42:15  7    opinion in terms of enablement law, and what do you have to

13:42:19  8    enable, right?

13:42:20  9            MR. PICKARD:  Right.

13:42:21 10            THE COURT:  Because that's the context that's

13:42:23 11    come up as part of the dispute.

13:42:25 12            MR. PICKARD:  We read this simply as this is a

13:42:27 13    carve out of things you need to describe and enable where

13:42:30 14    the embodiment is a later arising technology which we don't

13:42:34 15    have here.  The UBAs are plainly disclosed in the patent

13:42:40 16    and --

13:42:41 17            THE COURT:  I understand that factual

13:42:42 18    difference.  The factual difference is that UBAs were known

13:42:45 19    at the time, they were discussed and obviously claimed in an

13:42:48 20    independent claim.  Whereas the complexes at issue, the UBA

13:42:51 21    and the complex are apples to apples in terms of like our

13:42:55 22    thing that it doesn't necessarily have to be enabled, right?

13:42:59 23    And there's a factual difference here, which is that UBA is

13:43:04 24    undisputedly known and claimed.

13:43:05 25            MR. PICKARD:  Yes, exactly.

13:43:06  1          THE COURT:  But, you know, but the other side,

13:43:09  2    they make hay of the language of the opinion, so I was -- I

13:43:12  3    want to make sure I understand what you think it means and

13:43:15  4    I'll ask them the same thing.  That paragraph, and this is

13:43:18  5    the sentence they talk about a lot by stating that the

13:43:22  6    claims were construed to cover complexes of Valsartan and

13:43:28  7    Sacubitril.  The District Court erroneously conflated the

13:43:32  8    distinct issues of patentability and infringement which led

13:43:35  9    it astray in evaluating written description.  What do you --

13:43:42 10    like I guess maybe to use, that phrase, I think I understood

13:43:46 11    the Court as saying I construed the claims to cover

13:43:49 12    complexes, meaning that the words in the claims, they

13:43:52 13    include complexes.  It's not -- it's part of the claim

13:43:55 14    scope.  Seems like the Court's here you're saying was saying

13:43:59 15    something different.

13:44:01 16          MR. PICKARD:  I did not have a chance to go back

13:44:03 17    and look at Judge Andrews' construction and opinion.  The

13:44:06 18    best I can do with that is it seems to me that what the

13:44:10 19    panel is saying, it would not have been error for the judge

13:44:15 20    to say the patents cover combinations.  And as a factual

13:44:19 21    matter, complexes are a type of combination, if the

13:44:23 22    infringement case were to proceed.  But it would have been

13:44:25 23    error to look at the accused product and say, oh, it's a

13:44:28 24    complex, claims start with complexes.  That's what I think

13:44:31 25    they're getting at.

13:44:33  1          THE COURT:  In other words, put differently,

13:44:33  2  tell me if this is right.  What you're saying is the Court

13:44:38  3  seems to be saying that the District Court conflated the

13:44:41  4  infringement inquiry, which is do the claims cover your

13:44:45  5  accused product.

13:44:45  6          MR. PICKARD:  That's what I think they're saying

13:44:47  7  there.

13:44:48  8          THE COURT:  Because the thing that would be

13:44:49  9  wrong to do, you could have a claim that only covers X and

13:44:52 10  you could have an accused product that has a bunch of things

13:44:56 11  in it.  As long as it's got X, you make a kit, for example,

13:44:59 12  that has X, right.  You have an accused with a kit, it's got

13:45:03 13  X, but it's got three other things.

         14          MR. PICKARD:  Right.

13:45:05 15          THE COURT:  It would be -- it would be wrong to

13:45:10 16  look at some other aspect of the product.

13:45:16 17          MR. PICKARD:  Yeah.  The way I think about it is

13:45:18 18  imagine a new navigation system you put in a car and you

13:45:22 19  describe the enablement of the navigation system, but you

13:45:25 20  don't talk about how to build and sell cars.  Even though

13:45:30 21  your claims cover cars with navigation systems, that's not

13:45:33 22  what the enablement description analysis is.

13:45:36 23          THE COURT:  I think what I'm asking is,

13:45:38 24  everybody would agree it would be wrong to somehow suggest

13:45:40 25  you have to enable an aspect of the accused product that is

13:45:43 1    not within the scope of the claims?

13:45:46 2                MR. PICKARD:  Correct.

13:45:46 3                THE COURT:  Right.  If it was like if you had a

13:45:49 4    product and the product had A, B, and C.  The claims just

13:45:53 5    list a claim to A.  Well, the accused product can infringe.

13:45:56 6    If you were doing a -- if you were doing an appropriate

13:45:59 7    enablement inquiry, you just got to fully disclose the scope

13:46:03 8    of A.  And if somehow a court was like wrongly looking at

13:46:06 9    like B or C, one of the aspects of the accused product,

13:46:10 10   doesn't have anything to do with what is claimed and somehow

13:46:13 11   asking is that enabled, like conflating, you know --

         12                MR. PICKARD:  I think that's right, Your Honor.

13:46:16 13               THE COURT:  Is that what maybe they're saying?

13:46:18 14               MR. PICKARD:  That's the best I can tell.  But I

13:46:20 15   do go back to this embodiment point where I think we have

13:46:23 16   some common ground and it's that the UBAs are embodiments

13:46:26 17   of -- well, we have common ground on law, I should say, not

13:46:30 18   on the question of whether they are embodiments.

13:46:32 19               THE COURT:  Both sides I think agree you have to

13:46:33 20   enable the full scope of the claim.

13:46:35 21               MR. PICKARD:  And we agree on that language.

13:46:37 22   They seem to think it's important whether or not UBAs are

13:46:41 23   embodiments.  The Fed Circuit law in the McRO case, for

13:46:43 24   example, says the typical way to show lack of enablement is

13:46:45 25   to point to an embodiment and show it's lacking.

13:46:51  1          THE COURT:  Here's an embodiment of the claim

13:46:55  2     term and yet it is not enabled?

13:46:58  3          MR. PICKARD:  Correct.  So that's precisely what

13:47:01  4     is the UBA is here.  It is an embodiment of the claimed APS

13:47:05  5     of the independent claims and therefore must be described

13:47:07  6     and enabled.

13:47:07  7          THE COURT:  And what we're not having a dispute

13:47:09  8     about is, sure, UBAs have to be enabled, but look at all the

13:47:15  9     language in the patent that enables the full scope of it.

13:47:19 10          MR. PICKARD:  Right.  They have not engaged on

13:47:21 11     that point.  They made a strategic decision to only fight on

13:47:24 12     this legal point.  Threshold issue is is there even an

13:47:28 13     requirement to enable and describe the UBAs in connection

13:47:34 14     with Claim 1.  I don't think Entresto gets them out of it

13:47:37 15     because I think Entresto really just stands for a narrow

13:47:40 16     application of that, of the principle that you got to

13:47:43 17     describe in the claim, because later arising technology is

13:47:45 18     not in the category of what's needed to describe it.

13:47:47 19          THE COURT:  So you think Entresto stands for the

13:47:49 20     proposition that later arising technology is not in the

13:47:52 21     category of things that you have to enable.

13:47:54 22          MR. PICKARD:  Correct.

13:47:55 23          THE COURT:  But couldn't Entresto just be saying

13:48:01 24     or stand for the proposition that an aspect, a thing that is

13:48:10 25     not within the scope of the claimed type of technology, any

13:48:16   1    kind of thing, it's not within the scope of what is claimed

13:48:20   2    is not something you have to enable.

13:48:23   3              MR. PICKARD:  I think there's language that

13:48:24   4    would support that reading.  And they don't have either one

13:48:28   5    of those.  Of course UBAs are not later arising and they are

13:48:31   6    not outside the scope of the claim.  They haven't argued

13:48:34   7    they're outside the scope of the claim, just simply said

13:48:37   8    they're not recited, not claimed.

13:48:39   9              THE COURT:  Your point is, look -- well, look,

13:48:42  10    if it is true that complexes were claimed in this patent, in

13:48:46  11    Entresto, and if the Federal Circuit is acknowledging that

13:48:51  12    they were, then the decision would stand for the proposition

13:48:57  13    that even if they are literally claimed, if that thing is

13:49:00  14    literally claimed, if it's later arising technology, you

13:49:04  15    don't have to enable it?

13:49:06  16              MR. PICKARD:  Depends what you mean by literally

13:49:08  17    claimed.

13:49:08  18              THE COURT:  Or within the scope of the claim.

13:49:11  19              MR. PICKARD:  I don't know Entresto goes so far

13:49:13  20    to say if they had claimed complexes, quote unquote, I don't

13:49:17  21    know that Entresto would have saved the patentee here.  But

13:49:21  22    when you broadly claim combinations, it seems to be saying

13:49:24  23    complexes, which could be a type of combination, you don't

13:49:27  24    have to describe it because it didn't come for several years

13:49:31  25    later.

13:49:31  1          THE COURT:  I think this does have relevance to

13:49:33  2     this issue, because I think one of your key points is, look,

13:49:38  3     in your asserted claim, Claim 1, you're going to have some

13:49:41  4     words and you're going to have a claim term that's going to

13:49:45  5     be important.  Here that claim term is "APS

13:49:48  6     oligonucleotides."  Now, the literal words of that claim

13:49:51  7     term, they might not be the thing we care about here, which

13:49:56  8     is UBAs.

13:49:57  9          MR. PICKARD:  Right.

13:49:58 10          THE COURT:  But if the scope of that claim

13:50:01 11     term -- and how do we know what the scope is?  Well, we

13:50:04 12     construe it, right?  And sometimes, you know, the claim term

13:50:08 13     can be "APS oligonucleotides," but if it needs to be it

13:50:10 14     could be construed and the construction of what is the scope

13:50:12 15     of that term, if it's this, and in here is UBAs, then that's

13:50:20 16     in the scope of the claim.  The claim scope includes that,

13:50:23 17     right?

13:50:23 18          MR. PICKARD:  Yes.

13:50:24 19          THE COURT:  That's your point.

13:50:26 20          MR. PICKARD:  And I think *Amgen/Sanofi* kind of

13:50:29 21     helps us a little bit.  Like, a functional claim you have to

13:50:31 22     have this binding activity and -- claims didn't recite all

13:50:34 23     of the claimed antibodies, but that didn't save the patentee

13:50:37 24     in that case, right?  It was a problem.  Couldn't name them,

13:50:40 25     didn't describe them, didn't enable them.  Even though they

13:50:44 1    didn't recite this particular antibody --

13:50:45 2              THE COURT:  The claim term was broad enough to

13:50:48 3    include it.

13:50:48 4              MR. PICKARD:  Right.

13:50:48 5              THE COURT:  Okay.  All right.  Mr. Pickard,

13:50:53 6    probably wait to hear from the other side and when you come

13:50:55 7    back you have about 23 minutes left, so plenty of time.

13:51:00 8              MR. PICKARD:  That's essentially all I wanted to

13:51:02 9    say on the '752.  I think it's purely a legal issue.  I

13:51:04 10   think the law is squarely on our side.  I think that the UBA

13:51:07 11   is an embodiment, but the APS is what's claimed in Claim 5.

