**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC., <br><br> and <br><br> ROCHE SEQUENCING SOLUTIONS, INC., <br><br> Plaintiffs, <br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> Defendant. | Civil Action No.  1:22-CV-01597-CJB <br><br> **JURY TRIAL DEMANDED** |
| PARSE BIOSCIENCES, INC., <br><br> and <br><br> UNIVERSITY OF WASHINGTON, <br><br> Counterclaim Plaintiffs, <br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> Counterclaim Defendant. | |

i

## [PROPOSED] FINAL JURY INSTRUCTIONS[1,2]

---

[1] **ScaleBio/Roche Position:** Plaintiffs respectfully request bifurcation of the ScaleBio/Roche Asserted Claims from the Parse/UW Asserted Claims to minimize juror confusion, promote judicial economy, and avoid unfair prejudice. Plaintiffs' submission of draft jury instructions that consolidate issues on both sets of patents is solely for the Court's convenience and does not waive, concede, or imply that a single consolidated trial is appropriate. Additionally, "unclean hands" is an equitable defense to be decided by the judge. Plaintiffs are submitting jury instructions so that the jury can provide an advisory verdict, but Plaintiffs do not waive their right to have this Court make the ultimate decision on the issue.

**Parse/UW Position**: Parse/UW oppose bifurcation for the reasons set forth in Exhibit 18 of the Proposed Final Pretrial Order. Parse/UW similarly assert an unclean hands defense and seek to include jury instructions so that the jury may provide an advisory verdict. Parse/UW do not waive their right to have the Court render a decision on Parse/UW's unclean hands defense.

[2] **Joint Statement:** For convenience, and to facilitate the Court's assessment of the parties' disputes, the parties provide their competing proposals (both direct proposals and counterproposals), statements, and respective responses in brackets.

The parties reserve the right to pursue amended jury instructions and to revise their positions on the proposed instructions in response to future rulings by the Court.

## TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS ........................................................................... 1

      A.    INTRODUCTION ............................................................................ 1

      B.    JURORS' DUTIES ........................................................................... 2

      C.    USE OF NOTES ............................................................................. 3

      D.    EVIDENCE DEFINED ..................................................................... 4

      E.    DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................... 6

      F.    CONSIDERATION OF EVIDENCE ................................................ 7

      G.    CREDIBILITY OF WITNESSES .................................................... 8

      H.    EXPERT TESTIMONY ................................................................... 9

      I.    DEPOSITION TESTIMONY .......................................................... 10

      J.    USE OF INTERROGATORIES ..................................................... 11

      K.    [SCALEBIO/ROCHE PROPOSAL: REQUESTS FOR ADMISSION AND]
            UNCONTESTED FACTS [DISPUTED] ........................................ 12

      L.    NUMBER OF WITNESSES .......................................................... 13

      M.    EXHIBITS AND ILLUSTRATIVES [DISPUTED] ........................... 14

      N.    [Parse/UW Proposal: FAILURE TO PRESERVE EVIDENCE [DISPUTED] .. 15

      O.    BURDENS OF PROOF ................................................................. 16

2.    THE PARTIES AND THEIR CONTENTIONS [DISPUTED] ...................... 18

3.    SUMMARY OF THE PATENT ISSUES [DISPUTED] ................................ 20

4.    PATENTS ................................................................................................. 22

      A.    THE ROLE OF CLAIMS IN A PATENT ....................................... 22

      B.    INDEPENDENT AND DEPENDENT CLAIMS [DISPUTED] ........ 24

      C.    CONSTRUCTION OF CLAIM TERMS [DISPUTED] ................... 26

5.    INFRINGEMENT ...................................................................................... 30

A.      INFRINGEMENT GENERALLY [DISPUTED]................................................ 30

B.      DIRECT INFRINGEMENT – LITERAL INFRINGEMENT [DISPUTED] ..... 32

C.      DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS .................... 34

D.      INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT ............................ 35

E.      INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT ......... 36

F.      [SCALEBIO/ROCHE PROPOSAL: INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES FOR COMBINATION ABROAD [DISPUTED] ......................................................... 37

G.      WILLFUL INFRINGEMENT .............................................................................. 39

6.      INVALIDITY ..................................................................................................................... 40

A.      LEVEL OF ORDINARY SKILL IN THE ART [DISPUTED] ......................... 41

B.      WRITTEN DESCRIPTION [DISPUTED]......................................................... 42

C.      ENABLEMENT [DISPUTED] ............................................................................ 44

D.      EFFECTIVE FILING DATE................................................................................ 47

E.      PRIOR ART ........................................................................................................... 48

        1.      PRIOR ART TO THE ASSERTED SCALEBIO/ROCHE PATENTS ASSUMING AN EFFECTIVE FILING DATE OF JANUARY 31, 2012, OR EARLIER ......................................................................... 48

        2.      ADDITIONAL PRIOR ART TO THE ASSERTED SCALEBIO/ROCHE PATENTS ASSUMING AN EFFECTIVE FILING DATE OF MAY 17, 2017, OR LATER ..................................... 48

        3.      PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF NOVEMBER 14, 2014, OR EARLIER ......................................................................... 49

        4.      ADDITIONAL PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF NOVEMBER 13, 2015, OR LATER........................................................ 50

        5.      ADDITIONAL PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF FEBRUARY 25, 2021, OR LATER........................................................ 50

F.    PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO ....... 51

G.    INVALIDITY – ANTICIPATION ...................................................................... 52

H.    INVALIDITY – OBVIOUSNESS...................................................................... 54

7.    DAMAGES.......................................................................................................... 57

I.    DAMAGES – GENERALLY [DISPUTED]....................................................... 57

J.    REASONABLE ROYALTY – DEFINITION [DISPUTED] ............................. 59

K.    REASONABLE ROYALTY – RELEVANT FACTORS [DISPUTED]........... 60

L.    DAMAGES – COMPARABLE AGREEMENTS............................................... 64

M.    REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT
[DISPUTED].................................................................................................... 65

N.    [ScaleBio/Roche Proposal: REASONABLE ROYALTY – TIMING
[DISPUTED]..................................................................................................... 66

8.    UNENFORCEABILITY DUE TO UNCLEAN HANDS [DISPUTED] ....................... 68

9.    DELIBERATION AND VERDICT ................................................................................. 69

O.    UNANIMOUS VERDICT.................................................................................. 70

P.    DUTY TO DELIBERATE ................................................................................. 71

Q.    SOCIAL MEDIA ............................................................................................... 72

R.    COURT HAS NO OPINION ............................................................................. 73

## 1. GENERAL INSTRUCTIONS

### A.    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## B.     JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes any instructions I gave you before the trial, during the trial, and these instructions I am giving you now. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias or prejudice you may feel toward one side or the other influence your decision in any way.

### C.    USE OF NOTES

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is a tendency to attach undue importance to matters that have been written down. Some testimony that is considered unimportant at the time presented, and therefore not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### D.     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case only includes what the witnesses said while they were testifying under oath (including any deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any stipulations to which the parties have agreed.

Certain slides, charts and graphics have been used to illustrate testimony from witnesses. Those are called "illustratives" or, sometimes, "demonstratives." The purpose of those illustratives was to summarize or otherwise help you understand certain evidence in the case. Unless I have specifically admitted them into evidence, those illustratives are not evidence themselves, even if they refer to, identify, or summarize evidence.

Nothing else is evidence. The following things are not evidence: statements, arguments, and questions by the lawyers; objections by lawyers; any testimony I have told you to disregard; and anything you may have seen or heard about this case outside the courtroom. The arguments of the lawyers are offered solely as an aid to help you assess the evidence presented at trial.

If I sustained an objection during the trial, you should ignore the question that was asked. If I overruled an objection, you should treat the answer to the question like any other. Whether sustained or overruled, the objections themselves that the lawyers made should be ignored. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence, but those objections are not evidence themselves. Do not consider the fact that I sustained or denied an objection as any indication of my opinion of the case or of what your verdict should be.