13:51:11 12   So --

13:51:11 13             THE COURT:  I'm going to have you stop there for

13:51:13 14   a second, because I may need to ask you some questions after

13:51:19 15   I hear from the plaintiff.  If there's time left, I'll let

13:51:21 16   you move on to the others.

13:51:24 17             MR. PICKARD:  Okay.  Thank you.

13:51:25 18             THE COURT:  Okay.  Let's hear from the

13:51:28 19   plaintiffs.  Mr. Rabinowitz.

13:51:42 20             MR. RABINOWITZ:  Thank you, Your Honor.  So the

13:51:44 21   two issues, I'd like to address them, and I'll address them

13:51:47 22   in whichever order the Court prefers.  One is what is

13:51:50 23   meaning is of *Entresto*, and the other is whether UBAs are an

13:51:57 24   embodiment of "APS oligonucleotides," which is an argument

13:52:01 25   which we heard for the first time today.  It's not made in

13:52:04  1    their brief.

13:52:05  2                    THE COURT:  Can I just ask, is this your slide

13:52:06  3    here?

13:52:07  4                    MR. RABINOWITZ:  Yes, Your Honor.

13:52:08  5                    THE COURT:  Just to be precise, the legal issue

13:52:10  6    in play, I have it as just enablement.  Looks like you've

13:52:14  7    got written description here.  Am I wrong about that?

13:52:18  8                    MR. RABINOWITZ:  I thought they challenged it

13:52:21  9    for lack of written description and enablement, Your Honor.

13:52:23 10                    THE COURT:  I just want to make sure I'm

13:52:25 11    addressing the right thing.  Let me let you continue.

13:52:31 12                    MR. RABINOWITZ:  Let's talk first about the

13:52:33 13    meaning of *Entresto*, because I think this comes out

13:52:37 14    essentially to a legal argument.  This is just to set the

13:52:43 15    stage.

13:52:44 16                    This is Claim 1 of the '752 Patent again, and it

13:52:51 17    defines the cases are reference to APS oligonucleotide and

13:52:55 18    linking oligonucleotides.  There's no mention of UBAs in

13:53:00 19    Claim 1 or any of the other asserted claims.  Claim 5, which

13:53:05 20    is not asserted in this action, is dependent from Claim 1,

13:53:09 21    and requires that at least one of the sets of APS

13:53:14 22    oligonucleotides comprise a binding agent.  And so Claim 5,

13:53:18 23    we agree, is within the scope of Claim 1.  And as we

13:53:22 24    understood the argument that Parse was making, they said,

13:53:26 25    well, if Claim 1 includes within its scope "kits that

13:53:31  1    comprise a UBA," then in order to describe and enable Claim

13:53:38  2    1, the specification must describe and enable UBAs.  And

13:53:43  3    under *Entresto* that is wrong as a matter **of** law.

13:53:47  4          THE COURT:  Could we just go back?  I just want

13:53:49  5    to make sure we're on the same page about a couple of the

13:53:52  6    starting points.  I think you agree that whatever the full

13:53:57  7    scope of Claim 1 is, that full scope must be enabled.  Is

13:54:02  8    that right?

13:54:02  9          MR. RABINOWITZ:  Well, the invention claimed in

13:54:05 10    Claim 1 must be enabled for its full scope, but the

13:54:09 11    specification does not have to enable or describe everything

13:54:12 12    that falls within the scope of Claim 1.  In other words,

13:54:16 13    everything that would infringe Claim 1.  That's the

13:54:19 14    distinction drawn in *Entresto*.

13:54:21 15          THE COURT:  Okay.  So it sounds like you're

13:54:23 16    making a distinction I'm not familiar with at least.  I'm,

13:54:29 17    saying, does the full scope of Claim 1 have to be enabled,

13:54:34 18    by which I mean, Claim 1, you know, that claim, which has

13:54:39 19    words in it, those words all have meaning, and once we

13:54:44 20    understand the meaning of those words, we know what the

13:54:47 21    scope of the claim is, we know what it includes.  The kit at

13:54:50 22    issue is required to have certain things, it's not required

13:54:53 23    to have other things.  And by saying the full scope of Claim

13:54:58 24    1, I mean what Claim 1 covers.  And what do you mean by

13:55:03 25    that?  I mean what is encompassed by the words in Claim 1.

13:55:08  1    Once I know what that is, my understanding of *Amgen* is the

13:55:13  2    full scope of that, the full scope of what is claimed, not

13:55:16  3    just the words on the page but what those words mean and

13:55:20  4    cover, that has to be enabled.  Do you disagree with that?

13:55:23  5            MR. RABINOWITZ:  I disagree with that, Your

13:55:24  6    Honor.  And let me just quote to you on that point from

13:55:28  7    *Entresto* itself.  The panel on the right.  It's stating that

          8    the claims were construed to cover complexes of these two

13:55:34  9    compounds.  "The District Court erroneously conflated the

13:55:38 10    distinct issues of patentability and infringement, which led

13:55:42 11    it astray in evaluating written description."

13:55:45 12            THE COURT:  So you think that sentence means

13:55:53 13    that the claim in *Entresto* literally covered, that is -- and

13:56:00 14    the claim, by the way, I think it's Claim 1, that it covered

13:56:08 15    complexes.  And by covered what do I mean?  I mean that if

13:56:13 16    you looked at all the words in Claim 1, you would find one

13:56:17 17    of them and you're not going to find the word complex,

13:56:19 18    because complex I don't think is in the claim, but there are

13:56:23 19    other words in Claim 1, maybe composition, maybe

13:56:26 20    combination.  If those words were construed to include

13:56:29 21    complexes, you think *Entresto* is saying they do include

13:56:33 22    complexes, they include it, but you don't have to enable it?

13:56:37 23            MR. RABINOWITZ:  Your Honor, *Entresto* is saying

13:56:39 24    that even though Claim 1 was construed to include within its

13:56:45 25    scope complexes, the Court made an error by requiring the

13:56:51  1    specification to describe complexes.  And if I could point

13:56:55  2    to you where *Entresto* discusses this claim construction

13:56:59  3    issue --

13:56:59  4                THE COURT:  But again, I just want to make sure

13:57:01  5    we have the terminology -- we're on the same page in the

13:57:04  6    terminology.  You said if the claim was construed to include

13:57:07  7    within its scope complexes.

13:57:09  8                MR. RABINOWITZ:  Yes.

13:57:10  9                THE COURT:  Do you think that the appellate

13:57:11 10    court believed that that was the case, that the claim had

13:57:15 11    been construed to include complexes?

13:57:16 12                MR. RABINOWITZ:  Yes.

13:57:16 13                THE COURT:  And it was saying that's okay?

13:57:18 14                MR. RABINOWITZ:  Yes.

13:57:19 15                THE COURT:  But even though it was construed to

13:57:21 16    include complexes, I'm going to tell you that you don't have

13:57:25 17    to enable complexes?

13:57:26 18                MR. RABINOWITZ:  Correct.

13:57:27 19                THE COURT:  That's what you think it means?

13:57:29 20                MR. RABINOWITZ:  Correct.  And I'll give you

13:57:30 21    just by analogy, Your Honor, if I invent the pencil and I

13:57:35 22    define it as a core of graphite with tips for writing, and a

13:57:41 23    covering of wood surrounding the graphite core except for

13:57:48 24    the writing tip, and I describe and enable that, that's

13:57:51 25    Claim 1, and I then say in Claim 2, wherein the cover

13:57:54  1    comprises an eraser, it is an additional feature and

13:58:00  2    undoubtedly a pencil having a cover that comprises an eraser

13:58:04  3    is within the scope of Claim 1, but in order to describe and

13:58:10  4    enable Claim 1, I do not have to describe and enable the

13:58:13  5    entire class of erasers.  It is an optional feature with

13:58:16  6    respect to the invention defined by the elements of Claim 1.

13:58:22  7            THE COURT:  Why would you not have to enable it,

13:58:26  8    because the word "eraser" is not in Claim 1?

13:58:29  9            MR. RABINOWITZ:  Because the feature of an

13:58:31 10    eraser is not part of the invention that is defined by Claim

13:58:35 11    1.  Every open claim, every comprising claim is open to the

13:58:42 12    inclusion of unrecited features, that would be feature or

13:58:46 13    feature that is known but are not required by the claim.  If

13:58:50 14    the claim was subject to invalidation because it didn't

13:58:53 15    describe and enable every feature that might optionally be

13:58:57 16    included within its scope, virtually no open claim would

13:59:01 17    survive on a written description challenge.

13:59:03 18            And what *Entresto* is saying is you need to focus

13:59:07 19    on how the claim defines the invention when you look at --

13:59:12 20    once you have the invention defined by the claims, that's

13:59:17 21    what must be described and enabled for its full scope.  But

13:59:20 22    it is an error to look at what the claim covers in order to

13:59:24 23    test written description and enablement.

13:59:25 24            THE COURT:  Instead you must look at what the

13:59:28 25    claim --

13:59:28  1                    MR. RABINOWITZ:  Claims.

13:59:29  2                    THE COURT:  By claims, you don't mean covers?

13:59:31  3                    MR. RABINOWITZ:  That's correct.

13:59:32  4                    THE COURT:  What do you mean by claims, then?

13:59:35  5                    MR. RABINOWITZ:  Well, let me just quote you

13:59:38  6       from *Entresto*.

13:59:38  7                    THE COURT:  Because this was never clear in your

13:59:40  8       briefing.  I think the other side said it was true.  Like,

13:59:44  9       what do they mean by claims?  If it's not within the full

13:59:47  10      scope of Claim 1 or covers --

13:59:50  11                   MR. RABINOWITZ:  So it says, "The patent does

13:59:52  12      not claim as its invention the valsartan-sacubitril

13:59:58  13      complexes."  "Once the claim does not expressly claim

14:00:04  14      complexes, we affirm that the District Court's determination

14:00:08  15      that MSN failed to show that the claims are invalid for lack

14:00:14  16      of enablement."

14:00:14  17                   THE COURT:  So go back.  Aren't all those

14:00:18  18      different ways of saying the patent doesn't claim complexes.

14:00:23  19      Literally, Claim 1, it does not include that, doesn't claim

14:00:27  20      it?

14:00:28  21                   MR. RABINOWITZ:  I need to take Your Honor to

14:00:30  22      page 1095 of *Entresto*.  I don't have this on a slide.

14:00:35  23                   THE COURT:  Okay.  I have the case.

14:00:36  24                   MR. RABINOWITZ:  So under the heading of "Claim

14:00:39  25      Construction," these are the two arguments that were

14:00:42  1    presented to the Court.  MSN argued that the term limited

14:00:47  2    the claim to administration of the active agents valsartan

14:00:50  3    and sacubitril as two separate components.

14:00:54  4              THE COURT:  So the defendant, accused

14:00:56  5    infringer --

14:00:57  6              MR. RABINOWITZ:  Right.