A further word about statements and arguments of counsel. The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion that an attorney has offered during opening or closing statements, or at any other time during the course of the trial. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

If you were instructed that an item of evidence was received for a limited purpose, you must follow that instruction.

If I ordered testimony or exhibits stricken from the record and instructed you to disregard such testimony or exhibit, you should not consider any such stricken or excluded testimony or exhibit. Do not speculate about what a witness might have said or what an exhibit might have shown.

You are to make your decision based only on the evidence, as I have defined it here, and nothing else.

### E.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**F.**    **CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## G.    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses and witnesses who provided testimony by deposition.

### H.    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the Expert through special study or experience.

In weighing expert testimony, you may consider the Expert's qualifications, the reasons for the Expert's opinions, and the reliability of the information supporting the Expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## I.    DEPOSITION TESTIMONY

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

## J.    USE OF INTERROGATORIES

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

**K.**    **[SCALEBIO/ROCHE PROPOSAL: REQUESTS FOR ADMISSION AND] UNCONTESTED FACTS**

The parties have stipulated that certain facts are not disputed, or that the facts are agreed to, or stipulated that they are true. Some of those stipulations have been read to you during this trial and they are sometimes referred to as "Uncontested Facts" **[ScaleBio/Roche Proposal:** or "Requests for Admission."]³ You must treat these facts as having been proved for the purposes of this case.

---

³ **Parse/UW Position**: Requests for Admission are not stipulations, nor are they Uncontested Facts, which are limited to facts listed in Ex. 1 to the Joint Proposed Pretrial Order. Therefore, to mention Requests for Admission could lead to juror confusion. Moreover, Requests for Admission are questions and answers—responses to Requests for Admission may be read into the record so long as the entire question and answer are read into the record.

**ScaleBio/Roche Position:** ScaleBio/Roche's Exhibit List includes Requests for Admission, so this language should be included. *See* Joint [Proposed] Pretrial Order, Ex. 12, PTX-0842-44. This Court has included this instruction in a recent patent jury charge. *See* Final Jury Instructions § 1.12, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

**L.     NUMBER OF WITNESSES**

Do not weigh the evidence based only on the number of witnesses who testified. Instead, consider how credible each witness was, and how much weight you think their testimony deserves. Concentrate on that, not the number of witnesses.

## M.    EXHIBITS AND ILLUSTRATIVES

During the course of the trial, you have seen many exhibits, and many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room during your deliberations.

There are other exhibits, including charts and animations presented by attorneys and witnesses that were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, sometimes called "demonstrative exhibits," will not be in the jury room and have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, the underlying testimony of the witness that you heard when you saw the illustrative exhibits is the evidence. [**ScaleBio/Roche Proposal:** In some instances, certain charts and summaries may have been received into evidence to illustrate or summarize information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records may not be here. You should give them only such weight as you think they deserve.][4]

---

[4]**Parse/UW Position**: The majority of this instruction is taken from *Stodge Inc. v. Attentive Mobile Inc.*, No. 23-087-CJB, D.I. 789 at 12, but the language ScaleBio proposes is not present in *Stodge Inc. v. Attentive Mobile Inc.*, No. 23-087-CJB, D.I. 789 at 15 (Aug. 28, 2025). Parse/UW see no reason for the inconsistency.

**ScaleBio/Roche Position**: This complete instruction was included by this Court in *Midwest Energy*, and this language is useful to inform the jury about how it should treat charts and summaries that are entered into evidence. Final Jury Instructions § 1.13, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

### N.    [Parse/UW Proposal: FAILURE TO PRESERVE EVIDENCE

You should take into account that Roche had the ability to maintain its electronically stored information ("ESI") but did not do so. You may consider what effect, if any, the unavailability of such information to Parse has had on its ability to support the positions that it has advanced during this trial. If you conclude that it has had such an effect, you may consider it when evaluating the evidence in accordance with the other instructions that I will read to you about how you are to do so.][5]

---

[5] *Intex Recreation Corp. v. Bestway USA Inc.*, No. 16-3300-JAK-EX, 2025 WL 2020012, at *8 (C.D. Cal. July 14, 2025). Parse/UW also offer this instruction in relation to its Motion for Trial Sanctions, D.I. 488.

**ScaleBio/Roche Position:** ScaleBio/Roche object to the inclusion of any instruction on failure to preserve evidence. This instruction is subject to Parse/UW's pending Rule 37 motion (D.I. 448), which ScaleBio/Roche oppose. Notwithstanding the motion, the instruction is unnecessary, overboard, vague, and confusing to the jury.

### O.    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you, and I will now remind you what they mean.

In this case, ScaleBio and Roche allege that Parse infringes their patents. ScaleBio and Roche have the burden of proving infringement, willful infringement, and the amount of monetary damages by a preponderance of the evidence.

Similarly, Parse and UW allege that ScaleBio infringes their patents. Parse and UW have the burden of proving infringement, willful infringement, and the amount of monetary damages by a preponderance of the evidence.

Preponderance of the evidence means the party asserting infringement has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side.

As I noted earlier, Parse contends that the Asserted ScaleBio/Roche Patents are invalid. ScaleBio contends that the Asserted Parse/UW Patents are invalid. A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid. Clear and convincing evidence means that it is highly probable that the fact sought to be proved by the evidence is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement.

16

Those of you who are familiar with criminal cases may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof that applies only in criminal cases. It does not apply in a civil case such as this and you should, therefore, put it out of your mind.

## 2. THE PARTIES AND THEIR CONTENTIONS

I will now review for you the subject matter of this case, who the parties are, and what each of them contends.

This is a patent case. ScaleBio and Roche are asserting U.S. Patent Nos. 10,626,442, 10,982,256, 11,512,341, and 11,634,752, which you may have sometimes heard referred to individually as the '442 Patent, '256 Patent, '341 Patent, and '752 Patent, or collectively as the "Asserted ScaleBio/Roche Patents." Roche owns the Asserted ScaleBio Patents and ScaleBio is the exclusive licensee of those patents. On the other hand, Parse and University of Washington assert U.S. Patent Nos. 10,900,065, 11,168,355, and 11,427,856, which you may have sometimes heard referred to individually as the '065 Patent, '355 Patent, and '856 Patent, or collectively as the "Asserted Parse/UW Patents." University of Washington owns the Asserted Parse/UW Patents and Parse is the exclusive licensee of those patents.

ScaleBio and Roche contend that Parse has and continues to infringe certain claims of the Asserted ScaleBio/Roche Patents by making, using, selling, and offering for sale its single cell barcoding products in the United States, **[ScaleBio/Roche Proposal**: by the supply of components from the United States for combination outside of the United States],[6] by inducing its customers to use the products in an infringing manner, or by contributing to its customers' use of the products

---

[6] **Parse/UW Position:** Parse/UW object to ScaleBio's attempt to assert infringement through the supply of components from the United States to another country under § 271(f). Parse/UW includes such instructions only to the extent the Court allows ScaleBio to present this theory at trial. *See* Parse's Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) (D.I. 447).

**ScaleBio/Roche Position:** ScaleBio/Roche disagree, and Parse/UW have acknowledged that ScaleBio/Roche included this theory of infringement in their infringement contentions. *See* Parse's Opening Letter in Support of Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) Infringement, D.I. 447 at 1. ScaleBio/Roche incorporate by reference their forthcoming opposition to Parse's Motion (D.I. 447).

in an infringing manner. These claims may be referred to as the "Asserted ScaleBio/Roche Claims." ScaleBio and Roche seek monetary damages for the infringement, and they also contend that Parse's infringement is willful. Parse denies that it infringes any of the Asserted ScaleBio/Roche Claims and contends that the Asserted ScaleBio/Roche Claims are invalid.