14:00:58  7              THE COURT:  -- wanted the claim to be limited to

14:01:00  8    utilizing these two drug products presumably as two separate

14:01:05  9    components?

14:01:06 10              MR. RABINOWITZ:  Right.  "Accordingly, the

14:01:08 11    claims were read to require that if valsartan and sacubitril

14:01:11 12    could be administered as separate components, i.e., in a

14:01:14 13    non-complex form, such as a physical mixture, then MSN's

14:01:19 14    generic product would not infringe."  That was the argument

14:01:21 15    made.  "For its part --"

14:01:23 16              THE COURT:  Because the generic product didn't

14:01:27 17    have them in separate components, instead it had them in

14:01:32 18    complex form?

14:01:33 19              MR. RABINOWITZ:  Correct.  "For its part,

14:01:33 20    Novartis argued that the claim was not so limited and the

14:01:34 21    term should be given its plain and ordinary meaning."

14:01:39 22              THE COURT:  Another way of saying, no, the claim

14:01:41 23    covers both use of them as separate components or in complex

14:01:45 24    form?

14:01:45 25              MR. RABINOWITZ:  Correct.  The District Court

14:01:46 1    agreed with Novartis and gave the term its plain and

14:01:51 2    ordinary meaning.

14:01:52 3          THE COURT:  So so far the District Court agreed

14:01:55 4    with Novartis, meaning that it agreed that the claim covered

14:01:58 5    a complex form?

14:01:59 6          MR. RABINOWITZ:  Correct.  And then on the right

14:02:03 7    column, it explained that "the absence of any indication in

14:02:07 8    the written description that the patentee limited its

14:02:09 9    invention solely to separate compounds means in context that

14:02:13 10   a person of ordinary skill in the art would not read the

14:02:15 11   claims as limited."  So the whole basis of this decision is

14:02:20 12   that this record construed the claims to whether they were a

14:02:26 13   complex or not.  So complexes were within the scope of the

14:02:32 14   claims and that is why.

14:02:33 15         THE COURT:  Is it not about something different

14:02:35 16   than combination?

14:02:37 17         MR. RABINOWITZ:  Yes.  A combination can be

14:02:39 18   separate or it can actually be in a physically complex form.

14:02:45 19         THE COURT:  Yes.

14:02:46 20         MR. RABINOWITZ:  Yes, Your Honor.

14:02:46 21         THE COURT:  Okay.

14:02:47 22         MR. RABINOWITZ:  And then the District Court

14:02:50 23   proceeded to consider whether that meant the claims were

14:02:53 24   invalid, because the specification did not describe

14:02:57 25   complexes, which now are within the scope of the claims.

14:03:01  1                THE COURT:  Okay.

14:03:02  2                MR. RABINOWITZ:  And the District Court noted

14:03:05  3    that they were an after-arising invention, and although the

14:03:10  4    District Court held that for enablement you do not need to

14:03:14  5    describe after-arising inventions, for written description

14:03:18  6    that was fatal to the claims.

14:03:21  7                THE COURT:  Okay.

14:03:22  8                MR. RABINOWITZ:  And therefore, the District

14:03:25  9    Court held that the claims were invalid for lack of written

14:03:28 10    description.

14:03:28 11                THE COURT:  So the claims cover complexes, but

14:03:34 12    the claims didn't sufficiently describe them or how one

14:03:40 13    could --

14:03:40 14                MR. RABINOWITZ:  Yes, Your Honor.  The District

14:03:42 15    Court said, because they weren't even known to the inventors

14:03:45 16    to exist, there was no way that the specification could have

14:03:48 17    described them.

14:03:48 18                THE COURT:  And so it rejected the claim on

14:03:51 19    written description grounds?

14:03:53 20                MR. RABINOWITZ:  Correct.

14:03:54 21                THE COURT:  Okay.

14:03:54 22                MR. RABINOWITZ:  So now having found that

14:03:57 23    later-arising inventions are available as evidence to

14:04:00 24    invalidate a claim for lack of written description.

14:04:06 25                THE COURT:  Hold on.  Oh, okay.  I want to make

14:04:10  1    sure I track the point where the opinion is describing what

14:04:13  2    the District Court did in making its determination.  You

14:04:17  3    just walked me through how it was described what the

14:04:20  4    District Court did with regard to claim construction, but --

14:04:24  5            MR. RABINOWITZ:  So if I can direct Your Honor

14:04:24  6    to page 1096 on the right, the dispute centered on whether

14:04:28  7    the '659 Patent was required to enable and describe such

14:04:32  8    complexes.  That was the issue.

14:04:34  9            THE COURT:  Does it have to enable and describe?

14:04:37 10    So enablement and written description are at issue.

14:04:39 11            MR. RABINOWITZ:  MSN argued that it was since a

14:04:41 12    patent must enable and describe the full scope of the

14:04:44 13    claims.  That's exactly the argument that Parse is making

14:04:47 14    now.

14:04:47 15            THE COURT:  Okay.  I got it.  I see where you

14:04:51 16    are.

14:04:51 17            MR. RABINOWITZ:  And Novartis disagreed arguing

14:04:57 18    that a complex of valsartan and sacubitril was an

14:05:00 19    after-arising invention that need not have been enabled or

14:05:04 20    described.  Then this is on page 1097, the end of the first

14:05:10 21    full paragraph.  The Court agreed with Novartis on the issue

14:05:12 22    of enablement, but with MSN on the issue of written

14:05:17 23    description.  And here's the timing issue.  With respect to

14:05:21 24    enablement, the Court determined that because enablement is

14:05:24 25    judged as of the priority date, later-existing state of the

14:05:27  1    art may not properly be considered in the enablement

14:05:31  2    analysis.  And then --

14:05:32  3               THE COURT:  So even the District Court had found

14:05:34  4    that claims cover complexes because it was undisputed that

14:05:39  5    the art didn't discover complexes until later?

14:05:42  6               MR. RABINOWITZ:  Correct.

14:05:43  7               THE COURT:  The Court couldn't hold it against

14:05:45  8    the patentee that they weren't mentioned in the patent.

14:05:48  9               MR. RABINOWITZ:  For enablement.  That was the

14:05:50 10    District Court's rationale.  It was not the Federal

14:05:53 11    Circuit's rationale, but that was the District Court's

14:05:56 12    rationale.

14:05:56 13               THE COURT:  Okay.

14:05:57 14               MR. RABINOWITZ:  And then in the next paragraph

14:05:58 15    the Court reached the opposite conclusion with respect to

14:06:00 16    written description.

14:06:02 17               THE COURT:  Got it.

14:06:05 18               MR. RABINOWITZ:  And then skipping a little,

14:06:06 19    because it was undisputed that complexes were unknown to a

14:06:09 20    person of ordinary skill in the art, Novartis scientists, by

14:06:12 21    definition, could not have possession of and disclosed the

14:06:17 22    subject matter of such complexes, so therefore the claims

14:06:21 23    were held invalid.

14:06:22 24               THE COURT:  So they didn't sufficiently describe

14:06:26 25    those complexes in the patent.  I don't know they knew about

14:06:27  1  them, but the fact that they hadn't discovered yet was not a

14:06:30  2  barrier to needing to sufficiently describe them.

14:06:32  3          MR. RABINOWITZ:  Correct.  And that is the

14:06:34  4  accurate statement of the law.  The Federal Circuit held in

14:06:39  5  the *Amgen/Sanofi* case that post-filing evidence may be use

14:06:42  6  to show written description.  In fact, the case was sent

14:06:44  7  back for a second jury trial because the Court had excluded

14:06:48  8  post-filing evidence.

14:06:49  9          THE COURT:  Okay.

14:06:50  10          MR. RABINOWITZ:  So it can't turn on the timing.

14:06:52  11          THE COURT:  Okay.

14:06:53  12          MR. RABINOWITZ:  So now we come to the Federal

14:06:56  13  Circuit's decision, and this is on 1097.  "The issue is not

14:07:00  14  whether the '659 Patent describes valsartan as sacubitril

14:07:06  15  complexes, because the '659 Patent does not claim

14:07:12  16  valsartan-sacubitril complexes, those complexes need not

14:07:13  17  have been described."

14:07:15  18          THE COURT:  We know the District Court found the

14:07:17  19  patent did claim.

14:07:18  20          MR. RABINOWITZ:  Yes.

14:07:19  21          THE COURT:  And the Federal Circuit disagreed --

14:07:21  22          MR. RABINOWITZ:  Disagreed.

14:07:22  23          THE COURT:  -- with the District Court's

14:07:23  24  decision that the complexes were within the scope of the

14:07:25  25  claim, Claim 1.

14:07:26  1          MR. RABINOWITZ:  No.  The Federal Circuit

14:07:29  2   disagreed with the District Court's focus on what was within

14:07:33  3   the scope of the claims for purposes of conducting the

14:07:38  4   written description required.

14:07:39  5          THE COURT:  This line says, "because the '659

14:07:40  6   Patent does not claim valsartan-sacubitril complexes, those

14:07:47  7   complexes need not have been described."  When I read that,

14:07:49  8   I say, okay, the Federal Circuit is saying that in Claim 1

14:07:52  9   it doesn't claim complexes, complexes are not within the

14:07:55 10   scope of that claim.  And so just as we would know about in

14:07:58 11   any kind of like, you know, say written description or

14:08:02 12   enablement inquiry, if something is not claimed, you don't

14:08:05 13   have to worry about describing or enabling, because it's not

14:08:08 14   in the claim.  Isn't that what they're saying?

14:08:10 15          MR. RABINOWITZ:  No, they're not, Your Honor.

14:08:11 16   They're saying the opposite.  The Federal Circuit is drawing

14:08:14 17   a distinction between what the patent claims and what the

14:08:17 18   patent covers.  And let me point this out to you.  There are

14:08:22 19   three --

14:08:22 20          THE COURT:  So I think what you're telling me,

14:08:25 21   if saying that "because the '659 Patent does not claim

14:08:29 22   complexes," the Federal Circuit is saying, are complexes

14:08:32 23   with in the scope of Claim 1?  Yes, but it doesn't claim

14:08:35 24   them, that means something different.

14:08:37 25          MR. RABINOWITZ:  Correct, this is the

14:08:38  1    pencil/eraser.

14:08:39  2              THE COURT:  And the something different means

14:08:42  3    the Federal Circuit is using the word "claims" to mean what?

14:08:45  4              MR. RABINOWITZ:  To mean the invention that is

14:08:47  5    defined by the claims.

14:08:48  6              THE COURT:  What does that mean?

14:08:50  7              MR. RABINOWITZ:  Well, here it says --

14:08:51  8              THE COURT:  Do you literally mean the word has

14:08:54  9    to be written in Claim 1?

14:08:55 10              MR. RABINOWITZ:  Not the words, but the elements

14:08:57 11    by which the invention is defined.  It says if the claim

14:09:01 12    says I need Element A, Element B, and Element C, then the

14:09:06 13    invention is defined by those three elements.  That's how

14:09:10 14    you test for novelty.  That's how you test for obviousness.

14:09:14 15              THE COURT:  But that sounds like you're saying

14:09:16 16    it's not A, B, C, meaning A, B, C are words in the claim.