Parse and UW contend that ScaleBio has infringed and continues to infringe certain claims of the Asserted Parse/UW Patents by using its single cell barcoding products in the United States, by inducing its customers to use the products in an infringing manner, or by contributing to its customers' use of the products in an infringing manner. These claims may be referred to as the "Asserted Parse/UW Claims." Parse and UW seek monetary damages for the infringement, and they also contend that ScaleBio's infringement is willful. ScaleBio denies that it infringes any of the Asserted Parse/UW Claims and contends that the Asserted Parse/UW Claims are invalid.

### 3.  SUMMARY OF THE PATENT ISSUES

You must decide the following issues in this case according to the instructions that I give you:

1.  Whether ScaleBio and Roche have proven by a preponderance of the evidence that Parse has infringed one or more of the Asserted ScaleBio/Roche Claims.

2.  If you decide that ScaleBio and Roche have proven that Parse infringed one or more of the Asserted ScaleBio/Roche Claims, whether ScaleBio and Roche have proven by a preponderance of the evidence that Parse willfully infringed that claim.

3.  Whether Parse has proven by clear and convincing evidence that one or more of the Asserted ScaleBio/Roche Claims is invalid.

4.  If you decide that ScaleBio and Roche have proven that Parse infringed a claim not shown to be invalid, what monetary damages ScaleBio and Roche have proven by a preponderance of the evidence that they are entitled to.

5.  Whether Parse has shown by clear and convincing evidence that the Asserted ScaleBio/Roche '442 Patent is unenforceable;[7]

6.  Whether Parse and UW have proven by a preponderance of the evidence that ScaleBio has infringed one or more of the Asserted Parse/UW Claims.

---

[7] **Parse Position:** Parse respectfully requests that the Court allow its unclean hands defense to be presented to the jury and that the jury render an advisory verdict.

**ScaleBio/Roche Position:** ScaleBio/Roche is moving to exclude Parse's unclean hand defense and related evidence. ScaleBio/Roche agree to include this draft jury instruction for use only if the Court rejects ScaleBio/Roche's motion in *limine* and if the Court allows Parse to present evidence to the jury on this defense.

7.  If you decide that Parse and UW have proven that ScaleBio infringed one or more of the Asserted Parse/UW Claims, whether Parse and UW have proven by a preponderance of the evidence that ScaleBio willfully infringed that claim.

8.  Whether ScaleBio has proven by clear and convincing evidence that one or more of the Asserted Parse/UW Claims is invalid.

9.  If you decide that Parse and UW have proven that ScaleBio infringed a claim not shown to be invalid, what monetary damages Parse and UW have proven by a preponderance of the evidence that they are entitled to.

10. Whether ScaleBio has shown by clear and convincing evidence that the Asserted Parse/UW Patents are unenforceable.[8]

---

[8] **ScaleBio Position:** ScaleBio respectfully requests that the Court allow its unclean hands defense to be presented to the jury and that the jury render an advisory verdict.

## 4.  PATENTS

### A.    THE ROLE OF CLAIMS IN A PATENT

Before you can decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed, not other portions of the patent.

The claims are intended to define, in words, the boundaries of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers. Each of the claims must be considered individually.

Each claim is made up of claim elements (also referred to as claim limitations). A claim "element" (or claim "limitation") is another word for a requirement of a claim. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. A patent claim is infringed only if an accused product or process includes each and every element in that patent claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you

decide that an accused product includes all of the requirements of that claim, the claim is infringed.

This is true even if the accused product contains additional elements.

## B.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

For example, Claim 1 of the '256 Patent is an independent claim. You know this because Claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Any claim that is not an independent claim is called a dependent claim. A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" from another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. **[ScaleBio/Roche Proposal:** A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.**]**

**[Parse/UW Proposal:** An accused product or method is only covered by, and therefore infringes, a dependent claim if the accused product or method meets all of the requirements of both the dependent claim and the claims from which the dependent claim depends. Because a dependent claim incorporates all of the features of the independent claims from which it depends, if you find

that an independent claim is not infringed, then the claims that depend from that independent claim cannot be infringed.][9]

For example, Claim 2 of the '256 Patent is a dependent claim. If you look at Claim 2, it refers to Claim 1. Therefore, to determine what Claim 2 of the '256 Patent covers, you must consider the words of Claims 1 and 2 together.

---

[9] **Parse/UW Position:** Final Jury Instructions, *Amgen Inc., et al. v. Hospira, Inc.*, No. 15-839-RGA, D.I. 323; *see also* FCBA Model Jury Instructions § B.3.3.1a (providing similar instructions).

**ScaleBio/Roche Position:** This language is redundant; ScaleBio/Roche's proposed language, immediately preceding, follows this Court's most recent patent jury charge and the FCBA Model Jury Instructions. *Stodge Inc. v. Attentive Mobile Inc.*, No. 23-087-CJB, D.I. 789 at 20 (Aug. 28, 2025); FCBA Model Patent Jury Instructions, § B.2.1a, at 14.

### C.    CONSTRUCTION OF CLAIM TERMS

Before deciding if there is any infringement of the asserted claims, you will first need to understand what each claim covers. The law says that it is my role to define the terms of the claims, and it is your duty to apply my definitions. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. You must ignore any different interpretation that you may either believe is true or different interpretations referenced by the witnesses or by the attorneys.

The following claim terms have the following constructions:[10]

| Claim Term | Patent/Claim(s) | Construction |
|---|---|---|
| "unique binding agent"/ "UBA" | '256 Patent: all asserted claims | "a molecule or assembly that is designed to bind with at least one target molecule, at least one target molecule surrogate, or both;" |
| "target molecules" | '442 Patent: claim 11 '752 Patent: all asserted claims | "molecules of interest... that are being detected or quantified" |

---

[10] **ScaleBio/Roche Position:** ScaleBio/Roche oppose including the parties' agreed-to claim constructions—highlighted in yellow—in the instructions read to the jury but agrees to include them in the juror notebooks for their reference. While they are agreed-to constructions, they are not ordered by the Court, and in this case, they add unnecessary length to this instruction, which is already quite long, and thus risks juror confusion. Without more explanation, the instruction read as a whole suggests that the constructions are the Court's constructions, and that is not proper.

**Parse/UW Position:** For the jury's purposes and for purposes of determining the scope of the claims, there is no distinction between the parties' agreed-to constructions and the constructions determined by the Court. Therefore, there should be no such distinction made to the jury.

| Claim Term | Patent/Claim(s) | Construction |
|---|---|---|
| "coupling" | '442 Patent: claim 11 | "directly or indirectly coupling;" |
| Split[-]pool synthesis | '256 Patent (all asserted claims) | "a stepwise synthesis technique where a sample is split into multiple reaction volumes, which are separately processed and then pooled" |
| Cell origination barcode[s] / Cell originating barcode[s] (COB) | '256 Patent (all asserted claims) | "one or more molecular entities that collectively provide a code that indicates the cell of origin" |
| Cell or organelle origination barcode | '752 Patent (claim 1) | "one or more molecular entities that collectively provide a code that indicates the cell or organelle of origin" |
| "Assayable polymer subunit (APS)"