14:09:25 17              MR. RABINOWITZ:  So if I have the independent

14:09:27 18    claim says my invention comprises A, B, and C, and the

14:09:32 19    dependent claim says my invention -- Claim 1, wherein the

14:09:37 20    invention further comprises D, to see whether I've described

14:09:42 21    and enabled Claim 1, I want to know whether the

14:09:47 22    specification describes and enables Elements A, and B, and C

14:09:51 23    for their full scope.

14:09:53 24              THE COURT:  Maybe use the actual claim in

14:09:55 25    *Entresto* as an example.  If we go back to Claim 1, again,

14:09:58  1    the Federal Circuit is saying, "because the '659 Patent does

14:10:01  2    not claim complexes," if we're just looking at the words of

14:10:06  3    that Claim 1, in terms of what you think the Federal Circuit

14:10:10  4    was saying, are you saying that the Federal Circuit was

14:10:15  5    saying look, Claim 1, there, are there some words in Claim 1

14:10:19  6    that will include the concept of complexes?  Yes.

14:10:24  7              MR. RABINOWITZ:  Well, the Federal Circuit was

14:10:25  8    saying the Claim 1 is directed to these two drugs in

14:10:29  9    combination.  That will cover -- as a matter of claim scope,

14:10:33 10    that will cover complexes.  That's the ruling the District

14:10:36 11    Court made.  But because it does not claim complexes as the

14:10:41 12    invention, only a combination as the invention, as long as

14:10:44 13    it describes and enables a combination of those two drugs,

14:10:47 14    it sufficiently meets the written description and enablement

14:10:50 15    requirements.

14:10:51 16              THE COURT:  So just to be more specific, if

14:10:53 17    we're looking at Claim 1 there, which is on page 1094,

14:10:56 18    there's the phrase "are administered in combination."

14:10:58 19    You're saying that it is the case, and the Federal Circuit

14:11:01 20    was agreeing it's the case, that "in combination" included

14:11:04 21    complexes within its scope.  But -- and how about if you did

14:11:10 22    it this way.  But, look, if the claim had actually been

14:11:13 23    written blank, then the Federal Circuit would have said you

14:11:16 24    have to enable complexes, what would it look like?  How

14:11:20 25    would it have been written where you would have had

14:11:23 1    enablement in the Federal Circuit's view?

14:11:25 2             MR. RABINOWITZ:  If the claim had said

14:11:30 3    "comprising wherein said first drug and second drug are

14:11:39 4    administered in a complex in about a 1:1 ratio."

14:11:44 5             THE COURT:  So sounds like what you're saying is

14:11:46 6    the word has to be written down.

14:11:48 7             MR. RABINOWITZ:  It doesn't need to be the

14:11:49 8    literal word, but that thing has to be required as a feature

14:11:52 9    of the claim.

14:11:54 10            THE COURT:  Whereas if a claim term includes the

14:11:57 11   thing within its meaning, but the claim term does not

14:12:01 12   literally use the words of that thing, you don't have to

14:12:06 13   enable it or describe it?

14:12:07 14            MR. RABINOWITZ:  Well, if the invention is

14:12:09 15   defined without reference to that feature.  So, Your Honor,

14:12:13 16   imagine five years later, after the patent is published, the

14:12:18 17   scientists discover complexes and wish to patent them, they

14:12:22 18   would be able to show that they're entitled to a patent if

14:12:26 19   they can show that complexes are novel and nonobvious,

14:12:30 20   because they'll get the invention defined by the claims

14:12:34 21   they're trying to attain.  If they tried to patent the

14:12:38 22   combination, the combination is old in the art, so it's a

14:12:42 23   different invention.

14:12:43 24            THE COURT:  I guess the thing I'm struggling

14:12:46 25   with is, I forget the phraseology you used, but you said,

14:12:47  1    well, look, the claim need to sufficiently -- I forget what

14:12:53  2    you said, but needs to sufficiently describe --

14:12:55  3                MR. RABINOWITZ:  Describe and enable the

14:12:57  4    invention as claimed.

14:12:58  5                THE COURT:  -- the invention as claimed.  And

14:12:59  6    I'm used to thinking of "invention as claimed" means not

14:13:03  7    just what is the literal word used, but what is the

14:13:06  8    definition of that word, what does it include.  The

14:13:09  9    definition of the word includes complexes, then the claim

14:13:15 10    includes that in the scope.

14:13:18 11                MR. RABINOWITZ:  Your Honor, you're talking now

14:13:20 12    about scope.  But for a multi-element invention, a claim to

14:13:27 13    an invention comprising A, B, and C will include within its

14:13:33 14    scope an embodiment which is A, B, C, and D, has the extra

14:13:38 15    feature D.  But in order to enable the claim to A, B, and C,

14:13:42 16    you do not need to describe that optional feature.

14:13:45 17                THE COURT:  That's different, right.  I think

14:13:47 18    what you're saying is if you have an accused item that has

14:13:51 19    A, B, C, and D in it, but the claim just covers A, B, and C,

14:13:56 20    it would be wrong to look at D and ask is D enabled in the

14:14:00 21    patent or sufficiently described.  I think we're both on the

14:14:04 22    same page there that it would be wrong.  But what if C

14:14:07 23    included D?

14:14:09 24                MR. RABINOWITZ:  So if the claim says

14:14:12 25    combination comprising A, B, and C, then something that has

14:14:16  1    A, B, C, and D is within the scope of that claim.

14:14:19  2                THE COURT:  For sure.

14:14:20  3                MR. RABINOWITZ:  But you still don't have to

14:14:22  4    describe and enable feature D.

14:14:25  5                THE COURT:  But in an alternate hypothetical, if

14:14:27  6    the definition of C included D --

14:14:30  7                MR. RABINOWITZ:  If D is a subset of C, you

14:14:33  8    must --

14:14:33  9                THE COURT:  You got to enable it.

14:14:35 10                MR. RABINOWITZ:  Yes.

14:14:36 11                THE COURT:  But UBAs are a subset of APS

14:14:40 12    oligonucleotides.

14:14:41 13                MR. RABINOWITZ:  That's not true.  That's the

14:14:42 14    new argument we heard for the first time today and that's

14:14:46 15    not true.

14:14:47 16                THE COURT:  That may be the whole argument we're

14:14:49 17    having because I thought this whole business about *Entresto*

14:14:52 18    was a separate, like, flank.  Like, we might not be having

14:14:55 19    that second argument, but even if they're right, even if

14:14:59 20    UBAs are within the scope of APS oligonucleotides, I'm going

14:15:03 21    to tell you why *Entresto* says you still don't have to enable

14:15:06 22    them or describe them.  Now it sounds like you're not saying

14:15:11 23    that.

14:15:11 24                MR. RABINOWITZ:  We're saying APS

14:15:12 25    oligonucleotides and UBAs are separate things.

14:15:14  1                THE COURT:  They're separate things.

14:15:17  2                MR. RABINOWITZ:  The pencil and the eraser.  And

14:15:21  3      the fact that you can combine them, that you can connect

14:15:23  4      them to each other does not mean that a UBA is a species of

14:15:27  5      an APS.

14:15:28  6                THE COURT:  But if a UBA was a species of an APS

14:15:32  7      oligonucleotide, then UBAs would have to be sufficiently

14:15:35  8      described in the patent and enabled.

14:15:37  9                MR. RABINOWITZ:  Yes.  And if it were a

14:15:39 10      species/genus relationship then it would.

14:15:41 11                THE COURT:  Okay.  Well, then maybe, I don't

14:15:44 12      know, I'm not even sure then particularly what relevance

14:15:47 13      *Entresto* has.  But maybe just to finish out *Entresto*, I mean

14:15:55 14      Entresto certainly was -- I guess I thought I read that the

14:16:01 15      decision in *Entresto* by the appellate court was concluding

14:16:06 16      that complexes were not within the species of combinations.

14:16:10 17      That the claims did not -- Claim 1 did not claim a complex.

14:16:14 18      The complex just had nothing to do with the substance of

14:16:17 19      Claim 1.  I thought you were saying you read it differently.

14:16:21 20                MR. RABINOWITZ:  Your Honor, it's perfectly

14:16:22 21      clear from *Entresto* that complexes -- that the drug which

14:16:25 22      had the two active ingredients as a complex was within the

14:16:30 23      scope of Claim 1.

14:16:32 24                THE COURT:  Doesn't the *Entresto* court

14:16:33 25      repeatedly say complexes are not claimed?

14:16:37  1          MR. RABINOWITZ:  Yes, because -- having the two

14:16:41  2   drugs in combination was claimed.  Having them form a

14:16:44  3   complex was an additional feature that was optional, not

14:16:48  4   excluded by the claim, but was not recited as an element of

14:16:54  5   the invention.

14:16:54  6          THE COURT:  So when the Court goes on to say I'm

14:16:57  7   telling you you only have to enable the claimed invention --

14:17:00  8          MR. RABINOWITZ:  Correct.

14:17:01  9          THE COURT:  -- that is not a way of saying

14:17:03 10   complexes aren't claimed?

14:17:05 11          MR. RABINOWITZ:  They are a way of saying

14:17:07 12   complexes aren't claimed as a feature of the invention even

14:17:10 13   though they are within the scope of that claim.

14:17:13 14          THE COURT:  Okay.  Not totally sure I'm on the

14:17:21 15   same page with you.  Okay.  But it sounds like the bigger

14:17:24 16   issue is I guess the way I think Mr. Pickard is going to say

14:17:29 17   it is, how in the world can it be the case that an APS

14:17:34 18   oligonucleotide does not include a UBA when Claim 5 says

14:17:38 19   that the only type of APS oligonucleotide that counts is a

14:17:42 20   UBA.

14:17:42 21          MR. RABINOWITZ:  Because a UBA is not a type of

14:17:45 22   APS oligonucleotide.  Let me point you to what -- I'm saying

14:17:49 23   we've never seen this argument before.  Let me direct Your

14:17:53 24   Honor to what Parse said in its reply brief.  This is D.I.

14:17:58 25   395.

14:17:59  1              THE COURT:  Okay.  What page?

14:18:02  2              MR. RABINOWITZ:  Page 1.  "They say UBAs are the

14:18:08  3   very things the specification says are designed to attach

14:18:17  4   oligos to target molecules."  Your Honor has construed UBAs.

14:18:19  5   UBAs are complexes that are designed to bind to one or more

14:18:23  6   target molecules.  UBAs bind.  And then on page 4, they say,

14:18:35  7   "APSs form all or part of a cell or cell origination

14:18:41  8   barcode, which must by definition provide a code that

14:18:45  9   indicates the cell or organelle origin."  So the function of

14:18:49 10   a UBA, the UBA is something that binds to a target molecule

14:18:53 11   and an APS is something completely different.  It's

14:18:56 12   something that contains information that allows you to tell

14:18:59 13   the cellular origin of a target molecule.  And the fact that

14:19:04 14   you can combine them so that the APS oligonucleotides can

14:19:09 15   comprise a UBA in the sense of being joined to it just as a

14:19:15 16   pencil may be joined to an eraser doesn't make an eraser a

14:19:19 17   subset of a pencil.