"Assayable oligonucleotide subunits" | '256 Patent (all asserted claims)
'752 Patent (all asserted claims)
'341 Patent (all asserted claims) | plain and ordinary meaning |
| "A method of cell-specifically labeling RNA molecules within a plurality of cells" | '065 Patent: all asserted claims
'856 Patent: all asserted claims
'355 Patent: all asserted claims | "A method of generating labels that identify the cell of origin of RNA molecules, where the cell-specific labels are the product of multiple rounds of appending well-specific tags to cDNAs within intact cells." |

| Claim Term | Patent/Claim(s) | Construction |
|---|---|---|
| "Coupling the provided secondary nucleic acid tags [] of (h) to the primary nucleic acid-tagged cDNA molecules of (e)" | '065 Patent (all asserted claims) '355 Patent (all asserted claims) '856 Patent (all asserted claims) | "coupling the secondary nucleic acid tags that were provided in step (h) to the primary nucleic acid-tagged cDNA molecules that were produced in step (e)" |
| Adapter sequence | '065 Patent (claim 9) | "a nucleic acid sequence that provides or facilitates a function" |
| Integrating the adapter sequence into the cDNA molecules | '065 Patent (claim 9) | "inserting the adapter sequence into the cDNA molecules" |
| Coupling | '065 Patent (all claims) '856 Patent (all claims) '355 Patent (all claims) | "binding or attaching" |
| Primer | '065 Patent (all asserted claims) '856 Patent (all asserted claims) '355 Patent (all asserted claims) | "a short sequence of nucleic acids that includes a 3'-hydroxyl moiety and is adapted to be extended in a template-dependent manner by a polymerase" |

| Claim Term | Patent/Claim(s) | Construction |
|---|---|---|
| Barcode sequence | '856 Patent (all asserted claims)<br>'355 Patent (all asserted claims) | "a sequence of nucleotides added to a molecule that is capable of identifying or aiding in identification of the cell from which the molecule originated" |

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

For any claim term that I have not provided a definition, you should use that term's ordinary meaning within the context of the patent in which the claim term is used.

## 5.  INFRINGEMENT

### A.    INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow in order to decide whether or not a patent owner or exclusive licensee has proven that an alleged infringer has infringed an asserted patent. Infringement is assessed on a claim-by-claim basis. Therefore, you, the jury, must determine infringement for each claim separately. As a result, there may be infringement as to one claim but no infringement as to another.

In this case, there are four possible ways that a claim may be infringed. The four types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; and (4) infringement through the supply of components from the United States to another country.[11] Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, ScaleBio and Roche have alleged that Parse directly infringes the Asserted ScaleBio/Roche Patents. In addition, ScaleBio and Roche have alleged that Parse's customers directly infringe the Asserted ScaleBio/Roche Patents, and that Parse is liable for actively inducing or contributing to that direct infringement by Parse's customers. ScaleBio and Roche have also

---

[11] **Parse/UW Position:** Parse/UW object to ScaleBio's attempt to assert infringement through the supply of components from the United States to another country under § 271(f). Parse/UW includes such instructions only to the extent the Court allows ScaleBio to present this theory at trial. *See* Parse's Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) (D.I. 447).

**ScaleBio/Roche Position:** ScaleBio/Roche disagree, and Parse/UW have acknowledged that ScaleBio/Roche included this theory of infringement in their infringement contentions. *See* Parse's Opening Letter In Support of Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f). Infringement, D.I. 447 at 1. ScaleBio/Roche incorporate by reference their forthcoming opposition to Parse's Motion.

alleged that Parse is liable for infringement through the supply of components from the United States for combination outside of the United States.[12]

In order to prove infringement, ScaleBio and Roche must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

Parse and UW have alleged that ScaleBio directly infringes the Asserted Parse/UW Patents. In addition, Parse and UW have alleged that ScaleBio's customers directly infringe the Asserted Parse/UW Patents, and ScaleBio is liable for actively inducing or contributing to that direct infringement by ScaleBio's customers.

In order to prove infringement, Parse and UW must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

---

[12] **Parse/UW Position:** Parse/UW object to ScaleBio's attempt to assert infringement through the supply of components from the United States to another country under § 271(f). Parse/UW includes such instructions only to the extent the Court allows ScaleBio to present this theory at trial. *See* Parse's Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) (D.I. 447).

**ScaleBio/Roche Position:** ScaleBio/Roche disagree, and Parse/UW have acknowledged that ScaleBio/Roche included this theory of infringement in their infringement contentions. *See* Parse's Opening Letter In Support of Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f). Infringement, D.I. 447 at 1. ScaleBio/Roche incorporate by reference their forthcoming opposition to Parse's Motion (D.I. 447).

31

### B.    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." To prove direct infringement by literal infringement, the patent owner or exclusive licensee must prove by a preponderance of the evidence, i.e., that it is more likely than not, that the alleged infringer made, used, sold, or offered for sale within the United States a product or process that meets all of the requirements of a claim without the permission of the patent owner or exclusive licensee during the time the asserted patents were in force—i.e., after the issue date of that patent. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the accused product or process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**[Parse/UW Position:** If the use of an accused product or service does not satisfy one or more elements recited in the claim, there is no literal infringement with respect to that claim for that accused product or service. It is not enough that the products are highly similar to the patent claims or function in similar ways. You should note, however, that the presence of other elements

in an accused product or service beyond those claimed does not avoid infringement so long as every claimed element is present in an accused product or service.][13]

---

[13] **Parse/UW Position:** Final Jury Instructions, *TwinStrand Biosciences, Inc. v. Guardant Health Inc.*, No. 21-1126-GBW, D.I. 494 at 23.

**ScaleBio/Roche Position**: This language is redundant to language included in the first paragraph of this instruction. The negative instruction is not necessary and the sentence "[i]t is not enough that the products are highly similar to the patent claims or function in similar ways" may be confusing to the jury. These instructions are already quite long and extending them with unnecessary content is not likely to assist the jury's comprehension.

### C.    DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS

If a person or company makes, uses, sells, or offers to sell within the United States a product or uses within the United States a process that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies that claim element "under the doctrine of equivalents."

Under the doctrine of equivalents, a product or process infringes a claim if the accused product or process contains elements or performs steps that literally meet or are equivalent to each and every element of the claim. You may find that an element or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," the patent holder must prove the equivalency of the structure or action to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused product or process either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the structure or action to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

### D.    INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT

ScaleBio and Roche allege that Parse is liable for infringement by actively inducing customers to directly infringe the Asserted ScaleBio/Roche Patents literally or under the doctrine of equivalents. Parse and UW allege ScaleBio is liable for infringement by actively inducing customers to directly infringe the Asserted Parse/UW Patents literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

An alleged infringer is liable for active inducement of a claim only if the patent holder proves by a preponderance of the evidence:

1.  that the acts that are actually carried out by the customers directly infringe that claim;

2.  that the alleged infringer took action during the time the asserted patent was in force—i.e., after the issue date of that patent—that was intended to cause and led to the infringing acts by the customers; and

3.  that the alleged infringer was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of that patent or that the alleged infringer believed there was a high probability that the acts by customers would infringe a patent and the alleged infringer took deliberate steps to avoid learning of that infringement.

### E.     INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT

ScaleBio and Roche argue that Parse is liable for contributory infringement by contributing to the direct infringement of the Asserted ScaleBio/Roche Patents by customers. Parse and UW argue that ScaleBio is liable for contributory infringement by contributing to the direct infringement of the Asserted Parse/UW Patents by customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

An alleged infringer is liable for contributory infringement of a claim if a patent holder proves by a preponderance of the evidence that:

1. The alleged infringer sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the patent is in force;

2. The component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

3. The component, material, or apparatus constitutes a material part of the invention;

4. The alleged infringer is aware of the patent and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

5. Customers use the component, material, or apparatus to directly infringe a claim.

F.    [SCALEBIO/ROCHE PROPOSAL: INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES FOR COMBINATION ABROAD[14]

Parse is liable for § 271(f)(1) infringement of a claim (active inducement of foreign combination of components supplied from the United States) if ScaleBio and Roche prove by a preponderance of the evidence that:

1.    Parse supplies, or causes to be supplied, components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of an asserted claim of the '752 Patent;

2.    Parse takes action intentionally to cause customers to assemble the components outside of the United States;

3.    Parse knows of the '752 Patent, and knows that the encouraged acts constitute infringement of that patent; and

4.    The encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

_____

[14] FCBA Model Patent Jury Instructions, § B.3.4, at 27-28.