14:19:22 18              THE COURT:  I'm sorry, I'm not following that.

14:19:24 19   I thought your initial point was going to be these guys

14:19:28 20   never said that they thought that a UBA was a subset or a

14:19:33 21   part of APS oligonucleotides.  And I was thinking, that

14:19:37 22   can't be right.  I know they said that.  But is that what

14:19:40 23   you're saying, that they never made that argument?

14:19:43 24              MR. RABINOWITZ:  I don't see that argument.  I

14:19:45 25   see admissions to the contrary.  They admit that a UBA is

14:19:48  1    something whose function is to bind the target molecule.

14:19:51  2            THE COURT:  So UBA is something that binds a

14:19:53  3    target molecule.

14:19:54  4            MR. RABINOWITZ:  And an APS is a piece of

14:19:57  5    nucleic acid that contains information that allows you to

14:20:00  6    tell where that target molecule came from, which cell or

14:20:05  7    organelle it came from.

14:20:07  8            THE COURT:  Okay.

14:20:08  9            MR. RABINOWITZ:  They are clean different

14:20:10 10    things.

14:20:10 11            THE COURT:  But regardless of what they argue,

14:20:14 12    though I'll ask them to point, you know, to their arguments

14:20:18 13    when they get up, I mean, just in terms of -- I mean, you

14:20:22 14    know, maybe not as long as you've been up, but you've been

14:20:26 15    up for a while, and I don't see how it is literally possible

14:20:31 16    to define APS oligonucleotides as excluding UBAs in light of

14:20:36 17    Claim 5.  It's a dependent claim.  It says -- they're part

14:20:40 18    of APS oligonucleotides.

14:20:43 19            MR. RABINOWITZ:  Claim 5 does not say "wherein

14:20:45 20    the APS oligonucleotides is a UBA."  If a UBA was a species

14:20:51 21    of the genus APS oligonucleotide, the claim would have said

14:20:54 22    "wherein at least one of the sets of APS oligonucleotide are

14:20:58 23    a UBA."

14:20:59 24            THE COURT:  Are you saying because it uses the

14:21:02 25    word "comprise?"

14:21:04  1          MR. RABINOWITZ:  Comprise in this instance means

14:21:06  2    that the APS has an additional component, like a pencil has

14:21:12  3    an additional component, which is an eraser.  This APS

14:21:19  4    oligonucleotide has an additional component which functions

14:21:22  5    as a UBA.

14:21:22  6          THE COURT:  Did you make that argument in your

14:21:24  7    brief?  This, well, no, Claim 5, it says "comprising," so

14:21:28  8    it's not saying an APS oligonucleotide is the UBA, it's

14:21:34  9    saying an APS oligonucleotide includes as one of its

14:21:39 10    components a UBA.

14:21:40 11          MR. RABINOWITZ:  They never made the argument in

14:21:42 12    their opening brief to which we responded that a UBA was a

14:21:46 13    species of APS.

14:21:49 14          THE COURT:  Okay.

14:21:50 15          MR. RABINOWITZ:  So this, as I said, this is an

14:21:52 16    argument we've heard for the first time from them today.

14:21:55 17    And the meaning, the construed meaning of UBA is completely

14:21:59 18    distinct from the partially construed meaning of APS.  As

14:22:04 19    Your Honor remembers, APS was one of the claim terms that we

14:22:08 20    briefed but didn't argue in the Markman hearing.  And the

14:22:12 21    function of the APS is to convey information.  The issue was

14:22:15 22    must it be detectable information, must it just be

14:22:20 23    information.  And APS carries a packet of information that

14:22:25 24    helps you determine where a target molecule came from.  A

14:22:29 25    UBA is one that binds to one or more target molecules.

14:22:32  1            THE COURT:  Just reading their opening belief on

14:22:35  2     the point, it says, "Claim 1 requires, in relevant part, at

14:22:41  3     least two sets of APS oligonucleotides."  "Claim 5 narrows

14:22:46  4     that APS limitation such that the APSs comprise a unique

14:22:52  5     binding agent, UBA."  "Claim 1 is APSs, therefore encompass

14:22:58  6     APSs comprising UBAs."

14:23:00  7            MR. RABINOWITZ:  They didn't say Claim 1's APSs

14:23:03  8     encompass UBAs.  They said, "Claim 1 APSs comprise APSs

14:23:11  9     encompassing UBAs."  Like saying Claim 1's pencils encompass

14:23:13 10     pencils comprising eraser.

14:23:14 11            THE COURT:  But even if an APS has, I don't

14:23:21 12     know, two components and one of the two components can be a

14:23:27 13     UBA, such that UBA is within the scope of the description of

14:23:35 14     APS oligonucleotide, why -- what's the difference?  You

14:23:40 15     would still have to fully handle the scope of the term,

14:23:43 16     which would mean an APS that included at least or --

14:23:50 17            MR. RABINOWITZ:  Your Honor, under *Entresto* it

14:23:52 18     is error to say you have to enable whatever is in the scope

14:23:56 19     of the claim.

14:23:59 20            THE COURT:  So now back to *Entresto*, so --

14:24:02 21            MR. RABINOWITZ:  That's why *Entresto* matters.

14:24:06 22     And that's the quotation we have on the right in this panel,

14:24:10 23     "By stating that the claims were construed to cover

14:24:13 24     complexes, the District Court erroneously conflated the

14:24:17 25     distinct issues of patentability and infringement."  The

14:24:22  1    party's inviting this court to make the same error that was

14:24:26  2    made by the trial court in *Entresto*.

14:24:29  3            THE COURT:  I think it can be read that the

14:24:36  4    Federal Circuit there is saying that somehow the District

14:24:39  5    Court, again, what did they do wrong?  It conflated the

14:24:43  6    claim construction inquiry, what does the relevant term mean

14:24:48  7    with the infringement inquiry?  What does the relevant term

14:24:50  8    cover?  Does it cover the accused product.  And it says, by

14:24:56  9    stating that the claims were construed to cover complexes,

14:25:00 10    it conflated these ideas and it has a footnote or it has a

14:25:06 11    blocked text where it says, "Claims aren't construed to

14:25:09 12    cover the accused product."  Like that phraseology is wrong

14:25:12 13    because it was somehow pointing to like what does the

14:25:15 14    accused product have in it.  What we really care about is

14:25:18 15    what do the claims include in their scope it seems like it's

14:25:23 16    saying.

14:25:23 17            MR. RABINOWITZ:  No, Your Honor.  I believe

14:25:24 18    that's wrong.  What the Court is saying is what is the

14:25:27 19    invention defined by the claim.  In others words, is it A,

14:25:31 20    B, C?  Is it a pencil, comprising wood and graphite?  Or is

14:25:38 21    the invention defined by that claim A, B, C, and D, a pencil

14:25:42 22    with wood, graphite and an eraser?

14:25:44 23            THE COURT:  How could *Entresto* be saying that

14:25:47 24    the claim at issue, Claim 1, included within its scope

14:25:50 25    complexes when in that footnote it says, doesn't it, it does

14:25:56  1    not?

14:25:56  2              MR. RABINOWITZ:  The claim construction

14:25:59  3    discussion that I've just directed Your Honor to expressly

14:26:03  4    disagreed with MSN's argument that the claims excluded from

14:26:09  5    their scope the complexes and held to the contrary.

14:26:11  6              THE COURT:  But like footnote 5 says, "To the

14:26:14  7    extent MSN, the accused infringer, maintains that the claims

14:26:17  8    were construed to claim complexes, that construction would

14:26:21  9    have been error."  It would have been error to determine

14:26:26 10    that the claimed claims covers.

14:26:28 11              MR. RABINOWITZ:  That's true.  The claim covers

14:26:30 12    complexes, but it didn't claim them.

14:26:32 13              THE COURT:  So a distinction between claim and

14:26:34 14    cover?

14:26:35 15              MR. RABINOWITZ:  That is at the heart of

14:26:37 16    *Entresto*.

14:26:37 17              THE COURT:  Has that distinction ever be made

14:26:39 18    before by the Federal Circuit before this case?

14:26:41 19              MR. RABINOWITZ:  Yes, Your Honor, it has.  There

14:26:44 20    are some other cases.  *United Therapeutics*.  In *United*

14:26:54 21    *Therapeutics* the claims undoubtedly covered embodiments of

14:26:59 22    the therapeutic invention which was safe and effective, but

14:27:03 23    because safety and efficacy are not a feature recited in the

14:27:07 24    claims, the Court didn't even have to deal with the

14:27:09 25    arguments that the specification failed to enable safety and

14:27:12  1    efficacy.

14:27:13  2                THE COURT:  Why wouldn't that case be saying,

14:27:15  3    look, safety and efficacy are not required because they're

14:27:18  4    not part of the claims, they're just not claimed, those are

14:27:21  5    concepts that are unclaimed?

14:27:23  6                MR. RABINOWITZ:  Correct, even though the claims

14:27:25  7    included in their scope, undoubtedly included embodiments

14:27:28  8    that were safe and effective.  So it's not a matter of claim

14:27:32  9    scope, it's what -- how do the claims define the invention

14:27:36 10    at issue.

14:27:37 11                THE COURT:  Are you saying that an accused

14:27:39 12    product could infringe those claims if it was safe and

14:27:41 13    effective?

14:27:42 14                MR. RABINOWITZ:  Yes.

14:27:43 15                THE COURT:  Right.  So that would be an

14:27:44 16    unclaimed aspect of the accused product?

14:27:47 17                MR. RABINOWITZ:  Precisely.

14:27:49 18                THE COURT:  That's unclaimed, it's not within

14:27:51 19    the scope of what the claims cover.

14:27:54 20                MR. RABINOWITZ:  No, Your Honor.  Again -- I'm

14:27:57 21    going to go back to my simple pencil/eraser.  An eraser is

14:28:02 22    an unclaimed aspect of the claim to a pencil, but the claim

14:28:05 23    nevertheless covers the pencil whether it has an eraser or

14:28:09 24    not.

14:28:09 25                THE COURT:  And you wouldn't have to fully

14:28:11 1  enable the scope of pencils including pencils with erasers?

14:28:14 2          MR. RABINOWITZ:  Correct.  All improvement

14:28:16 3  patents are like that.  If I invent the bicycle and I define

14:28:19 4  it by the two wheels, you know, chain, and pedal, and so on,

14:28:24 5  and then someone invents a motorcycle, while my bicycle

14:28:29 6  patent is in force, if they meet all the elements of my

14:28:33 7  bicycle claim they would infringe it and I don't have to

14:28:36 8  enable future improvements like motorcycles.

14:28:42 9          THE COURT:  Okay.

14:28:43 10         MR. RABINOWITZ:  And this court has dealt with

14:28:45 11 this in *Invista*.  In *Invista* the claims were directed to a

14:28:53 12 type of plastic and one of the dependent claims required

14:29:00 13 non-yellowness, yellowness based on a particular value.  And

14:29:05 14 the claims were challenged because the specification failed

14:29:08 15 to enable non-yellowness because it didn't disclose how to

14:29:14 16 use sodium acetate.  And even though the non-asserted claim

14:29:22 17 required non-yellowness, it would not have been enabled.