**Parse Position:** Parse objects to ScaleBio/Roche's attempts to assert at trial the theory of infringement through the supply of components from United States to combination abroad (§ 271(f)). Parse includes instructions on this theory only to the extent the Court allows ScaleBio/Roche to present this theory at trial. *See* Parse's Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) (D.I. 447).

**ScaleBio/Roche Position:**  ScaleBio/Roche disagree, and Parse/UW have acknowledged that ScaleBio/Roche included this theory of infringement in their infringement contentions. *See* Parse's Opening Letter in Support of Motion to Strike Portions of Mr. Mooney's Supplemental Report and Theories of § 271(f) Infringement, D.I. 447 at 1. ScaleBio/Roche incorporate by reference their forthcoming opposition to Parse's Motion.

If you find that Parse was aware of the patent, but believed that the acts it encouraged would not constitute infringement of the patent if carried out in the United States, Parse cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that the foreign customer itself allegedly directly infringes the claim. Nor is it sufficient that Parse was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that Parse specifically intended for the foreign customer to infringe the '752 Patent, in order to find inducement of infringement. If you do not find that Parse specifically intended to infringe, then you must find that Parse has not actively induced the alleged infringement under § 271(f)(1)].

## G.    WILLFUL INFRINGEMENT

In this case, ScaleBio and Roche argue that Parse willfully infringed the ScaleBio/Roche Asserted Patents. Parse and UW argue that ScaleBio willfully infringed the Asserted Parse/UW Patents. If you have decided that an alleged infringer has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether the patent holder proved that it is more likely than not that the alleged infringer knew of the patent holder's patent and that the infringement by the alleged infringer was intentional. You may not determine that the infringement was willful just because the alleged infringer was aware of the patent and infringed it. Instead, you must also find that the alleged infringer deliberately infringed the patent.

To determine whether the alleged infringer acted willfully, consider all facts and assess the alleged infringer's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1.  Whether or not the alleged infringer acted consistently with the standards of behavior for its industry;

2.  Whether or not the alleged infringer intentionally copied a product of the patent holder that is covered by the patent;

3.  Whether or not the alleged infringer reasonably believed it did not infringe or that the patent was invalid;

4.  Whether or not the alleged infringer made a good-faith effort to avoid infringing the patent, for example, whether the alleged infringer attempted to design around the patent; and

5.  Whether or not the alleged infringer tried to cover up its infringement.

## 6.  INVALIDITY

I will now instruct you on the rules you must follow in deciding whether or not an alleged infringer has proven that any of the asserted claims in this case are invalid.

To prove that any claim of a patent is invalid, the alleged infringer must persuade you by clear and convincing evidence; that is, you must be convinced that it is highly probable that the claim is invalid.

I previously told you that infringement must be assessed on a claim-by-claim basis. That is also true for invalidity. Invalidity must be determined on a claim-by-claim basis.

## A.    LEVEL OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.

In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1.  The levels of education and experience of the inventor and other persons actively working in the field;

2.  The types of problems encountered in the field;

3.  Prior art solutions to those problems;

4.  Rapidity with which innovations are made; and

5.  The sophistication of the technology.

## B.    WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the filing date of the patent application at issue. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the filing date of the patent application at issue. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A specification adequately describes an invention when it reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date of the patent application at issue. [**ScaleBio/Roche Proposal:** The question is not whether the specification provides an adequate description of the Accused Products, but whether the specification provides an adequate description of the claimed invention.][15] A claimed element is disclosed inherently if a person having ordinary skill in the field as of the filing date of the patent

---

[15] **Parse/UW Position**: The dispute is not whether the specification of any asserted patent provides adequate description of any accused product and this language is not present in the FCBA Model Patent Jury Instructions, § B.4.2a. The language ScaleBio proposes unnecessarily presents an issue that is not before the jury, thereby risking juror confusion.

**ScaleBio/Roche Position**: This language is not redundant, as it clarifies the sufficiency standard for the written description requirement. *See Ariad Pharms., Inc. v. Eli Lilly* & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) ("In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."); *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, --- F.4th ---- (2025), 2025 WL 2799030, at *12 ("The district court thus did not err in explaining that the question is not whether the specification provides an adequate description of the Accused Products, but whether the specification provides an adequate description of the claimed invention.")(alterations and citations omitted).

application at issue would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

Parse contends that the asserted claims of the Asserted ScaleBio/Roche Patents are invalid because the specification of the Asserted ScaleBio/Roche Patents does not contain an adequate written description of the claimed invention. To succeed, Parse must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the filing date of the patent application at issue would not have recognized that it describes the full scope of the invention as it is finally claimed in each of the Asserted ScaleBio/Roche Patents.

ScaleBio contends that the asserted claims of the Asserted Parse/UW Patents are invalid because the specification of the Asserted Parse/UW Patents does not contain an adequate written description of the claimed invention. To succeed, ScaleBio must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the filing date of the patent application at issue would not have recognized that it describes the full scope of the invention as it is finally claimed in each of the Asserted Parse/UW Patents.

## C.    ENABLEMENT[16]

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. Parse contends that the asserted claims of the Asserted ScaleBio/Roche Patents are invalid because the specification does not "enable" [**Parse/UW's Proposal:** one to "make and use"][17] the full scope of the claimed invention. To succeed, Parse must show by clear and convincing evidence that the specification of the Asserted ScaleBio/Roche Patents does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the filing date of the patent application at issue, without undue experimentation. [**ScaleBio/Roche Proposal:** The enablement requirement is met if the description enables any mode of making and using the invention.][18] [**Parse/UW's Proposal:** To meet this requirement, the description in the patent has to be sufficiently full and clear to have

---

[16] FCBA Model Patent Jury Instructions, § B.4.2b, at 40-41.

[17] **Parse/UW's Position:** FCBA Model Patent Jury Instructions, § A.4, at 6–7; *see also Adang v. Fischhoff*, 286 F.3d 1346, 1355 (Fed. Cir. 2002) ("The legal question of enablement involves assessment of whether a patent disclosure would have enabled one of skill in the art at the time the application was filed to *make and use the claimed invention* without undue experimentation.") (emphasis added); *Amgen Inc. v. Sanofi*, 598 U.S. 594, 612 (2023) ("courts cannot detract from the basic statutory requirement that a patent's specification describe the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art" to "make and use" the invention (citing § 112(a)) .

**ScaleBio/Roche Position:** Parse/UW cite the FCBA Model for preliminary instructions that provide a general overview of this topic. This language is not present in the FCBA Model for final instructions on Enablement. FCBA Model Patent Jury Instructions, § B.4.2b, at 40-41.

[18] **Parse/UW's Position:** This language is not present in the FCBA Model Patent Jury Instructions § B.4.2a.

**ScaleBio/Roche Position:** This language is from *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1369 (Fed. Cir. 2014), and is directly relevant to the jury's determination of whether the Asserted ScaleBio Patents are enabled.

allowed persons of ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention without undue experimentation, at the time the patent application was filed.][19] If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1. The time and cost of any necessary experimentation;

2. How routine any necessary experimentation is in the field of **[Parse/UW Proposal:** molecular and cellular biology] **[ScaleBio/Roche Proposal:** single cell sequencing and split-pool analysis];[20]

---

[19] **Parse/UW's Position:** FCBA Model Patent Jury Instructions, § A.4, at 6–7; *Amgen Inc. v. Sanofi*, 598 U.S. 594, 610 (2023) ("If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class. In other words, the specification must enable the full scope of the invention as defined by its claims."); *Adang v. Fischhoff*, 286 F.3d 1346, 1355 (Fed. Cir. 2002) ("The legal question of enablement involves assessment of whether a patent disclosure would have enabled one of skill in the art at the time the application was filed to *make and use the claimed invention* without undue experimentation.") (emphasis added).