14:29:25 18 The independent claim from which it -- the independent claim

14:29:29 19 which included within its scope the plastic, whether it was

14:29:32 20 yellow or not, was not -- was not vulnerable to a lack of

14:29:39 21 enablement challenge.

14:29:40 22         THE COURT:  And I know it says that the, you

14:29:43 23 know, only a non-asserted claim had a non-yellowness

14:29:48 24 requirement, but there it was the non-asserted claim

14:29:51 25 dependent on the claim that was, that was being asserted?

14:29:55  1          MR. RABINOWITZ:  Let me show you, Your Honor.

14:29:58  2          THE COURT:  Because that would be apples to

14:30:00  3    apples to our case.

14:30:02  4          MR. RABINOWITZ:  I think it is precisely

14:30:09  5    analogous.  Can I ask for the new '216 patent, the Claims 1

14:30:14  6    and then 12 to 14.  So Claim 1 is a composition comprising

14:30:25  7    these recited components.  And then if you look at claims --

14:30:32  8    so Claim 14 recites a requirement for the yellowness value

14:30:38  9    less than 2.5.  It depends from Claim 13 which depends from

14:30:43 10    each of Claim 1 through 11.  So Claim 1, the independent

14:30:48 11    claim necessarily includes within its scope a container

14:30:53 12    having the non-yellowness feature in question.

14:30:58 13          THE COURT:  The yellowness value of less than

14:31:01 14    blank.

14:31:02 15          MR. RABINOWITZ:  That was what was not enabled.

14:31:05 16          THE COURT:  But then the dependent claim would

14:31:13 17    not necessarily have that requirement.

14:31:15 18          MR. RABINOWITZ:  Not necessarily, but --

14:31:17 19          THE COURT:  We need not necessarily have the

14:31:19 20    yellowness requirement?

14:31:20 21          MR. RABINOWITZ:  Yes, Your Honor, but the

14:31:22 22    subject matter Claim 14 is within the scope of Claim 1.

14:31:27 23          THE COURT:  But couldn't Claim 1 have a

14:31:30 24    yellowness value of less than 2.5, greater than 2.5 or none

14:31:36 25    at all?

14:31:37  1          MR. RABINOWITZ:  Correct.

14:31:38  2          THE COURT:  And --

14:31:42  3          MR. RABINOWITZ:  But if, as Parse says, you must

14:31:44  4   enable the full scope of Claim 1 in the sense of whatever

14:31:48  5   Claim 1 covers, then you also have to enable containers that

14:31:52  6   have the low yellowness feature.  And *Invista* rejected that

14:32:00  7   proposition.  *Invista* was an absolutely correct application

14:32:03  8   of the principle of *Entresto*.

14:32:06  9          THE COURT:  Could you just go back to the

14:32:07 10   Invista quote to see what we're talking about in Claim 14

14:32:12 11   there.  No, we're talking about Claim 26.

14:32:14 12          MR. RABINOWITZ:  There were two patents at

14:32:16 13   issue, but the issue was identical for -- what I've just

14:32:21 14   shown you is the '216 Patent and it was discussed in the

14:32:24 15   context of the '159 Patent, but it was the same issue,

14:32:28 16   dependent claims recited the yellowness requirement.  The

14:32:35 17   independent claims did not.

14:32:36 18          THE COURT:  So you're saying if I were to look

14:32:38 19   at the record, I'll find that whatever the asserted claim at

14:32:41 20   issue of the '159 Patent, Claim 26 of that patent was

14:32:47 21   dependent on?

14:32:50 22          MR. RABINOWITZ:  It wasn't Claim 26.  In that

14:32:50 23   case it was Claim 14, but the same issue occurred in two

14:32:54 24   patents.  The one I've just shown you is the clearest

14:32:57 25   indication that the independent -- there was only one

14:32:59 1    independent claim.  The decision doesn't specify which were

14:33:03 2    the asserted independent claims.  For the '216 Patent

14:33:07 3    there's only one independent claim, so we know that the one

14:33:12 4    yellowness requirement was a subset of that claim.

14:33:15 5           THE COURT:  Right.  But I guess I'm just trying

14:33:17 6    to -- I think, you know, the other side is saying that, that

14:33:23 7    *Invista*, you know, could be just simply repeating the

14:33:28 8    principle that we don't have to enable a characteristic that

14:33:33 9    is actually not claimed.

14:33:36 10           MR. RABINOWITZ:  Your Honor, that is not within

14:33:39 11    the scope of the claims.

14:33:40 12           THE COURT:  Scope of the claims, right.  And so

14:33:42 13    any time Judge Robinson, in *Invista*, talked about a claim

14:33:48 14    that had a non-yellowness requirement, well, as to the

14:33:52 15    asserted claims, those claims weren't dependent on those.

14:33:56 16    And I'm just trying to figure out is that right or wrong?

14:33:59 17           MR. RABINOWITZ:  So for the -- that's not why

14:34:02 18    *Invista* came out that way.  If you look at the '216 Patent,

14:34:05 19    there were two patents at issue.  It's crystal clear that

14:34:09 20    the claim that has the non-yellowness requirement is

14:34:13 21    dependent from the only independent claim in that patent.

14:34:17 22    What Judge Robinson said there was sodium acetate was not a

14:34:26 23    limitation, non-yellowness was also not a limitation of the

14:34:29 24    independent claims.  The issue is not whether they included

14:34:32 25    non-yellow material in their scope.  The issue was whether

14:34:37 1    that was a feature by which the invention was defined in

14:34:40 2    those claims.

14:34:42 3             THE COURT:  Okay.  Just a couple minutes left.

14:34:46 4    About two minutes left.  Is there another point you want to

14:34:51 5    make with regard to this point?

14:35:05 6             MR. RABINOWITZ:  Just one thing, Your Honor,

14:35:06 7    from the patent.  The specification says the kits can

14:35:13 8    comprise, for example, one or more UBAs, one or more ESBs

14:35:18 9    and one or more APSs.  The patent never describes UBAs as a

14:35:22 10   subset of APSs.  The definition of a UBA and the definition

14:35:31 11   of an APS oligo make it clear, as does the concessions in

14:35:35 12   Parse's reply brief.  They are different things.  A UBA is a

14:35:40 13   structure that binds to one or more target molecules and an

14:35:44 14   APS is a structure that conveys information.  The fact that

14:35:49 15   you can combine them so that an APS can comprise a UBA does

14:35:53 16   not make a UBA into a subset of an APS.  If that were so,

14:35:59 17   this specification would simply have said one or more APSs,

14:36:04 18   which can be a UBA -- which is obviously be a UBA, and the

14:36:10 19   claim would have said wherein the APSs are UBAs.

14:36:14 20            THE COURT:  But maybe not disputed that APS

14:36:18 21   oligonucleotide, whatever that is, it can have, as a part of

14:36:23 22   it, a UBA?

14:36:25 23            MR. RABINOWITZ:  As an optional feature.

14:36:27 24            THE COURT:  Okay.  All right.  We'll leave it

14:36:30 25   there.  Thank you, Mr. Rabinowitz.

14:36:34  1          We'll hear rebuttal on this point from

14:36:38  2     defendants' side.

14:36:45  3          MR. PICKARD:  I think just a few brief points,

14:36:48  4     unless Your Honor has questions.

14:36:49  5          THE COURT:  I do.  I mean, I want to make sure I

14:36:51  6     fully understand what the parties are arguing, and your

14:36:58  7     response to their counter arguments.  Maybe we can start

14:37:07  8     with, were you arguing in your briefing and are you arguing

14:37:17  9     now that there's a thing called an APS oligonucleotide and

14:37:22 10     that thing could be A or it could be B.  I'll show you

14:37:29 11     different examples of them.  And one example of it, one

14:37:32 12     thing that is an APS oligonucleotide, not just a component

14:37:36 13     of it, but one thing that is it is a UBA?  Is that what you

14:37:39 14     were arguing?

14:37:40 15          MR. PICKARD:  Yes.  I think Your Honor found at

14:37:43 16     least a very good instance of that in page 5 of our opening

14:37:47 17     brief where it says, "Claim 5 narrows the APS limitation

14:37:50 18     such that the APSs comprise the binding agent."  And the

14:37:56 19     answer, that's a direct answer to your question.

14:37:58 20          I do want to point out this idea that comprising

14:38:01 21     just means it's an extra thing.

14:38:03 22          THE COURT:  Yeah, the suggestion is --

14:38:07 23          MR. PICKARD:  It is the intention with their

14:38:08 24     position on this is very claim, when they recite the set

14:38:12 25     that comprises 10 oligos, they want to have it be the case

14:38:16  1    that they can just be, consist entirely of just 10 oligos.

14:38:21  2    But when Claim 5 arises and an APS comprises a UBA, it's not

14:38:27  3    a UBA -- it's not an APSs.  They're saying a UBA is an

14:38:31  4    optional feature.  I don't think that's how these claims

14:38:34  5    work, certainly not how they tried to apply them in this

14:38:38  6    case.

14:38:38  7            THE COURT:  So by repeating the word comprising,

14:38:40  8    you weren't suggesting that an APS has a couple components,

14:38:44  9    one component of which is a UBA?

14:38:48 10            MR. PICKARD:  No.  The thing in Claim 5 is an

14:38:50 11    APS that is a UBA.

14:38:53 12            THE COURT:  So comprising means "is" in Claim 5?

14:38:56 13            MR. PICKARD:  I think that's what Claim 5 means.

14:38:59 14            THE COURT:  The sets of APS oligonucleotide are

14:39:03 15    UBA, even though it says comprise?

14:39:06 16            MR. PICKARD:  That's exactly how they claim.

14:39:09 17    And Mr. Rabinowitz gave the example if I have elements A, B,

14:39:09 18    and C, I only need to enable them, I don't have to enable D.

14:39:12 19    But they've then said, you know, Element B includes this

14:39:17 20    embodiment of a UBA and that's our position not to do that.

14:39:22 21    I don't think *Entresto* actually applies here, because I

14:39:25 22    think the way it gets to the answer of what is claimed is

14:39:29 23    using that device of later-arising technology, which we

14:39:33 24    don't have here.  I think that's the fairest reading that

14:39:36 25    could also be read to be a criticism of the underlying

14:39:39 1  construction.  But I do think the starting point is a proper

14:39:42 2  construction.  We have the Supreme Court saying it is the

14:39:45 3  full scope.  Got McRO saying embodiments.  I think Claim 5

14:39:48 4  shows that --

14:39:50 5          THE COURT:  You need to speak up a little bit.

14:39:51 6          MR. PICKARD:  Yeah.  Sorry.  The McRO case shows

14:39:52 7  that Claim 5 is an embodiment of APS and there are exposures

14:39:58 8  in the patent that essentially say as much.

14:40:02 9          THE COURT:  We spent like 15 minutes with Mr.