**ScaleBio/Roche Position:** Parse/UW's proposed language, which is derived from the FCBA Model's preliminary "Overview" instruction, is duplicative to the above language already included, which follows the final "Enablement" instruction in the FCBA model. *See* FCBA Model Patent Jury Instructions, § B.4.2b, at 40-41.

[20] **ScaleBio/Roche Position:** ScaleBio/Roche propose a ***field*** of the invention that closely aligns with each of the technical experts' opinions in this case. *See, e.g.,* 10/10/2024 Shalek Report, ¶ 72 ("the fields of single cell sequencing and split-pool synthesis"); 10/10/2024 Sims Report, ¶ 34 (same); 10/10/2024 Shalek Report, ¶ 71 ("the field of detection, identification, and quantification of target molecules in single cells in a sample"); 10/10/2024 Sims Report, ¶ 33 (same); 10/18/2024 Sims Report, ¶ 70 (same); 10/10/2024 Pachter Report, ¶ 11 ("relating to detection, identification,

3. Whether the patent discloses specific working examples of the claimed invention;

4. The amount of guidance presented in the patent;

5. The nature and predictability of the field of **[Parse/UW Proposal:** molecular and cellular biology**] [ScaleBio/Roche Proposal:** of single cell sequencing and split-pool analysis**]**;

6. The level of ordinary skill in the field of **[Parse/UW Proposal:** molecular and cellular biology**] [ScaleBio/Roche Proposal:** of single cell sequencing and split-pool analysis**]**; and

7. The nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the filing date of the patent application at issue, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

---

and quantification of target molecules in cells, including labeling and barcoding target molecules, including preparation techniques, amplification methods, and nucleic acid sequencing technologies"); 10/10/2024 Satija Report, ¶ 21 (same). Parse/UW's proposal is not focused on the field of the invention but the broader discipline that a POSITA may be educated in.

**Parse/UW Position:** Parse/UW propose a field of invention that covers the asserted patents and accused products and matches the education in the parties' definition of a POSA that is easily understood by a layperson. *See, e.g.*, 10/10/2024 Patcher Rep., ¶ 11 ("A POSA relevant to the ScaleBio Asserted Claims of the ScaleBio Asserted Patents typically had (1) a Ph.D., in molecular biology, genetics, biochemistry, biophysics, chemistry, or a related discipline and at least about two years of relevant postdoctoral or industry experience. . . ."); 10/10/2024 Sims Report, ¶ 33 (same); 10/10/2024 Shalek Rep. ¶ 71 ("In my opinion, a person of ordinary skill in the field of the ScaleBio Asserted Patents (POSA) would have been a scientist or similar professional with an advanced degree, such as a Masters and/or Ph.D., in  molecular biology, genetics, biochemistry, biophysics, chemistry, or a related discipline. . . ."); 10/10/2024 Satija Report, ¶ 21 (same).

### D.    EFFECTIVE FILING DATE

A patent owner may rely on some or all of the specification of an earlier, related patent application to show they already possessed the claimed invention as of the filing date of the earlier application. This earlier filing date is called the "effective filing date." For the patent to receive the benefit of the earlier effective filing date, the earlier application must meet the written description and enablement requirements as of the filing date of the earlier application, which I have just explained to you.[21] If the earlier specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention of the later patent without undue experimentation, the claims of the patent are not entitled to the earlier effective filing date. If a person having ordinary skill in the field reading the earlier specification would have recognized that it describes the full scope of the invention as it is finally claimed, then the claims of the patent are entitled to the earlier effective filing date.

In this case, the Asserted ScaleBio/Roche Patents claim an effective filing date of at least January 31, 2012. Parse disputes that the Asserted ScaleBio/Roche Patents are entitled to the effective filing date of January 31, 2012.

In this case, the Asserted Parse/UW Patents claim an effective filing date of November 14, 2014. ScaleBio disputes that the Asserted Parse/UW Patents are entitled to the effective filing date of November 14, 2014.

---

[21] *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010) ("For a parent application to provide the filing date for claims of a continuing application, the description in the parent must meet the requirements of 35 U.S.C. § 112, first paragraph, as to that claimed subject matter.").

### E.    PRIOR ART

In order for someone to be entitled to a patent, the invention must actually be new and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims of the patents are anticipated or obvious.

ScaleBio/Roche assert that the Asserted ScaleBio/Roche Patents have an effective filing date of no later than January 31, 2012. Parse asserts that the Asserted ScaleBio/Roche Patents have an effective filing date of May 17, 2017, or later.

Parse/UW asserts that the Asserted Parse/UW Patents have an effective filing date of no later than November 14, 2014. ScaleBio asserts that the Asserted Parse/UW Patents have an effective filing date of November 13, 2015, or later.

The definition of "prior art" depends on the effective filing date of a patent.

### 1.    PRIOR ART TO THE ASSERTED SCALEBIO/ROCHE PATENTS ASSUMING AN EFFECTIVE FILING DATE OF JANUARY 31, 2012, OR EARLIER

If you determine that the Asserted ScaleBio/Roche Patents are entitled to an effective filing date of January 31, 2012, or earlier, Parse contends that the following references are prior art:

1. U.S. Patent Application Publication No. 2009/0264300 ("Franch");

2. U.S. Patent Application Publication No. 2006/0099592 ("Freskgard"); and

3. U.S. Patent Application Publication No. 2006/0177833 ("Brenner-II").

### 2.    ADDITIONAL PRIOR ART TO THE ASSERTED SCALEBIO/ROCHE PATENTS ASSUMING AN EFFECTIVE FILING DATE OF MAY 17, 2017, OR LATER

If you determine that the Asserted ScaleBio/Roche Patents are entitled to an effective filing date of May 17, 2017, or later, Parse contends that the following additional reference is prior art:

1. U.S. Patent Application Publication No. 2016/0138086 ("Seelig").

48

### 3.    PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF NOVEMBER 14, 2014, OR EARLIER

If you determine that the Asserted Parse/UW Patents are entitled to an effective filing date of November 14, 2014, or earlier, ScaleBio contends that the following is prior art to each of the three Asserted Parse/UW Patents:

1. WIPO Publication No. WO 2012/106385 A2, App. No. PCT/US2012/023411 (filed Jan. 31, 2012; published Aug. 9, 2012) ("Nolan 2012");

2. Shao-Yao Ying et al., Generation of Full-Length cDNA Library from Single Human Prostate Cancer Cells, 27(3) Biotechniques 410-14 (published Sep. 1999) ("Ying")

3. Anna Ligasová and Karel Koberna, In situ reverse transcription: the magic of strength and anonymity, 38(16) Nucleic Acids Research e167 (published July 13, 2010) ("Ligasová");

4. Je Hyuk Lee et al., Highly Multiplexed Subcellular RNA Sequencing in Situ, 343 Science 1360-1363 (published Feb. 27, 2014) ("Lee");

5. Diego A. Jaitin et al., Massively Parallel Single-Cell RNA-Seq for Marker-Free Decomposition of Tissues into Cell Types, 343 Science 776 (published Feb. 14, 2014) ("Jaitin");

6. Tamar Hashimshony et al., CEL-Seq: Single-Cell RNA-Seq by Multiplexed Linear Amplification, 2 Cell Reports 666 (published Sept. 27, 2012) ("Hashimshony"); and

7. Jason Gertz et al., Transposase mediated construction of RNA-seq libraries, 22 Genome Research 134-141 (published Nov. 29, 2011) ("Gertz").

### 4. ADDITIONAL PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF NOVEMBER 13, 2015, OR LATER

If you determine that the Asserted Parse/UW Patents are entitled to an effective filing date of November 13, 2015, or later, ScaleBio contends that the following is prior art to each of the three Asserted Parse/UW Patents:

1. U.S. Patent Application Publication No. 2023/0049314 A1 ("Nolan 2014"); and

2. H. Christina Fan et al., Combinatorial labeling of single cells for gene expression cytometry, 347(6222) Science 628 (published Feb. 6, 2015) ("Fan").