14:40:05 10 Rabinowitz walking through *Entresto* because it's the whole

14:40:07 11 argument or it was a very, very key part of their argument,

14:40:11 12 one that you engage.  I heard him say a few things about

14:40:15 13 *Entresto* and they're wrong, they're just flat wrong.  Judge,

14:40:19 14 when you go back and look at this transcript, you're going

15 to see Mr. Rabinowitz trying to lead you down a path about

14:40:22 16 what *Entresto* means.  I sat here for the whole thing, Judge,

14:40:25 17 and I'm going to tell you each of the points in which he

14:40:27 18 said that was incorrect so it will make your decision

14:40:30 19 easier.  That's what I'm wanting you to do.

14:40:33 20         MR. PICKARD:  Sure.  So I think the starting

14:40:35 21 point would be, this appears at page 1098 of the decision

14:40:41 22 and it's in the written description portion.  It's that -- I

14:40:46 23 don't know what your copy looks like, Your Honor, but mine a

14:40:51 24 little header four indicator, the paragraph begins, "The

14:40:54 25 fact that..."

```
14:40:54  1              THE COURT:  Yes.  I'm there.
14:40:56  2              MR. PICKARD:  So "The fact that the complexes
14:40:58  3    aren't described," it begins.  Then it continues, "That
14:41:01  4    complex, not discovered until four years later after the
14:41:04  5    priority date of the '659 Patent, is not what is claimed."
14:41:07  6    And the only thing you can find in this patent that says
14:41:10  7    that that's not what is claimed is the fact that it was
14:41:13  8    later-arising technology.  You see that in that very
14:41:17  9    sentence.  That's the only explanation given there and then
14:41:19 10    you see it as well in that footnote we talked about when I
14:41:23 11    was first up here, says, "Because the complexes were
14:41:35 12    undisputedly unknown at the time of the invention, the '659
14:41:38 13    patent could not have been construed as claiming those," dot
14:41:41 14    dot dot.
14:41:42 15              THE COURT:  But Mr. Rabinowitz, you heard Mr.
14:41:45 16    Rabinowitz say that the Federal Circuit is making a
14:41:47 17    distinction between the word "claimed" and "falls within the
14:41:51 18    scope of" Claim 1.  Do you a free with him or do you
14:41:55 19    disagree with him?
14:41:56 20              MR. PICKARD:  No, because we have the language
14:41:58 21    from the Supreme Court in Amgen v. Sanofi most recently
14:42:02 22    saying the full scope.  And we see there an example where
14:42:05 23    reciting the functionality was enough, you didn't have to
14:42:08 24    recite all of the antibodies by name or type or anything
14:42:11 25    like that.  It was enough to say antibodies that do this.
```

14:42:14  1    That was all they had in *Amgen*.

14:42:17  2            THE COURT:  So *Amgen* is an example of you have a

14:42:20  3    general descriptor of a group of antibodies, each individual

14:42:24  4    antibody not specifically listed or referenced, but

14:42:27  5    certainly fell within the full scope of that species?

14:42:33  6    Species?

14:42:35  7            MR. PICKARD:  Genus.

14:42:37  8            THE COURT:  Genus.

14:42:39  9            MR. PICKARD:  Genus, yeah.

14:42:39 10            THE COURT:  And must be enabled.

14:42:41 11            MR. PICKARD:  Right.  So what we have in Claim 5

14:42:44 12    is a species of the genus APS as they've claimed it.  May be

14:42:48 13    an odd way of claiming it, but it's their patent.  I'm not

14:42:52 14    here to defend it.

14:42:53 15            THE COURT:  You heard Mr. Rabinowitz give me the

14:42:54 16    example of a claim to a pencil.  And then I think a

14:42:59 17    dependent claim with a pencil with an eraser.

14:43:02 18            MR. PICKARD:  Yes.  I think the example, they

14:43:03 19    claim a pencil, then they claim a pencil comprising an

14:43:08 20    eraser.  That's not what they've done with Claim 1 and Claim

14:43:09 21    5.  They said they've claimed a kit.  The kit comprises sets

14:43:11 22    of APSs and they say wherein the APSs comprise UBA.  They

14:43:17 23    don't say, in Mr. Rabinowitz's metaphor, for example, would

14:43:21 24    have needed to say, oh, the kit comprises the UBA, but not

14:43:25 25    this particular recited element of the APS.

14:43:28 1          THE COURT:  But in his hypothetical, Claim 1 is

14:43:31 2     to a pencil, which we would understand the scope includes

14:43:35 3     pencils with erasers and pencils without erasers.  And then

14:43:38 4     dependent Claim 5 is to a pencil with an eraser.  This

14:43:43 5     claim -- for Claim 1 to be enabled, does the specification

14:43:47 6     have to enable pencils with erasers and without erasers?

14:43:52 7          MR. PICKARD:  We believe so, especially in the

14:43:54 8     situation like here where your spec discloses pencils with

14:43:58 9     erasers.  Right.  As they've done.  So clearly pencils with

14:44:02 10    erasers are an embodiment.

14:44:04 11         THE COURT:  Is there any part of the patent that

14:44:05 12    tells me an APS -- an example of an APS oligonucleotide is a

14:44:12 13    UBA?  UBA is not a thing that's like somehow part of it or

14:44:16 14    could be part of it, but it is the thing?

14:44:18 15         MR. PICKARD:  I don't have such a clean example

14:44:20 16    like that, something to point out that the patent is very

14:44:24 17    fluid in how it says all these things can be combined and

14:44:27 18    thought of.  APSs comprise COBs and COBs can comprise UBAs,

14:44:33 19    but nothing quite as succinctly as Claim 5.  But that's part

14:44:37 20    of the patent.  Of course Claim 5, that's how they claimed

14:44:41 21    it.

14:44:41 22         THE COURT:  Mr. Rabinowitz argues that the

14:44:42 23    definition of APS oligonucleotides and UBAs are meaningfully

14:44:47 24    different in a certain respect.  What's your response to his

14:44:50 25    argument on that?

14:44:51  1        MR. PICKARD:  These are simply APSs that have

14:44:53  2   the additional features that are required by UBAs.  At

14:44:58  3   bottom these are just molecular entities.  And so all it is

14:45:03  4   is an APS that's got to have that information Mr. Rabinowitz

14:45:06  5   talked about and the ability to bind to a target molecule.

14:45:10  6   It could be one in the same thing.

14:45:13  7        THE COURT:  Okay.

14:45:18  8        MR. PICKARD:  And I just offer the definitions.

14:45:21  9   These are all functional definitions.  There's nothing

14:45:24 10   physically distinct about APSs, COBs, UBAs and so on.  It's

14:45:30 11   what can they do.

14:45:31 12        THE COURT:  Okay.  All right.  Anything further

14:45:33 13   with regard to this issue?

14:45:34 14        MR. PICKARD:  No, Your Honor.

14:45:36 15        THE COURT:  Just to be clear, in *Entresto*, do

14:45:44 16   you believe that the claim scope covered complexes?  Do you

14:45:47 17   believe that the Federal Circuit was concluding that the

14:45:50 18   claim scope covered complexes, meaning complexes were a part

14:45:55 19   of what's claimed?  Obviously the word's not in the claim,

14:45:58 20   but it's a part of it.  Or do you believe the Federal

14:46:00 21   Circuit is saying complexes are not claimed, they are not

14:46:03 22   within the scope of that claim, they're just not in there?

14:46:07 23   Which do you think they were saying?

14:46:10 24        MR. PICKARD:  I think the latter is what

14:46:12 25   *Entresto* seems to be saying.  I mean it's not as clean cut

14:46:13 1  as later-arising technology.

14:46:14 2          THE COURT:  Not within the scope of Claim 1?

14:46:16 3  Claim 1 does not cover it?

14:46:19 4          MR. PICKARD:  I don't know that *Entresto* answers

14:46:21 5  that question.  But I --

14:46:25 6          THE COURT:  What do you think it said?

14:46:26 7          MR. PICKARD:  It is clear that it's not claimed.

14:46:29 8  And the reason it's not claimed is it's later-arising

14:46:32 9  technology.  I'll point out Scale said, oh, it has nothing

14:46:36 10 to do with later-arising technology.  I think that's hard to

      11 square with *Entresto*.  I think they need that to be the

14:46:38 12 case, otherwise it doesn't help them.

14:46:42 13         THE COURT:  Though is what you're saying, I

14:46:45 14 don't know, Judge, I don't know what *Entresto* is saying

14:46:47 15 about whether complexes are within the scope of Claim 1?

14:46:53 16         MR. PICKARD:  I think *Entresto* is a very

14:46:53 17 difficult opinion as it's written.

14:46:53 18         THE COURT:  It seems to be the whole basis of

14:46:55 19 their pushback against your motion, so I need to know what

14:46:59 20 you think on it and why you win on it.  I need to know what

14:47:01 21 you think it means, because it's a key component of their

14:47:05 22 responsive argument.

14:47:06 23         MR. PICKARD:  I think there are instances where

14:47:08 24 a patent claim can cover, say, an accused device.  And the

14:47:14 25 accused device has much more than what's claimed.  I gave

14:47:14  1    you the example of the nav system in the car.  If that car

14:47:16  2    happened to have state of the art transmission, patent

14:47:19  3    didn't have to enable that, but that's what's going on.

14:47:22  4             THE COURT:  Because it wasn't in the claim.

14:47:24  5             MR. PICKARD:  But if you have, you know, you

14:47:27  6    claim the nav system and it's -- happens to be in a car

14:47:30  7    that's -- it's covered by your claims, but you only have to

14:47:34  8    enable and describe the nav system, not the thing that's

14:47:38  9    it's on.  That's the thing *Entresto* raised.

14:47:41 10             Here's we have an example where they recited

14:47:44 11    APSs and they have said that APSs, an embodiment of those

14:47:48 12    are UBAs.  The claims say as much.

14:47:51 13             THE COURT:  Okay.  Let me -- I'll give Mr.

14:47:54 14    Rabinowitz a brief chance to respond.  Thank you, Mr.

14:47:58 15    Pickard.

14:47:58 16             MR. PICKARD:  Thank you.

14:48:00 17             THE COURT:  Mr. Rabinowitz, I'll just give you

14:48:02 18    two minutes of response.

14:48:05 19             MR. RABINOWITZ:  Thank you, Your Honor.  Could I

14:48:07 20    have the '159 Patent again.  Column 2, the paragraph below

14:48:11 21    Summary of the Invention.  So the idea that the difference

14:48:16 22    was whether the specification disclosed a feature is not

14:48:21 23    supportable.  And this is the *Invista* case.  "The present

14:48:26 24    invention is an improvement over polyester/polyamide blends

14:48:32 25    known in the art in that these compositions have reduced

14:48:32  1    yellowness."  The dependent claims required reduced

14:48:36  2    yellowness.  It didn't enable reduced yellowness.  It didn't

14:48:40  3    matter, because the independent claim did not define the

14:48:44  4    claimed invention with respect to reduced yellowness.