### 5. ADDITIONAL PRIOR ART TO THE ASSERTED PARSE/UW PATENTS ASSUMING AN EFFECTIVE FILING DATE OF FEBRUARY 25, 2021, OR LATER

If you determine that the Asserted '355 or '856 Parse/UW Patents are entitled to an effective filing date of February 25, 2021, or later, ScaleBio contends that the following additional references are prior art to the '355 and '855 Patents:

1. Junyue Cao et al., Comprehensive single cell transcriptional profiling of a multicellular organism 357(6352) Science 661 (published Aug. 18, 2017) ("Cao"); and

2. Alexander B. Rosenberg et al., Single-cell profiling of the developing mouse brain and spinal cord with split-pool barcoding, 360 Science 176-82 (published Apr. 13, 2018) ("Rosenberg").

### F.    PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Regardless of whether particular prior art references were considered by the Patent Examiners during the prosecution of the applications that matured into the Asserted ScaleBio/Roche Patents or the Asserted Parse/UW Patents, the respective parties must prove invalidity by clear and convincing evidence. This burden of proof on the respective parties never changes regardless of whether or not the Patent Examiner considered the reference.

Where a party is relying on prior art that was not considered by the Patent Examiner during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether that party has carried its clear-and convincing burden of proving invalidity.

### G.    INVALIDITY – ANTICIPATION

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a product or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is said to be "anticipated" by the prior art. To prove anticipation, an alleged infringer must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. For anticipation, each and every element in the claim must be present in a single prior art reference and arranged or disclosed as recited in the claim. You may not combine two or more prior art references to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior art.  The claim requirements must be disclosed such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

Parse contends that Seelig anticipates the asserted claims of each of the four Asserted ScaleBio/Roche Patents.

Parse also contends that each of Franch, Freskgard, and Brener-II anticipates the asserted claims of the ScaleBio/Roche '752 Patent.

ScaleBio contends that Nolan 2014 anticipates the asserted claims of each of the three Asserted Parse/UW Patents.

ScaleBio also contends that the Cao and Rosenberg publications each anticipate the asserted claims of Parse/ UW's '355 and '856 Patents.

### H.     INVALIDITY – OBVIOUSNESS

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the effective filing date of the claims.

An alleged infringer may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time of the effective filing date of the claims in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time of the effective filing date of the claims, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the effective filing date.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the effective filing date of the claims, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known

problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success in achieving the claimed invention.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:[22]

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention

d. Whether others copied the claimed invention;

e. Whether others invented the claimed invention at roughly the same time;

f. Whether others copied the claimed invention;

g. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

h. Whether the claimed invention achieved unexpected results;

---

[22] The parties agree to conform the list of relevant objective indicia to the evidence entered into the record at trial via joint submission to the Court before final instructions are read to the jury.

i.  Whether others in the field praised the claimed invention;

j. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

k.Whether others sought or obtained rights to the patent from the patent holder; and

l.  Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

Parse contends that the combination of Franch and Freskgard renders Claim 6 of ScaleBio/Roche's '752 Patent obvious.

ScaleBio contends that Nolan 2012, in combination with one or more of the Ying, Ligasová, Lee, Fan, Jaitin, Hashimshony, or Gertz, renders the asserted claims of each of the Asserted Parse/UW Patents obvious.

ScaleBio also contends that Nolan 2014, in combination with one or more of the Ying, Ligasová, Fan, Jaitin, or Hashimshony, renders the asserted claims of each of the Asserted Parse/UW Patents obvious.

## 7.  DAMAGES

### I.       DAMAGES – GENERALLY

If you find that any valid claim asserted in this case is infringed, you must then consider what amount of damages to award to the patent owner or exclusive licensee. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that a party has not infringed any valid claim of the patent, then the patent owner or exclusive licensee is not entitled to any damages.

The damages you award must be adequate to compensate the patent owner or exclusive licensee for the infringement. You may not add anything to the amount of damages for interest. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put the patent owner or exclusive licensee in approximately the same financial position that it would have been in had the infringement not occurred.

The patent owner or exclusive licensee has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that patent owner or exclusive licensee establishes that it more likely than not has suffered. While the patent owner or exclusive licensee is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, ScaleBio and Roche seek a reasonable royalty for the alleged infringement of the Asserted ScaleBio/Roche Patents. Parse and UW also seek a reasonable royalty for the alleged infringement of the Asserted Parse/UW Patents. A reasonable royalty is defined as the money

amount that the patent owner or exclusive licensee and alleged infringer would have agreed upon as a fee for use of the invention at the time just prior to when infringement began.

[**Parse/UW's Proposal:** A reasonable royalty can be calculated, for example, by multiplying a royalty base by a royalty rate. The royalty base is the revenue from the sale of the infringing technology. The royalty rate is the percentage of those sales that the patent owner should receive for the infringer's use of the patented technology.][23]

You must be careful to ensure that any damages award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that a patent owner or exclusive licensee is entitled to recover no less than a reasonable royalty for each infringing act.

---

[23] **Parse/UW Position:** Final Jury Instructions, *TwinStrand Biosciences, Inc. v. Guardant Health Inc.*, No. 21-1126-GBW, D.I. 494 at 28.

**ScaleBio/Roche Position:** This instruction is unnecessary, and risks jury confusion by providing an unnecessary example. The parties' respective damages experts will testify as to their opinions on the appropriate damages awards, and the economic bases for those opinions.

## J.    REASONABLE ROYALTY – DEFINITION

A reasonable royalty is the amount of royalty payment that a patent owner or exclusive licensee and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner or exclusive licensee and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the asserted patents were valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

## K.    REASONABLE ROYALTY – RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patent owner or exclusive licensee for the licensing of the asserted patents, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the asserted patents.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's**]** established policy and marketing program to maintain **[ScaleBio Proposal:** his or her patent monopoly**] [Parse/UW Proposal**: its patent exclusivity and right to exclude others from using the patented inventions**]**[24] by not licensing others to use the invention or by granting licenses under special conditions designed

---

[24] **Parse/UW Position:** Final Jury Instructions, *TwinStrand Biosciences, Inc. v. Guardant Health Inc.*, No. 21-1126-GBW, D.I. 494 at 29; Final Jury Instructions § 5.2, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

**ScaleBio/Roche Position:** This language (and the language ScaleBio proposes throughout this instruction) is the language of the *Georgia-Pacific* factors and is included in both the FCBA Model Jury Instructions and this Court's most recent patent jury charge. FCBA Model Patent Jury Instructions, § B.5.6, at 66-67; Final Jury Instructions, *Stodge Inc. v. Attentive Mobile Inc.*, No. 23-087-CJB, D.I. 789 at 35-37 (Aug. 28, 2025). Parse/UW seek to revise most of the factors, and this is not appropriate. ScaleBio/Roche's proposed language properly frames the *Georgia-Pacific* factors as between the hypothetical licensor and licensee, assuming infringement. Parse/UW's proposed modifications ignore the assumption of infringement and invite jury confusion.

to preserve that **[ScaleBio/Roche Proposal:** monopoly**] [Parse/UW Proposal**: exclusivity**]**.

5. The commercial relationship between the licensor and licensee and alleged infringer, such as whether they are competitors in the same territory in the same line of business.

6. The effect of selling the patented **[ScaleBio/Roche Proposal:** specialty**] [Parse/UW Proposal:** product**]** in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its nonpatented items, and the extent of such **[ScaleBio/Roche Proposal:** derivative or convoyed sales**] [Parse/UW Proposal:** collateral sales**][25].**

7. The duration of the patent and the term of the **[Parse/UW Proposal:** hypothetical**]** license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

---

[25] **Parse/UW Position:** Final Jury Instructions § 5.2, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

**ScaleBio/Roche Position:** This proposal too is rewriting the well-accepted *Georgia-Pacific* factor that both experts applied as stated in ScaleBio/Roche's proposal.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the **[Parse/UW Proposal:** patented][26] invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patent owner or exclusive licensee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patent owner or exclusive licensee who was willing to grant a license.