14:48:47  5            THE COURT:  Independent claim didn't define the

14:48:50  6    invention with respect to reduced yellowness.  And if I were

14:48:54  7    to say to you, I think what you mean by that, is even though

14:48:58  8    they didn't use the words in the claim specifically, you

14:49:00  9    would say, no, Judge, I don't mean that.

14:49:04 10            MR. RABINOWITZ:  Not the words.  As -- could I

14:49:07 11    have Slide 52.  This is an excerpt from *Entresto*.  The

14:49:11 12    patent does not claim as its invention the complexes.

14:49:18 13            THE COURT:  Kind of like the -- by claimed as

14:49:23 14    its invention kind of like indicating that this is the point

14:49:26 15    have novelty or something?

14:49:29 16            MR. RABINOWITZ:  That this is what needs to be

14:49:30 17    tested for novelty and non-obviousness.  And then the

14:49:34 18    previous slide.  There's no question that the District Court

14:49:40 19    construed the claims to cover the complexes.  The Federal

14:49:46 20    Circuit in *Entresto* said that by using that as the point

14:49:52 21    where its --

14:49:53 22            THE COURT:  So *Entresto* Chris sizes that.  It

14:49:56 23    says that's bad.

14:49:57 24            MR. RABINOWITZ:  It didn't say the claim

14:49:59 25    construction was wrong, it said that it needed to focus on

14:50:02  1   the claimed invention, not what the claims cover.  That's

14:50:07  2   the distinction that's drawn in *Entresto*.

14:50:11  3           THE COURT:  Okay.  All right.  We'll have to end

14:50:15  4   it there.

14:50:17  5           MR. RABINOWITZ:  Thank you, Your Honor.

          6           THE COURT:  Mr. Pickard, something you want to

14:50:23  7   add?

14:50:23  8           MR. PICKARD:  I wanted to make one small point

14:50:26  9   on the *Invista* case that I think is an important

14:50:31 10   distinction.  As I read the decision in *Invista,* the

14:50:39 11   challenge wasn't so much as to whether yellowness was

14:50:40 12   described in the enablement, whether the sodium acetate was

14:50:42 13   necessary to do the enablement.  And so we're in a different

14:50:47 14   world.  The sodium acetate in *Invista* was not disclosed in

14:50:52 15   the spec, wasn't claimed in any of the claims.  And so Judge

14:50:57 16   Robinson there was confronted with was yellowness required

14:51:00 17   to be enabled.  I'm sorry, whether the patentee had

14:51:05 18   disclosed sodium acetate.  We're in a very different world.

14:51:09 19   They're saying they've disclosed UBAs and they've claimed

14:51:12 20   UBAs, right.  Unlike *Invista* where they were saying they

14:51:15 21   hadn't disclosed sodium acetate nor claimed it.

14:51:19 22           THE COURT:  But the dependent claims there did

14:51:23 23   include limitations as to yellowness.

14:51:25 24           MR. PICKARD:  Yes, as to yellowness, but nothing

14:51:27 25   about sodium acetate in the patent had other enabling and

14:51:31 1    describing disclosures for achieving yellowness.

14:51:35 2            THE COURT:  I mean, you could be saying, to the

14:51:38 3    extent *Invista* is a case where there was a focus on whether

14:51:43 4    the independent claim was fully enabled, and the question

14:51:47 5    was, was it not fully enabled because there wasn't enough

14:51:53 6    discussion of non-yellowness?  And the District Court said,

14:51:58 7    well, I don't think it has to be enabled as to that, because

14:52:01 8    that's just in a non-asserted claim.  Now it turned out that

14:52:06 9    that non-asserted claim was dependent on the asserted claim

14:52:10 10   and I just think the District Court got it wrong.  You could

14:52:14 11   say that.  Or you could say, no, this is the case where the

14:52:17 12   non-yellowness thing, the thing the District Court said

14:52:19 13   didn't have to be enabled, it was non-asserted claim and it

14:52:22 14   wasn't dependent, wasn't a part of the claim scope of the

14:52:26 15   claims at issue, so this is not apples to apples here.  Do

14:52:28 16   you know what the answer is there?

14:52:29 17           MR. PICKARD:  We don't have the benefit of the

14:52:32 18   Federal Circuit decision on *Invista*.  I think it's wrong

14:52:35 19   that a dependent claim could fail to be described and

14:52:38 20   enabled and yet its independent claim survived.

14:52:41 21           THE COURT:  Are you saying, just to be clear,

14:52:43 22   I've got an independent claim, the claim covers a certain

14:52:47 23   scope, think of it like a hundred percent of all the claim

14:52:51 24   covers, like a claim to a kit here, and it has certain

14:52:55 25   requirements, and that kind of kit is a hundred percent of

14:53:00  1    what is a part of its scope, of its required scope, do I

14:53:04  2    have to fully enable every hundred percent of that scope?

14:53:10  3              MR. PICKARD:  Certainly it is a required scope,

14:53:11  4    yes.  And UBAs are part of the required scope of -- or the

14:53:15  5    recited scope of Claim 1.

14:53:19  6              THE COURT:  Okay.

14:53:20  7              MR. PICKARD:  I don't think any of these cases

14:53:23  8    that have been cited squarely present the situation we see

14:53:26  9    in the '752 Patent.

14:53:27 10              THE COURT:  Okay.  Thank you, Mr. Pickard.

14:53:29 11              All right.  Thanks to counsel for their

14:53:31 12    arguments.  We'll have to end there.  We started at 11

14:53:35 13    o'clock.  Its been almost four hours from when we started.

14:53:37 14    Appreciate, as I said, counsels' arguments and the briefing.

14:53:43 15    Again, pretty good lawyers here on both sides.  And so these

14:53:47 16    are difficult issues and it's helpful to have good argument

14:53:51 17    to try to help me piece through and resolve the issues.  So

14:53:55 18    I'll take these matters under advisement.

14:54:01 19              You all have trial date later in the year.  And

14:54:08 20    I will, when I can, resolve these summary judgement and

14:54:12 21    Daubert motions.  Almost certainly I'll be resolving them

14:54:17 22    piecemeal.  Not going to issue one opinion that's like a

14:54:20 23    hundred pages long that has 17 motions in it.  I will do it

14:54:23 24    as I can when I can, trying in a thoughtful way to do so by

14:54:29 25    addressing, you know, the most important motions that are

14:54:32  1    potentially dispositive earlier, obviously addressing

14:54:36  2    motions that I think may be dependent -- you have to resolve

14:54:41  3    first to get to another motion.

14:54:43  4            So that said, the parties need to prepare for

14:54:46  5    trial because I'm not sure exactly when I'll get these

14:54:49  6    decisions out and you have to presume you're going forward.

14:54:52  7            I did want to say, we have two weeks set aside

14:54:57  8    for trial. And right now, what is the current state of

14:55:00  9    affairs? I have no -- I have not mandated case narrowing,

14:55:06 10    have I? Have I ever issued an order saying you must get

14:55:09 11    down to X amount of asserted claims by X date or haven't I.

14:55:19 12            MR. POWERS:  There's a case narrowing schedule

14:55:21 13    that the parties are abiding by.

14:55:22 14            THE COURT:  Is that one I entered or you all

14:55:25 15    just agreed to?

14:55:27 16            MR. RABINOWITZ:  It was stipulated, Your Honor.

14:55:29 17            MR. POWERS:  It was stipulated.

14:55:30 18            THE COURT:  Okay. And at the end of this, most

14:55:33 19    narrow part of it, what are we talking about in terms of

14:55:36 20    number of asserted claims presumably each side is going to

14:55:42 21    be presenting?

14:55:42 22            MR. POWERS:  I have here case narrowing, step

14:55:44 23    three narrowing of asserted claims, no more than 16 claims

14:55:47 24    for plaintiffs, no more than 12 claims for counterclaimants.

14:55:50 25            THE COURT:  And when does that hit?

14:55:52  1              MR. POWERS:  The earlier of September 5th or two

14:55:56  2     weeks after the Court issues its decisions on all summary

14:55:59  3     judgment pertaining to the claims.

14:56:01  4              THE COURT:  Oh.  And your trial is in October?

14:56:04  5              MR. POWERS:  Yes, Your Honor.

14:56:06  6              THE COURT:  Okay.  But four patents-in-suit on

14:56:10  7     the plaintiffs' side.  How many patents-in-suit on the

14:56:13  8     defendants' side?

14:56:14  9              MR. POWERS:  Three.

14:56:15 10              THE COURT:  And you're going to want to be --

14:56:19 11     case narrowing orders are good because they -- you're going

14:56:23 12     to want to be less than 16 and 12, so I'll just assume that

14:56:28 13     you will be.  Say we're going to trial on both sets of

14:56:31 14     patents, I'll issue the decision as we're getting to trial.

14:56:34 15     I'm going to assume you will aggressively think about how to

14:56:39 16     get to an even more narrow world.  If you don't, I may at

14:56:44 17     some point at someone's request impose some further

14:56:47 18     narrowing.  That would be a lot of claims for a jury to

14:56:50 19     consider.  And it would be -- I know we have two sets of

14:56:54 20     patents, two sets of parties, and patent trial is going to

14:57:02 21     have competing assertions of patent infringement, but two

14:57:05 22     weeks would be really long for a patent trial of any type

14:57:09 23     here.  So just because -- I may have said this at some

14:57:13 24     point, but just because we have two weeks reserved -- also a

14:57:17 25     huge ask for the jury.  Just because we have two weeks

14:57:20 1    reserved doesn't necessarily mean that the amount of hours

14:57:22 2    that will be given will be consistent with that.  We'll

14:57:27 3    certainly talk about hours or trial and scope as we get

14:57:29 4    closer to the trial.  So I'm just saying all this just to --

14:57:33 5    if you need guidance from me or anything as we get close,

14:57:36 6    Judge, haven't heard from you and we've got some issues we

14:57:38 7    need to get resolved, you can reach out, write a joint

14:57:42 8    letter or something like that.

14:57:43 9          Okay.  Well, with all that said, is there

14:57:47 10   anything procedurally we need to take up before I let you

14:57:50 11   all go?  From the plaintiffs' side, Mr. Rabinowitz?

14:57:53 12          MR. RABINOWITZ:  Nothing from plaintiffs.

14:57:54 13          THE COURT:  Okay.  From the defendants' side.

14:57:55 14          MR. PICKARD:  Not from us, Your Honor.

14:57:55 15          THE COURT:  Okay.  Well, thanks again to

14:57:57 16   counsel.  For all of our out of town folks, wish you safe

14:57:59 17   travels.  For our folks who are thinking about practicing

14:58:02 18   here, hope to not scare you away.

14:58:04 19          And with all that said, we'll stand adjourned.

14:58:08 20   Thank you.

14:58:09 21          COURT CLERK:  All rise.

14:58:11 22          (Court adjourned at 2:58 p.m.)

23

24          --------------------------------

25

1

2                    I hereby certify the foregoing is a true and
     accurate transcript from my stenographic notes in the
     proceedings.

3

4                                    /s/ Stacy M. Ingram, RPR
                                     Official Court Reporter
5                                     U.S. District Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25