---

[26] **Parse/UW Position:** Final Jury Instructions § 5.2, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

**ScaleBio/Roche Position:** This proposal too is rewriting the well-accepted *Georgia-Pacific* factor that both experts applied as stated in ScaleBio/Roche proposal.

[**Parse/UW's Proposal**: Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.][27] No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner or exclusive licensee would have been willing to accept, acting as normally prudent business people.

---

[27] **Parse/UW Position:** Final Jury Instructions, *TwinStrand Biosciences, Inc. v. Guardant Health Inc.*, No. 21-1126-GBW, D.I. 494 at 30; Final Jury Instructions § 5.2, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-CJB (D.I. 689).

**ScaleBio/Roche Position:** This language is unnecessary because neither side's expert in this case seems to have relied on such factors.

## L.    DAMAGES – COMPARABLE AGREEMENTS

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

## M.    REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from unpatented features of the accused product, or other factors such as marketing or advertising, or a patent owner's or exclusive licensee's size or market position. A royalty compensating the patent owner or exclusive licensee for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

[**ScaleBio/Roche Proposal:** In this case, if you find that the asserted patents are technologically comparable to the patents licensed as part of an existing license agreement that the parties are relying upon, then you may assume that the value attributable to the patented invention (i.e., apportionment) has already been accounted for by the comparable license. [28]]

---

[28] **ScaleBio/Roche Position:** This instruction is adapted from the jury instruction in *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, No. 20-cv-472, D.I. 460 at 33 (M.D.N.C. Sept. 8, 2022) ("In this case, if you find that the asserted patents are technologically comparable to the Fontem patents licensed as part of the Fontem-Nu Mark agreement and the Fontem-Reynolds agreement, then you may assume that the value attributable to the patented invention (i.e., apportionment) has already been baked into the comparable licenses."); *affirmed by Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, No. 2023-1546, 2024 WL 5165456, at *5 (Fed. Cir. Dec. 19, 2024) ("We likewise reject Reynolds's challenge to the apportionment jury instruction. The district court did not misstate the law but rather properly instructed the jury that it must account for the differences between the Fontem-Nu Mark license and the hypothetical negotiation between Altria and Reynolds. And the district court did not err in instructing the jury that, if it found that Altria demonstrated sufficient comparability between the circumstances of the Fontem-Nu Mark license and the hypothetical negotiation, the jury could accept Altria's damages expert's proposed adjustments to the royalty rate. We thus affirm the district court's denial of Reynolds's motion to exclude the apportionment testimony under Rule 702, motion for a new trial, and motion for JMOL on damages."). This instruction is not misleading, and is consistent with the earlier instruction on

### N.    [ScaleBio/Roche Proposal: REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what the parties

to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant

---

comparable licenses, which instructs the jury to consider non-technological factors when determining if a license is comparable, and how that should impact a jury's ultimate reasonable royalty award.

**Parse/UW Position**: Parse/UW object to this instruction as confusing and misleading. "Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021) (quoting *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 104 (Fed. Cir. 2020)). "For built-in apportionment to apply the license must be 'sufficiently comparable' in that 'principles of apportionment were effectively baked into' the purportedly comparable license." *Id.*

Whether a license is "sufficiently comparable" does not, as ScaleBio suggests, depend solely on a determination of "technological[] comparability"; in addition to accounting for differences in the technologies, reasonable royalty calculations must also account for differences in the "economic circumstances of the contracting parties." *Virnetx, Inc. v. Cisco Sys.*, Inc., 767 F.3d 1308, 1330 (Fed. Cir. 2014).

ScaleBio's proposal also suggests, incorrectly, that the jury may conclude that a technologically comparable license agreement has "principles of apportionment [] effectively baked into" the entire agreement. But, as noted above, "built-in apportionment" "assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent"—nothing more. *Omega Pats.*, 13 F.4th at 1377. And the Federal Circuit has specifically cautioned against patentees use of a "licensing arrangement" without regarding to comparability "to avoid the task of apportionment." *Id.*

Moreover, even if the parties agree that a given license is technologically comparable, the law still requires the patentee to "account for [] distinguishing facts when invoking [the licenses] to value the patented invention," such as comparable licensing covering "more patents than are at issue in the action." *Omega Pats.*, 13 F.4th at 1380. That is because the ultimate damages amount "must be based on the incremental value that the patented invention adds to the end product." *Id.* (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014))). ScaleBio's proposal would mislead the jury into concluding incorrectly that no other accounting or apportionment is required once a license is deemed "technologically comparable." *See Rex Med., L.P. v. Intuitive Surgical, Inc.*, No. 2024-1072, 2025 WL 2799030, at *5 (Fed. Cir. Oct. 2, 2025) (affirming exclusion of expert testimony that failed to allocate license fees among the licensed patents covered); *Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co., Ltd*, 146 F.4th 1098, 1112 (Fed. Cir. 2025) (similar).

to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, and profits earned by the infringer.][29]

---

[29] **Parse/UW's Position**: This section is redundant to Section 7M. Also, as noted above, Parse/UW does not agree that the hypothetical negotiation between ScaleBio and Parse for a license to the Asserted ScaleBio Patents would take place around or shortly before February 2021.

**ScaleBio/Roche Position:** This instruction was included in the Court's latest patent jury charge. Final Jury Instructions, *Stodge Inc. v. Attentive Mobile Inc.*, No. 23-087-CJB, D.I. 789 at 39 (Aug. 28, 2025). This instruction is proper to instruct the jury on the kinds of evidence it can consider that are relevant to the hypothetical negotiation.

## 8.  UNENFORCEABILITY DUE TO UNCLEAN HANDS

The owner/exclusive licensee of a patent may be barred from enforcing the patent against an infringer where the owner/exclusive licensee of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer, USPTO, or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands."

Parse contends that Roche acted with unclean hands and is therefore precluded from enforcing the Asserted ScaleBio/Roche Patents.[30] ScaleBio contends that Parse/UW acted with unclean hands and is therefore precluded from enforcing the Asserted Parse/UW Patents.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, Roche acted in such an unfair way towards Parse, the USPTO, or the Court in the matters relating to the controversy between ScaleBio/Roche and Parse/UW that, in fairness, ScaleBio/Roche should be denied the relief it seeks in this lawsuit. Parse must prove unclean hands by clear and convincing evidence.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, Parse/UW acted in such an unfair way towards ScaleBio, the USPTO, or the Court in the matters relating to the controversy between Parse/UW and ScaleBio/Roche that, in fairness, Parse/UW should be denied the relief it seeks in this lawsuit. ScaleBio must prove unclean hands by clear and convincing evidence.

---

[30] **ScaleBio/Roche Position:**  ScaleBio/Roche is moving to exclude Parse's unclean hand defense and related evidence.   ScaleBio/Roche includes this and related portions of this draft jury instruction for use only if the Court rejects ScaleBio/Roche's motion in *limine* and if the Court allows Parse to present evidence to the jury on this defense.

**Parse/UW Position:** Parse/UW respectfully request that the Court allow their unclean hands defense to be presented to the jury and that the jury render an advisory verdict.

## 9.  DELIBERATION AND VERDICT

That concludes my instructions on the law. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts. All of the instructions I gave you previously today—as well as earlier this week—still apply, and you will have a copy of the instructions with you in the jury room.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone other than your fellow jurors how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

### O.     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But you should not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.

I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**P.     DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

**Q.      SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, TikTok, WeChat, WhatsApp, Snapchat or Twitter, now known as X. You should not communicate to anyone any information about this case or conduct any research about this case, until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### R.    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I may have said or done was intended to indicate, or should be taken by you as indicating, what your verdict should be. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.