**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> *Defendant*, <br> ——————————————— <br> PARSE BIOSCIENCES, INC. and UNIVERSITY OF WASHINGTON, <br><br> *Counterclaim-Plaintiffs*, <br><br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> *Counterclaim-Defendant*. | Civil Action No. 1:22-cv-01597-CJB <br><br><br> **REDACTED VERSION** <br> **Filed: November 21, 2025** <br><br> ███████████ <br> ███████████ |

**PARSE'S MOTION FOR TRIAL SANCTIONS UNDER FED. R. CIV. P. 37(e)**
**(EXPEDITED CONSIDERATION REQUESTED)**

*Of Counsel:*
Byron L. Pickard
R. Wilson Powers III, Ph.D.
Chandrika Vira
Anna G. Phillips
Christopher M. Gallo, Ph.D.
Brady P. Gleason
David Y. Wang
Louis P. Panzica, Jr.
Paige E. Cloud
Ryan N. Kaiser
Cristen A. Corry
**STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903)
Anne Shea Gaza (#4093)
Samantha G. Wilson (#5816)
Robert M. Vrana (# 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
agaza@ycst.com
swilson@ycst.com
rvrana@ycst.com

*Attorneys for Defendant/Counterclaim-Plaintiff Parse Biosciences, Inc.*

October 2, 2025

Pursuant to Federal Rule of Civil Procedure 37(e)(1), Parse respectfully moves for sanctions arising from Roche's failure to preserve relevant electronically stored information ("ESI"). *See* Proposed Order. Given the closeness to the pretrial conference and trial, Parse seeks expedited consideration and briefing of its motion. *See id.* n.1.

## I.    INTRODUCTION

Rule 37(e) of the Federal Rules of Civil Procedure is based on the common-law duty that potential litigants have to preserve relevant information when litigation is reasonably foreseeable. Roche should have foreseen litigation in November 2021 when it learned of and reviewed a cease-and-desist letter its licensee sent to Parse. However, despite litigation being foreseeable, Roche did not take reasonable measures, such as by timely issuing a legal hold, to preserve relevant information, including relevant ESI. As a result, relevant evidence, including Roche's documentation of its research and development efforts related to the purported inventions—documents that would have been directly relevant to Parse's invalidity defenses— ██████████. Roche's ██████████ is prejudicial because it has robbed Parse the opportunity to arm its expert with the complete factual record that may have bolstered his invalidity opinions at trial. Parse respectfully requests the Court's assistance in curing this prejudice by allowing Parse to present evidence and argument to the jury regarding Roche's failure to preserve evidence and adopt Parse's proposed jury instructions on the issue.

## II.    FACTUAL AND PROCEDURAL HISTORY

The deposition of Garth Rosengren, Head of Legal for Molecular Labs at Roche, was the result of Parse's year-plus effort[1] to extract relevant information from Roche about its document preservation, collection, and production efforts in this case. Parse sought relief from the Court,

---

[1] The complete factual record of the events leading to the Mr. Rosengren's deposition can be found in the parties' letter briefing located at D.I. 290, D.I. 295, and D.I. 335.

1

asking that Roche provide a verified statement attesting to certain facts about Roche's document retention policies and practices and a 30(b)(6) witness to testify regarding the same. On May 28, 2025, the Court granted Parse's requested relief, D.I. 412, observing that Parse had made a "threshold showing that significant, relevant, and non-cumulative information ha[d] been withheld or overlooked" by Roche. *Id.* The Court further explained that "there c[ould] be no dispute that Roche's document collection efforts (and its explanations regarding the same) ha[d] been delayed, shifting and error-filled—and that there [wa]s still real question about whether Roche retained and produced all of the documents it should have in this matter." *Id.* On June 18, 2025, the last day permitted in the Court's Order, Roche provided a verified statement from Mr. Rosengren and offered him as a 30(b)(6) witness for deposition on either July 10 or 11. *See id.*; Ex. A at 3; Ex. B at 1–2. However, as Parse was unavailable on those dates, it requested a date in August. *See id.* at 1. Roche provided one date in response, August 26, which Parse accepted. *See id*. █████████ ██████████ █████████ included not only relevant emails but also relevant documents as well. *See* Ex. C, 30:8-21; 33:8-36:20.

This Motion stems from a dispute that arose during the parties' preparation of their Joint Final Pretrial Order. As part of that process, the parties exchanged affirmative deposition designations on September 3, 2025. *See* Ex. D at 2, 5, 9, 11. There, Parse designated relevant portions of Mr. Rosengren's deposition testimony that had taken place just one week earlier. On September 10, Plaintiffs disclosed six potential motions *in limine*, including one to exclude Mr. Rosengren's testimony because Plaintiffs argued, for the first time, that it was not relevant to any issue in this case. Ex. E at 1. The parties then exchanged motion *in limine* briefs on September 22. Ex. F at 1. In connection with confirming Plaintiffs are indeed pursuing their newly raised argument to exclude Mr. Rosengren's testimony, Parse requested to meet and confer on the issue. Ex. G at 1. The parties met and conferred October 1 reached an impasse on this motion.

2

### III.    LEGAL STANDARDS

"The duty to preserve evidence begins when litigation is 'pending or reasonably foreseeable.'" *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *accord Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012).

Rule 37(e) of the Federal Rules of Civil Procedure addresses sanctions available for a party's destruction of ESI and provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "Under this Rule, a party's loss of ESI may be sanctionable when: (1) litigation is ongoing or anticipated, (2) the party failed to take reasonable steps to preserve the ESI, and (3) the information lost cannot be restored or replaced through additional discovery." *CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, 2019 WL 1118099, at *2 (D. Del. Mar. 11, 2019). Subsection (e)(1) is "concerned with a party's negligent or grossly negligent failure to preserve ESI," and "allows for curative measures when a party's loss of ESI causes prejudice to another party." *Id.*

To obtain Rule 37(e)(1) sanctions, the moving party merely needs to demonstrate prejudice and does not need to show bad faith by the spoliating party. *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 477 n.90 (E.D. Pa. 2020) ("If prejudice required showing bad faith, Rule 37(e)(1) would collapse into Rule 37(e)(2)"); *IOENGINE LLC v. Paypal Holdings, Inc.*, 2022 WL 1443867, at *7 (D. Del. May 3, 2022) (similar). A finding of prejudice only requires a party to "come forward with plausible, concrete suggestions as to what the [lost] evidence might have been" and a showing that its loss "materially affect[ed] the substantial rights of the adverse party and is prejudicial to the presentation of [the] case." *Magnetar*, 886 F. Supp. 2d at 481. Rule

37(e)(1) does not impose a burden on any party to either prove or disprove prejudice—rather, the court is to use its discretion to assess whether prejudice exists from the loss of ESI (including which party should bear the burden). *CIGNEX*, 2019 WL 1118099, at *4.

Rule 37(e) provides courts a broad range of curative measures, such as "permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37, Advisory Committee's Note to 2015 Amendment; *see, e.g.*, *Goldrich v. City of Jersey City*, 2018 WL 4492931, at *7 (D.N.J. July 25, 2018) (recommending Rule 37(e)(1) sanctions "in the form of informing the jury of the loss of evidence and instructing the jury how it should consider such loss in reaching a verdict."); *Intex Recreation Corp. v. Bestway USA Inc.*, 2025 WL 2020012, at *8 (C.D. Cal. July 14, 2025) ("In light of the lost ESI due to Intex's failure to preserve, a jury instruction is an appropriate curative measure pursuant to Rule 37(e)(1).").

## IV.    ARGUMENT

### A.    Litigation was reasonably foreseeable by no later than November 2021.

When litigation is reasonably foreseeable "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron*, 645 F.3d at 1320. A reasonable party in Roche's circumstances would have foreseen litigation by November 2021.

Roche exclusively licensed the Scale Asserted Patents to Scale ▮▮▮▮▮▮▮▮▮▮▮ in July 2020, referred to as the QBC technology. *See* Ex. H at § 2.1(a), Ex. A. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

████████████████████████████████ *Id*. at § 7.4(d).

By December 12, 2020, Scale's CEO, Sean Scott, had been aware of Parse, known then as Split Bio, and believed that Parse potentially infringed the Scale Asserted Patents. *See* Ex. I. Mr. Scott, "████████████████████████████████," and shared this information with Stephanie Cho, his contact at Roche ███████████████████████, because he had "███████ ████████████████████████████████████." Ex. J, 185:6–13. Mr. Scott also indicated to Ms. Cho that he would be scheduling a call with Dr. Thomas Albert, Olga Kay (an attorney in Roche's IP group), and Dr. Garry Nolan to discuss. *See id*. at 185:14–21; Ex. I. Discussions between Mr. Scott, Ms. Kay, and Dr. Nolan appeared to have occurred around December 16, 2020 in ███████████████████████████████████████ ██████████████████████████ *See* Ex. K, No. 64. Then, on December 19, 2020, Mr. Scott separately scheduled a call with Dr. Albert to discuss the matter. *See* Ex. L. When Mr. Scott, "████████████████████████████████████" and "██████ ██████████," he expressed concern that Parse was infringing the Scale Asserted Patents. ████ ████████████████████████—"██████████████████████████████ ██████████████████████████." *See* Ex. M, 138:19–140:24. Thus, by the end of 2020, both Scale and Roche, including an attorney in Roche's IP group, were aware of Parse and held the common belief that Parse was infringing the licensed patents.

In an apparent attempt to satisfy ██████████████, on March 18, 2021, ████████ ████████████████████████████████████████████████████ Ex. N. That same day, ███████████████████████████████████████████ ████████████████████████████████████████████████████ ██████. *See id*.; Ex. C, 83:19–84:8. Legal services provided by ██████ included the preparation of a cease and desist letter addressed to Parse, a draft of which was forwarded to Dr. Albert on

5

November 17, 2021. *See* Ex. K, Nos. 835–837. Dr. Albert then appears to have notified the head of Roche's IP group, Suja Subramaniam, of the situation as she—within hours—corresponded with Mr. Scott and Dr. Albert ████████████████████████████████████ *Id.*, Nos. 839–840; *see also* Ex. C, 20:10–17. On November 22, 2021, ████████ sent the cease and desist letter to Parse's outside counsel, threatening "to take legal action to enforce its intellectual property rights" and to challenge the validity of Parse's own patents. Ex. O at 2. That same month, Roche received and reviewed a copy of the letter. Ex. P at 9; Ex. C, 47:14–48:8.

A reasonable patent owner would have foreseen litigation when it shared a common belief with its licensee that a third party was potentially infringing the licensed patents in December 2020. A reasonable patent owner would have foreseen litigation when it approved of its licensee's choice of litigation counsel in March 2021, ████████████████████████████ ████████████████████████████████████ And, by November 2021, after learning that its licensee had sent a cease and desist letter threatening legal action, no reasonable patent owner would have failed to foresee litigation. *See Dish Network LLC v. Fun Dish, Inc.*, 2015 WL 12733391, at *3 (N.D. Ohio Feb. 18, 2015) (finding that a plaintiff's "duty to preserve [ESI] was triggered by [its] [c]ease and [d]esist letter"); *Fed. Trade Comm'n v. Match Grp., Inc.*, 2024 WL 1509180, at *21 (D.D.C. Mar. 12, 2024) (collecting cases showing that "preparation of a cease-and desist letter may indicate that litigation was anticipated").

**B.      Roche failed to take reasonable steps to preserve ████████████ ESI.**

Litigation was foreseeable no later than November 2021, but Roche failed to take reasonable steps, such as promptly issuing a legal hold, to preserve relevant ESI. In fact, Roche ████████████████████████████████████████████████████ ████████████████████████████████████. Ex. C, 28:16–22.

One category of ESI that Roche failed to preserve is custodial files of Dr. Maeve

6

O'Huallachain, a scientist initially employed by Apprise Bio, where she started working with named inventor Dr. Nolan in 2013 to develop the QBC technology. *See* Ex. Q. When Roche acquired Apprise Bio in 2017, Dr. O'Huallachain moved to Roche as part of the acquisition. *See* Ex. R, 92:24–93:1. At Roche, Dr. O'Huallachain ███████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████. *See* Ex. Q. As a member of the ████████████████████████

team working on QBC, Dr. O'Huallachain was extensively involved in Roche's efforts to ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████. *See* Ex. R at 45:1–19, 69:2–9; *see also* Ex. R (████████████████████████████████████████████████████████

█████████). This work included myriad of experiments to continue the testing started at Apprise Bio on ███████████████████████████████ and to begin to develop protocols for ████████████████████████ toward the end of the QBC project. *See* Ex. R, 53:2–7, 54:13–24, 94:21–95:13. Much of the documentation related to this testing, including spreadsheets containing experimental protocols and presentations summarizing and analyzing the results, was in Dr. O'Huallachain's possession. Indeed, ████████████████████████████████ that nearly half of the Excel and PowerPoint files titled after an experiment number appear to be copies from Dr. O'Huallachain's documents.

When Dr. O'Huallachain left Roche on March 29, 2022, litigation was already foreseeable. But because Roche failed to take reasonable steps and issue a timely legal hold, all of her documents were "████████████████████." Ex. T at 1–2. ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. P at 3–4.

Furthermore ███████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████. Ex. C, 35:8–36:20. Had Roche taken reasonable steps to

preserve ESI and issued a legal hold, all ███████████████████████████

██████████████████ until at least the duration of the hold. Ex. P at 4.

### C.     The documents Roche deleted cannot be restored or replaced.

Parse's review of Roche's fragmented project files for the QBC projects suggests that

ESI related to experiments conducted by Roche to get the QBC technology to work were deleted.

While it is unclear exactly how many total experiments were run, there appear to be ███████.

Ex. U. Of these ███ experiments, at least the ████████████████████ for 36% of the

experiments are missing from Roche's production (████████████████████████

████████████████████████). The custodial files from

Dr. O'Huallachain's personal laptop do nothing to fill the gaps in Roche's records as they only

contain ██████████████████████████. Dr. Nolan's custodial

files cannot fill the gap either. The vast majority of Dr. Nolan's files are dated before 2017,

before Roche acquired the QBC technology, and thus are not replacements for Roche's ██████

documents. Dr. Nolan's production did contain relevant documents related to ██████████

████████████, but that still leaves documentation for ████████████████,

approximately one-third of the estimated total, lost and unreplaceable.

### D.     Roche's destruction of relevant evidence prejudices Parse.

By identifying the specific experiment numbers that appear to be lost, Parse has more

than satisfied the requirement that it identify "plausible, concrete suggestions as to what the

[lost] evidence might have been." *See Magnetar*, 886 F. Supp. 2d at 481. As set forth below,

these lost experimental records affect Parse's ability to fairly defend itself in this litigation as

8

they would have been relevant to Parse's lack of written description and enablement defenses. *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017) (holding that "the use of post-priority-date evidence to show that a patent does not disclose a representative number of species of a claimed genus is proper" and "evidence … relevant to determining if the claims were enabled as of the priority date … should not [be] excluded simply because it post-dated the claims' priority date").

Regarding written description, a patent claiming a broad genus "must disclose a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Id.* 1373. The Scale Asserted Patents encompass broad genera of antibodies and aptamers but fail to disclose a representative number of species falling within that broad scope. Post-priority-date evidence of species that fall within a broadly claimed genus can be "proffered to show that a patent fail[ed] to disclose a representative number of species. *Id.* at 1374–75. Roche had been continuing the work performed by ██████████████████ ████████████████ and Dr. O'Huallachain's personal documents confirm Roche was indeed investigating ████████████████ in its QBC experiments. *See* Ex. R, 51:25–52:11, 54:13–24; *see, e.g.*, Exs. V–X. Therefore, the ██████ Roche documents could have revealed ████████████████████████████████████, further demonstrating that the specification did not disclose a representative number of species.

Regarding enablement, the experimental protocols and results that Roche failed to preserve would likely have shown that undue experimentation was necessary to make and use the full scope of the claimed inventions. They would have presented the full record of Roche spending over ██████████ over the span of ██████████ engaging in "lengthy and potentially undue experimentation" after the priority date in failed attempts to practice the purported

9

inventions. *Amgen,* 872 F.3d at 1375, *see* Ex. R, 70:1-71:1.

      **E.**      **Parse's motion is timely.**

Parse brought this motion promptly after the issues were ripe. Any purported delay was of Roche's own making, including conduct during discovery that prevented Parse from uncovering all the facts relevant to the initial discovery dispute until Mr. Rosengren's deposition on August 26, 2025—a year after the close of fact discovery and a little over a month before the parties were due to submit their proposed Joint Final Pretrial Order. During the initial dispute, Roche "did not specifically object to any particular form of relief sought" and lodged no objections regarding the relevance of Parse's requested discovery. D.I. 412. Nor did Roche raise any relevance objections regarding any of Parse's supplemental 30(b)(6) topics. *See* Ex. Y. Based on Roche's apparent, and repeated, acquiescence as to the relevance of this information, including the topics for Mr. Rosengren's deposition, Parse reasonably expected that it would be able to present Mr. Rosengren's testimony to the jury, as it would for any 30(b)(6) testimony.

Distinguishable from other Rule 37(e) motions that were before this Court, the earliest possible time that the grounds for this motion arose was when Plaintiffs first identified their relevance objections to the Rosengren designations. *See*, *e.g.*, *I-Mab Biopharma v. Inhibrix Inc.*, 2024 WL 4651777 (D. Del. Oct. 24, 2024) (denying Rule 37(e) sanctions when the moving party in possession of all relevant facts waited two and a half years to file its motion). Even then, Parse did not know for certain whether Plaintiffs would be seeking to exclude Mr. Rosengren's testimony until it received Plaintiffs' motions. As set forth above, Parse timely opposed that motion *in limine* and promptly explored whether motion practice was needed. That is because were Plaintiffs to prevail on their motion *in limine*, Parse would have no recourse by which to attempt to cure the prejudice caused by Roche's ███████ of relevant ESI. As such, Parse now affirmatively seeks assistance from the Court to grant measures necessary to cure said prejudice.

DATED:  October 2, 2025

*Of Counsel:*

Byron L. Pickard
R. Wilson Powers III, Ph.D.
Chandrika Vira
Anna G. Phillips
Christopher M. Gallo, Ph.D.
Brady P. Gleason
David Y. Wang
Louis P. Panzica, Jr.
Paige E. Cloud
Ryan N. Kaiser
Cristen A. Corry
**STERNE, KESSLER, GOLDSTEIN
    & FOX, P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
bpickard@sternekessler.com
tpowers@sternekessler.com
cvira@sternekessler.com
aphillips@sternekessler.com
cgallo@sternekessler.com
bgleason@sternekessler.com
dwang@sternekessler.com
lpanzica@sternekessler.com
pcloud@sternekessler.com
rkaiser@sternekessler.com
ccorry@sternekessler.com

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (No. 2903)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
agaza@ycst.com
swilson@ycst.com
rvrana@ycst.com

***Attorneys for Defendant/Counterclaim-
Plaintiff Parse Biosciences, Inc. and
Counterclaim-Plaintiff University of
Washington***

33617527.1

11

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|:---:|:---|
| A. | Letter from Robert J. Gunther, Jr. to Byron L. Pickard, dated June 18, 2025 |
| B. | Email from David Wang, dated July 28, 2025 |
| C. | Excerpts from the Deposition of Garth Rosengren, taken August 26, 2025 |
| D. | Email from Brady Gleason, dated August 28, 2025 |
| E. | Email from Emma Frank, dated September 10, 2025 |
| F. | Email from Kelly Farnan, dated September 22, 2025 |
| G. | Email from Azra Hadzimehmedovic, dated September 29, 2025 |
| H. | RSS_00000001 |
| I. | SCALEBIO0054899 |
| J. | Excerpts from the Deposition of Sean Scott, taken July 29, 2024 |
| K. | Excerpts of ScaleBio's Privilege |
| L. | SCALEBIO0106202 |
| M. | Excerpts from the Deposition of Thomas Albert, taken August 15, 2024 |
| N. | SCALEBIO0279558 |
| O. | RSS_00082774 |
| P. | Roche Sequencing Solutions, Inc.'s Verified Statement in Response to Paragraph 2 of Parse's Proposed Order (D.I. 358), dated June 18, 2025 |
| Q. | SCALEBIO0161334 |
| R. | Excerpts from the Deposition of Jan Berka, taken August 29, 2024 |

| S. | RSS_00044281 |
|---|---|
| T. | Email from Kate Saxton, dated February 14, 2025 |
| U. | RSS_00000933 |
| V. | RSS_00103972 |
| W. | RSS_00103975 |
| X. | RSS_00103976 |
| Y. | Roche Sequencing Solutions, Inc.'s Objections and Responses to Counterclaim-Plaintiffs' notice of Supplemental Deposition of Roche Sequencing Solutions, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) |

## CERTIFICATION PURSUANT TO D. DEL. LOCAL RULE 7.1.1

Pursuant to D. Del. Local Rule 7.1.1, counsel for the moving party has made a reasonable effort to reach agreement with opposing counsel on the subject matter of "Parse's Motion for Trial Sanctions under Fed. R. Civ. P. 37(e)," including oral communication involving Delaware counsel for both sides.

October 2, 2025

/s/ Karen L. Pascale
Karen L. Pascale (No. 2903)

33616106.1

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on October 2, 2025, I caused to be electronically filed a true and correct copy of the foregoing sealed document with the Clerk of the Court using CM/ECF, and in addition caused true and correct copies of the foregoing sealed document to be served upon the following counsel of record by electronic mail:

*Attorneys for Plaintiff and Counterclaim Defendant, Scale Biosciences, Inc., and Plaintiff, Roche Sequencing Solutions, Inc.:*

Frederick L. Cottrell III .................................................................. cottrell@rlf.com
Kelly E. Farnan ............................................................................... farnan@rlf.com
Sara M. Metzler..............................................................................metzler@rlf.com
**RICHARDS LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801

*Attorneys for Plaintiff and Counterclaim Defendant, Scale Biosciences, Inc.:*

**WOLF, GREENFIELD & SACKS, P.C.**    wgs-scalebiosciencesv.parse@wolfgreenfield.com

Stephen S. Rabinowitz ....................................... srabinowitz@wolfgreenfield.com
605 Third Avenue
New York, NY 10158

Chelsea A. Loughran .............................................cloughran@wolfgreenfield.com
Emma L. Frank ..........................................................efrank@wolfgreenfield.com
Stuart V. C. Duncan Smith .............................sduncansmith@wolfgreenfield.com
Arden Bonzo ...................................................... arden.bonzo@wolfgreenfield.com
600 Atlantic Avenue
Boston, MA 02210

**TENSEGRITY LAW GROUP LLP**        Scale_Parse_Service@tensegritylawgroup.com

Matthew D. Powers.............................. matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich...............................................paul.ehrlich@tensegritylawgroup.com
William P. Nelson ..................................william.nelson@tensegritylawgroup.com
Daniel M. Radke .......................................daniel.radke@tensegritylawgroup.com
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065

*(Continued . . . .)*

Azra M. Hadzimehmedovic .....................................azra@tensegritylawgroup.com
Aaron M. Nathan.......................................aaron.nathan@tensegritylawgroup.com
Samantha A. Jameson ....................... samantha.jameson@tensegritylawgroup.com
Daniel Kazhdan .................................... daniel.kazhdan@tensegritylawgroup.com
Danielle C. Pfifferling ...................... danielle.pfifferling@tensegritylawgroup.com
Nathaniel D. Cook..................................nathaniel.cook@tensegritylawgroup.com
John C. Pierce...............................................john.pierce@tensegritylawgroup.com
Richa Patel.......................................................richa.patel@tensegritylawgroup.com
Sidhi Gosain ............................................... sidhi.gosain@tensegritylawgroup.com
1676 International Drive
Suite 910
McLean, VA 22102

***Attorneys for Plaintiff, Roche Sequencing Solutions, Inc.:***

**WILMERHALE**                                   **WHRSS-ScaleLit@wilmerhale.com**

Robert J. Gunther ............................................... Robert.Gunther@wilmerhale.com
Barish Ozdamar Ph.D........................................ Barish.Ozdamar@wilmerhale.com
Christopher R. Noyes ................................... Christopher.Noyes@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Madeleine C. Laupheimer....................... Madeleine.Laupheimer@wilmerhale.com
Kate Saxton .............................................................Kate.Saxton@wilmerhale.com
60 State Street
Boston, MA 02109

October 2, 2025                          **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Karen L. Pascale*
Karen L. Pascale (#2903) [kpascale@ycst.com]
Anne Shea Gaza (#4093) [agaza@ycst.com]
Samantha G. Wilson (No. 5816) [swilson@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Parse Biosciences, Inc.*

# EXHIBIT A

███████████████████████████████████████████████

**WILMERHALE**

June 18, 2025

**Robert J. Gunther, Jr.**

+1 212 230 8830 (t)
+1 212 230 8888 (f)
robert.gunther@wilmerhale.com

**Via E-Mail**

Byron L. Pickard, Esq.
1101 K Street, NW 10th Floor
Washington, D.C. 2005
202-772-8521
bpickard@sternekessler.com

Re:  *Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc. et al*, No. 1:22-cv-01597-CJB (D. Del.)

Dear Byron:

Pursuant to the Court's May 28, 2025 Order (D.I. 412), and in response to the Proposed Order submitted by Parse in connection with its dispute motion (D.I. 285), Roche provides the following documents and information without waiver of any privilege.  Roche hereby designates all ██████████████████████████████████████████████████████████
█████████████████████████████

Pursuant to Paragraph 1 of Parse's Proposed Order (D.I. 358), Roche responds as follows:

    1a. ███████████████████████████████████████████████
████████████████████████. RSS_00152248-RSS_00152252.

    1b.  Roche hereby produces copies of ████████████████ ████████████████████
operative during the following dates that preserved his relevant documents:

- ███████████████████████████ (RSS_00152233-RSS_00152237)

- ███████████████████████████ (RSS_00152238- RSS_00152240)

- ███████████████████████████ (RSS_00152241- RSS_00152244)

- *See also* RSS_00152226 (██████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
████████████████)

████████████████████████████████ documents have been subject to a preservation hold since ████████████████. Pursuant to Roche's document retention policies, ██████████████
██████████████████████████████████████████████
████████████████████████████████.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007

Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington



June 18, 2025
Page 2

WILMERHALE

1c.  Roche hereby produces ████████████████████████ ████████
operative during the following dates that preserved his relevant documents:

- ██████████████████████████ (RSS_00152238- RSS_00152240)

- ██████████████████████████ (RSS_00152245-RSS_00152247)

- ██████████████████████████ (RSS_00152223-RSS_00152225)

- *See also* RSS_00152227 (████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████)

████████████████████████ documents have been subject to preservation hold
since at least ███████████.  Pursuant to Roche's document retention policies, ████████████
████████████████████████████████████████████
████████████████████████████████.

1d.  This portion of the Proposed Order (D.I. 358) requests all relevant, non-privileged
emails and documents, including any "bodiless" emails as described in Parse's Opening Letter
Brief (D.I. 290):

In response, Roche states that all relevant, non-privileged emails and documents have been
produced.

As to the four "bodiless" emails described in Parse's Opening Letter Brief, these are embedded
files (blue highlighted).  The body text of the emails they represent can be found in the parent
pdf document (yellow highlight).

| ParentChild | RecordType | ProdVolID | ProdBegBates |
|---|---|---|---|
| Parent | Electronic File | RSS_VOL004 | RSS_00062677 |
| Attachment | Embedded File | RSS_VOL004 | RSS_00062685 |
| Parent | Electronic File | RSS_VOL003 | RSS_00016993 |
| Attachment | Embedded File | RSS_VOL003 | RSS_00016997 |
| Parent | Electronic File | RSS_VOL004 | RSS_00083734 |
| Attachment | Embedded File | RSS_VOL004 | RSS_00083735 |
| Attachment | Embedded File | RSS_VOL004 | RSS_00083835 |
| Parent | Electronic File | RSS_VOL004 | RSS_00086361 |
| Attachment | Embedded File | RSS_VOL004 | RSS_00086368 |
| Attachment | Embedded File | RSS_VOL004 | RSS_00086369 |

June 18, 2025
Page 3

WILMERHALE

Pursuant to Paragraph 2 of Parse's Proposed Order (D.I. 358), enclosed is a Verified Statement from Garth Rosengren, Esq., Head of Legal at Roche Molecular Labs, regarding Paragraphs 2a-g of Parse's Proposed Order.

Pursuant to Paragraph 3 of Parse's Proposed Order (D.I. 358), Roche designates Garth Rosengren, Head of Legal at Roche Molecular Labs, to provide Rule 30(b)(6) testimony on Paragraphs 2a-e of Parse's Proposed Order.  Mr. Rosengren can be available for deposition on July 10 or 11, 2025 at WilmerHale's Palo Alto office.

Sincerely,

*/s/ Robert J. Gunther, Jr.*

Robert J. Gunther, Jr.

# EXHIBIT B

---

| | |
|---|---|
| **From:** | David Wang |
| **Sent:** | Monday, July 28, 2025 12:03 PM |
| **To:** | Saxton, Kate; Metzler, Sara M.; kpascale@ycst.com; Robert  Vrana; ParseUW |
| **Cc:** | WH RSS-Scale Lit; farnan@rlf.com |
| **Subject:** | RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB |

Hi Kate,

Thank you and Mr. Rosengren for your flexibility regarding the deposition date. Parse confirms that it will take the deposition of Mr. Rosengren on August 26th.

Best regards,
David

**David Wang**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** dwang@sternekessler.com
**Direct:** 202.772.8814   **Main:** 202.371.2600

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Monday, July 7, 2025 6:02 PM
**To:** David Wang <DWang@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; kpascale@ycst.com; Robert Vrana <RVrana@ycst.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>; farnan@rlf.com
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

David-

Mr. Rosengren is available on August 26.  Please confirm that this date works.

Thanks, Kate

**From:** David Wang <DWang@sternekessler.com>
**Sent:** Tuesday, July 1, 2025 5:01 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; kpascale@ycst.com; Robert Vrana <RVrana@ycst.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>; farnan@rlf.com
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL SENDER**

Counsel,

Parse is unable to take the deposition of Garth Rosengren on July 10 or 11 because of counsel's unavailability due to trial. Please provide an alternative date for Mr. Rosengren's deposition in August.

Best regards,
David

**David Wang**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** dwang@sternekessler.com
**Direct:** 202.772.8814  **Main:** 202.371.2600

**From:** Metzler, Sara M. <Metzler@rlf.com>
**Sent:** Wednesday, June 18, 2025 5:06 PM
**To:** Pascale, Karen <kpascale@ycst.com>; Robert Vrana <RVrana@ycst.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>; Farnan, Kelly E. <Farnan@RLF.com>; Metzler, Sara M. <Metzler@rlf.com>
**Subject:** Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

Pursuant to the Court's May 28, 2025 Order, attached please find Roche Sequencing Solutions, Inc.'s Verified Statement In Response to Paragraph 2 of Parse's Proposed Order (D.I. 358) and corresponding cover letter.  Please note, these have been designated **Highly Confidential – Outside Attorneys' Eyes Only**.

Best,
Sara



**Sara M. Metzler**
**Richards, Layton & Finger, P.A.**
Metzler@rlf.com

920 N. King Street | Wilmington, DE 19801
**O:** 302-651-7869 | **M:** 269-491-2647 | **F:** 302-651-7701
vCard, bio, www.rlf.com,

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

# EXHIBIT C

██████████████████████

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OR DELAWARE

_____

SCALE BIOSCIENCES, INC., AND ROCHE      )
SEQUENCING SOLUTIONS, INC.,             )
                                        ) C.A. NO.
                       PLAINTIFFS,      )  22-1597-CJB
                                        )
              v.                        )
                                        )
PARSE BIOSCIENCES, INC.,                )
                                        )
                       DEFENDANT.       )
_____)
PARSE BIOSCIENCES, INC., AND            )
UNIVERSITY OF WASHINGTON,               )
                                        )
       COUNTERCLAIM-PLAINTIFFS,         )
                                        )
              v.                        )
                                        )
SCALE BIOSCIENCES, INC.,                )
                                        )
       COUNTERCLAIM-DEFENDANT.          )
_____)

* * * H I G H L Y  C O N F I D E N T I A L * * *
* * * ATTORNEYS' EYES ONLY * * *
VIDEO-RECORDED DEPOSITION OF GARTH ROSENGREN
VIA REMOTE VIDEOCONFERENCE
TUESDAY, AUGUST 26, 2025
9:08 A.M. PDT
REPORTED BY AUDRA E. CRAMER, CSR NO. 9901

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

8/26/2025        Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.        Garth Rosengren

Page 18

A. I do.

Q. Is that a Mr. or a Ms.?

A. That's Mr. Reza Savari. He is in our partnering group. He does not work as an attorney for Roche. He works within the partnering function. He may be an attorney or at least at some point was a licensed attorney. I'm not sure if he maintains it.

Q. Got one more name for you if you hold on.

Olga Kay, do you recognize that name?

A. Yes.

Q. Who is Olga Kay?

A. Olga is another attorney in our IP patent group. Similar to Jennifer: Was an attorney -- was an attorney certainly during the time that she was at Roche. I'm not sure what she's up to these days.

Q. All right. Thank you for that.

Okay. Maybe we can turn to your verified statement. I know you have a physical copy.

Page 19

But, Dan, if we can pull that up.

THE VIDEOGRAPHER: And which tab is that, Counsel?

MR. PICKARD: I believe it's Tab 4 -- no. Sorry. Tab 6, if I'm looking at the right binder.

THE VIDEOGRAPHER: Okay. And that's going to be Exhibit 1?

MR. PICKARD: Does that check out, Chris?

THE VIDEOGRAPHER: That's going to be Exhibit 1 to this deposition; correct?

MR. PICKARD: Yeah, actually, I think we're going to do it a little different. So the next exhibit number should be 2236. We're trying to do things sequentially.

THE VIDEOGRAPHER: Sure. So hold on. Let me --

MR. PICKARD: I don't want to foul it up here at the goal line. We might get through this case with an orderly record.

THE VIDEOGRAPHER: So we are certain

Page 20

it's 2236? I just want to make sure.

MR. PICKARD: As certain as we're going to be.

THE VIDEOGRAPHER: Okay. No problem.

(Whereupon, Exhibit 2236 was marked for identification.)

BY MR. PICKARD:

Q. All right. Actually, before we turn there, I have one more name to run by you. So Suja Subramaniam, does that name -- do you recognize that name?

A. Yes.

Q. And who is that?

A. Suja is the head of our IP group for Roche Diagnostic Solutions. So she would have been the manager of the manager of Olga and Jennifer.

Q. Okay. And you understood that -- Suja Subramaniam to be a licensed attorney in his or her time with the company; is that right?

A. Correct.

Q. All right. Great.

Page 21

Okay. We can turn to your verified statement, which I guess we've marked as 2236.

You've got that, Mr. Rosengren?

A. I do, yes.

Q. Okay. I take it you're familiar with it?

A. I am, yes.

Q. And I understand you looked at it a little bit to prepare for today's depo.

In that review did you see any errors or inaccuracies that prompted you to want to correct it?

A. I did not.

Q. Did you prepare this by yourself, or were you assisted by some others?

A. With the assistance of counsel.

Q. Did you review any -- other than the lawyers, did you personally talk to anyone as you prepared this verified statement?

A. Together with the lawyers, I talked to



**Page 26**

BY MR. PICKARD:

Q. All right. And then just to kind of close that out, since the suit's been pending, have you been the individual principally responsible for the internal Roche legal team for managing this case?

A. Yes.

Q. All right. And has there been any change of personnel with respect to the roles played by Chuck and Pam?

A. No.

Q. All right. In preparing your verified statement, I take it it's true that you didn't speak to anyone within Roche's IT department; correct?

A. IT? No, I did not.

Q. To the best you can, can you spell Jenya Moshkovich's name.

A. J-e-n-y-a. That was the easy part.

**Page 27**

M-o-s-h-k-o-v-i-t-z [sic]. You can certainly -- we can find that during a break, I'm sure.

Q. Great.

And what role -- or who is Ms. Moshkovich?

A. So Jenya -- and I don't know her official title, but functionally I understand her to be the attorney leading Roche's eDiscovery -- internal eDiscovery group.

Q. And what did you discuss with Ms. Moshkovich?

A. Basically, who should be the person doing the verified statement.

Q. Do you understand why you were the individual chosen to provide this statement?

A. Yes, I have an understanding of that.

Q. And what do you understand that to be, the reason, that is?

A. It was a couple of reasons. One was, as we already talked about, I was the person -- from a legal responsibility point, the one most obvious.

**Page 28**

Q. All right. Are you familiar with an individual named Tod Bedilion?

A. Yes.

Q. Who is Mr. Bedilion or Dr. Bedilion?

A. Up until recently -- very recently, Tod was a Roche employee within our partnering group. I'm not sure specifically what his level or role is within partnering, but he was -- yeah, he was one of our partnering colleagues.

**Page 29**

Q. Okay. With that clarification, do you know whether Mr. Bedilion ▮▮▮▮

A. I don't off the top of my head. I don't have the full list of folks who were on that hold.

Q. And Maeve O'Huallachain, do you know who that is?

A. I do as a -- just as a result of kind of preparing for the statement and this case. But yeah.

Q. So I take it you've never personally interacted with --

A. I have never met --

Q. -- Dr. O'Huallachain?

A. Never met Maeve, no.

Q. All right. You and I need to be careful about talking over each other.

A. Apologies.

Q. The blame lies with both of us. So...

All right. Do you know whether Dr. O'Huallachain -- whether she was subject to

8/26/2025    Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.    Garth Rosengren



Page 30

A. My recollection is that her tenure at Roche ended such that it -- I ████████ ████████████████████████ ████████████████████████ ████████████████ So I'm not positive.

Q. Okay. And you understand that Dr. O'Huallachain, she left Roche on or about March 29, 2022; correct?

A. Correct.

Q. At the time she left Roche, do you know whether she was subject to any litigation holds whatsoever inside of the company?

A. I don't.

Q. And in March of '22 ████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████

A. Correct.

Q. And that ████████████████

Page 31

████████████████████

A. I'm not sure specifically. I had in my head, actually, a shorter time frame for email. Let me -- I can quickly take a look here.

MR. NOYES: Mr. Rosengren, if you need to consult your statement for --

THE WITNESS: Yeah, I'm looking at the statement really quickly just to see if I can find it easily. It would be in 2a.

BY MR. PICKARD:

Q. You might want to look at page 3.

A. Yeah, that's where I'm looking at the moment.

MR. NOYES: Byron, if it's okay with you, I can assist the witness, point him to a particular paragraph?

MR. PICKARD: Yeah, that'd be great. I can -- so, actually, I can probably just do it for you.

Q. So, Mr. Rosengren, if you turn to --

A. Yeah.

Q. -- page 3 of your dec, there's -- the

Page 32

first sentence of the second full paragraph is ████████████.

A. Exactly.

Q. Do you see that?

A. Yeah. And that's not -- I'm sorry. Could you repeat your question.

Q. Sure. I'm just trying to nail down some timelines here.

So I think we established, to your knowledge, that for Dr. O'Huallachain, upon leaving Roche -- my question was ████████ ████████████████████████ ███.

A. ████████████████████ ████████████████████████ ████████████ ████████████████████ ████████████████ ████████████████████ █████

Q. Okay. And, in fact, if you turn to

Page 33

page 4 of your statement, and I'll direct you to the second paragraph.

I think that first sentence says as much, correct, that --

A. Exactly. I was looking for ████████ ████████████████ But, yes, that is what I was looking for.

Q. Okay. So unless Dr. O'Huallachain had marked -- well, let me ask you this: When an employee leaves the company, ████████████ ████████████████████████ ████████████████████████ ████████████████████████████ ████ ████ ████████████████████ ████████████████████████ ████████████████████████ ██████████████████████ ████████████████████████ ████████████████████████████ ████████████████ ████ ████ ████████████

9 (Pages 30 to 33)

8/26/2025    Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.    Garth Rosengren



Page 34

Q. [redacted]

BY MR. PICKARD:

Q. Okay. [redacted]

Page 35

Q. Do you have any reason to believe that documents or other items that Dr. O'Huallachain was a custodian for were saved to [redacted]

A. I don't know one way or the other.

Q. And it's the routine practice of Roche to also collect company-issued devices to their employees when they leave the company; correct?

A. That is correct.

Q. And do you know what devices Dr. O'Huallachain had at the time of her separation from the company?

A. I do not.

Q. But if she had a laptop or a personal computer, it would have been subject to that practice; is that right?

A. Correct.

Q. Does Roche typically issue company smartphones or other devices like that to their employees?

Page 36

A. Yes.

Q. Okay. And if Dr. O'Huallachain had a smartphone or a tablet, Roche would have collected that upon her separation with the company as well; correct?

A. Correct.

Q. [redacted]

A. [redacted]

Q. And you have no reason to doubt that that occurred in the instance of Dr. O'Huallachain; correct?

MR. NOYES: Object to the form.

THE WITNESS: I don't know one way or the other.

BY MR. PICKARD:

Q. Shifting gears again to Tod Bedilion, I

Page 37

[redacted]

Q. And you're going from memory right now, I take it; correct?

A. Yeah. Yeah, basically just -- I've worked [redacted]. And at least one of those predates the date you gave.

Q. All right. Do you know about when that -- [redacted]?

A. It would have been, I believe, either [redacted]

Q. Do you have a sense of [redacted]

10 (Pages 34 to 37)



**Page 46**

challenging question or because it's privileged?

A.  Because I am unable to.

Q.  Let's break that down.

Are you refusing to answer my question on the basis of privilege?

A.  Sorry.  No, I'm not refusing to answer --

Q.  Okay.

A.  -- your question on the basis of privilege.  I'm saying I don't have a distinction in my head that I would deem to be privileged that I would refuse to give you.

Q.  Understood.  Thank you for that.  And I just needed to make that clear.

If we can do a short break -- I know we haven't gone very long, but I don't think it's going to be a long day, and I need a break.

THE WITNESS:  No worries.

MR. PICKARD:  All right.  Thanks.

THE VIDEOGRAPHER:  The time is 9:56 a.m.  We're going off the record.

(Recess taken.)

**Page 47**

THE VIDEOGRAPHER:  The time is 10:06 a.m., and we're back on the record.

MR. PICKARD:  Okay.  If we could, I'd like to present -- I think it's Tab 24, Daniel, which ought to be a November 2021 notice letter.

Yeah, that's the one.  If we could mark this -- 2237, David?

THE VIDEOGRAPHER:  That's the next number, yes, sir.

MR. PICKARD:  Thank you, Daniel.

(Whereupon, Exhibit 2237 was marked for identification.)

BY MR. PICKARD:

Q.  So, Mr. Rosengren, do you recognize what we have marked as Exhibit 2237?

A.  I do.

Q.  And what is this?

A.  I believe this is the letter that Scale sent to Parse in November of '21 with some, I believe, allegations in infringement.

Q.  All right.  Now, if we look back at your verified statement -- so we can take that

**Page 48**

down for a moment -- maybe if we can keep it up and maybe show both, that would be help helpful.

Great.

If we could turn to page 9, and I think you discuss the letter here at page 9 in that first full paragraph.

Do I have that right?

A.  Correct.

Q.  All right.  And you wrote, "███████ ████████████████████████████████ ██████████"

To your knowledge or information, did ████████████████████████████████████ ██ ████████████████████ ██ ████████████

Q.  Did you personally see this copy -- sorry -- see this letter, Exhibit 2237, in November of 2021?

A.  I did not.

MR. PICKARD:  There's a dumpster being emptied next to me, so if there's noise, please let me know.  So far it seems it's only

**Page 49**

bothering me.

Q.  All right.  Now you describe this letter as having been prepared by Scale's outside prosecution counsel.

Do you see that?

A.  Yes.

Q.  What caused you to conclude ███████ ██ ████████████████████████████

MR. NOYES:  And I guess I'll caution you not to disclose any privileged communications, but you can answer that otherwise.

THE WITNESS:  I believe that that's how -- or at least that's my understanding of what ███████████████████.

BY MR. PICKARD:

Q.  ████████████████████████████████ ██ ████████████████████████████

A.  Yes, I believe so.

Q.  And do you know --

A.  [Speaking simultaneously.]

Q.  -- who that is?



Page 82

don't -- I wasn't involved in it.

Q. Okay. If we look down to the email from ▮▮▮▮▮▮ of March 18, see that third dashed item, "▮▮▮▮▮▮"?

A. Uh-huh.

Q. ▮▮▮▮▮▮

You see that?

A. I see that.

Q. You agree it looks like a typo; he meant to type "our" instead of "or"?

MR. NOYES: Object to the form.

THE WITNESS: Oh, I thought it was going to be -- I thought it was "for" maybe --

BY MR. PICKARD:

Q. Perhaps.

A. -- as a typo.

Q. Perhaps.

A. So I agree it's a typo. I'm not sure what it's a typo of.

Q. But you agree that what's being

Page 83

mentioned here is that ▮▮▮▮▮▮; correct?

MR. NOYES: Object to the form.

THE WITNESS: I believe it's --

BY MR. PICKARD:

Q. And --

A. -- reasonable instructions.

Q. ▮▮▮▮▮▮

BY MR. PICKARD:

Q. Do you know who, if anyone, at Roche Mr. Albert was keeping informed of patent defense efforts in the spring of '21?

A. I do not.

Q. ▮▮▮▮▮▮

Do you see that?

A. I see that.

Page 84

Q. ▮▮▮▮▮▮

A. ▮▮▮▮▮▮

MR. PICKARD: All right. You can take that down.

Q. ▮▮▮▮▮▮

MR. NOYES: Object to the form.

THE WITNESS: ▮▮▮▮▮▮

MR. PICKARD: Tell you what. Can we do a break here? Can we do ten minutes?

THE VIDEOGRAPHER: All right. Stand by.

The time is 10:50 a.m. We're going off the record.

(Recess taken.)

Page 85

THE VIDEOGRAPHER: The time is 11:09 a.m., and we're back on the record.

BY MR. PICKARD:

Q. All right. Welcome back.

Mr. Rosengren, just real quick, have you discussed the substance of your testimony during any of the breaks today?

A. In the first break, yes. There was one point that we wanted to clarify.

Q. You say "we." You mean you and Mr. Noyes?

A. ▮▮▮▮▮▮

▮▮▮▮▮▮ So I wanted to add that that was another document that I reviewed in preparation for today -- for the depo.

▮▮▮▮▮▮

22 (Pages 82 to 85)

8/26/2025          Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.          Garth Rosengren

---

Page 98

MR. NOYES: Yep.

MR. PICKARD: Thanks. Thanks, all. Be back at -- let's call it 2:30.

THE VIDEOGRAPHER: Time is 11:22 a.m. We're going off the record.

(Recess taken.)

THE VIDEOGRAPHER: The time is 11:27 a.m., and we're back on the record.

MR. PICKARD: Great. So, Mr. Rosengren, thank you for your time. I don't have any further questions.

MR. NOYES: And I don't have anything on behalf of Roche or the witness.

Thanks, everybody.

THE VIDEOGRAPHER: Okay. Any other statements for the record before we close it? If not, stand by.

The time is 11:28 a.m., August 26, 2025. We're going off the record, completing today's video-recorded session.

We're done everybody. Thank you very much.

---

Page 99

THE REPORTER: Mr. Nelson, do you need a copy of the transcript?

MR. NELSON: Yeah, we want a copy of everything. Thank you.

(At 11:28 a.m. PDT the deposition of GARTH ROSENGREN was adjourned.)

---

Page 100

STATE OF CALIFORNIA        )

COUNTY OF SAN MATEO       ) SS.

I, AUDRA E. CRAMER, CSR No. 9901, in and for the State of California, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named, and thereafter reduced to typewriting under my direction, and the same is a true, correct and complete transcript of said proceedings;

I further certify that I am not interested in the event of the action.

Witness my hand this 28 day of August, 2025.

_____

Certified Shorthand
Reporter for the
State of California

---

Page 101

Garth Rosengren, c/o
WILMER CUTLER PICKERING HALE AND DORR LLP
7 WORLD TRADE CENTER, 250 GREENWICH STREET
NEW YORK, NEW YORK 10007

Case: Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.
Date of deposition: August 26, 2025
Deponent: Garth Rosengren

Please be advised that the transcript in the above referenced matter is now complete and ready for signature. The deponent may come to this office to sign the transcript, a copy may be purchased for the witness to review and sign, or the deponent and/or counsel may waive the option of signing. Please advise us of the option selected. Please forward the errata sheet and the original signed signature page to counsel noticing the deposition, noting the applicable time period allowed for such by the governing Rules of Procedure. If you have any questions, please do not hesitate to call our office at (202)-232-0646.

Sincerely,
Digital Evidence Group
Copyright 2025 Digital Evidence Group
Copying is forbidden, including electronically, absent express written consent.

26 (Pages 98 to 101)

# EXHIBIT D

# Stephanie Blair

| | |
|---|---|
| **From:** | Brady Gleason |
| **Sent:** | Thursday, August 28, 2025 6:38 PM |
| **To:** | Frank, Emma L.; Metzler, Sara M.; Farnan, Kelly E.; WGS-Scale Biosciences v. Parse; WH RSS-Scale Lit |
| **Cc:** | ParseUW; kpascale@ycst.com; Vrana, Robert; Scale_Parse_Service |
| **Subject:** | RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB |

Emma,

Confirmed. We will provide tomorrow our list of witnesses and further indicate, for each witness, whether we intend to call them live or by deposition. We also understand that the parties are leaving to next week's exchange the "will call" or "may call" designations.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 8:49 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you for your response. We will respond in full under separate cover but given that the exchange of preliminary witness lists is tomorrow, we wanted to clarify your position on the format of the list. Our expectation is that the parties will exchange a list of witnesses and, for each witness, indicate whether they intend to call that witness live or by deposition. Can you please confirm **tonight** that the list of witnesses Parse will be providing tomorrow will indicate whether each witness on that list will be appearing live or by deposition?

Regards,
Emma



## Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 28, 2025 6:07 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we confirm that we will send you an email on Friday containing a list of individuals Parse/UW intend to call either live or by deposition.

**Pretrial exchanges**

Thank you for confirming our understanding of the September 3rd exchanges. Please confirm that Scale/Roche will also similarly provide exhibits to the PTO containing:

1. **Section III (Facts)**: on the issues they bear the burden, Scale/Roche's (i) proposed uncontested facts and (ii) contested facts.
2. **Section IV (Issues of Law)**: Scale/Roche's statement of the issues of law that remain to be litigated on the issues they bear the burden.
3. **Section V (Witnesses)**: Scale/Roche's affirmative deposition designations, in the manner proposed.
4. **Section VI (Exhibits)**: Scale/Roche's exhibit list.
5. **Section VII (Damages)**: Scale/Roche's itemized statement of all damages, including special damages

Regarding the exhibit list exchange on September 3: we agree that both parties should serve OCR-ed PDF copies of their proposed exhibits and are fine with naming the files with the proposed exhibit number, understanding that these file names are subject to change.

Regarding our proposal for including additional exhibits on September 19: our intent here is to give both sides the ability to supplement their exhibit list in view of the other's initial exhibit list, which is consistent with two-step approach set forth in the local rules. *See, e.g.*, L.R. 16.3(d)(2). We do not envision or contemplate creating additional work by requiring a showing of responsiveness.

We are fine with all exhibits being marked with black and white stamps.

2

We agree with Scale's proposal to identify objections on the joint exhibit list using the "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

### Motions *in Limine*

We agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to the two scenarios you have listed and to your proposal for a subsequent meet and confer no later than September 20.

### Jury Instructions, Voir Dire, and Verdict Form

If ScaleBio intends to provide initial drafts of the preliminary and final jury instructions, voir dire submissions, and verdict form on September 19, we can respond by September 30, with a meet and confer on October 2. That should give the parties sufficient time to finalize and file these papers before the October 6 deadline.

### Exhibit and Demonstrative Exchanges:

Parse/UW disagrees with Scale's proposal requiring the disclosure of exhibits two days before the party intends to call a witness to testify. Parse/UW's counterproposal (shown below) aligns more closely to Judge Burke's template (at 6), which provides that the party will disclose exhibits to be used in connection with direct examination "the day before their intended use." Parse's counterproposal also joins the disclosure requirement for exhibits and demonstratives to the same schedule.

Parse/UW propose the following procedure:

1. By 6:30 p.m. two calendar days before the party intends to call a witness to testify live, the party shall disclose to the other side the name of each witness and list them in order in which the party intends to call them to testify live.
2. By 6:30 p.m. one calendar day before the party intends to call a witness to testify live, the party shall identify (1) the evidentiary exhibits that the party intends to use with the witness, and (2) any demonstratives that the party intends to use with the witness.
3. By 8:00 p.m. that same day, the other side will identify any objections to those exhibits, demonstratives, or both that it intends to raise with the Court.

We also propose that the first daily disclosure deadline should be set at 6:30 p.m., instead of 6:00 p.m., to allow the parties a bit more time to prepare the necessary disclosure emails, especially if trial runs late that day.

Parse/UW also propose the dispute resolution procedure outlined below, as it avoids creating more work and late nights. Parse/UW's proposal also aligns more closely to Judge Burke's template (at 6), which requires the objecting party to "bring its objections to the Court's attention prior to the witness being called to the witness stand," as opposed to a joint submission.

4. By 9:00 p.m. that same day, the parties will meet and confer about those objections.
5. By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to an exhibit, demonstrative, or both shall submit to the Court (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection, and (2) the objected-to exhibit/demonstrative, identifying (e.g., highlighting) the portions of the exhibit/demonstrative reflecting the objected to material.

The following morning (i.e., the morning before the planned use of the exhibit), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

Notwithstanding the procedures above, the parties shall make available for inspection any physical exhibits and physical demonstratives at least five calendar days before the first day of trial.

**Deposition Designations at Trial**:

We agree that the pretrial order shall contain the maximum universe of deposition designations, counter-designations, counter-counter designations, and objections to admission of deposition testimony, and these designations and objections can only be supplemented with the approval of all parties or leave of the court, on good cause shown.

We propose a disclosure schedule similar to our exhibit exchange proposal (above), which affords both sides more time to identify which designations to play and which designations are objectionable. Scale's proposal, which leaves the objecting party only two hours to identify counter-designations and objections, will likely yield greater disputes to be resolved at the 9:00 pm meet and confer than if, as Parse/UW propose, the parties take more time to consider counter-designations and objections. We also believe this proposal prevents inefficiencies in redoing designations because the parties will have disclosed narrowed designations at the appropriate times and will know the universe of designations to object to after each disclosure. On the other hand, Scale's proposal requires the offering party to provide objections and to identify counter-counter designations to counter-designations that may ultimately fall to the wayside.

1. By 6:30 p.m. three calendar days before a party intends to call a witness by deposition at trial, the party shall identify (1) the affirmative designations it intends to play, and (2) any exhibits the party intends to move into evidence through, for each witness, the designated testimony.
2. By 6:30 p.m. the next calendar day, the other side shall identify (1) any counter designations it asserts should also be played, and (2) any objections to the previously identified affirmative designations.
3. By 8:00 p.m. that same day (i.e., two days before it intends to call a witness by deposition at trial), the offering party shall (1) identify any counter-counter designations it asserts should also be played, and (2) any objections to the other side's counter designations.

We agree that if the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those excluded affirmative designations are relevant to affirmatively designated testimony that has not been withdrawn. The availability of this option—that is, the ability to use the other side's designations once de-designated—reflects precisely why the other side should have more than two hours to formulate its counter designations. Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those excluded counter-designations are relevant to counter-designated testimony that has not been withdrawn.

Regarding meet and confers, we propose a schedule similar to the one above for exhibits. We propose the following:

4. By 9:00 p.m. that same day, the parties shall meet and confer to discuss the disclosed objections and any disputes pertaining to the video of deposition to be played.
5. By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to designated deposition testimony to be played at trial shall submit to the Court: (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection; (2) an excerpt of the deposition transcript containing the deposition testimony of the witness(es) at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations.
6. By 11:00 p.m. that same day, the party intending to call a witness by deposition at trial shall provide video of deposition to be played, with closed captioning.

The following morning (i.e., the day before the deposition testimony is intended to be played), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

4

We understand that this procedure is slightly different than the one outlined in Burke's template, which requires a joint submission but permits (at 4-5) only "one sentence per objection." But this proposal is intended to create some consistency between this process and how disputes concerning exhibits and demonstratives are resolved at trial.

We are available to meet and confer on any of these topics.


Best regards,
Brady

_____

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 11:57 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you for your response to our proposals, we respond in turn to yours below. We also understand that Parse will be providing responses regarding deposition designations at trial and exhibit exchanges under separate cover.

**Preliminary Witness Lists**
Confirmed that the parties will mutually exchange preliminary witness lists on August 29 at 5:00 pm ET. We do want to clarify the format of that exchange. Can Parse please confirm **today** that it will provide a preliminary witness list that identifies whether the witness will be appearing live or by deposition? We would propose leaving "will call" or "may call" designations for the exchange next week.

**Pretrial Exchanges**
Regarding what Parse/UW must provide on September 3:
1. *Section I (Nature of the Case)*: We will provide an initial draft of this section, keeping matters to a high level, and Parse will provide (as it proposes) the identity of Parse/UW's claims; the parties can provide their proposed edits as part of their responses and objections on September 19.
2. *Section II (Jurisdiction)*: Parse should state the remedy it is seeking consistent with the discovery it provided.  We will otherwise provide the initial draft of this section given that no party has contested jurisdiction or venue.
3. *Section III (Facts)*: Confirmed that Parse/UW should provide its exhibits to the PTO containing Parse/UW's (i) *proposed* uncontested facts and (ii) contested facts. We do envision that the "uncontested facts" exhibit will eventually be a single joint exhibit, and that the parties will move any facts that the other side contests to their respective "contested facts" exhibits.
4. *Section IV (Issues of Law)*: Confirmed that Parse/UW should provide their exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated.
5. *Section V (Witnesses)*: Confirmed that Parse/UW should provide Parse/UW's affirmative deposition designations, in the manner outlined in our email.

5

6. ***Section VI (Exhibits)***: Confirmed that Parse/UW should provide Parse/UW's exhibit list. Please also see our further response below.

7. ***Section VII (Damages)***: Confirmed that Parse/UW should provide Parse/UW's itemized statement of all damages, including special damages.

Parse/UW should also provide its witness list, and for expert witnesses should include the indication of the "precise subject matter on which it will ask the Court to recognize the witness's expertise" as required by Judge Burke's form PTO.

We also confirm that the following will be provided as exhibits attached to the PTO cover pleading: (1) joint statement of uncontested facts; (2) each side's statement of contested facts; (3) each side's statement of issues of law that remain to be litigated; (4) each side's deposition designations; (5) the joint exhibit list; (6) each side's exhibit lists; and (7) the MIL briefing, once completed.

Regarding the exhibit list exchange on September 3, ScaleBio's proposal is just that the documents be labeled with "PTX-##" and "DTX-##" on the exhibit list. While we agree that neither party should be pre-marking the exhibits for the reasons you mention, we did intend that both parties would serve OCR-ed PDF copies of their proposed exhibits with the file names set to the proposed exhibit numbers (e.g., "PTX-001.pdf"). That exchange is necessary to allow timely review of the proposed exhibits, identification of any MIL issues, and identification of objections. In terms of your proposed color scheme for exhibit stamps, we believe the exhibit number prefixes (PTX-, DTX-, and JT-) are sufficient identifiers without introducing different colored stamps. We propose that all exhibits be marked with black and white stamps.

Regarding the exchanges on September 19, attached please find our edits to the key/legend.

We confirm that the pre-clear list is intended to be for exhibits used in either side's opening statements.

We are considering your proposal regarding the identification of additional exhibits. To confirm, does your proposal envision any showing that the additional exhibits identified on September 19 are responsive to something identified by the other side on September 3?

Confirmed that we will provide an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side has made that objection. We would propose just adding a "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

## Motions *in Limine*
We would agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to those that (1) arise because the Court enters a decision on summary judgment or Daubert motion that raises the issue addressed by the additional motion *in limine*; or (2) arise from statements made or issues raised during the parties' meet and confer on September 12.

We cannot agree that the subsequent meet and confer has to occur on or before September 19, including because of Parse's proposal that additional exhibits can be identified for the trial exhibit lists on September 19. We would be willing to consider that meet and confer occurring late on September 20.

We agree that both parties are limited to serving a total of three motions *in limine* on September 22 absent leave of Court to present any additional motion(s).

We also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

## Length of Trial
We will respond under separate cover regarding proposals for representative products and claims.

We would consider a proposal regarding stipulations on authenticity of documents if presented by Parse. We would also consider a proposal regarding proffers of expertise for experts, but note that both sides have filed *Daubert* motions that may impact any such proffers.

6

**Jury Instructions, Voir Dire, and Verdict Form**

We would agree to provide initial drafts of the jury instructions, voir dire submissions, and verdict forms on September 19 if Parse provides its responses and objections to those drafts by September 29, with the meet and confer to follow on October 1.

We are happy to meet and confer further on any of these topics as needed.


Regards,
Emma




# Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn


*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 26, 2025 11:01 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB


Confirmed—Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.


Thank you.

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Monday, August 25, 2025 6:09 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;

Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Brady,

We will provide a more fulsome response to your email under separate cover. In the interim, we confirm that we will provide what will essentially be updated versions of SCALEBIO0160901 and SCALEBIO0334813 with sales information for the Accused Scale Products in the United States as of June 30, 2025.

Please confirm that Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 25, 2025 2:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. Here are our responses to your email below.

**Preliminary Witness Lists**: agreed. Please confirm that the parties will mutually exchange preliminary witness lists on August 29, the agreed upon date, at 5:00 pm ET.

**Supplemental Damages Reports**: agreed. Parse requests that Scale produce essentially updated versions of SCALEBIO0160901 and SCALEBIO0334813, providing all sales of the Accused Scale Products in the United States as of June 30, 2025.

**Pretrial Exchanges**: generally agreed, subject to the following --

- September 3
  - To confirm, because Scale has agreed to provide an initial draft on September 3 of the "non-contested portions of the PTO based on Judge Burke's form order," Parse/UW need only provide at this initial disclosure the following:
    1. *Section I (Nature of the Case)*: the identity of Parse/UW's claims
    2. *Section II (Jurisdiction)*: the remedy sought by Parse/UW, such as damages or injunctive or declaratory relief
    3. *Section III (Facts)*: exhibits to the PTO containing Parse/UW's (i) uncontested facts and (ii) contested facts.
    4. *Section IV (Issues of Law)*: exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated
    5. *Section V (Witnesses)*: Parse/UW's affirmative deposition designations, in the manner outlined in your email.
    6. *Section VI (Exhibits)*: Parse/UW's exhibit list.
       1. To confirm, when you say "exhibits will be labeled "PTX-##" and "DTX-##" at this point," you are proposing to simply label them as such on the exhibit list, and you are not proposing an actual exchange of pre-marked exhibits (and/or pre-marked exhibits having file names reflecting the supposed "PTX##" or "DTX##")—correct? In our experience, pre-marking the actual exhibits at the initial exchange, prior to the deduplication and compilation of the joint exhibit list, creates unnecessary work and confusion. We propose that the parties should exchange copies of marked exhibits at a later date.
       2. For the deadline to exchange pre-marked exhibits, we propose September 26. Further, we suggest the following color scheme.
          1. The stamps used to pre-mark exhibits on Plaintiffs' list(s) should be yellow
          2. The stamps used to pre-mark exhibits on Defendants' list(s) should be blue
          3. The stamps used to pre-mark exhibits on the Joint Exhibit list(s) should be white
    7. *Section VII (Damages)*: Parse/UW's itemized statement of all damages, including special damages
  - Please also confirm that the aforementioned portions of the PTO that are contested (e.g., disputed facts, issues of law, etc.) will be provided as exhibits attached to the PTO cover pleading
  - Scale will provide the first draft of the remaining information required by the Local Rule and in accordance with Judge Burke's template.
- September 19
  - For any objections to the other side's exhibit list and deposition designations, please confirm that Scale will use the attached key/legend. To the extent Scale has any edits to this key/legend, please provide them before September 3.
  - Regarding your pre-cleared list, we are considering your proposal and will respond separately. In the meantime, please confirm our understanding that this pre-clear list is limited to the exhibits used in either side's opening statement demonstratives.
  - We also propose that the parties should identify any additional exhibit not previously included on the exhibit list (e.g., an exhibit responsive to a statement disclosed by the other side at the initial exchange) with this September 19 exchange. Any objections to these additional exhibits shall be provided by September 26.
- September 26
  - Scale will circulate an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side as made that objection.

**Deposition Designations at Trial**

- We will respond under separate cover.

**Motions *in limine***

– Parse/UW generally agrees with the proposed dates for exchanges. Further, we generally agree regarding motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs, provided the following terms are agreed upon.

  • *First*, the only motion *in limine* topics that can be added after the September 10 exchange are those that arise because the Court enters a decision on summary judgment or *Daubert* motion that raises the issue supposedly addressable by the additional motion *in limine*.

  • *Second*, any subsequent meet and confer on a motion *in limine* topic added after the September 10 exchange must occur on or before September 19.

– Please confirm that, notwithstanding these procedures and parties' ability to identify a new motion in limine topic after September 10, both sides are limited to serving a total of three motions *in limine* on September 22. For clarity, no additional motions *in limine* will be made after September 22, absent leave of court.

– Please also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

**Length of Trial**

– We would be willing to consider any proposal by Scale of representative products and claims.

– Please confirm whether Scale would be willing to consider stipulations of documents' authenticity and/or proffers of expertise for expert witnesses.

**Exhibit Exchanges**

– We will respond under separate cover.

**Jury Instructions, Voir Dire, and Verdict Form**

– We generally agree with Scale's proposal, although the seven days between September 22 and September 29 does not provide Parse/UW sufficient time to provide its responses and objections to Scale's drafts.

– Please confirm that Scale will provide initial drafts of the jury instructions, voir dire submissions, and verdict forms by **September 16**.

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 21, 2025 2:39 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

This email summarizes our meet and confer on August 15, 2025 and contains ScaleBio's proposals to address certain pre-trial exchanges, as we discussed. We also understand that you will be providing Parse's response to our proposals as well as Parse's proposals for certain other issues, identified below.  Given that certain exchanges would begin as early as next week under the current proposals, please respond by *Monday, August 25*. We are happy to further meet and confer as needed on these issues.

## Preliminary Witness Lists

The parties agreed to an early exchange of preliminary witness lists and that if a party identifies someone on its preliminary witness list who has not yet been deposed in this litigation, the other side may elect to take a deposition of that witness. ScaleBio proposes that the parties exchange these witness lists on *August 29*, with any depositions to be completed by *September 21* or at least one day prior to the agreed deadline for the filing of MILs, whichever is earlier.  Please confirm whether Parse is in agreement.

## Supplemental Damages Reports

ScaleBio proposes that the parties exchange supplemental financial information and supplemental expert reports regarding damages as follows:

By 5:00 p.m. on *Monday, August 25*, the parties will identify the previously produced documents that would need to be supplemented.  By 5:00 p.m. on *Friday, August 29*, the parties will produce updated versions of those financial documents as of June 30, 2025, or such other updated financial documents that are as near as possible to those previously identified.  ScaleBio requests that Parse produce the complete set of Accused Products sales data broken down by region.  By 5:00 p.m. on *Monday, September 8* the parties will exchange supplemental expert reports that include supplemental damages calculations. The supplemental reports will be limited to updating the calculations previously presented, and may include a short narrative description of the updated calculations provided.  No new theory of damages may be introduced.  No additional depositions of the parties' damages experts will occur on the basis of these supplemental reports.

## Pre-Trial Exchanges

The parties discussed and agreed that we would generally use Judge Burke's form order, with a few alterations. The parties also generally agreed on a schedule for exchanges of the Pre-Trial Order ("PTO") cover pleading and related submissions (the exhibit list and deposition designations).

Regarding the PTO cover pleading, ScaleBio agrees that the statement of intended proof and statement of contested facts should be presented as a single section, with the level of specificity kept to a high level and directed to the ultimate issues.

ScaleBio proposes the following schedule of exchanges:
- *September 3*
    - o ScaleBio will provide an initial draft of the non-contested portions of the PTO based on Judge Burke's form order.
    - o Both sides will provide initial drafts of the portions of the PTO cover relating to issues on which they bear the burden of proof, provided that the portions related to damages will be supplemented by September 10.
    - o Both sides will provide initial exhibit lists. Exhibits will be labeled "PTX-##" and "DTX-##" at this point.
    - o Both sides will provide affirmative deposition designations, listed in an Excel spreadsheet and highlighted in yellow on the transcript.
- *September 19*
    - o Both sides will provide objections and responses to the initial draft portions of the PTO cover pleading.
    - o ScaleBio will circulate an updated "joint" exhibit list that has been de-duplicated, with duplicative exhibits labeled "JTX-##".  The designation of an exhibit as a joint exhibit is for de-duplication purposes and does not waive a party's objections to the other party introducing the exhibit (e.g., hearsay or foundation).

11

- o   Each side will provide a list of up to 50 exhibits to "pre-clear."
- o   Both sides will provide their objections and counter-designations (highlighted in blue) to the affirmative deposition designations.
- *September 26*
  - o   Both sides will provide their objections to the exhibits.
  - o   Both sides will provide their objections to the proposed "pre-cleared" exhibits.  Any unresolved objections will be presented in the PTO submission for resolution at the pre-trial conference.
  - o   Both sides will provide objections to counter-designations and counter-counter-designations (highlighted in green) to the counter-designations.

## Deposition Designations at Trial

ScaleBio proposes that deposition testimony be offered along the following lines: Consistent with Judge Burke's form PTO, the designations exchanged pursuant to the schedule above for inclusion in the PTO contain the maximum universe of designations and objections and shall not be supplemented without agreement of the parties or leave of Court, for good cause shown. A party may call a witness by deposition only by identifying that witness on the party's witness list and affirmatively designating testimony from that witness's deposition(s).

By 6:00 p.m. two (2) calendar days before a party intends to call a witness by deposition, the party shall identify: (1) the affirmative designations it intends to play, (2) the objections to the previously identified counter-designations it intends to raise with the Court, and (3) the counter-counter-designations it asserts should also be played with each counter-designation.

By 8:00 p.m. that same day, the other side will identify (1) any objections to the affirmative designations that it intends to raise with the Court and (2) the counter-designations it asserts should also be played.

If the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those affirmative designations would otherwise be proper counter-designations to the affirmatively designated testimony that has not been withdrawn.  Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those counter-designations would otherwise be proper counter-counter-designations to the counter-designated testimony that has not been withdrawn.

By 9:00 p.m. that same day, the party calling the witness shall circulate a draft joint letter identifying all objections to deposition designations that any party has identified that evening.  At 9:00 p.m. that same day, the parties will meet and confer about those objections.

By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to designated testimony will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

As soon thereafter as practical, the party calling the witness shall then submit to the Court: (1) an excerpt of the deposition transcript containing the deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations; and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

The following day (i.e., the day before the deposition testimony is intended to be played), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

## Motions *in Limine*

The parties agreed that each side would preliminarily identify the topics of potential motions *in limine* that it contemplates filing, followed by a meet and confer to address whether any of those issues could be resolved by agreement and/or stipulation. Each side would then proceed to brief three of its motions, with the sides serving opening, response, and reply briefs according to the schedule below:

- *September 10* – Parties exchange all potential MIL topics by 5:00 pm
- *September 12* – Meet and confer regarding MIL topics
- *September 22* – Each side will serve opening MIL briefs for up to three selected topics
- *September 29* – Each side will serve briefs in response to the other side's MILs
- *October 1* – Each side will serve reply briefs in support of its MILs
- *October 3* – All MIL briefing will be submitted to the Court with the PTO

Separately, ScaleBio raised the issue of motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs on their three selected motions. ScaleBio believes that such an issue might arise if, for example, a decision is issued on a summary judgment or *Daubert* motion that raises issues addressable by a motion *in limine*. With the understanding that there must be a meet and confer prior to the filing of any such motion, ScaleBio proposes that the parties allow for an additional meet and confer, if needed, the morning of September 22.

## Order of Presentation of Evidence

ScaleBio will provide its proposal in a separate email.

## Length of Trial

The parties discussed ways to shorten or streamline trial. While the parties did not agree on any reduction to the current ten-day trial schedule, Parse indicated that it would consider ScaleBio's proposal that the parties select representative products and claims.

## Exhibit Exchanges

ScaleBio proposes that Judge Burke's procedure in Part VI.A of his form PTO be implemented as follows:

- By 6:00 p.m. two (2) calendar days before a party intends to call a witness to testify live, the party shall identify the evidentiary exhibits (i.e., not demonstrative exhibits) that the party intends to use with the witness.

- By 8:00 p.m. that same day, the other side will identify any objections to those exhibits that it intends to raise with the Court.

- By 9:00 p.m. that same day, the party that plans to use the exhibits shall circulate a draft joint letter identifying all objections to exhibits that any party has identified that evening.  At 9:00 p.m. that same day, the parties will meet and confer about those objections.

- By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to an exhibit will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

- Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

- As soon thereafter as practical, the party that plans to use the exhibits will submit to the Court (1) the objected-to exhibit and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

- The following day (i.e., the day before the planned use of the exhibit), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

13

The procedures in Judge Burke's form PTO for demonstrative exhibits used for opening and for direct testimony would not be altered, other than to add the 9:00 p.m. meet and confer and the exchanges of the joint letter.

**Jury Instructions, Voir Dire, and Verdict Form**

The parties briefly discussed the need for a schedule for exchanging drafts of jury instructions, voir dire submissions, and verdict forms. ScaleBio proposes the following schedule for such exchanges:
- *September 22* – Plaintiffs to provide initial draft jury instructions, voir dire submissions, and verdict forms
- *September 29* – Counterclaim-Plaintiffs to provide responses and objections to Plaintiffs' drafts
- *October 1* – Parties will meet and confer to address any objections or disagreements
- *October 6* – ScaleBio will file joint submissions, with any unresolved objections or disagreements noted

Please let us know your thoughts on these proposals.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 21, 2025 1:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Could you please provide an update on when Scale intends to circulate its proposals for the upcoming pretrial exchanges? During last week's call, the parties identified a number of issues Scale agreed to follow up on in writing, including its proposal for an early exchange of witness lists, confirmation of certain particulars on what both sides will exchange on September 3 and 19, whether Scale had agreed to provide the initial draft of (i) the cover pleading associated with the pretrial order on September 3, (ii) preliminary and final jury instructions; (iii) voir dire, and (iv) the verdict form, the procedures governing deposition designations, Scale's response to our proposed motions *in limine* schedule, and Scale's response to our proposed dispute resolution procedures governing trial disclosures, to name a few.

As we discussed, both parties are interested in the resolution of some of these issues in advance of the first substantive disclosure on September 3. That date is now less than two weeks away. Could you please let us know when we can expect your proposals?

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Wednesday, August 13, 2025 7:04 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we are available to meet and confer on Friday from 11 am to noon.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, August 13, 2025 4:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are no longer available to meet and confer tomorrow at 10 AM. Is your team available on Friday from 11 AM – 12:30 PM or 1 PM – 3 PM to meet and confer? I can circulate an updated calendar invite once confirmed.

Regards,
Emma



# Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 11, 2025 10:43 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. We are available to meet and confer at 10 am on Thursday (8/14).

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 7, 2025 12:32 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are available to meet and confer at the following times next week and will be prepared to address the topics noted in your prior email.

- **Thursday, 8/14:** 9 AM – 12 PM; 3 PM – 5 PM
- **Friday, 8/15:** 11 AM – 1 PM; 3 PM – 5 PM

16

In addition to the topics you raised, we have two additional things we believe should be discussed during the meet and confer. First, the parties should agree on a date prior to the end of August to exchange preliminary witness lists so that, in the event any party lists a witness that was not previously deposed in this litigation, the other party can take a deposition of that witness by mid-September in the spirit of the parties' prior stipulation. Second, the parties should agree on a date to exchange updated financial information so that the damages experts can issue supplemental reports in time to incorporate any updated damages calculations into the pretrial order. We can discuss the specific parameters for the exchange of updated financial information during the meet and confer, as well as the scope and timing of any supplemental reports.

Upon confirmation of the date and time for the meet and confer, we will circulate a calendar invite.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 5, 2025 11:42 AM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Following up on my email from last week: please let us know your availability to meet and confer regarding the proposed pretrial order.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Monday, July 28, 2025 4:02 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-

ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

In view of the approaching October 3, 2025, deadline to file a Joint Proposed Pretrial Order (including any motions *in limine*) and as required by Local Rule 16.3(c), please let us know your availability to meet and confer to discuss the contents of the proposed PTO.

It is our understanding that, absent agreement and court approval, the parties are set to make two pretrial exchanges concerning the PTO: the first on September 3, 2025, and the second on September 19, 2025. *See* Local Rule 16.3(d)(1)–(2). We are fine with this general approach but believe a few exceptions, noted below, may help with an efficient process for the PTO. We are, however, also open to considering any alternative schedule proposed by Scale and Roche.

The exceptions we propose to the default, two-exchange approach include a modified schedule concerning the disclosure of any (1) motions *in limine* and (2) deposition designations.

1. For any *motion in limine*, we propose separate deadlines for the: (i) disclosure of the subject the motion *in limine*; (ii) ensuring meet and confer; (iii) exchange of opening briefs; (iv) exchange of answering briefs; and (v) exchange of reply briefs.

2. For any deposition designations, we propose an additional round of designations—i.e., (i) initial designations; (ii) counter designations; and (iii) counter-counter designations.

If Scale and Roche generally agree with these modifications in principle, we can discuss the particular schedule for these additional exchanges during the meet and confer. We also intend to discuss the following sections/topics of the Joint Proposed Pretrial Order:

– The proposed PTO's cover pleading, including the order of presentation of evidence at trial, length of trial, and the exchange procedures at trial for the disclosure of (i) witnesses, (ii) demonstratives, and (iii) exhibits used in direct examinations;
– Compilation of the <u>joint</u> exhibit list; and
– Degree of specificity the parties intend to include in the contested facts section of the PTO.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Wednesday, June 18, 2025 7:24 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

The parties stipulated to an early exchange of preliminary witness lists (D.I. 203), but it does not appear that that a deadline for any early exchange still exists or that the stipulation remains in effect. That is because the operative scheduling order (D.I. 270) does not reflect D.I. 203 or any of its deadlines, and the parties did not abide by a strict reading of its terms and exchange preliminary witness lists in February.

Please let us know whether Scale and Roche believe D.I. 203 remains in effect and, if so, when they intend to serve preliminary witness lists.

Thank you,
Brady



**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1101 K Street NW, 10th Floor, Washington, DC 20005

**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638
**IP Assistant:** Albert Yeboah
**Main:** 202.371.2600   **Direct:** 202.772.8932

19

# EXHIBIT E

## Stephanie Blair

| | |
|---|---|
| **From:** | Frank, Emma L. <Emma.Frank@wolfgreenfield.com> |
| **Sent:** | Wednesday, September 10, 2025 2:00 PM |
| **To:** | Brady Gleason; Rabinowitz, Stephen S.; Metzler, Sara M.; Farnan, Kelly E.; WGS-Scale Biosciences v. Parse; WH RSS-Scale Lit |
| **Cc:** | ParseUW; kpascale@ycst.com; Vrana, Robert; Scale_Parse_Service |
| **Subject:** | RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB |

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

Pursuant to the parties' agreement regarding the exchange of preliminary lists of potential motions in limine, Plaintiffs disclose the following:

- ███████████████████████████████████████████████
- Parse asserts only method claims, and DeForest McDuff should not be permitted to present evidence of foreign sales by ScaleBio or to opine on worldwide royalties, because he has failed to satisfy the applicable legal requirements.
- Parse should be precluded from referring to 10x Genomics unless such references fall within a list of topics to be agreed upon by the parties (e.g., Parse may refer to the fact that 10x acquired ScaleBio). We are willing to meet and confer to discuss any topics that Parse seeks to introduce into evidence. We request that Parse provide us with such a list in advance of the parties' meet and confer.
- ██████████████████████████████████████████████████████████████ ███████████
- Exclude Rosengren deposition testimony as irrelevant and prejudicial.
- Exclude mentions of Parse's dismissed counterclaims or any "evidence" that Parse had alleged supported those dismissed claims.

Plaintiffs are available between 2:30 and 5:30 Eastern to meet and confer on Friday.  Please confirm your availability and we will circulate a Zoom invite.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, September 10, 2025 3:53 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

At the moment, we can agree that the both sides can

Furthermore, we reject the premise that our silence could be taken as consent, and were ScaleBio to proceed as stated, that would amount to a violation of the protective order. We are not obligated to respond to any arbitrary deadlines imposed by you. We intend to work cooperatively on this matter, as both sides have endeavored to do in preparation of the proposed pretrial order.

Separately, please provide in writing ScaleBio's proposal regarding the deadlines for the exchange of jury instructions, voir dire, and verdict forms. We discussed a few proposals during last week's meet and confer, so we would appreciate clarity, especially in light of ScaleBio's suggestion to extend the parties' deadline to file these papers with the court by a day or two.

Please also provide your availability on Friday to meet and confer regarding motions in limine.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, September 10, 2025 11:13 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

I am again following up regarding whether Parse agrees that both sides ████████████████████ ████████████████████████████████████████████████ *See* D.I. 430. ████████

If we do not receive a response to the contrary by the end of today, we will assume that Parse is consenting that our client may be informed of the damages amounts and royalty rates set forth in the supplemental damages reports.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Tuesday, September 9, 2025 5:22 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Brady,

████████████████████████████████████████████████ We do, however, require Parse's response **today** regarding whether it will agree that both sides can ████████ ████████████████████████████████████████.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA

emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 9, 2025 1:36 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,



Finally, we will respond under separate cover to your proposal regarding whether both sides can share with their clients the total damages amounts and royalty rates set forth in the supplemental damages reports.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Monday, September 8, 2025 2:06 PM

**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you again for your proposals. Our responses are below. We also address a few additional issues that arose during the meet and confer.

First, ScaleBio is fine with Parse's proposed corrections to the Nakamoto transcript, and you have permission from ScaleBio to ask the court reporter to make these corrections. Please copy us when you email the deposition vendor regarding these corrections.



Third, we are working on creating a combined set of uncontested facts, which we will send you early this week (and hopefully by tomorrow morning). As you suggested, both sides will exchange competing redlines to the unified version of the proposed uncontested facts on September 19.

Fourth, regarding your question about abbreviation 32 (FRCP 32) in the parties' objection code key, the objection covers any designated testimony that is being used in a manner that is inconsistent with any section in FRCP 32 or said another way as contrary to or outside the scope of FRCP 32. For example, if a party is attempting to offer affirmative testimony of a witness who is not unavailable. There might be interplay between FRCP 32 and Rules of Evidence that apply, but for at least some instances the parties do not seem to have a separate objections code, and we suggest leaving the FRCP 32 objection unless you want to propose to further identify various scenarios, which is likely not required at this point but we are willing to consider as we proceed with counters.

Finally, ScaleBio proposes that the parties agree both sides may share with their clients the total damages amounts and royalty rates set forth in the supplemental damages reports expected to be served on Tuesday. Please let us know by the **end of the day today (Monday)** whether you agree.

We are happy to meet and confer as needed on the above issues.

Regards,

Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Friday, September 5, 2025 9:28 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Brady,

Thank you for your proposals, we will review and provide a response soon.

I am attaching word versions of the draft pretrial order cover pleading and ScaleBio's draft of uncontested facts.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, September 5, 2025 5:38 PM

**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Attached please find our proposal for correcting the Nakamoto transcript, which is the same proposal that we outlined during today's meet and confer. Please let us know if ScaleBio has any edits or additional changes to this transcript to correct the issue we discussed today and mentioned in my email from yesterday.

Regarding ScaleBio's request for supplemental information regarding the cost of sales, expenses, and gross profit associated with the sale of Parse's products: Scale stated during today's call that it requests this information in order to update Exhibit 4 to Mr. Mooney's opening expert report. But that exhibit has no apparent relationship to the damages calculations the parties agreed could be supplemented at this point in the case. As we requested in our prior email, please explain in writing why this information is relevant to the narrow scope of issues the parties agreed could be supplemented.

Regarding the proposed uncontested facts: we propose that, as soon as practicable, one side circulates a version of the proposed uncontested facts exhibit—which we understand will eventually be embedded in the proposed pretrial order's cover pleading—that coalesces both sides proposed uncontested facts. We are happy to provide this document once ScaleBio provides us with a word version of its proposed uncontested facts, which ScaleBio agreed to provide during today's call. Then, both sides will exchange competing redlines to the unified version of the proposed uncontested facts on September 19th, along with the other documents due to be exchanged that day. The parties will then meet and confer to resolve any issues specific to the proposed uncontested facts, with the understanding that any supposed uncontested fact proposed by one side that both sides do not agree is truly uncontested can be moved into that side's contested facts section of the pretrial order.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, September 4, 2025 8:10 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

7

We will circulate a dial-in for tomorrow at 1:00 pm, thank you. We noted the issue with the Nakamoto transcript in our affirmative deposition designations, *see pg.* 12, FN 1, which included an explanation that I have copied and pasted in relevant part below.

In addition to these matters, please also (1) circulate a word version of ScaleBio's proposed pretrial order cover pleading and statement of proposed uncontested facts so that we can prepare our responsive edits, which will be exchanged on September 19; and (2) confirm ScaleBio's position on our proposal regarding the schedule for exchanging drafts of the preliminary and final jury instructions, voir dire submissions, and verdict form, wherein ScaleBio provides the initial drafts of these documents on September 19, Parse/UW respond by September 30, and the parties meet and confer on October 2. We are available to discuss the exchange of jury documents, etc., on tomorrow's call, as well as how to address each side's edits to the draft uncontested facts so that each side does not prepare competing documents.

Separately, we are still considering ScaleBio's proposal for a "pre-clear" list of exhibits for opening, and can offer more detail on our current thinking tomorrow.

> Please note that at 95:18–21 of the Nakamoto deposition transcript, the court reporter erroneously entered into the transcript language indicating that Exhibit 2091 had been marked for identification. As the pages of the Nakamoto deposition transcript immediately before and thereafter make clear, however, the witness, the examining attorney, and the defending attorney were referring to Exhibit 2090 in their questions, objections, and answers. The court reporter should not have indicated that Exhibit 2091 had been marked for identification until 137:11-14 of the Nakamoto deposition transcript, as the pages of the transcript immediately before and thereafter make clear. However, at this location of the transcript, the court reporter erroneously entered into the transcript language indicating that the next exhibit, Exhibit 2092, had been marked, and this erroneous numbering of exhibits was propagated to all remaining exhibits in the Nakamoto deposition.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, September 4, 2025 5:01 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are available to meet and confer tomorrow (Friday) at 1 PM ET.

In advance of the meet and confer, please identify the alleged error in Parse's affirmative designations to the Nakamoto transcript so that we can efficiently discuss the issue tomorrow.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, September 4, 2025 9:47 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Please let us know your availability to meet and confer to discuss the following discrete issues, which require a more immediate resolution than some of the broader items the parties are still negotiating.

1.  Clarification on certain edits made by Scale to the deposition/exhibit objection key; and
2.  An error noted by Parse in its affirmative deposition designations to the Nakamoto transcript.

We are available today between 1:00 and 2:00 pm or after 4:30 pm ET.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Wednesday, September 3, 2025 7:47 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S.

<Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

We are fine with Scale's request for a 24-hour extension of the deadline for the parties to exchange the exhibit files.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, September 3, 2025 6:59 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

ScaleBio proposes a 24-hour extension to the exchange of the exhibit files (i.e., the files with filenames corresponding to the PTX or DTX numbers assigned in the parties' exhibit lists) from tonight at midnight to tomorrow night at midnight. To be clear, we are not proposing an extension to the exchange of the exhibit lists identifying those exhibits, which would still be exchanged by midnight tonight.

Please confirm if Parse agrees to this 24-hour extension.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 2, 2025 5:46 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

We are fine with your request to set the deadline for tomorrow's exchange at midnight EDT. That said, we would prefer it if the deadline for the September 19 and September 26 exchanges is at 8:00 pm EDT.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Tuesday, September 2, 2025 1:26 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

Regarding tomorrow's exchange of the pre-trial order sections, exhibit lists, and deposition designations, we don't believe the parties have set a time for the exchange. Would Parse agree to an exchange deadline of midnight EDT?

Please confirm today regarding the time for exchange tomorrow.

Regards,
Emma

11



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

---

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, September 1, 2025 6:58 PM
**To:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Stephen,

We do not see a good reason to deviate from the agreed exchange schedule, and your proposal effectively stalls a considerable amount of work for an indeterminate amount of time. We would like to avoid shifting work to a later date closer to trial on a more compressed schedule.

If you would like to discuss this matter further, we can be made available tomorrow.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>
**Sent:** Monday, September 1, 2025 5:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Please let us know today whether Parse and UW agree to this proposal, as clarified in my email yesterday.

Best regards
Stephen

---

**From:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>
**Sent:** Sunday, August 31, 2025 5:57 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Hi Brady,

Here is a clarification that addresses the issue you identified:

In light of the parties' preliminary witness list exchange on Friday, we propose that the parties agree that each side need not provide deposition designations, including designations of corporate testimony, for any witnesses who are listed on the preliminary witness list of the other side as appearing live at trial. If the party that listed a witness for live testimony later determines that it will not be calling that witness, then the other side will have an opportunity to designate deposition testimony of that witness, and the parties will go through the process of counter-designating and objecting.

We are available for a call this evening if you would like to discuss.

Best regards
Stephen

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Sunday, August 31, 2025 4:04 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

By "any witnesses who are listed on the preliminary witness lists as appearing live at trial," did you mean that each party would not exchange deposition designations for any witness identified on **its own** preliminary witness list as appearing live at trial, or for any witness identified on **either side's** preliminary witness list as appearing live at trial?

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Saturday, August 30, 2025 9:49 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

In light of the parties' preliminary witness list exchange yesterday, we propose that the parties agree **not** to exchange deposition designations, including designations of corporate testimony, for any witnesses who are listed on the preliminary witness lists as appearing live at trial. If the party that listed a witness for live testimony later determines that it will not be calling that witness, then the other side will have an opportunity to designate deposition testimony of that witness, and the parties will go through the process of counter-designating and objecting. We are happy to further meet and confer to come to an agreement on the process for these exchanges.

Given the upcoming September 3 disclosure, please confirm whether you would agree to such a proposal by **tomorrow, August 31**.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, August 29, 2025 4:59 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;

Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Pursuant to the parties agreement to exchange preliminary witness lists, copied below is a preliminary list of witnesses Parse/UW may call live or by deposition at trial. Per their agreement, the parties will provide with their respective September 3 disclosures a witness list that further indicates, for each witness, whether they "will call" or "may call" the individual live or by deposition. Parse/UW reserve all rights to modify the designations shown below for each witness and supplement or amend their witness list based on any individuals included or disclosures made in ScaleBio's or Roche's witness lists. And, as indicated below, Parse/UW reserve all rights to call live at trial any witness ScaleBio or Roche calls live at trial.

| | WITNESS | CALL LIVE | CALL BY DEPOSITION |
|---|---|---|---|
| 1. | Alex Rosenberg, Ph.D. | X | |
| 2. | Charles Roco, Ph.D. | X | |
| 3. | Michael Skogen | X | |
| 4. | Georg Seelig, Ph.D. | X | |
| 5. | Richard Muscat, D.Phil. | X | |
| 6. | Michael Yamamoto | X | |
| 7. | Jennifer McCullar, Ph.D. | X | |
| 8. | Joe Musmacker, MS | X | |
| 9. | Lior Pachter, Ph.D. | X | |
| 10. | Rahul Satija, D.Phil. | X | |
| 11. | DeForest McDuff, Ph.D. | X | |
| 12. | Giovanna Prout | | X |
| 13. | Garry Nolan, Ph.D. | | X |
| 14. | Sean Scott | | X |
| 15. | Frank Steemers, Ph.D. | | X |
| 16. | Melanie Masuda | | X |
| 17. | Margaret Nakamoto, Ph.D. | | X |
| 18. | Tod Bedilion, Ph.D. | | X |
| 19. | Thomas Albert, Ph.D. | | X |
| 20. | Carolina Dallett | | X |
| 21. | Jan Berka, Ph.D. | | X |
| 22. | John Walsh | | X |
| 23. | Maeve O'Huallachain, Ph.D. | | X |
| 24. | Garth Rosengren | | X |
| 25. | Any witness included on ScaleBio's or Roche's witness lists | X | X |

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

15

**From:** Brady Gleason
**Sent:** Friday, August 29, 2025 4:31 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

That is fine. We will produce updated financial information on Tuesday at 5 pm, and we would agree to extend the deadline to exchange supplemental damages reports to September 9.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Friday, August 29, 2025 3:49 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We need to reschedule the mutual exchange of updated financial information to Tuesday at 5 pm Eastern.  We are open to rescheduling the supplemental damages reports to September 9 or 10.  Let us know if you would like to move the supplemental damages reports.

Regards,
Emma



# Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

16

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 28, 2025 9:38 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Confirmed. We will provide tomorrow our list of witnesses and further indicate, for each witness, whether we intend to call them live or by deposition. We also understand that the parties are leaving to next week's exchange the "will call" or "may call" designations.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 8:49 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you for your response. We will respond in full under separate cover but given that the exchange of preliminary witness lists is tomorrow, we wanted to clarify your position on the format of the list. Our expectation is that the parties will exchange a list of witnesses and, for each witness, indicate whether they intend to call that witness live or by deposition. Can you please confirm **tonight** that the list of witnesses Parse will be providing tomorrow will indicate whether each witness on that list will be appearing live or by deposition?

Regards,

17

Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 28, 2025 6:07 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we confirm that we will send you an email on Friday containing a list of individuals Parse/UW intend to call either live or by deposition.

**Pretrial exchanges**

Thank you for confirming our understanding of the September 3rd exchanges. Please confirm that Scale/Roche will also similarly provide exhibits to the PTO containing:

1. **Section III (Facts)**: on the issues they bear the burden, Scale/Roche's (i) proposed uncontested facts and (ii) contested facts.
2. **Section IV (Issues of Law)**: Scale/Roche's statement of the issues of law that remain to be litigated on the issues they bear the burden.
3. **Section V (Witnesses)**: Scale/Roche's affirmative deposition designations, in the manner proposed.
4. **Section VI (Exhibits)**: Scale/Roche's exhibit list.
5. **Section VII (Damages)**: Scale/Roche's itemized statement of all damages, including special damages

Regarding the exhibit list exchange on September 3: we agree that both parties should serve OCR-ed PDF copies of their proposed exhibits and are fine with naming the files with the proposed exhibit number, understanding that these file names are subject to change.

Regarding our proposal for including additional exhibits on September 19: our intent here is to give both sides the ability to supplement their exhibit list in view of the other's initial exhibit list, which is consistent with two-step approach set forth in the local rules. *See, e.g.*, L.R. 16.3(d)(2). We do not envision or contemplate creating additional work by requiring a showing of responsiveness.

18

We are fine with all exhibits being marked with black and white stamps.

We agree with Scale's proposal to identify objections on the joint exhibit list using the "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

**Motions *in Limine***

We agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to the two scenarios you have listed and to your proposal for a subsequent meet and confer no later than September 20.

**Jury Instructions, Voir Dire, and Verdict Form**

If ScaleBio intends to provide initial drafts of the preliminary and final jury instructions, voir dire submissions, and verdict form on September 19, we can respond by September 30, with a meet and confer on October 2. That should give the parties sufficient time to finalize and file these papers before the October 6 deadline.

**Exhibit and Demonstrative Exchanges**:

Parse/UW disagrees with Scale's proposal requiring the disclosure of exhibits two days before the party intends to call a witness to testify. Parse/UW's counterproposal (shown below) aligns more closely to Judge Burke's template (at 6), which provides that the party will disclose exhibits to be used in connection with direct examination "the day before their intended use." Parse's counterproposal also joins the disclosure requirement for exhibits and demonstratives to the same schedule.

Parse/UW propose the following procedure:

1.  By 6:30 p.m. two calendar days before the party intends to call a witness to testify live, the party shall disclose to the other side the name of each witness and list them in order in which the party intends to call them to testify live.
2.  By 6:30 p.m. one calendar day before the party intends to call a witness to testify live, the party shall identify (1) the evidentiary exhibits that the party intends to use with the witness, and (2) any demonstratives that the party intends to use with the witness.
3.  By 8:00 p.m. that same day, the other side will identify any objections to those exhibits, demonstratives, or both that it intends to raise with the Court.

We also propose that the first daily disclosure deadline should be set at 6:30 p.m., instead of 6:00 p.m., to allow the parties a bit more time to prepare the necessary disclosure emails, especially if trial runs late that day.

Parse/UW also propose the dispute resolution procedure outlined below, as it avoids creating more work and late nights. Parse/UW's proposal also aligns more closely to Judge Burke's template (at 6), which requires the objecting party to "bring its objections to the Court's attention prior to the witness being called to the witness stand," as opposed to a joint submission.

4.  By 9:00 p.m. that same day, the parties will meet and confer about those objections.
5.  By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to an exhibit, demonstrative, or both shall submit to the Court (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection, and (2) the objected-to exhibit/demonstrative, identifying (e.g., highlighting) the portions of the exhibit/demonstrative reflecting the objected to material.

The following morning (i.e., the morning before the planned use of the exhibit), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

Notwithstanding the procedures above, the parties shall make available for inspection any physical exhibits and physical demonstratives at least five calendar days before the first day of trial.

**Deposition Designations at Trial**:

We agree that the pretrial order shall contain the maximum universe of deposition designations, counter-designations, counter-counter designations, and objections to admission of deposition testimony, and these designations and objections can only be supplemented with the approval of all parties or leave of the court, on good cause shown.

We propose a disclosure schedule similar to our exhibit exchange proposal (above), which affords both sides more time to identify which designations to play and which designations are objectionable. Scale's proposal, which leaves the objecting party only two hours to identify counter-designations and objections, will likely yield greater disputes to be resolved at the 9:00 pm meet and confer than if, as Parse/UW propose, the parties take more time to consider counter-designations and objections. We also believe this proposal prevents inefficiencies in redoing designations because the parties will have disclosed narrowed designations at the appropriate times and will know the universe of designations to object to after each disclosure. On the other hand, Scale's proposal requires the offering party to provide objections and to identify counter-counter designations to counter-designations that may ultimately fall to the wayside.

1. By 6:30 p.m. three calendar days before a party intends to call a witness by deposition at trial, the party shall identify (1) the affirmative designations it intends to play, and (2) any exhibits the party intends to move into evidence through, for each witness, the designated testimony.
2. By 6:30 p.m. the next calendar day, the other side shall identify (1) any counter designations it asserts should also be played, and (2) any objections to the previously identified affirmative designations.
3. By 8:00 p.m. that same day (i.e., two days before it intends to call a witness by deposition at trial), the offering party shall (1) identify any counter-counter designations it asserts should also be played, and (2) any objections to the other side's counter designations.

We agree that if the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those excluded affirmative designations are relevant to affirmatively designated testimony that has not been withdrawn. The availability of this option—that is, the ability to use the other side's designations once de-designated—reflects precisely why the other side should have more than two hours to formulate its counter designations. Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those excluded counter-designations are relevant to counter-designated testimony that has not been withdrawn.

Regarding meet and confers, we propose a schedule similar to the one above for exhibits. We propose the following:

4. By 9:00 p.m. that same day, the parties shall meet and confer to discuss the disclosed objections and any disputes pertaining to the video of deposition to be played.
5. By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to designated deposition testimony to be played at trial shall submit to the Court: (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection; (2) an excerpt of the deposition transcript containing the deposition testimony of the witness(es) at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations.
6. By 11:00 p.m. that same day, the party intending to call a witness by deposition at trial shall provide video of deposition to be played, with closed captioning.

The following morning (i.e., the day before the deposition testimony is intended to be played), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

We understand that this procedure is slightly different than the one outlined in Burke's template, which requires a joint submission but permits (at 4-5) only "one sentence per objection." But this proposal is intended to create some consistency between this process and how disputes concerning exhibits and demonstratives are resolved at trial.

We are available to meet and confer on any of these topics.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 11:57 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

---

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Brady,

Thank you for your response to our proposals, we respond in turn to yours below. We also understand that Parse will be providing responses regarding deposition designations at trial and exhibit exchanges under separate cover.

**Preliminary Witness Lists**
Confirmed that the parties will mutually exchange preliminary witness lists on August 29 at 5:00 pm ET. We do want to clarify the format of that exchange. Can Parse please confirm **today** that it will provide a preliminary witness list that identifies whether the witness will be appearing live or by deposition? We would propose leaving "will call" or "may call" designations for the exchange next week.

**Pretrial Exchanges**
Regarding what Parse/UW must provide on September 3:
1. *Section I (Nature of the Case)*: We will provide an initial draft of this section, keeping matters to a high level, and Parse will provide (as it proposes) the identity of Parse/UW's claims; the parties can provide their proposed edits as part of their responses and objections on September 19.
2. *Section II (Jurisdiction)*: Parse should state the remedy it is seeking consistent with the discovery it provided. We will otherwise provide the initial draft of this section given that no party has contested jurisdiction or venue.
3. *Section III (Facts)*: Confirmed that Parse/UW should provide its exhibits to the PTO containing Parse/UW's (i) *proposed* uncontested facts and (ii) contested facts. We do envision that the "uncontested facts" exhibit will eventually be a single joint exhibit, and that the parties will move any facts that the other side contests to their respective "contested facts" exhibits.

4. **Section IV (Issues of Law)**: Confirmed that Parse/UW should provide their exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated.

5. **Section V (Witnesses)**: Confirmed that Parse/UW should provide Parse/UW's affirmative deposition designations, in the manner outlined in our email.

6. **Section VI (Exhibits)**: Confirmed that Parse/UW should provide Parse/UW's exhibit list. Please also see our further response below.

7. **Section VII (Damages)**: Confirmed that Parse/UW should provide Parse/UW's itemized statement of all damages, including special damages.

Parse/UW should also provide its witness list, and for expert witnesses should include the indication of the "precise subject matter on which it will ask the Court to recognize the witness's expertise" as required by Judge Burke's form PTO.

We also confirm that the following will be provided as exhibits attached to the PTO cover pleading: (1) joint statement of uncontested facts; (2) each side's statement of contested facts; (3) each side's statement of issues of law that remain to be litigated; (4) each side's deposition designations; (5) the joint exhibit list; (6) each side's exhibit lists; and (7) the MIL briefing, once completed.

Regarding the exhibit list exchange on September 3, ScaleBio's proposal is just that the documents be labeled with "PTX-##" and "DTX-##" on the exhibit list. While we agree that neither party should be pre-marking the exhibits for the reasons you mention, we did intend that both parties would serve OCR-ed PDF copies of their proposed exhibits with the file names set to the proposed exhibit numbers (e.g., "PTX-001.pdf"). That exchange is necessary to allow timely review of the proposed exhibits, identification of any MIL issues, and identification of objections. In terms of your proposed color scheme for exhibit stamps, we believe the exhibit number prefixes (PTX-, DTX-, and JT-) are sufficient identifiers without introducing different colored stamps. We propose that all exhibits be marked with black and white stamps.

Regarding the exchanges on September 19, attached please find our edits to the key/legend.

We confirm that the pre-clear list is intended to be for exhibits used in either side's opening statements.

We are considering your proposal regarding the identification of additional exhibits. To confirm, does your proposal envision any showing that the additional exhibits identified on September 19 are responsive to something identified by the other side on September 3?

Confirmed that we will provide an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side has made that objection. We would propose just adding a "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

## Motions *in Limine*

We would agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to those that (1) arise because the Court enters a decision on summary judgment or Daubert motion that raises the issue addressed by the additional motion *in limine*; or (2) arise from statements made or issues raised during the parties' meet and confer on September 12.

We cannot agree that the subsequent meet and confer has to occur on or before September 19, including because of Parse's proposal that additional exhibits can be identified for the trial exhibit lists on September 19. We would be willing to consider that meet and confer occurring late on September 20.

We agree that both parties are limited to serving a total of three motions *in limine* on September 22 absent leave of Court to present any additional motion(s).

We also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

## Length of Trial

We will respond under separate cover regarding proposals for representative products and claims.

22

We would consider a proposal regarding stipulations on authenticity of documents if presented by Parse. We would also consider a proposal regarding proffers of expertise for experts, but note that both sides have filed *Daubert* motions that may impact any such proffers.

**Jury Instructions, Voir Dire, and Verdict Form**
We would agree to provide initial drafts of the jury instructions, voir dire submissions, and verdict forms on September 19 if Parse provides its responses and objections to those drafts by September 29, with the meet and confer to follow on October 1.

We are happy to meet and confer further on any of these topics as needed.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 26, 2025 11:01 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Confirmed—Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.

Thank you.

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Monday, August 25, 2025 6:09 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E.

<Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>

**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;
Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We will provide a more fulsome response to your email under separate cover. In the interim, we confirm that we will provide what will essentially be updated versions of SCALEBIO0160901 and SCALEBIO0334813 with sales information for the Accused Scale Products in the United States as of June 30, 2025.

Please confirm that Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.

Regards,
Emma



### Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 25, 2025 2:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;
Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. Here are our responses to your email below.

**Preliminary Witness Lists**: agreed. Please confirm that the parties will mutually exchange preliminary witness lists on August 29, the agreed upon date, at 5:00 pm ET.

**Supplemental Damages Reports**: agreed. Parse requests that Scale produce essentially updated versions of SCALEBIO0160901 and SCALEBIO0334813, providing all sales of the Accused Scale Products in the United States as of June 30, 2025.

**Pretrial Exchanges**: generally agreed, subject to the following --

- September 3
    - To confirm, because Scale has agreed to provide an initial draft on September 3 of the "non-contested portions of the PTO based on Judge Burke's form order," Parse/UW need only provide at this initial disclosure the following:
        1. *Section I (Nature of the Case)*: the identity of Parse/UW's claims
        2. *Section II (Jurisdiction)*: the remedy sought by Parse/UW, such as damages or injunctive or declaratory relief
        3. *Section III (Facts)*: exhibits to the PTO containing Parse/UW's (i) uncontested facts and (ii) contested facts.
        4. *Section IV (Issues of Law)*: exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated
        5. *Section V (Witnesses)*: Parse/UW's affirmative deposition designations, in the manner outlined in your email.
        6. *Section VI (Exhibits)*: Parse/UW's exhibit list.
            1. To confirm, when you say "exhibits will be labeled "PTX-##" and "DTX-##" at this point," you are proposing to simply label them as such on the exhibit list, and you are not proposing an actual exchange of pre-marked exhibits (and/or pre-marked exhibits having file names reflecting the supposed "PTX##" or "DTX##")—correct? In our experience, pre-marking the actual exhibits at the initial exchange, prior to the deduplication and compilation of the joint exhibit list, creates unnecessary work and confusion. We propose that the parties should exchange copies of marked exhibits at a later date.
            2. For the deadline to exchange pre-marked exhibits, we propose September 26. Further, we suggest the following color scheme.
                1. The stamps used to pre-mark exhibits on Plaintiffs' list(s) should be yellow
                2. The stamps used to pre-mark exhibits on Defendants' list(s) should be blue
                3. The stamps used to pre-mark exhibits on the Joint Exhibit list(s) should be white
        7. *Section VII (Damages)*: Parse/UW's itemized statement of all damages, including special damages
    - Please also confirm that the aforementioned portions of the PTO that are contested (e.g., disputed facts, issues of law, etc.) will be provided as exhibits attached to the PTO cover pleading
    - Scale will provide the first draft of the remaining information required by the Local Rule and in accordance with Judge Burke's template.
- September 19
    - For any objections to the other side's exhibit list and deposition designations, please confirm that Scale will use the attached key/legend. To the extent Scale has any edits to this key/legend, please provide them before September 3.
    - Regarding your pre-cleared list, we are considering your proposal and will respond separately. In the meantime, please confirm our understanding that this pre-clear list is limited to the exhibits used in either side's opening statement demonstratives.
    - We also propose that the parties should identify any additional exhibit not previously included on the exhibit list (e.g., an exhibit responsive to a statement disclosed by the other side at the initial exchange) with this September 19 exchange. Any objections to these additional exhibits shall be provided by September 26.
- September 26
    - Scale will circulate an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side as made that objection.

25

**Deposition Designations at Trial**

- We will respond under separate cover.

**Motions *in limine***

- Parse/UW generally agrees with the proposed dates for exchanges. Further, we generally agree regarding motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs, provided the following terms are agreed upon.
    - *First*, the only motion *in limine* topics that can be added after the September 10 exchange are those that arise because the Court enters a decision on summary judgment or *Daubert* motion that raises the issue supposedly addressable by the additional motion *in limine*.
    - *Second*, any subsequent meet and confer on a motion *in limine* topic added after the September 10 exchange must occur on or before September 19.
- Please confirm that, notwithstanding these procedures and parties' ability to identify a new motion in limine topic after September 10, both sides are limited to serving a total of three motions *in limine* on September 22. For clarity, no additional motions *in limine* will be made after September 22, absent leave of court.
- Please also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

**Length of Trial**

- We would be willing to consider any proposal by Scale of representative products and claims.
- Please confirm whether Scale would be willing to consider stipulations of documents' authenticity and/or proffers of expertise for expert witnesses.

**Exhibit Exchanges**

- We will respond under separate cover.

**Jury Instructions, Voir Dire, and Verdict Form**

- We generally agree with Scale's proposal, although the seven days between September 22 and September 29 does not provide Parse/UW sufficient time to provide its responses and objections to Scale's drafts.
- Please confirm that Scale will provide initial drafts of the jury instructions, voir dire submissions, and verdict forms by **September 16**.

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 21, 2025 2:39 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;

26

Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

This email summarizes our meet and confer on August 15, 2025 and contains ScaleBio's proposals to address certain pre-trial exchanges, as we discussed. We also understand that you will be providing Parse's response to our proposals as well as Parse's proposals for certain other issues, identified below.  Given that certain exchanges would begin as early as next week under the current proposals, please respond by *Monday, August 25*. We are happy to further meet and confer as needed on these issues.

## Preliminary Witness Lists

The parties agreed to an early exchange of preliminary witness lists and that if a party identifies someone on its preliminary witness list who has not yet been deposed in this litigation, the other side may elect to take a deposition of that witness. ScaleBio proposes that the parties exchange these witness lists on *August 29*, with any depositions to be completed by *September 21* or at least one day prior to the agreed deadline for the filing of MILs, whichever is earlier.  Please confirm whether Parse is in agreement.

## Supplemental Damages Reports

ScaleBio proposes that the parties exchange supplemental financial information and supplemental expert reports regarding damages as follows:

By 5:00 p.m. on *Monday, August 25*, the parties will identify the previously produced documents that would need to be supplemented.  By 5:00 p.m. on *Friday, August 29*, the parties will produce updated versions of those financial documents as of June 30, 2025, or such other updated financial documents that are as near as possible to those previously identified.  ScaleBio requests that Parse produce the complete set of Accused Products sales data broken down by region.  By 5:00 p.m. on *Monday, September 8* the parties will exchange supplemental expert reports that include supplemental damages calculations. The supplemental reports will be limited to updating the calculations previously presented, and may include a short narrative description of the updated calculations provided.  No new theory of damages may be introduced.  No additional depositions of the parties' damages experts will occur on the basis of these supplemental reports.

## Pre-Trial Exchanges

The parties discussed and agreed that we would generally use Judge Burke's form order, with a few alterations. The parties also generally agreed on a schedule for exchanges of the Pre-Trial Order ("PTO") cover pleading and related submissions (the exhibit list and deposition designations).

Regarding the PTO cover pleading, ScaleBio agrees that the statement of intended proof and statement of contested facts should be presented as a single section, with the level of specificity kept to a high level and directed to the ultimate issues.

ScaleBio proposes the following schedule of exchanges:
- *September 3*
  - ScaleBio will provide an initial draft of the non-contested portions of the PTO based on Judge Burke's form order.
  - Both sides will provide initial drafts of the portions of the PTO cover relating to issues on which they bear the burden of proof, provided that the portions related to damages will be supplemented by September 10.
  - Both sides will provide initial exhibit lists. Exhibits will be labeled "PTX-##" and "DTX-##" at this point.
  - Both sides will provide affirmative deposition designations, listed in an Excel spreadsheet and highlighted in yellow on the transcript.

27

- *September 19*
    - o Both sides will provide objections and responses to the initial draft portions of the PTO cover pleading.
    - o ScaleBio will circulate an updated "joint" exhibit list that has been de-duplicated, with duplicative exhibits labeled "JTX-##". The designation of an exhibit as a joint exhibit is for de-duplication purposes and does not waive a party's objections to the other party introducing the exhibit (e.g., hearsay or foundation).
    - o Each side will provide a list of up to 50 exhibits to "pre-clear."
    - o Both sides will provide their objections and counter-designations (highlighted in blue) to the affirmative deposition designations.
- *September 26*
    - o Both sides will provide their objections to the exhibits.
    - o Both sides will provide their objections to the proposed "pre-cleared" exhibits. Any unresolved objections will be presented in the PTO submission for resolution at the pre-trial conference.
    - o Both sides will provide objections to counter-designations and counter-counter-designations (highlighted in green) to the counter-designations.

## Deposition Designations at Trial

ScaleBio proposes that deposition testimony be offered along the following lines: Consistent with Judge Burke's form PTO, the designations exchanged pursuant to the schedule above for inclusion in the PTO contain the maximum universe of designations and objections and shall not be supplemented without agreement of the parties or leave of Court, for good cause shown. A party may call a witness by deposition only by identifying that witness on the party's witness list and affirmatively designating testimony from that witness's deposition(s).

By 6:00 p.m. two (2) calendar days before a party intends to call a witness by deposition, the party shall identify: (1) the affirmative designations it intends to play, (2) the objections to the previously identified counter-designations it intends to raise with the Court, and (3) the counter-counter-designations it asserts should also be played with each counter-designation.

By 8:00 p.m. that same day, the other side will identify (1) any objections to the affirmative designations that it intends to raise with the Court and (2) the counter-designations it asserts should also be played.

If the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those affirmative designations would otherwise be proper counter-designations to the affirmatively designated testimony that has not been withdrawn. Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those counter-designations would otherwise be proper counter-counter-designations to the counter-designated testimony that has not been withdrawn.

By 9:00 p.m. that same day, the party calling the witness shall circulate a draft joint letter identifying all objections to deposition designations that any party has identified that evening. At 9:00 p.m. that same day, the parties will meet and confer about those objections.

By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to designated testimony will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

As soon thereafter as practical, the party calling the witness shall then submit to the Court: (1) an excerpt of the deposition transcript containing the deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations; and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

The following day (i.e., the day before the deposition testimony is intended to be played), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

## Motions *in Limine*

The parties agreed that each side would preliminarily identify the topics of potential motions *in limine* that it contemplates filing, followed by a meet and confer to address whether any of those issues could be resolved by agreement and/or stipulation. Each side would then proceed to brief three of its motions, with the sides serving opening, response, and reply briefs according to the schedule below:

- *September 10* – Parties exchange all potential MIL topics by 5:00 pm
- *September 12* – Meet and confer regarding MIL topics
- *September 22* – Each side will serve opening MIL briefs for up to three selected topics
- *September 29* – Each side will serve briefs in response to the other side's MILs
- *October 1* – Each side will serve reply briefs in support of its MILs
- *October 3* – All MIL briefing will be submitted to the Court with the PTO

Separately, ScaleBio raised the issue of motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs on their three selected motions. ScaleBio believes that such an issue might arise if, for example, a decision is issued on a summary judgment or *Daubert* motion that raises issues addressable by a motion *in limine*. With the understanding that there must be a meet and confer prior to the filing of any such motion, ScaleBio proposes that the parties allow for an additional meet and confer, if needed, the morning of September 22.

## Order of Presentation of Evidence

ScaleBio will provide its proposal in a separate email.

## Length of Trial

The parties discussed ways to shorten or streamline trial. While the parties did not agree on any reduction to the current ten-day trial schedule, Parse indicated that it would consider ScaleBio's proposal that the parties select representative products and claims.

## Exhibit Exchanges

ScaleBio proposes that Judge Burke's procedure in Part VI.A of his form PTO be implemented as follows:

- By 6:00 p.m. two (2) calendar days before a party intends to call a witness to testify live, the party shall identify the evidentiary exhibits (i.e., not demonstrative exhibits) that the party intends to use with the witness.

- By 8:00 p.m. that same day, the other side will identify any objections to those exhibits that it intends to raise with the Court.

- By 9:00 p.m. that same day, the party that plans to use the exhibits shall circulate a draft joint letter identifying all objections to exhibits that any party has identified that evening. At 9:00 p.m. that same day, the parties will meet and confer about those objections.

- By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to an exhibit will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

- Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

- As soon thereafter as practical, the party that plans to use the exhibits will submit to the Court (1) the objected-to exhibit and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

- The following day (i.e., the day before the planned use of the exhibit), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

The procedures in Judge Burke's form PTO for demonstrative exhibits used for opening and for direct testimony would not be altered, other than to add the 9:00 p.m. meet and confer and the exchanges of the joint letter.

### Jury Instructions, Voir Dire, and Verdict Form

The parties briefly discussed the need for a schedule for exchanging drafts of jury instructions, voir dire submissions, and verdict forms. ScaleBio proposes the following schedule for such exchanges:
- *September 22* – Plaintiffs to provide initial draft jury instructions, voir dire submissions, and verdict forms
- *September 29 –* Counterclaim-Plaintiffs to provide responses and objections to Plaintiffs' drafts
- *October 1 –* Parties will meet and confer to address any objections or disagreements
- *October 6* – ScaleBio will file joint submissions, with any unresolved objections or disagreements noted

Please let us know your thoughts on these proposals.

Regards,
Emma

**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 21, 2025 1:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Could you please provide an update on when Scale intends to circulate its proposals for the upcoming pretrial exchanges? During last week's call, the parties identified a number of issues Scale agreed to follow up on in writing, including its proposal for an early exchange of witness lists, confirmation of certain particulars on what both sides will exchange on September 3 and 19, whether Scale had agreed to provide the initial draft of (i) the cover pleading associated with the pretrial order on September 3, (ii) preliminary and final jury instructions; (iii) voir dire, and (iv) the

verdict form, the procedures governing deposition designations, Scale's response to our proposed motions *in limine* schedule, and Scale's response to our proposed dispute resolution procedures governing trial disclosures, to name a few.

As we discussed, both parties are interested in the resolution of some of these issues in advance of the first substantive disclosure on September 3. That date is now less than two weeks away. Could you please let us know when we can expect your proposals?

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Wednesday, August 13, 2025 7:04 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we are available to meet and confer on Friday from 11 am to noon.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, August 13, 2025 4:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are no longer available to meet and confer tomorrow at 10 AM. Is your team available on Friday from 11 AM – 12:30 PM or 1 PM – 3 PM to meet and confer? I can circulate an updated calendar invite once confirmed.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 11, 2025 10:43 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. We are available to meet and confer at 10 am on Thursday (8/14).

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 7, 2025 12:32 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are available to meet and confer at the following times next week and will be prepared to address the topics noted in your prior email.

- **Thursday, 8/14:** 9 AM – 12 PM; 3 PM – 5 PM
- **Friday, 8/15:** 11 AM – 1 PM; 3 PM – 5 PM

In addition to the topics you raised, we have two additional things we believe should be discussed during the meet and confer. First, the parties should agree on a date prior to the end of August to exchange preliminary witness lists so that, in the event any party lists a witness that was not previously deposed in this litigation, the other party can take a deposition of that witness by mid-September in the spirit of the parties' prior stipulation. Second, the parties should agree on a date to exchange updated financial information so that the damages experts can issue supplemental reports in time to incorporate any updated damages calculations into the pretrial order. We can discuss the specific parameters for the exchange of updated financial information during the meet and confer, as well as the scope and timing of any supplemental reports.

Upon confirmation of the date and time for the meet and confer, we will circulate a calendar invite.

Regards,
Emma



### Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 5, 2025 11:42 AM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Following up on my email from last week: please let us know your availability to meet and confer regarding the proposed pretrial order.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**

**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Monday, July 28, 2025 4:02 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

In view of the approaching October 3, 2025, deadline to file a Joint Proposed Pretrial Order (including any motions *in limine*) and as required by Local Rule 16.3(c), please let us know your availability to meet and confer to discuss the contents of the proposed PTO.

It is our understanding that, absent agreement and court approval, the parties are set to make two pretrial exchanges concerning the PTO: the first on September 3, 2025, and the second on September 19, 2025. *See* Local Rule 16.3(d)(1)–(2). We are fine with this general approach but believe a few exceptions, noted below, may help with an efficient process for the PTO. We are, however, also open to considering any alternative schedule proposed by Scale and Roche.

The exceptions we propose to the default, two-exchange approach include a modified schedule concerning the disclosure of any (1) motions *in limine* and (2) deposition designations.

1. For any *motion in limine*, we propose separate deadlines for the: (i) disclosure of the subject the motion *in limine*; (ii) ensuring meet and confer; (iii) exchange of opening briefs; (iv) exchange of answering briefs; and (v) exchange of reply briefs.

2. For any deposition designations, we propose an additional round of designations—i.e., (i) initial designations; (ii) counter designations; and (iii) counter-counter designations.

If Scale and Roche generally agree with these modifications in principle, we can discuss the particular schedule for these additional exchanges during the meet and confer. We also intend to discuss the following sections/topics of the Joint Proposed Pretrial Order:

- The proposed PTO's cover pleading, including the order of presentation of evidence at trial, length of trial, and the exchange procedures at trial for the disclosure of (i) witnesses, (ii) demonstratives, and (iii) exhibits used in direct examinations;
- Compilation of the joint exhibit list; and
- Degree of specificity the parties intend to include in the contested facts section of the PTO.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Wednesday, June 18, 2025 7:24 PM

**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

The parties stipulated to an early exchange of preliminary witness lists (D.I. 203), but it does not appear that that a deadline for any early exchange still exists or that the stipulation remains in effect. That is because the operative scheduling order (D.I. 270) does not reflect D.I. 203 or any of its deadlines, and the parties did not abide by a strict reading of its terms and exchange preliminary witness lists in February.

Please let us know whether Scale and Roche believe D.I. 203 remains in effect and, if so, when they intend to serve preliminary witness lists.

Thank you,
Brady



**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1101 K Street NW, 10th Floor, Washington, DC 20005

**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638
**IP Assistant:** Albert Yeboah
**Main:** 202.371.2600   **Direct:** 202.772.8932

**EXHIBIT F**

## Stephanie Blair

| | |
|---|---|
| **From:** | Farnan, Kelly E. <Farnan@RLF.com> |
| **Sent:** | Monday, September 22, 2025 3:06 PM |
| **To:** | kpascale@ycst.com; Vrana, Robert; ParseUW; Gaza, Anne Shea; swilson@ycst.com |
| **Cc:** | Scale_Parse_Service; WH RSS-Scale Lit; WGS-Scale Biosciences v. Parse; Cottrell, Fred; Metzler, Sara M. |
| **Subject:** | Scale v. Parse: Motions in Limine |

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel:

In accordance with the parties' pre-trial exchange schedule, Plaintiffs' Motions In Limine can be downloaded from the following link: https://richardslayton.sharefile.com/d-s0f4eb0712d8f43dbaa611c95ef86f1ff.

Kelly



**Kelly E. Farnan**
**Richards, Layton & Finger, P.A.**
Farnan@RLF.com

920 N. King Street | Wilmington, DE 19801
**O:** 302-651-7705 | **F:** 302-498-7701
vCard, bio, www.rlf.com,

---

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

---

**EXHIBIT G**

## Stephanie Blair

| | |
|---|---|
| **From:** | Wilson, Samantha <SWilson@ycst.com> |
| **Sent:** | Monday, September 29, 2025 1:03 PM |
| **To:** | Azra Hadzimehmedovic; Brady Gleason; Frank, Emma L.; Rabinowitz, Stephen S.; Sara Metzler; Kelly Farnan; WGS-Scale Biosciences v. Parse; WH RSS-Scale Lit; Scale_Parse_Service |
| **Cc:** | ParseUW; Pascale, Karen; Vrana, Robert; Gaza, Anne Shea; Wilson, Samantha |
| **Subject:** | RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB |

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Azra,

The dial-in for today's 5:30 pm ET meet and confer is below.  On today's call, Parse would also like to renew the parties' discussion regarding Scale/Roche's MIL # 3 to exclude Rosengren testimony. If Scale/Roche will not withdraw this MIL and agree to the presentation of Mr. Rosengren's testimony, we would like to discuss what relief may be appropriate given that Roche failed to preserve documents.  We will respond separately regarding further meet and confers.


Wilson, Samantha is inviting you to a scheduled Zoom meeting.
Join Zoom Meeting
https://ycst.zoom.us/j/82084397844?pwd=WWKki5tX1hti4hdq5crp01YfDi7Wxz.1

Meeting ID: 820 8439 7844
Passcode: 861339


---

One tap mobile
+13017158592,,82084397844#,,,,*861339# US (Washington DC)
+13052241968,,82084397844#,,,,*861339# US




**Samantha G. Wilson, Partner**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Monday, September 29, 2025 10:12 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <emma.frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Sara Metzler <Metzler@rlf.com>; Kelly Farnan <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-

Scale Lit <WHRSS-ScaleLit@wilmerhale.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; Pascale, Karen <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Brady, we are available at 5:30 pm today.  We should also schedule the other meet and confers this week.  We are available Wednesday at 3 pm, and Thursday at 5 pm.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**

1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Sunday, September 28, 2025 at 1:11 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, Emma Frank <emma.frank@wolfgreenfield.com>, "Rabinowitz, Stephen S." <Stephen.Rabinowitz@WolfGreenfield.com>, Sara Metzler <Metzler@rlf.com>, Kelly Farnan <Farnan@RLF.com>, "WGS-Scale Biosciences v. Parse" <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>, WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>, "kpascale@ycst.com" <kpascale@ycst.com>, "Vrana, Robert" <RVrana@ycst.com>, "Gaza, Anne Shea" <agaza@ycst.com>, "Wilson, Samantha" <SWilson@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Azra,

We see that ScaleBio/Roche included its position concerning Mr. Mooney's newfound opinion on international sales in the version of the proposed pretrial order's cover that you circulated Friday night. Please provide your availability to meet and confer tomorrow to discuss this issue.

We will circulate an updated version of Dr. McDuff's report tomorrow.

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Saturday, September 27, 2025 11:08 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <emma.frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Sara Metzler <Metzler@rlf.com>; Kelly Farnan <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady—

We have responded to Parse's position regarding the royalty base that ScaleBio is owed for Parse's infringing acts. If Parse still wishes to meet and confer on this issue, we will provide our availability on Monday.

However, we have not yet received the amended McDuff calculations excluding shipments to customers outside the US. Our understanding, based on the meet and confer nearly two weeks ago, was that Parse committed to serve these calculations as soon as possible; we even followed up last week but did not receive a response. Please confirm that that amended calculation will be served this weekend.

Regarding the next round of PTO exchanges, we are agreeable to Parse's proposal that the parties have until September 30 to exchange the next round and meet and confer on October 1, although this brings us close to the filing date. It is likely that ScaleBio/Roche will have revisions or comments to Parse's September 30 edits to the pretrial order cover and undisputed facts. Please also note that we left some comments in the PTO cover and draft undisputed facts in hopes of moving some issues forward or at least assisting in your review of the changes.

Regards, Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Friday, September 26, 2025 at 12:52 PM
**To:** Emma Frank <emma.frank@wolfgreenfield.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, "Rabinowitz, Stephen S." <Stephen.Rabinowitz@WolfGreenfield.com>, "Metzler, Sara M." <Metzler@rlf.com>, "Farnan, Kelly E." <Farnan@RLF.com>, "WGS-Scale Biosciences v. Parse" <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>, WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>, "kpascale@ycst.com" <kpascale@ycst.com>, "Vrana, Robert"

<RVrana@ycst.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Counsel,

We have not received a response from ScaleBio/Roche to our September 15 or September 23 emails concerning Mr. Mooney's improper new opinion on international sales. Please confirm that ScaleBio/Roche will revise Mr. Mooney's supplemental report to remove international sales from his calculations, aligning his supplement report with his previously disclosed opinions. Please also confirm that ScaleBio/Roche will withdraw all related statements from its sections of the proposed pretrial order.

Otherwise, please let us know your availability on Monday to meet and confer on this issue.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 23, 2025 6:07 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Emma,

We are fine with your proposal to provide a harmonized version of the cover and uncontested facts by September 26, but we cannot agree to a meet and confer on September 29. We will need time to review and propose our edits to these documents. Parse/UW will provide its edits to those documents by September 30, and we propose that the parties meet and confer on the PTO on October 1.

We do not object to your proposal to add an additional round of edits to the parties' respective contested facts, intended proofs, and issues of law. We reserve our rights to amend or supplement our contested facts, intended proofs, and issues of law in view of any edits made by ScaleBio/Roche to its papers with its September 26 exchange.

Given the number of unresolved issues in this case, including the parties' summary judgment and *Daubert* motions and ScaleBio/Roche's belated request for bifurcation, we cannot agree to an exchange of exhibits to preclear for the opening statements. The likelihood that the scope of the case will change between now and trial is such that ScaleBio/Roche's proposal creates unnecessary work.

Regarding damages: we have not received a response to our September 15 email concerning Mr. Mooney's improper new opinion on international sales. Please provide a response by COB on September 25.

Regarding ScaleBio's request for Parse to produce certain documents from the 10x litigation: we will not undertake a collection and production of these documents on the eve of trial. ScaleBio/Roche was aware of these documents for well over a year and could have requested them during discovery, which closed in August 2024. ScaleBio/Roche did not request them then and has thus waived any basis to demand these documents now, a few weeks before trial.

Regarding ScaleBio's request for Parse to verify the factual assertions in it interrogatory response: we will serve Parse's verification of interrogatory responses listed in your September 19 email this week.

Regarding ScaleBio's request for an identification of kits Parse intends to mark as physical exhibits: we intend to mark as physical exhibits (1) Evercode WT v3, (2) Cell Fixation Kit, and (3) Nuclei Fixation Kit. Our September 19 edits to the proposed pretrial order's cover include procedures for the inspection of any physical exhibits.

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Tuesday, September 23, 2025 8:45 AM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

For the September 26 Pretrial Order exchanges, ScaleBio will serve an updated cover and uncontested facts that reflect the parties' September 19 exchange and, to the extent possible, harmonize the drafts. Both sides edited their contested facts and issues of law on September 19, ScaleBio also proposes that the parties exchange any final changes to contested facts and issues of law on September 26. We propose September 29 for the required L.R. 16.3(d)(3) meet and confer on the PTO.

We further propose that the parties exchange the lists of exhibits to preclear for the opening statements by September 26, and objections to those exhibits by September 29.

Please get back to us by 5:00pm ET today on these proposals.

Finally, Parse committed last week to confirming its ██████████████████████ ██████████████████████████████ ), but we have not heard back. As we said on the meet and confer, there is no credible reason these numbers are considered "confidential" by Parse this close to trial. Please get back to us today by 5:00pm ET so that we can decide if we need to bring this to the Court's attention.

Regards,

5

Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Monday, September 22, 2025 4:21 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Brady, 6 pm today works.  It likely makes sense to agree on 8 pm for oppositions and replies.

Best, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Monday, September 22, 2025 at 3:03 PM
**To:** "Frank, Emma L." <emma.frank@wolfgreenfield.com>, "Rabinowitz, Stephen S." <Stephen.Rabinowitz@WolfGreenfield.com>, "Metzler, Sara M." <Metzler@rlf.com>, "Farnan, Kelly E." <Farnan@RLF.com>, "WGS-Scale Biosciences v. Parse" <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>, WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>, "kpascale@ycst.com" <kpascale@ycst.com>, "Vrana, Robert" <RVrana@ycst.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

Counsel,

It is unclear whether the parties have specifically agreed to a time they intend to mutually exchange their opening, answering, and reply MIL briefs. We are amendable to setting these exchanges at 6:00 pm ET. Please let us know if ScaleBio/Roche agrees.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Friday, September 19, 2025 7:13 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc., C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

ScaleBio is fine with Parse's proposal regarding Parse's MIL Topic #1 and we have included this in the PTO cover pleading document.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, September 19, 2025 6:47 PM

**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Please confirm that ScaleBio agrees to our proposal regarding Parse's MIL Topic #1, and we can include that language in the pretrial order.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Thursday, September 18, 2025 2:51 PM
**To:** 'Frank, Emma L.' <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Regarding Parse's MIL Topic #1: Parse/UW is willing to agree to the following:

- ███████████████████████████████████████████████████████
  ████████████████████████████"

Regarding Scale's MIL Topic #6: Parse/UW is willing to agree to the following:

- No party shall elicit or offer testimony, enter exhibits into evidence, or present any argument or expert opinion testimony regarding Parse's dismissed tort counterclaims, including without limitation:
  1. ████████████████████████████████████████████████████
     ████████████████████████████ *E.g.*, PARSE0704087, SCALEBIO0155988.
  2. Facts and circumstances of the "concerns" communicated to Parse at the 2023 ABRF conference in Boston, MA by "actual and/or potential Parse customers" and "attendee[s]" as alleged in paragraph 37 of Parse's Tort Counterclaims (D.I. 71). *E.g.*, PARSE0704071, PARSE0704072, PARSE0703995.
  3. Facts and circumstances of the alleged statements from actual and/or potential Parse customers as alleged in paragraph 38 of Parse's Tort Counterclaims (D.I. 71)

4. Any implication that ScaleBio has or had a "broader sales and marketing campaign by Scale within and outside the United States that includes making false and misleading statements" to Parse customers as alleged in paragraph 39 of Parse's Tort Counterclaims (D.I. 71)

5. Any implication that Parse will suffer or has suffered any alleged "termination of business expectancies," "direct diversion of sales," and "lessening of the good will associated with [Parse's] products" caused by ScaleBio's alleged "false and misleading statements" as alleged in paragraphs 40 and 41 of Parse's Tort Counterclaims (D.I. 71)

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, September 18, 2025 10:27 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

During our meet and confer on Tuesday, Parse represented that it would provide revisions to ScaleBio's proposed stipulation regarding Parse's dismissed counterclaims yesterday. Please provide any such revisions to the stipulation by **today at 2 PM (ET)**.

Regards,
Emma



# Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

# Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

9

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, September 17, 2025 11:21 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Based on our meet and confer yesterday, we have the following understanding:
1. Parse agreed to revise ████████████████████████████████████████. Parse agreed to provide those updated calculations as soon as possible.
2. Parse has agreed to the below stipulation regarding Dr. Nolan.
3. Today, Parse will provide any revisions to the proposed stipulation regarding Parse's dismissed counterclaims. On the meet and confer yesterday, Parse agreed in principle not to introduce evidence related to those counterclaims.

Regarding Parse's proposed MIL #1, ScaleBio is willing to agree as follows: ████████████████████████████████████████████████████████████████████████"

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 16, 2025 5:52 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

We write regarding a few matters regarding this Friday's exchange and a few other specific items.

1. The parties initially agreed to exchange objections to exhibits provided on September 26. *See* E. Frank's Aug. 21 Email; B. Gleason's Aug. 25 Email. Though, subsequent correspondence has somewhat clouded the date in which this deadline falls. To clarify any confusion, please confirm <u>by COB tomorrow</u> that ScaleBio will circulate on <u>September 26 </u>its objections to the exhibits provided. Parse/UW intend to serve exhibit objections on September 26.

2. During today's meet and confer on the motions *in limine*, ScaleBio confirmed that it would not call Dr. Steemers live or rely on its affirmative deposition designations, though it may rely on any counter-designations it may provide to Parse/UW's affirmative designations of Dr. Steemers' deposition transcript. Please confirm <u>by COB tomorrow</u> that ScaleBio withdraws its affirmative designations of Dr. Steemers' deposition.

3. Attached is an updated objection key that includes a new objection for no sponsoring witness ("NSW") that was inadvertently omitted before.

4. We previously proposed that the September 19 and September 26 exchanges would occur at 8:00 pm ET. Please confirm that ScaleBio/Roche agree to these exchanges at 8:00 pm ET.

5. ScaleBio's draft cover pleading cites a transcript from *Siemens Industry, Inc. v. Westinghouse Air Brake Technologies Corp.,* Telephone Conference Tr. at 36-37, D. Del. No. 16-cv-284 (Aug. 17, 2017) (Burke, J.), which is unavailable to the public. Please provide a copy of this transcript <u>by COB tomorrow </u>or withdraw reliance on the transcript.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Monday, September 15, 2025 7:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

In accordance with the parties' agreement during Friday's meet and confer, Parse/UW provide the following information:

1. <u>Scale's MIL topic # 5 concerning the Rosengren deposition testimony:</u> during Friday's meet and confer, Scale/Roche requested that we identify the particular documents or set of documents that Parse/UW contends were improperly deleted. As we stated during the call, Mr. Rosengren's deposition testimony and his related



Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, September 10, 2025 5:00 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

In accordance with the parties' agreement, Parse and UW identify the following topics on which they may file motions *in limine* with the parties' proposed pretrial order. Consistent with that prior agreement, Parse and UW reserve the right to modify or supplement this list of topics to include issues that arise (1) because the Court hereinafter enters a decision on summary judgment or *Daubert* motion that raises the issue addressed by the additional motion *in limine*; or (2) from statements made or issues raised during the parties' meet and confer on their respective motion *in limine* topics. Parse and UW further reserve the right to make any necessary objections at trial pertaining to one or more topics below.

1. ████████████████████████████████████████████████████████
   ████████████████████
2. Scale cannot argue unclean hands or present evidence related to its unclean hands claim or defense;
3. Scale cannot solicit testimony from its own witnesses on issues shielded by claims of privilege during depositions;
4. Scale cannot present deposition designations from its own witnesses (e.g., Steemers, Scott, Nakamoto) or from the 10x v. Parse lawsuit (████████████████████████ and
5. Scale cannot present evidence that anyone at ████████████████████████████████ ██████████████████████ .

We are available to meet and confer on Friday after 3:00 pm ET.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, September 10, 2025 3:53 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

At the moment, we can agree that the both sides can ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Furthermore, we reject the premise that our silence could be taken as consent, and were ScaleBio to proceed as stated, that would amount to a violation of the protective order. We are not obligated to respond to any arbitrary deadlines imposed by you. We intend to work cooperatively on this matter, as both sides have endeavored to do in preparation of the proposed pretrial order.

Separately, please provide in writing ScaleBio's proposal regarding the deadlines for the exchange of jury instructions, voir dire, and verdict forms. We discussed a few proposals during last week's meet and confer, so we would appreciate clarity, especially in light of ScaleBio's suggestion to extend the parties' deadline to file these papers with the court by a day or two.

Please also provide your availability on Friday to meet and confer regarding motions in limine.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, September 10, 2025 11:13 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

I am again following up regarding whether Parse agrees that both sides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* D.I. 430.

If we do not receive a response to the contrary by the end of today, we will assume that Parse is consenting that our client may be informed of the damages amounts and royalty rates set forth in the supplemental damages reports.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Tuesday, September 9, 2025 5:22 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Brady,

████████████████████████████████████████████████ We do, however, require Parse's response **today** regarding whether it will agree that both sides can ████████ ████████████████████████████████████████████.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 9, 2025 1:36 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,



Finally, we will respond under separate cover to your proposal regarding whether both sides can share with their clients the total damages amounts and royalty rates set forth in the supplemental damages reports.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Monday, September 8, 2025 2:06 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you again for your proposals. Our responses are below. We also address a few additional issues that arose during the meet and confer.

First, ScaleBio is fine with Parse's proposed corrections to the Nakamoto transcript, and you have permission from ScaleBio to ask the court reporter to make these corrections. Please copy us when you email the deposition vendor regarding these corrections.

16



Third, we are working on creating a combined set of uncontested facts, which we will send you early this week (and hopefully by tomorrow morning). As you suggested, both sides will exchange competing redlines to the unified version of the proposed uncontested facts on September 19.

Fourth, regarding your question about abbreviation 32 (FRCP 32) in the parties' objection code key, the objection covers any designated testimony that is being used in a manner that is inconsistent with any section in FRCP 32 or said another way as contrary to or outside the scope of FRCP 32. For example, if a party is attempting to offer affirmative testimony of a witness who is not unavailable. There might be interplay between FRCP 32 and Rules of Evidence that apply, but for at least some instances the parties do not seem to have a separate objections code, and we suggest leaving the FRCP 32 objection unless you want to propose to further identify various scenarios, which is likely not required at this point but we are willing to consider as we proceed with counters.

Finally, ScaleBio proposes that the parties agree both sides may share with their clients the ███████████ ████████ set forth in the supplemental damages reports expected to be served on Tuesday. Please let us know by the **<span style="color:red">end of the day today (Monday)</span>** whether you agree.

We are happy to meet and confer as needed on the above issues.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Friday, September 5, 2025 9:28 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

17

Brady,

Thank you for your proposals, we will review and provide a response soon.

I am attaching word versions of the draft pretrial order cover pleading and ScaleBio's draft of uncontested facts.

Regards,
Emma



## Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, September 5, 2025 5:38 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Attached please find our proposal for correcting the Nakamoto transcript, which is the same proposal that we outlined during today's meet and confer. Please let us know if ScaleBio has any edits or additional changes to this transcript to correct the issue we discussed today and mentioned in my email from yesterday.

Regarding ScaleBio's request for supplemental information regarding the ███████████████████████████████ ███████████████████████████████ : Scale stated during today's call that it requests this information in order to update Exhibit 4 to Mr. Mooney's opening expert report. But that exhibit has no apparent relationship to the damages calculations the parties agreed could be supplemented at this point in the case. As we requested in our prior email, please explain in writing why this information is relevant to the narrow scope of issues the parties agreed could be supplemented.

Regarding the proposed uncontested facts: we propose that, as soon as practicable, one side circulates a version of the proposed uncontested facts exhibit—which we understand will eventually be embedded in the proposed pretrial order's cover pleading—that coalesces both sides proposed uncontested facts. We are happy to provide this document once ScaleBio provides us with a word version of its proposed uncontested facts, which ScaleBio agreed to provide during

today's call. Then, both sides will exchange competing redlines to the unified version of the proposed uncontested facts on September 19th, along with the other documents due to be exchanged that day. The parties will then meet and confer to resolve any issues specific to the proposed uncontested facts, with the understanding that any supposed uncontested fact proposed by one side that both sides do not agree is truly uncontested can be moved into that side's contested facts section of the pretrial order.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, September 4, 2025 8:10 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

We will circulate a dial-in for tomorrow at 1:00 pm, thank you. We noted the issue with the Nakamoto transcript in our affirmative deposition designations, *see pg.* 12, FN 1, which included an explanation that I have copied and pasted in relevant part below.

In addition to these matters, please also (1) circulate a word version of ScaleBio's proposed pretrial order cover pleading and statement of proposed uncontested facts so that we can prepare our responsive edits, which will be exchanged on September 19; and (2) confirm ScaleBio's position on our proposal regarding the schedule for exchanging drafts of the preliminary and final jury instructions, voir dire submissions, and verdict form, wherein ScaleBio provides the initial drafts of these documents on September 19, Parse/UW respond by September 30, and the parties meet and confer on October 2. We are available to discuss the exchange of jury documents, etc., on tomorrow's call, as well as how to address each side's edits to the draft uncontested facts so that each side does not prepare competing documents.

Separately, we are still considering ScaleBio's proposal for a "pre-clear" list of exhibits for opening, and can offer more detail on our current thinking tomorrow.

> Please note that at 95:18–21 of the Nakamoto deposition transcript, the court reporter erroneously entered into the transcript language indicating that Exhibit 2091 had been marked for identification. As the pages of the Nakamoto deposition transcript immediately before and thereafter make clear, however, the witness, the examining attorney, and the defending attorney were referring to Exhibit 2090 in their questions, objections, and answers. The court reporter should not have indicated that Exhibit 2091 had been marked for identification until 137:11-14 of the Nakamoto deposition transcript, as the pages of the transcript immediately before and thereafter make clear. However, at this location of the transcript, the court reporter erroneously entered into the transcript language indicating that the next exhibit, Exhibit 2092, had been marked, and this erroneous numbering of exhibits was propagated to all remaining exhibits in the Nakamoto deposition.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, September 4, 2025 5:01 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are available to meet and confer tomorrow (Friday) at 1 PM ET.

In advance of the meet and confer, please identify the alleged error in Parse's affirmative designations to the Nakamoto transcript so that we can efficiently discuss the issue tomorrow.

Regards,
Emma



# Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, September 4, 2025 9:47 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>

**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Please let us know your availability to meet and confer to discuss the following discrete issues, which require a more immediate resolution than some of the broader items the parties are still negotiating.

1.  Clarification on certain edits made by Scale to the deposition/exhibit objection key; and
2.  An error noted by Parse in its affirmative deposition designations to the Nakamoto transcript.

We are available today between 1:00 and 2:00 pm or after 4:30 pm ET.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Wednesday, September 3, 2025 7:47 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

We are fine with Scale's request for a 24-hour extension of the deadline for the parties to exchange the exhibit files.

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, September 3, 2025 6:59 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-

ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;
Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Counsel,

ScaleBio proposes a 24-hour extension to the exchange of the exhibit files (i.e., the files with filenames corresponding to the PTX or DTX numbers assigned in the parties' exhibit lists) from tonight at midnight to tomorrow night at midnight.  To be clear, we are not proposing an extension to the exchange of the exhibit lists identifying those exhibits, which would still be exchanged by midnight tonight.

Please confirm if Parse agrees to this 24-hour extension.

Regards,
Emma



### Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 2, 2025 5:46 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;
Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

We are fine with your request to set the deadline for tomorrow's exchange at midnight EDT. That said, we would prefer it if the deadline for the September 19 and September 26 exchanges is at 8:00 pm EDT.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Tuesday, September 2, 2025 1:26 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

Regarding tomorrow's exchange of the pre-trial order sections, exhibit lists, and deposition designations, we don't believe the parties have set a time for the exchange. Would Parse agree to an exchange deadline of midnight EDT?

Please confirm today regarding the time for exchange tomorrow.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, September 1, 2025 6:58 PM
**To:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Stephen,

We do not see a good reason to deviate from the agreed exchange schedule, and your proposal effectively stalls a considerable amount of work for an indeterminate amount of time. We would like to avoid shifting work to a later date closer to trial on a more compressed schedule.

If you would like to discuss this matter further, we can be made available tomorrow.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>
**Sent:** Monday, September 1, 2025 5:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Please let us know today whether Parse and UW agree to this proposal, as clarified in my email yesterday.

Best regards
Stephen

---

**From:** Rabinowitz, Stephen S. <Stephen.Rabinowitz@WolfGreenfield.com>
**Sent:** Sunday, August 31, 2025 5:57 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Hi Brady,

Here is a clarification that addresses the issue you identified:

In light of the parties' preliminary witness list exchange on Friday, we propose that the parties agree that each side need not provide deposition designations, including designations of corporate testimony, for any witnesses who are listed on the preliminary witness list of the other side as appearing live at trial. If the party that listed a witness for live testimony

24

later determines that it will not be calling that witness, then the other side will have an opportunity to designate deposition testimony of that witness, and the parties will go through the process of counter-designating and objecting.

We are available for a call this evening if you would like to discuss.

Best regards
Stephen

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Sunday, August 31, 2025 4:04 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

By "any witnesses who are listed on the preliminary witness lists as appearing live at trial," did you mean that each party would not exchange deposition designations for any witness identified on **its own** preliminary witness list as appearing live at trial, or for any witness identified on **either side's** preliminary witness list as appearing live at trial?

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Saturday, August 30, 2025 9:49 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

In light of the parties' preliminary witness list exchange yesterday, we propose that the parties agree **not** to exchange deposition designations, including designations of corporate testimony, for any witnesses who are listed on the preliminary witness lists as appearing live at trial. If the party that listed a witness for live testimony later determines that it will not be calling that witness, then the other side will have an opportunity to designate deposition testimony of that witness, and the parties will go through the process of counter-designating and objecting. We are happy to further meet and confer to come to an agreement on the process for these exchanges.

25

Given the upcoming September 3 disclosure, please confirm whether you would agree to such a proposal by **<u>tomorrow, August 31</u>**.

Regards,
Emma



### Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, August 29, 2025 4:59 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Pursuant to the parties agreement to exchange preliminary witness lists, copied below is a preliminary list of witnesses Parse/UW may call live or by deposition at trial. Per their agreement, the parties will provide with their respective September 3 disclosures a witness list that further indicates, for each witness, whether they "will call" or "may call" the individual live or by deposition. Parse/UW reserve all rights to modify the designations shown below for each witness and supplement or amend their witness list based on any individuals included or disclosures made in ScaleBio's or Roche's witness lists. And, as indicated below, Parse/UW reserve all rights to call live at trial any witness ScaleBio or Roche calls live at trial.

| | WITNESS | CALL LIVE | CALL BY DEPOSITION |
|---|---|---|---|
| 1. | Alex Rosenberg, Ph.D. | X | |
| 2. | Charles Roco, Ph.D. | X | |
| 3. | Michael Skogen | X | |
| 4. | Georg Seelig, Ph.D. | X | |
| 5. | Richard Muscat, D.Phil. | X | |
| 6. | Michael Yamamoto | X | |
| 7. | Jennifer McCullar, Ph.D. | X | |
| 8. | Joe Musmacker, MS | X | |
| 9. | Lior Pachter, Ph.D. | X | |

| 10. | Rahul Satija, D.Phil. | X | |
|-----|------------------------|---|---|
| 11. | DeForest McDuff, Ph.D. | X | |
| 12. | Giovanna Prout | | X |
| 13. | Garry Nolan, Ph.D. | | X |
| 14. | Sean Scott | | X |
| 15. | Frank Steemers, Ph.D. | | X |
| 16. | Melanie Masuda | | X |
| 17. | Margaret Nakamoto, Ph.D. | | X |
| 18. | Tod Bedilion, Ph.D. | | X |
| 19. | Thomas Albert, Ph.D. | | X |
| 20. | Carolina Dallett | | X |
| 21. | Jan Berka, Ph.D. | | X |
| 22. | John Walsh | | X |
| 23. | Maeve O'Huallachain, Ph.D. | | X |
| 24. | Garth Rosengren | | X |
| 25. | Any witness included on ScaleBio's or Roche's witness lists | X | X |

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Friday, August 29, 2025 4:31 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

That is fine. We will produce updated financial information on Tuesday at 5 pm, and we would agree to extend the deadline to exchange supplemental damages reports to September 9.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Friday, August 29, 2025 3:49 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We need to reschedule the mutual exchange of updated financial information to Tuesday at 5 pm Eastern.  We are open to rescheduling the supplemental damages reports to September 9 or 10.  Let us know if you would like to move the supplemental damages reports.

Regards,
Emma



### Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 28, 2025 9:38 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Confirmed. We will provide tomorrow our list of witnesses and further indicate, for each witness, whether we intend to call them live or by deposition. We also understand that the parties are leaving to next week's exchange the "will call" or "may call" designations.

Thank you,
Brady

28

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 8:49 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

| **EXTERNAL EMAIL:** Use caution before clicking links or attachments. |
| --- |

Brady,

Thank you for your response. We will respond in full under separate cover but given that the exchange of preliminary witness lists is tomorrow, we wanted to clarify your position on the format of the list. Our expectation is that the parties will exchange a list of witnesses and, for each witness, indicate whether they intend to call that witness live or by deposition. Can you please confirm **tonight** that the list of witnesses Parse will be providing tomorrow will indicate whether each witness on that list will be appearing live or by deposition?

Regards,
Emma



### Emma Frank
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

### Wolf, Greenfield & Sacks, P.C.
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 28, 2025 6:07 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;

Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we confirm that we will send you an email on Friday containing a list of individuals Parse/UW intend to call either live or by deposition.

### Pretrial exchanges

Thank you for confirming our understanding of the September 3rd exchanges. Please confirm that Scale/Roche will also similarly provide exhibits to the PTO containing:

1. **Section III (Facts)**: on the issues they bear the burden, Scale/Roche's (i) proposed uncontested facts and (ii) contested facts.
2. **Section IV (Issues of Law)**: Scale/Roche's statement of the issues of law that remain to be litigated on the issues they bear the burden.
3. **Section V (Witnesses)**: Scale/Roche's affirmative deposition designations, in the manner proposed.
4. **Section VI (Exhibits)**: Scale/Roche's exhibit list.
5. **Section VII (Damages)**: Scale/Roche's itemized statement of all damages, including special damages

Regarding the exhibit list exchange on September 3: we agree that both parties should serve OCR-ed PDF copies of their proposed exhibits and are fine with naming the files with the proposed exhibit number, understanding that these file names are subject to change.

Regarding our proposal for including additional exhibits on September 19: our intent here is to give both sides the ability to supplement their exhibit list in view of the other's initial exhibit list, which is consistent with two-step approach set forth in the local rules. *See, e.g.*, L.R. 16.3(d)(2). We do not envision or contemplate creating additional work by requiring a showing of responsiveness.

We are fine with all exhibits being marked with black and white stamps.

We agree with Scale's proposal to identify objections on the joint exhibit list using the "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

### Motions *in Limine*

We agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to the two scenarios you have listed and to your proposal for a subsequent meet and confer no later than September 20.

### Jury Instructions, Voir Dire, and Verdict Form

If ScaleBio intends to provide initial drafts of the preliminary and final jury instructions, voir dire submissions, and verdict form on September 19, we can respond by September 30, with a meet and confer on October 2. That should give the parties sufficient time to finalize and file these papers before the October 6 deadline.

### Exhibit and Demonstrative Exchanges:

Parse/UW disagrees with Scale's proposal requiring the disclosure of exhibits two days before the party intends to call a witness to testify. Parse/UW's counterproposal (shown below) aligns more closely to Judge Burke's template (at 6), which provides that the party will disclose exhibits to be used in connection with direct examination "the day before

30

their intended use." Parse's counterproposal also joins the disclosure requirement for exhibits and demonstratives to the same schedule.

Parse/UW propose the following procedure:

1. By 6:30 p.m. two calendar days before the party intends to call a witness to testify live, the party shall disclose to the other side the name of each witness and list them in order in which the party intends to call them to testify live.
2. By 6:30 p.m. one calendar day before the party intends to call a witness to testify live, the party shall identify (1) the evidentiary exhibits that the party intends to use with the witness, and (2) any demonstratives that the party intends to use with the witness.
3. By 8:00 p.m. that same day, the other side will identify any objections to those exhibits, demonstratives, or both that it intends to raise with the Court.

We also propose that the first daily disclosure deadline should be set at 6:30 p.m., instead of 6:00 p.m., to allow the parties a bit more time to prepare the necessary disclosure emails, especially if trial runs late that day.

Parse/UW also propose the dispute resolution procedure outlined below, as it avoids creating more work and late nights. Parse/UW's proposal also aligns more closely to Judge Burke's template (at 6), which requires the objecting party to "bring its objections to the Court's attention prior to the witness being called to the witness stand," as opposed to a joint submission.

4. By 9:00 p.m. that same day, the parties will meet and confer about those objections.
5. By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to an exhibit, demonstrative, or both shall submit to the Court (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection, and (2) the objected-to exhibit/demonstrative, identifying (e.g., highlighting) the portions of the exhibit/demonstrative reflecting the objected to material.

The following morning (i.e., the morning before the planned use of the exhibit), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

Notwithstanding the procedures above, the parties shall make available for inspection any physical exhibits and physical demonstratives at least five calendar days before the first day of trial.

**Deposition Designations at Trial**:

We agree that the pretrial order shall contain the maximum universe of deposition designations, counter-designations, counter-counter designations, and objections to admission of deposition testimony, and these designations and objections can only be supplemented with the approval of all parties or leave of the court, on good cause shown.

We propose a disclosure schedule similar to our exhibit exchange proposal (above), which affords both sides more time to identify which designations to play and which designations are objectionable. Scale's proposal, which leaves the objecting party only two hours to identify counter-designations and objections, will likely yield greater disputes to be resolved at the 9:00 pm meet and confer than if, as Parse/UW propose, the parties take more time to consider counter-designations and objections. We also believe this proposal prevents inefficiencies in redoing designations because the parties will have disclosed narrowed designations at the appropriate times and will know the universe of designations to object to after each disclosure. On the other hand, Scale's proposal requires the offering party to provide objections and to identify counter-counter designations to counter-designations that may ultimately fall to the wayside.

1. By 6:30 p.m. three calendar days before a party intends to call a witness by deposition at trial, the party shall identify (1) the affirmative designations it intends to play, and (2) any exhibits the party intends to move into evidence through, for each witness, the designated testimony.
2. By 6:30 p.m. the next calendar day, the other side shall identify (1) any counter designations it asserts should also be played, and (2) any objections to the previously identified affirmative designations.
3. By 8:00 p.m. that same day (i.e., two days before it intends to call a witness by deposition at trial), the offering party shall (1) identify any counter-counter designations it asserts should also be played, and (2) any objections to the other side's counter designations.

We agree that if the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those excluded affirmative designations are relevant to affirmatively designated testimony that has not been withdrawn. The availability of this option—that is, the ability to use the other side's designations once de-designated—reflects precisely why the other side should have more than two hours to formulate its counter designations. Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those excluded counter-designations are relevant to counter-designated testimony that has not been withdrawn.

Regarding meet and confers, we propose a schedule similar to the one above for exhibits. We propose the following:

4. By 9:00 p.m. that same day, the parties shall meet and confer to discuss the disclosed objections and any disputes pertaining to the video of deposition to be played.
5. By 11:00 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party objecting to designated deposition testimony to be played at trial shall submit to the Court: (1) a letter containing a concise statement of the basis of each objection, limited to 100 words per objection; (2) an excerpt of the deposition transcript containing the deposition testimony of the witness(es) at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations.
6. By 11:00 p.m. that same day, the party intending to call a witness by deposition at trial shall provide video of deposition to be played, with closed captioning.

The following morning (i.e., the day before the deposition testimony is intended to be played), the objecting party shall raise with the Court the objections at a time and in a manner suitable for the Court.

We understand that this procedure is slightly different than the one outlined in Burke's template, which requires a joint submission but permits (at 4-5) only "one sentence per objection." But this proposal is intended to create some consistency between this process and how disputes concerning exhibits and demonstratives are resolved at trial.

We are available to meet and confer on any of these topics.


Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 28, 2025 11:57 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-

Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>;
Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you for your response to our proposals, we respond in turn to yours below. We also understand that Parse will be providing responses regarding deposition designations at trial and exhibit exchanges under separate cover.

**Preliminary Witness Lists**
Confirmed that the parties will mutually exchange preliminary witness lists on August 29 at 5:00 pm ET. We do want to clarify the format of that exchange. Can Parse please confirm **today** that it will provide a preliminary witness list that identifies whether the witness will be appearing live or by deposition? We would propose leaving "will call" or "may call" designations for the exchange next week.

**Pretrial Exchanges**
Regarding what Parse/UW must provide on September 3:
1. *Section I (Nature of the Case)*: We will provide an initial draft of this section, keeping matters to a high level, and Parse will provide (as it proposes) the identity of Parse/UW's claims; the parties can provide their proposed edits as part of their responses and objections on September 19.
2. *Section II (Jurisdiction)*: Parse should state the remedy it is seeking consistent with the discovery it provided.  We will otherwise provide the initial draft of this section given that no party has contested jurisdiction or venue.
3. *Section III (Facts)*: Confirmed that Parse/UW should provide its exhibits to the PTO containing Parse/UW's (i) *proposed* uncontested facts and (ii) contested facts. We do envision that the "uncontested facts" exhibit will eventually be a single joint exhibit, and that the parties will move any facts that the other side contests to their respective "contested facts" exhibits.
4. *Section IV (Issues of Law)*: Confirmed that Parse/UW should provide their exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated.
5. *Section V (Witnesses)*: Confirmed that Parse/UW should provide Parse/UW's affirmative deposition designations, in the manner outlined in our email.
6. *Section VI (Exhibits)*: Confirmed that Parse/UW should provide Parse/UW's exhibit list. Please also see our further response below.
7. *Section VII (Damages)*: Confirmed that Parse/UW should provide Parse/UW's itemized statement of all damages, including special damages.

Parse/UW should also provide its witness list, and for expert witnesses should include the indication of the "precise subject matter on which it will ask the Court to recognize the witness's expertise" as required by Judge Burke's form PTO.

We also confirm that the following will be provided as exhibits attached to the PTO cover pleading: (1) joint statement of uncontested facts; (2) each side's statement of contested facts; (3) each side's statement of issues of law that remain to be litigated; (4) each side's deposition designations; (5) the joint exhibit list; (6) each side's exhibit lists; and (7) the MIL briefing, once completed.

Regarding the exhibit list exchange on September 3, ScaleBio's proposal is just that the documents be labeled with "PTX-##" and "DTX-##" on the exhibit list. While we agree that neither party should be pre-marking the exhibits for the reasons you mention, we did intend that both parties would serve OCR-ed PDF copies of their proposed exhibits with the file names set to the proposed exhibit numbers (e.g., "PTX-001.pdf"). That exchange is necessary to allow timely review of the proposed exhibits, identification of any MIL issues, and identification of objections. In terms of your proposed color scheme for exhibit stamps, we believe the exhibit number prefixes (PTX-, DTX-, and JT-) are sufficient identifiers without introducing different colored stamps. We propose that all exhibits be marked with black and white stamps.

33

Regarding the exchanges on September 19, attached please find our edits to the key/legend.

We confirm that the pre-clear list is intended to be for exhibits used in either side's opening statements.

We are considering your proposal regarding the identification of additional exhibits. To confirm, does your proposal envision any showing that the additional exhibits identified on September 19 are responsive to something identified by the other side on September 3?

Confirmed that we will provide an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side has made that objection. We would propose just adding a "P-" prefix to identify objections made by ScaleBio/RSS and a "D-" prefix to identify objections made by Parse/UW.

### Motions *in Limine*
We would agree to limit the motion *in limine* topics that arise subsequent to the meet and confer to those that (1) arise because the Court enters a decision on summary judgment or Daubert motion that raises the issue addressed by the additional motion *in limine*; or (2) arise from statements made or issues raised during the parties' meet and confer on September 12.

We cannot agree that the subsequent meet and confer has to occur on or before September 19, including because of Parse's proposal that additional exhibits can be identified for the trial exhibit lists on September 19.  We would be willing to consider that meet and confer occurring late on September 20.

We agree that both parties are limited to serving a total of three motions *in limine* on September 22 absent leave of Court to present any additional motion(s).

We also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

### Length of Trial
We will respond under separate cover regarding proposals for representative products and claims.

We would consider a proposal regarding stipulations on authenticity of documents if presented by Parse. We would also consider a proposal regarding proffers of expertise for experts, but note that both sides have filed *Daubert* motions that may impact any such proffers.

### Jury Instructions, Voir Dire, and Verdict Form
We would agree to provide initial drafts of the jury instructions, voir dire submissions, and verdict forms on September 19 if Parse provides its responses and objections to those drafts by September 29, with the meet and confer to follow on October 1.

We are happy to meet and confer further on any of these topics as needed.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

---

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 26, 2025 11:01 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Confirmed—Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.

Thank you.

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Monday, August 25, 2025 6:09 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We will provide a more fulsome response to your email under separate cover. In the interim, we confirm that we will provide what will essentially be updated versions of SCALEBIO0160901 and SCALEBIO0334813 with sales information for the Accused Scale Products in the United States as of June 30, 2025.

Please confirm that Parse will provide updated versions of PARSE0815027 and PARSE0275864 with sales information for the Accused Parse Products in the United States as of June 30, 2025.

Regards,
Emma



# Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 25, 2025 2:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. Here are our responses to your email below.

**Preliminary Witness Lists**: agreed. Please confirm that the parties will mutually exchange preliminary witness lists on August 29, the agreed upon date, at 5:00 pm ET.

**Supplemental Damages Reports**: agreed. Parse requests that Scale produce essentially updated versions of SCALEBIO0160901 and SCALEBIO0334813, providing all sales of the Accused Scale Products in the United States as of June 30, 2025.

**Pretrial Exchanges**: generally agreed, subject to the following --
- September 3
  - To confirm, because Scale has agreed to provide an initial draft on September 3 of the "non-contested portions of the PTO based on Judge Burke's form order," Parse/UW need only provide at this initial disclosure the following:
    1. *Section I (Nature of the Case)*: the identity of Parse/UW's claims
    2. *Section II (Jurisdiction)*: the remedy sought by Parse/UW, such as damages or injunctive or declaratory relief
    3. *Section III (Facts)*: exhibits to the PTO containing Parse/UW's (i) uncontested facts and (ii) contested facts.
    4. *Section IV (Issues of Law)*: exhibit to the PTO containing Parse/UW's statement of the issues of law that remain to be litigated
    5. *Section V (Witnesses)*: Parse/UW's affirmative deposition designations, in the manner outlined in your email.
    6. *Section VI (Exhibits)*: Parse/UW's exhibit list.
       1. To confirm, when you say "exhibits will be labeled "PTX-##" and "DTX-##" at this point," you are proposing to simply label them as such on the exhibit list, and you are not proposing an actual exchange of pre-marked exhibits (and/or pre-marked exhibits

36

having file names reflecting the supposed "PTX##" or "DTX##")—correct? In our experience, pre-marking the actual exhibits at the initial exchange, prior to the deduplication and compilation of the joint exhibit list, creates unnecessary work and confusion. We propose that the parties should exchange copies of marked exhibits at a later date.

    2. For the deadline to exchange pre-marked exhibits, we propose September 26. Further, we suggest the following color scheme.

        1. The stamps used to pre-mark exhibits on Plaintiffs' list(s) should be yellow
        2. The stamps used to pre-mark exhibits on Defendants' list(s) should be blue
        3. The stamps used to pre-mark exhibits on the Joint Exhibit list(s) should be white

    7. *Section VII (Damages)*: Parse/UW's itemized statement of all damages, including special damages

- Please also confirm that the aforementioned portions of the PTO that are contested (e.g., disputed facts, issues of law, etc.) will be provided as exhibits attached to the PTO cover pleading
- Scale will provide the first draft of the remaining information required by the Local Rule and in accordance with Judge Burke's template.

   – September 19

- For any objections to the other side's exhibit list and deposition designations, please confirm that Scale will use the attached key/legend. To the extent Scale has any edits to this key/legend, please provide them before September 3.
- Regarding your pre-cleared list, we are considering your proposal and will respond separately. In the meantime, please confirm our understanding that this pre-clear list is limited to the exhibits used in either side's opening statement demonstratives.
- We also propose that the parties should identify any additional exhibit not previously included on the exhibit list (e.g., an exhibit responsive to a statement disclosed by the other side at the initial exchange) with this September 19 exchange. Any objections to these additional exhibits shall be provided by September 26.

   – September 26

- Scale will circulate an updated joint exhibit list that indicates any objections to a document listed in the September 19 exchanges in a way that also reflects which side as made that objection.

## Deposition Designations at Trial

   – We will respond under separate cover.

## Motions *in limine*

   – Parse/UW generally agrees with the proposed dates for exchanges. Further, we generally agree regarding motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs, provided the following terms are agreed upon.

- *First*, the only motion *in limine* topics that can be added after the September 10 exchange are those that arise because the Court enters a decision on summary judgment or *Daubert* motion that raises the issue supposedly addressable by the additional motion *in limine*.
- *Second*, any subsequent meet and confer on a motion *in limine* topic added after the September 10 exchange must occur on or before September 19.

   – Please confirm that, notwithstanding these procedures and parties' ability to identify a new motion in limine topic after September 10, both sides are limited to serving a total of three motions *in limine* on September 22. For clarity, no additional motions *in limine* will be made after September 22, absent leave of court.

   – Please also confirm that there is no upper limit on the number of motion *in limine* topics either side can disclose on September 10.

## Length of Trial

- We would be willing to consider any proposal by Scale of representative products and claims.
- Please confirm whether Scale would be willing to consider stipulations of documents' authenticity and/or proffers of expertise for expert witnesses.

## Exhibit Exchanges

- We will respond under separate cover.

## Jury Instructions, Voir Dire, and Verdict Form

- We generally agree with Scale's proposal, although the seven days between September 22 and September 29 does not provide Parse/UW sufficient time to provide its responses and objections to Scale's drafts.
- Please confirm that Scale will provide initial drafts of the jury instructions, voir dire submissions, and verdict forms by **September 16**.

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 21, 2025 2:39 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Scale_Parse_Service <scale_parse_service@tensegritylawgroup.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

This email summarizes our meet and confer on August 15, 2025 and contains ScaleBio's proposals to address certain pre-trial exchanges, as we discussed. We also understand that you will be providing Parse's response to our proposals as well as Parse's proposals for certain other issues, identified below.  Given that certain exchanges would begin as early as next week under the current proposals, please respond by *Monday, August 25*. We are happy to further meet and confer as needed on these issues.

## Preliminary Witness Lists

The parties agreed to an early exchange of preliminary witness lists and that if a party identifies someone on its preliminary witness list who has not yet been deposed in this litigation, the other side may elect to take a deposition of that witness. ScaleBio proposes that the parties exchange these witness lists on *August 29*, with any depositions to be completed by *September 21* or at least one day prior to the agreed deadline for the filing of MILs, whichever is earlier.  Please confirm whether Parse is in agreement.

## Supplemental Damages Reports

ScaleBio proposes that the parties exchange supplemental financial information and supplemental expert reports regarding damages as follows:

By 5:00 p.m. on *Monday, August 25*, the parties will identify the previously produced documents that would need to be supplemented.  By 5:00 p.m. on *Friday, August 29*, the parties will produce updated versions of those financial documents as of June 30, 2025, or such other updated financial documents that are as near as possible to those previously identified.  ScaleBio requests that Parse produce the complete set of Accused Products sales data broken down by region.  By 5:00 p.m. on *Monday, September 8* the parties will exchange supplemental expert reports that include supplemental damages calculations. The supplemental reports will be limited to updating the calculations previously presented, and may include a short narrative description of the updated calculations provided.  No new theory of damages may be introduced.  No additional depositions of the parties' damages experts will occur on the basis of these supplemental reports.

## Pre-Trial Exchanges

The parties discussed and agreed that we would generally use Judge Burke's form order, with a few alterations. The parties also generally agreed on a schedule for exchanges of the Pre-Trial Order ("PTO") cover pleading and related submissions (the exhibit list and deposition designations).

Regarding the PTO cover pleading, ScaleBio agrees that the statement of intended proof and statement of contested facts should be presented as a single section, with the level of specificity kept to a high level and directed to the ultimate issues.

ScaleBio proposes the following schedule of exchanges:
- *September 3*
  o ScaleBio will provide an initial draft of the non-contested portions of the PTO based on Judge Burke's form order.
  o Both sides will provide initial drafts of the portions of the PTO cover relating to issues on which they bear the burden of proof, provided that the portions related to damages will be supplemented by September 10.
  o Both sides will provide initial exhibit lists. Exhibits will be labeled "PTX-##" and "DTX-##" at this point.
  o Both sides will provide affirmative deposition designations, listed in an Excel spreadsheet and highlighted in yellow on the transcript.
- *September 19*
  o Both sides will provide objections and responses to the initial draft portions of the PTO cover pleading.
  o ScaleBio will circulate an updated "joint" exhibit list that has been de-duplicated, with duplicative exhibits labeled "JTX-##".  The designation of an exhibit as a joint exhibit is for de-duplication purposes and does not waive a party's objections to the other party introducing the exhibit (e.g., hearsay or foundation).
  o Each side will provide a list of up to 50 exhibits to "pre-clear."
  o Both sides will provide their objections and counter-designations (highlighted in blue) to the affirmative deposition designations.
- *September 26*
  o Both sides will provide their objections to the exhibits.
  o Both sides will provide their objections to the proposed "pre-cleared" exhibits.  Any unresolved objections will be presented in the PTO submission for resolution at the pre-trial conference.
  o Both sides will provide objections to counter-designations and counter-counter-designations (highlighted in green) to the counter-designations.

## Deposition Designations at Trial

ScaleBio proposes that deposition testimony be offered along the following lines: Consistent with Judge Burke's form PTO, the designations exchanged pursuant to the schedule above for inclusion in the PTO contain the maximum universe of designations and objections and shall not be supplemented without agreement of the parties or leave of Court, for good cause shown. A party may call a witness by deposition only by identifying that witness on the party's witness list and affirmatively designating testimony from that witness's deposition(s).

By 6:00 p.m. two (2) calendar days before a party intends to call a witness by deposition, the party shall identify: (1) the affirmative designations it intends to play, (2) the objections to the previously identified counter-designations it intends to raise with the Court, and (3) the counter-counter-designations it asserts should also be played with each counter-designation.

By 8:00 p.m. that same day, the other side will identify (1) any objections to the affirmative designations that it intends to raise with the Court and (2) the counter-designations it asserts should also be played.

If the party calling the witness by deposition identifies only a subset of its affirmative designations, the counter-designating parties may identify the excluded affirmative designations as counter-designations—but only if those affirmative designations would otherwise be proper counter-designations to the affirmatively designated testimony that has not been withdrawn.  Likewise, if the counter-designating parties identify only a subset of their counter-designations, the party calling the witness may identify those excluded counter-designations as counter-counter-designations—but only if those counter-designations would otherwise be proper counter-counter-designations to the counter-designated testimony that has not been withdrawn.

By 9:00 p.m. that same day, the party calling the witness shall circulate a draft joint letter identifying all objections to deposition designations that any party has identified that evening.  At 9:00 p.m. that same day, the parties will meet and confer about those objections.

By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to designated testimony will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

As soon thereafter as practical, the party calling the witness shall then submit to the Court: (1) an excerpt of the deposition transcript containing the deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter-designations; and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

The following day (i.e., the day before the deposition testimony is intended to be played), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

### Motions *in Limine*

The parties agreed that each side would preliminarily identify the topics of potential motions *in limine* that it contemplates filing, followed by a meet and confer to address whether any of those issues could be resolved by agreement and/or stipulation. Each side would then proceed to brief three of its motions, with the sides serving opening, response, and reply briefs according to the schedule below:

- *September 10* – Parties exchange all potential MIL topics by 5:00 pm
- *September 12* – Meet and confer regarding MIL topics
- *September 22* – Each side will serve opening MIL briefs for up to three selected topics
- *September 29* – Each side will serve briefs in response to the other side's MILs
- *October 1* – Each side will serve reply briefs in support of its MILs
- *October 3* – All MIL briefing will be submitted to the Court with the PTO

Separately, ScaleBio raised the issue of motion *in limine* topics that might arise subsequent to the meet and confer but prior to the first deadline the parties contemplate for service of opening briefs on their three selected motions. ScaleBio believes that such an issue might arise if, for example, a decision is issued on a summary judgment or *Daubert* motion that raises issues addressable by a motion *in limine*. With the understanding that there must be a meet and confer prior to the filing of any such motion, ScaleBio proposes that the parties allow for an additional meet and confer, if needed, the morning of September 22.

40

**Order of Presentation of Evidence**

ScaleBio will provide its proposal in a separate email.

**Length of Trial**

The parties discussed ways to shorten or streamline trial. While the parties did not agree on any reduction to the current ten-day trial schedule, Parse indicated that it would consider ScaleBio's proposal that the parties select representative products and claims.

**Exhibit Exchanges**

ScaleBio proposes that Judge Burke's procedure in Part VI.A of his form PTO be implemented as follows:

- By 6:00 p.m. two (2) calendar days before a party intends to call a witness to testify live, the party shall identify the evidentiary exhibits (i.e., not demonstrative exhibits) that the party intends to use with the witness.

- By 8:00 p.m. that same day, the other side will identify any objections to those exhibits that it intends to raise with the Court.

- By 9:00 p.m. that same day, the party that plans to use the exhibits shall circulate a draft joint letter identifying all objections to exhibits that any party has identified that evening.  At 9:00 p.m. that same day, the parties will meet and confer about those objections.

- By 10:30 p.m. that same day (or within one hour after the conclusion of the conference, whichever is later), any party that intends to object to an exhibit will circulate among the parties a draft of the letter containing a concise statement, limited to 100 words, of the basis for each objection.

- Within one hour of receiving the draft of the joint letter containing the statement(s) of objection, the opposing party will circulate a draft of the letter containing a concise response, limited to 100 words, to each statement.

- As soon thereafter as practical, the party that plans to use the exhibits will submit to the Court (1) the objected-to exhibit and (2) a joint letter identifying the pending objection(s) as well as the statement(s) and response(s).

- The following day (i.e., the day before the planned use of the exhibit), the parties shall raise with the Court the objections at a time and in a manner suitable for the Court.

The procedures in Judge Burke's form PTO for demonstrative exhibits used for opening and for direct testimony would not be altered, other than to add the 9:00 p.m. meet and confer and the exchanges of the joint letter.

**Jury Instructions, Voir Dire, and Verdict Form**

The parties briefly discussed the need for a schedule for exchanging drafts of jury instructions, voir dire submissions, and verdict forms. ScaleBio proposes the following schedule for such exchanges:
- *September 22* – Plaintiffs to provide initial draft jury instructions, voir dire submissions, and verdict forms
- *September 29 –* Counterclaim-Plaintiffs to provide responses and objections to Plaintiffs' drafts
- *October 1 –* Parties will meet and confer to address any objections or disagreements
- *October 6* – ScaleBio will file joint submissions, with any unresolved objections or disagreements noted

Please let us know your thoughts on these proposals.

Regards,
Emma

41



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, August 21, 2025 1:01 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Could you please provide an update on when Scale intends to circulate its proposals for the upcoming pretrial exchanges? During last week's call, the parties identified a number of issues Scale agreed to follow up on in writing, including its proposal for an early exchange of witness lists, confirmation of certain particulars on what both sides will exchange on September 3 and 19, whether Scale had agreed to provide the initial draft of (i) the cover pleading associated with the pretrial order on September 3, (ii) preliminary and final jury instructions; (iii) voir dire, and (iv) the verdict form, the procedures governing deposition designations, Scale's response to our proposed motions *in limine* schedule, and Scale's response to our proposed dispute resolution procedures governing trial disclosures, to name a few.

As we discussed, both parties are interested in the resolution of some of these issues in advance of the first substantive disclosure on September 3. That date is now less than two weeks away. Could you please let us know when we can expect your proposals?

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Wednesday, August 13, 2025 7:04 PM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>

**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Yes, we are available to meet and confer on Friday from 11 am to noon.

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Wednesday, August 13, 2025 4:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are no longer available to meet and confer tomorrow at 10 AM. Is your team available on Friday from 11 AM – 12:30 PM or 1 PM – 3 PM to meet and confer? I can circulate an updated calendar invite once confirmed.

Regards,
Emma



**Emma Frank**
*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

**Wolf, Greenfield & Sacks, P.C.**
BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, August 11, 2025 10:43 AM
**To:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E.

<Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Emma,

Thank you. We are available to meet and confer at 10 am on Thursday (8/14).

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Frank, Emma L. <Emma.Frank@wolfgreenfield.com>
**Sent:** Thursday, August 7, 2025 12:32 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

We are available to meet and confer at the following times next week and will be prepared to address the topics noted in your prior email.

- **Thursday, 8/14:** 9 AM – 12 PM; 3 PM – 5 PM
- **Friday, 8/15:** 11 AM – 1 PM; 3 PM – 5 PM

In addition to the topics you raised, we have two additional things we believe should be discussed during the meet and confer. First, the parties should agree on a date prior to the end of August to exchange preliminary witness lists so that, in the event any party lists a witness that was not previously deposed in this litigation, the other party can take a deposition of that witness by mid-September in the spirit of the parties' prior stipulation. Second, the parties should agree on a date to exchange updated financial information so that the damages experts can issue supplemental reports in time to incorporate any updated damages calculations into the pretrial order. We can discuss the specific parameters for the exchange of updated financial information during the meet and confer, as well as the scope and timing of any supplemental reports.

Upon confirmation of the date and time for the meet and confer, we will circulate a calendar invite.

Regards,
Emma

44



## Emma Frank

*she / her / hers*
**Associate**
Admitted to Practice: MA
emma.frank@wolfgreenfield.com
617-646-8192

## Wolf, Greenfield & Sacks, P.C.

BOSTON | NEW YORK | WASHINGTON DC
wolfgreenfield.com | LinkedIn

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, August 5, 2025 11:42 AM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

Following up on my email from last week: please let us know your availability to meet and confer regarding the proposed pretrial order.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Monday, July 28, 2025 4:02 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

In view of the approaching October 3, 2025, deadline to file a Joint Proposed Pretrial Order (including any motions *in limine*) and as required by Local Rule 16.3(c), please let us know your availability to meet and confer to discuss the contents of the proposed PTO.

It is our understanding that, absent agreement and court approval, the parties are set to make two pretrial exchanges concerning the PTO: the first on September 3, 2025, and the second on September 19, 2025. *See* Local Rule 16.3(d)(1)–(2). We are fine with this general approach but believe a few exceptions, noted below, may help with an efficient process for the PTO. We are, however, also open to considering any alternative schedule proposed by Scale and Roche.

45

The exceptions we propose to the default, two-exchange approach include a modified schedule concerning the disclosure of any (1) motions *in limine* and (2) deposition designations.

1. For any *motion in limine*, we propose separate deadlines for the: (i) disclosure of the subject the motion *in limine*; (ii) ensuring meet and confer; (iii) exchange of opening briefs; (iv) exchange of answering briefs; and (v) exchange of reply briefs.

2. For any deposition designations, we propose an additional round of designations—i.e., (i) initial designations; (ii) counter designations; and (iii) counter-counter designations.

If Scale and Roche generally agree with these modifications in principle, we can discuss the particular schedule for these additional exchanges during the meet and confer. We also intend to discuss the following sections/topics of the Joint Proposed Pretrial Order:

- The proposed PTO's cover pleading, including the order of presentation of evidence at trial, length of trial, and the exchange procedures at trial for the disclosure of (i) witnesses, (ii) demonstratives, and (iii) exhibits used in direct examinations;
- Compilation of the joint exhibit list; and
- Degree of specificity the parties intend to include in the contested facts section of the PTO.

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason
**Sent:** Wednesday, June 18, 2025 7:24 PM
**To:** Metzler, Sara M. <Metzler@rlf.com>; Farnan, Kelly E. <Farnan@RLF.com>; WGS-Scale Biosciences v. Parse <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al, C.A. No. 22-1597-CJB

Counsel,

The parties stipulated to an early exchange of preliminary witness lists (D.I. 203), but it does not appear that that a deadline for any early exchange still exists or that the stipulation remains in effect. That is because the operative scheduling order (D.I. 270) does not reflect D.I. 203 or any of its deadlines, and the parties did not abide by a strict reading of its terms and exchange preliminary witness lists in February.

Please let us know whether Scale and Roche believe D.I. 203 remains in effect and, if so, when they intend to serve preliminary witness lists.

Thank you,
Brady



**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1101 K Street NW, 10th Floor, Washington, DC 20005

**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638
**IP Assistant:** Albert Yeboah
**Main:** 202.371.2600   **Direct:** 202.772.8932

47

# EXHIBIT H

# EXHIBIT I

**EXHIBIT J**

## Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SCALE BIOSCIENCES, INC. and   )

ROCHE SEQUENCING SOLUTIONS,   )

INC.,                         )

    Plaintiffs,            )

    vs.                    ) Case No.  1:22-cv-01597-CJB

PARSE BIOSCIENCES, INC.,      )

    Defendant.             )

_____ )

PARSE BIOSCIENCES, INC. and   )

UNIVERSITY OF WASHINGTON,     )

    Counterclaim-Plaintiffs, )

    vs.                    )

SCALE BIOSCIENCES, INC.,      )

    Counterclaim-Defendant.  )

_____ )

HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF SEAN P. SCOTT

Palo Alto, California

Monday, July 29, 2024

REPORTED BY: Derek L. Hoagland

CSR No. 13445

## Page 2

VIDEOTAPED Deposition of SEAN P. SCOTT, taken before Derek L. Hoagland, a Certified Shorthand Reporter for the State of California, commencing at 9:18 a.m., Monday, July 29, 2024, at Wilmer Hale, 2600 El Camino Real, Suite 400, Palo Alto, California 94306.

## Page 3

APPEARANCES:

COUNSEL FOR PLAINTIFF:

    WOLF, GREENFIELD & SACKS, PC
    605 3rd Avenue
    25th Floor
    New York, New York 10158
    212.697.7890
    BY:  STEPHEN RABINOWITZ, ESQ.
        EMMA FRANK, ESQ.

COUNSEL FOR DEFENDANT:

    STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
    1101 K Street, NW
    Washington, DC 20005
    202.371.2600
    BY:  BYRON L. PICKARD, ESQ.
        BRADY P. GLEASON, ESQ.

COUNSEL FOR ROCHE SEQUENCING:

    WILMER CUTLER PICKERING HALE & DORR LLP
    7 World Trade Center
    250 Greenwich Street
    45th Floor
    New York, New York 10007
    212.230.8800
    BY:  VANDANA APTE, ESQ. (Via Zoom)

ALSO PRESENT
    KEN LANGUICO, VIDEOGRAPHER

## Page 4

I N D E X

| WITNESS | | PAGE |
|---|---|---|
| SEAN P. SCOTT | | |
| Examination by Mr. Pickard | | 9 |
| Examination by Mr. Rabinowitz | | 287 |

E X H I B I T S

| EXHIBIT | DESCRIPTION | MARKED |
|---|---|---|
| No. 2045 | March 16, 2022 Email | 96 |
| No. 2046 | Attachment | 97 |
| No. 2047 | Attachment | 97 |
| No. 2048 | Series of Email Exchanges | 105 |
| No. 2049 | ███████████████ | |
| | ████████ | 119 |
| No. 2050 | Email | 49 |
| No. 2051 | Attachment | 149 |
| No. 2052 | November 4th, 2020 Email | 160 |
| No. 2053 | Attachment | 160 |
| No. 2054 | Attachment ██████████ | 160 |
| No. 2055 | Email Exchange With ███ | |
| | ████████ | 175 |
| No. 2056 | ██████ Email | 177 |
| No. 2057 | December 11th, 2020 | 179 |
| No. 2058 | Attachment | 180 |

Transcript of Sean Scott
Conducted on July 29, 2024

185

Q.    Thank you.  I know that you weren't monitoring it.

A.

Q.    All right.  Why were you sharing this information with ⬛⬛⬛⬛?

A.

Q.

A.

Q.    All right.  And you said that you -- ⬛⬛⬛ is ⬛⬛⬛, right?

A.    Yes.  Two R's, so yes.

Q.    Who is ⬛?

A.

Q.    Is ⬛, ⬛?

A.    ⬛ is -- yes, correct.

Q.

A.

Q.    And you wrote:

186

Do you see that?

A.    I do.

Q.

A.

Q.

A.

(Exhibit No. 2061 marked for identification.)

BY MR. PICKARD:

Q.    All right.  Do you have Exhibit 2061 in front of you, Mr. Scott?

A.    2061.  Yes.

Q.    All right.  You will observe that the date and the time are just a few minutes before the last exhibit we reviewed.

Do you see that?

A.    Yes.  What is HSC time?

Q.    I have no idea.  Some kind of standard time, I --

A.    Okay.  So these are presumably early Saturday morning, which is -- okay.

Q.

187

A.

Q.    You provided a little bit more information in this email.  You wrote:

Do you see that?

A.    I do.

Q.

A.

Q.    All right.  Yeah, let's mark the attachment.

(Exhibit No. 2062 marked for identification.)

BY MR. PICKARD:

Q.    All right.  And I'm going to show you what's been marked 2062.

A.    Just bear with me for a minute.

THE DEPONENT:  Can I -- I need to consult you on privilege.

MR. PICKARD:  Let's go off the record.

188

THE DEPONENT:  Yeah.

THE VIDEOGRAPHER:  We are going off the record at 1446.

(A recess transpires.)

THE VIDEOGRAPHER:  And we are back on at 1448.

MR. PICKARD:  All right, Mr. Scott.  Welcome back.

THE DEPONENT:  Thank you.

BY MR. PICKARD:

Q.    The exhibit you have in front of you is 2062, correct?

A.    Correct.

Q.    And that's the attachment to what we went over a moment ago as Exhibit 2061, correct?

A.    So I see the attachment file name.  Let me see.  Is there the same file name on this?  It looks like it says "⬛⬛⬛⬛⬛⬛."

Q.    Well, that's what we're trying to get to the bottom of.  Is it what you attached to 2061?

A.    ⬛⬛⬛

Q.    Okay.  Let's go back to 2061.  The second-to-last sentence reads:

289

Do you see that?

A. Yes.

Q. ███████████████████

████████████████████

A. ████████████████████

███████████████████████

███████████████████████

███████████████████████

███████████████████████

███████████████████████

MR. RABINOWITZ:  Thank you.

I'm going to reserve the witness's rights under Rule 30(e)(1) to review the transcript and make any necessary changes or corrections.  No further questions at this time.

THE VIDEOGRAPHER:  Okay.  This marks the end of the deposition of Sean Scott.  We are going off the record at 18:16.

(Proceeding Concludes at 6:16 p.m.)

290

REPORTER'S CERTIFICATE

STATE OF CALIFORNIA        )  ss.

I, DEREK L. HOAGLAND, CSR #13445, State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing proceeding was by me sworn to testify to the truth, the whole truth and nothing but the truth;

That said proceeding was taken down by me by stenotype at the time and place therein stated and thereafter transcribed under my direction into computerized transcription.

I further certify that I am not of counsel nor attorney for nor related to the parties hereto, nor am I in any way interested in the outcome of this action.

In compliance with section 8016 of the Business and Professions Code, I certify under penalty of perjury that I am a certified shorthand reporter with license number 13445 in full force and effect.

Witness my hand this 29th day of July, 2024.

_____
DEREK L. HOAGLAND, CSR #13445

# EXHIBIT K

ScaleBio's August 2, 2024 Privilege Log

*Scale Biosciences, Inc. v. Parse Biosciences, Inc.* , No. 1:22-cv-01597-CJB (D. Del.)

| No. | Production No. | Date / Time | Email Sender/ Document Author/ Custodian | Email Recipient(s) | Description of Privileged Information | Privilege |
|-----|----------------|-------------|------------------------------------------|---------------------|--------------------------------------|-----------|
| 64 | | | | | | Attorney-Client |
| 65 | | | | | | Attorney-Client |
| 66 | | | | | | Attorney-Client |
| 67 | | | | | | Attorney-Client |
| 68 | | | | | | Attorney-Client |
| 69 | | | | | | Attorney-Client |
| 70 | | | | | | Attorney-Client |
| 71 | | | | | | Attorney-Client |
| 72 | | | | | | Attorney-Client |
| 73 | | | | | | Attorney-Client |
| 74 | | | | | | Attorney-Client |
| 75 | | | | | | Attorney-Client |
| 76 | | | | | | Attorney-Client |
| 77 | | | | | | Attorney-Client |
| 78 | | | | | | Attorney-Client |
| 79 | | | | | | Attorney-Client |

# EXHIBIT L

# EXHIBIT M

Transcript of Thomas J. Albert, Ph.D.
Conducted on August 15, 2024

1 (1 to 4)

**1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - x

SCALE BIOSCIENCES, INC.   :

and ROCHE SEQUENCING     :

SOLUTIONS, INC.,          : Civil Action No.

    Plaintiffs,      : 1-22-cv-01597-CJB

  v.                   :

PARSE BIOSCIENCES, INC.,  :

    Defendant.      :

- - - - - - - - - - - - X

(Caption continued on next page)

  HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

      SUBJECT TO PROTECTIVE ORDER

Videotaped Deposition of THOMAS JOSEPH ALBERT, PH.D.

      Conducted Virtually

      Thursday, August 15, 2024

      12:13 p.m. EDT

Job No.:  548021

Pages 1 - 181

Reported by:  Debra A. Whitehead

**2**

(Caption continued from previous page)

- - - - - - - - - - - - - - X

PARSE BIOSCIENCES, INC.,      :

and UNIVERSITY OF             :

WASHINGTON,                   :

  Counterclaim-Plaintiffs,    :

    v.                   :

SCALE BIOSCIENCES, INC.       :

  Counterclaim-Defendant.   :

- - - - - - - - - - - - - - X

    Videotaped Deposition of THOMAS JOSEPH ALBERT,

PH.D., conducted virtually.

    Pursuant to notice, before Debra Ann Whitehead,

E-Notary Public in and for the Commonwealth of

Virginia.

**3**

    A P P E A R A N C E S

ON BEHALF OF PLAINTIFF:

    KATE SAXTON, ESQUIRE

    WILMER CUTLER PICKERING HALE AND DORR LLP

    60 State Street

    Boston, Massachusetts, 02109

    (617) 526-6253

      - and -

    VANDANA APTE, ESQUIRE

    WILMER CUTLER PICKERING HALE AND DORR LLP

    7 World Trade Center

    250 Greenwich Street, 45th Floor

    New York, New York 10007

    (212) 295-6550

ON BEHALF OF DEFENDANT PARSE BIOSCIENCES, INC.,

and COUNTERCLAIM PLAINTIFFS PARSE BIOSCIENCES,

INC., and UNIVERSITY OF WASHINGTON:

    BYRON L. PICKARD, ESQUIRE

    RYAN N. KAISER, ESQUIRE

    HADIA AHSAN, ESQUIRE

    STERNE, KESSLER, GOLDSTEIN & FOX PLLC

    1101 K Street NW, 10th Floor

    Washington, DC 20005

    (202) 371-2600

**4**

  A P P E A R A N C E S   C O N T I N U E D

ALSO PRESENT:

    PEYTON ABRAMS, Video Specialist

    ALLAN HEIFETZ, A/V Technician

Transcript of Thomas J. Albert, Ph.D.
Conducted on August 15, 2024



138

Q   Okay.

Is that right?

A

Q   All right.

MR. PICKARD:  Maybe we could take that down.  Let's go back to -- let's present Item 34, please.

(Exhibit 2116 marked for identification and is attached to the transcript.)

Q   All right.  You should have Exhibit 2116, Dr. Albert.

A   Yes.

Q   Is that correct?

A   Yes, I have it.

Q                                 Right?

A

Q                                 Correct?

181

CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

I, Debra Ann Whitehead, E-Notary Public in and for the Commonwealth of Virginia, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; that reading and signing was not requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 18th day of August, 2024.

My commission expires:
October 31, 2027

------------------------------
E-NOTARY PUBLIC IN AND FOR THE
COMMONWEALTH OF VIRGINIA

# EXHIBIT N



HIGHLY CONFIDENTIAL - OUTSIDE
ATTORNEYS' EYES ONLY



--

**Confidentiality Note:** This message is intended only for the use of the named recipient(s) and may contain confidential and/or proprietary information. If you are not the intended recipient, please contact the sender and delete this message. Any unauthorized use of the information contained in this message is prohibited.

**HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

**SCALEBIO0279559**

# EXHIBIT O

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY



HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

# EXHIBIT A

RSS_00082776

US010982256B2

## (12) United States Patent
### Nolan

(10) **Patent No.:**     **US 10,982,256 B2**

(45) **Date of Patent:**     *Apr. 20, 2021

(54) **METHODS OF IDENTIFYING MULTIPLE EPITOPES IN CELLS**

(71) Applicant: **Roche Sequencing Solutions, Inc.**, Pleasanton, CA (US)

(72) Inventor: **Garry P. Nolan**, Redwood City, CA (US)

(73) Assignee: **Roche Sequencing Solutions, Inc.**, Pleasanton, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 281 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/147,250**

(22) Filed: **Sep. 28, 2018**

(65) **Prior Publication Data**

US 2019/0093146 A1     Mar. 28, 2019

**Related U.S. Application Data**

(63) Continuation of application No. 13/981,711, filed as application No. PCT/US2012/023411 on Jan. 31, 2012, now Pat. No. 10,144,950.

(60) Provisional application No. 61/444,067, filed on Feb. 17, 2011, provisional application No. 61/437,854, filed on Jan. 31, 2011.

(51) **Int. Cl.**
*C12Q 1/6806*     (2018.01)
*C12Q 1/6816*     (2018.01)
*C12Q 1/686*     (2018.01)

(52) **U.S. Cl.**
CPC ........... *C12Q 1/6806* (2013.01); *C12Q 1/686* (2013.01); *C12Q 1/6816* (2013.01)

(58) **Field of Classification Search**
CPC ..................................................... C12Q 1/6806
USPC ............................................................ 506/9
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2017/0321251 A1     11/2017   Nolan

OTHER PUBLICATIONS

Spray, David C., Illuminating gap junctions, Nature Methods, Jan. 2005, pp. 12-14, vol. 2, No. 1.
Supplemental Search Report for EP13827091, dated Apr. 26, 2016, (2 pages).
Tanaka et al, Structure and Mechanisms of a Protein-Based Organelle in *Escherichia coli*, Science, Jan. 1, 2010, p. 81, vol. 327.

*Primary Examiner* — Karla A Dines
(74) *Attorney, Agent, or Firm* — Olga Kay

(57)     **ABSTRACT**

The invention provides methods, compositions, kits and devices for the detection of target molecules. In some embodiments, the invention allows for multiplexed target molecule detection.

**6 Claims, 13 Drawing Sheets**

RSS_00082777

U.S. Patent

Apr. 20, 2021

Sheet 1 of 13

US 10,982,256 B2



Figure 1

RSS_00082778

U.S. Patent

Apr. 20, 2021

Sheet 2 of 13

US 10,982,256 B2



**Above components are assembled in cells to make these**



Figure 2

RSS_00082779

U.S. Patent

Apr. 20, 2021

Sheet 3 of 13

US 10,982,256 B2



Figure 3

RSS_00082780



Figure 4

RSS_00082781

U.S. Patent

Apr. 20, 2021

Sheet 5 of 13

US 10,982,256 B2

Figure 4 (cont.)



RSS_00082782



Figure 5

RSS_00082783

U.S. Patent

Apr. 20, 2021

Sheet 7 of 13

US 10,982,256 B2



Anneal 1

Anneal 2

Anneal 3

Subcode 1

Subcode 2

ESB

Ampli-
Primer 1
(for PCR or T7)

Ampli-
Primer 2
(for PCR or T7)

Random region to "tag"
each dual bar code individually.
Can be used for equalization after amplification.

Can be either degenerate oligo or nucleotides
that will allow random base matching

Subcode with error bit checking

Subcode and anneal  sequences can be
separate/distinct, partially or totally overlapping.

Patchwork COB

Figure 6

RSS_00082784

U.S. Patent

Apr. 20, 2021

Sheet 8 of 13

US 10,982,256 B2



ESB

Anneal 1

Subcode 1

Anneal 2

Subcode 2

Ampli-
Primer 1
(for PCR or T7)

Ampli-
Primer 2
(for PCR or T7)

Random region to "tag"
each dual bar code individually.
Can be used for equalization after amplification.

Subcode with error bit checking

Can be either degenerate oligo or nucleotides
that will allow random base matching

Subcode and anneal sequences can be
separate/distinct, partially or totally overlapping.

Can do this with
Common anneal region
(see next slide)

Stitch COB_SPA (specific primer anneal)

Figure 7

RSS_00082785

U.S. Patent    Apr. 20, 2021    Sheet 9 of 13    US 10,982,256 B2



Stitch COB_CPA (common primer anneal)

Figure 8

RSS_00082786

U.S. Patent    Apr. 20, 2021    Sheet 10 of 13    US 10,982,256 B2



Subcode with error bit checking

Subcode 1    Subcode 2    Subcode 3

ESB

Ampli-
Primer 1
(for PCR or T7)

Ampli-
Primer 2
(for PCR or T7)

Random region to "tag"
each dual bar code individually.
Can be used for equalization after amplification.

Can be either degenerate oligo or nucleotides
that will allow random base matching

Either fill in with polymerase and ligate,
or if abutted, click chemistry ligate.

Subcode and anneal  sequences can be
separate/distinct, partially or totally overlapping

Loop COB

Figure 9

RSS_00082787



Figure 10

RSS_00082788

U.S. Patent

Apr. 20, 2021

Sheet 12 of 13

US 10,982,256 B2



ESB & normalizer can be pre-loaded
onto binding elements...
can be kept there by affinity
or click crosslinked into place

Biotin

**Polymerase free assembly**

Bind to cells or beads

Ligate
PCR
Sequencing

Figure 10 (cont)

RSS_00082789

**Peptide readout**    Biotin

**Can insert cleavage site for post purification MS**

**Can insert MS Fragile Site(s) to enable sequencing**

| SP6 Start | ATG-XXX | ESB- 3AA | COB- 6 * (2+1+2) = 30AA | 3' His(6) tag |
|---|---|---|---|---|
| ~ 30 bp | ~ 15bp | 9 bp | 18 bp (6-3-6) * 6 = 90 bp | 18 bp |

**5' SP6 Start:**    Acts as primer and SP6 polymerase start site

**ESB-3AA:**    Epitope Specific Barcode of 3 amino acides covers 8000 potential independent reads

**COB-6AA:**    64 million distinct tags covered with 6 AA. Each is flanked with 2AA. Total length is 30AA

**3' His tag:**    For purification. Doubles as 3' primer.

**Total length of protein is 33 aa. If do 100 aa SC tags, it's 31.**

For 1 x 10^6 cells according to equation
we need 16 million barcodes to cover. 6 AA will cover (see above)

| Polymer Units | Barcodes Needed | # AA positions needed |
|---|---|---|
| 20 | 2.00E+01 | 1 |
| 20 | 4.00E+02 | 2 |
| 20 | 8.00E+03 | 3 |
| 20 | 1.60E+05 | 4 |
| 20 | 3.20E+06 | 5 |
| 20 | 6.40E+07 | 6 |
| 100 | 1.00E+02 | 1 |
| 100 | 1.00E+04 | 2 |
| 100 | 1.00E+06 | 3 |
| 100 | 1.00E+08 | 4 |

Figure 11

RSS_00082790

US 10,982,256 B2

# METHODS OF IDENTIFYING MULTIPLE EPITOPES IN CELLS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of application Ser. No. 13/981,711 (now U.S. Ser. No. 10/144,950) which is a national stage of the International Application, Ser. No. PCT/US2012/23411 and claims priority to application Ser. No. 61/437,854 filed on Jan. 31, 2011 and 61/444,067 filed on Feb. 17, 2011 which is are incorporated herein by reference.

## BACKGROUND OF THE INVENTION

Although all cells in the human body contain the same genetic material, the same genes are not active in all of those cells. Alterations in gene expression patterns can have profound effects on biological functions. Furthermore, understanding the dynamics and the regulation of gene products (proteins), their variants, and interacting partners is essential in understanding, for example, the mechanisms behind genetic/and environmentally induced disorders or the influences of drug mediated therapies. This understanding can potentially become the underlying foundation for further clinical and diagnostic analyses. Therefore, identifying and quantifying the expression and regulation of genes and/or their products in cells can aid the discovery of new therapeutic and diagnostic targets.

Critical to these studies is the ability to qualitatively determine gene expression and specific variants of whole proteins (e.g., splice variants, point mutations, post-translationally modified versions, and environmentally/therapeutically-induced modifications) and the ability to view their quantitative modulation. Moreover, it is becoming increasing important to perform these analyses from not just one, but multiple target molecules in a cell. The methods available to date still require significant amounts of biological samples or will not provide cell specific information. Additionally, there are limited methods of multiplexed protein measurement technologies due to the additional challenges inherent in protein samples.

Thus, there exists a need for accurate and sensitive detection, identification and quantification of target molecules in every cell of a complex cell population and to retain cell specific information regarding that target molecule.

## SUMMARY OF THE INVENTION

The invention relates generally to the field of detection, identification, and quantification of target molecules in a sample. The present invention relates in part to the detection, identification, and quantification of individual target molecules in single cells of a complex cell population while retaining cell specific information regarding that target molecule.

In some embodiments, the invention relates to methods for identifying whether a plurality of targets are in a plurality of cells comprising: binding to the targets a plurality of tags, wherein a tag comprises a code that represents a) the target identity and b) the identity of the cell in which tag is binding. In some embodiments, individual cell separation or isolation is unnecessary for the binding step. In some embodiments, tags comprise building blocks that are directly or indirectly associated with each other, for example through covalent binding or by association through affinity. In some embodiments, tags are formed through polymerization of building blocks in place. In some embodiments, multiple building blocks are added in a step. In some embodiment, a single building block is added at each step. In some embodiments, the cell is alive. In some embodiments, the cell is lysed or fixed.

In some embodiments, the invention relates to methods for identifying a single cell associated with a target comprising: binding to the target a tag, wherein the tag comprises a code that represents a) the target, and b) the single cell; wherein the during the binding the single cell is not isolated from a population of cells, and wherein the code that represents the single cell is unknown before the binding.

In some embodiments, the invention relates to methods for identifying a single cell associated with a target comprising: binding to the target a tag, wherein the tag comprises a code that represents a) the target, and b) the single cell; wherein the during the binding the single cell is isolated from a population of cells, and wherein the code that represents the single cell is unknown before the binding.

In some embodiments, the invention further comprises detecting the code, wherein individual cell separation or isolation is unnecessary for the detecting step. In some embodiments, each target is a protein or a nucleic acid. In some embodiments, the tag is a nucleic acid or a polypeptide. In some embodiments, the tag comprises a series monomeric subunits that comprise a decipherable code. In some embodiments, the tag is a coded molecular constituent that can be decoded. In some embodiments, the tag comprises a combination of parts that can be decoded to determine the nature of the tag.

In some embodiments, the tag comprises a UBA. In some embodiments, the UBA is specific for one of the targets. In some embodiments, the tag comprises a UBA. In some embodiments, the UBA comprises an antibody. In some embodiments, the tag comprises a ESB. In some embodiments, the ESB comprises a common linker (CL). In some embodiments, the ESB codes the target identity. In some embodiments, the ESB comprises a nucleic acid. In some embodiments, the tag comprises an APS. In some embodiments, the APS is detectable as a detectably distinct coding unit. In some embodiments, during the binding step multiple APSs are added to the tag in an ordered manner during successive rounds of split pool synthesis. In some embodiments, the tag comprises at least 10 APSs. In some embodiments, the APS comprises a nucleic acid. In some embodiments, the tag comprises multiple APSs, an ESB, and a UBA linked by ligation. In some embodiments, multiple APSs, the ESB, and/or the UBA is capable of being linked Click chemistry. In some embodiments, the APS or the ESB comprises an amplification primer binding region. In some embodiments, the UBA, ESB, or APS is templatable. In some embodiment, the UBA, ESB, or APS is of a different discernable constituent (GPN: meaning one part of the code can be a nucleic acid, another can be a polypeptide, another can be a small molecule, etc.).

In some embodiments, the invention relates to compositions comprising: a) a first target molecule, b) a first unique binding agent (UBA) specific for the first target molecule, c) a first linkable UBA-dependent epitope specific barcode (ESB), and d) a plurality of ordered assayable polymer subunit (APS), wherein the order of APSs is detectable. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a phosphoprotein, an antibody, a nucleic acid, a peptide nucleic acid, a synthetic small molecule, a disac-

RSS_00082791

US 10,982,256 B2

3

charide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid.

In some embodiments, the invention relates to compositions comprising a population of particles each comprising at least a first target molecule, wherein the first target molecule is associated with: a) a first unique binding agent (UBA) specific for the first target molecule, b) a first linkable UBA-dependent epitope specific barcode (ESB), and c) a first plurality of ordered assayable polymer subunits (APS), wherein the plurality of ordered APSs associated with the first target molecule of a first particle in the population is detectably different than the plurality of ordered APSs associated with the first target molecule of a second particle in the population.

In some embodiments, the plurality of ordered APSs comprises 2, 3, 4, 5, 6, 7, 8, 9, 10, I 1, 12, 13, 14, 15, 16, 17, 18, 19, or 20 APSs. In some embodiments, the plurality of ordered APSs comprises more than 20 APSs. In some embodiments, the APSs are templatable. In some embodiments, at least one discrete particle is selected from the group consisting of a cell, a liposome, an organelle, a micelle, a droplet and a bead. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a phosphoprotein, an antibody, a nucleic acid, a peptide nucleic acid, a synthetic small molecule, a disaccharide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid. In some embodiments, the first ESB comprises a first common linker (CL).

In some embodiments, said first target molecule is directly bound to said first UBA and said first ESB is directly bound to said first UBA. In some embodiments, the plurality of ordered APS is formed by stepwise addition of APSs in separate rounds. In some embodiments, the APS added on each round is linked to the first complex. In some embodiments, the linking is in order of rounds. In some embodiments, the linking is performed through binding affinity. In some embodiments, the linking of an APS, an ESB, or a UBA is performed using chemical methods. In some embodiments, the chemical method comprises Click chemistry. In some embodiments, the linking is performed in the presence of Cu$^+$. In some embodiments, a UBA, an APS, or an ESB comprises nucleic acids. Some embodiments further comprise a first linking oligonudeotide comprising a first and a second complementary region to two components selected from a UBA, an APS, and an ESB. In some embodiments, a UBA, an APS, or an ESB is linked using a linking oligonudeotide comprising the first and the second complementary region to two components selected from a UBA, an APS, and an ESR Some embodiments further comprise a second linking oligonudeotide comprising a third and a fourth complementary region to two components selected from a UBA, an APS, and an ESR In some embodiments, a UBA, an APS, or an ESB is linked using a linking oligonudeotide comprising the third and the fourth complementary region to two components selected from a UBA, an APS, and an ESB. In some embodiments, the second and fourth complementary regions are identical. In some embodiments, the second and fourth complementary regions are identical. In some embodiments, the first or second complementary region is shared between two APSs within the plurality of APSs. In some embodiments, the linking is performed by ligation. In some embodiments, the linking oligonudeotide comprises a subcode encoding the origin of the APS or the ESB. In some embodiments, the APS has a subcode encoding the origin of the APS. In some embodiments, the ESB has a subcode encoding the origin of

4

the ESB. In some embodiments, an individual APS, ESB, or linking oligonudeotide molecule comprises a unique counter tag. In some embodiments, unique counter tag is detectable. In some embodiments, the ESB is covalently linked to the linking oligonudeotide. In some embodiments, an APS or an ESB comprises an amplification primer binding region. In some embodiments, the APSs and ESB, when linked, are capable of encoding a secondary product. In some embodiments, the secondary product is an RNA or a peptide. In some embodiments, the APSs and ESB, when linked, comprises a polymerase start site. In some embodiments, the peptide comprises an affinity tag. In some embodiments, the affinity tag is a His-tag. In some embodiments, the UBA, ESB, or APS is templatable. In some embodiments, the composition further comprises a probe. In some embodiments, the probe is attached to a surface. In some embodiments, the surface comprises an array. In some embodiments, the surface comprises a bead. In some embodiments, the UBA is selected from the group consisting of antibody, peptide, aptamer, peptoid and nudeic acid. In some embodiments, the ESB is selected from the group consisting of nudeic acids, beads and chemical subunits. In some embodiments, said APS comprises a nucleic acid, a small molecule, or buildable complex molecules of deterministic weight.

In some embodiments, the invention relates to kits for labeling a target molecule of a cell in a population of cells with a cell origination barcode, comprising a) n sets of m assayable polymer subunits (APSs) each comprising a distinct package of information; wherein the packages of information are capable of being linked in an ordered fashion; b) a target molecule specific unique binding agent (UBA).

In some embodiments, the invention relates to kits for labeling a target molecule of a cell in a population of cells with a cell origination barcode, comprising a) n sets of m assayable polymer subunits (APSs) each comprising a distinct package of information; wherein the packages of information are capable of being linked in an ordered fashion; b) a plurality of target molecule-specific unique binding agents (UBA) each linked with a UBA-specific epitope specific barcode (ESB).

In some embodiments, the invention relates to kits for labeling a target molecule of a cell in a population of cells with a cell origination barcode, comprising a) n sets of m assayable polymer subunits (APSs) each comprising a distinct package of information; wherein the packages of information are capable of being linked in an ordered fashion; b) a plurality of target molecule-specific unique binding agents (UBA); c) a plurality of UBA-specific epitope specific barcode (ESB), wherein each ESB is capable of linking with a designated UBA.

In some embodiments, n is 1, 2, 3, 4, 5, 6, 7, 8, 9, or 10. In some embodiments, m is 2, 3, 4, 5, 6, 7, 8, 9, 10, I1, 12, 13, 14, 15, 16, 17, 18, 19, or 20. In some embodiments, n is greater than 10. In some embodiments, m is greater than 20. In some embodiments, the first ESB comprises a first common linker (CL). In some embodiments, said ESB is capable of directly binding to said UBA. In some embodiments, said UBA is capable of directly binding to the target molecule. In some embodiments, at least two of the assayable polymer subunit (APS) sets are identical. In some embodiments, the APSs in a first set is linkable to the APSs in a second set. In some embodiments, the APSs in a first set is further linkable to the APSs in a second set in an ordered fashion. In some embodiments, an APS, an ESB, or a UBA is capable of being linked using chemical methods. In some embodiments, the chemical method comprises Click chem-

RSS_00082792

US 10,982,256 B2

5

istry. In some embodiments, the presence of Cu' is required for linkage. In some embodiments, the kit components can assemble through affinity binding. In some embodiments, a UBA, an APS, or an ESB comprises nucleic acids. In some embodiments, the kits further comprise a first linking oligonucleotide comprising a first and a second complementary region to two components selected from a UBA, an APS, and an ESR. In some embodiments, the kits further comprise a second linking oligonucleotide comprising a third and a fourth complementary region to two components selected from a UBA, an APS, and an ESB. In some embodiments, the first and third complementary regions are identical. In some embodiments, the second and fourth complementary regions are identical. In some embodiments, an APS, an ESB, or a UBA is capable of being linked by ligation. In some embodiments, the linking oligonucleotide comprises a subcode encoding the original set of the APS or the ESB. In some embodiments, the APS has a subcode encoding the origin population of the APS. In some embodiments, the ESB has a subcode encoding the origin population of the ESB. In some embodiments, an individual APS, ESB, or linking oligonudeotide molecule comprises a unique counter tag. In some embodiments, the unique counter tag is detectable. In some embodiments, the ESB is covalently linked to the linking oligonudeotide. In some embodiments, an APS or an ESB comprises an amplification primer binding region. In some embodiments, the APSs and ESB, when linked, are capable of encoding a secondary product. In some embodiments, the secondary product is an RNA or a peptide. In some embodiments, the APSs and ESB, when linked, comprises a polymerase start site. In some embodiments, the peptide comprises an affinity tag. In some embodiments, the affinity tag is a His-tag. In some embodiments, the UBA, ESB, or APS is templatable. In some embodiments, the kit further comprises a probe. In some embodiments, the probe is attached to a surface. In some embodiments, the surface comprises an array. In some embodiments, the surface comprises a bead. In some embodiments, the plurality of UBAs comprises 2, 3, 4, 5, 10, 20, 30, 50, 100, 200, 300, 500, 600, 700, 800, 900, 1000 or more than 1000 UBAs. In some embodiments, the plurality of UBAs comprises up to 2000 UBAs. In some embodiments, the UBA is selected from the group consisting of antibody, peptide, aptamer, peptoid and nucleic acid. In some embodiments, the ESB is selected from the group consisting of nucleic acids, beads and chemical subunits. In some embodiments, said APS comprises a nucleic acid, a small molecule, or buildable complex molecules of deterministic weight.

In some embodiments, the invention relates to methods for identifying target molecules sharing a common particle origin, comprising labeling a first plurality of targets of a first particle in a population of x particles with a first origination barcode; and labeling a second plurality of targets of a second particle in a population of x particles with a second origination barcode; wherein each origination barcode comprises a set of n assayable polymer subunits (APS); wherein each of the n APSs in the first and second set of APSs is selected from a group comprising m different APSs; and wherein the first and second origination barcodes are detectably different from each other with a certainty of $c=1-[(1-1/x)^{(m^n)}]$. In some embodiments, x is greater than 1,000,000. In some embodiments, c is greater than 99.9%. In some embodiments, c is greater than 99.99%. In some embodiments, c is greater than 99.999%. In some embodiments, c is greater than 99.9999%. In some embodiments, c is greater than 99.99999%. In some embodiments, n is 2, 3,

6

4, 5, 6, 7, 8, 9, or 10. In some embodiments, m is 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, or 20. In some embodiments, n is greater than 10. In some embodiments, m is greater than 20.

In some embodiments, at least one discrete particle is selected from the group consisting of a cell, a liposome, an organelle, a micelle, a droplet and a bead. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a phosphoprotein, an antibody, a nucleic acid, a peptide nucleic acid, a synthetic small molecule, a disaccharide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid. In some embodiments, at least two groups comprising m different APSs are identical.

In some embodiments, n APSs are added in separate rounds. In some embodiments, the APSs of separate rounds are linked. In some embodiments, the linking is in order of rounds. In some embodiments, an appropriate n and/or m is selected based in a desired certainty level given a number of cells, x.

In some embodiments, the invention relates to methods of imparting a particle specific code to a component of a particle of a population of particles, the method comprising: linking a first ordered set of assayable polymer subunits (APS) to a first component of a first particle of a population of particles, wherein the order of the APSs is detectable. In some embodiments, the method further comprises detecting the first ordered set of APSs linked with the first component, thereby determining a particle origin of the first component. In some embodiments, the method further comprises linking a second ordered set of assayable polymer subunits (APS) to a second component of the first particle of a population of particles, wherein the order of the APSs is detectable. In some embodiments, the method further comprises detecting the second ordered set of APSs linked with the second component, thereby determining the particle origin of the second component. In some embodiments, the first and the second ordered sets of APSs linked with the first and second components of the first particle are the same. In some embodiments, the method further comprises linking a third ordered set of assayable polymer subunits (APS) to a first component of second particle of a population of particles, wherein the order of the APSs is detectable. In some embodiments, the first ordered set of APSs linked with the first component of the first particle is different than the third ordered set of assayable polymer subunits linked with the first component of the second particle. In some embodiments, the method further comprises linking a component specific epitope specific barcode (ESB) to the first component. In some embodiments, the method further comprises linking a component specific ESB to the second component. In some embodiments, at least the particle is selected from the group consisting of a cell, a liposome, an organelle, a micelle, a droplet and a bead. In some embodiments, said at least one target molecule is directly bound to said first UBA and said ESB is directly bound to said UBA. In some embodiments, at least two of the assayable polymer subunit (APS) sets are identical. In some embodiments, each APS from the ordered set of APSs is linked to the first complex. In some embodiments, the linking is in order of rounds. In some embodiments, the UBA, ESB, or APS encodes a secondary product. In some embodiments, the secondary product is an RNA or a peptide. In some embodiments, the UBA, ESB, or APS is templatable. In some embodiments, the ESB further comprises a unique counter tag. In some embodiments, the quantity of the target molecule of the molecule is estimated using the counter tag. In some

RSS_00082793

US 10,982,256 B2

7

embodiments, the APS further comprises a round-specific subcode. In some embodiments, the detection further comprises determining the presence of an APS from a designated round. In some embodiments, detection is digital. In some embodiments, detection is indirect. In some embodiments, detecting comprises mass spectrometry. In some embodiments, detecting comprises nucleic acid sequencing. In some embodiments, detecting comprises peptide sequencing. In some embodiments, detecting comprises mass gel electophoresis. In some embodiments, detecting comprises HPLC or other chromatographic separation. In some embodiments, detecting comprises detecting one or more signals associated with one or more individual APSs. In some embodiments, the signals are ordered. In some embodiments, detecting comprises using one or more probes. In some embodiments, the probe is attached to a surface. In some embodiments, the surface comprises an array. In some embodiments, the surface comprises a bead. In some embodiments, detecting comprises a separation. In some embodiments, the separation is multi-dimensional. In some embodiments, the separation resolves the first linkable UBA-dependent epitope specific barcode (ESB) from a second linkable UBA-dependent epitope specific barcode (FSB). In some embodiments, 3, 4, 5, 10, 20, 30, 50, 100, 200, 300, 500, 600, 700, 800, 900, 1000 or more than 1000 different target molecules are detected. In some embodiments, up to 2000 different target molecules are detected. In some embodiments, the UBA is selected from the group consisting of antibody, peptide, aptamer, peptoid and nudeic acid. In some embodiments, the ESB is selected from the group consisting of nudeic acids, beads and chemical subunits. In some embodiments, said APS comprises a nucleic acid, a small molecule, or buildable complex molecules of deterministic weight. In some embodiments, the APSs are linked to through ligation or extension via polymerization. In some embodiments, a cell origination barcode (COB) is generated with the APSs from the ordered set of APSs. In some embodiments, each COB in said plurality of complexes has a detectable signal or sequence that distinguishes it from other COBs in said population of cells. In some embodiments, an APS, an ESB, or a UBA is linked using chemical methods. In some embodiments, the chemical method comprises Click chemistry. In some embodiments, the linking is performed in the presence of $Cu^+$. In some embodiments, a UBA, an APS, or an ESB comprises nudeic acids. In some embodiments, the linking of a UBA, an APS, or an ESB is performed using a linking oligonucleotide that comprises a first and a second complementary region to two components to be linked. In some embodiments, the first or second complementary region is shared between APSs within a population of APSs. In some embodiments, the first or second complementary region is distinct for two different round-specific sets of APSs. In some embodiments, the method further comprises ligation. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a phosphoprotein, an antibody, a nudeic acid, a peptide nucleic acid, a synthetic small molecule, a disaccharide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid. In some embodiments, the first ESB comprises a first common linker (CL). In some embodiments, the first ESB comprises a first common linker (CL). In some embodiments, an individual APS, ESB, or linking oligonudeotide molecule comprises a unique counter tag. In some embodiments, detection comprises detecting the unique counter tag. In some embodiments, the number of unique counter tags associated with a specific ESB is determined. In some

8

embodiments, the number of detected unique counter tags relate to the initial quantity of the specific ESB. In some embodiments, the ESB is covalently linked to the linking oligonudeotide. In some embodiments, an APS or an ESB comprises an amplification primer binding region. In some embodiments, a COB encodes a peptide sequence. In some embodiments, the COB comprises a polymerase start site. In some embodiments, the peptide comprises an affinity tag. In some embodiments, the affinity tag is a His-tag.

In some embodiments, the invention relates to methods for detecting plurality of properties originating from a plurality of discrete particles, the method comprising: a) providing:
    i) a population of particles comprising at least a first target molecule; ii) a first unique binding agent (UBA) specific for the first target molecule; iii) a first unique UBA-dependent epitope specific barcode (ESB); iv) a plurality of round-specific assayable polymer subunit (APS) sets, each set containing a plurality of APSs that are detectably distinct from each other, b) forming at least a first complex comprising said at least first target molecule, said first UBA probe, and said first ESB; c) performing n rounds of split pool synthesis, each round comprising; i) splitting the population of particles into m reaction volumes; ii) contacting one or more reaction volumes with an APS from the APS set specific for the round; iii) pooling two or more reaction volumes;
    d) detecting a plurality of properties from at least one particle from the population of particles; wherein at least one of the properties relate to a quantity or an identity for a target molecule associated with the particle.

In some embodiments, the invention relates to methods for detecting a plurality of properties originating from a plurality of discrete particles, the method comprising: a) providing:
    i) a population of particles comprising at least a first target molecule; ii) a first unique binding agent (UBA) specific for the first target molecule; iii) a first linkable UBA-dependent epitope specific barcode (ESB); and iv) a plurality of round-specific assayable polymer subunit (APS) sets, each set containing a plurality of APSs that are detectably distinct from each other; b) forming at least a first complex comprising said at least first target molecule, said first UBA probe, and said first ESB; c) performing n rounds of split pool synthesis, each round comprising:
    i) splitting the population of particles into m reaction volumes; ii) contacting one or more reaction volumes with an APS from the APS set specific for the round; and iii) pooling two or more reaction volumes; d) performing another round of split pool synthesis comprising steps c)
    i) and c) ii); e) detecting a plurality of properties from at least one particle from the population of particles; wherein at least one of the properties relate to a quantity or an identity for a target molecule associated with the particle.

In some embodiments, the split pool method is replaced by separation of particles, for example in microwells, or in microfluidic devices. In some embodiments, separated cells are labeled with cell origination barcodes. In some embodiments, cell origination barcodes are built in place by stepwise addition of building blocks.

In some embodiments, n is 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, or 20. In some embodiments, n is more than 20. In some embodiments, m is different

US 10,982,256 B2

9

between at least two rounds. In some embodiments, m is 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, or 20. In some embodiments, m is more than 20. In some embodiments, at least one discrete particle is selected from the group consisting of a cell, a liposome, an organelle, a micelle, a droplet and a bead. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a phosphoprotein, an antibody, a nucleic acid, a peptide nucleic acid, a synthetic small molecule, a disaccharide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid. In some embodiments, the first ESB comprises a first common linker (CL). In some embodiments, said at least one target molecule is directly bound to said first UBA and said ESB is directly bound to said UBA. In some embodiments, at least two of the assayable polymer subunit (APS) sets are identical. In some embodiments, the APS added on each round is linked to the first complex. In some embodiments, the linking is in order of rounds. In some embodiments, the UBA, ESB, or APS encodes a secondary product. In some embodiments, the secondary product is an RNA or a peptide. In some embodiments, the UBA, ESB, or APS is templatable. In some embodiments, the ESB further comprises a unique counter tag. In some embodiments, the quantity of the target molecule of the molecule is estimated using the counter tag. In some embodiments, the APS further comprises a round-specific subcode. In some embodiments, the detection further comprises determining the presence of an APS from a designated round. In some embodiments, detection is digital. In some embodiments, detection is indirect. In some embodiments, detecting comprises mass spectrometry. In some embodiments, detecting comprises nucleic acid sequencing. In some embodiments, detecting comprises peptide sequencing. In some embodiments, detecting comprises detecting one or more signals associated with one or more individual APSs. In some embodiments, the signals are ordered. In some embodiments, detecting comprises using one or more probes. In some embodiments, the probe is attached to a surface. In some embodiments, the surface comprises an array. In some embodiments, the surface comprises a bead. In some embodiments, detecting comprises a separation. In some embodiments, the separation is multi-dimensional. In some embodiments, the separation resolves the first linkable UBA-dependent epitope specific barcode (ESB) from a second linkable UBA-dependent epitope specific barcode (ESB). In some embodiments, 3, 4, 5, 10, 20, 30, 50, 100, 200, 300, 500, 600, 700, 800, 900, 1000 or more than 1000 different target molecules are detected. In some embodiments, up to 2000 different target molecules are detected. In some embodiments, the UBA is selected from the group consisting of antibody, peptide, aptamer, peptoid and nucleic acid. In some embodiments, the ESB is selected from the group consisting of nucleic acids, beads and chemical subunits. In some embodiments, said APS comprises a nucleic acid, a small molecule, or buildable complex molecules of deterministic weight. In some embodiments, the APSs are linked to through ligation or extension via polymerization. In some embodiments, a cell origination barcode (COB) is generated from APSs of round specific APS sets. In some embodiments, each COB in said plurality of complexes has a detectable signal or sequence that distinguishes it from other COBs in said population of cells. In some embodiments, an APS, an ESB, or a UBA is linked using chemical methods. In some embodiments, the chemical method comprises Click chemistry. In some embodiments, the linking is performed in the presence of Cu$^+$. In some embodiments, a

10

UBA, an APS, or an ESB comprises nucleic acids. In some embodiments, the linking of a UBA, an APS, or an ESB is performed using a linking oligonucleotide that comprises a first and a second complementary region to two components to be linked. In some embodiments, the first or second complementary region is shared between APSs within a population of APSs. In some embodiments, the first or second complementary region is distinct for two different round-specific sets of APSs. Some embodiments further comprise ligation. In some embodiments, the linking oligonudeotide comprises a subcode encoding the origin population of the APS or the ESR. In some embodiments, the APS has a subcode encoding the round-specific set of the APS. In some embodiments, the ESB has a subcode encoding the origin presence of the ESR. In some embodiments, an individual APS, ESB, or linking oligonudeotide molecule comprises a unique counter tag. In some embodiments, detection comprises detecting the unique counter tag. In some embodiments, the number of unique counter tags associated with a specific ESB is determined. In some embodiments, the number of detected unique counter tags relate to the initial quantity of the specific ESB. In some embodiments, the ESB is covalently linked to the linking oligonudeotide. In some embodiments, an APS or an ESB comprises an amplification primer binding region. In some embodiments, a COB encodes a peptide sequence. In some embodiments, the COB comprises a polymerase start site. In some embodiments, the peptide comprises an affinity tag. In some embodiments, the affinity tag is a His-tag. In some embodiments, each of the reaction volumes created by the most recent splitting receives a different APS from the APS set.

In some embodiments, the invention provides methods for detecting at least one target molecule in a sample comprising the steps: (a) providing: (i) a population of cells potentially comprising at least one target molecule, (ii) a first UBA specific for a first target molecule, (iii) a first epitope specific barcode ESB specific for a region of the first UBA, where the ESB comprises a first common linker moiety, and (iv) a population of COB, where the population of COB comprises a second common linker moiety, where the second linker moiety is complementary to the first common linker moiety is the first ESB; (b) forming at least a first complex comprising the at least one target molecule, the first UBA probe, and the first ESB, where the at least one target molecule is bound to the first UBA and the ESB is bound to the UBA (c) adding the population of COBs, where a second complex is formed with the least one target molecule, the first UBA probe, the first ESB, and a first COB, and where the second common linker moiety from the first COB is bound to the first linker moiety from the first ESB, and where the COBs from the population of COBs is associated with a cell from the population of cells; and (d) detecting the second complex or at least part of the third complex.

In some embodiments the invention provides methods for detecting at least one target molecule in a sample comprising the steps: (a) providing: (i) a population of cells potentially comprising at least one target molecule, (ii) a first unique binding agent (UBA) specific for a first target molecule, (iii) a first epitope specific barcode (ESB) specific for a region of the first UBA, where the ESB comprises a first common linker moiety, and (iv) a population of assayable polymer subunits (APSs), where the APSs comprises a second common linker moiety and a third common linker moiety, where the second linker moiety is complementary to the first common linker moiety is the first ESB; (b) forming at least a first complex comprising the at least one target molecule,

RSS_00082795

US 10,982,256 B2

**11**

the first UBA probe, and the first ESB, where the at least one target molecule is bound to the first UBA and the ESB is bound to the UBA; (c) splitting the population into two or more samples; (d) adding one APS from the population of APSs per sample to the two or more samples from step (c), where a second complex is formed with the least one target molecule, the first UBA probe, the first ESB, and a first APS, and where the second common linker moiety from the first APS is bound to the first linker moiety from the first ESB; (e) pooling the two or more samples from step (c) into one sample; (f) splitting the sample from step (c) into two or more samples; (g) adding one APS from the population of APSs per sample to the two or more samples from step (c), where a third complex is formed with the least one target molecule, the first UBA probe, the first ESB, the first APS, and the second APS, where the second common linker moiety from the second APS is bound to the third linker moiety from the first APS, and where the first APS and the second APS form a cell origination barcode (COB); and (c) detecting the third complex or at least part of the third complex. In some embodiments, the methods further comprise repeating steps (e), through (g).

In some embodiments, the methods further comprise detecting of a plurality of target molecules by forming a plurality of complexes in step (b), each complex comprising (i) at least one target molecule (ii) a first UBA and (iii) a first epitope specific barcode (ESB) specific for a region of the first UBA, where the ESB comprises a first common linker moiety, where the at least one target molecule is bound to the first UBA and the ESB is bound to the UBA.

In some embodiments, each COB in the plurality of complexes has a detectable signal that distinguishes it from other COB in the population of cells.

In some embodiments, the complex is detected by sequencing or mass spectrometry. In some embodiments, the third complex is detected by a method comprising individually counting the presence of one or more molecules of the third complex where the presence of the one or more molecules of the third complex is indicative of the concentration of the target molecule in a cell. In some embodiments, the individually detecting further comprises detecting a digital signal.

In some embodiments, 3, 4, 5, 10, 20, 30, 50, 100, 200, 300, 500, 600, 700, 800, 900, 1000 or more than 1000 different target molecules are detected. In some embodiments, up to 2000 different target molecules are detected.

In some embodiments, the UBA is selected from the group consisting of antibody, peptide, aptamer, peptoid and nucleic acid. In some embodiments, the ESB is selected from the group consisting of nucleic acids, beads and chemical subunits.

In some embodiments, the APS is a nucleic acid, a small molecule, or buildable complex molecules of deterministic weight. In some embodiments, the APS comprises a single-stranded nucleic acid hybridized to a complementary polynucleotide sequence having attached thereto a detectable label.

In some embodiments, the first APS is attached to the first ESB through ligation or extension via polymerization. In some embodiments, the second APS is attached to the first APS through ligation or extension via polymerization.

In some embodiments, the common linker moiety is a nucleic acid. In some embodiments, the ESB is attached to the USB.

In some embodiments, said first COB comprises a plurality of APS.

**12**

Some embodiments, further comprise detecting of a plurality of target molecules by a method comprising: forming a plurality of complexes in step (b), each complex comprising (i) at least one target molecule (ii) a first UBA and (iii) a first epitope specific barcode (ESB) specific for a region of said first UBA, wherein said ESB comprises a first common linker moiety, wherein said at least one target molecule is associated with said first UBA and said ESB is associated with said UBA.

In some embodiments, each COB in said plurality of complexes has a detectable signal or sequence that distinguishes it from other COBs in said population of cells.

In some embodiments, the linking of an APS, an ESB, or a UBA is performed using chemical methods. In some embodiments, the chemical method comprises Click chemistry. In some embodiments, the linking is performed in the presence of Cu+. In some embodiments, linking of an ABS, an ESB, or a UBA is performed using binding affinity. In some embodiments, a UBA, an APS, or an ESB comprises nucleic acids. In some embodiments, the linking of a UBA, an APS, or an ESB is performed using a linking oligonucleotide that comprises a first and a second complementary region to two components to be linked. In some embodiments, the first or second complementary region is shared between APSs within a population of APSs. In some embodiments, the first or second complementary region is distinct for different populations of APSs. Some embodiments further comprise ligation. In some embodiments, the linking oligonudeotide comprises a subcode encoding the origin population of the APS or the ESR. In some embodiments, the APS has a subcode encoding the origin population of the APS. In some embodiments, the ESB has a subcode encoding the origin population of the ESB. In some embodiments, an individual APS, ESB, or linking oligonudeotide molecule comprises a unique tag. In some embodiments, detection comprises detecting the unique tag. In some embodiments, the number of unique tags associated with a specific ESB is determined. In some embodiments, the number of detected unique tags relate to the initial quantity of the specific ESB. In some embodiments, the ESB is covalently linked to the linking oligonudeotide. In some embodiments, an APS or an ESB comprises an amplification primer binding region. In some embodiments, a COB encodes a peptide sequence. In some embodiments, the COB comprises a polymerase start site. In some embodiments, the peptide comprises an affinity tag. In some embodiments, the affinity tag is a His-tag. In some embodiments, the two or more samples comprise at least 5 samples. In some embodiments, the two or more samples comprise at least 10 samples. In some embodiments, the two or more samples comprise at least 20 samples. In some embodiments, each of the samples created by the most recent splitting receives a different APS.

In some embodiments, the invention relates to methods for labeling an ESB linked target molecule of a cell in a population of cells with a cell origination barcode (COB), comprising: separating each cell into an individual reaction volume; and adding the COB to the ESB via chemical or affinity means. In some embodiments, the reaction volume is selected from the group consisting of a microbubble, a microdroplet, a well, a microwell, and an enclosure in a microfluidics device.

In some embodiments, the invention relates to methods comprising disassociating a variety of types of components originating from a cell and placing the components on a particle wherein the components are labeled on said particle.

In some embodiments, the labeling comprises labeling

RSS_00082796

US 10,982,256 B2

13

according to cell origin. In some embodiments, the labeling comprises labeling according to component type.

In some embodiments, the signals in detection steps are ordered. In some embodiments, detecting comprises using one or more probes. In some embodiments, the probe is attached to a surface. In some embodiments, the surface comprises an array. In some embodiments, the surface comprises a bead. In some embodiments, detecting comprises a separation. In some embodiments, the separation is multi-dimensional.

In some embodiments, the invention provides methods for preparing at least one UBA, ESB and/or APS as described herein.

In some embodiments, the invention provides a population of UBAs, ESBs and/or APSs as described herein. In some embodiments, the invention provides kits comprising a population of UBAs, ESBs and APSs as described herein and instructions for its use.

INCORPORATION BY REFERENCE

All publications and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication or patent application was specifically and individually indicated to be incorporated by reference.

BRIEF DESCRIPTION OF THE DRAWINGS

The novel features of the invention are set forth with particularity in the appended claims. A better understanding of the features and advantages of the present invention will be obtained by reference to the following detailed description that sets forth illustrative embodiments, in which the principles of the invention are utilized, and the accompanying drawings of which:

FIG. **1** depicts quantum of information representing a distinct signature (barcode) of the cell origin for each epitope.

FIG. **2** shows a graphical representation of one embodiment of the components of the epitope specific barcode and cells origin barcodes of the invention and their assembly.

FIG. **3** shows UBA-ESB-CL reagents of one embodiment of the invention.

FIG. **4** depicts labeling of cells in one embodiment of the invention with UBA-ESBCL reagents.

FIG. **5** depicts ESB-COB reagents of one embodiment of the invention.

FIG. **6** depicts ESB-COB assembly according to one embodiment of the invention.

FIG. **7** depicts ESB-COB assembly according to another embodiment of the invention.

FIG. **8** depicts ESB-COB assembly according to another embodiment of the invention.

FIG. **9** depicts ESB-COB assembly according to another embodiment of the invention.

FIG. **10** depicts ESB-COB assembly according to another embodiment of the invention.

FIG. **11** depicts a peptide based ESB-COB readout according to one embodiment of the invention.

DETAILED DESCRIPTION OF THE INVENTION

The term "nucleic acid" refers to a nucleotide polymer, and unless otherwise limited, includes known analogs of

14

natural nucleotides that can function in a similar manner (e.g., hybridize) to naturally occurring nucleotides.

The terms "polynucleotide", "nucleotide", "nucleotide sequence", "nucleic acid" and "oligonucleotide" are used interchangeably. They refer to a polymeric form of nucleotides of any length, either deoxyribonucleotides or ribonucleotides, or analogs thereof. Polynucleotides may have any three dimensional structure, and may perform any function, known or unknown. The following are non-limiting examples of polynudeotides: coding or non-coding regions of a gene or gene fragment, intergenic DNA, loci (locus) defined from linkage analysis, exons, introns, messenger RNA (mRNA), transfer RNA, ribosomal RNA, short interfering RNA (siRNA), short-hairpin RNA (shRNA), micro-RNA (miRNA), small nucleolar RNA, ribozymes, complementary DNA (cDNA), which is a DNA representation of mRNA, usually obtained by reverse transcription of messenger RNA (mRNA) or by amplification; DNA molecules produced synthetically or by amplification, genomic DNA, recombinant polynudeotides, branched polynudeotides, plasmids, vectors, isolated DNA of any sequence, isolated RNA of any sequence, nucleic acid probes, and primers. A polynucleotide may comprise modified nucleotides, such as methylated nucleotides and nucleotide analogs. If present, modifications to the nudeotide structure may be imparted before or after assembly of the polymer. The sequence of nucleotides may be interrupted by non nudeotide components. A polynucleotide may be further modified after polymerization, such as by conjugation with a labeling component. Polynucleotide sequences, when provided, are listed in the 5' to 3' direction, unless stated otherwise.

The term nucleic acid encompasses double- or triple-stranded nucleic acids, as well as single-stranded molecules. In double- or triple-stranded nucleic acids, the nucleic acid strands need not be coextensive (i.e., a double-stranded nucleic acid need not be double-stranded along the entire length of both strands).

The term nucleic acid also encompasses any chemical modification thereof, such as by methylation and/or by capping. Nucleic acid modifications can include addition of chemical groups that incorporate additional charge, polarizability, hydrogen bonding, electrostatic interaction, and functionality to the individual nucleic acid bases or to the nucleic acid as a whole. Such modifications may include base modifications such as 2'-position sugar modifications, 5-position pyrimidine modifications, 8-position purine modifications, modifications at cytosine exocyclic amines, substitutions of 5-bromo-uracil, backbone modifications, unusual base pairing combinations such as the isobases isocytidine and isoguanidine, and the like.

More particularly, in certain embodiments, nucleic acids, can include polydeoxyribonudeotides (containing 2-deoxy-D-ribose), polyribonudeotides (containing Dribose), and any other type of nucleic acid that is an N- or C-glycoside of a purine or pyrimidine base, as well as other polymers containing non-nudeotidic backbones, for example, polyamide (e.g., peptide nucleic acids (PNAs)) and polymorpholino (commercially available from the AntiVirals, Inc., Corvallis, Oreg., as Neugene) polymers, and other synthetic sequence-specific nucleic acid polymers providing that the polymers contain nudeobases in a configuration which allows for base pairing and base stacking, such as is found in DNA and RNA. The term nudeic acid also encompasses linked nucleic acids (LNAs), which are described in U.S. Pat. Nos. 6,794,

RSS_00082797

US 10,982,256 B2

15                                                                 16

499, 6,670,461, 6,262,490, and 6,770,748, which are incorporated herein by reference in their entirety for their disclosure of LNAs.

The nucleic acid(s) can be derived from a completely chemical synthesis process, such as a solid phase-mediated chemical synthesis, from a biological source, such as through isolation from any species that produces nucleic acid, or from processes that involve the manipulation of nudeic acids by molecular biology tools, such as DNA replication, PCR amplification, reverse transcription, or from a combination of those processes.

A nucleic acid "probe" is an oligonucleotide capable of binding to a target nucleic acid of complementary sequence through one or more types of chemical bonds, generally through complementary base pairing, usually through hydrogen bond formation, thus forming a duplex structure. The probe binds or hybridizes to a "probe binding site." The probe can be labeled with a detectable label to permit facile detection of the probe, particularly once the probe has hybridized to its complementary target. Alternatively, however, the probe may be unlabeled, but may be detectable by specific binding with a ligand that is labeled, either directly or indirectly.

Probes can vary significantly in size. Generally, probes are at least 7 to 15 nudeotides in length.

Other probes are at least 20, 30, or 40 nucleotides long. Still other probes are somewhat longer, being at least 50, 60, 70, 80, or 90 nudeotides long. Yet other probes are longer still, and are at least 100, 150, 200 or more nucleotides long. Probes can also be of any length that is within any range bounded by any of the above values (e.g., 15-20 nudeotides in length).

A primer or probe can be perfectly complementary to the target nucleic acid sequence or can be less than perfectly complementary. In certain embodiments, the primer has at least 65% identity to the complement of the target nucleic acid sequence over a sequence of at least 7 nucleotides, more typically over a sequence in the range of 10-30 nucleotides, and often over a sequence of at least 14-25 nucleotides, and more often has at least 75% identity, at least 85% identity, at least 90% identity, or at least 95%, 96%, 97%, 98%, or 99% identity. It will be understood that certain bases (e.g., the 3' base of a primer) are generally desirably perfectly complementary to corresponding bases of the target nucleic acid sequence. Primer and probes typically anneal to the target sequence under stringent hybridization conditions.

Available binding interactions present in a mixture relying on affinity define specificity for two or more components' binding specificity. Generally, a high binding affinity for a first interaction in comparison to binding affinities of other available interactions that are available for one or more binding partners in the first interaction will lead to high specificity. Binding partners with high specificity form designated binding partners.

Reference will now be made in detail to particularly preferred embodiments of the invention. Examples of the preferred embodiments are illustrated in the following Examples section.

Unless defined otherwise, all technical and scientific terms used herein have the same meaning as is commonly understood by one of skill in the art to which this invention belongs. All patents and publications referred to herein are incorporated by reference in their entirety.

In some embodiments, the invention provides methods, compositions and kits for detection and quantification of individual target molecules in bimolecular samples. In some embodiments, the invention provides methods, composi-

tions and kits for detection and quantification of individual target molecules in every cell of a complex cell population while retaining cell specific information regarding that target molecule. Thus in some embodiments, the invention provides methods, compositions and kits for detection and quantification of individual target molecules in a single cell basis in samples with complex cell populations. Thus in some embodiments, for each cell the amount of each target molecule associated with that cell is assayed. In particular, the invention provides unique binding agents that are capable of binding individual target molecules. The invention also provides the use of epitope specific barcode to tag target molecules. The invention also provides the use of cell origination barcodes to indicate the cell of origin. Through epitope specific barcodes and cell origination barcodes, the binding of unique binding agents to target molecules results in the identification of the target molecules. Methods of making and using such unique binding agents and/or epitope specific barcodes and/or cell origination barcodes are also provided. The methods and compositions described herein can be used in a wide variety of applications such as diagnostic, prognostic, quality control and screening applications. Some embodiments of the invention relate to methods, compositions and kits for individually tagging cells.

The term "epitope" and "target molecule" are used interchangeably herein to refer to the molecule of interest (parts of it or the whole molecule) being detected and/or quantified by the methods described herein.

Certain aspects of the invention relate to the detection of multiple target molecules. The methods described herein provide potential benefits in the areas of detection of multiple target molecules, quantification, and sensitivity. In some embodiments, the invention provides methods and compositions for the study of multiple protein measurements and/or multiple nucleic acid measurements that are sensitive and reliable.

Multiplexing within one sample at a single cell level is a key advantage of this approach. Multiplexing within one sample saves significant labor, reduces sample quantity requirements proportional to the number of measurements, and improves accuracy by elimination of errors compounded by separate sample handling and measurement steps. Furthermore, obtaining measurement of multiple target molecules in single cells in a complex cell population provides a better understanding of the physiological processes within each individual cell. In some embodiments, the methods described herein allow for the pooling of different samples together during processing to be analyzed at once. This offers throughput advantages and can accelerate the analysis of different samples.

In some embodiments, the invention provides unique binding agents (UBA) for the analysis of target molecules. In some embodiments, the invention provides an UBA population for use in a multiplexed assay. Each UBA in the population is specific for a target molecule. Thus, the UBA provides the specificity for the target molecule recognized in a cell. The binding of the target molecules to the UBAs is then detected using epitope specific barcodes (ESB) and cell origination barcodes (COB). Each ESB comprises a unique code that can be associated to a specific target molecule. Each COB comprises a unique code that can be associated to a specific cell of origin.

In some embodiments, the ESB are attached, directly or indirectly, to the UBA. In other embodiments, the ESBs bind to the UBAs in a cell or sample, e.g., as part of the assay procedure. A unique COB is associated to the UBAs in a specific cell such that each COB can be associated to the

RSS_00082798

US 10,982,256 B2

17

target molecules bound to the UBAs in that cell. In some embodiments, the specific ESB/COB combination is referred as a quantum of information representing each target molecule or epitope (See FIG. **1**).

In some embodiments, the COB is composed of one or more assayable polymer subunit (APS). Certain aspects of the present invention relate to the selection of a library or population of designed (e.g., synthetic sequences) APS. In some embodiments, the present invention provides a population of designed (e.g. synthetic) APS wherein said APS comprises a unique sequence and/or a detectable molecule, and wherein the combination of one or more different APS in each COB has a detectable signal or sequence that distinguishes it from other COBs in said population. In some embodiments, the invention provides APSs comprising unique sequences (e.g. synthetic) that hybridize to a unique complementary polynucleotide sequence having attached thereto a detectable label. In some embodiments, the APS are detected by sequencing. Accordingly, certain aspects of the present invention provide a population of unique COBs or ESB/COBs, each comprised of a unique APS-based combination, wherein each COBs or ESB/COBs in the population is distinct from the other COBs or ESB/COBs in the population. APSs generally are capable of forming a construct comprising the COBs. Any chemical structure allowing for such formation can be used for the APSs.

Unique Binding Agent (UBA)

UBAs are molecules or assemblies that are designed to bind with at least one target molecule, at least one target molecule surrogate, or both; and can, under appropriate conditions, form a molecular complex comprising the UBA and the target molecule. Examples of target molecules include, but are not limited to, proteins, nucleic acids, lipids, carbohydrates, ions, small molecules, organic monomers, and drugs. For convenience only, most of the embodiments described herein are explained in the context of UBAs that bind to a target protein or a target mRNA. However, these embodiments also can be applied to other target molecules. The terms "protein", "polypeptide", "peptide", and "amino acid sequence" are used interchangeably herein to refer to polymers of amino acids of any length. The polymer may be linear or branched, it may comprise modified amino acids, and it may be interrupted by non-amino acids or synthetic amino acids. The terms also encompass an amino acid polymer that has been modified, for example, by disulfide bond formation, glycosylation, lipidation, acetylation, phosphorylation, or any other manipulation, such as conjugation with a labeling component. As used herein the term "amino acid" refers to either natural and/or unnatural or synthetic amino acids, including but not limited to glycine and both the D or L optical isomers, and amino acid analogs and peptidomimetics.

UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like.

In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. In certain embodiments, the UBAs comprise a capture region. In some embodiments, the capture region is used for the isolation of the UBA and/or immobilization of the UBA into a surface. The capture region can be an affinity tag, a bead, a slide, an

18

array, a microdroplet, an enclosure in a microfluidic device or any other suitable capture region in the art. In some embodiments, the capture region is the ESB, for example the ESB can be a detectable bead such as a bead with a unique spectral signature (e.g. a bead that has been internally dyed with red and infrared fluorophores). Capture regions can define reaction volumes in which manipulation of compositions of the invention can take place.

In some embodiments, the UBA is an antibody. As used herein, the terms antibody and antibodies are used in a broad sense, to include not only intact antibody molecules, for example but not limited to immunoglobulin A, immunoglobulin G and immunoglobulin M, but also any immunoreactive component(s) of an antibody molecule that immunospecifically bind to at least one epitope. Such immunoreactive components include but are not limited to, FAb fragments, FAb' fragments, FAb'2 fragments, single chain antibody fragments (scFv), miniantibodies, diabodies, crosslinked antibody fragments, AFFIBODY™ (an antibody mimetic imitating a monoclonal antibody), cyclotides, molecules, and the like. Immunoreactive products derived using antibody engineering or protein engineering techniques are also expressly within the meaning of the term antibodies. Detailed descriptions of antibody and/or protein engineering, including relevant protocols, can be found in, among other places, J. Maynard and G. Georgiou, Ann. Rev. Biomed. Eng. 2:339 76 (2000); Antibody Engineering, R. Kontermann and S. Dubel, eds., Springer Lab Manual, Springer Verlag (2001) and S. Paul, Antibody Engineering Protocols, Humana Press (1995).

The skilled artisan will appreciate that antibody can be obtained from a variety of sources, including but not limited to polyclonal antibody, monoclonal antibody, monospecific antibody, recombinantly expressed antibody, humanized antibody, plantibodies, and the like; and can be obtained from a variety of animal species, including rabbit, mouse, goat, rat, human, horse, bovine, guinea pig, chicken, sheep, donkey, human, and the like. A wide variety of antibodies are commercially available and custom-made antibodies can be obtained from a number of contract labs. Detailed descriptions of antibodies, including relevant protocols, can be found in, among other places, Current Protocols in Immunology, Coligan et al., eds., John Wiley & Sons (1999, including updates through August 2003); The Electronic Notebook; Basic Methods in Antibody Production and Characterization, G. Howard and D. Bethel, eds., CRC Press (2000); J. Goding, Monoclonal Antibodies: Principles and Practice, 3d Ed., Academic Press (1996); E. Harlow and D. Lane, Using Antibodies, Cold Spring Harbor Lab Press (1999); P. Shepherd and C. Dean, Monodonal Antibodies: A Practical Approach, Oxford University Press (2000); A. Johnstone and M. Turner, Immunochemistry I and 2, Oxford University Press (1997); C. Borrebaeck, Antibody Engineering, 2d ed., Oxford university Press (1995); A. Johnstone and R. Thorpe, Immunochemistry in Practice, Blackwell Science, Ltd. (1996); H. Zola, Monoclonal Antibodies: Preparation and Use of Monodonal Antibodies and Engineered Antibody Derivatives (Basics: From Background to Bench), Springer Verlag (2000); and S. Hockfield et al., Selected Methods for Antibody and Nucleic Acid Probes, Cold Spring Harbor Lab Press (1993). Additionally, a vast number of commercially available antibodies, including labeled or unlabeled; polyclonal, monoclonal, and monospecific antibodies, as well as immunoreactive components thereof; custom antibody suppliers and the like can be found on the World Wide Web.

US 10,982,256 B2

19                                                    20

In some embodiments, the antibodies described herein are attached to a nucleic acid, e.g., linker oligo or a nucleic acid ESB. Methods to attach nucleic acids to antibodies are known in the art. Any suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention. The antibodies described herein can be attached to a nucleic acid by the methods described in Gullberg et al., PNAS 101 (22): pages 228420-8424 (2004); and Boozer et al, Analytical Chemistry, 76(23): pages 6967-6972 (2004), both incorporated herein by reference. The antibodies described herein can be attached to a nucleic acid by random amine attachment. In some embodiments, the antibodies described herein can be attached to a nucleic acid by random amine attachment using a 10 to I ratio of nucleic acid to antibody. The antibodies described herein can be attached to a nucleic acid by the methods described in Kozlov et al., Biopolymers 5: 73 (5): pages 621-630 (2004) incorporated herein by reference. The antibodies described herein can be attached to a nucleic acid by hydrazine chemistry. The antibodies described herein can be attached to a nucleic acid using tadpoles as described in Nolan, Nature Methods 2, 11-12 (2005), incorporated herein by reference. The antibodies described herein can be attached to a nucleic acid by any suitable methods known in the art to generate engineered antibodies including the ones described herein.

In some embodiments, the UBA is an aptamer. Aptamers include nucleic acid aptamers (i.e., single-stranded DNA molecules or single-stranded RNA molecules) and peptide aptamers. Aptamers bind target molecules in a highly specific, conformation-dependent manner, typically with very high affinity, although aptamers with lower binding affinity can be selected if desired. Aptamers have been shown to distinguish between targets based on very small structural differences such as the presence or absence of a methyl or hydroxyl group and certain aptamers can distinguish between D- and L-enantiomers. Aptamers have been obtained that bind small molecular targets, including drugs, metal ions, and organic dyes, peptides, biotin, and proteins, including but not limited to streptavidin, VEGF, and viral proteins. Aptamers have been shown to retain functional activity after biotinylation, fluorescein labeling, and when attached to glass surfaces and microspheres.

Nucleic acid aptamers, including speigelmers, are identified by an in vitro selection process known as systematic evolution of ligands by exponential amplification (SELEX). In the SELEX process very large combinatorial libraries of oligonucleotides, for example 10" to 10's individual sequences, often as large as 60-100 nucleotides long, are routinely screened by an iterative process of in vitro selection and amplification. Most targets are affinity enriched within 8-15 cycles and the process has been automated allowing for faster aptamer isolation. Peptide aptamers are typically identified by several different protein engineering techniques known in the art, including but not limited to, phage display, ribosome display, mRNA display, selectively infected phage technology (SIP), and the like. The skilled artisan will understand that nucleic acid aptamers and peptide aptamers can be obtained following conventional procedures and without undue experimentation. Detailed descriptions of aptamers, including relevant protocols, can be found in, among other places, L. Gold, J. Biol. Chem., 270(23): 13581 84 (1995); S. Jayasena, Clin. Chem., 45:1628-50 (1999); V. Sieber et al., Nat Biotechnol. 16 (10):955-60 (1998); D. Wilson and J. Szostak, Ann. Rev. Biochem. 68:611-47 (1999); L. Jemutus et al., Eur. Biophys.

J., 31:179-84 (2002); S S. spada et al., Biol. Chem., 378: 445-56 (1997); B. Wiotzka et al., Proc. Natl. Acad. sci., 99:8898-8902 (2002).

In some embodiments the aptamer will be ligated or hybridized to nucleic acid such as a linker oligo or a nucleic acid ESR The hybridization or ligation of aptamers can be done by any suitable method known in art. For example, ligation can be performed enzymatically by at least one DNA ligase or at least one RNA ligase, for example but not limited to, T4 DNA ligase, T4 RNA ligase, *Thermus thermophilus* (Tth) ligase, *Thermus aquaticus* (Taq) DNA ligase, or *Pyrococcus furiosus* (Pfu) ligase. Ligation can also be performed by chemical ligation can, using activating and reducing agents such as carbodiimide, cyanogen bromide (BrCN), imidazole, lmethylimidazole/carbodiimide/cystamine, N-cyanoimidazole, dithiothreitol (DTT) and ultraviolet light.

In some embodiments, the UBA is a peptoid. Peptoids are short sequences of N-substituted glycines synthetic peptides that bind proteins. In some embodiments, small size peptoids improve diffusion and kinetics of the methods described herein. Any suitable method known in the art to generate peptoids is encompassed in the methods described herein. See Simon et al., PNAS 15: 89(20): 9367-9371 (1992), incorporated herein by reference.

In some embodiments, the UBA is a nucleic acid sequence, e.g. an antisense DNA for a target mRNA. The nucleic acid sequence is preferably at least 15 nucleotides in length, and more preferably is at least 20 nucleotides in length. In specific embodiments, the target-specific sequence is about 10 to 500, 20 to 400, 30 to 300, 40 to 200, or 50 to 100 nucleotides in length. In other embodiments, the target-specific sequence is about 30 to 70, 40 to 80, 50 to 90, or 60 to 100, 30 to 120, 40 to 140, or 50 to 150 nucleotides in length.

Epitope Specific Barcode (ESB).

In some embodiments, the invention provides an epitope specific barcode (ESB). Each ESB comprises a unique code that can be associated to a specific target molecule. ESBs are molecules or assemblies that are designed to bind with at least one UBA or part of an UBA; and can, under appropriate conditions, form a molecular complex comprising the ESB, the UBA and the target molecule.

ESBs can comprise at least one identity identification portion that allow them to bind to or interact with at least one UBA: typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to UBA-antibody binding, aptamer-target binding, and the like. In some embodiments, the ESB are attached, directly or indirectly, to the UBA. In other embodiments, the ESBs bind to the UBAs in a cell or sample, e.g., as part of the assay procedure.

In certain embodiments, the ESB is a solid surface or a capture region, for example, the ESB can be a detectable bead such as a bead with a unique spectral signature (e.g. a bead that has been internally dyed with red and infrared fluorophores). In some embodiments, the UBA is directly or indirectly attached to the capture region.

In certain embodiments, the ESBs comprise common linker moiety, for example, a linker oligo. In certain embodiments, the common linker oligo is complementary to a common linker oligo in the assayable polymer subunits (APSs) that form the cell origination barcode (COB).

In certain embodiments, the ESBs comprise a capture region. In some embodiments, the capture region is used for the isolation of the ESB and/or immobilization of the ESB into a surface. The capture region can be an affinity tag, a

US 10,982,256 B2

21                                             22

bead, a slide or an array. In some embodiments, the capture region is a detectable bead such as a bead with a unique spectral signature (e.g. a bead that has been internally dyed with red and infrared fluorophores

In some embodiments, the ESB is an antibody or fragment thereof, an aptamer, a nucleic acid, or peptoid, as described above.

In some embodiments, the ESB is a nucleic acid. In some embodiments, a part of the nucleic acid is amplified with branch chain or rolling circle approaches as known in the art.

In some embodiments, the ESB is a peptoid. Peptoids are short sequences of N-substituted glycines synthetic peptides that bind proteins. In some embodiments, small size peptoids improve diffusion and kinetics of the methods described herein. Any suitable method known in the art to generate peptoids is encompassed in the methods described herein. See Simon et al., PNAS 15; 89(20): 9367-9371 (1992), incorporated herein by reference.

In some embodiments, the ESB is a nucleic acid sequence, e.g. an antisense nucleic acid for a complementary target nucleic acid sequence. The nucleic acid sequence is preferably at least 15 nucleotides in length, and more preferably is at least 20 nucleotides in length. In specific embodiments, the target-specific sequence is about 10 to 500, 20 to 400, 30 to 300, 40 to 200, or 50 to 100 nucleotides in length. In other embodiments, the target-specific sequence is about 30 to 70, 40 to 80, 50 to 90, or 60 to 100, 30 to 120, 40 to 140, or 50 to 150 nucleotides in length.

Cell Origination Barcode (COB)

In some embodiments, the invention provides a cell origination barcode (COB). Each COB provides a unique code that can be associated to a specific cell of origin. In some embodiments, upon binding of the COB to a common linker moiety (e.g. common linker oligo) associated with an ESB, the COB code identifies the cells of origin of the target molecule to which the UBA/ESB complex is bound. Thus, in some embodiments the COBs of the invention comprise two main portions: (i) a sequence specific for a common linker moiety (e.g. common linker oligo) associated with a UBA/ESB probe; and (ii) an unique code that can be associated to a specific cell of origin.

In some embodiments, COBs are modular structures. In some embodiments, the COB comprises a plurality of different assayable polymer subunits (APS). In some embodiments, the COBs comprise a plurality of APSs attached in linear combination. In some embodiments, a COB is a molecular entity containing certain basic elements: (i) a plurality of APSs comprising label attachment regions attached in linear combination to form a backbone, and (ii) complementary polynucleotide sequences, comprising a label, which are complementary and are attached to the label attachment regions of the backbone. The term label attachment region includes a region of defined polynucleotide sequence within a given backbone that may serve as an individual attachment point for a detectable molecule. In some embodiments, the COBs comprise a plurality of different APSs attached in linear combination, wherein the APSs comprise small molecules of deterministic weight. In some embodiments, the COB comprises 2, 3, 4, 5, 6, 7, 8, 9, 10 or more unique APSs attached in a linear combination. In some embodiments, the COB comprises 4 or more APSs attached in linear combination.

In some embodiments, the plurality of APSs attached in linear combination can comprise uniquely designed nucleic acid sequences. In addition, the plurality of APSs attached in linear combination in the COBs can comprise at least one template, for example but not limited to, at least one nucleic

acid sequence, such as at least part of a linear or linearizable viral genome, such as the genomes of adenovirus, hepatitis virus, herpes virus, rotavirus, and the like, or bacteriophages such as lambda, M13, phiX-174, T-series bacteriophages, and the like, including derivatives thereof comprising cloning cassettes, polylinkers, and the like; plasmids, such as pBR322 and PUC series plasmids, etc., including derivatives thereof comprising cloning cassettes, polylinkers, and the like; synthetic templates; templates comprising artificial sequences; and the like. The skilled artisan will understand that virtually any piece of nucleic acid can serve as a template for fabricating a COB provided that it is large enough to include at least two APSs, or it can be combined with at least one other nucleic acid sequence so that the combined sequence is large enough to include at least two APSs. In some embodiments, ESBs, APSs, or COBs of the invention relate to templatable building blocks. In some embodiments, UBAs of the invention relate to templatable molecules.

In some embodiments, the COB also comprises one or more APSs containing a common linker moiety (e.g. common linker oligo). The common linker moiety can be directly or indirectly attached to the APSs. Thus, the common linker moiety can be covalently attached to a COB or the common linker moiety can be bound to the COB later in the assay. The term common linker moiety includes tandemly-repeated sequences of about 10 to about 25 nucleotides. The common linker moiety can be attached at either the 5' region or the 3' region of a COB, and may be utilized for capture and immobilization of a COB for imaging or detection, such as by attaching to a solid substrate a sequence that is complementary to the common linker moiety.

The elements of a COB can be found in a single molecular entity (a singular COB), or two distinct molecular entities (a dual COB). Each molecular entity may be composed of one molecule or more than one molecule attached to one another by covalent or non-covalent means. In some embodiments, each component of a dual COB has a target molecule-specific UBA/ESB that binds to a different site on the same target molecule. When using a dual COB system one of the COBs may be unlabeled. In some embodiments, the unlabeled COB may comprise a capture region.

In various embodiments of the invention a COB is constructed from individual APS building blocks. In some embodiments, the APSs are combined linearly. In some embodiments, the COB constructed from the APSs maintains the order of the APS. In some embodiments, COBs comprise branched structures. In some embodiments, the branched COB structures comprise information about the order of APS addition. In various embodiments, the individual APS forming a COB can be decoded. In some embodiments, the order or order of addition of the APSs forming the COB can be decoded. Without being bound by theory, platforms allowing the APS addition order to be protected and decoded lend for a higher number of different COBs to be generated from equivalent number of APS building blocks. With a higher number of total COB molecule types, the likelihood of two cells/particles in a population being labeled with the same COB decreases. Thus, the methods of various embodiments of the invention allow for a higher statistical significance for the determination of cell/particle identity.

In some embodiments, the complementary polynucleotide sequences attached to an APS serve to attach detectable molecules, or label monomers, to the APS. The complementary polynucleotide sequences may be directly labeled, for

RSS_00082801

US 10,982,256 B2

23

example, by covalent incorporation of one or more detectable molecules into the complementary polynucleotide sequence. Alternatively, the complementary polynucleotide sequences may be indirectly labeled, such as by incorporation of biotin or other molecule capable of a specific ligand interaction into the complementary polynucleotide sequence. In such instances, the ligand (e.g., streptavidin in the case of biotin incorporation into the complementary polynucleotide sequence) may be covalently attached to the detectable molecule. Where the detectable molecules attached to an APS are not directly incorporated into the complementary polynucleotide sequence, this sequence serves as a bridge between the detectable molecule and the APS, and may be referred to as a bridging molecule, e.g., a bridging nucleic acid.

In some embodiments, the nucleic-acid based COBs, COB-ESB complexes, or COB/ESB/UBA complexes of the present invention comprise nucleic acids, which may be affinity-purified or immobilized using a nucleic acid, such as an oligonucleotide, that is complementary to a constant region of the COB (e.g. common linker moiety, capture region or affinity tag). As noted above, in some embodiments the COBs comprise at least one common linker moiety, which may serve as an affinity tag for purification and/or for immobilization (for example to a solid surface). The common linker moiety can comprise two or more tandemly repeated regions of repeat nucleotides, such as a series of 15-base repeats. In such exemplary embodiments, the COB, whether complexed to an ESB, ESB/UBA, a target molecule/UBA/ESB or otherwise, can be purified or immobilized by an affinity reagent coated with a 15-base oligonucleotide which is the reverse complement of the repeat unit.

COBs, COB-ESB complexes, or COB/ESB/UBA complexes can be purified in two or more affinity selection steps. For example, in the embodiments in which the COB is attached to an ESB/UBA complex, the COB can comprise an affinity tag. In other embodiments when a dual COB is used, one COB can comprise a first affinity tag and the other COB can comprise a second (different) affinity tag. The COBs are mixed with the target molecules, and complexes comprising the two probes of the dual COBs are separated from unbound materials by affinity purification against one or both individual affinity tags.

In the first step, the mixture can be bound to an affinity reagent for the first affinity tag, so that only probes comprising the first affinity tag and the desired complexes are purified. The bound materials are released from the first affinity reagent and optionally bound to an affinity reagent for the second affinity tag, allowing the separation of complexes from COBs comprising the first affinity tag. At this point only full complexes would be bound. The complexes are finally released from the affinity reagent for the second affinity tag and then analyzed by the methods described herein. The affinity reagent can be any solid surface coated with a binding partner for the affinity tag, such as a column, bead (e.g., latex or magnetic bead) or slide coated with the binding partner. A variety of affinity tags known in the art may be used, e.g., to purify and/or immobilize COBs, COB-ESB complexes, or COB/ESB/UBA complexes. In some embodiments, a biotin anchor is attached to the COB, ESB and/or UBA, allowing immobilization of the COBs, COB-ESB complexes, or COB/ESB/UBA complexes on a streptavidin surface (e.g. coated slide or bead). In some embodiments, an affinity tag is attached to a UBA, e.g., to purify and/or immobilize the UBA. An affinity tag can be used for attachment to beads or other matrixes for a variety

24

of useful applications including but not limited to purification. Examples of affinity tags and methods of making and/or attaching them to the nucleic acids are described in U.S. Pat. No. 7,473,767; U.S. application Ser. Nos. 10/542, 458; 12/324,357; 11/645,270 and 12/541,131, incorporated herein by reference in their entirety. In some embodiments, at least two of ESB, UBAs, APSs, and COBs comprise different chemical compositions described herein or any other suitable composition known in the art. For example, an ESB can comprise a peptide and/or a nucleic acid, while an APS comprises a peptide or a peptoid. Any combination of described chemistries are envisioned within the scope of the invention.

In various embodiments, ESBs, APSs and/or COBs can be template, ordered, and or decoded. In some embodiments, the order of any of these subunits in a construct can be detected. ESBs, APSs and/or COBs can provide templates for the addition of any of another one of ESBs, APSs and/or COBs, for example via nucleic acid or any other suitable chemical complementarity known in the art. ESBs, APSs and/or COBs may encode secondary products, such as a nucleic acid encoding for another nucleic acid or a peptide. In some embodiments, the detection of the ESBs, APSs and/or COBs comprises decoding the same, for example generating an amplicon or expressing a peptide from the ESBs, APSs and/or COBs and sequencing or otherwise detecting the products.

The sequences, the weights or the signals provided by the label monomers associated with the various APS of the COB of a given cell allow for the unique identification of the COB. For example, when using nucleic acid sequences, a COB having a unique identity or unique sequence signature is associated with a UBA that recognizes a specific target molecule or a portion thereof. Detection of the COB sequence allows for the detection of the presence of the target molecule in the mixture (qualitative analysis). In another example, when using fluorescent labels, a COB having a unique identity or unique spectral signature is associated with a UBA that recognizes a specific target molecule or a portion thereof. Detection of the COB signal, such as the spectral code of a fluorescently labeled COB allows detection of the presence of the target molecule in the mixture (qualitative analysis). In yet another example, when using small molecules as per combinatorial synthesis procedure, a COB having a unique deterministic weight is associated with a UBA that recognizes a specific target molecule or a portion thereof. Detection of the COB deterministic weight (e.g., via mass spectrometry) allows detection of the presence of the target molecule in the mixture (qualitative analysis). Counting and or quantifying the codes (e.g. sequences, label monomers, or deterministic weights) associated with a given signature (e.g. spectral code, unique sequence, or unique deterministic weight) allow the counting or quantitation of all the molecules in the mixture associated the UBA coupled to the COB (quantitative analysis). UBA/ESB/COB complexes are thus useful for the diagnosis or prognosis of different biological states (e.g., disease vs. healthy) by quantitative analysis of known biological markers.

Moreover, the exquisite sensitivity of single molecule detection and quantification provided by the COBs of the invention allows for the identification of new diagnostic and prognostic markers, including those whose fluctuations among the different biological states is too slight to detect a correlation with a particular biological state using traditional molecular methods. The sensitivity of COB-based molecular

RSS_00082802

US 10,982,256 B2

25

detection permits detailed pharmacokinetic analysis of therapeutic and diagnostic agents in small biological samples.

COB syntheses can be performed by any suitable methods known in the art, including the one described herein.

In various embodiments, the invention relates to a COB to be synthesized by stepwise addition of assayable polymer subunits (APSs) comprising oligonucleotides. The COB can be attached to the UBA via a common linker (CL). The CL can also be part of an oligonucleotide. In some embodiments, an epitope specific barcode is also provided as an oligonucleotide. In some instances, the epitope specific barcode can be included in the oligonudeotide that comprises the common linker. In some embodiments, CL, ESB and APSs all comprise oligonudeotide sequences. Accordingly, an oligonudeotide CL may be ligated to an oligonudeotide ESB or APS. Substantially complementary or exact complementary annealing regions may be utilized for hybridization. An annealing region may be provided on both ends of an oligonudeotide ESB or APS. In some embodiments, the APSs are added in various steps of a split pool synthesis or any other suitable stepwise synthesis known in the art. An annealing region specific to each step of a stepwise synthesis maybe incorporated into the oligonudeotides. Without being bound by theory, if an oligonucleotide addition is skipped during a step, the step specific annealing region of the next oligonucleotide will not hybridize efficiently to the step specific annealing region of the previous oligonudeotide that is available. Thus, some embodiments of the invention provide methods to stall the synthesis of COBs missing one or more APSs.

In some embodiments, UBAs are labeled with different CL oligonudeotides, each with a unique ESB sequence specific to the UBA and a common annealing region. In many cases, the APSs are assembled into COBs during the rounds of split pool synthesis. In these cases, in each round, the sample is split into n different containers. A different oligonudeotide APS can be added to each container, totaling m different APSs. In some embodiments n and m are the same. In other embodiments, n is greater than m or m is greater than n. Each APS can be designed so that it will selectively hybridize an annealing region added during the round before (FIG. 6). In various embodiments, a pair of round-specific annealing regions is incorporated in each APS. The annealing regions can be incorporated to each end of the APS. The annealing regions incorporated to each end of an APS can be different. Accordingly, an annealing region of an added APS can be complementary to an available annealing region from a previous round facilitating assembly.

In some embodiments, the APSs are stitched together and/or to a CL using an annealing primer (FIGS. 7 and 8). The annealing primer may comprise a first complementary region to the CL or an APS added during the previous round of a stepwise synthesis. The annealing primer may also comprise a second complementary region to the APS being added during a current round. Thus, the annealing primer can hybridize to two oligonudeotide subunits of subsequent rounds stitching them together. In some embodiments, the first complementary regions of annealing primers of each round are different from the first complementary regions of annealing primers of other rounds (FIG. 7). In some embodiments, the second complementary regions of annealing primers of each round are different from the second complementary regions of annealing primers of other rounds. In

26

some embodiments, the first or second complementary regions of annealing primers of different rounds are shared between rounds (FIG. 8).

In some embodiments, a CL oligonudeotide comprises pairs of loop annealing regions (FIGS. 9 and 10). Accordingly, APSs can be designed to hybridize to the CL in a loop geometry, hybridizing on each end to the CL along the loop annealing regions. The loop annealing regions can be specific to the round. The hybridization can populate the APSs along the CL. The APSs can be linked together using any method described herein or other common methods known in the art. The APSs can be designed such that they do not efficiently hybridize to the CL along the loop annealing regions specific to other rounds. Consequently, if an APS from a particular round is missing, the APSs may not be linked together successfully, depending on the linking process. Alternatively, a COB may be synthesized with a missing APS, the location of which is flanked by a pair of loop annealing regions. The resulting COB can then be analyzed accordingly and can either be discarded or the retrieved information can be alternatively processed.

Each APS in a given round can comprise a unique subcode sequence that is different from the rest of the APSs in that round (FIGS. 6-11). The subcode may comprise a unique nudeotide sequence.

A CL, or one or more APSs may further comprise a random tag region allowing for subsequent normalization of the detected COBs (FIGS. 6-11). Variations of suitable methods making use of such random tag regions are known in the art, e.g., see Casbon et al. (Nucleic Acids Research, 2011, 39: 12, e81). In some cases, the random tag region can function as a molecular counter to estimate the number of template molecules associated with each sequence variant. In some cases, a molecular counter is incorporated into a CL, ESB, APS or an assembled COB prior to an amplification reaction, e.g. PCR. A library of molecular counters comprising degenerate base regions (DBR) may be incorporated into CLs, ESBs, APSs or assembled COBs. The number of unique DBRs in a library generally is limited by the length and base composition of the DBR. For example, a single nudeotide in a DBR would allow for four different possible counters, one for each base. Longer DBRs can produce higher numbers of unique counter sequences. A molecular counter from a library of sequences can each be incorporated in a CL, ESB, APS or an assembled COB. The molecular counter can be used to determine whether a sequence variant is associated with a single template molecule, or alternatively, multiple template molecules. The number of different DBR sequences associated with one sequence variant can serve as a direct measure of the number of initial template molecules. This information can supplement or replace the information provided by read numbers of each sequence variant, including, for example, read numbers after an amplification reaction, e.g. PCR. DBRs can also be used to determine the probability that a sequence variant derives from a polymerase error during an amplification reaction or is a true original variant prior to an amplification reaction, e.g. PCR. In some embodiments, unique binding agents (UBAs) are fixed to their targets prior to or concurrent with the assembly of COBs.

Various embodiments of the invention relate to the assembly of COBs on the surface of cells. COBs can, for example, be assembled associated with UBAs targeting cell surface components. In some embodiments, UBAs are fixed to cell surface components prior to or concurrent with the assembly of COBs. In some embodiments, UBAs are delivered into cells or into cellular compartments. In some embodiments,

RSS_00082803

US 10,982,256 B2

27

COBs are assembled associated with UBAs within cells or cellular compartments. Cells may be fixed prior to the addition of UBAs, ESBs or prior to COB assembly. Suitable cell permeabilization methods are known in the art and can be used to deliver components of the assay into cells and cellular components.

In some embodiments, the assay is performed on bodies that are not cells.

Suitable support materials known in the art, such as beads or surface coatings, can act in the same manner a cell would act to provide an original binding surface. Support materials can be decorated with binding targets. In some embodiments, support materials spatially resolve binding targets from each other.

In some embodiments, the assay may comprise primary binding targets and one or more secondary binding targets that are capable of binding to the primary target. A support material, can for example, be coated with one or more primary targets. A library of secondary targets can be provided to bind the primary targets. UBAs can be provided to bind epitopes of primary and/or secondary targets. COBs can be assembled associated with these UBAs as described for other types of targets. Inter-dependent binding of secondary targets to primary targets can be monitored by analyzing the COBs.

In some embodiments, multiple COBs are assembled on the same UBA molecule.

In some embodiments, the ESBs or assembled COBs encode a derivative sequence. In some embodiments, the ESBs and/or COBs comprise a polynucleotide sequence. In some cases, the ESB and/or COB can encode an RNA sequence. In some cases, the ESB and/or the COB encode a peptide sequence. The ESB and/or the COB can encode for the peptide sequence directly. Alternatively, the COB can encode for a peptide sequence indirectly, for example, through an intermediary RNA sequence. For example, a polynucleotide ESB or COB can encode an open reading frame. In some cases, the peptide sequence is translated after introducing the ESB or COB into a construct enabling peptide expression. In some embodiments, the construct is a vector.

In some embodiments, the ESBs and COBs are assembled from oligonudeotides. The linking agent can be a ligase. In some embodiments the ligase is T4 DNA ligase, using well known procedures (Maniatis, T. in Molecular Cloning, Cold Spring Harbor Laboratory (1982)). Other DNA ligases may also be used. With regard to ligation, other ligases, such as those derived from thermophilic organisms may be used thus permitting ligation at higher temperatures allowing the use of longer oligonucleotides (with increased specificity) as ESBs, CLS or APSs, which could be annealed and ligated simultaneously under the higher temperatures normally permissible for annealing such oligonudeotides. The ligation, however, need not be by an enzyme and, accordingly, the linking agent may be a chemical agent which will cause the ESB and APSs to link unless there is a nucleotide base pair mismatching at the annealing region. For simplicity, some embodiments of the invention will be described using T4 DNA ligase as the linking agent. This enzyme requires the presence of a phosphate group on the 5' end that is to be joined to a 3' OH group on a neighboring oligonucleotide.

When oligos are stacking together to bind to an annealing region with a perfect match at the junction at their ends, it results in a specific binding to the annealing region. The CLs, ESBs and APSs can be ligated to form an ESB linked COB. The ESB linked COBs, in turn, can be used for

28

detection. In some embodiments, the ESB and/or COB assembly comprises the use of

CLICK chemistry. Suitable methods to link various molecules using CLICK chemistry are known in the art (for CLICK chemistry linkage of oligonucleotides, see, e.g. El-Sagheer et al. (PNAS, 108:28, 11338-11343, 2011).

In some embodiments, the ESB and/or COB assembly takes place inside a cell. In some embodiments, the ESBs and/or APSs are first assembled inside a cell. In some embodiments, the ESBs and/or APSs are linked inside a cell. In some embodiments, the ESBs and/or APSs are linked outside a cell.

In some embodiments, the assembled products are amplified and, optionally, the results are compared with amplification of similar target nucleic acids from a reference sample. In some embodiments, the ligated products of APSs are amplified and, optionally, results are compared with amplification of a similar COB from a reference sample. Amplification can be performed by any means known in the art. In some cases, the ligated products are amplified by polymerase chain reaction (PCR). Examples of PCR techniques that can be used include, but are not limited to, quantitative PCR, quantitative fluorescent PCR (QF-PCR), multiplex fluorescent PCR (MF-PCR), real time PCR (RTPCR), single cell PCR, restriction fragment length polymorphism PCR (PCR-RFLP), PCK-RFLPIRT-PCR-IRFLP, hot start PCR, nested PCR, in situ polonony PCR, in situ rolling circle amplification (RCA), bridge PCR, picotiter PCR and emulsion PCR. Other suitable amplification methods include the ligase chain reaction (LCR), transcription amplification, self-sustained sequence replication, selective amplification of target polynucleotide sequences, consensus sequence primed polymerase chain reaction (CP-PCR), arbitrarily primed polymerase chain reaction (AP-PCR), degenerate oligonucleotide-primed PCR (DOP-PCR) and nucleic acid based sequence amplification (NABSA). Other amplification methods that can be used herein include those described in U.S. Pat. Nos. 5,242,794; 5,494,810; 4,988,617 and 6,582,938. In some embodiments, the amplification is performed inside a cell.

In any of the embodiments, amplification of ligated products may occur on a support, such as a bead or a surface. In any of the embodiments herein, COBs may be assembled on targets from a single cell.

The uniqueness of each UBA/ESB probe in a population of probes allows for the multiplexed analysis of a plurality of target molecules. Furthermore, the uniqueness of each COB probe in a population of probes allows for the multiplexed analysis of a plurality of target molecules in single cells.

For example, in some embodiments, each COB contains six APSs. If the APSs are going to be sequenced and there are 20 possible unique sequences for the APS. There will be $3.84 \times 10^8$ possible COBs in this example. Thus, $3.84 \times 10^8$ cells and their corresponding UBA/ESB probes can be analyzed in this example. Given that in sequencing you don't have the color constraints present in some fluorescent methods, one can analyze multiple UBA/ESB probes per cells. In some embodiments, 10, 15, 20, 25, 30, 40, 50, 60, 65, 70, 90, 100 different UBA/ESBs are analyzed per cell. In some embodiments, up to 100 different UBA/ESBs are analyzed per cell. In some embodiments, up to 1000 different UBA/ESBs are analyzed per cell. In some embodiments, up to 2000 different UBA/ESBs are analyzed per cell.

In certain embodiments, the methods of detection are performed in multiplex assays, whereby a plurality of target molecules is detected in the same assay (a single reaction

US 10,982,256 B2

29

mixture). In a preferred embodiment, the assay is a hybridization assay or an affinity binding assay in which the plurality of target molecules is detected simultaneously. In a preferred embodiment, the assay is hybridization assay or an affinity binding assay in which the plurality of target molecules is detected simultaneously in single cells. In certain embodiments, the plurality of target molecules detected in the same assay is, at least 2, at least 5 different target molecules, at least 10 different target molecules, at least 20 different target molecules, at least 50 different target molecules, at least 75 different target molecules, at least 100 different target molecules, at least 200 different target molecules, at least 500 different target molecules, or at least 750 different target molecules, or at least 1000 different target molecules. In other embodiments, the plurality of target molecules detected in the same assay is up to 50 different target molecules, up to 100 different target molecules, up to 150 different target molecules, up to 200 different target molecules, up to 300 different target molecules, up to 500 different target molecules, up to 750 different target molecules, up to 1000 different target molecules, up to 2000 target molecules, or up to 5000 target molecules. In yet other embodiments, the plurality of target molecules detected is any range in between the foregoing numbers of different target molecules, such as, but not limited to, from 20 to 50 different target molecules, from 50 to 200 different target molecules, from 100 to 1000 different target molecules, from 500 to 5000 different target molecules, and so on and so forth.

In some embodiments, the detection is digital detection. In some embodiments, the detection is direct, i.e. the method acquires a signal that is directly generated by the detected entity. In some embodiments, the detection is indirect, i.e. manipulation of an entity to be detected takes place before a signal is acquired. In some embodiments, a plurality of components of an entity to be detected give rise to detection signals directly or indirectly. In some embodiments, the order of the plurality of the components can be determined through the detection methods described herein. Such detection methods are also described as ordered detection methods or detection methods with ordered signals.

In any of the embodiments, the detection or quantification analysis of the COBs can be accomplished by sequencing. The APS subunits or entire COBs can be detected via full sequencing of all DNA tags by any suitable methods known in the art, e.g., Illumina HiSeq 2000, including the sequencing methods described herein.

Sequencing can be accomplished through classic Sanger sequencing methods which are well known in the art. Sequencing can also be accomplished using high-throughput systems some of which allow detection of a sequenced nucleotide immediately after or upon its incorporation into a growing strand, i.e., detection of sequence in red time or substantially real time. In some cases, high throughput sequencing generates at least 1,000, at least 5,000, at least 10,000, at least 20,000, at least 30,000, at least 40,000, at least 50,000, at least 100,000 or at least 500,000 sequence reads per hour; with each read being at least 50, at least 60, at least 70, at least 80, at least 90, at least 100, at least 120 or at least 150 bases per read.

In some embodiments, high-throughput sequencing involves the use of technology available by Illumina's HiSeq 2000 machine. This machine uses reversible terminator-based sequencing by synthesis chemistry. This machine can do 200 billion DNA reads in eight days.

In some embodiments, high-throughput sequencing involves the use of technology available by ABI Solid

30

System. This genetic analysis platform that enables massively parallel sequencing of clonally-amplified DNA fragments linked to beads. The sequencing methodology is based on sequential ligation with dye-labeled oligonucleotides.

In some embodiments, high-throughput sequencing involves the use of technology available by Ion Torrent Personal Genome Machine (PMG). The PGM can do 10 million reads in two hours.

In some embodiments, high-throughput sequencing involves the use of technology available by Helicos BioSciences Corporation (Cambridge, Mass.) such as the Single Molecule Sequencing by Synthesis (SMSS) method. SMSS is unique because it allows for sequencing the entire human genome in up to 24 hours. This fast sequencing method also allows for detection of a SNP nucleotide in a sequence in substantially real time or real time. Finally, SMSS is powerful because, like the MIP technology, it does not require a. pre amplification step prior to hybridization. In fact, SMSS does not require any amplification. SMSS is described in part in US Publication Application Nos. 2006002471 1; 20060024678; 20060012793; 20060012784; and 20050100932.

In some embodiments, high-throughput sequencing involves the use of technology available by 454 Lifesciences, Inc. (Branford, Conn.) such as the Pico Titer Plate device which includes a fiber optic plate that transmits chemiluninescent signal generated by the sequencing reaction to be recorded by a CCD camera in the instrument. This use of fiber optics allows for the detection of a minimum of 20 million base pairs in 4.5 hours.

Methods for using bead amplification followed by fiber optics detection are described in Marguiles, M., et al. "Genome sequencing in microfabricated high-density picolitre reactors", Nature, doi: 10.1038/nature03959; and well as in US Publication Application Nos. 20020012930; 20030058629; 20030100102; 20030148344; 20040248161; 20050079510, 20050124022; and 20060078909.

In some embodiments, high-throughput sequencing is performed using Clonal Single Molecule Array (Solexa, Inc.) or sequencing-by-synthesis (SBS) utilizing reversible terminator chemistry. These technologies are described in part in U.S. Pat. Nos. 6,969,488; 6,897,023; 6,833,246; 6,787,308 and US Publication Application Nos. 20040106130; 20030064398; 20030022207; and Constans, A., The Scientist 2003, 17:30.

In some embodiments, high-throughput sequencing of RNA or DNA can take place using AnyDot.chjps (Genovoxx, Germany). In particular, the AnyDot-chips allow for I Ox-50× enhancement of nucleotide fluorescence signal detection. AnyDot.chips and methods for using them are described in part in International Publication Application Nos. WO02/088382, WO03/020968, WO03/031947, WO2005/044836, PCT/EP05/105657, PCT/EP05/105655, and German Patent Application Nos. DE 101 49 786, DE 102 14 395, DE 103 56 837, DE 10 2004 009 704, DE 10 2004 025 696, DE 10 2004 025 746, DE 10 2004 025 694, DE 10 2004 025 695, DE 10 2004 025 744, DE 10 2004 025 745, and DE 10 2005 012 301.

Other high-throughput sequencing systems include those disclosed in Venter, J. et al. Science 16 Feb. 2001; Adams, M. et al, Science 24 Mar. 2000; and M. J., Levene, et al. Science 299, 682-686, January 2003; as well as US Publication Application No. 20030044781 and 2006/0078937. Overall such systems involve sequencing a target nudeic acid molecule having a plurality of bases by the temporal addition of bases via a polymerization reaction that is

RSS_00082805

US 10,982,256 B2

31

measured on a molecule of nucleic acid, i.e., the activity of a nucleic acid polymerizing enzyme on the template nucleic acid molecule to be sequenced is followed in real time. Sequence can then be deduced by identifying which base is being incorporated into the growing complementary strand of the target nucleic acid by the catalytic activity of the nucleic acid polymerizing enzyme at each step in the sequence of base additions. A polymerase on the target nucleic acid molecule complex is provided in a position suitable to move along the target nudeic acid molecule and extend the oligonucleotide primer at an active site. A plurality of labeled types of nucleotide analogs are provided proximate to the active site, with each distinguishably type of nucleotide analog being complementary to a different nucleotide in the target nucleic acid sequence. The growing nudeic acid strand is extended by using the polymerase to add a nucleotide analog to the nucleic acid strand at the active site, where the nucleotide analog being added is complementary to the nucleotide of the target nucleic acid at the active site. The nucleotide analog added to the oligo- nucleotide primer as a result of the polymerizing step is identified. The steps of providing labeled nucleotide ana- logs, polymerizing the growing nudeic acid strand, and identifying the added nucleotide analog are repeated so that the nucleic acid strand is further extended and the sequence of the target nucleic acid is determined. In various embodi- ments, oligonucleotide ESB or COBs are identified directly. The direct identification can comprise nudeic acid sequenc- ing described supra. In some embodiments, the APS sequences encode for derivative sequences that are in turn identified. For example, a polynucleotide ESB and COB can be translated into a peptide sequence. The peptide sequence can then be identified using suitable methods known in the art.

In some embodiments, a sequence representing a COB or ESB is identified using mass spectrometric analysis. Sequencing methods comprising mass spectrometry are known in the art. In various embodiments, a derivative sequence, such as a peptide, is sequenced using mass spectrometric methods. In some embodiments, the mass spectrometric methods comprise fragmentation. In some embodiments, the mass spectrometric methods comprise N-terminal sequencing. In some embodiments, the mass spectrometric methods comprise C-terminal sequencing. In some embodiments, the mass spectrometric methods com- prise Edman degradation. In various embodiments, the derivative sequence is subjected to a separation process prior to identification. In some embodiments, the separation pro- cess comprises chromatography. In some embodiments, the separation process comprises HPLC. Suitable separation methods for the separation process comprise, for example, ion-exchange chromatography or hydrophobic interaction chromatography. Ion-exchange chromatography can use any matrix material comprising functional groups that are strongly acidic (typically, sulfonic acid groups, e.g. sodium polystyrene sulfonate or polyAMPS), strongly basic, (qua- ternary amino groups, for example, trimethylammonium groups, e.g. polyAPTAC), weakly acidic (mostly, carboxylic acid groups), or weakly basic (primary, secondary, and/or ternary amino groups, e.g. polyethylene amine). The sepa- ration method can, for example, use sulfonated polystyrene as a matrix, adding the amino acids in acid solution and passing a buffer of steadily increasing pH through the column. Amino acids are eluted when the pH reaches their respective isoelectric points. Hydrophobic interaction chro- matography may be employed through the use of reversed phase chromatography. Many commercially available C8

32

and C 18 silica columns have demonstrated successful separation of peptides in solution through the use of an elution gradient.

In some embodiments, peptide sequences representing ESBs, APSs and the resulting COBs are designed to improve the ease of detection. In some cases, peptide sequences can be designed to improve fragmentation patterns in a mass spectrometer. It is well known in the art that the fragmen- tation efficiency of a bond in a peptide sequence is sequence dependent (see, e.g. Tabb et al. Anal Chem. 2003 March 1; 756): 1155 and Klammer et al. Bioinformatics 2008, 24:348- 356). The sequence-dependent fragmentation efficiencies can be employed to design representative peptide sequences with desired fragmentation patterns.

In some embodiments, peptide sequences representing ESBs, APSs and the resulting COBs are designed to confer certain physical and chemical characteristics to the peptide molecules. For example, representative peptide sequences can be designed to result in peptide molecules with solu- bilities in aqueous solutions within a desired range. For another example, representative peptide sequences can be designed to result in peptide molecules with a desired degree of secondary or tertiary structure or lack thereof. For yet another example, representative peptide sequences can be designed to result in peptide molecules with disulfide bonds or lack thereof. For a yet further example, representative peptide sequences can be designed to result in peptide molecules with desired binding characteristics to chosen targets. The sequences of the ESBs, CLs, APSs and the resulting COBs can further be designed to exploit specially loaded tRNAs in a protein expression system. Accordingly, incorporation of non-natural amino acids to the resulting peptide molecules can be accomplished.

Various embodiments relate to separating the ESB-linked COBs or derivative sequences, such as a peptide sequence, prior to detection. In some embodiments, the separation is based on a suitable physiochemical property of the mol- ecules. These types of separations are particularly useful to direct the molecules to the detectors sequentially thereby increasing their relative abundance and the complexity of the signal at the time of the detection. Various embodiments comprise separation of the molecules in a sequence-targeted manner. For example, all molecules comprising a particular ESB can be isolated by hybridizing the ESB sequence to a sufficiently complementary sequence, affinity purifying using an ESB-specific linked tag, affinity purifying using a. derivative sequence encoded by the ESB sequence or any other suitable method known in the art. Separation methods may also target a cell-specific COB or a portion thereof.

In some embodiments, constructs comprising ESBs and COBs are subjected to separation. For example, the con- structs can be subjected to gradient or affinity purification sorting according to the ESBs. In some embodiments, the separation may comprise multiple dimensions, for example 2, 3, 4, 5, 6, 7, or more dimensions. For example, the constructs can be separated sorting according to the first APSs on one dimensions and sorting the according to the second APSs on another dimension and optionally sorting according to the ESBs on a third dimension.

In some embodiments, the separation method comprises separation by gradient, on a gel, using an electromagnetic field and/or any other suitable separation method known in the art. In some embodiments, constructs comprising ESBs and/or COBs can be separated prior to detection. For example, the constructs can be separated according to ESBs and the ESBs and/or COBs in the constructs can be detected following the separation. The detection can be molar ratio

RSS_00082806

US 10,982,256 B2

33                                                          34

detection, enzymatic detection, sequencing, differential affinity in a gradient or gel, electromagnetic field, e.g. UV, fluorescence or chemiluminescence, any detection method described herein, or any other suitable detection method known in the art. In some embodiments, the separation comprises immobilizing the constructs. For example, the constructs can be immobilized on an array surface or on a bead. A portion of the ESB and/or COB can be used to immobilize the constructs. The ESB and/or the COB can be detected from immobilization positions. In one example, ESBs and/or COBs comprising oligonucleotide can be immobilized on a bead or microarray that is coated with complementary oligonucleotides.

a. Detectable Molecules or Label Monomers

The COBs of the present invention can be labeled with any of a variety of label monomers, such as a radioisotope, fluorochrome, dye, enzyme, nanopartide, chemiluminescent marker, biotin, or other monomer known in the art that can be detected directly (e.g., by light emission) or indirectly (e.g., by binding of a fluorescently-labeled antibody). Generally, one or more of the labeled APSs in the COB is labeled with one or more label monomers, and the signals provided by the label monomers attached to the APS of a COB constitute a detectable code that identifies the target to which the UBA the COB binds. In certain embodiments, the lack of a given signal from the APS (e.g., a dark spot) can also constitute part of the COB's code.

Example of label monomers that can be used with the COBs described herein and methods to incorporate the labels monomers into the COBs are described in U.S. Pat. No. 7,473,767; U.S. application Ser. Nos. 10/542,458; 12/324,357; 11/645,270 and 12/541,131 incorporated herein by reference in their entirety.

When adding detectable molecules or label monomers to the COBs, in addition to the qualitative analytical capabilities provided by the COB of the invention and the analytical techniques based thereon, the COB of the invention are uniquely suitable for conducting quantitative analyses. By providing a one to one binding between the COB of the invention and their target molecules in a biomolecular sample, all or a representative portion of the target molecules present in the sample can be identified and counted. This individual counting of the various molecular species provides an accurate and direct method for determining the absolute or relative concentration of the target molecule in the biomolecular sample. Moreover, the ability to address each molecule in a mixture individually leverages benefits of miniaturization including high sensitivity, minimal sample quantity requirements, high reaction rates which are afforded by solution phase kinetics in a small volume, and ultimately very low reagent costs.

Target Molecules

Target molecules or epitopes are the molecules detected or measured by binding of a UBA whose target-specific region (s) recognize thereto. Examples of target molecules include, but are not limited to, proteins, nucleic acids, lipids, carbohydrates, small molecules, organic monomers, or drugs. Nucleic acids that can be analyzed by the methods herein include: double-stranded DNA, single-stranded DNA, single-stranded DNA hairpins, DNA/RNA hybrids, RNA (e.g. mRNA or miRNA) and RNA hairpins. For convenience only, the methods described herein are explained mostly in the context of analyzing proteins or mRNA. However, the embodiments described herein also can be used to detect non-protein or non-mRNA targets. In some embodiments, the target molecule is selected from the group consisting of a peptide, a polypeptide, an oligopeptide, a protein, a

phosphoprotein, an antibody, a nucleic acid, a peptide nucleic acid, a synthetic small molecule, a disaccharide, a trisaccharide, an oligosaccharide, a polysaccharide, a lipid, a steroid, and a phospholipid.

A target molecule can be part of a biomolecular sample that contains other components or can be the sole or major component of the sample. A target molecule can be a component of a whole cell or tissue, a cell or tissue extract, a fractionated lysate thereof or a substantially purified molecule. The target molecule can be attached in solution or solid-phase, including, for example, to a solid surface such as a chip, microarray or bead. Also the target molecule can have either a known or unknown structure or sequence.

The compositions, methods, and kits disclosed herein can also be used in a wide variety of applications to determine the presence of target molecules in a sample. For example but without limitation, the compositions, methods, and kits are useful for, pharmacokinetic studies, including but not limited to, drug metabolism, ADME profiling, and toxicity studies; target validation for drug discovery; gene expression profiling, protein expression profiling; proteome analyses; metabolomic studies; post-translation modification studies, including but not limited to glycosylation, phosphorylation, acetylation, and amino acid modification, such as modification of glutamate to form gamma-carboxy glutamate and hydroxylation of proline to form hydroxylation; analyses of specific serum or mucosal antibody levels; evaluation of nonnucleic acid diagnostic indicators; foreign antigen detection; and the like.

In certain embodiment, at least one UBA, at least one ESB, or both the UBA and the ESB comprise at least one antibody, aptamer or peptoid that reacts specifically with at least one target molecule. In certain embodiments, at least one UBA, at least ESB, or both the UBA and the ESB comprise binding proteins that specifically interact with at least one target molecule. In some embodiments, the ESB comprise a common linker moiety.

The skilled artisan will appreciate that the molecular complexes and the at least part of the molecular complexes described herein can be individually detected while tethered or attached to a substrate or while in solution, depending on, among other things, the nature of the specific molecular complex or cleavable component and the SMD technique and detection apparatus employed.

Methods

The present invention provides methods for detection and quantification of target molecules in biomolecular samples. In particular, the invention provides UBAs that are capable of binding individual target molecules. The invention also provides the use of ESBs and COBs (See FIG. **2**). Through the ESBs and COBs codes, the binding of the UBAs to target molecules results in the identification of the target molecules in single cells. In some embodiments, the ESB/COB complex represents a quantum of information that represents the target molecule and the cell of origin (See FIG. **1**). Methods of making and using such UBAs and/or ESBs and COBs are also provided.

In one aspect, the invention provides methods to identify multiple target molecules in every cell of a complex cell population and to retain cell specific information regarding that target molecule. Therefore, for each cell the amount of each target molecule associated with that cell is assayed. In some embodiments, multiple quanta of information are determined to identify multiple target molecules in every cell of a complex cell population.

In some embodiments, the invention provides methods for detecting at least one target molecule in a sample comprising

US 10,982,256 B2

35                                                                                          36

the steps: (a) providing: (i) a population of cells potentially comprising at least one target molecule, (ii) a first UBA specific for a first target molecule, (iii) a first epitope specific barcode ESB specific for a region of the first UBA, where the ESB comprises a first common linker moiety, and (iv) a population of COB, where the population of COB comprises a second common linker moiety, where the second linker moiety is complementary to the first common linker moiety is the first ESB, (b) forming at least a first complex comprising the at least one target molecule, the first UBA probe, and the first ESB, where the at least one target molecule is bound to the first UBA and the ESB is bound to the UBA (c) adding the population of COBs, where a second complex is formed with the least one target molecule, the first UBA probe, the first ESB, and a first COB, and where the second common linker moiety from the first COB is bound to the first linker moiety from the first ESB, and where the COBs from the population of COBs is associated with a cell from the population of cells; and (d) detecting the second complex or at least part of the third complex.

In some embodiments, the invention provides methods for detection and/or quantification of a target molecule by binding a UBA to a target molecule. A UBA comprises at least one reaction portion that allow the UBA to bind to or interact with the target molecule; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like (See FIGS. 2 and 3).

In some embodiments, UBAs can be part of at least one probe set, comprising at least one first probe and at least one second probe. Thus, in some embodiments the invention provides methods for detection and/or quantification of a target molecule by binding a UBA probe set to a target molecule, where the UBA probe set comprises a first UBA probe and a second UBA probe. The first UBA probe and the second UBA probe comprise at least one reaction portion that allow the probes to bind to or interact with different regions of the target molecule, e.g., in a sequence-specific manner, a confirmation-specific manner, or both. In some embodiments, the UBA probe and/or a second UBA probe contain a capture region as described herein.

In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. The identity portion allows for the identification of the presence or absence of the UBAs bound to the target molecule in the detection step of the methods described herein. Thus, in some embodiments the invention provides methods for detection and/or quantification of a target molecule by binding the UBA to a target molecule, wherein UBA contains an identity portion (e.g., ESB, a COB, an ESB and/or a linker oligo).

In some embodiments, the target molecule is tagged within cells indirectly with an epitope specific barcode (ESB). Each ESB comprises a unique code that can be associated to a specific target molecule. ESBs are molecules or assemblies that are designed to bind with at least one UBA or part of an UBA; and can, under appropriate conditions, form a molecular complex comprising the ESB, the UBA and the target molecule. ESBs comprise at least one identity identification portion that allow them to bind to or interact with at least one UBA; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to UBA-antibody binding, aptamer-target binding, and the like. In some embodiments, the ESB are attached, directly or indirectly, to the UBA. In other embodiments, the ESBs bind to the UBAs in a cell or

sample, e.g., as part of the assay procedure. In certain embodiments, the UBAs and/or ESBs comprise a capture region. In some embodiments, the capture region is used for the isolation of the UBA/ESB and/or immobilization of the UBA/ESB into a surface. The capture region can be an affinity tag, a bead, a slide or an array. In certain embodiments, the ESBs comprise common linker moiety, for example, a linker oligo. In certain embodiments, the common linker oligo is complementary to a common linker oligo in the assayable polymer subunits (APSs) that form the cell origination barcode (COB).

FIGS. 3 and 4 show a schematic representation of one of the embodiments of the invention in which a split pool synthesis approach is used to append the COB to the target molecule/UBA/ESB complex. FIG. 3 in step 1 shows the labeling of cells with UBA-ESB-CL reagents. The UBA provides the specificity for the target molecule to be recognized in a cell. In some embodiments, the UBA can be an antibody specific for a surface marker like CD8, or an intracellular epitope like a phospho-epitope on a kinase such as Stat-3. In some embodiments, the UBA could be an antisense DNA for a target mRNA in a fixed cell. The UBA is identified with an ESB that has a CL moiety, the latter for later addition of cell specific tagging information. FIG. 4 is Step 2 shows the start of the split pool synthesis. In this example, the cell population is split into 20 tubes. Cell populations can be split into wells, bead or any suitable surfaces known in the art. In Step 3 an APS unit is added to each tube. The APS binds the UBA/ESB complex via the complementary CLS in the APS and the ESB. In Step 4, each cell in a given tube now has appended to each UBA-ESB pair the same subunit as defined by the tube contents (one of 1-20 APS in this example). Each split population from Step 3 now has a DAPS "tag" polymer subunit added to all DBAAs in that cell. In Step 5, the cells from the 20 tubes are pulled into one tube. ½0 of the cells have the same APS subunit. In Step 6, steps 2-4 are repeated to add a second APS to the prior APS. In this example, cells in one tube will have a mixture of cells all of which have the APS subunit from the round 2 and one of the 20 APSs used in round 1 in a statistically equal distribution. Thus, in round two within each individual tube mixture all polymers are extended by the addition of the same APS. The process is repeated as needed. The epitope/barcode along with linked cell origin signature is read by any methods known in the art including the ones described herein.

The number of split pool rounds required is defined by the number of cells in an assay and a statistical estimate of what would give an over-representation of the number of tags that ensure unique COB for each cell. This is given by the following equation: Number of tags required is $\ln(1\text{-}C)/\ln(1\text{-}1/N)$ where C=certainty of over-representation and N=number of cells Thus, if you have 1 million cells, and you want 99.9% certainty of tag uniqueness, you need:

$$\ln(0.001)/\ln(1-1/10^6)=6,907,751$$

or approximately 7 million tags. In various embodiments, a high certainty of tag uniqueness ensures a high statistical significance for identification of cells/particles as distinct entities. Without being bound by theory, a high certainty of tag uniqueness provides for a high likelihood that two identical COB labels originated from the same cell/particle.

RSS_00082808

US 10,982,256 B2

37

However, for $10^6$ cells, 7 million tags means 1000 cell pairs could be labeled as the "same" cell. Therefore, to have only a I in 10 chance there is a SINGLE pair of duplicate cells, the equation should be set to 99.99999%

$$\ln(1-0.9999999)/\ln(1-1/10^6){=}16{,}118{,}087$$

Thus requiring 16-fold more tags than cells.

To determine the number of rounds given a given number of subunits for barcode creation:

$$x^y{=}T \text{ gives } y{=}\ln(T)/\ln(x)$$

If you had 20 subunits, for $1.7{\times}10^7$ tags you need the following APS addition cycles:

$$\ln(17{,}000{,}000)/\ln(20){=}5.557$$

This can be round up to 6 APS addition cycles.

If you had 100 subunits, you would need only 3.6 rounds, or round-up to 4 APS addition cycles.

Thus, in some embodiments, the invention provides methods for tagging target molecules within cells indirectly with an ESB. The cell population is treated in a split pool synthesis approach that appends to the epitope specific barcode a second signature that indicates the cell of origin, or a cell origin barcode. UBAs can be antibodies, diabodies, etc. for proteins, or anti-sense DNA tags for RNA and DNA for nudeic acids. ESB can be nudeic acids readable by high throughput sequencing approaches or chemical subunits assayable by mass spectrometry approaches. COBs can be nucleic acids readable by high throughput sequencing approaches or chemical subunits assayable by mass spectrometry approaches.

The APS can be specific strands of DNA or DNA-mimics. The APSs can be linked via ligase. Example of enzymes that can be used for ligation include but are not limited to DNA ligase, and RNA ligase such as T4 DNA ligase, T4 RNA ligase, *Thermus thermophilus* (Tth) ligase, *Thermus aquaticus* (Taq) DNA ligase, or *Pyrococcus furiosus* (Pfu) ligase. Chemical ligation can be performed using activating and reducing agents such as carbodiimide, cyanogen bromide (BrCN), imidazole, I-methylimidazole/carbodiimide/cystamine, Ncyanoimidazole, dithiothreitol (DTT) and ultraviolet light. Also within the scope of the invention are ligation techniques such as gap-filling ligation, including, without limitation, gap filling OLA and LCR, bridging oligonucleotide ligation, and correction ligation. Descriptions of these techniques can be found, among other places, in U.S. Pat. No. 5,185,243, published European Patent Applications EP 320308 and EP 439182, and PCT Publication Nos. WO 90/01069 and WO 01/57268. The APSs can be extended via polymerases.

These APS subunits can be detected via full sequencing of all DNA tags by any suitable methods known in the art, e.g., Illumina HiSeq 2000, including the sequencing methods described herein.

The APS can be small molecules as per combinatorial synthesis procedures or buildable complex molecules of deterministic weights. These subunits can be detected via mass spectrometry.

Thus in some embodiments, the cell-specific information is assembled via a UBA (barcode for the epitope to be recognized) as linked to its associated COB (from which cell the information originated) (See FIG. **5**).

In some embodiments, the UBA/ESB/COB complexes are isolated via a capture region as described herein. In some embodiments, the capture region is uses for the immobilization of the UBA/ESB/COB complexes into a surface.

38

In some embodiments, the information on UBAs can be amplified prior to the then COB procedure (split pool) with any suitable amplification technique known in the art, including the ones described herein such branch chain or rolling circle approaches.

In some embodiments, error correction & detection can be encoded into subunits. The general idea for achieving error detection and correction is to add some redundancy (i.e., some extra data) to a message, which receivers can use to check consistency of the delivered message, and to recover data determined to be erroneous. Error-detection and correction schemes can be either systematic or non-systematic: In a systematic scheme, the transmitter sends the original data, and attaches a fixed number of check bits (or parity data), which are derived from the data bits by some deterministic algorithm. If only error detection is required, a receiver can simply apply the same algorithm to the received data bits and compare its output with the received check bits; if the values do not match, an error has occurred at some point during the transmission. In a system that uses a non-systematic code, the original message is transformed into an encoded message that has at least as many bits as the original message. Error detection and correction schemes include repetition codes, parity bits, checksums, cyclic redundancy checks (CRCs), cryptographic hash functions, error-correcting codes, automatic repeat request, Hybrid ARQ, error-correcting code, convolutional codes, block codes such as hamming codes, multidimensional parity-check codes, Reed-Solomon codes, turbo codes and low-density parity check codes (LDPC).

In some embodiments, the chains at each round are blocked from further addition if polymers did not add. This could be accomplished with DNA as polymer units if each round one uses different overhangs for complementary additions. In some embodiments, the epitope/barcode along with linked cell origin signature is read by sequencing using methods known in the art, including the ones described herein. The sensitivity for the sequencing approach assuming that each 100 bp read represents an ESB-COB pair is as follows for target proteins. The protein copy numbers of molecules of interest range from 100 to 100,000. Assuming that one will want to read 100 proteins with the following rough distribution:

|  | Test 1 proteins | Test 1 reads | Test 2 proteins | Test 2 reads |
|---|---|---|---|---|
| 100 copies | 20 |  | 20 |  |
| 500 copies | 20 |  | 20 |  |
| 1000 copies | 20 |  | 20 |  |
| 10000 copies | 20 | 5 | 40 | 5 |
| 100000 copies | 20 |  | 0 |  |

In Test 1 one will need to be able to read 2,232,000 sequences per cell then to access all 100 proteins in a cell. Using a sequencing technique that can do $2{\times}10^9$ reads such as Illumina HiSeq 2000, this means the approach can read 100 proteins in 1000 cells. However, if one limits the high copy number proteins by avoiding them altogether or "capping" their representation by normalization (several approaches can work for this), we can increase the cell number accessible. Say one therefore normalize and cap the 100,000 copies to a 10,000 copy limit (Test 2), then the total number of reads is 432,000. That is one can read 100 proteins in ~5000 cells.

For mRNA the numbers are different, since RNAs are typically expressed much lower. The RNA copy numbers of

RSS_00082809

US 10,982,256 B2

39

40

molecules of interest range from 5 to 1000 (based on Lewin's Essential Genes numbers); not counting specialized mRNAs for high protein production like actin or 1g. Thus, assuming one wants to read 100 mRNAs with the following rough distribution:

|  | Test 1 mRNAs | Test 1 reads |
|---|---|---|
| 5 copies | 60 | 300 |
| 50 copies | 20 | 1000 |
| 100 copies | 10 | 1000 |
| 1000 copies | 10 | 10000 |

In Test I one needs to be able to read 12,300 sequences per cell to access all 100 mRNAs in a cell. Using a sequencing technique that can do $2 \times 10^9$ reads such as Illumina HiSeq 2000, this means the approach can read 100 mRNAs in 162,000 cells. This is equivalent to a high parameter flow cytometry run. 200 mRNAs with the same distribution could scale linearly to be read in 40,000 cells.

As it will be evident to those skilled in the art increasing the number of reads will increase the cell number and parameters accessible (e.g., mRNAs or proteins).

Any of the embodiments described herein can be used in the detection of multiple target molecules. In some embodiments, the invention provides methods comprising UBA for the analysis of target molecules. In some embodiments, the invention provides a UBA population for use in a multiplexed assay. Each UBA in the population is specific for a target molecule. The binding of the target molecules to the UBAs is then detected using ESB-COB pairs. Each ESB-COB pair comprises a unique label code that can be associated to a specific target molecule and the cell of origin as described herein.

In some embodiments, the detection of the ESB-COB as described below is digital in nature in that one molecule at a time is counted. While fluorescence is used to read the code, the signals are high and the spot is either present or not, thus the digital detection. Using digital detection rather than an analogue fluorescent signal used to quantify signal leads to more accurate quantification. Thus the methods described herein allows for multiplexing to levels beyond currently possible, for more accurate quantification, and possibly higher sensitivity.

Biomolecular Samples

The UBA and ESB/COB systems of the invention can be used to detect target molecules in any biomolecular sample. As will be appreciated by those in the art, the sample may comprise any number of things, including, but not limited to: biological samples, such as cells (including both primary cells and cultured cell lines), cell lysates, or extracts, tissues and tissue extracts; bodily fluids (including, but not limited to, blood, urine, serum, lymph, bile, cerebrospinal fluid, interstitial fluid, aqueous or vitreous humor, colostrum, sputum, amniotic fluid, saliva, anal and vaginal secretions, perspiration and semen, a transudate, an exudate (e.g., fluid obtained from an abscess or any other site of infection or inflammation) or fluid obtained from a joint (e.g., a normal joint or a joint affected by disease such as rheumatoid arthritis, osteoarthritis, gout or septic arthritis) of virtually any organism, with mammalian samples being preferred and human samples being particularly preferred; environmental samples (including, but not limited to, air, agricultural, water and soil samples); biological warfare agent samples; research samples including extracellular fluids, extracellular

supernatants from cell cultures, inclusion bodies in bacteria, cellular compartments, cellular periplasm, mitochondria compartment, etc.

The biomolecular samples can be indirectly derived from biological specimens. For example, where the target molecule of interest is a protein kinase the biomolecular sample of the invention can be a sample containing isolated proteins from a cell lysate. In another example, the biomolecular sample of the invention is generated by subjecting a biological specimen to fractionation, e.g., size fractionation or membrane fractionation.

Protein isolation techniques are also well known in the art and kits employing at least some of these techniques are commercially available. Protein isolation techniques typically employ one or more of the following: maceration and cell lysis, including physical, chemical and enzymatic methods; centrifugation; separations by molecular weight, such as size exclusion chromatography and preparative electrophoresis; selective precipitation, for example, salting-in and salting-out procedures; various chromatographic methods; and the like. Detailed descriptions of and relevant protocols for protein purification techniques can be found in, among other places, Marchak et al., Strategies for Protein Purification and Characterization: A Laboratory Course Manual, Cold Spring Harbor Press (1996); Essentials from Cells: A Laboratory Manual, D. Spector and R. Goldman, eds., Cold Spring Harbor Press (2003); R. Simpson, Proteins and Proteomics: A Laboratory Manual, Cold Spring Harbor Press (2003); and D. Liebler, Introduction to Proteomics, Humana Press (2002). Commercially available kits can also be used, for example but not limited to, ProteoExtract™ Partial Proteome Extraction Kits (P-PEK) and ProteoExtract™ Complete Proteome Extraction Kits (C-PEK), available from CALBIOCHEM®, La Jolla, Calif. The skilled artisan will appreciate that non-nucleic acid analytes for use with the inventive compositions, methods, and kits can be readily obtained without undue experimentation using such purification techniques and commercial kits

The biomolecular samples of the invention may be either native, e.g., not subject to manipulation or treatment, or treated, which can include any number of treatments, including exposure to candidate agents including drugs, genetic engineering (e.g., the addition or deletion of a gene), etc.

Biomolecular samples may also include environmental samples, such as those containing bacteria or other organisms, such as diatoms, dinoflagellates, algae, among others, such as in certain marine or earth-based samples.

Detection of COBs

COBs/ESB complexes are detected by any means available in the art that is capable of detecting the specific sequences or signals on a given COBs/ESB complex.

In some embodiments, the information on the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof can be amplified. Amplification can be performed by any means known in the art. In some cases, the information on the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof are amplified by polymerase chain reaction (PCR). Examples of PCR techniques that can be used include, but are not limited to, quantitative PCR, quantitative fluorescent PCR (QF-PCR), multiplex fluorescent PCR (MF-PCR), real time PCR (RT-PCR), single cell PCR, restriction fragment length polymorphism PCR (PCR-RFLP), PCR-RFLP/RT-PCR-RFLP, hot start PCR, nested PCR, in situ polony PCR, in situ rolling circle amplification (RCA), bridge PCR, picotiter PCR and emulsion PCR. Other suitable amplifica-

RSS_00082810

US 10,982,256 B2

41

tion methods include the ligase chain reaction (LCR), transcription amplification, self-sustained sequence replication, selective amplification of target polynucleotide sequences, consensus sequence primed polymerase chain reaction (CP-PCR), arbitrarily primed polymerase chain reaction (AP-PCR), degenerate oligonucleotide-primed PCR (DOP-PCR) and nucleic acid based sequence amplification (NABSA). Other amplification methods that can be used herein include those described in U.S. Pat. Nos. 5,242,794; 5,494,810; 4,988,617; and 6,582,938. In any of the embodiments, amplification of the information on the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof may occur on a bead. In any of the embodiments herein, target nucleic acids may be obtained from a single cell.

In any of the embodiments herein, the information on the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof can be pre-amplified prior to the amplification step (e.g., PCR).

In some embodiments the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof are quantified. Methods for quantifying nucleic acids are known in the art and include, but are not limited to, gas chromatography, supercritical fluid chromatography, liquid chromatography (including partition chromatography, adsorption chromatography, ion exchange chromatography, size exclusion chromatography, thin-layer chromatography, and affinity chromatography), electrophoresis (including capillary electrophoresis, capillary zone electrophoresis, capillary isoelectric focusing, capillary electrochromatography, micellar electrokinetic capillary chromatography, isotachophoresis, transient isotachophoresis and capillary gel electrophoresis), comparative genomic hybridization (CGH), microarrays, bead arrays, and high-throughput genotyping such as with the use of molecular inversion probe (MIP).

Quantification of the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof can be used to determine gene/or allele copy number, gene or exon-level expression, methylation-state analysis, or detect a novel transcript in order to diagnose or condition, i.e. fetal abnormality or cancer.

In some embodiments the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof are sequenced. Sequencing can be accomplished through classic Sanger sequencing methods which are well known in the art. Sequence can also be accomplished using high-throughput systems some of which allow detection of a sequenced nucleotide immediately after or upon its incorporation into a growing strand, i.e., detection of sequence in real time or substantially real time. In some cases, high throughput sequencing generates at least 1,000, at least 5,000, at least 10,000, at least 20,000, at least 30,000, at least 40,000, at least 50,000, at least 100,000 or at least 500,000 sequence reads per hour; with each read being at least 50, at least 60, at least 70, at least 80, at least 90, at least 100, at least 120 or at least 150 bases per read.

In some embodiments, high-throughput sequencing involves the use of technology available by Illumina's HiSeq 2000 machine. This machine uses reversible terminator-based sequencing by synthesis chemistry. This machine can do 200 billion DNA reads in eight days.

In some embodiments, high-throughput sequencing involves the use of technology available by ABI Solid

42

System. This genetic analysis platform that enables massively parallel sequencing of clonally-amplified DNA fragments linked to beads. The sequencing methodology is based on sequential ligation with dye-labeled oligonucleotides.

In some embodiments, high-throughput sequencing involves the use of technology available by Ion Torrent Personal Genome Machine (PMG). The PGM can do 10 million reads in two hours.

In some embodiments, high-throughput sequencing involves the use of technology available by Helicos BioSciences Corporation (Cambridge, Mass.) such as the Single Molecule Sequencing by Synthesis (SMSS) method. SMSS is unique because it allows for sequencing the entire human genome in up to 24 hours. Finally, SMSS is described in part in US Publication Application Nos. 20060024711; 20060024678; 20060012793; 20060012784; and 20050100932.

In some embodiments, high-throughput sequencing involves the use of technology available by 454 Life Sciences, Inc. (Branford, Conn.) such as the PicoTiterPlate device which includes a fiber optic plate that transmits chemiluminescent signal generated by the sequencing reaction to be recorded by a CCD camera in the instrument. This use of fiber optics allows for the detection of a minimum of 20 million base pairs in 4.5 hours. 1002021 Methods for using bead amplification followed by fiber optics detection are described in Marguiles, M., et al. "Genome sequencing in microfabricated high-density pricolitre reactors", Nature, doi: 10.1038/nature03959; and well as in US Publication Application Nos. 20020012930; 20030068629; 20030100102; 20030148344; 20040248161; 20050079510, 20050124022; and 20060078909.

In some embodiments, high-throughput sequencing is performed using Clonal Single Molecule Array (Solexa, Inc.) or sequencing-by-synthesis (SBS) utilizing reversible terminator chemistry. These technologies are described in part in U.S. Pat. Nos. 6,969,488; 6,897,023; 6,833,246; 6,787,308; and US Publication Application Nos. 20040106110; 20030064398; 20030022207; and Constans, A., The Scientist 2003, 17:13.

In some embodiments, high-throughput sequencing can take place using AnyDot.chips (Genovoxx, Germany). In particular, the AnyDot.chips allow for 10×-50× enhancement of nucleotide fluorescence signal detection. AnyDot.chips and methods for using them are described in part in International Publication Application Nos. WO 02088382, WO 03020968, WO 03031947, WO 2005044836, PCT/EP 05/05657, PCT/EP 05/05655; and German Patent Application Nos. DE 101 49 786, DE 102 14 395, DE 103 56 837, DE 10 2004 009 704, DE 10 2004 025 696, DE 10 2004 025 746, DE 10 2004 025 694, DE 10 2004 025 695, DE 10 2004 025 744, DE 10 2004 025 745, and DE 10 2005 012 301.

Other high-throughput sequencing systems include those disclosed in Venter, J., et al. Science 16 Feb. 2001; Adams, M. et al. Science 24 Mar. 2000; and M. J. Levene, et al. Science 299:682-686, January 2003; as well as US Publication Application No. 20030044781 and 2006/0078937. Overall such system involves sequencing a target nucleic acid molecule having a plurality of bases by the temporal addition of bases via a polymerization reaction that is measured on a molecule of nucleic acid, i.e. the activity of a nucleic acid polymerizing enzyme on the template nucleic acid molecule to be sequenced is followed in real time. Sequence can then be deduced by identifying which base is being incorporated into the growing complementary strand

RSS_00082811

US 10,982,256 B2

43

of the target nucleic acid by the catalytic activity of the nucleic acid polymerizing enzyme at each step in the sequence of base additions. A polymerase on the target nucleic acid molecule complex is provided in a position suitable to move along the target nudeic acid molecule and extend the oligonucleotide primer at an active site. A plurality of labeled types of nucleotide analogs are provided proximate to the active site, with each distinguishable type of nucleotide analog being complementary to a different nucleotide in the target nucleic acid sequence. The growing nudeic acid strand is extended by using the polymerase to add a nucleotide analog to the nucleic acid strand at the active site, where the nucleotide analog being added is complementary to the nucleotide of the target nucleic acid at the active site. The nucleotide analog added to the oligo-nucleotide primer as a result of the polymerizing step is identified. The steps of providing labeled nucleotide analogs, polymerizing the growing nudeic acid strand, and identifying the added nucleotide analog are repeated so that the nucleic acid strand is further extended and the sequence of the target nucleic acid is determined.

In some embodiments, sequence analysis of the UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof may include a. four-color sequencing by ligation scheme (degenerate ligation), which involves hybridizing an anchor primer to one of four positions. Then an enzymatic ligation reaction of the anchor primer to a population of degenerate nonamers that are labeled with fluorescent dyes is performed. At any given cycle, the population of nonamers that is used is structure such that the identity of one of its positions is correlated with the identity of the fluorophore attached to that nonamer. To the extent that the ligase discriminates for complementarity at that queried position, the fluorescent signal allows the inference of the identity of the base. After performing the ligation and four-color imaging, the anchor primer:nonamer complexes are stripped and a new cycle begins. Methods to image sequence information after performing ligation are known in the art.

One or more UBA, ESB, COB, UBA/ESB complexes, UBA/ESB/COB complexes COB/ESB complexes and/or a combination thereof complexes can be detected and/or quantified by any method that detects and/or quantifies the presence of the assembled detection complex of interest. Such methods may include radioimmunoassay (RIA) or enzyme linked immunoabsorbance assay (ELISA), immunohistochemistry, immunofluorescent histochemistry with or without confocal microscopy, Raman spectroscopy, X-ray autoradiography, X-ray radiography, luminescence spectrometry, reversed phase assays, homogeneous enzyme immunoassays, and related non-enzymatic techniques, Western blots, whole cell staining, immunoelectron microscopy, nucleic acid amplification, gene array, protein array, mass spectrometry, patch clamp, 2-dimensional gel electrophoresis, differential display gel electrophoresis, microsphere-based multiplex protein assays, label-free cellular assays and flow cytometry, etc. U.S. Pat. No. 4,568,649 describes ligand detection systems, which employ scintillation counting. These techniques are particularly useful for modified protein parameters. Cell readouts for proteins and other cell determinants can be obtained using fluorescent or otherwise tagged reporter molecules. Microscopy methods are useful for measuring parameters in a morphological context. Flow cytometry methods are useful for measuring intracellular parameters.

When using fluorescent labeled components in the methods and compositions of the present invention, it will be

44

recognized that different types of fluorescent monitoring systems, e.g., Cytometric measurement device systems, can be used to practice the invention. In some embodiments, flow cytometric systems are used or systems dedicated to high throughput screening, e.g. 96 well or greater microtiter plates, e.g., Lakowicz, J. R., Principles of Fluorescence Spectroscopy, New York: Plenum Press (1 983); Herman, B. Resonance energy transfer microscopy, in: Fluorescence Microscopy of Living Cells in Culture, Part B, Methods in Cell Biology, vol. 30, ed. Taylor, D. L. & Wang, Y.-L., San Diego: Academic Press (1989), pp. 219-243; Turro, N. J., Modern Molecular Photochemistry, Menlo Park: Benjamin/ Cummings Publishing Col, Inc. (1978), pp. 296-361. Where the COBs/ESB complex is fluorescently labeled, suitable consideration of appropriate excitation sources may be investigated. Possible sources may include but are not limited to arc lamp, xenon lamp, lasers, light emitting diodes or some combination thereof. The appropriate excitation source is used in conjunction with an appropriate optical detection system, for example an inverted fluorescent microscope, an epifluorescent microscope or a confocal microscope. Preferably, a microscope is used that can allow for detection with enough spatial resolution to determine the sequence of the spots on the COB/ESB complexes. If for example, the COB/ESB complexes are labeled with three different colors, Alexa 488, Cy3 and Alexa 647 (labeled 1, 2 and 3, respectively). Colors 1, 2 and 3 are each acquired in different channels and the first and second registers, which can be seen as rows of spots, are shifted up by several pixels to be able to show each register individually. Examples of methods for detection of multiple colors that can be used in the methods of the invention are described in U.S. Pat. No. 7,473,767, US patent publication no. 2007/0166708, U.S. application Ser. No. 11/645,270, and PCT application no U.S. Ser. No. 06/049,274, incorporated by reference herein in its entirety.

Fluorescence in a sample can be measured using a fluorimeter. Other methods of detecting fluorescence may also be used, e.g., Quantum dot methods (see, e.g., Goldman et al., J. Am. Chem. soc. (2002) 124:6378-82, Pathak et al. J. Am. Chem. soc. (2001) 123:4103-4, and Remade et al., Proc. Natl. Sci. USA (2000) 18:553-8, each expressly incorporated herein by reference) as well as confocal microscopy.

In some embodiments, a FACS cell sorter (e.g. a FACS-Vantage™, LSRII, or Canto Cell Sorter, Becton Dickinson Immunocytometry Systems, San Jose, Calif.) is used to sort and collect cells based on the presence or absence of an COB/ESB complex. By imparting an electromagnetic charge to droplets containing the positive cells, the cells can be separated from other cells. The positively selected cells can then be harvested in sterile collection vessels. These cell-sorting procedures are described in detail, for example, in the FACS Vantage™. Training Manual, with particular reference to sections 3-11 to 3-28 and 10-1 to 10-17, which is hereby incorporated by reference in its entirety for the above instruments.

In another embodiment, positive cells can be sorted using magnetic separation of cells based on the presence of a COB/ESB complex. In such separation techniques, cells to be positively selected are first contacted with a COB/ESB complex comprising retrievable particles (e.g., magnetically responsive particles). The cell can then be physically separated from nonpositive or non-labeled cells, for example, using a magnetic field. When using magnetically responsive particles, the positive or labeled cells can be retained in a container using a magnetic field while the negative cells are removed. These and similar separation procedures are

RSS_00082812

US 10,982,256 B2

45

described, for example, in the Baxter Immunotherapy Isolex training manual which is hereby incorporated in its entirety.

In some embodiments, one or more cells are contained in a well of a 96 well plate or other commercially available multi-well plate. In an alternate embodiment, the reaction mixture or cells are in a cytometric measurement device. Other multi-well plates useful in the present invention include, but are not limited to 384 well plates and 1536 well plates. Still other vessels for containing the reaction mixture or cells and useful in the present invention will be apparent to the skilled artisan.

In some embodiments, the abundance of a COB/ESB complex is measured using Inductively Coupled Plasma Mass Spectrometer (ICP-MS). A UBA that has been labeled with a specific element binds to the COB/ESB complex. When the cell is introduced into the ICP, it is atomized and ionized. The elemental composition of the cell, including the COB/ESB complex, is measured. The presence and intensity of the signals corresponding to the labels on the COB/ESB complex indicates the abundance of the COB/ESB complexes on that cell (Tanner et al. Spectrochimica Acta Part B: Atomic Spectroscopy, (2007), 62(3): 188-195.).

In some embodiments the 'flow cytometer' is a microfluidic device where the cell measurements, or some of the measurements of the cell's contents, are carried out in channels devised to direct cells past detection devices in parallel sets of multiple channels. See U.S. Pat. Nos. 7,378,280, 7,294,503: 7,294,298; and 6,830,936.

In some embodiments the cells, or some portion of their contents, are sonically encapsulated within individual droplets of liquid and interrogated with detection devices designed to measure each individual droplet's characteristics and the materials within such droplets.

Flexible hardware and software allows instrument adaptability for multiple applications. The software program modules allow creation, modification, and running of methods. The system diagnostic modules allow instrument alignment, correct connections, and motor operations. Customized tools, labware, and liquid, particle, cell and organism transfer patterns allow different applications to be performed. Databases allow method and parameter storage. Robotic and computer interfaces allow communication between instruments.

In some embodiments, the methods of the invention include the use of liquid handling components. The liquid handling systems can include robotic systems comprising any number of components. In addition, any or all of the steps outlined herein may be automated; thus, for example, the systems may be completely or partially automated.

As will be appreciated by those in the art, there are a wide variety of components which can be used, including, but not limited to, one or more robotic arms; plate handlers for the positioning of microplates; automated lid or cap handlers to remove and replace lids for wells on non-cross contamination plates; tip assemblies for sample distribution with disposable tips; washable tip assemblies for sample distribution; 96 well loading blocks; cooled reagent racks; microtiter plate pipette positions (optionally cooled); stacking towers for plates and tips; and computer systems.

Fully robotic or microfluidic systems include automated liquid-, particle-, cell and organism-handling including high throughput pipetting to perform all steps of screening applications. This includes liquid, particle, cell, and organism manipulations such as aspiration, dispensing, mixing, diluting, washing, accurate volumetric transfers; retrieving, and discarding of pipet tips; and repetitive pipetting of identical volumes for multiple deliveries from a single sample aspi-

46

ration. These manipulations are cross-contamination-free liquid, particle, cell, and organism transfers. This instrument performs automated replication of microplate samples to filters, membranes, and/or daughter plates, high-density transfers, full-plate serial dilutions, and high capacity operation.

In some embodiments, chemically derivatized particles, plates, cartridges, tubes, magnetic particles, or other solid phase matrix with specificity to the assay components are used. The binding surfaces of microplates, tubes or any solid phase matrices include non-polar surfaces, highly polar surfaces, modified dextran coating to promote covalent binding, antibody coating, affinity media to bind fusion proteins or peptides, surface-fixed proteins such as recombinant protein A or G, nucleotide resins or coatings, and other affinity matrix are useful in this invention.

In some embodiments, platforms for multi-well plates, multi-tubes, holders, cartridges, minitubes, sonic levitation and encapsulation, deep-well plates, microfuge tubes, cryovials, square well plates, filters, chips, microchannel chips, microfluidics chips, optic fibers, beads, and other solid-phase matrices or platform with various volumes are accommodated on an upgradeable modular platform for additional capacity. This modular platform includes a variable speed orbital shaker, and multi-position work decks for source samples, sample and reagent dilution, assay plates, sample and reagent reservoirs, pipette tips, and an active wash station—In some embodiments, the methods of the invention include the use of a plate reader.

In some embodiments, thermocycler and thermoregulating systems are used for stabilizing the temperature of heat exchangers such as controlled blocks or platforms to provide accurate temperature control of incubating samples from 0° C. to 100° C.

In some embodiments, interchangeable pipet heads (single or multi-channel) with single or multiple magnetic probes, affinity probes, or pipetters robotically manipulate the liquid, particles, cells, and organisms. Multi-well or multi-tube magnetic separators or platforms manipulate liquid, particles, cells, and organisms in single or multiple sample formats.

In some embodiments, the instrumentation will include a detector, which can be a wide variety of different detectors, depending on the labels and assay. In some embodiments, useful detectors include a microscope(s) with multiple channels of fluorescence; plate readers to provide fluorescent, ultraviolet and visible spectrophotometric detection with single and dual wavelength endpoint and kinetics capability, fluorescence resonance energy transfer (FRET), luminescence, quenching, two-photon excitation, and intensity redistribution; CCD cameras to capture and transform data and images into quantifiable formats; and a computer workstation.

In some embodiments, the robotic apparatus includes a central processing unit which communicates with a memory and a set of input/output devices (e.g., keyboard, mouse, monitor, printer, etc.) through a bus. Again, as outlined below, this may be in addition to or in place of the CPU for the multiplexing devices of the invention. The general interaction between a central processing unit, a memory, input/output devices, and a bus is known in the art. Thus, a variety of different procedures, depending on the experiments to be run, are stored in the CPU memory.

These robotic fluid handling systems can utilize any number of different reagents, including buffers, reagents, samples, washes, assay components such as label probes, etc.

RSS_00082813

US 10,982,256 B2

47

Applications for Target Molecule Detection

The compositions and methods of the invention can be used for diagnostic, prognostic, therapeutic, patient stratification, drug development, treatment selection, and screening purposes. The present invention provides the advantage that many different target molecules can be analyzed at one time from a single biomolecular sample using the methods of the invention. This allows, for example, for several diagnostic tests to be performed on one sample.

The composition and methods of the invention can be used in proteomics. The methods described herein will typically provide an answer rapidly which is very desirable for this application. The methods and composition described herein can be used in the process of finding biomarkers that may be used for diagnostics or prognostics and as indicators of health and disease. The methods and composition described herein can be used to screen for drugs, e.g., drug development, selection of treatment, determination of treatment efficacy and/or identify targets for pharmaceutical development. The ability to test protein expression on screening assays involving drugs is very important because proteins are the final gene product in the body. In some embodiments, the methods and compositions described herein will measure both protein and gene expression simultaneously which will provide the most information regarding the particular screening being performed.

The composition and methods of the invention can be used in gene expression analysis. The methods described herein discriminate between nucleotide sequences. The difference between the target nucleotide sequences can be, for example, a single nucleic acid base difference, a nucleic acid deletion, a nucleic acid insertion, or rearrangement. Such sequence differences involving more than one base can also be detected. In some embodiments, the UBAs, e.g., oligonucleotide probe, have substantially the same length so that they hybridize to target nucleotide sequences at substantially similar hybridization conditions. As a result, the process of the present invention is able to detect infectious diseases, genetic diseases, and cancer. It is also useful in environmental monitoring, forensics, and food science. Examples of genetic analyses that can be performed on nucleic acids include e-g., SNP detection, STR detection, RNA expression analysis, promoter methylation, gene expression, virus detection, viral subtyping and drug resistance.

The present methods can be applied to the analysis of biomolecular samples obtained or derived from a patient so as to determine whether a diseased cell type is present in the sample, the stage of the disease, the prognosis for the patient, the ability to the patient to respond to a particular treatment, or the best treatment for the patient. The present methods can also be applied to identify biomarkers for a particular disease.

In some embodiments, the methods described herein are used in the diagnosis of a condition. As used herein the term "diagnose" or "diagnosis" of a condition includes predicting or diagnosing the condition, determining predisposition to the condition, monitoring treatment of the condition, diagnosing a therapeutic response of the disease, and prognosis of the condition, condition progression, and response to particular treatment of the condition. For example, a blood sample can be assayed according to any of the methods described herein to determine the presence and/or quantity of markers of a disease or malignant cell type in the sample, thereby diagnosing or staging the disease or a cancer.

In some embodiments, the methods and composition described herein are used for the diagnosis and prognosis of a condition.

48

Numerous immunologic, proliferative and malignant diseases and disorders are especially amenable to the methods described herein. Immunologic diseases and disorders include allergic diseases and disorders, disorders of immune function, and autoimmune diseases and conditions. Allergic diseases and disorders include but are not limited to allergic rhinitis, allergic conjunctivitis, allergic asthma, atopic eczema, atopic dermatitis, and food allergy. Immunodeficiencies include but are not limited to severe combined immunodeficiency (SCID), hypereosinophilic syndrome, chronic granulomatous disease, leukocyte adhesion deficiency I and II, hyper IgE syndrome, Chediak Higashi, neutrophilias, neutropenias, aplasias, Agammaglobulinemia, hyper-IgM syndromes, DiGeorge/Velocardial-facial syndromes and Interferon gamma-THI pathway defects. Autoimmune and immune dysregulation disorders indude but are not limited to rheumatoid arthritis, diabetes, systemic lupus erythematosus, Graves' disease, Graves ophthalmopathy, Crohn's disease, multiple sclerosis, psoriasis, systemic sclerosis, goiter and struma lymphomatosa (Hashimoto's thyroiditis, lymphadenoid goiter), alopecia aerata, autoimmune myocarditis, lichen sclerosis, autoimmune uveitis, Addison's disease, atrophic gastritis, myasthenia gravis, idiopathic thrombocytopenic purpura, hemolytic anemia, primary biliary cirrhosis, Wegener's granulomatosis, polyarteritis nodosa, and inflammatory bowel disease, allograft rejection and tissue destructive from allergic reactions to infectious microorganisms or to environmental antigens.

Proliferative diseases and disorders that may be evaluated by the methods of the invention indude, but are not limited to, hemangiomatosis in newborns; secondary progressive multiple sclerosis; chronic progressive myelodegenerative disease; neurofibromatosis; ganglioneuromatosis; keloid formation; Paget's Disease of the bone; fibrocystic disease (e.g., of the breast or uterus); sarcoidosis; Peronics and Duputren's fibrosis, cirrhosis, atherosclerosis and vascular restenosis.

Malignant diseases and disorders that may be evaluated by the methods of the invention indude both hematologic malignancies and solid tumors.

Hematologic malignancies are especially amenable to the methods of the invention when the sample is a blood sample, because such malignancies involve changes in blood-borne cells. Such malignancies indude non-Hodgkin's lymphoma, Hodgkin's lymphoma, non-B cell lymphomas, and other lymphomas, acute or chronic leukemias, polycythemias, thrombocythemias, multiple myeloma, myelodysplastic disorders, myeloproliferative disorders, myelofibroses, atypical immune lymphoproliferations and plasma. cell disorders.

Plasma cell disorders that may be evaluated by the methods of the invention include multiple myeloma, amyloidosis and Waldenstrom's macroglobulinemia.

Example of solid tumors include, but are not limited to, colon cancer, breast cancer, lung cancer, prostate cancer, brain tumors, central nervous system tumors, bladder tumors, melanomas, liver cancer, osteosarcoma and other bone cancers, testicular and ovarian carcinomas, head and neck tumors, and cervical neoplasms.

Genetic diseases can also be detected by the process of the present invention. This can be carried out by prenatal or post-natal screening for chromosomal and genetic aberrations or for genetic diseases. Examples of detectable genetic diseases include: 21 hydroxylase deficiency, cystic fibrosis, Fragile X Syndrome, Turner Syndrome, Duchenne Muscular Dystrophy, Down Syndrome or other trisomies, heart disease, single gene diseases, I-ILA typing, phenylketonuria,

RSS_00082814

US 10,982,256 B2

49

sickle cell anemia, Tay-Sachs Disease, thalassemia, Klinefelter Syndrome, Huntington Disease, autoimmune diseases, lipidosis, obesity defects, hemophilia, inborn errors of metabolism, and diabetes.

The methods described herein can be used to diagnose pathogen infections, for example infections by intracellular bacteria and viruses, by determining the presence and/or quantity of markers of bacterium or virus, respectively, in the sample.

A wide variety of infectious diseases can be detected by the process of the present invention. Typically, these are caused by bacterial, viral, parasite, and fungal infectious agents. The resistance of various infectious agents to drugs can also be determined using the present invention.

Bacterial infectious agents which can be detected by the present invention include *Escherichia coli, Salmonella, Shigella, Klebsiella Pseudomonas, Listeria monocytogenes, Mycobacterium tuberculosis, Mycobacterium aviumintracellulare, Yersinia, Francisella, Pasteurella, Brucella, Clostridia, Bordetella pertussis, Bacteroides, Staphylococcus aureus, Streptococcus pneumonia*, B-Hemolytic strep. *Corynebacteria, Legionella, Mycoplasma, Ureaplasma, Chlamydia, Neisseria gonorrhea, Neisseria meningitides, Hemophilus influenza, Enterococcus faecalis, Proteus vulgaris, Proteus mirabilis, Helicobacter pylori, Treponema pallidum, Borrelia burgdorferi, Borrelia recurrentis, Rickettsial pathogens, Nocardia*, and *Acitnomycetes.*

Fungal infectious agents which can be detected by the present invention indude *Cryptococcus neoformans, Blastomyces dermatitidis, Histoplasma capsulatum, Coccidioides immitis, Paracoccidioides brasiliensis, Candida albicans, Aspergillus fumigautus, Phycomycetes, (Rhizopus), Sporothrix schenckii, Chromomycosis*, and *Maduromycosis.*

Viral infectious agents which can be detected by the present invention indude human immunodeficiency virus, human T-cell lymphocytotrophic virus, hepatitis viruses (e.g., Hepatitis B Virus and Hepatitis C Virus), Epstein-Barr Virus, cytomegalovirus, human papillomaviruses, orthomyxo viruses, paramyxo viruses, adenoviruses, corona viruses, rhabdo viruses, polio viruses, toga viruses, bunya viruses, arena viruses, rubella viruses, and reo viruses.

Parasitic agents which can be detected by the present invention include *Plasmodium falciparum, Plasmodium malaria, Plasmodium vivax, Plasmodium ovale, Onchoverva volvulus, Leishmania, Trypanosoma* spp., *Schistosoma* spp., *Entamoeba histolytica, Cryptosporidium, Giardia* spp., *Trichimonas* spp., *Balatidium coli, Wuchereria bancrofti, Toxoplasma* spp., *Enterobius vermicularis, Ascaris lumbricoides, Trichuris trichiura, Dracunculus medinesis, trematodes, Diphyllobothrium latum, Taenia* spp., *Pneumocystis carinii*, and *Necator americanis.*

The present invention is also useful for detection of drug resistance by infectious agents. For example, vancomycin-resistant *Enterococcus faecium*, methicillin-resistant *Staphylococcus aureus*, penicillin-resistant *Streptococcus pneumoniae*, multi-drug resistant *Mycobacterium tuberculosis*, and AZT-resistant human immunodeficiency virus can all be identified with the present invention.

Thus, the target molecules detected using the compositions and methods of the invention can be either patient markers (such as a cancer marker) or markers of infection with a foreign agent, such as bacterial or viral markers.

Because of the quantitative nature of UBA/ESB/COBs, the compositions and methods of the invention can be used to quantify target molecule whose abundance is indicative of

50

a biological state or disease condition, for example, blood markers that are upregulated or downregulated as a result of a disease state.

In some embodiments, the methods and compositions of the present invention can be used for cytokine detection. The low sensitivity of the methods described herein would be helpful for early detection of cytokines, e.g., as biomarkers of a condition, diagnosis or prognosis of a disease such as cancer, and the identification of subclinical conditions.

Kits

The invention further provides kits comprising one or more components of the invention. The kits can comprise, for example, one or more UBAs, one or more ESBs, and/or one or more APSs. The kits can be used for any purpose apparent to those of skill in the art, including those described above.

In certain embodiments, the present invention also provides kits useful for the extension and selective immobilization of COBs, UBAs, ESBs and/or a combination thereof. The kits can comprise a substrate for immobilization and one or more binding partners to facilitate extension or immobilization of a COB, UBA, ESB and/or a combination thereof. The binding partners could, in certain embodiments, comprise a moiety useful for extension of the COB, UBA, ESB and/or a combination thereof, in an appropriate force. In certain embodiments, the binding partners could facilitate immobilization or selective immobilization of the COB, UBA, ESB and/or a combination thereof, to the surface. In further embodiments, the kits could comprise a device capable of extending the COB, UBA, ESB and/or a combination thereof.

The kits can contain a population of COBs, APSs, UBAs, ESBs and/or a combination thereof as described herein.

The kits can contain pre-labeled APSs, or unlabeled APSs with one or more components for labeling the APSs. Moreover, the ESBs and/or APSs provided in a kit may or may not have UBAs pre-attached. In one embodiment, the UBAs are provided in the kit unattached to the ESBs and/or APSs.

The kits can comprise other reagents such as linker oligos and bridging oligos.

In some embodiments, the kits can separate the UBAs into different premixes.

The kits can indude other reagents as well, for example, buffers for performing hybridization reactions, linkers, restriction endonucleases, and DNA I ligases.

The kits also will indude instructions for using the components of the kit, and/or for making and/or using the APSs, COBs, UBAs, and/or ESBs.

EXAMPLES

Prophetic Example 1—Oligonucleotide Preparation

Oligonucleotides can be synthesized according to standard techniques known in the art.

For instance, oligonudeotides can be synthesized on a 394A DNA Synthesizer (Applied Biosystems Division of Perkin-Elmer Corp., Foster City, Calif.).

The oligonucleotides are purified by ethanol precipitation after overnight deprotection at 55° C. The primer-specific portions of the oligonudeotides used for PCR amplification are purified by polyacrylamide gel electophoresis on 10% acrylamide/7M urea gels. Oligonucleotides are visualized after electrophoresis by UV shadowing against a lightening screen and excised from the gel (Applied Biosystems Inc., 1992). They are then eluted overnight at 64° C. in THE (i.e. Tris-sodium EDTA) buffer (100 mM Tris/HCl pH 8.0 con-

RSS_00082815

US 10,982,256 B2

51

taining 500 mM NaCl and 5 mM EDTA) and recovered from the eluate using Sep Pak cartridges (Millipore Corp, Milford, Mass.) following the manufacturer's instructions.

Oligonudeotides are resuspended in 100 HI TE (i.e. 10 mM Tri-HCl pH 8.0 containing 1 mM EDTA). Typical concentrations of these original oligonudeotide solutions are about 1 ug/ul or approximately 74 pm/ul.

As a prerequisite for ligation reactions, the oligonucleotides are phosphorylated with T4 polynucleotide kinase at the 5'-end. Aliquots of the oligonudeotides equivalent to 200 pm are combined with 10 UI of kinase buffer (500 mM Tris/HCl pH 8.0, 100 mM MgCl2), 10 UI of 10 mM ATP, 20 U T4 kinase, and sufficient water-ME to give a final volume of 100 uL. Phosphorylation is carried out at 37° C. for 30 min followed by incubation for 10 min at 85° C. to inactivate the T4 enzyme.

The solutions of the oligonucleotides are adjusted to convenient concentrations. The kinased oligonudeotide solution is diluted fourfold in water to yield a concentration of 1000 fm/ul. A solution of the oligonudeotides is made by combining volumes of the oligonudeotides equivalent to 200 pm with sufficient water to give a final volume of 400 UI. This created a solution 1000 fm/ul in each of the oligonucleotides. Aliquots (20 UI) of the kinased and unkinased oligonucleotides are frozen for subsequent use.

General Method for Oligonucleotide Synthesis and Purification for Click Chemistry

Oligonucleotides are synthesized as described in El-Sagheer et al. (PNAS, 108:28, 11338-11343, 2011). Briefly, standard DNA phosphoramidites, solid supports and additional reagents are purchased from Link Technologies and Applied Biosystems. Oligonudeotides are synthesized on an Applied Biosystems 394 automated DNA/RNA synthesizer using a standard 0.2 or 1.0 umole phosphoramidite cycle of acid-catalyzed detritylation, coupling, capping, and iodine oxidation. All 13-cyanoethyl phosphoramidite monomers are dissolved in anhydrous acectonitrile to a concentration of 0.1 M immediately prior to use. The coupling time for normal A, G, C, and T monomers is 35 sec, whereas the coupling time for the reverse amidites is 180 sec. Alkyne phosphoramidite monomer (2c in FIG. 2, El-Sagheer et al., PNAS, 108:28, 1133811343, 2011) and other non-standard monomers are coupled for 360 sec. Cleavage of oligonudeotides from the solid support and deprotection is achieved by exposure to concentrated aqueous ammonia solution for 60 min at room temperature followed by heating in a sealed tube for 5 hr at 55° C. The oligonucleotides are purified by reversed-phase HPLC on a Gilson system using an XBridge™ BEH300 Prep cui 8 10×250 mm column (Waters) with a gradient of acetonitrile in ammonium acetate (0% to 50% buffer B over 30 min, flow rate 4 mL/min), buffer A: 0.1 M ammonium acetate, pH 7.0, buffer B: 0.1 M ammonium acetate, pH 7.0, with 50% acetonitrile. Elution is monitored by UV absorption at 305 or 295 nm. After HPLC purification, oligonucleotides are desalted using NAP-IO columns and analyzed by gel electrophoresis.

### Synthesis of 3'-alkyne oligonucleotides

Synthesis of 3'-alkyne oligonucleotides is performed as described in El-Sagheer et al. (PNAS, 108:28, 11338-11343, 2011). Briefly, 3'-Alkyne oligonucleotides are synthesized using the 3'-propargylthymidine phosphoramidite monomer 2c and assembling the required sequence in the 5' to 3'-direction using the 3'-O-(4,4'-dimethoxytrityl) deoxyribonucleoside-5'phosphor-amidites of A, G, C and T (reverse phosphoramidites, Link Technologies) or by the attachment

52

of 5'-O-(4,4'-Dimethoxytrityl)-3'-O-propargyl-5-methyl-deoxycytidine to solid support (33 umol/g loading, AM polystyrene, Applied Biosystems) according to El-Sagheer et al. (Proc. Natl. Acad. Sci. USA. 107(35):15329-15334.). The resin is packed into a twist column (Glen Research), then used to assemble the required sequence in the 3'- to 5'-direction by standard phosphoramidite oligonucleotide synthesis. The oligonudeotides are then cleaved, deprotected and purified as described above.

### Synthesis of 5'-azide oligonucleotides

Synthesis of 5'-azido oligonucleotides is performed as described in El-Sagheer et al. (PNAS, 108:28, 11338-11343, 2011). Briefly, oligonucleotides are assembled on the 0.2 or 1.0 umol scale (trityl-off) as described in the general method (above) with normal 5'-HO-dC, 5'HO-dT (or with 5'-iodo-dT using the commercially available 5'-iodo dT monomer from Glen Research). To convert the 5'-hydroxyl group to 5'-iodo, the protected oligomers attached to the synthesis column are treated with a 0.5 M solution of methyltriphenoxyphosphonium iodide in DMF (1 0.0 mL), which is periodically passed through the column via two I mL syringes over 15 min at room temperature. The column is then washed several times with dry DMF. To convert the 5'-iodo (d T or dC) to 5'-azido (d T or dC), sodium azide (50 mg) is suspended in dry DMF (1 mL), heated for 10 min at 70° C. then cooled down and the supernatant taken up into a I mL syringe, passed back and forth through the column then left at room temperature overnight (or for 5 hr at 55° C.). The column is then washed with DMF and acetonitrile and dried by the passage of a stream of argon gas. The resultant 5'-azide oligonucleotide is cleaved from the solid support, deprotected and purified as described above.

### Synthesis of 3'-alkyne-5'-azide oligonucleotides

Synthesis of 3'-alkyne-5' azide oligonucleotides is performed as described in ElSagheer et al. (PNAS, 108:28, 11338-11343, 2011). Briefly, 5'-O-(4,4'-Dimethoxytrityl)-3'-O-propargyl-5-methyldeoxycytidine on polystyrene solid support is packed into a twist column (Glen Research) and used to assemble the required sequence in the 3'- to 5'-direction (standard phosphoramidite oligonucleotide synthesis) with 5'-iodo dT, 5'-HO-dT or 5'-HO-dC at the 5'end. The 5'-hydroxyl or iodo groups are then converted to azide using the conditions described above for the synthesis of the 5'-azide oligonucleotides.

### Prophetic Example 2. Click Chemistry Ligation

Oligonucleotide APSs are annealed to a template and kept overnight at 4° C. A solution of Cu⁺ click catalyst is prepared from tris-hydroxypropyltriazole ligand as described in Chan et al. (Chan T R, Hilgraf R, Shanless K B, & Fokin VV (2004) Polytriazoles as copper(I)stabilizing ligands in catalysis. Org. Lett. 6(17):2853-2855; 2.8 gmol in 0.2 M NaCl, 38.0 YL), sodium ascorbatc (4.0 gmol in 0.2 M MCI, 8.0 VIL) and CuS04.5H20 (0.4 umol in 0.2 M MCI, 4.0 UL). This solution is added to the annealed oligonucleotides and the reaction mixture is kept at 0° C. for 1 hr, then at room temperature for a further I hr. Reagents are removed using a NAP25 gel-filtration column. Prophetic Example 3. Split-pool synthesis of COBs on beads

In this Example COBs are synthesized attached to beads. 4 different methods are used for the assembly of APSs into COBs:

RSS_00082816

US 10,982,256 B2

53                                                    54

Patchwork COB (FIG. **6**)

Aminomethyl macroporous polystyrene (MPPS) beads are labeled with ten different CL oligonucleotides, each with an optional first amplification primer complementary region, one of 10 different ESB sequences and a common annealing region. Six rounds of split pool synthesis are performed. In each round, beads are split into 20 different containers. A different oligonucleotide APS is added to each container, totaling 20 different APSs. Each APS in a given round further comprises a unique subcode sequence that is different from the rest of the APSs in that round.

In the first round, each APS comprises an annealing region I that is complementary to the annealing region of the CL oligonudeotide on one end and an annealing region 2 on the other end. Upon addition, the oligonudeotide APS hybridizes to the CL oligonudeotide along the complementary annealing region 1. The annealing region 2 remains single stranded and available to hybridization with an APS added in the subsequent round. In subsequent rounds, each APS comprises an annealing region complementary to the available annealing region of the APS from the previous round on one end and an additional annealing region on the other end. The added APS hybridizes to the APS added in the previous round along the complementary annealing region.

The last subunit optionally comprises a second amplification primer complimentary region for hybridization of PCR or sequencing primers.

A CL, or one or more APSs further comprise a random tag region, which acts as a molecular counter as described supra, allowing for subsequent normalization of the detected COBs.

Upon the addition of an APS in each round, the beads are pooled and divided into new 20 pools initiating the subsequent round. A new set of 20 APSs are added in each round with a pair of round specific annealing region as described above. After the addition of 6 APSs, the hybridized APSs on the beads are patched together using a polymerase/ligase. The COBs are optionally PCR amplified for sequencing using primers targeting the amplification primer complementary regions on the CL and the last APS subunit

Stitch COB Using Specific Annealing of Primers (FIG. **7**)

Aminomethyl macroporous polystyrene (MPPS) beads are labeled with ten different CL oligonucleotides, each with an optional first amplification primer complementary region, a one of 10 different ESB sequences and a common annealing region. Six rounds of split pool synthesis are performed. In each round, beads are split into 20 different containers. A different oligonucleotide APS is added to each container, totaling 20 different APSs. Each APS in a given round further comprises a unique subcode sequence that is different from the rest of the APSs in that round.

An annealing primer is also added. In the first round, the annealing primer has a complementary region to the CL oligonucleotide and a complementary region to the APS. The annealing primer hybridizes to both, stitching them together. In subsequent rounds, the annealing primer has a complementary region to the APS added during the previous round and a complementary region to the APS being added in the current round. Similarly, the annealing primer hybridizes to APSs from subsequent rounds stitching them together. The complementary regions of the annealing primer are specific to each round allowing efficient hybridization of subunits only from the previous and current rounds. Accordingly, the annealing primer does not hybridize to subunits of earlier rounds, which would not have

complementary regions to the annealing primer of a current round, thus blocking the further synthesis of COBs missing subunits of particular rounds.

The last subunit optionally comprises a second amplification primer complimentary region for hybridization of PCR or sequencing primers.

A CL, or one or more APSs further comprise a random tag region, which acts as a molecular counter as described supra, allowing for subsequent normalization of the detected COBs.

Upon the addition of an APS and an annealing primer in each round, the beads are pooled and divided into new 20 pools initiating the subsequent round. A new set of 20 APSs are added in each round with a pair of round specific annealing region as described above. After the addition of 6 APSs, the hybridized APSs on the beads are permanently stitched together using a polymerase/ligase or using Click chemistry as described in Example 2. The COBs are optionally PCR amplified for sequencing using primers targeting the amplification primer complementary regions on the CL and the last APS subunit.

Stitch COB Using Annealing of Primers with Common Complementary Regions (FIG. **8**)

Aminomethyl macroporous polystyrene (MPPS) beads are labeled with ten different CL oligonucleotides, each with an optional first amplification primer complementary region, a one of 10 different ESB sequences and a common annealing region. Six rounds of split pool synthesis are performed. In each round, beads are split into 20 different containers. A different oligonucleotide APS is added to each container, totaling 20 different APSs. Each APS in a given round further comprises a unique subcode sequence that is different from the rest of the APSs in that round.

An annealing primer is also added. In the first round, the annealing primer has a first complementary region to the CL oligonucleotide and a second complementary region to the APS being added in the current round. The annealing primer hybridizes to both, stitching them together. In subsequent rounds, the annealing primer has a first complementary region to the APS added during the previous round and a second complementary region to the APS being added in the current round. Similarly, the annealing primer hybridizes to APSs from subsequent rounds stitching them together. Of the two complementary regions of the annealing primer, the first complementary regions are specific to each round allowing efficient hybridization to subunits only from the previous round. Accordingly, the annealing primer does not hybridize to subunits of earlier rounds, which would not have complementary regions to the annealing primer of a current round, thus blocking the further synthesis of COBs missing subunits of particular rounds.

The last subunit optionally comprises a second amplification primer complimentary region for hybridization of PCR or sequencing primers.

A CL, or one or more APSs further comprise a random tag region, which acts as a molecular counter as described supra, allowing for subsequent normalization of the detected COBs.

Upon the addition of an APS and an annealing primer in each round, the beads are pooled and divided into new 20 pools initiating the subsequent round. A new set of 20 APSs are added in each round with a pair of round specific annealing region as described above. After the addition of 6 APSs, the hybridized APSs on the beads are permanently stitched together using a polymerase/ligase or using Click chemistry as described in Example 2. The COBs are option-

RSS_00082817

US 10,982,256 B2

55

ally PCR amplified for sequencing using primers targeting the amplification primer complementary regions on the CL and the last APS subunit.

Loop COB (FIG. 9)

Aminomethyl macroporous polystyrene (MPPS) beads are labeled with ten different CL oligonucleotides, each with an optional first amplification primer complementary region, one of 10 different ESB sequences, six pairs of APS-specific loop annealing regions and an optional second amplification primer complementary region. Six rounds of split pool synthesis are performed. In each round, beads are split into 20 different containers. A different oligonucleotide APS is added to each container, totaling 20 different APSs. Each APS in a given round further comprises a unique subcode sequence that is different from the rest of the APSs in that round.

The APSs are designed to hybridize to the CL in a loop geometry, hybridizing on each end to the CL along the loop annealing regions specific to the round. The hybridization populates the APSs along the CL, which are then linked together. The APSs are designed such that they do not efficiently hybridize to the CL along the loop annealing regions specific to other rounds. Consequently, if an APS from a particular round is missing, the APSs may not be linked together successfully, depending on the linking process. Alternatively, a COB is synthesized with a missing APS, the location of which is flanked by a pair of loop annealing regions. The resulting COB can then be analyzed accordingly and can either be discarded or the retrieved information can be alternatively processed.

A CL, or one or more APSs further comprise a random tag region, which acts as a molecular counter as described supra, allowing for subsequent normalization of the detected COBs.

Upon the addition of an APS and an annealing primer in each round, the beads are pooled and divided into new 20 pools initiating the subsequent round. A new set of 20 APSs are added in each round with a pair of round specific annealing region as described above. After the addition of 6 APSs, the hybridized APSs on the beads are permanently stitched together using a polymerase/ligase or using Click chemistry as described in Example 1. The COBs are optionally PCR amplified for sequencing using primers targeting the amplification primer complementary regions on the CL.

Polymerase Free COB-ESB Linkage (FIG. 10)

Aminomethyl macroporous polystyrene (MPPS) beads are labeled with ten different CL oligonucleotides, each with a pair of loop annealing region specific for one of the 10 different loop ESB sequences, and six pairs of APS-specific loop annealing regions. All 10 loop ESB sequences are added to anneal to the loop ESB specific portion of the CL in a loop geometry. Loop ESB sequences are designed to minimize non-specific annealing to the remainder of the loop ESB specific regions of the CLS. Loop ESB sequences comprise an optional first amplification primer complementary region, an ESB sequence, and a pair of annealing regions sufficiently complementary to the loop ESB-specific loop annealing regions in the CL. Six rounds of split pool synthesis are performed. In each round, beads are split into 20 different containers. A different oligonucleotide APS is added to each container, totaling 20 different APSs. Each APS in a given round further comprises a unique subcode sequence that is different from the rest of the APSs in that round. The APSs in the final round optionally further comprise a second amplification primer complementary region.

The APSs are designed to hybridize to the CL in a loop geometry, hybridizing on each end to the CL along the loop

56

annealing regions specific to the round. The hybridization populates the APSs along the CL, which are then linked together. The APSs are designed such that they do not efficiently hybridize to the CL along the loop annealing regions specific to other rounds. Consequently, if an APS from a particular round is missing, the APSs may not be linked together successfully, depending on the linking process. Alternatively, a COB is synthesized with a missing APS, the location of which is flanked by a pair of loop annealing regions. The resulting COB can then be analyzed accordingly and can either be discarded or the retrieved information can be alternatively processed.

A CL, or one or more APSs further comprise a random tag region, which acts as a molecular counter as described supra, allowing for subsequent normalization of the detected COBs.

Upon the addition of an APS and an annealing primer in each round, the beads are pooled and divided into new 20 pools initiating the subsequent round. A new set of 20 APSs are added in each round with a pair of round specific annealing region as described above. After the addition of 6 APSs, the hybridized APSs on the beads are permanently stitched together using a using Click chemistry as described in Example 2. The COBs are optionally PCR amplified for sequencing using primers targeting the amplification primer complementary regions on the CL and the last APS subunit.

Prophetic Example 4. Detection by nucleic acid sequencing

The assembled ESB-linked COBs resulting from any of the methods in Example 3 are sequenced by Illumina's HiSeq 2000 machine. The resulting sequences comprise at least one of 10 different ESB sequences, a random tag region, and a combination of 6 subcodes originating from APSs added to that particular bead during the 6 rounds of split pool synthesis.

Prophetic Example 5. Detection by peptide sequencing (FIG. 11)

ESB-linked COBs are synthesized using any of the methods in Example 3. The resulting sequences comprise a T7 promoter an SP6 start site, a start codon, an ESB, a COB and optionally a region encoding a His(6) tag (FIG. 11). The T7 promoter and SP6 start site can be incorporated into the sequence linked to the ESB, using the same method that is used to incorporated the ESB. Alternatively, these sequences can be incorporated within the last APS. Optionally, a His(6) tag encoding region can be incorporated linked to the final APS or to the ESB.

The assembled ESB-linked COBs are transcribed and translated into peptide sequences using the Expressway™ Maxi Cell-Free *E. coli* Expression System (Invitrogen). The peptide sequences are isolated using affinity chromatography and/or HPLC prior to being sequenced using a tandem mass spectrometer.

Prophetic Example 6. Split-Pool Synthesis of COBs on Cell Surfaces

Cell surface receptors on leukocyte cell lines (HL60, JY and U937) are detected and quantified using split-pool synthesis of COBs on cell surfaces. Using Antibody-Oligonudeotide All-in-One Conjugation Kit (Solulink), antibodies against CD 1, CD3, CD8 and CD4 are conjugated with amine modified CL oligonudeotides described in Example 3. The singly-labeled antibodies are isolated using affinity chromatography using complementary oligonudeotides targeting a sequence in CL oligonudeotides and the number of labels on each antibody is verified using mass spectrometry. A cell suspension of $10^7$ cells are incubated with the com-

RSS_00082818

US 10,982,256 B2

57 58

bination of the antibodies under suitable conditions followed by 6 rounds of split-pool synthesis. The resulting ESB-linked COBs are detected as described in Example 3 or Example 4. The detected signals related to COB-linked ESBs are quantified for each COB combination. Coexpression of each of the CD 1, CD3, CD8, and CD4 antigens on the cells are plotted pairwise.

Principle component analysis is used to identify the strongest correlations in expression profiles.

### Prophetic Example 7. Split-Pool Synthesis of COBs in Cells

Methanol is cooled to $-20°$ C. A cell culture comprising $10^7$ HeLa cells is grown using suitable tissue culture conditions known in the art. The growth medium is removed by aspiration. The cells are immediately fixed and permeabilized by adding 50 mL cold methanol. The cells are allowed to incubate at ambient temperature for 10 minutes with gentle shaking. Methanol is carefully removed by aspiration. The cells are rinsed with 100 mL of 1×PBS, three times.

The cells are blocked with 150 ml of 0.1% Casein solution in 0.2% 0 PBS for 1.5 hrs at room temperature by gentle shaking. Rabbit anti-cleaved caspase-3, rabbit anti phos-p38, rabbit anti-phos-ERK2, mouse anti-ERK2, and mouse anti-ß-tubulin (done AA2) are CL conjugated as described in Example 5. Cells are incubated with Cl.-conjugated antibodies overnight at 4° C., gently shaking. The cells are washed 5 times with 1×PBS+0.1° 0 Tween-20 for 5 minutes at room temperature followed by 6 rounds of split-pool synthesis.

The resulting ESB-linked COBs are detected as described in Example 3 or Example 4. The detected signals related to COB-linked ESBs are quantified for each COB combination. Co-expression of each of the Phospho-p53, ERKI in the cells are plotted pairwise. Principle component analysis is used to identify the strongest correlations in expression profiles.

While preferred embodiments of the present invention have been shown and described herein, it will be obvious to those skilled in the art that such embodiments are provided by way of example only. Numerous variations, changes, and substitutions will now occur to those skilled in the art without departing from the invention. It should be understood that various alternatives to the embodiments of the invention described herein may be employed in practicing the invention. It is intended that the following claims define the scope of the invention and that methods and structures within the scope of these claims and their equivalents be covered thereby.

The invention claimed is:

1. A method for identifying whether a plurality of nucleic acid targets is present in a plurality of cells comprising:
   a) binding to the nucleic acid targets in the plurality of cells a plurality of unique binding agent (UBA) nucleic acid tags;
   b) extending the UBAs bound to the targets, and
   c) assembling cell originating barcodes (COB) on the extended UBAs by subsequently adding multiple assayable polymer subunit (APS) oligonudeotides to each of the extended UBAs in the plurality of cells in an ordered manner during successive rounds of split pool synthesis wherein the APS oligonudeotides in each round anneal to the APS from a previous round and are covalently linked to the adjacently annealed APS to create unique codes that represent the identities of individual cells in which the tags are bound, and wherein the method does not include a step of isolating each cell in the plurality of cells.

2. The method of claim **1**, wherein the unique code comprises UBA and COB wherein COB consists of multiple APSs.

3. The method of claim **1**, wherein the code is read by sequencing.

4. The method of claim **1**, wherein the UBA is an antisense DNA for a target mRNA.

5. The method of claim **1**, wherein the APS oligonudeotides in each round anneal to the APS oligonudeotide from the prior round via a shared region of complementarity.

6. The method of claim **1**, wherein the APS oligonudeotides in each round are linked to the APS oligonudeotide from the prior by ligation.

* * * * *

# EXHIBIT B

RSS_00082820



# Profile 100,000 cells or nuclei from 1-48 samples in a single experiment

**Scalable single cell RNA sequencing without an instrument**

- High transcript and gene detection per cell

- Lower doublet rates than droplet-based single cell sequencing

- Ability to run fixed samples collected on different dates together in a single experiment



**Single Cell Whole Transcriptome Kit**

RSS_00082821



# Label Single Cells with Split-Pool Barcoding

**Bypass the need for expensive and complicated microfluidic instruments.**

Split-pool combinatorial barcoding allows you to profile single-cell transcriptomes without microfluidic instruments. By assigning a specific barcode to each well into which cells are loaded, we can take advantage of the cell itself as its own compartment to perform multiple rounds of splitting, pooling, and ligation of transcripts to generate different barcode combinations unique to each cell's set of transcripts. Four rounds of barcoding can yield 3,538,944 possible barcode combinations (three rounds of barcoding in 48x96x96 wells followed by a fourth round with 8 PCR reactions), enough to uniquely label up to one hundred thousand cells while avoiding doublets.

In the first round of barcoding, fixed cell samples are distributed into 48 wells, and cDNA is generated with an in-cell reverse transcription (RT) reaction using well-specific barcoded primers.



Cells from each well are pooled back together.



Cells are then distributed into 96 wells, and an in-cell ligation reaction appends a second well-specific barcode to the cDNA.



The third-round barcode is appended with another round of in-cell ligation.



After three rounds of barcoding, the cells are pooled and split into 8 distinct populations we term sublibraries. The user can choose the number of cells in each sublibrary to control the depth of sequencing. Cells will not be pooled again after this step. After this final split cells are lysed and the barcoded cDNA is isolated. A fourth sublibrary-specific barcode is introduced by PCR to each cDNA molecule.



After sequencing, each single cell transcriptome is assembled by combining reads containing the same four-barcode combination.



    For research use only. Not for diagnostic procedures.

RSS_00082822

# Achieve Robust and Sensitive Gene Detection Across Different Sample Types

The Whole Transcriptome Kit is a dramatic step up from the SPLiT-seq method (Science 2018)[1] that introduced the underlying combinatorial barcoding approach. While still maintaining the scalability of the original method, the Whole Transcriptome Kit enables much higher transcript and gene detection per cell.





*Figure 1. The Parse Whole Transcriptome Kit exceeds sensitivity of previously published SPLiT-seq method.*
*A) Median unique transcript detection in HEK293 cultured cells exceeds 100,000 per cell, compared to ~20,000 when using the original SPLIT-seq method. B) Median gene detection now exceeds 12,000 per cell, compared to ~5,000 using SPLiT-seq.*

[1]https://science.sciencemag.org/content/360/6385/176



**Figure 2. Parse enables highly sensitive gene detection across different cell types.** *The plots above indicate the depth of sequencing (reads/cell) required to detect a desired number of genes.*

# Improve Data Quality with Lower Doublet Rates Than Droplet Solutions



Doublets—two or more cells that are labeled with identical barcodes—are a major problem in existing single cell sequencing solutions. Not only do doublets lead to confounding artifacts, they also lower sequencing efficiency due to wasted reads. By using combinatorial barcoding to label each cell with a different set of barcodes, the Parse Whole Transcriptome Kit produces dramatically lower doublets than existing single cell solutions.

**Figure 3. Parse's combinatorial barcoding enables high throughput sequencing of cells with low doublet rates.**
*A human-mouse species mixing experiment with 100,000 cells resulted in an estimated doublet rate of only 3.4%—substantially lower than doublet rates of droplet based solutions.*

RSS_00082823

# Example Dataset: High Resolution Profiling of Immune Cells

Profiling immune cells such as Peripheral Blood Mononuclear Cells (PBMCs) can be challenging due to inherently low RNA content relative to other cell types. The Parse Whole Transcriptome Kit is sensitive enough to detect lowly expressed genes, enabling identification and characterization of immune cell types at extraordinary resolution.

## Enable Robust Identification of High Level and Sub-Type Clusters



**Figure 4. High-resolution clustering of single-cell dataset containing 50,000 PBMCs allows for the identification of high level cell types and distinct sub-types.** *Identification of clusters is supported by known gene markers, such as MS4A1, CD4, and CD8. This data was obtained from a cryopreserved PBMC sample from a healthy human donor.*

## Recover Input Cell-Type Proportions with High Accuracy

| Protein Marker | Population % with Vendor Flow Cytometry | Population % with Parse scRNA-seq |
|---|---|---|
| CD3 (T Cell Marker) | 41.6% | 41.5% |
| CD19 (B Cell marker) | 25.1% | 20.8% |
| CD14 (Monocyte Marker) | 8.40% | 8.68% |
| CD11c (Dendritic Cell Marker) | 20.3% | 23.1% |
| CD16 (Large Granular Lymphocyte Marker) | 26.8% | 27.5% |
| CD56 (Natural Killer Cell Marker) | 23.8% | 23.1% |

**Table 1. PBMC cell type proportions detected by the Parse Whole Transcriptome Kit are consistent with vendor flow cytometry data.** *Highly accurate recovery of input cell-type proportions indicates unbiased profiling of a heterogeneous PBMC population from the same human donor sample profiled in Figure 4 above.*

RSS_00082824

# Example Dataset: Profiling Single Nuclei in an Embryonic Mouse Brain

Profiling single nuclei can be a powerful approach and offers advantages over sequencing whole cells, especially in challenging tissues. The Whole Transcriptome Kit makes it easy to perform single nuclei sequencing while still maintaining high gene detection.



*Figure 5. High resolution clustering of 60,000 single nuclei transcriptomes from an E18 embryonic mouse brain.*

# Detect Genes in Nuclei with High Sensitivity and Specificity



*Figure 6. Efficient and accurate detection of genes in complex tissues such as the brain.* *Sequencing 60,000 nuclei from an E18 embryonic mouse brain detects a median of 14,272 unique transcripts/cell and 3,592 genes/cell. The high detection efficiency requires lower sequencing depths to obtain a desired number of unique transcripts or genes detected per nuclei. The Whole Transcriptome Kit efficiently captures transcription factors that are highly specific to select cell types.*

 For research use only. Not for diagnostic procedures.

RSS_00082825

# Design Versatile Experiments with a Flexible Workflow

The Whole Transcriptome Kit enables you to easily increase the number of samples and cells in your single cell experiment. The workflow makes it possible to:

Profile anywhere from 1 to 48 samples per experiment across 100,000 cells

Run fixed samples collected on different dates together in a single experiment

Perform the whole workflow with no custom instruments required



## Fixed Samples Are Stable in Storage for Up To 6 Months

The ability to fix and store samples makes it possible to batch samples into the same experiment even when the samples were collected on different days. This added flexibility can be especially valuable when performing time-course experiments or when biological samples arrive at different times. Importantly, storing fixed samples for up to 6 months will not impact your resulting single cell data.

*Figure 7. Long-term storage of Parse fixed samples at -80C for up to 6 months does not affect gene detection. We fixed HEK293 cells and then split the fixed cells into two aliquots, one of which we processed immediately, and the other which we stored for 6 months before processing. Median gene detection was unaffected by long-term storage of the fixed cells.*

Long-term stability enables not only batching samples fixed on different days in the same barcoding experiment, but also rerunning multiple experiments on the same fixed sample.



For research use only. Not for diagnostic procedures.

RSS_00082826



# Parse Computational Pipeline Output

The Parse Biosciences pipeline is an out-of-the-box software tool that you can run locally to go straight from fastq files to processed data (including gene-cell count matrix). The pipeline produces interactive outputs that make it possible to browse gene expression across different clusters and identify differentially expressed genes.



Summary statistics provide information necessary to diagnose sequencing runs. Interactive plots (left) include a cell cutoff graph (above), sequencing saturation curves, and visual summaries of transcript and cell distribution across wells during barcoding.



Statistics for each cluster marker are summarized in the differential expression table along with links to the NCBI database, allowing quick interrogation of each result. The specificity of each cluster marker or any gene of interest can easily be visualized using the interactive UMAP plot.

**Additional Resources**

**parsebiosciences.com** | Products, Careers, & News

**support.parsebiosciences.com** | Self Service Knowledge Base

**linkedin.com/company/parse-biosciences** | Job Opportunities

**info@parsebiosciences.com** | General Inquiries & Questions



For research use only. Not for diagnostic procedures

RSS_00082827

# EXHIBIT C

RSS_00082828

*RESEARCH*

SINGLE-CELL GENOMICS

# Single-cell profiling of the developing mouse brain and spinal cord with split-pool barcoding

Alexander B. Rosenberg,[1]*† Charles M. Roco,[2]* Richard A. Muscat,[1] Anna Kuchina,[1] Paul Sample,[1] Zizhen Yao,[3] Lucas T. Graybuck,[3] David J. Peeler,[2] Sumit Mukherjee,[1] Wei Chen,[4] Suzie H. Pun,[2] Drew L. Sellers,[2,5] Bosiljka Tasic,[3] Georg Seelig[1,4,6]†

To facilitate scalable profiling of single cells, we developed split-pool ligation-based transcriptome sequencing (SPLiT-seq), a single-cell RNA-seq (scRNA-seq) method that labels the cellular origin of RNA through combinatorial barcoding. SPLiT-seq is compatible with fixed cells or nuclei, allows efficient sample multiplexing, and requires no customized equipment. We used SPLiT-seq to analyze 156,049 single-nucleus transcriptomes from postnatal day 2 and 11 mouse brains and spinal cords. More than 100 cell types were identified, with gene expression patterns corresponding to cellular function, regional specificity, and stage of differentiation. Pseudotime analysis revealed transcriptional programs driving four developmental lineages, providing a snapshot of early postnatal development in the murine central nervous system. SPLiT-seq provides a path toward comprehensive single-cell transcriptomic analysis of other similarly complex multicellular systems.

More than 300 years have passed since van Leeuwenhoek first described living cells, yet we still do not have a complete catalog of cell types or their functions. Recently, transcriptomic profiling of individual cells has emerged as an essential tool for characterizing cellular diversity (*1-3*). Single-cell RNA-sequencing (scRNA-seq) methods have profiled tens of thousands of individual cells (*4-6*), revealing new insights about cell types within both healthy (*7-14*) and diseased tissues (*15-18*). Unfortunately, since these methods require cell sorters, custom microfluidics, or microwells, throughput is still limited and experiments are costly. We introduce split-pool ligation-based transcriptome sequencing (SPLiT-seq), a low-cost, scRNA-seq method that enables transcriptional profiling of hundreds of thousands of fixed cells or nuclei in a single experiment. SPLiT-seq does not require partitioning single cells into individual compartments (droplets, microwells, or wells) but relies on the cells themselves as compartments. The entire workflow before sequencing consists just of pipetting steps, and no complex instruments are needed.

In SPLiT-seq, individual transcriptomes are uniquely labeled by passing a suspension of formaldehyde-fixed cells or nuclei through four rounds of combinatorial barcoding. In the first round of barcoding, cells are distributed into a 96-well plate, and cDNA is generated with an in-cell reverse transcription (RT) reaction using well-specific barcoded primers. Each well can contain a different biological sample, thereby enabling multiplexing of up to 96 samples in a single experiment. After this step, cells from all wells are pooled and redistributed into a new 96-well plate, where an in-cell ligation reaction appends a second well-specific barcode to the cDNA. The third-round barcode, which also contains a unique molecular identifier (UMI), is then appended with another round of pooling, splitting, and ligation. After three rounds of barcoding, the cells are pooled and split into sublibraries, and sequencing barcodes are introduced by polymerase chain reaction (PCR). This final step provides a fourth barcode, while also making it possible to sequence different numbers of cells in each sublibrary. After sequencing, each transcriptome is assembled by combining reads containing the same four-barcode combination (Fig. 1A and fig. S1A).

Four rounds of combinatorial barcoding can yield 21,233,664 barcode combinations (three rounds of barcoding in 96-well plates followed by a fourth round with 24 PCR reactions), enough to uniquely label over 1 million cells. Even larger numbers of barcode combinations can be achieved by performing experiments in 384-well plates or through additional rounds of barcoding (fig. S1B). In addition, by performing the first step in a 384-well plate, up to 384 different biological samples could be combined in a single experiment.

### SPLiT-seq validation

To test SPLiT-seq's ability to generate uniquely barcoded cells (UBCs), we performed a species-mixing experiment. We mixed cells from one mouse and two human cell lines (NIH/3T3, HEK293, and Hela-S3), fixed them, and used SPLiT-seq to generate a scRNA-seq library with 1758 UBCs. The library was sequenced, and reads were aligned to a combined mouse-human genome. Nearly all (99.9%) of the UBCs were unambiguously assigned to a single species (>90% of reads aligned to a single genome), with the remaining 0.1% of UBCs representing barcode collisions between mouse and human cells (Fig. 1B). At saturating read coverage (>500,000 reads per cell), we identified a median of 15,365 UMIs and 5498 genes per human cell and 12,243 UMIs and 4497 genes per mouse cell. The species purity in both human and mouse UBCs was high: 99.6% of reads in human UBCs and 99.0% of reads in mouse UBCs aligned to their respective genomes. We also performed single-nucleus RNA-seq (snRNA-seq) experiments using SPLiT-seq with freshly prepared nuclei, as well as nuclei and cells that had been preserved at ~80°C for 2 weeks. In all samples, we detected similar numbers of transcripts and genes per cell (Fig. 1C, fig. S2, and table S1). Gene expression was highly correlated between preserved and freshly prepared cells (Fig. 1D and fig. S2) (Pearson $r$, 0.987), as well as between cells and nuclei (fig. S2) (Pearson $r$, 0.952). We also examined gene and UMI detection at different sequencing depths and found that the sensitivity of SPLiT-seq is comparable to droplet-based scRNA-seq methods (fig. S3).

### Single-nuclei RNA-seq of developing mouse brain and spinal cord

We used SPLiT-seq to profile nuclei from the developing brain and spinal cord of postnatal day 2 and 11 (P2 and P11) mice. The first round of barcoding assigned identifiers for the P2 brain, P2 spinal cord, P11 brain, and P11 spinal cord samples (Fig. 2A and fig. S4). In total, four rounds of barcoding (48 × 96 × 96 × 14) generated more than 6 million distinct barcode combinations, making it possible to process hundreds of thousands of nuclei in a single experiment with minimal barcode collisions (2.5% expected collisions for 150,000 nuclei).

To determine how many transcripts SPLiT-seq detects within nuclei from the central nervous system, we performed deep sequencing on a sublibrary containing only 131 nuclei. We detected 4943 UMIs and 2055 genes per nucleus (UMI duplication, 95%). We then sequenced the rest of the library at lower depth, resulting in a median of 677 genes and 1022 UMIs per nucleus (UMI duplication, 58%) (table S2). Low-quality transcriptomes were removed from analysis (*19*), yielding 156,049 single-nucleus transcriptomes (74,862 P2 brain; 7028 P2 spinal cord; 58,573 P11 brain; 15,586 P11 spinal cord).

Unsupervised clustering grouped transcriptomes into 73 distinct clusters (*19*) (tables S3 to S5), which were visualized by t-distributed stochastic neighbor embedding (t-SNE) (Fig. 2A). Each of these 73 clusters was assigned to a cell class on the basis of expression of established

[1]Department of Electrical Engineering, University of Washington, Seattle, WA, USA. [2]Department of Bioengineering, University of Washington, Seattle, WA, USA. [3]Allen Institute for Brain Science, Seattle, WA, USA. [4]Molecular Engineering and Sciences Institute, University of Washington, Seattle, WA, USA. [5]Institute for Stem Cell and Regenerative Medicine, Seattle, WA, USA. [6]Paul G. Allen School of Computer Science and Engineering, University of Washington, Seattle, WA, USA.
*These authors contributed equally to this work.
†Corresponding author. Email: alex.b.rosenberg@gmail.com (A.B.R.); gseelig@uw.edu (G.S.)

Downloaded from http://science.sciencemag.org/ on April 19, 2021

RSS_00082829

Case 1:22-cv-01597-CJB    Document 503    Filed 11/21/25    Page 248 of 441 PageID #: 29106

marker genes (Fig. 2B). Neurons accounted for 83% of the profiled transcriptomes (54 clusters), with most clusters expressing *Meg3*.

The 27,096 non-neuronal transcriptomes spanned 19 different clusters, each assigned to a specific cell type. Four astrocyte types (Fig. 2C) accounted for 50% of all non-neuronal nuclei ($n$ = 13,481). Oligodendrocytes (six types, $n$ = 4294) and oligodendrocyte precursor cells (OPC) (one type, $n$ = 5793) formed the second most abundant population. We further identified two vascular and leptomeningeal cell (VLMC) types (fig. S5A), endothelial cells, smooth muscle cells (fig. S5B), microglia, macrophages (fig. S5C) (*20, 21*), ependymal cells, and olfactory ensheathing cells (OEC).

Previous work has observed that t-SNE can order cells in two-dimensional space according to stages of differentiation (*9*). Moving through t-SNE space along the path of differentiation can then be viewed as moving through "pseudotime" (*22*). As oligogenesis spans the first two postnatal weeks of murine development (*23*), we asked whether the oligodendrocyte and OPC clusters might reflect a continuous developmental trajectory. When we examined the oligodendrocyte clusters, we found that they formed an overlapping elongated shape in the t-SNE visualization. OPCs and oligodendrocytes from the P2 mouse were enriched at one end of the structure, whereas oligodendrocytes from the P11 mouse were enriched at the opposite end (fig. S6), indicative of a lineage (*19, 22*).

We then performed a more thorough analysis of this putative lineage. To ensure that our ordering of oligodendrocytes was determined exclusively by their relationship to other oligodendrocytes, rather than all cells, we re-embedded only transcriptomes within these seven clusters with t-SNE (Fig. 2D and fig. S7A). We calculated the moving average of gene expression in the resulting pseudotime ordering (Fig. 2E and fig. S8). Analysis of these expression patterns confirmed that proliferating OPCs segregated to one end of the t-SNE, whereas mature oligodendrocytes segregated to the opposite end (fig. S7B). We also detected previously reported intermediate stages of oligodendrocyte development, with the order of gene expression across pseudotime nearly identical to the one defined previously (*9*) (fig. S7C) (Spearman $r$, 0.94). When analyzing spinal cord– and brain-derived cells separately, we found more mature oligodendrocytes in the spinal cord than in the brain (fig. S7D), indicating that oligodendrocyte maturation occurs earlier in the spinal cord.

## Neuronal cell types

Using known gene markers, we were able to assign most neuronal clusters to specific cell types (*19*). Although some clusters corresponded to abundant cell types, such as cerebellar granule cells (CGCs), others mapped to rare and often less-characterized cell types, such as mitral/tufted cells. Previously characterized regional markers were used to assign the majority of clusters to a

specific region of the brain (*24*) (Fig. 3A). Regional assignments were validated with RNA in situ hybridization (ISH) from the Allen Institute's Developing Mouse Brain Atlas (Allen DMBA) (*25*). Specifically, we generated composite ISH maps by averaging across the five most highly enriched genes from each of our clusters (tables S6 and S7). For clusters primarily containing P2 or P11 nuclei, we used the P4 or P14 atlases, respectively. The resulting composite maps confirmed the high regional specificity of most types (Fig. 3B and figs. S9 and S10). Cortical pyramidal neuronal types could be further assigned to specific layers using marker genes (Fig. 3C) (*7, 8*).

## Granule cell fate in the hippocampus

In the hippocampus, immature granule cells originating in the dentate gyrus give rise not only to mature granule cells but also to pyramidal neurons (*26*). This process is one of two instances of neurogenesis that continues into adulthood (*27*), but little is known about the underlying transcriptional program. We determined that three neuronal cell types from the hippocampus likely constituted a developmental trajectory (*19*). Analysis of only these transcriptomes with t-SNE revealed a clear branching structure (Fig. 3D and fig. S11A). The transcription factor *Prox1*, suspected to be necessary for granule cell identity (*28*), was exclusively expressed in one branch,



**Fig. 1. Overview of SPLiT-seq.** (**A**) Labeling transcriptomes with split-pool barcoding. In each split-pool round, fixed cells or nuclei are randomly distributed into wells, and transcripts are labeled with well-specific barcodes. Barcoded RT primers are used in the first round. Second- and third-round barcodes are appended to cDNA through ligation. A fourth barcode is added to cDNA molecules by PCR during sequencing library preparation. The bottom schematic shows the final barcoded cDNA molecule. (**B**) Species-mixing experiment with a library prepared from 1758 whole cells. Human UBCs are blue, mouse UBCs are red, and mixed-species UBCs are gray. The estimated barcode collision rate is 0.2%, whereas species purity is >99%. (**C**) UMI counts from mixing experiments performed with fresh and frozen (stored at –80°C for 2 weeks) cells and nuclei. Median human UMI counts for fresh cells: 15,365; frozen cells: 15,078; nuclei: 12,113; frozen nuclei: 13,636. (**D**) Measured gene expression by SPLiT-seq is highly correlated between frozen cells and cells processed immediately (Pearson $r$, 0.987). Frozen and fresh cells were processed in two different SPLiT-seq experiments.

Downloaded from http://science.sciencemag.org/ on April 19, 2021

RSS_00082830

Case 1:22-cv-01597-CJB    Document 503    Filed 11/21/25    Page 249 of 441 PageID #: 29107

whereas genes known to be specific to CA3 pyramidal neurons such as *Spock1* (*29*) were expressed exclusively in the other branch. Markers of dividing neuronal progenitors were expressed before the branching point, and genes in the Slit-Robo signaling pathway were differentially expressed between the two lineages (fig. S11B). We used these data to identify specific temporal dynamics of transcription factors across the two lineages, with *Meis2* as a candidate marker of early pyramidal cell differentiation (Fig. 3E and fig. S12).

## Profiling cells in the developing cerebellum

The cerebellum accounts for only 9% of the brain mass in adult mice but contains nearly 85% of all neurons (*30*). Despite the wide range of functions performed by the cerebellum, many of the gene expression programs driving development of cerebellar cell types remain unknown. We identified the four main cerebellar neuronal types (Fig. 4A): Purkinje cells, Golgi cells, stellate/basket cells, and CGCs. Two types of Purkinje cells (Fig. 4B) were segregated primarily by age (P2 versus P11) and did not form a continuous trajectory in t-SNE but rather two clearly segregated clusters. The absence of cells at intermediate stages of maturation suggests that Purkinje cell development may be more synchronous than other processes of neurogenesis captured by our data set.

CGCs, the most numerous type of neuron in the brain (*31*), drive the postnatal foliation of the cerebellar cortex by migrating from the external granule layer (EGL) through the molecular layer (ML) and the Purkinje cell layer (PcL) to the internal granule layer (IGL) (*32, 33*). We created a pseudotime ordering of 15,360 CGCs (Fig. 4C and fig. S13) and measured gene expression across this lineage. We defined genes with specific expression at different points in pseudotime (fig. S14) and then used RNA ISH to map these genes to layers of the developing cerebellar cortex. Genes ordered from early to late in pseudotime were progressively expressed from outer to inner layers, consistent with the known direction of CGC migration (Fig. 4D). Our analysis revealed previously unknown pseudotime and layer-specific gene expression patterns within pathways related to axonal development and neuronal migration (fig. S15).



**Fig. 2. Single-cell transcriptome landscape of postnatal brain and spinal cord development by SPLiT-seq.** (**A**) More than 150,000 nuclei from P2 and P11 mouse brains and spinal cords were profiled in a single experiment employing more than 6 million barcode combinations. Transcriptomes were clustered and then visualized using t-SNE. Cells are colored according to cell type. Each cluster was downsampled to 1000 cells for visualization. (**B**) A total of 73 distinct clusters were assigned to nine cell classes based on expression of established markers. The violin plots show marker gene expression in each cluster. (**C**) Astrocyte clusters are highlighted in red in the t-SNE. The violin plots show markers that are differentially expressed between astrocyte subtypes. (**D**) Seven OPC and oligodendrocyte clusters (containing 10,087 nuclei) colocalized in the original t-SNE (highlighted in red), forming a lineage. Cells from these clusters were re-embedded with t-SNE. (**E**) The heat map shows genes expressed differentially across pseudotime in the oligodendrocyte lineage.

Downloaded from http://science.sciencemag.org/ on April 19, 2021

RSS_00082831

## Origins of cerebellar inhibitory interneurons

The question of whether all cerebellar inhibitory interneurons arise from the same progenitor population has been a point of contention (34). Early hypotheses proposed that stellate/basket cells originated from precursors in the EGL, whereas Golgi cell precursors resided in the ventricular epithelium (35). Later evidence indicated that these two interneurons shared a common precursor in the cerebellar white matter (36, 37). However, the molecular profile of the inhibitory neuron lineage in the cerebellum remains largely unknown.

We found a cerebellar inhibitory interneuron lineage (1517 cells) (Fig. 4E and fig. S16A) with a



**Fig. 3. Neuronal clusters exhibit regional specificity.** (**A**) Marker gene expression was used to map neuronal clusters to specific brain regions. (**B**) Sagittal composite RNA ISH maps for nine representative clusters from distinct areas. For each cell type, we averaged ISH intensities from the Allen DMBA across the top five differentially expressed genes. (**C**) Types of pyramidal neurons in the cortex display layer-specific enrichments according to marker genes; cortical pyramidal neurons are highlighted in red in the t-SNE. Expression of example marker genes in pyramidal clusters is shown in the middle, and corresponding available RNA ISH results are on the right. (**D**) Three clusters constitute a developmental trajectory in the hippocampus. Re-embedding these clusters highlights the branching of the two differentiation trajectories in pseudotime. (**E**) Expression of differentiation marker genes is overlaid on the t-SNE. RNA ISH maps (Allen DMBA) show the regional specificity of granule cell and pyramidal neuron markers.

Downloaded from http://science.sciencemag.org/ on April 19, 2021

RSS_00082832



**Fig. 4. Neuronal differentiation trajectories in the cerebellum revealed by SPLiT-seq.** (**A**) Major cell types and their locations in the cerebellum. (**B**) Two types of Purkinje cells with distinct gene expression programs were identified. Early Purkinje cells are primarily found in the P2 brain and late Purkinje cells in the P11 brain. (**C**) t-SNE re-embedding of 15,360 nuclei suggests a pseudotime ordering from proliferating, to migrating, to mature CGCs. (**D**) Expression of marker genes is overlaid on the t-SNE, and the corresponding RNA ISH from Allen DMBA is shown below. Marker genes associated with different layers of the cerebellum are expressed at different points in pseudotime. Gene expression order is consistent with ordering of the physical layers. RNA ISH maps confirm regional specificity of marker genes. (**E**) t-SNE re-embedding of 1890 nuclei reveals a branching differentiation trajectory. Progenitors can either become Golgi cells or stellate/basket cells. (**F**) Markers for progenitors and mature cell types are expressed at different points in pseudotime and have layer specificity.

Downloaded from http://science.sciencemag.org/ on April 19, 2021

shared progenitor branching into either Golgi or stellate/basket cells (fig. S17). This lineage includes a known precursor cell type expressing *Pax2* (*36*) but also a previously unknown, earlier precursor expressing *Pax3* (Fig. 4F). RNA ISH analysis suggests that this Pax3$^+$ precursor is located deep within the cerebellar white matter. Moreover, we found that stellate/basket cells expressed genes specific to the molecular layer, whereas Golgi cells expressed genes specific to the granule cell layer (Fig. 4F and fig. S18). The distribution of P2 and P11 nuclei within the lineage clearly demonstrated that the maturation of Golgi cells was well under way by P2 and complete by P11 (fig. S16B). In contrast, stellate/basket cells had not begun to differentiate at P2 and were still not fully mature by P11. These results indicate that the same molecularly defined precursor gives rise to two distinct interneurons at different stages of development.

**Cell types in the developing spinal cord**

The original clustering was dominated by cells in the brain, and many spinal cord cells did not segregate into well-defined clusters (fig. S19). To resolve more cell types in the spinal cord, we selected all the nuclei originating from the spinal cord and reclustered them (*19*), resulting in 44 clusters: 14 non-neuronal types (12 of which were also found in the brain) and 30 neuronal types (Fig. 5A and tables S8 to S10). We identified 11 different types of γ-aminobutyric acid–releasing (GABAergic) neurons, of which several were also glycinergic (Fig. 5B). One GABAergic type was identified as cerebrospinal fluid–contacting neurons (CSF-cNs) (*38*), with the other 10 types corresponding to inhibitory interneurons. Glutamatergic interneurons accounted for 15 additional types. We also identified two clusters of cholinergic motor neuron types (alpha and gamma) (*39*). To date, known markers exist only for gamma motor neurons (e.g., *Esrrg*) (*40*); however, we identified specific markers for both alpha and gamma neurons (Fig. 5C).

To infer the spatial origin of neuronal types in the spinal cord, we identified the 10 most enriched genes in each type according to our snRNA-seq data and created composite ISH maps based on the Allen Mouse Spinal Cord Atlas (*41*) (Fig. 5D and fig. S20). Some interneuron subtypes appeared to originate primarily from laminae 1 to 3, with others originating from laminae 4 to 6. We found both inhibitory and excitatory neurons in each region. Motor neurons expressed genes found in laminae 9, whereas CSF-cNs were the only neuronal type expressing genes found in the central canal. These data allowed us to create an atlas of gene expression in the early spinal cord, providing a rich resource for further understanding development of the central nervous system.

RSS_00082833



Downloaded from http://science.sciencemag.org/ on April 19, 2021

**Fig. 5. Gene expression patterns and spatial origin of cell types in the spinal cord.** (**A**) Reclustering spinal cord nuclei resulted in 30 neuronal and 14 non-neuronal clusters. (**B**) GABAergic neurons were defined by expression of *Gad1* and *Gad2*. A subset of GABAergic neurons are also glycinergic, based on expression of *Slc6a5*. Glutamatergic neurons were defined by expression of VGLUT2 (*Slc17a6*), whereas cholinergic motor neurons express *Chat*. (**C**) Novel gene markers distinguish gamma motor neurons from alpha motor neurons. (**D**) Inferred spatial origin of neuronal clusters within the spinal cord. We analyzed the Allen Spinal Cord Atlas expression patterns of the top 10 enriched genes in each cluster. Dark purple indicates expression of all 10 genes in the given region, whereas white indicates that none of the 10 genes were expressed in the given region.

## Discussion

In this work, we profiled hundreds of thousands of cells using only basic laboratory equipment with a library preparation cost of ~$0.01 per cell (fig. S21 and table S11). In our analysis of more than 150,000 single-nucleus transcriptomes from two early postnatal stages, we identified 69 types of cells in the brain and 44 types in the spinal cord. We defined many new molecular markers for specific cell types and explored gene expression in four different developmental lineages.

SPLiT-seq's compatibility with fixed cells and fixed nuclei overcomes challenges faced by other scRNA-seq methods. Fixation can reduce perturbations to endogenous gene expression during cell handling (42) and makes it possible to store cells for future experiments. Moreover, the use of nuclei bypasses the need to obtain intact single cells, which can be challenging for many complex tis-

sues. SPLiT-seq's compatibility with formaldehyde-fixed nuclei suggests that it may be used to profile single nuclei from formalin-fixed, paraffin-embedded tissue (43).

SPLiT-seq enables flexible and scalable cell and sample multiplexing. The use of the first-round barcode as a sample identifier makes it possible to profile a large number and variety of samples in parallel, thus minimizing batch effects. As the number of unique barcodes grows exponentially with the number of barcoding rounds, larger numbers of cells than presented here could be processed by adding a fifth barcoding round or by switching to a 384-well plate format. Although for such large cell numbers, sequencing cost may currently be forbidding, it is easy to imagine applications, such as targeted sequencing of gene panels, which would even now benefit from very large cell numbers and only require shallow sequencing depth.

Our hope is that the increased scale and accessibility provided by the low cost and minimal equipment requirements of SPLiT-seq will further accelerate the widespread adoption of scRNA-seq.

REFERENCES AND NOTES

1. S. Picelli et al., Nat. Methods 10, 1096–1098 (2013).
2. T. Hashimshony, F. Wagner, N. Sher, I. Yanai, Cell Reports 2, 666–673 (2012).
3. D. A. Jaitin et al., Science 343, 776–779 (2014).
4. E. Z. Macosko et al., Cell 161, 1202–1214 (2015).
5. A. M. Klein et al., Cell 161, 1187–1201 (2015).
6. G. X. Y. Zheng et al., Nat. Commun. 8, 14049 (2017).
7. B. Tasic et al., Nat. Neurosci. 19, 335–346 (2016).
8. A. Zeisel et al., Science 347, 1138–1142 (2015).
9. S. Marques et al., Science 352, 1326–1329 (2016).
10. S. Darmanis et al., Proc. Natl. Acad. Sci. U.S.A. 112, 7285–7290 (2015).
11. B. B. Lake et al., Science 352, 1586–1590 (2016).
12. A. K. Shalek et al., Nature 498, 236–240 (2013).
13. D. Grün et al., Nature 525, 251–255 (2015).
14. V. Moignard et al., Nat. Biotechnol. 33, 269–276 (2015).

RSS_00082834

15. A. S. Venteicher *et al.*, *Science* **355**, eaai8478 (2017).
16. I. Tirosh *et al.*, *Science* **352**, 189–196 (2016).
17. L. Sang, H. A. Coller, J. M. Roberts, *Science* **321**, 1095–1100 (2008).
18. C. Zheng *et al.*, *Cell* **169**, 1342–1356 e16 (2017).
19. Materials and methods are provided as supplementary materials.
20. S. E. Hickman *et al.*, *Nat. Neurosci.* **16**, 1896–1905 (2013).
21. O. Matcovitch-Natan *et al.*, *Science* **353**, aad8670 (2016).
22. C. Trapnell *et al.*, *Nat. Biotechnol.* **32**, 381–386 (2014).
23. S. W. Levison, J. E. Goldman, *Neuron* **10**, 201–212 (1993).
24. E. S. Lein *et al.*, *Nature* **445**, 168–176 (2007).
25. Allen Institute for Brain Science, Developing Mouse Brain Atlas (2008); available at http://developingmouse.brain-map.org/.
26. T. Iwano, A. Masuda, H. Kiyonari, H. Enomoto, F. Matsuzaki, *Development* **139**, 3051–3062 (2012).
27. C. Zhao, W. Deng, F. H. Gage, *Cell* **132**, 645–660 (2008).
28. A. Lavado, O. V. Lagutin, L. M. L. Chow, S. J. Baker, G. Oliver, *PLOS Biol.* **8**, e1000460 (2010).
29. F. Bonnet *et al.*, *J. Biol. Chem.* **271**, 4373–4380 (1996).
30. S. Herculano-Houzel, *Front. Hum. Neurosci.* **3**, 31 (2009).
31. K. Nakashima, H. Umeshima, M. Kengaku, *Dev. Dyn.* **244**, 748–758 (2015).
32. A. Sudarov, A. L. Joyner, *Neural Dev.* **2**, 26 (2007).
33. J. C. Chang *et al.*, *J. Neuropathol. Exp. Neurol.* **74**, 261–272 (2015).
34. K. Schilling, J. Oberdick, F. Rossi, S. L. Baader, *Histochem. Cell Biol.* **130**, 601–615 (2008).
35. J. Altman, S. A. Bayer, *J. Comp. Neurol.* **257**, 477–489 (1987).
36. S. M. Maricich, K. Herrup, *J. Neurobiol.* **41**, 281–294 (1999).
37. G. Weisheit *et al.*, *Eur. J. Neurosci.* **24**, 466–478 (2006).
38. Y. L. Petracca *et al.*, *Development* **143**, 880–891 (2016).
39. A. Enjin *et al.*, *J. Comp. Neurol.* **518**, 2284–2304 (2010).
40. M. Lalancette-Hebert, A. Sharma, A. K. Lyashchenko, N. A. Shneider, *Proc. Natl. Acad. Sci. U.S.A.* **113**, E8316–E8325 (2016).
41. Allen Institute for Brain Science, Allen Mouse Spinal Cord Atlas (2008); available at http://mousespinal.brain-map.org/imageseries/showref.html.
42. B. Lacar *et al.*, *Nat. Commun.* **7**, 11022 (2016).
43. E. R. Thomsen *et al.*, *Nat. Methods* **13**, 87–93 (2016).

## ACKNOWLEDGMENTS

We thank T. N. Nguyen for help with cluster identity assignment. **Funding:** This work was supported by NIH RO1CA207029 and NSF CCF-1317653 to G.S. and NIH R01NS064404 and R21NS086500 to S.H.P. Z.Y., L.T.G., and B.T. were supported by the Allen Institute for Brain Science. C.M.R. was supported by the National Center for Advancing Translational Sciences of the National Institutes of Health under award number TL1 TR002318. **Author contributions:** A.B.R., C.M.R., R.A.M., and G.S. were mainly responsible for developing the method. A.B.R., C.M.R., R.A.M., A.K., P.S., S.M., W.C., and G.S. designed experiments. A.B.R., C.M.R., R.A.M., A.K., P.S., S.M., and W.C. performed experiments. Brain and spinal cord extraction was performed and supported by D.J.P., S.H.P., and D.L.S. A.B.R., C.M.R., Z.Y., and L.G. performed data analysis. Cluster annotation was performed by A.B.R., C.M.R., Z.Y., L.G., and B.T. A.B.R., C.M.R., B.T., and G.S. wrote the manuscript. **Competing interests:** A.B.R., R.M., and G.S. are inventors on a patent application (14/941,433) submitted by the University of Washington that covers the SPLiT-seq method. **Data availability:** All relevant sequencing files were deposited to the Gene Expression Omnibus under accession number GSE110823.

## SUPPLEMENTARY MATERIALS

www.sciencemag.org/content/360/6385/176/suppl/DC1
Materials and Methods
Supplementary Text
Figs. S1 to S21
Tables S1 to S12
References (*44–92*)

1 February 2017; resubmitted 30 September 2017
Accepted 26 February 2018
Published online 15 March 2018
10.1126/science.aam8999

Downloaded from http://science.sciencemag.org/ on April 19, 2021

# Science

## Single-cell profiling of the developing mouse brain and spinal cord with split-pool barcoding

Alexander B. Rosenberg, Charles M. Roco, Richard A. Muscat, Anna Kuchina, Paul Sample, Zizhen Yao, Lucas T. Graybuck, David J. Peeler, Sumit Mukherjee, Wei Chen, Suzie H. Pun, Drew L. Sellers, Bosiljka Tasic and Georg Seelig

*Science* **360** (6385), 176-182.
DOI: 10.1126/science.aam8999originally published online March 15, 2018

**Identifying single-cell types in the mouse brain**
The recent development of single-cell genomic techniques allows us to profile gene expression at the single-cell level easily, although many of these methods have limited throughput. Rosenberg *et al.* describe a strategy called split-pool ligation-based transcriptome sequencing, or SPLiT-seq, which uses combinatorial barcoding to profile single-cell transcriptomes without requiring the physical isolation of each cell. The authors used their method to profile >100,000 single-cell transcriptomes from mouse brains and spinal cords at 2 and 11 days after birth. Comparisons with in situ hybridization data on RNA expression from Allen Institute atlases linked these transcriptomes with spatial mapping, from which developmental lineages could be identified.
*Science*, this issue p. 176

| | |
|---|---|
| ARTICLE TOOLS | http://science.sciencemag.org/content/360/6385/176 |
| SUPPLEMENTARY MATERIALS | http://science.sciencemag.org/content/suppl/2018/03/14/science.aam8999.DC1 |
| REFERENCES | This article cites 88 articles, 23 of which you can access for free http://science.sciencemag.org/content/360/6385/176#BIBL |
| PERMISSIONS | http://www.sciencemag.org/help/reprints-and-permissions |

Downloaded from http://science.sciencemag.org/ on April 19, 2021

Use of this article is subject to the Terms of Service

*Science* (print ISSN 0036-8075; online ISSN 1095-9203) is published by the American Association for the Advancement of Science, 1200 New York Avenue NW, Washington, DC 20005. The title *Science* is a registered trademark of AAAS.

Copyright © 2018 The Authors, some rights reserved; exclusive licensee American Association for the Advancement of Science. No claim to original U.S. Government Works

RSS_00082836



www.sciencemag.org/cgi/content/full/science.aam8999/DC1

# Supplementary Materials for

## Single-cell profiling of the developing mouse brain and spinal cord with split-pool barcoding

Alexander B. Rosenberg,*† Charles M. Roco,* Richard A. Muscat, Anna Kuchina, Paul Sample, Zizhen Yao, Lucas Gray, David J. Peeler, Sumit Mukherjee, Wei Chen, Suzie H. Pun, Drew L. Sellers, Bosiljka Tasic, Georg Seelig†

*These authors contributed equally to this work.
†Corresponding author. Email: alex.b.rosenberg@gmail.com (A.B.R.); gseelig@uw.edu (G.S.)

Published 15 March 2018 on *Science* First Release
DOI: 10.1126/science.aam8999

**This PDF file includes:**

Materials and Methods
Supplementary Text
Figs. S1 to S21
Tables S1 to S3, S8, and S11
References

**Other Supplementary Material for this manuscript includes the following:**
(available at www.sciencemag.org/cgi/content/full/science.aam8999/DC1)

Tables S4 to S7, S9, S10, and S12 (as Excel files)

RSS_00082837

**Materials and Methods**

**Experimental Methods**

Oligonucleotides

The sequences and modifications for all oligonucleotides used can be found in Table S1.

Cell Culture

HEK293 and Hela-S3 cells were cultured in DMEM + 10% FBS, while NIH/3T3 cells were cultured in DMEM + 10% FCS. Cells were rinsed twice with 1x PBS, then detached by incubating 2-5 min at room temperature with 1ml of TrypLE. Once cells were detached, they were added to 2mL of media with 10% FBS. In mouse-human species mixing experiments, cells were combined at the desired concentrations at this step.

Fixation

Cells were first centrifuged for 3 min at 500g at 4°C. The pellet was resuspended in 1mL of cold PBS-RI, 1x PBS + 0.05U/µL RNase Inhibitor (Enzymatics). The cells were then passed through a 40 µm strainer into a 15 mL falcon tube. 3 mL of cold 1.33% formaldehyde solution (in 1x PBS) was then added to 1 mL of cells. Cells were fixed for 10 min before adding 160 µL of 5% Triton X-100. Cells were then permeabilized for 3 min and centrifuged at 500g for 3 min at 4°C. Cells were resuspended in 500uL of PBS-RI before adding 500 µL of cold 100 mM Tris-HCL pH 8. In order to make the cells easier to pellet, 20 µL of 5% Triton-X100 was added. Then, cells were spun down at 500g for 3 min at 4°C and resuspended in 300 µL of cold 0.5 X PBS-RI. Finally, cells were again passed through a 40 µm strainer into a new 1.5 mL tube. Cells were then counted on a hemocytometer or flow-cytometer and diluted to 1,000,000 cells/mL.

In-cell Reverse Transcription

The first round of barcoding occurs through an *in situ* reverse transcription (RT) reaction. Cells are split into up to 48 wells, each containing barcoded well-specific reverse transcription primers. Both random hexamer and anchored poly(dT)$_{15}$ barcoded RT primers were used in each well (Table S1). For each well, we added 4 µL of 5X RT Buffer, 0.625 µL of RNase-free water, 0.125 µL RNase Inhibitor (Enzymatics), 0.25 µL µL SuperaseIn RNase Inhibitor (Ambion), 1 µL of 10 mM dNTPs each (ThermoFisher), 2 µL of 25 µM random hexamer barcoded RT primer, 2uL of 25 µM poly(dT)$_{15}$ barcoded RT primer, 2 µL of Maxima H Minus Reverse Transcriptase (ThermoFisher), and 8 µL of cells in 0.5X PBS-RI. The plate incubated in a thermocycler for 10 min at 50°C before cycling for three times at 8°C for 12s, 15°C for 45s, 20°C for 45s, 30°C for 30s, 42°C for 2 min, and 50°C for 3 min, followed by a final step at 50°C for 5 min. RT reactions are pooled back together into a 15 mL falcon tube. After adding 9.6 µL of 10% Triton X-100, cells were centrifuged for 3 min at 500g at 4°C. The supernatant was removed and cells

2

RSS_00082838

were resuspended in 2 mL of 1X NEB buffer 3.1 with 20 µL of Enzymatics RNase Inhibitor.

Preparing Oligonucleotides for Ligations

The second and third barcoding round consist of a ligation reaction. Each round uses a different set of 96 well barcoding plates (Table S1). Ligation rounds have a universal linker strand with partial complementarity to a second strand containing the unique well-specific barcode sequence added to each well. These strands were annealed together prior to cellular barcoding to create a DNA molecule with three distinct functional domains: a 5' overhang that is complementary to the 3' overhang present on the cDNA molecule (may originate from RT primer or previous barcoding round), a unique well-specific barcode sequence, and a 3' overhang complementary to the 5' overhang present on the DNA molecule to be subsequently ligated (Fig. S1A). For the third round barcodes, the 5' overhang also contains a unique molecular identifier (UMI), a universal PCR handle, and a biotin molecule. Linker strands and barcode strands (IDT) for the ligation rounds are added to RNase-free 96 well plates to a total volume of 10 µL/well with the following concentrations: round 2 plates contain 11 µM linker strand (BC_0215) and 12 µM barcodes and round 3 plates contain 13 µM linker strand (BC_0060) and 14 µM barcodes. Strands for ligation barcoding rounds are annealed by heating plates to 95°C for 2 minutes and cooling down to 20°C at a rate of -0.1°C per second.

Blocking strands are complementary to the 3' overhang present on the DNA barcodes used during ligation barcoding rounds. Blocking occurs after well-specific barcodes have hybridized and were ligated to cDNA molecules, but before all cells are pooled back together. Blocking ensures that unbound DNA barcodes cannot mislabel cDNA in future barcoding rounds. 10 µL of blocking strand solution was added to each of the 96 wells after each round of hybridization and ligation of DNA barcodes. Blocking strand solutions were prepared at a concentration of 26.4 µM (BC_0216) for round 2 and 30.8 µM (BC_0066) for round 3. Blocking strands for the first two rounds were in a 2.5X T4 DNA Ligase buffer (NEB) while the third round was in a 150 mM EDTA solution (to terminate ligase activity). Blocking strands were incubated with cells for 30 min at 37°C with gentle shaking (50 rpm).

In-cell Ligations

A 2.04 mL ligation mix was made containing 1,287.5 µL of RNase-free water, 500 µL 10X T4 Ligase buffer (NEB), 100 µL T4 DNA Ligase (400 U/µL, NEB), 40 µL RNase inhibitor (40 U/µL, Enzymatics), 12.5 µL SuperaseIn RNase Inhibitor (20 U/µL, Ambion), and 100 µL of 5% Triton-X100. This ligation mix and the 2 mL of cells in 1X NEB buffer 3.1were added to a basin and mixed thoroughly to make a total of 4.04 mL.

Using a multichannel pipet, 40 µL of cells in ligation mix were added to each of the 96 wells in the first-round barcoding plate. Each well already contained 10 µL of the appropriate DNA barcodes. The round 2 barcoding plate was incubated for 30 min at

3

RSS_00082839

37°C with gentle shaking (50 rpm) to allow hybridization and ligation to occur before adding blocking strands. Cells from all 96 wells were passed through a 40 µM strainer and combined into a single multichannel basin, where an additional 100 µL of T4 DNA Ligase was added. Subsequent steps in round 3 were identical to round 2, except that 50 µL of pooled cells were split and added to barcodes in round 2 (total volume of 60 µL/well). This adjustment was made to account for increased total volume during each split-pool round as well as pipetting errors.

Lysis and Sublibrary Generation

After the third round of barcoding, 70 µL of 10% Triton-X100 is added to the cell solution before spinning it down for 5 min at 1000G and 4°C. We carefully aspirated the supernatant, leaving about 30 µL to avoid removing the pellet. We then resuspended the cells in 4 mL of wash buffer (4 mL of 1X PBS, 40 µL of 10% Triton X-100 and 10 µL of SUPERase In RNase Inhibitor) and spun down for 5 min at 1000G at 4°C. We then aspirated the supernatant and resuspended in 50 µL of PBS-RI. After counting cells, we aliquoted them into sublibraries (in 1.7 mL tubes). The number of sublibraries generated will determine how many splits are made for the fourth round of barcoding. After adding the desired number of cells to each sublibrary, we brought the volume of each to 50 µL by adding 1x PBS, then added 50 µL of 2X lysis buffer (20 mM Tris (pH 8.0), 400 mM NaCl, 100 mM EDTA (pH 8.0), and 4.4% SDS) and 10 µL of proteinase K solution (20mg/mL). We incubated cells at 55°C for 2 hours with shaking at 200 rpm to reverse formaldehyde crosslinks. Afterwards, we froze lysates at -80°C.

Purification of cDNA

We first prepared 40 µL Dynabeads MyOne Streptavidin C1 beads (ThermoFisher) per sublibrary by washing them 3x with 800 µL of 1X B&W buffer with 0.05% Tween-20 (refer to manufacturer's protocol for B&W buffer), before resuspending beads in 100 µL 2X B&W buffer (with 2 µL of SUPERase In Rnase Inhibitor) per sample.

To inhibit residual proteinase K activity, we added 5 µL of 100 µM PMSF to each thawed lysate and incubated at room temperature for 10 minutes. We then added 100 µL of resuspended Dynabeads MyOne Streptavidin C1 (ThermoFisher) magnetic beads to each lysate. We then allowed binding to occur for 60 min at room temperature (with agitation on a microtube foam insert). The beads were washed twice with 1X B&W buffer and once more with 10mM Tris containing 0.1% Tween-20 (with each wash including of 5 min of agitation after resuspension of beads).

Template Switch

Streptavidin beads with bound cDNA molecules were resuspended in a solution containing 44 µL of 5X Maxima RT buffer (ThermoFisher), 44 µL of 20% Ficoll PM-400 solution, 22 µL of 10 mM dNTPs each (ThermoFisher), 5.5 µL of RNase Inhibitor (Enzymatics), 11 µL of Maxima H Minus Reverse Transcriptase (ThermoFisher), and 5.5 µL of 100uM of a template switch primer (BC_0127). The template switch primer

4

RSS_00082840

contains two ribonucleic guanines followed by a locked nucleic acid guanine at the end of the primer (Exiquon). The beads were incubated at room temperature for 30 minutes and then at 42°C for 90 minutes with gentle shaking.

PCR

After washing beads once with 10 mM Tris and 0.1% Tween-20 solution and once with water, beads were resuspended into a solution containing 110 µL of 2X Kapa HiFi HotStart Master Mix (Kapa Biosystems), 8.8 µL of 10 µM stocks of primers BC_0062 and BC_0108, and 92.4 µL of water. PCR thermocycling was performed as follows: 95°C for 3 mins, then five cycles at 98°C for 20 seconds, 65°C for 45 seconds, 72°C for 3 minutes. After these five cycles, Dynabeads beads were removed from PCR solution and EvaGreen (Biotium) was added at a 1X concentration. Samples were again placed in a qPCR machine with the following thermocycling conditions: 95°C for 3 minutes, cycling at 98°C for 20 seconds, 65°C for 20 seconds, and then 72°C for 3 minutes, followed by a single 5 minutes at 72°C after cycling. Once the qPCR signal began to plateau, reactions were removed.

Tagmentation

PCR reactions were purified using a 0.8X ratio of SPRI beads (Kapa Pure Beads, Kapa Biosystems) and cDNA concentration was measured using a qubit. For tagmentation, a Nextera XT Library Prep Kit was used (Illumina). 600 pg of purified cDNA was diluted in water to a total volume of 5 µL. 10 µL of Nextera TD buffer and 5 µL of Amplicon Tagment enzyme were added to bring the total volume to 20 µL. After mixing by pipetting, the solution was incubated at 55°C for 5 minutes. A volume of 5 µL of neutralization buffer was added and the solution was mixed before incubation at room temperature for another 5 minutes. In this order, a 15 µL volume of Nextera PCR mix, 8 µL of water, and 1 µL of each primer (P5 primer: BC_0118, one indexed P7 primer: BC_0076-BC_0083) at a stock concentration of 10 µM was added to the mix, making a total volume of 50 µL. Using distinct, indexed PCR primers, this PCR reaction can be used to add a unique barcode to each sublibrary barcoded. PCR was then performed with the following cycling conditions: 95°C for 30 seconds, followed by 12 cycles of 95°C for 10 seconds, 55°C for 30 seconds, 72°C for 30 seconds, and 72°C for 5 minutes after the 12 cycles. 40 µL of this PCR reaction was removed and purified with a 0.7X ratio of SPRI beads to generate an Illumina-compatible sequencing library.

Illumina Sequencing

Libraries were sequenced on MiSeq or NextSeq systems (Illumina) using 150 nucleotide (nt) kits and paired-end sequencing. Read 1 (66 nt) covered the transcript sequences. Read 2 (94 nt) covered the UMI and UBC barcode combinations. The index read (6 nt), serving as the fourth barcode, covered the sublibrary indices introduced after tagmentation.

Mouse Brain and Spine Nuclei Extraction

5

RSS_00082841

Brain and spinal cord tissue was harvested from two postnatal mouse pups (P2 and P11) that had been exsanguinated by transcardial saline perfusion. The mouse strain used was C57BL/6 x DBA/2. All animal procedures were done using protocols approved by the Institutional Animal Care and Use Committee at the University of Washington.

Nuclei extraction protocol was adapted from Krishnaswami *et al* (*42*). Briefly, a NIM1 buffer was made consisting of 250 mM sucrose, 25 mM KCl, 5 mM $MgCl_2$, and 10 mM Tris (pH=8.0). A homogenization buffer was made consisting of 4.845 mL of NIM1 buffer, 5 μL of 1 mM DTT, 50 μL of Enzymatics RNase Inibitor (40U/μL), 50 μL of SuperaseIn RNase Inhibtor (20U/μL), and 50 μL of 10% Triton-X100.

A 1 mL dounce homogenizer (Wheaton, cat. no. 357538) was used for nuclei extraction. After adding mouse brain and spinal cord tissue, 700 μL of homogenization buffer was added to the douncer. Then 5 strokes of loose pestle followed by 10-15 strokes of tight pestle were performed. Homogenization buffer was added up to a volume of 1 mL. The homogenate was filtered with a 40um strainer into 5mL Eppendorf tubes and then spun down for 4 minutes at 600g at 4°C. After removing supernatant, the pellet was resuspended in 1 mL of 1X PBS-RI. Then 10 μL of BSA was added and solution was spun down again for 4 min at 600g at 4°C. Nuclei were then passed through a 40 μm strainer once more before being counted.

## <u>Computational Methods</u>

<u>Alignment and generation of cell-gene matrices</u>

To simplify analysis, we first removed any dephased reads in our library (last 6 bases of read did not match the expected sequence). Reads were then filtered based on quality score in the UMI region. Any read with >1 low-quality base (phred <=10) were discarded. Reads with more than one mismatch in any of the three 8 nt cell barcodes were also discarded. The cDNA reads (Read 1) were then mapped to either a combined mm10-hg19 genome or the mm10 genome using STAR (*44*). The aligned reads in the resulting bam file were mapped to exons and genes using TagReadWithGeneExon from the drop-seq tools (*4*). We only considered the primary alignments. Reads that mapped to a gene, but no exon, were considered intronic. Reads mapping to no gene were considered intergenic. We then used Starcode (*45*) to collapse UMIs of aligned reads that were within 1 nt mismatch of another UMI, assuming the two aligned reads were also from the same UBC. Each original barcoded cDNA molecule is amplified before tagmentation and subsequent PCR, so a single UMI-UBC combination can have several distinct cDNA reads corresponding to different parts of the transcript. Occasionally STAR will map these different reads to different genes. As a result, we chose the most frequently assigned gene as the mapping for the given UMI-UBC combination. We then generated a matrix of gene counts for each cell (N x K matrix, with N cells and K genes). For each gene, both intronic and exonic UMI counts were used.

<u>Selecting high quality transcriptomes from the mouse CNS experiment</u>

6

RSS_00082842

We discarded any transcriptomes with >1% reads mapping to mt-RNA, to ensure that all of our transcriptomes originated from nuclei. Transcriptomes with fewer than 250 expressed genes or greater than 2,500 expressed genes were also discarded. This resulted in retention of 163,069 transcriptomes. After clustering (see below), cells in putative doublet clusters were filtered as well, yielding 156,049 transcriptomes used for downstream analysis.

<u>Hierarchical clustering of nuclei from the mouse CNS</u>

Cells that passed the QC were clustered using an iterative clustering pipeline described in previous studies (*7*, *46*), with adaption for sparse datasets with large numbers of cells. Briefly, cells were clustered in an iterative top down approach. Each clustering iteration consists of three key steps: high variance gene selection, dimensionality reduction, and clustering. To choose high variance genes, we first fitted a loess regression curve between average scaled gene counts and dispersion (variance divided by mean). The regression residuals are then fitted by a normal distribution based on 25% and 75% quantiles to calculate p-values and adjusted p-value. High variance genes with adjusted p-values smaller than 0.1 were used to compute principle components. The proportion of variance for all PCs were converted to Z-values, and PCs with Z-values greater than two were selected for clustering. The Jaccard-Louvain algorithm (*47*) was then used for clustering, which first computes the k-nearest-neighbors (k=15) for each cell based on reduced PCs, then constructs the cell-cell similarity matrix with the Jaccard index based on the number of shared neighbors between every cell, and finally performs clustering using the Louvain algorithm. To make sure the resulting clusters all had distinguishable transcriptomic signatures, we calculated the differentially expressed genes (DEG) for every pair of clusters. A pair of clusters are separable if the deScore, defined as sum of -log10 (adjusted p-value) for all DEG (fold change >2 and adjusted p-value < 0.01, present in >40% cells in foreground, and foreground vs background enrichment ratio is greater than 3.3) is greater than 150 (every gene can contribute maximal score of 20). We merged the nearest pair of clusters that did not pass the above criterion iteratively until all clusters were separable.

We then iteratively applied the same steps described above to each cluster identified from the first clustering iteration. This iterative process was repeated until no further partitions were found. It was possible that clusters derived from different parent clusters could be similar to each other. Therefore, we computed pairwise DEG again, but reduced the threshold deScore threshold to 80 to prevent over agglomeration. This resulted in 98 clusters.

Clusters consisting of less than 40 cells were discarded (5 clusters consisting of 141 total cells).

Putative doublet clusters (clusters in which many transcriptomes were generated from doublets between two different cell types) were identified by searching for co-expression of known markers of different cell types (*e.g.* the neuronal marker *Meg3* (*48*) and the

7

RSS_00082843

oligodendrocyte marker *Mbp* (*9*)). This resulted in the identification of 12 clusters that were likely generated from doublet transcriptomes. These 12 clusters, consisting of 6,878 cells, were then discarded from further analysis.

Finally, we applied a more stringent test of differential expression between clusters. Using previously described criteria (*4*), we merged pairs of clusters with less than 10 differentially expressed genes (>1 natural log difference between clusters and expressed in >20% of cells in one of the two clusters). This procedure resulted in 8 clusters merging into other clusters, yielding 73 final clusters (156,049 nuclei).

PCA and t-distributed Stochastic Neighbor Embedding

We first normalized the matrix of UMI counts. For each cell, we divided the UMI counts by the total number of UMIs per cell. We subtracted the mean from each gene and then divided by the standard deviation of each gene.

We selected a subset of genes on which to perform PCA (for the mouse CNS analysis we selected genes with at least 4 UMI counts in 10 or more transcriptomes). PCA was performed on the normalized matrix using TruncatedSVD from the python package scikit-learn (*49*). For the mouse CNS analysis, we retained the first 100 PCA components and then performed t-distributed Stochastic Neighbor Embedding using a Matlab implementation of the barnes-hut t-SNE algorithm (*50*).

Lineage analysis

While previous work has identified developmental trajectories using scRNA-seq, this has mostly been confined to *in vitro* differentiation experiments. Finding differentiation trajectories in our dataset first required grouping clusters together that might form a putative lineage. To do this we followed the following procedure:

1. *Find clusters near one another in the original t-SNE embedding (Fig. 2A) that seem to form elongated structures.* In a developmental lineage, we expect cells at the start of the lineage to have substantially different transcriptomes than those at the end of the lineage, leading to this "stretching" of the lineage in the t-SNE, with intermediate cells connecting these early and late cells.

2. *Confirm that transcriptomes from the P2 mouse and P11 mouse segregate towards opposite ends of the putative lineage in the t-SNE embedding (Fig. S6).* This gives us additional confidence that the primary variance in gene expression across the putative lineage does in fact correspond to developmental stages rather than some other factor (*e.g.* regional origins).

3. *Re-embed the clusters in the putative lineage with PCA and t-SNE.* For each putative lineage, we redid PCA and t-SNE with just transcriptomes in the clusters forming the putative lineage. We did this to ensure the ordering of transcriptomes was driven only by expression of relevant genes (*e.g.* so neuronal PCA components do not drive oligodendrocyte ordering). This analysis resulted in the vast majority of re-embedded transcriptomes forming one connected group, with a small number of cells forming other distinct, new clusters. We used the density-

8

based DBSCAN algorithm (*51*) to identify this main lineage and to discard the transcriptomes from these smaller clusters.

4. *Measure gene expression along pseudotime curve.* Each of the lineages we analyzed in this work again formed elongated connected structures when we re-embedded transcriptomes using t-SNE. We then determined the order of transcriptomes through the t-SNE, by projecting them onto a manually drawn curve spanning the entire embedding. The moving average of gene expression was then calculated across these ordered transcriptomes.

5. *Confirm the identity of lineages using known gene markers from literature.* For each lineage, we further validated it using previously characterized marker genes from literature in addition to *in situ* hybridization data from the Allen Brain Institute (*25*).

Generating composite ISH maps for each cluster

We downloaded *in situ* hybridization (ISH) data collected by the Allen Brain Institute from the Kharchenko lab for P4 and P14 mice (*25*). The data consists of 2,187 gene measurements compiled into a 3D (P4: 50 x 43 x 77, P14: 50 x 40 x 68) map of expression "energies" corresponding to ISH staining intensities in each voxel. We used the Allen brain structure annotations to mask any voxels outside annotated brain structures. For voxels with missing data for a given gene, we set the voxel energies to the mean energy for that gene.

We then used the Allen ISH data to create a composite map of differentially expressed genes for each cluster. For each cluster, the top 5 enriched genes (with ISH data) were determined using differential gene expression described above. We normalized the expression of each gene by dividing the intensity in each voxel by the average intensity across all the voxels. To generate a composite map, we then averaged the intensity across all 5 genes within each voxel. To visualize the 3D map in a single image, we summed across sagittal slice numbers 7-24 (out of 50 slices) of the 3D map. Only slices 7-24 were used because many genes did not contain data in the other slices. Genes used to generate these maps can be found in Table S6 and S7.

Re-clustering spinal cord transcriptomes

In our original clustering, over 60% of transcriptomes from the spinal cord clustered into a large unresolved cluster (Fig. S19). Given that we had ~6x more brain nuclei relative to spinal cord nuclei, it is not surprising that the majority of PCA components selected for clustering describe variance in gene expression in the brain rather than the spine. PCA components explaining expression differences in the spinal cord may have been filtered out as "not significant" (Z-value<2).

Therefore, we reasoned that we might be able to distinguish more cell types in the spinal cord if we re-clustered only the spinal cord transcriptomes. For this clustering, we chose to use the Monocle 2 package (*52*). As suggested in the Monocle manual, we first selected high-variance genes (with high dispersion), before performing PCA. We then

9

RSS_00082845

used the first 50 components as input to t-SNE. Clusters were then identified using the density peak clustering option in Monocle. As previously, we removed clusters with less than 40 nuclei and then merged pairs of clusters with less than 10 differentially expressed genes (>1 natural log difference between clusters and expressed in >20% of cells in one of the two clusters). We also removed one putative doublet cluster based on co-expression of VLMC markers (*Col1a1*) (*52*) and neuronal markers (*Meg3*) (*48*). This led to the identification of 44 different of cell types in the spinal cord.

Inferring spatial origin of spinal cord nuclei

To infer the spatial origin of each spinal cord cluster, we used annotated P4 ISH maps from the Allen Spinal Cord Atlas (*41*). Each gene has been manually annotated with 11 binary values to describe different expression patterns (Laminae 1-3, Laminae 4-6, Laminae 7-8, Laminae 9, Intermediolateral Column, Gray Matter, White Matter, Central Canal, Ventral-dorsal Midline in Gray Matter, Radially Arrayed in White Matter, and Vascular-like in Gray and White Matter).

We then used these data to create a composite map of differentially expressed genes for each cluster. For each cluster, the top 10 enriched genes (with spinal cord ISH data) were determined using differential gene expression described above. We then plotted the fraction of these 10 genes with expression in each laminae/region in the spinal cord (see Fig. S20 for all neuronal clusters).

Comparing the sensitivity of SPLiT-seq to droplet-based methods

To compare the sensitivity of SPLiT-seq to droplet-based approaches, we measured the number of UMIs and genes detected in mouse NIH/3T3 cells for SPLiT-seq, Drop-seq, and 10x Genomics (Chromium v2 chemistry) as a function of raw sequencing reads per cell. For Drop-seq, we analyzed the 100 STAMP dataset collected in Macosko et. al. (*4*) (SRA: SRR1748412). For 10x Genomics, we analyzed the 100 cell dataset available on their website (https://support.10xgenomics.com/single-cell-gene-expression/datasets/2.1.0/hgmm_100).

The same pipeline was used to process each sample, with the only modifications made to account for the changes in cell barcode and UMI lengths. In the first step, reads with >1 base with quality score less than phred 10 in the UMI were discarded. Reads were then aligned with STAR defaults to a combined mouse-human genome. We fixed cell barcodes with an edit distance of <=1 for all three methods. UMIs that were <=1 edit distance and corresponded to both the same cell barcode and gene were then collapsed. When we generated digital count matrices, we included intronic reads for 10x Genomics and SPLiT-seq, but excluded them from DropSeq because they led to a substantial increase in species impurity. We then subsampled each dataset between 5,000-50,000 raw reads per NIH/3T3 cell and recorded the number of UMIs as well as genes detected per cell (Fig. S3).

10

RSS_00082846

**Supplementary Text**

Barcode Collisions

Barcode collisions result from two scenarios: a mouse and human cell form a physical doublet and remain stuck to each other for the entirety of split-pool barcoding experiment, or a mouse and human cell happen to be barcoded with the same combination of barcodes by chance. The first issue can in principle be addressed by FACS sorting cells before barcoding, the second by increasing the number of barcode combinations (either by adding additional barcoding rounds or by switching to 384-well plates for any or all of the barcoding rounds).

Cluster Identification of Mouse Brain and Spinal Cord Cell Types

The 54 neuronal clusters deriving from the brain were characterized using a number of known markers. Three neuronal clusters (clusters 1-3) were determined to be mitral/tufted cells (*Tbx21*+, *Deptor*+) (*53, 54*), types of projection neurons specific to the olfactory bulb. Consistent with previous work (*55*), medium spiny neurons (cluster 4) expressed markers specific to the striatum (*Rarb*, *Drd2*). More than 22,000 cortical pyramidal neurons clustered into 14 types (clusters 5-18), with nearly all expressing the pan-excitatory cortical marker *Satb2* (*56*). Using known markers (*7, 8*), we were able to further assign most cortical types to specific layers (Fig. 3C).

We assigned cluster 19 to the rostral midbrain based on unique expression of *Tfap2d*, a gene known to be required in midbrain development (*57*). We identified one excitatory (cluster 20, *Slc17a6*+) and one inhibitory neuron (cluster 21, *Gad1/2*+) type originating from the thalamus (both *Fign*+). Eight different types of neurons expressed markers specific to the cerebellum (clusters 22-29). Expression of *Pax2* was found in two inhibitory interneuron types from the medulla (clusters 30 and 31), consistent with ISH data (*25*). Nigral dopaminergic neurons (cluster 32) were identified based on specific expression of the dopamine transporter *Slc6a3* (*35*), whose expression is restricted to the substantia nigra of the basal ganglia (*25*). Nine types of pyramidal cells and granular cells were inferred to have originated from the hippocampus (clusters 33-41). Excitatory neurons from the spinal cord (clusters 42 and 43) were marked by specific expression of *Pde11a*. We found eight types of migrating GABAergic interneurons (clusters 44-51, *Gad1/2*+), based on expression of members of the *Dlx* family (*58*). Cajal-Retzius cells (cluster 52) expressed *Trp73*, which is expressed in the P4 hippocampus and the marginal zone of the cortex, confirming their known distribution (*59*). Clusters 53 and 54 contained pan-neuronal markers, but could not be assigned to a specific cell type. After inspection of sample distribution for the unresolved clusters (Fig. S19), it was found that these clusters represented neurons originating from the spinal cord. Re-embedding of these cells resulted in substantial increase in resolution (Fig. 5).

There were 19 non-neuronal clusters composed of 27,096 individual transcriptomes. We identified 6 types of oligodendrocytes (clusters 55-60) and one OPC cluster (cluster 61), which together formed a lineage (Fig. 2D-E, Fig. S7, Fig. S8). Immune cells expressed the pan-immune marker *Dock2*, but *Ly86* expression was restricted to microglia (cluster

11

RSS_00082847

63), whereas *Mrc1* expression occurred only in macrophages (cluster 62, Fig. S5) (*20, 21*). Both types of vascular cells expressed *Rgs5*, with endothelial cells (cluster 64) marked by distinct expression of *Flt1* and *Kdr* (*10*) and smooth muscle cells (cluster 65) marked by expression of *Abcc9* and *Pdgfrb* (Fig. S5) (*60*). We identified two vascular and leptomeningeal cell (VLMC) subtypes (clusters 67 and 66), both expressing previously characterized markers *Col1a1* and *Pdgfra* (*12*). Cluster 67 VLMCs expressed *Slc47a1* and *Slc47a2*, while cluster 66 VLMCs specifically expressed *Slc6a13* (Fig. S5).

Astrocytes were the most abundant non-neuronal cell type, accounting for 50% of all non-neuronal nuclei (n=13,481). Among the four astrocyte types (all *Aldh1l1*+), only Bergman glia (cluster 71) expressed *Gria1* (Fig. 2C) (*22*). Cluster 70 astrocytes—found only in the spinal cord—expressed *Gfap* highly, while cluster 69 astrocytes—found almost exclusively in the brain—expressed *Prdm16*. Cluster 68 astrocytes—found in both the brain and spinal cord—were defined by specific expression of *Slc7a10*. Ependymal cells (cluster 72) uniquely expressed many previously characterized markers (*11*) such as *Foxj1* and *Dnah1/2/5/9/10/11*. Olfactory ensheathing cells (OEC, cluster 73), a type of Schwann cell specific to the olfactory bulb (*26*), were identified by unique expression of *Mybpc1,* a gene expressed specifically in the outer layers of the olfactory bulb (*27*).

Among the 30 neuronal clusters found in the spinal cord, 28 neuronal types were identified using markers from previous literature. Clusters highly expressing *Gad1/2* were determined to be GABAergic neurons. Subsets of these GABAergic neurons included glycinergic neurons, marked by *Slc6a5*, and cerebrospinal fluid-contacting neurons, marked by *Pkd2l1* and *Pkd1l2* (*55*). Clusters expressing *Slc17a6* (VGlut1) were identified as glutamatergic neurons. A subset of these glutamatergic neurons also expressed *Slc17a8* (VGlut3). The two cholinergic motor neurons (alpha and gamma) were identified with *Chat* expression (*56*).

Cost Analysis of SPLiT-seq

An itemized cost analysis of SPLiT-seq was conducted (Table S11) for an experiment using two sublibraries (884,000 barcode combinations: 48 x 96 x 96 x 2), which makes it possible to sequence 44,000 cells with an expected 5% barcode collision rate at a cost of $0.02 per cell. If six sublibraries are used (2.65 million barcode combinations: 48 x 96 x 96 x 6), more than 132,000 cells could be processed at a cost of $0.01 per cell. The majority of costs derive from reverse transcription and ligation enzymes. The price per cell drops dramatically with scale because experimental costs do not increase linearly with cell numbers. Adding additional sublibraries does marginally increase costs, largely due to the use of more reverse transcriptase, polymerase, and Nextera reagents.

12

RSS_00082848



**Fig. S1. Molecular diagram and exponential scalability of SPLiT-seq. (A)** Fixed and permeabilized cells are randomly split into wells that each contain reverse transcription primers with a well-specific barcode. *In situ* reverse transcription converts RNA to cDNA while appending the well-specific barcode. Cells are then pooled and again randomly split into a second set of wells, each containing a unique well-specific barcode. These barcodes are hybridized and ligated to the 5'-end of the barcoded reverse transcription primer to add a second round of barcoding. The cells are pooled back together and a subsequent split-ligate-pool round can be performed. After the last round of ligation,

13

RSS_00082849

cDNA molecules contain a cell-specific combination of barcodes, a unique molecular identifier, and a universal PCR handle on the 5'-end.  A fourth barcoding round is performed during the PCR step of library preparation. **(B)** Exponential scalability of SPLiT-seq with number of split-pool rounds. The maximum number of cells was calculated with the assumption that the number of barcode combinations must be twenty times greater than the number of cells.

14

RSS_00082850



**Fig S2. SPLiT-seq performance evaluation: species purity, gene expression correlation, gene detection, and cell preservation. (A)** Cells or nuclei of different origin (e.g. mouse and human cell lines) were mixed and profiled with SPLiT-seq. Cells were either processed immediately or after two weeks at -80°C. **(B)** Fraction of reads mapping to the correct species for mouse and human cells. **(C)** Fraction of reads mapping to the correct species for mouse and human nuclei. **(D)** Gene expression in nuclei and whole cells is highly correlated (Pearson-r: 0.952). Average gene expression across all cells (log average transcripts per million) is plotted for each experiment. **(E)** Gene expression from frozen and stored nuclei is highly correlated to nuclei processed immediately (Pearson-r: 0.991). **(F)** Gene counts from mixing experiments performed with fresh and frozen whole cells and nuclei. Median gene counts for fresh cells: 5,498; frozen cells: 5,540; nuclei: 4,663; frozen nuclei: 4,982. **(G)** Storing cells at -80C for two weeks does not affect cell type identification. Immediately processed cells as well as frozen and stored cells were clustered together using t-SNE. Immediately processed cells and frozen cells cluster according to cell type rather than batch/processing method. Similar proportions of cells in each cluster are maintained for frozen cells.

15

RSS_00082851



**Fig. S3. Downsampling comparison of SPLiT-seq to other scRNA-seq methods**.
Median UMIs **(A)** or genes **(B)** detected per mouse cell (NIH/3T3) are shown as a
function of raw sequencing reads. The reads for all cells were down-sampled from 50,000
to 5,000 in increments of 5,000. We compared 10x Genomics data collected in-house (at
the Allen Institute for Brain Science) as well as the best available dataset on the 10x
Genomics website with respect to detected UMIs per cell. Drop-seq data was taken from
Macosko *et al*, while data used for SPLiT-seq was taken from the species-mixing
experiment presented in Fig. 1.

16

RSS_00082852







**Fig. S4. Number of nuclei in each well during three rounds of barcoding.** Despite pipetting cells by hand, most wells contain approximately equal numbers of nuclei. Dissociation of the P2 spinal cord resulted in fewer cells than the other samples, explaining the lower number of nuclei in the corresponding first round wells.

17

RSS_00082853



**Fig. S5. Differences in VLMC, vasculature, and immune cell types. (A)** During postnatal development, one VLMC subtype was found to differentially express *Slc6a13* and *Sidt1* whereas another subtype was found to differentially express *Slc47a1* and *Adamtsl3*. **(B)** Endothelia were found to differentially express *Flt1* and *Kdr* whereas smooth muscle cells were found to differentially express *Abcc9* and *Pdgfrb*. **(C)** Macrophages differentially express *Mrc1* and *Dab2* whereas microglia differentially express *Ly86* and *Cx3cr1*.

18

RSS_00082854



**Fig. S6. Distribution of P2 and P11 transcriptomes projected with t-SNE.**

19

RSS_00082855



**Fig. S7. Oligodendrocyte lineage. (A)** Single-nucleus transcriptomes from seven clusters within the oligodendrocyte lineage were re-embedded with t-SNE. **(B)** Gene markers overlaid on the re-embedded t-SNE show proliferative markers like *Mki67* on one end with mature markers like *Hapln2* on the other end **(C)** Comparison of gene ordering between our oligodendrocyte lineage and that in Marques *et. al.* **(D)** Distribution

20

RSS_00082856

of P2/P11 brain and spinal cord single-nucleus transcriptomes within the oligodendrocyte lineage.



**Fig. S8. Gene expression in oligodendrocyte lineage.** Genes are chosen from Marques *et. al.*(*9*). Fold change is calculated relative to mean gene expression in the entire lineage.

21

RSS_00082857



**Fig. S9. Composite P4 ISH maps generated from the Allen Developing Brain Atlas.** For each cluster, we selected the 5 genes most enriched in that cluster. We then averaged P4 ISH data for these genes and plotted the cumulative ISH signal across sagittal slices.

22

RSS_00082858



**Fig. S10. Composite P14 ISH maps generated from the Allen Developing Brain Atlas.** For each cluster, we selected the 5 genes most enriched in that cluster. We then averaged P14 ISH data for these genes and plotted the cumulative ISH signal across sagittal slices.

23

RSS_00082859



**Fig. S11. Branching hippocampal neuronal lineage. (A)** Three hippocampal clusters were re-embedded with t-SNE. The original clusters are overlaid over the resulting t-SNE. **(B)** Dynamics of *Slit1/2/3* and *Robo1/2* across pseudotime. **(C)** Distribution of P2/P11 brain and spinal cord single-nucleus transcriptomes within the lineage.

24

RSS_00082860



**Fig. S12. Gene expression in branching hippocampal neuronal lineage. (A)** Genes with differential expression across pseudotime in the granule cell lineage. **(B)** Genes with differential expression across pesudotime in the pyramidal cell lineage. Fold change is calculated relative to mean gene expression in the entire lineage.

25

RSS_00082861



**Fig. S13. (A) Cerebellar granule cell lineage.** Transcriptomes from two cerebellar granule clusters were re-embedded with t-SNE. **(B)** Distribution of P2/P11 brain and spinal cord cells within the lineage.

26

RSS_00082862



Pseudotime

**Fig. S14. Genes with differential expression across pseudotime in the cerebellar granule cell lineage.**

27

RSS_00082863

**A  Netrin Signaling**

*Dcc*    *Ntn1*    *Ntn4*    *Unc5d*    *Unc5c*    *Unc5a*    *Unc5b*

**B  Slit/Robo Signaling**

*Slit1*    *Slit2*    *Slit3*    *Robo1*    *Robo2*

**C  K2P channels**

| *Kcnk1* | *Kcnk2* | *Kcnk3* | *Kcnk4* | *Kcnk9* | *Kcnk10* | *Kcnk12* |
| TWIK-1 | TREK-1 | TASK-1 | TRAAK-1 | TASK-3 | TREK-2 | THIC-2 |

**D  NMDA Receptors**

*Grin1*    *Grin2a*    *Grin2b*    *Grin2c*    *Grin3a*

**Fig. S15. Pathways relevant to cerebellar granule cell migration and development.** Cerebellar granule cell lineage t-SNE overlaid with expression of genes contributing to **(A)** netrin signaling, **(B)** *Slit/Robo* signaling, **(C)** two-pore domain potassium (K2P) channels, and **(D)** N-methyl-D-aspartate (NMDA) receptors

28

RSS_00082864



**Fig. S16. (A) Cerebellar interneuron cell lineage.** Four clusters were re-embedded with t-SNE. **(B)** Distribution of P2/P11 brain and spinal cord cells within the lineage.

29

RSS_00082865



**Fig. S17. Gene expression in branching cerebellar interneuron lineage. (A)** Genes with differential expression across pseudotime in the stellate/basket cell lineage. **(B)** Genes with differential expression across pesudotime in the Golgi cell lineage.

30

RSS_00082866



**Fig. S18. Validating stellate/basket and Golgi cell identities of cerebellar interneuron lineage branches.** Previously characterized marker genes of Golgi and stellate/basket cells (*55*) are plotted for each branch of the cerebellar interneuron lineage.

31

RSS_00082867



**Fig. S19. Number of nuclei in each cluster from the spinal cord.** Over 60% of spinal cord nuclei clustered into the unresolved cluster, leading us to re-cluster the spinal cord nuclei without brain nuclei.

32

RSS_00082868



**Fig. S20. Inferred spatial origin of all neuronal clusters within the spinal cord.**
Inferred spatial origin of neuronal clusters within the spinal cord. We analyzed the Allen
Spinal Cord Atlas expression patterns of the top ten enriched genes in each cluster. Dark
purple indicates expression of all ten genes in the given region, while white indicates
none of the ten genes were expressed in the given region.

33

RSS_00082869



**Fig. S21. Cost of library preparation per cell for SPLiT-seq.** As more cells are processed, costs drop below 1 cent per cell, making SPLiT-seq a cost-effective platform to profile large numbers of cells. This analysis does not include Illumina sequencing cost.

34

RSS_00082870

| | Total Cells | Human Cells | Mouse Cells | Mixed Cells | Fraction Human Cells | Fraction Mouse Cells | Fraction Mixed Cells | Mean Species Purity - Human | Mean Species Purity - Mouse | Median UMIs/UBC - Human | Median UMIs/UBC - Mouse | Median Genes/UBC - Human | Median Genes/UBC - Mouse | UMI Duplication |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Whole Cells** | | | | | | | | | | | | | | |
| Fresh, Sample 1 | 1758 | 868 | 888 | 2 | 0.4937 | 0.5051 | 0.0011 | 0.9963 | 0.9919 | 9146.5 | 6808.5 | 4183 | 3253.5 | 66.78% |
| Fresh, Sample 2 | 168 | 80 | 88 | 0 | 0.4762 | 0.5238 | 0 | 0.9958 | 0.9901 | 15365 | 12243 | 5498 | 4497 | 94.54% |
| Frozen, Sample 1 | 583 | 293 | 289 | 1 | 0.5026 | 0.4957 | 0.0017 | 0.9953 | 0.9921 | 8363 | 6702 | 4046 | 3231 | 74.29% |
| Frozen, Sample 2 | 94 | 43 | 50 | 1 | 0.4574 | 0.5319 | 0.0106 | 0.9944 | 0.9883 | 15078 | 10951.5 | 5540 | 4319 | 93.43% |

| | Total Nuclei | Human Nuclei | Mouse Nuclei | Mixed Nuclei | Fraction Human Nuclei | Fraction Mouse Nuclei | Fraction Mixed Nuclei | Mean Species Purity - Human | Mean Species Purity - Mouse | Median UMIs/UBC - Human | Median UMIs/UBC - Mouse | Median Genes/UBC - Human | Median Genes/UBC - Mouse | UMI Duplication |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Nuclei** | | | | | | | | | | | | | | |
| Fresh, Sample 1 | 1488 | 695 | 757 | 36 | 0.4671 | 0.5087 | 0.0242 | 0.9961 | 0.9925 | 9716 | 4847 | 4140 | 2566 | 66.78% |
| Fresh, Sample 1, Filtered | 471 | 407 | 42 | 22 | 0.8641 | N/A | N/A | 0.9955 | N/A | 8193 | N/A | 3822 | N/A | 66.78% |
| Fresh, Sample 2 | 144 | 66 | 75 | 3 | 0.4583 | 0.5208 | 0.0208 | 0.9959 | 0.9922 | 15652 | 8467 | 5417.5 | 3607 | 94.54% |
| Fresh, Sample 2, Filtered | 39 | 32 | 6 | 1 | 0.8205 | N/A | N/A | 0.9958 | N/A | 12113 | N/A | 4663 | N/A | 94.54% |
| Frozen, Sample 1 | 585 | 252 | 319 | 14 | 0.4308 | 0.5453 | 0.0239 | 0.9960 | 0.9930 | 12564.5 | 6162 | 4819 | 2998 | 74.29% |
| Frozen, Sample 1, Filtered | 159 | 140 | 14 | 5 | 0.8805 | N/A | N/A | 0.9949 | N/A | 10489.5 | N/A | 4365.5 | N/A | 74.29% |
| Frozen, Sample 2 | 109 | 52 | 54 | 3 | 0.4771 | 0.4954 | 0.0275 | 0.9943 | 0.9911 | 16815 | 9883 | 5411 | 4020.5 | 93.43% |
| Frozen, Sample 2, Filtered | 40 | 35 | 3 | 2 | 0.8750 | N/A | N/A | 0.9930 | N/A | 13636 | N/A | 4982 | N/A | 93.43% |

**Note 1**: Two different samples were processed for each of the 4 conditions (fresh whole cells, frozen/stored whole cell, fresh nuclei, and frozen/stored nuclei). In all cases, sample 1 consists of more cells with lower sequencing depth and sample 2 consists of less cells with higher sequencing depth.
**Note 2**: Nuclei samples were filtered to contain less than 1% mitochondrial reads. In some cases, nuclei extraction on cell lines was inefficient, yielding a mixture of whole cells and nuclei. For this reason, statistics for both unfiltered and filtered nuclei are shown.

**Table S1. Summary of species-mixing experiments with fresh/frozen whole cells/nuclei.** Metrics of species-mixing experiments performed on SPLiT-seq. "Fresh" indicates that cells were harvested and directly processed using the SPLiT-seq workflow. "Frozen"

35

RSS_00082871

indicates that cells were harvested, fixed and stored for 2 weeks at -80°C before continuing with the SPLiT-seq workflow. Nuclei samples underwent a computational filtering step where any uniquely barcoded nuclei containing > 1% mitochondrial reads was removed ("Filtered" samples). Due to insufficient nuclei extraction from NIH/3T3 (mouse) cells, metrics for mouse samples in the filtered nuclei datasets have been excluded.

36

RSS_00082872

| | Total Nuclei | Mean Genes/nucleus | Mean UMIs/nucleus | Median Genes/nucleus | Median UMIs/nucleus | Total Reads | Raw reads/nucleus | UMI Duplication Rate |
|---|---|---|---|---|---|---|---|---|
| Small Library | 131 | 2,729.92 | 11,701.03 | 2,055 | 4,943 | 36,332,629 | 277,348 | 94.60% |
| Large Library | 163,069 | 797.96 | 1,347.19 | 677 | 1,022 | 2,456,381,771 | 15,063 | 58.20% |

**Table S2. Summary of snRNA-seq on mouse central nervous system.**

37

RSS_00082873

| Cluster Number | Cluster Name | Class | Number Cells | Marker Genes from Literature | Reference |
|---|---|---|---|---|---|
| 1 | Olfactory Bulb Mitral and Tufted - Eomes | Neuron | 117 | *Tbx21* | *(53, 54)* |
| 2 | Olfactory Bulb Mitral and Tufted - Ms4a15 | Neuron | 271 | *Tbx21* | *(53, 54)* |
| 3 | Olfactory Bulb Mitral and Tufted - Svil | Neuron | 89 | *Tbx21* | *(53, 54)* |
| 4 | Striatal Medium Spiny Neurons | Neuron | 6106 | *Drd2, Ppp1r1b* | *(55, 61)* |
| 5 | Cortex Layer2/Layer 3 Pyramidal - Satb1 | Neuron | 69 | *Ntf3* | *(62)* |
| 6 | Cortex Layer 2/Layer3/Layer 4 Pyramidal - Ntf3 | Neuron | 1446 | *Rasgrf2* | *(8)* |
| 7 | Cortex Layer 2/Layer 3 Pyramidal Met | Neuron | 1880 | *Rasgrf2, Pvrl3, Cux2* | *(8, 63)* |
| 8 | Cortex Layer 4 Pyramidal - Wnt5b | Neuron | 255 | *Slc17a6, Satb2, Sema3c* | *(8)* |
| 9 | Cortex Layer 2/Layer3/Layer 4 Pyramidal - Mef2c | Neuron | 8332 | *Rasgrf2, Pvrl3, Cux2, Rorb* | *(8)* |
| 10 | Cortex Layer 4 Pyramidal - Rorb | Neuron | 779 | *Thsd7a, Rorb, Cux2, Pvrl3, Rasgrf2* | *(8, 63)* |
| 11 | Cortex Layer 4/Layer 5 Pyramidal | Neuron | 2831 | *Thsd7a* | *(8)* |
| 12 | Cortex Layer 5 Pyramidal - Itbg3 | Neuron | 198 | *Rorb, Thsd7a, Sulf2, Kcnk2,Grik3, Etv1* | *(8, 63)* |
| 13 | Cortex Layer 5 Pyramidal - Fezf2 | Neuron | 352 | *Kcnk2, Grik3, Foxp2, Tle4, Tmem200a, Glra2, Etv1* | *(8, 63)* |
| 14 | Cortex Layer 6a Pyramidal | Neuron | 1498 | *Grik3* | *(63)* |
| 15 | Cortex Layer 5/Layer 6 Pyramidal - Sulf1 | Neuron | 493 | *Sulf2,Grik3, Tle4, Htr1f, Sulf1* | *(8, 63)* |
| 16 | Cortex Layer 5/Layer 6 Pyramidal - Npr3 | Neuron | 550 | *Grik3, Tle4, Rxfp1* | *(8, 63)* |
| 17 | Cortext Layer 6 Pyramidal - Htr1f | Neuron | 3479 | *Syt6, Grik3, Foxp2, Tle4, Htr1f* | *(8, 63)* |
| 18 | Claustrum Pyramidal | Neuron | 140 | *Nr4a2* | *(8)* |
| 19 | Mesencephalic Tectum Glutamatergic | Neuron | 736 | *Tfap2d, Slc17a6* | *(57)* |
| 20 | Thalamic Gluatamatergic | Neuron | 2627 | *Lef1, Tcf7l2,Cacna1g,Slc17a6,Wnt3* | *(64, 65)* |

RSS_00082874

Science &AAAS

Submitted Manuscript:  Confidential

| 21 | Thalamic Interneuron | Neuron | 202 | *Six3, Gad1, Gad2* | *(66)* |
|----|---------------------|--------|-----|--------------------|--------|
| 22 | Purkinje Early | Neuron | 208 | *Pcp2, Pde1c* | *(55)* |
| 23 | Purkinje Late | Neuron | 171 | *Pcp2, Slc9a3* | *(55)* |
| 24 | Cerebellar Interneuron Progenitor | Neuron | 160 | *Pax3, Mki67* | *(36, 55)* |
| 25 | Cerebellar Granule Precursor | Neuron | 4364 | *Gli2* | *(67)* |
| 26 | Cerebellar Interneuron - Stellate and Basket | Neuron | 459 | *Rora* | *(36, 55)* |
| 27 | Cerebellar Interneuron - Golgi, Stellate and Basket | Neuron | 420 | *Tfap2b* | *(36, 55)* |
| 28 | Cerebellar Granule | Neuron | 10996 | *Gabra6* | *(68)* |
| 29 | Cerebellar Interneuron Precursor | Neuron | 851 | *Pax2* | *(36, 55)* |
| 30 | Medulla Glycinergic Interneuron - Rxfp2 | Neuron | 329 | *Stac, Slc6a5, Glra1* | *(69)* |
| 31 | Medulla Interneuron - Rxfp2 | Neuron | 282 | *Stac* | *(69)* |
| 32 | Nigral Dopaminergic | Neuron | 47 | *Slc6a3* | *(70)* |
| 33 | Hippocampal Pyramidal - Cr2 | Neuron | 232 | *Cr2* | *(71)* |
| 34 | Subiculum Pyramidal | Neuron | 78 | *Ntm, Rxfp1, Nr4a2* | *(72)* |
| 35 | Hippocampal Pyramidal - Crym | Neuron | 1260 | *Crym* | *(73)* |
| 36 | Hippocampus Granule Progenitor Mki67 | Neuron | 657 | *Prox1, Mki67* | *(26)* |
| 37 | Hippocampal Pyramidal Precursor | Neuron | 315 | *Nrp1, Zbtb20* | *(74, 75)* |
| 38 | Hippocampal Pyramidal - Grik4 | Neuron | 625 | *Grik4, Slc17a7* | *(76)* |
| 39 | Hippocampal Granule Precursor - Nrp2 | Neuron | 515 | *Prox1, Nrp2* | *(26)* |
| 40 | Hippocampal Granule/Pyramidal CA3 | Neuron | 772 | *Prox1, Slc17a7* | *(26)* |
| 41 | Hippocampal Pyramidal - Npy2r | Neuron | 117 | *Npy2r, Slc17a7* | *(77)* |
| 42 | Spinal Cord Glutamatergic - Hmga2 | Neuron | 231 | *Slc17a6, Slc17a8* | *(78)* |
| 43 | Spinal Cord Glutamatergic Gna14 | Neuron | 95 | *Slc17a8, Gna14* | *(78)* |

39

RSS_00082875

Submitted Manuscript: Confidential

| 44 | Migrating Interneuron - Lhx6 | Neuron | 3907 | *Dlx family, Lhx6* | *(79)* |
|---|---|---|---|---|---|
| 45 | Migrating Interneuron - Trdn | Neuron | 246 | *Dlx family, Trdn* | *(79)* |
| 46 | Migrating Interneuron - Cpa6 | Neuron | 2166 | *Dlx family, Cpa6* | *(79)* |
| 47 | Migrating Interneuron - Foxp2 | Neuron | 701 | *Dlx family, Foxp2* | *(79)* |
| 48 | Migrating Interneuron - Pbx3 | Neuron | 1835 | *Dlx family, Pbx3* | *(79)* |
| 49 | Migrating Interneuron - Lgr6 | Neuron | 484 | *Dlx family, Lgr6* | *(79)* |
| 50 | Migrating Interneuron - Adarb2 | Neuron | 47 | *Dlx family, Adarb* | *(79)* |
| 51 | Subventricular Zone Stem Cell | Neuron | 182 | *Gfap, Vim, Nes, Dlx family* | *(80)* |
| 52 | Cajal-Retzius | Neurons | 133 | *Trp73, Reln* | *(81)* |
| 53 | Unresolved | Neuron | 36469 | | |
| 54 | Unresolved | Neuron | 90 | | |
| 55 | Oligodendroctye Myelinating 2 | Oligo -dendrocyte | 721 | *Opalin* | *(9)* |
| 56 | Oligodendroctye Myelinating 1 | Oligo -dendrocyte | 1781 | *Opalin* | *(9)* |
| 57 | Oligodendrocyte Mature | Oligo -dendrocyte | 191 | *Hapln2* | *(9)* |
| 58 | Oligodendroctye Newly Formed 1 | Oligo -dendrocyte | 467 | *Tmem2* | *(9)* |
| 59 | Committed Oligodendroctye Precursor Cells 1 | Oligo -dendrocyte | 811 | *Gpr17* | *(9)* |
| 60 | Committed Oligodendroctye Precursor Cells 2 | Oligo -dendrocyte | 323 | *Bcas1* | *(9)* |
| 61 | Oligodendroctye Precursor Cells | OPC | 5793 | *Pdgfra* | *(9)* |
| 62 | Perivivascular Macrophage | Immune | 63 | *Dab2* | *(82)* |
| 63 | Microglia | Immune | 558 | *Tgfbr1* | *(83)* |
| 64 | Endothelia | Vasc -ulature | 561 | *Flt1, Kdr* | *(7)* |
| 65 | Smooth Muscle Cells | Vasc -ulature | 98 | *Abcc9, Pdgfrb* | *(60)* |
| 66 | Vascular and Leptomeningeal Cells 2 | VLMC | 1223 | *Slc6a13* | *(9)* |
| 67 | Vascular and Leptomeningeal Cells 1 | VLMC | 251 | *Slc47a1, Slc47a2* | *(9)* |
| 68 | Astrocyte - Slc7a10 | Astrocyte | 3569 | *Slc7a10* | *(84)* |
| 69 | Astrocyte - Prdm16 | Astrocyte | 8103 | *Prdm16* | *(85)* |
| 70 | Astrocyte - Gfap | Astrocyte | 282 | *Gfap* | *(86)* |
| 71 | Bergman Glia | Astrocyte | 1527 | *Gria1* | *(87)* |

RSS_00082876

| 72 | Ependyma | Ependyma | 518 | *Dnah1/2/5/9/10/11* | *(8)* |
| 73 | Olfactory Ensheathing Cells (OEC) | Schwann Cells | 256 | *Lama4, Col5a2, Runx1* | *(88, 89)* |

**Table S3. Table of assigned cell types and marker genes from literature**

41

Submitted Manuscript: Confidential

**Table S4. Top 50 differentially expressed genes in each cluster from the joint brain and spinal cord clustering.** Differential expression is calculated as $log2(TPM_{CLUSTER}+1)/log2(TPM_{\sim CLUSTER}+1)$, where $TPM_{\sim CLUSTER}$ is the average TPM for all the cells not in the cluster of interest. We only include genes expressed in at least 20% of the transcriptomes in a cluster.

**Table S5. Average expression for each cluster from the joint brain and spinal cord clustering.** All values are listed as TPM+1.

**Table S6. Genes used to generate P4 sagittal composite ISH maps.** Top ten differentially expressed genes from each cluster that were also available in the Allen ISH database for a postnatal day 4 mouse were used.

**Table S7. Genes used to generate P14 sagittal composite ISH maps.** Top ten differentially expressed genes from each cluster that were also available in the Allen ISH database for a postnatal day 4 mouse were used.

42

RSS_00082878

Submitted Manuscript: Confidential

| Cluster Number | Cluster Name | Number Cells | Marker Genes from Literature | Ref |
|---|---|---|---|---|
| 1 | Ependymal | 139 | *Dnah1/2/5/9/10/11* | *(8)* |
| 2 | Unassigned | 58 | | |
| 3 | Unassigned | 44 | | |
| 4 | Astroctye - Unassigned | 116 | | |
| 5 | Astrocyte - Gfap | 394 | *Aldh1l1* | *(90)* |
| 6 | Astrocyte - Slc7a10 | 1230 | *Aldh1l1* | *(90)* |
| 7 | Astro - Svep1 | 986 | *Aldh1l1* | *(90)* |
| 8 | Endothelial | 95 | *Aldh1l1* | *(90)* |
| 9 | VLMC | 444 | *Col1a2* | *(9)* |
| 10 | Microglia | 91 | *Tgfbr1* | *(83)* |
| 11 | Oligodendrocyte Mature | 1436 | *Mog* | *(8)* |
| 12 | Oligodendroctye Myelinating | 489 | *Tmem2* | *(8)* |
| 13 | OPC | 1213 | *Pdgfra* | *(8)* |
| 14 | Committed OPC | 835 | *Bcas1* | *(8)* |
| 15 | Cerebrospinal Fluid-Contacting Neurons (CSF-cNs) | 51 | *Pkd2l1, Pkd1l2* | *(38)* |
| 16 | Alpha motor neurons | 100 | *Chat, Esrrg-* | *(39, 40)* |
| 17 | Gamma motor neurons | 77 | *Chat, Esrrg, Esrrb, Htr1d* | *(39, 40)* |
| 18 | Inhibitory 1 | 46 | *Gad1, Gad2* | *(91)* |
| 19 | Inhibitory 2 | 365 | *Gad1, Gad2* | *(91)* |
| 20 | Inhibitory 3 | 59 | *Gad1, Gad2* | *(91)* |
| 21 | Inhibitory 4 | 361 | *Gad1, Gad2* | *(91)* |
| 22 | Inhibitory 5 | 397 | *Gad1, Gad2* | *(91)* |
| 23 | Inhibitory 6 | 289 | *Gad1, Gad2* | *(91)* |
| 24 | Inhibitory 7 | 220 | *Gad1, Gad2* | *(91)* |
| 25 | Inhibitory 8 | 81 | *Gad1, Gad2* | *(91)* |
| 26 | Inhibitory 9 | 321 | *Gad1, Gad2* | *(91).* |
| 27 | Inhibitory 10 | 40 | *Gad1, Gad2* | *(91)* |
| 28 | Excitatory 1 | 54 | *Slc17a6* | *(92)* |
| 29 | Excitatory 2 | 450 | *Slc17a6* | *(92)* |
| 30 | Excitatory 3 | 185 | *Slc17a6* | *(92)* |
| 31 | Excitatory 4 | 365 | *Slc17a6* | *(92)* |
| 32 | Unresolved | 7634 | | |
| 33 | Unresolved | 65 | | |
| 34 | Excitatory 5 | 53 | *Slc17a6* | *(92)* |
| 35 | Excitatory 6 | 243 | *Slc17a6* | *(92)* |
| 36 | Excitatory 7 | 41 | *Slc17a6* | *(92)* |
| 37 | Excitatory 8 | 189 | *Slc17a6* | *(92)* |
| 38 | Excitatory 9 | 389 | *Slc17a6* | *(92)* |
| 39 | Excitatory 10 | 385 | *Slc17a6* | *(92)* |
| 40 | Excitatory 11 | 85 | *Slc17a6* | *(92)* |
| 41 | Excitatory 12 | 612 | *Slc17a6* | *(92)* |
| 42 | Excitatory 13 | 166 | *Slc17a6* | *(92)* |
| 43 | Excitatory 14 | 597 | *Slc17a6* | *(92)* |
| 44 | Excitatory 15 | 144 | *Slc17a6* | *(92)* |

43

RSS_00082879

Submitted Manuscript: Confidential

**Table S8. Table of assigned spinal cord cell types and marker genes from literature**

**Table S9. Top 50 differentially expressed genes in each cluster from the spinal cord clustering.** Differential expression is calculated as $\log2(\text{TPM}_{\text{CLUSTER}}+1)/\log2(\text{TPM}_{\sim\text{CLUSTER}}+1)$, where $\text{TPM}_{\sim\text{CLUSTER}}$ is the average TPM for all the cells not in the cluster of interest. We only include genes expressed in at least 20% of the transcriptomes in a cluster.

**Table S10. Average expression for each cluster from the spinal cord clustering.** All values are listed as TPM+1.

RSS_00082880

| Items | Supplier | Item Code | Cost Per Experiment (USD) |
|---|---|---|---|
| Maxima H Minus | ThermoFisher | EP0753 | 386.28 |
| RNase Inhibitor | Enzymatics, Ambion | Y9240L, AM2696 | 69.20 |
| T4 DNA Ligase | New England Biolabs | M0202L | 307.20 |
| Kapa Pure Beads | Kapa Biosystems | KK8002 | 12.00 |
| Dynabeads MyOne C1 | ThermoFisher | 65002 | 1.70 |
| Nextera XT DNA Preparation Kit | Illumina | FC-131-1096 | 28.90 |
| Kapa Hotstart HiFi ReadyMix | Kapa Biosystems | KK2602 | 22.26 |
| Proteinase K | ThermoFisher | EO0491 | 3.44 |
| dNTPs | ThermoFisher | R0192 | 5.03 |
| Oligonucleotides | Integrated DNA Technologies, Exiqon | N/A | 37.05 |
| Total | | | 873.07 |

**Table S11. Itemized cost breakdown of SPLiT-seq**

45

RSS_00082881

Submitted Manuscript: Confidential

**Table S12. List of all oligonucleotide sequences used**

46

RSS_00082882

**Table S12. List of all oligonucleotide sequences used**

**References**

1. S. Picelli, Å. K. Björklund, O. R. Faridani, S. Sagasser, G. Winberg, R. Sandberg, Smart-seq2 for sensitive full-length transcriptome profiling in single cells. *Nat. Methods* **10**, 1096–1098 (2013). doi:10.1038/nmeth.2639 Medline

2. T. Hashimshony, F. Wagner, N. Sher, I. Yanai, CEL-Seq: Single-cell RNA-seq by multiplexed linear amplification. *Cell Reports* **2**, 666–673 (2012). doi:10.1016/j.celrep.2012.08.003 Medline

3. D. A. Jaitin, E. Kenigsberg, H. Keren-Shaul, N. Elefant, F. Paul, I. Zaretsky, A. Mildner, N. Cohen, S. Jung, A. Tanay, I. Amit, Massively parallel single-cell RNA-seq for marker-free decomposition of tissues into cell types. *Science* **343**, 776–779 (2014). doi:10.1126/science.1247651 Medline

4. E. Z. Macosko, A. Basu, R. Satija, J. Nemesh, K. Shekhar, M. Goldman, I. Tirosh, A. R. Bialas, N. Kamitaki, E. M. Martersteck, J. J. Trombetta, D. A. Weitz, J. R. Sanes, A. K. Shalek, A. Regev, S. A. McCarroll, Highly parallel genome-wide expression profiling of individual cells using nanoliter droplets. *Cell* **161**, 1202–1214 (2015). doi:10.1016/j.cell.2015.05.002 Medline

5. A. M. Klein, L. Mazutis, I. Akartuna, N. Tallapragada, A. Veres, V. Li, L. Peshkin, D. A. Weitz, M. W. Kirschner, Droplet barcoding for single-cell transcriptomics applied to embryonic stem cells. *Cell* **161**, 1187–1201 (2015). doi:10.1016/j.cell.2015.04.044 Medline

6. G. X. Y. Zheng, J. M. Terry, P. Belgrader, P. Ryvkin, Z. W. Bent, R. Wilson, S. B. Ziraldo, T. D. Wheeler, G. P. McDermott, J. Zhu, M. T. Gregory, J. Shuga, L. Montesclaros, J. G. Underwood, D. A. Masquelier, S. Y. Nishimura, M. Schnall-Levin, P. W. Wyatt, C. M. Hindson, R. Bharadwaj, A. Wong, K. D. Ness, L. W. Beppu, H. J. Deeg, C. McFarland, K. R. Loeb, W. J. Valente, N. G. Ericson, E. A. Stevens, J. P. Radich, T. S. Mikkelsen, B. J. Hindson, J. H. Bielas, Massively parallel digital transcriptional profiling of single cells. *Nat. Commun.* **8**, 14049 (2017). doi:10.1038/ncomms14049 Medline

7. B. Tasic, V. Menon, T. N. Nguyen, T. K. Kim, T. Jarsky, Z. Yao, B. Levi, L. T. Gray, S. A. Sorensen, T. Dolbeare, D. Bertagnolli, J. Goldy, N. Shapovalova, S. Parry, C. Lee, K. Smith, A. Bernard, L. Madisen, S. M. Sunkin, M. Hawrylycz, C. Koch, H. Zeng, Adult mouse cortical cell taxonomy revealed by single cell transcriptomics. *Nat. Neurosci.* **19**, 335–346 (2016). doi:10.1038/nn.4216 Medline

8. A. Zeisel, A. B. Muñoz-Manchado, S. Codeluppi, P. Lönnerberg, G. La Manno, A. Juréus, S. Marques, H. Munguba, L. He, C. Betsholtz, C. Rolny, G. Castelo-Branco, J. Hjerling-Leffler, S. Linnarsson, Cell types in the mouse cortex and hippocampus revealed by single-cell RNA-seq. *Science* **347**, 1138–1142 (2015). doi:10.1126/science.aaa1934 Medline

9. S. Marques, A. Zeisel, S. Codeluppi, D. van Bruggen, A. Mendanha Falcão, L. Xiao, H. Li, M. Häring, H. Hochgerner, R. A. Romanov, D. Gyllborg, A. Muñoz Manchado, G. La Manno, P. Lönnerberg, E. M. Floriddia, F. Rezayee, P. Ernfors, E. Arenas, J. Hjerling-Leffler, T. Harkany, W. D. Richardson, S. Linnarsson, G. Castelo-Branco, Oligodendrocyte heterogeneity in the mouse juvenile and adult central nervous system. *Science* **352**, 1326–1329 (2016). doi:10.1126/science.aaf6463 Medline

47

RSS_00082883

10. S. Darmanis, S. A. Sloan, Y. Zhang, M. Enge, C. Caneda, L. M. Shuer, M. G. Hayden Gephart, B. A. Barres, S. R. Quake, A survey of human brain transcriptome diversity at the single cell level. *Proc. Natl. Acad. Sci. U.S.A.* **112**, 7285–7290 (2015). doi:10.1073/pnas.1507125112 Medline

11. B. B. Lake, R. Ai, G. E. Kaeser, N. S. Salathia, Y. C. Yung, R. Liu, A. Wildberg, D. Gao, H.-L. Fung, S. Chen, R. Vijayaraghavan, J. Wong, A. Chen, X. Sheng, F. Kaper, R. Shen, M. Ronaghi, J.-B. Fan, W. Wang, J. Chun, K. Zhang, Neuronal subtypes and diversity revealed by single-nucleus RNA sequencing of the human brain. *Science* **352**, 1586–1590 (2016). doi:10.1126/science.aaf1204 Medline

12. A. K. Shalek, R. Satija, X. Adiconis, R. S. Gertner, J. T. Gaublomme, R. Raychowdhury, S. Schwartz, N. Yosef, C. Malboeuf, D. Lu, J. J. Trombetta, D. Gennert, A. Gnirke, A. Goren, N. Hacohen, J. Z. Levin, H. Park, A. Regev, Single-cell transcriptomics reveals bimodality in expression and splicing in immune cells. *Nature* **498**, 236–240 (2013). doi:10.1038/nature12172 Medline

13. D. Grün, A. Lyubimova, L. Kester, K. Wiebrands, O. Basak, N. Sasaki, H. Clevers, A. van Oudenaarden, Single-cell messenger RNA sequencing reveals rare intestinal cell types. *Nature* **525**, 251–255 (2015). doi:10.1038/nature14966 Medline

14. V. Moignard, S. Woodhouse, L. Haghverdi, A. J. Lilly, Y. Tanaka, A. C. Wilkinson, F. Buettner, I. C. Macaulay, W. Jawaid, E. Diamanti, S.-I. Nishikawa, N. Piterman, V. Kouskoff, F. J. Theis, J. Fisher, B. Göttgens, Decoding the regulatory network of early blood development from single-cell gene expression measurements. *Nat. Biotechnol.* **33**, 269–276 (2015). doi:10.1038/nbt.3154 Medline

15. A. S. Venteicher, I. Tirosh, C. Hebert, K. Yizhak, C. Neftel, M. G. Filbin, V. Hovestadt, L. E. Escalante, M. L. Shaw, C. Rodman, S. M. Gillespie, D. Dionne, C. C. Luo, H. Ravichandran, R. Mylvaganam, C. Mount, M. L. Onozato, B. V. Nahed, H. Wakimoto, W. T. Curry, A. J. Iafrate, M. N. Rivera, M. P. Frosch, T. R. Golub, P. K. Brastianos, G. Getz, A. P. Patel, M. Monje, D. P. Cahill, O. Rozenblatt-Rosen, D. N. Louis, B. E. Bernstein, A. Regev, M. L. Suvà, Decoupling genetics, lineages, and microenvironment in IDH-mutant gliomas by single-cell RNA-seq. *Science* **355**, eaai8478 (2017). doi:10.1126/science.aai8478 Medline

16. I. Tirosh, B. Izar, S. M. Prakadan, M. H. Wadsworth 2nd, D. Treacy, J. J. Trombetta, A. Rotem, C. Rodman, C. Lian, G. Murphy, M. Fallahi-Sichani, K. Dutton-Regester, J.-R. Lin, O. Cohen, P. Shah, D. Lu, A. S. Genshaft, T. K. Hughes, C. G. K. Ziegler, S. W. Kazer, A. Gaillard, K. E. Kolb, A.-C. Villani, C. M. Johannessen, A. Y. Andreev, E. M. Van Allen, M. Bertagnolli, P. K. Sorger, R. J. Sullivan, K. T. Flaherty, D. T. Frederick, J. Jané-Valbuena, C. H. Yoon, O. Rozenblatt-Rosen, A. K. Shalek, A. Regev, L. A. Garraway, Dissecting the multicellular ecosystem of metastatic melanoma by single-cell RNA-seq. *Science* **352**, 189–196 (2016). doi:10.1126/science.aad0501 Medline

17. L. Sang, H. A. Coller, J. M. Roberts, Control of the reversibility of cellular quiescence by the transcriptional repressor HES1. *Science* **321**, 1095–1100 (2008). doi:10.1126/science.1155998 Medline

18. C. Zheng, L. Zheng, J.-K. Yoo, H. Guo, Y. Zhang, X. Guo, B. Kang, R. Hu, J. Y. Huang, Q. Zhang, Z. Liu, M. Dong, X. Hu, W. Ouyang, J. Peng, Z. Zhang, Landscape of infiltrating

48

RSS_00082884

T cells in liver cancer revealed by single-cell sequencing. *Cell* **169**, 1342–1356.e16 (2017). doi:10.1016/j.cell.2017.05.035 Medline

19. Materials and methods are provided as supplementary materials.

20. S. E. Hickman, N. D. Kingery, T. K. Ohsumi, M. L. Borowsky, L. C. Wang, T. K. Means, J. El Khoury, The microglial sensome revealed by direct RNA sequencing. *Nat. Neurosci.* **16**, 1896–1905 (2013). doi:10.1038/nn.3554 Medline

21. O. Matcovitch-Natan, D. R. Winter, A. Giladi, S. Vargas Aguilar, A. Spinrad, S. Sarrazin, H. Ben-Yehuda, E. David, F. Zelada González, P. Perrin, H. Keren-Shaul, M. Gury, D. Lara-Astaiso, C. A. Thaiss, M. Cohen, K. Bahar Halpern, K. Baruch, A. Deczkowska, E. Lorenzo-Vivas, S. Itzkovitz, E. Elinav, M. H. Sieweke, M. Schwartz, I. Amit, Microglia development follows a stepwise program to regulate brain homeostasis. *Science* **353**, aad8670 (2016). doi:10.1126/science.aad8670 Medline

22. C. Trapnell, D. Cacchiarelli, J. Grimsby, P. Pokharel, S. Li, M. Morse, N. J. Lennon, K. J. Livak, T. S. Mikkelsen, J. L. Rinn, The dynamics and regulators of cell fate decisions are revealed by pseudotemporal ordering of single cells. *Nat. Biotechnol.* **32**, 381–386 (2014). doi:10.1038/nbt.2859 Medline

23. S. W. Levison, J. E. Goldman, Both oligodendrocytes and astrocytes develop from progenitors in the subventricular zone of postnatal rat forebrain. *Neuron* **10**, 201–212 (1993). doi:10.1016/0896-6273(93)90311-E Medline

24. E. S. Lein, M. J. Hawrylycz, N. Ao, M. Ayres, A. Bensinger, A. Bernard, A. F. Boe, M. S. Boguski, K. S. Brockway, E. J. Byrnes, L. Chen, L. Chen, T.-M. Chen, M. C. Chin, J. Chong, B. E. Crook, A. Czaplinska, C. N. Dang, S. Datta, N. R. Dee, A. L. Desaki, T. Desta, E. Diep, T. A. Dolbeare, M. J. Donelan, H.-W. Dong, J. G. Dougherty, B. J. Duncan, A. J. Ebbert, G. Eichele, L. K. Estin, C. Faber, B. A. Facer, R. Fields, S. R. Fischer, T. P. Fliss, C. Frensley, S. N. Gates, K. J. Glattfelder, K. R. Halverson, M. R. Hart, J. G. Hohmann, M. P. Howell, D. P. Jeung, R. A. Johnson, P. T. Karr, R. Kawal, J. M. Kidney, R. H. Knapik, C. L. Kuan, J. H. Lake, A. R. Laramee, K. D. Larsen, C. Lau, T. A. Lemon, A. J. Liang, Y. Liu, L. T. Luong, J. Michaels, J. J. Morgan, R. J. Morgan, M. T. Mortrud, N. F. Mosqueda, L. L. Ng, R. Ng, G. J. Orta, C. C. Overly, T. H. Pak, S. E. Parry, S. D. Pathak, O. C. Pearson, R. B. Puchalski, Z. L. Riley, H. R. Rockett, S. A. Rowland, J. J. Royall, M. J. Ruiz, N. R. Sarno, K. Schaffnit, N. V. Shapovalova, T. Sivisay, C. R. Slaughterbeck, S. C. Smith, K. A. Smith, B. I. Smith, A. J. Sodt, N. N. Stewart, K.-R. Stumpf, S. M. Sunkin, M. Sutram, A. Tam, C. D. Teemer, C. Thaller, C. L. Thompson, L. R. Varnam, A. Visel, R. M. Whitlock, P. E. Wohnoutka, C. K. Wolkey, V. Y. Wong, M. Wood, M. B. Yaylaoglu, R. C. Young, B. L. Youngstrom, X. F. Yuan, B. Zhang, T. A. Zwingman, A. R. Jones, Genome-wide atlas of gene expression in the adult mouse brain. *Nature* **445**, 168–176 (2007). doi:10.1038/nature05453 Medline

25. Allen Institute for Brain Science, Developing Mouse Brain Atlas (2008), (available at http://developingmouse.brain-map.org/).

26. T. Iwano, A. Masuda, H. Kiyonari, H. Enomoto, F. Matsuzaki, Prox1 postmitotically defines dentate gyrus cells by specifying granule cell identity over CA3 pyramidal cell fate in the hippocampus. *Development* **139**, 3051–3062 (2012). doi:10.1242/dev.080002 Medline

49

RSS_00082885

27. C. Zhao, W. Deng, F. H. Gage, Mechanisms and functional implications of adult neurogenesis. *Cell* **132**, 645–660 (2008). doi:10.1016/j.cell.2008.01.033 Medline

28. A. Lavado, O. V. Lagutin, L. M. L. Chow, S. J. Baker, G. Oliver, Prox1 is required for granule cell maturation and intermediate progenitor maintenance during brain neurogenesis. *PLOS Biol.* **8**, e1000460 (2010). doi:10.1371/journal.pbio.1000460 Medline

29. F. Bonnet, J.-P. Périn, F. Charbonnier, A. Camuzat, G. Roussel, J.-L. Nussbaum, P. M. Alliel, Structure and cellular distribution of mouse brain testican. Association with the postsynaptic area of hippocampus pyramidal cells. *J. Biol. Chem.* **271**, 4373–4380 (1996). doi:10.1074/jbc.271.8.4373 Medline

30. S. Herculano-Houzel, The human brain in numbers: A linearly scaled-up primate brain. *Front. Hum. Neurosci.* **3**, 31 (2009). doi:10.3389/neuro.09.031.2009 Medline

31. K. Nakashima, H. Umeshima, M. Kengaku, Cerebellar granule cells are predominantly generated by terminal symmetric divisions of granule cell precursors. *Dev. Dyn.* **244**, 748–758 (2015). doi:10.1002/dvdy.24276 Medline

32. A. Sudarov, A. L. Joyner, Cerebellum morphogenesis: The foliation pattern is orchestrated by multi-cellular anchoring centers. *Neural Dev.* **2**, 26 (2007). doi:10.1186/1749-8104-2-26 Medline

33. J. C. Chang, M. Leung, H. N. Gokozan, P. E. Gygli, F. P. Catacutan, C. Czeisler, J. J. Otero, Mitotic events in cerebellar granule progenitor cells that expand cerebellar surface area are critical for normal cerebellar cortical lamination in mice. *J. Neuropathol. Exp. Neurol.* **74**, 261–272 (2015). doi:10.1097/NEN.0000000000000171 Medline

34. K. Schilling, J. Oberdick, F. Rossi, S. L. Baader, Besides Purkinje cells and granule neurons: An appraisal of the cell biology of the interneurons of the cerebellar cortex. *Histochem. Cell Biol.* **130**, 601–615 (2008). doi:10.1007/s00418-008-0483-y Medline

35. J. Altman, S. A. Bayer, Development of the precerebellar nuclei in the rat: I. The precerebellar neuroepithelium of the rhombencephalon. *J. Comp. Neurol.* **257**, 477–489 (1987). doi:10.1002/cne.902570402 Medline

36. S. M. Maricich, K. Herrup, Pax-2 expression defines a subset of GABAergic interneurons and their precursors in the developing murine cerebellum. *J. Neurobiol.* **41**, 281–294 (1999). doi:10.1002/(SICI)1097-4695(19991105)41:2<281:AID-NEU10>3.0.CO;2-5 Medline

37. G. Weisheit, M. Gliem, E. Endl, P. L. Pfeffer, M. Busslinger, K. Schilling, Postnatal development of the murine cerebellar cortex: Formation and early dispersal of basket, stellate and Golgi neurons. *Eur. J. Neurosci.* **24**, 466–478 (2006). doi:10.1111/j.1460-9568.2006.04915.x Medline

38. Y. L. Petracca, M. M. Sartoretti, D. J. Di Bella, A. Marin-Burgin, A. L. Carcagno, A. F. Schinder, G. M. Lanuza, The late and dual origin of cerebrospinal fluid-contacting neurons in the mouse spinal cord. *Development* **143**, 880–891 (2016). doi:10.1242/dev.129254 Medline

39. A. Enjin, N. Rabe, S. T. Nakanishi, A. Vallstedt, H. Gezelius, F. Memic, M. Lind, T. Hjalt, W. G. Tourtellotte, C. Bruder, G. Eichele, P. J. Whelan, K. Kullander, Identification of

50

RSS_00082886

novel spinal cholinergic genetic subtypes disclose Chodl and Pitx2 as markers for fast motor neurons and partition cells. *J. Comp. Neurol.* **518**, 2284–2304 (2010). doi:10.1002/cne.22332 Medline

40. M. Lalancette-Hebert, A. Sharma, A. K. Lyashchenko, N. A. Shneider, Gamma motor neurons survive and exacerbate alpha motor neuron degeneration in ALS. *Proc. Natl. Acad. Sci. U.S.A.* **113**, E8316–E8325 (2016). doi:10.1073/pnas.1605210113 Medline

41. Allen Institute for Brain Science, Allen Mouse Spinal Cord Atlas (2008); available at http://mousespinal.brain-map.org/imageseries/showref.html.

42. B. Lacar, S. B. Linker, B. N. Jaeger, S. Krishnaswami, J. Barron, M. Kelder, S. Parylak, A. Paquola, P. Venepally, M. Novotny, C. O'Connor, C. Fitzpatrick, J. Erwin, J. Y. Hsu, D. Husband, M. J. McConnell, R. Lasken, F. H. Gage, Nuclear RNA-seq of single neurons reveals molecular signatures of activation. *Nat. Commun.* **7**, 11022 (2016). doi:10.1038/ncomms11022 Medline

43. E. R. Thomsen, J. K. Mich, Z. Yao, R. D. Hodge, A. M. Doyle, S. Jang, S. I. Shehata, A. M. Nelson, N. V. Shapovalova, B. P. Levi, S. Ramanathan, Fixed single-cell transcriptomic characterization of human radial glial diversity. *Nat. Methods* **13**, 87–93 (2016). doi:10.1038/nmeth.3629 Medline

44. A. Dobin, C. A. Davis, F. Schlesinger, J. Drenkow, C. Zaleski, S. Jha, P. Batut, M. Chaisson, T. R. Gingeras, STAR: Ultrafast universal RNA-seq aligner. *Bioinformatics* **29**, 15–21 (2013). doi:10.1093/bioinformatics/bts635 Medline

45. E. Zorita, P. Cuscó, G. J. Filion, Starcode: Sequence clustering based on all-pairs search. *Bioinformatics* **31**, 1913–1919 (2015). doi:10.1093/bioinformatics/btv053 Medline

46. Z. Yao, J. K. Mich, S. Ku, V. Menon, A.-R. Krostag, R. A. Martinez, L. Furchtgott, H. Mulholland, S. Bort, M. A. Fuqua, B. W. Gregor, R. D. Hodge, A. Jayabalu, R. C. May, S. Melton, A. M. Nelson, N. K. Ngo, N. V. Shapovalova, S. I. Shehata, M. W. Smith, L. J. Tait, C. L. Thompson, E. R. Thomsen, C. Ye, I. A. Glass, A. Kaykas, S. Yao, J. W. Phillips, J. S. Grimley, B. P. Levi, Y. Wang, S. Ramanathan, A single-cell roadmap of lineage bifurcation in human ESC models of embryonic brain development. *Cell Stem Cell* **20**, 120–134 (2017). doi:10.1016/j.stem.2016.09.011 Medline

47. K. Shekhar, S. W. Lapan, I. E. Whitney, N. M. Tran, E. Z. Macosko, M. Kowalczyk, X. Adiconis, J. Z. Levin, J. Nemesh, M. Goldman, S. A. McCarroll, C. L. Cepko, A. Regev, J. R. Sanes, Comprehensive classification of retinal bipolar neurons by single-cell transcriptomics. *Cell* **166**, 1308–1323.e30 (2016). doi:10.1016/j.cell.2016.07.054 Medline

48. N. Habib, Y. Li, M. Heidenreich, L. Swiech, I. Avraham-Davidi, J. J. Trombetta, C. Hession, F. Zhang, A. Regev, Div-Seq: Single-nucleus RNA-Seq reveals dynamics of rare adult newborn neurons. *Science* **353**, 925–928 (2016). doi:10.1126/science.aad7038 Medline

49. F. Pedregosa *et al.*, Scikit-learn: Machine learning in Python. *J. Mach. Learn. Res.* **12**, 2825–2830 (2011).

50. L. van der Maaten, Accelerating t-SNE using tree-based algorithms. *J. Mach. Learn. Res.* **15**, 3221–3245 (2014).

51

RSS_00082887

51. M. Ester, H.-P. Kriegel, J. Sander, X. Xu, A density-based algorithm for discovering clusters a density-based algorithm for discovering clusters in large spatial databases with noise. *Proc. Second Int. Conf. Knowl. Discov. Data Min.* (1996), pp. 226–231.

52. X. Qiu, Q. Mao, Y. Tang, L. Wang, R. Chawla, H. A. Pliner, C. Trapnell, Reversed graph embedding resolves complex single-cell trajectories. *Nat. Methods* **14**, 979–982 (2017). doi:10.1038/nmeth.4402 Medline

53. M. J. Yang, S. Sim, J. H. Jeon, E. Jeong, H.-C. Kim, Y.-J. Park, I.-B. Kim, Mitral and tufted cells are potential cellular targets of nitration in the olfactory bulb of aged mice. *PLOS ONE* **8**, e59673 (2013). doi:10.1371/journal.pone.0059673 Medline

54. Y. I. Kawasawa, A. C. Salzberg, M. Li, N. Šestan, C. A. Greer, F. Imamura, RNA-seq analysis of developing olfactory bulb projection neurons. *Mol. Cell. Neurosci.* **74**, 78–86 (2016). doi:10.1016/j.mcn.2016.03.009 Medline

55. J. P. Doyle, J. D. Dougherty, M. Heiman, E. F. Schmidt, T. R. Stevens, G. Ma, S. Bupp, P. Shrestha, R. D. Shah, M. L. Doughty, S. Gong, P. Greengard, N. Heintz, Application of a translational profiling approach for the comparative analysis of CNS cell types. *Cell* **135**, 749–762 (2008). doi:10.1016/j.cell.2008.10.029 Medline

56. E. A. Alcamo, L. Chirivella, M. Dautzenberg, G. Dobreva, I. Fariñas, R. Grosschedl, S. K. McConnell, Satb2 regulates callosal projection neuron identity in the developing cerebral cortex. *Neuron* **57**, 364–377 (2008). doi:10.1016/j.neuron.2007.12.012 Medline

57. K. Hesse, K. Vaupel, S. Kurt, R. Buettner, J. Kirfel, M. Moser, AP-2δ is a crucial transcriptional regulator of the posterior midbrain. *PLOS ONE* **6**, e23483 (2011). doi:10.1371/journal.pone.0023483 Medline

58. H. Valcanis, S.-S. Tan, Layer specification of transplanted interneurons in developing mouse neocortex. *J. Neurosci.* **23**, 5113–5122 (2003). Medline

59. M. Ogawa, T. Miyata, K. Nakajima, K. Yagyu, M. Seike, K. Ikenaka, H. Yamamoto, K. Mikoshiba, The reeler gene-associated antigen on Cajal-Retzius neurons is a crucial molecule for laminar organization of cortical neurons. *Neuron* **14**, 899–912 (1995). doi:10.1016/0896-6273(95)90329-1 Medline

60. L. He, M. Vanlandewijck, E. Raschperger, M. Andaloussi Mäe, B. Jung, T. Lebouvier, K. Ando, J. Hofmann, A. Keller, C. Betsholtz, Analysis of the brain mural cell transcriptome. *Sci. Rep.* **6**, 35108 (2016). doi:10.1038/srep35108 Medline

61. Y.-C. Chiu, M.-Y. Li, Y.-H. Liu, J.-Y. Ding, J.-Y. Yu, T.-W. Wang, Foxp2 regulates neuronal differentiation and neuronal subtype specification. *Dev. Neurobiol.* **74**, 723–738 (2014). doi:10.1002/dneu.22166 Medline

62. T. Miyashita, M. Wintzer, T. Kurotani, T. Konishi, N. Ichinohe, K. S. Rockland, Neurotrophin-3 is involved in the formation of apical dendritic bundles in cortical layer 2 of the rat. *Cereb. Cortex* **20**, 229–240 (2010). doi:10.1093/cercor/bhp093 Medline

63. T. G. Belgard, A. C. Marques, P. L. Oliver, H. O. Abaan, T. M. Sirey, A. Hoerder-Suabedissen, F. García-Moreno, Z. Molnár, E. H. Margulies, C. P. Ponting, A transcriptomic atlas of mouse neocortical layers. *Neuron* **71**, 605–616 (2011). doi:10.1016/j.neuron.2011.06.039 Medline

52

RSS_00082888

64. A. Nagalski, L. Puelles, M. Dabrowski, T. Wegierski, J. Kuznicki, M. B. Wisniewska, Molecular anatomy of the thalamic complex and the underlying transcription factors. *Brain Struct. Funct.* **221**, 2493–2510 (2016). doi:10.1007/s00429-015-1052-5 Medline

65. M. B. Wisniewska, K. Misztal, W. Michowski, M. Szczot, E. Purta, W. Lesniak, M. E. Klejman, M. Dabrowski, R. K. Filipkowski, A. Nagalski, J. W. Mozrzymas, J. Kuznicki, LEF1/beta-catenin complex regulates transcription of the Cav3.1 calcium channel gene (Cacna1g) in thalamic neurons of the adult brain. *J. Neurosci.* **30**, 4957–4969 (2010). doi:10.1523/JNEUROSCI.1425-09.2010 Medline

66. H. Song, B. Lee, D. Pyun, J. Guimera, Y. Son, J. Yoon, K. Baek, W. Wurst, Y. Jeong, Ascl1 and Helt act combinatorially to specify thalamic neuronal identity by repressing Dlxs activation. *Dev. Biol.* **398**, 280–291 (2015). doi:10.1016/j.ydbio.2014.12.003 Medline

67. J. D. Corrales, S. Blaess, E. M. Mahoney, A. L. Joyner, The level of sonic hedgehog signaling regulates the complexity of cerebellar foliation. *Development* **133**, 1811–1821 (2006). doi:10.1242/dev.02351 Medline

68. E. Salero, M. E. Hatten, Differentiation of ES cells into cerebellar neurons. *Proc. Natl. Acad. Sci. U.S.A.* **104**, 2997–3002 (2007). doi:10.1073/pnas.0610879104 Medline

69. C. A. D'Souza, V. Chopra, R. Varhol, Y.-Y. Xie, S. Bohacec, Y. Zhao, L. L. C. Lee, M. Bilenky, E. Portales-Casamar, A. He, W. W. Wasserman, D. Goldowitz, M. A. Marra, R. A. Holt, E. M. Simpson, S. J. M. Jones, Identification of a set of genes showing regionally enriched expression in the mouse brain. *BMC Neurosci.* **9**, 66 (2008). doi:10.1186/1471-2202-9-66 Medline

70. N. X. Tritsch, J. B. Ding, B. L. Sabatini, Dopaminergic neurons inhibit striatal output through non-canonical release of GABA. *Nature* **490**, 262–266 (2012). doi:10.1038/nature11466 Medline

71. M. Moriyama, T. Fukuhara, M. Britschgi, Y. He, R. Narasimhan, S. Villeda, H. Molina, B. T. Huber, M. Holers, T. Wyss-Coray, Complement receptor 2 is expressed in neural progenitor cells and regulates adult hippocampal neurogenesis. *J. Neurosci.* **31**, 3981–3989 (2011). doi:10.1523/JNEUROSCI.3617-10.2011 Medline

72. J. V. Nielsen, J. B. Blom, J. Noraberg, N. A. Jensen, Zbtb20-induced CA1 pyramidal neuron development and area enlargement in the cerebral midline cortex of mice. *Cereb. Cortex* **20**, 1904–1914 (2010). doi:10.1093/cercor/bhp261 Medline

73. M. S. Cembrowski, L. Wang, K. Sugino, B. C. Shields, N. Spruston, Hipposeq: A comprehensive RNA-seq database of gene expression in hippocampal principal neurons. *eLife* **5**, e14997 (2016). doi:10.7554/eLife.14997 Medline

74. C. L. Thompson, L. Ng, V. Menon, S. Martinez, C.-K. Lee, K. Glattfelder, S. M. Sunkin, A. Henry, C. Lau, C. Dang, R. Garcia-Lopez, A. Martinez-Ferre, A. Pombero, J. L. R. Rubenstein, W. B. Wakeman, J. Hohmann, N. Dee, A. J. Sodt, R. Young, K. Smith, T.-N. Nguyen, J. Kidney, L. Kuan, A. Jeromin, A. Kaykas, J. Miller, D. Page, G. Orta, A. Bernard, Z. Riley, S. Smith, P. Wohnoutka, M. J. Hawrylycz, L. Puelles, A. R. Jones, A high-resolution spatiotemporal atlas of gene expression of the developing mouse brain. *Neuron* **83**, 309–323 (2014). doi:10.1016/j.neuron.2014.05.033 Medline

53

RSS_00082889

75. Z. Xie, X. Ma, W. Ji, G. Zhou, Y. Lu, Z. Xiang, Y. X. Wang, L. Zhang, Y. Hu, Y.-Q. Ding, W. J. Zhang, Zbtb20 is essential for the specification of CA1 field identity in the developing hippocampus. *Proc. Natl. Acad. Sci. U.S.A.* **107**, 6510–6515 (2010). doi:10.1073/pnas.0912315107 Medline

76. H. M. Knight, R. Walker, R. James, D. J. Porteous, W. J. Muir, D. H. R. Blackwood, B. S. Pickard, GRIK4/KA1 protein expression in human brain and correlation with bipolar disorder risk variant status. *Am. J. Med. Genet. B. Neuropsychiatr. Genet.* **159B**, 21–29 (2012). doi:10.1002/ajmg.b.31248 Medline

77. S. Shah, E. Lubeck, W. Zhou, L. Cai, In situ transcription profiling of single cells reveals spatial organization of cells in the mouse hippocampus. *Neuron* **92**, 342–357 (2016). doi:10.1016/j.neuron.2016.10.001 Medline

78. R. P. Seal, X. Wang, Y. Guan, S. N. Raja, C. J. Woodbury, A. I. Basbaum, R. H. Edwards, Injury-induced mechanical hypersensitivity requires C-low threshold mechanoreceptors. *Nature* **462**, 651–655 (2009). doi:10.1038/nature08505 Medline

79. P. Alifragis, A. Liapi, J. G. Parnavelas, Lhx6 regulates the migration of cortical interneurons from the ventral telencephalon but does not specify their GABA phenotype. *J. Neurosci.* **24**, 5643–5648 (2004). doi:10.1523/JNEUROSCI.1245-04.2004 Medline

80. E. Sánchez-Mendoza, V. Bellver-Landete, J. J. Merino, M. P. González, R. Martínez-Murillo, M. J. Oset-Gasque, Review: Could neurotransmitters influence neurogenesis and neurorepair after stroke? *Neuropathol. Appl. Neurobiol.* **39**, 722–735 (2013). doi:10.1111/nan.12082 Medline

81. H. Abraham, C. G. Pérez-García, G. Meyer, p73 and Reelin in Cajal-Retzius cells of the developing human hippocampal formation. *Cereb. Cortex* **14**, 484–495 (2004). doi:10.1093/cercor/bhh010 Medline

82. K.-K. Cheung, S. C. Mok, P. Rezaie, W. Y. Chan, Dynamic expression of Dab2 in the mouse embryonic central nervous system. *BMC Dev. Biol.* **8**, 76 (2008). doi:10.1186/1471-213X-8-76 Medline

83. O. Butovsky, M. P. Jedrychowski, C. S. Moore, R. Cialic, A. J. Lanser, G. Gabriely, T. Koeglsperger, B. Dake, P. M. Wu, C. E. Doykan, Z. Fanek, L. Liu, Z. Chen, J. D. Rothstein, R. M. Ransohoff, S. P. Gygi, J. P. Antel, H. L. Weiner, Identification of a unique TGF-β-dependent molecular and functional signature in microglia. *Nat. Neurosci.* **17**, 131–143 (2014). doi:10.1038/nn.3599 Medline

84. J. T. Ehmsen, Y. Liu, Y. Wang, N. Paladugu, A. E. Johnson, J. D. Rothstein, S. du Lac, M. P. Mattson, A. Höke, The astrocytic transporter SLC7A10 (Asc-1) mediates glycinergic inhibition of spinal cord motor neurons. *Sci. Rep.* **6**, 35592 (2016). doi:10.1038/srep35592 Medline

85. S. Chuikov, B. P. Levi, M. L. Smith, S. J. Morrison, Prdm16 promotes stem cell maintenance in multiple tissues, partly by regulating oxidative stress. *Nat. Cell Biol.* **12**, 999–1006 (2010). doi:10.1038/ncb2101 Medline

86. Z. H. Afsari, W. M. Renno, E. Abd-El-Basset, Alteration of glial fibrillary acidic proteins immunoreactivity in astrocytes of the spinal cord diabetic rats. *Anat. Rec. Adv. Integr. Anat. Evol. Biol.* **291**, 390–399 (2008). doi:10.1002/ar.20678 Medline

54

RSS_00082890

87. A. S. Saab, A. Neumeyer, H. M. Jahn, A. Cupido, A. A. M. Šimek, H.-J. Boele, A. Scheller, K. Le Meur, M. Götz, H. Monyer, R. Sprengel, M. E. Rubio, J. W. Deitmer, C. I. De Zeeuw, F. Kirchhoff, Bergmann glial AMPA receptors are required for fine motor coordination. *Science* **337**, 749–753 (2012). doi:10.1126/science.1221140 Medline

88. A. Honoré, S. Le Corre, C. Derambure, R. Normand, C. Duclos, O. Boyer, J.-P. Marie, N. Guérout, Isolation, characterization, and genetic profiling of subpopulations of olfactory ensheathing cells from the olfactory bulb. *Glia* **60**, 404–413 (2012). doi:10.1002/glia.22274 Medline

89. M. Murthy, S. Bocking, F. Verginelli, S. Stifani, Transcription factor Runx1 inhibits proliferation and promotes developmental maturation in a selected population of inner olfactory nerve layer olfactory ensheathing cells. *Gene* **540**, 191–200 (2014). doi:10.1016/j.gene.2014.02.038 Medline

90. J. D. Cahoy, B. Emery, A. Kaushal, L. C. Foo, J. L. Zamanian, K. S. Christopherson, Y. Xing, J. L. Lubischer, P. A. Krieg, S. A. Krupenko, W. J. Thompson, B. A. Barres, A transcriptome database for astrocytes, neurons, and oligodendrocytes: A new resource for understanding brain development and function. *J. Neurosci.* **28**, 264–278 (2008). doi:10.1523/JNEUROSCI.4178-07.2008 Medline

91. M. G. Erlander, A. J. Tobin, The structural and functional heterogeneity of glutamic acid decarboxylase: A review. *Neurochem. Res.* **16**, 215–226 (1991). doi:10.1007/BF00966084 Medline

92. P. R. Brumovsky, VGLUTs in peripheral neurons and the spinal cord: Time for a review. *ISRN Neurol.* **2013**, 829753 (2013). doi:10.1155/2013/829753 Medline

55

RSS_00082891

# EXHIBIT D

RSS_00082892



HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

2

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

RSS_00082894

3

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

RSS_00082895



4

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

RSS_00082896



5

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

RSS_00082897



6

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY

RSS_00082898

# EXHIBIT P

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SCALE BIOSCIENCES, INC.,          )
                                  )
          and                     )
                                  )
ROCHE SEQUENCING SOLUTIONS,       )     C.A. No. 22-1597-CJB
INC.                              )
          Plaintiffs,             )
                                  )     DEMAND FOR JURY TRIAL
     v.                           )
                                  )
PARSE BIOSCIENCES, INC.,          )     ███████████████████
                                  )     ███████████████████
          Defendant,              )     ██████
_____)
                                  )
PARSE BIOSCIENCES, INC.,          )
                                  )
          and                     )
                                  )
UNIVERSITY OF WASHINGTON,         )
                                  )
          Counterclaim Plaintiffs,)
     v.                           )
                                  )
SCALE BIOSCIENCES, INC.,          )
                                  )
          Counterclaim Defendant. )
_____)

## ROCHE SEQUENCING SOLUTIONS, INC.'S
## VERIFIED STATEMENT IN RESPONSE TO PARAGRAPH 2 OF PARSE'S
## PROPOSED ORDER (D.I. 358)

Pursuant to the Court's May 28, 2025 Order (D.I. 412) on Defendant Parse Biosciences,

Inc.'s ("Parse") Motion (D.I. 285) and Paragraph 2 of Parse's Proposed Order (D.I. 358),

Plaintiff Roche Sequencing Solutions ("Roche") provides the following Verified Statement

responding to Paragraphs 2.a-g of the Proposed Order.  Roche provides this Verified Statement

Docusign Envelope ID: A4105712-E751-4312-90AB-2BEAB0651B74



without waiver of any attorney-client privilege, work product protection, or other immunity regarding the statements or subject matter contained herein.

2

██████████████████████████████████████████

- ████████████████████████████████████ (RSS_00016948-

  RSS_00016953)

- ████████████████████████████████████

  (RSS_00016954-RSS_00016963)

████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

███████████████████████████

Pursuant to Roche's document retention policies, █████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

███  .  █████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████  ████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

3

**2b.** **Roche's actual practices regarding document retention, document destruction, and legal hold(s) in this litigation**

During this litigation, Roche maintained documents consistent with its document retention policies detailed above. Documents relevant to this case, including those of ███████ and ████████, were on legal holds for other matters since ████████████, and ████████, respectively, and have continued to be on hold for the pendency of this matter. A temporary hold specific to this matter was implemented in ████████████████ ████████████████████████████████████████████████████. ████████████

4

Docusign Envelope ID: A4105712-E751-4312-90AB-2BEAB0651B74



**2c.** ██████████████ **involvement in relevant matters** ██████████████. ██████████████

RSS_00024067-RSS_00024068 at RSS_00024067. ██████████████

██████████████ Dallett Dep. at 39:8-21

██████████████ ; *id.* at 40:18-41:3 ██████████████

5

Docusign Envelope ID: A4105712-F751-4312-90AB-2BEAB0651B74



RSS_00140502-RSS_00140507; RSS_00140520-RSS_00140526.

RSS_00147013.

RSS_00141077-RSS_00141078; RSS_00150606-RSS_00150607; RSS_00150858-RSS_00150859; RSS_00150916-RSS_00150920.

RSS_00150562-RSS_00150565; RSS_00150063-RSS_00150064.

6

Docusign Envelope ID: A4105712-E751-4312-90AB-2BEAB0651B74



**2d.**

7

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

███

**2e.**     **The earliest date Roche claims that it reasonably could have anticipated litigation and all non-privileged bases for that claim, including any reason Roche claims it did not anticipate litigation in ████████████.**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████ RSS_00000034-RSS_00000159. █████████████████████████████████████████

███████████████████████████████████ RSS_00145618-RSS_00145626 at RSS_00145623; RSS_00145896-RSS_00145904 at RSS_00145898; RSS_00024067-RSS_00024068. ██████████████████████████

█████████████████████████████████████████████

███   RSS_00000001-RSS_00000033.

█████████████████████████████████████████████

█████████████   RSS_00147734-RSS_00147736 at RSS_00147735; RSS_00147866-RSS_00147887 at RSS_00147874. ███████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████ RSS_00000001-RSS_00000033 at RSS_00000015. ██████████████████████████████████

████████████████   RSS_00000001-RSS_00000033 at RSS_00000002.   █████████

█████████████

8

Docusign Envelope ID: A4105712-E751-4312-90AB-2BEAB0651B74



RSS_00000001-RSS_00000033 at RSS_00000003.

SCALEBIO0059531-SCALEBIO0059532.

RSS_00082774-RSS_00082898.

9

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████    *See* RSS_00151897.  On December 14, 2022, Scale filed suit and named

Roche as a nominal defendant.  D.I. 1.  Roche and Scale stipulated to realign Roche as a plaintiff

on May 3, 2023.  D.I. 53.

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████  D.I. 290 Ex. L.  ██████████████████████

████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████

10

████████████████████████████████████████████████

**2f.**  **Roche's diligence in collecting, reviewing, and producing all relevant and responsive documents and emails in this litigation;**

Roche is a party in this case because it owns the licensed patents. It did not initiate the lawsuit and Roche did not invent the technology embodied in the patents. *See* D.I. 390. Roche has never sold a commercial product that practices the asserted patents.

Roche served its initial disclosures on March 29, 2023.
███████████████████████████████████████ ██████████ ████████████

███████████. Parse served its discovery requests to Roche on August 4, 2023. Roche produced its merger agreement with ██████████ and its license agreement with Scale on October 5, 2023. ███████████████████████████████████████████████ ██████████ and

██████████████ had been involved in ██████████████ and still worked at Roche, ██████████████

██████████ ██████████ and ██████████, respectively. ██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ The documents ██████████

████ were reviewed and all relevant, non-privileged documents were produced on March 1, 2024, April 8, 2024, and May 3, 2024. Roche later identified ██████████ ██████████████

██████████████████████ ██████████. ███████████████ ██████████. ██

██████ provided a folder of ██████████████████ ███████████████████ that was reviewed and from which documents were produced.

Parse first raised the subject of search terms with Roche on December 20, 2023. The parties agreed on an ESI procedure for proposing and evaluating search terms on January 6, 2024. Roche exchanged several iterations of search terms with Parse throughout January, February, and March of 2024 and reached agreement with Parse on March 26, 2024. Pursuant to the parties' ESI agreement, Parse notified Roche of its choice for Roche's email custodians on

11



January 25, 2024, identifying ███████████████████████████████████████.

On May 17, 2024, Parse further identified ██████████████████████████████ as email custodians. Roche informed Parse the privilege review for ████████████ ESI would be overly burdensome because it was voluminous and she is an attorney, and Parse did not object. Roche also informed Parse it did not have any ESI for ████████████ because she separated from Roche on ████████████.

Roche performed ESI collections for ███████████████████████████████ ████████████████████████████ through the agreed cutoff date for ESI of May 31, 2023. Search term hits for collections from Roche's custodians were reviewed and responsive, non-privileged documents were produced on March 1, 2024, April 8, 2024; May 3, 2024; July 12, 2024; and July 19, 2024.

After making its initial productions in March, April, May, and July of 2024, Roche's ████████████████████████████████████████████████████████████ ████████████████████████████████ Although only some non-privileged, responsive email had been identified and produced as part of this process, █████████████████████ ███████ ████████ had concluded in ████████, ██████████████████████████████████ ███████████████████████████████████████████████████████.

Roche's counsel represented ███████████████████████████████████ ████████████. Roche collected, reviewed, and produced relevant, non-privileged documents from her personal email and files. Those documents were produced on September 20, 2024; September 27, 2024; October 4, 2024; October 15, 2024; and December 13, 2024.

In January 2025, Roche's counsel learned that there were additional potentially responsive, non-privileged emails that had not been produced (*see* Section g. below). Roche

12

Docusign Envelope ID: A4105712-F751-4312-90AB-2BEAB0651B74

then informed Parse that there were additional responsive documents that had not been produced. Roche promptly collected, searched and reviewed the additional, potentially responsive documents from █████████████████████████. Those documents were produced on February 12, 2025; February 18, 2025; March 3, 2025; March 7, 2025; March 28, 2025; and April 17, 2025.

**2g.** 

13

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.

████████████████████████████████████████████  As a result, the limited number of responsive emails in Roche's production did not seem unreasonable.

Later, when gathering information in response to Parse's queries about Roche's document retention, a████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ █████████████████████████████████████████. T█

████████████████████████████████████████████████████████████

████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████████

██████████  Roche promptly performed additional collections, ran the agreed ESI-search terms over the full set of email records, and reviewed and produced the email.  Roche completed that production on April 17, 2025.  The bates numbers for those productions are as follows: RSS_00139032-RSS_00152222.

*Garth Rosengren*

Garth Rosengren, Esq.
Head of Legal
Roche Molecular Labs

Dated:  June 18, 2025

14

# EXHIBIT Q



personal address and phone

HIGHLY CONFIDENTIAL - OUTSIDE
ATTORNEYS' EYES ONLY

SCALEBIO0161334



HIGHLY CONFIDENTIAL - OUTSIDE
ATTORNEYS' EYES ONLY

SCALEBIO0161335



**HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

# EXHIBIT R

8/29/2024      Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.      Jan Berka, Ph.D.

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

———————————————————X

SCALE BIOSCIENCES, INC.        :   C.A. No.
         and                   :   1:22-cv-01597-CJB
ROCHE SEQUENCING SOLUTIONS, INC., :
         Plaintiffs,           :
     vs.                       :
PARSE BIOSCIENCES, INC.,       :
         Defendant.            :

———————————————————X

PARSE BIOSCIENCES, INC.,       :
         and                   :
UNIVERSITY OF WASHINGTON,       :
         Counterclaim Plaintiffs,:
     vs.                       :
SCALE BIOSCIENCES, INC.,       :
         Counterclaim Defendant. :

———————————————————X

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
JAN BERKA, PH.D.
Thursday, August 29, 2024

Reported by: SUSAN ASHE, CER

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

**Page 2**

Videotaped videoconference deposition of JAN BERKA, PH.D., taken on behalf of the Defendant/Counterclaim Plaintiffs, beginning at 11:06 a.m. Central European Time, on Thursday, August 29, 2024, via Zoom, before Susan Ashe, Certified Electronic Reporter, and a Notary Public for the Commonwealth of Virginia.

**Page 3**

APPEARANCE OF COUNSEL:
    On behalf of the Defendant/Counterclaim
    Plaintiffs:
        STERNE KESSLER GOLDSTEIN & FOX
        BY:  BYRON L. PICKARD, ESQ.
        BY:  RYAN N. KAISER, ESQ.
        1101 K Street, Northwest, 10th Floor
        Washington, D.C.  20005
        (202) 371-2600
        bpickard@sternekessler.com
        rkaiser@sternekessler.com
        (Via Videoconference)

**Page 4**

APPEARANCE OF COUNSEL (Continued):
    On behalf of the Plaintiff Roche Sequencing
    Solutions, Inc. and the Witness:
        WILMERHALE
        BY:  BARISH OZDAMAR, PH.D., ESQ.
        BY:  VANDANA APTE, ESQ.
        250 Greenwich Street, 45th Floor
        New York, New York  10007
        (212) 230-8800
        barish.ozdamar@wilmerhale.com
        vandana.apte@wilmerhale.com
        (Via Videoconference)

ALSO PRESENT:
    Henry Marte
    Videographer

1 (Pages 1 to 4)

8/29/2024    Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.    Jan Berka, Ph.D.



Page 45

How would you describe the role of engaging the RED Team in that process versus the Product Development Team?

A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Q. And how does that differ, if at all, from the Product Development Team's role?

A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Q. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

A. ▮▮▮▮▮▮▮▮▮

www.DigitalEvidenceGroup.com Digital Evidence Group C'rt 2024    202-232-0646

8/29/2024        Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.        Jan Berka, Ph.D.



13 (Pages 49 to 52)

8/29/2024        Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.        Jan Berka, Ph.D.



14 (Pages 53 to 56)

8/29/2024    Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.    Jan Berka, Ph.D.



Page 69

A. Okay.

Q. All right. So if we look here at the first page, there are three individuals named -- There's ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓. Right?

A. Yes.

Q. Were ▓▓▓▓▓▓▓▓▓▓▓▓▓, were they part of the RED Team?

A. Yes, they were.

Q. And you were their supervisor. Is that right?

A. I was a direct manager of ▓▓▓▓ ▓▓▓▓▓▓▓▓.

Q. All right. Do you know, roughly, the timing of the report that's here at Exhibit 2184?

A. Surprisingly, it does not have a date on the front page. But based on the contents, I would put it to ▓▓. But I cannot be 100% certain.

Q. Okay. If we turn to, essentially, the third page, which should have the trailing Bates numbers at -906, we should see a slide that says ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Do you see that?

A. Yes, I do see that.

Page 70

Q. Okay. There's a subheading. It says "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" In view of that, does that help you nail down the timeline to, this is a document generated after the acquisition?

A. That number alone, no. ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓

Q. ▓▓▓▓▓▓▓▓▓▓▓▓▓

A. ▓▓▓▓▓▓▓▓

Q. ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ Is that right?

A. ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓

Q. ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Is that right?

A. ▓▓▓▓▓▓▓▓▓▓

Page 71

▓▓▓▓▓▓▓▓

Q. Okay, yeah. Thank you for that.

A. Yeah.

MR. PICKARD: You can take that down. Let's present Tab 42, please. And this will be Exhibit 2185.

(Whereupon, Berka Exhibit 2185 was marked for identification.)

Q. Do you recognize Exhibit 2185, Dr. Berka?

A. Don't have a very specific recollection of this very page. But I do recognize it as meeting minutes, yes.

Q. Okay. And the title of the document is "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓" Do you see that?

A. Yes.

Q. "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" What was the "▓▓▓▓▓ ▓▓▓▓"?

A. ▓▓▓▓▓▓▓▓▓▓▓▓

Q. All right. And if you look down under "▓▓▓▓," there's a line item second to last. It says:

Page 72

▓▓▓▓▓▓▓▓ Do you see that?

A. Yes, I see that.

Q. And it says: ▓▓▓▓▓▓▓▓▓ ▓▓▓▓ And identifies ▓▓▓ -- ▓▓ -- and ▓▓▓ as the lead on that agenda item. Right?

A. Yes.

Q. ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓

A. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Q. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

A. ▓▓▓▓▓▓▓▓▓

Q. ▓▓▓▓▓▓▓▓▓▓▓

A. ▓▓▓▓▓▓▓▓▓

Q. ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ Correct?

18 (Pages 69 to 72)

8/29/2024    Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.    Jan Berka, Ph.D.



Page 89

A. ███████████

Q. Right. You may have just answered the question, but I'll put it to you anyway.

A. ███████████

Q. Right. And what I'm trying to understand is: ███████████

Page 90

A. ███████████

Q. ███████████ Is that right?

A. ███████████

MR. PICKARD: All right. If we could show the witness Tab 57, Ryan.
All right. Is this 2190?
MR. KAISER: Yes, that's correct, 2190.
(Whereupon, Berka Exhibit 2190 was marked for identification.)

Q. You should have Exhibit 2190, Dr. Berka.

A. Yes, I do.

Q. All right. Do you recognize this document?

A. Looking at the document -- again, I don't have a direct recollection when I look at the first page. But it looks like a list of ███████████ ███████████ ███████████.

Page 91

Q. All right. Now, if you could turn to Page 6 of 10 in this document.

A. Yes, yes.

Q. This page and the following one have ███████████
Do you see that?

A. Yes.

Q. ███████████
Do you see that?

A. Yes.

Q. ███████████ Is that your understanding?

A. ███████████

Q. All right. ███████████

MR. OZDAMAR: And Dr. Berka, I'm going to caution you, in answering that

Page 92

question, please don't reveal the substance of any communications you may have had with attorneys at Roche.
And to the extent you can answer that question without doing so, please go ahead.

A. I'm not aware of this item.
I do see what I see here. They are obviously classified or checkmarked as that, but that's all I can say about that.

MR. PICKARD: All right. You can take that down.

Q. Just bear with me, Dr. Berka.

A. Sorry. Say again, please.

Q. I was just asking for your indulgence while I get ready for the next item. So thank you for your patience.
All right. You saw her name a moment ago, ███████████ and that she was someone who worked under your supervision, albeit indirectly. Correct?

A. Yes, correct. ███████████

Q. ███████████

23 (Pages 89 to 92)

8/29/2024        Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.        Jan Berka, Ph.D.

Page 93

A. ████████████████

Q. ████████████████████████████

A. ████████████████████████

MR. PICKARD: All right. I'd like to show the witness Tab 53, which should be Exhibit 2191.

(Whereupon, Berka Exhibit 2191 was marked for identification.)

Q. All right. Let me know when you've had a chance to download the document, Dr. Berka.

(Pause.)

A. Yes, I have it on screen now.

Q. Do you recognize what we've marked here as 2191?

A. Yes.

Q. And what is this?

A. ████████████████████████████████████████████████

Q. Okay. In the context of single-cell analysis, are you familiar with what's called a "whole transcriptome" or "total transcriptome"?

A. Yes, I'm familiar with that.

Q. Are those two terms interchangeable,

Page 94

"whole transcriptome" and "total transcriptome"?

A. I think people use them interchangeably, yes.

Q. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Q. All right. Now, if you could turn to Page 16 of this document, ████████████████████████████████

Let me know when you're there.

A. Yes.

Q. All right. ████████████████████████████████████████████████ Correct?

A. ██

Q. And the second bullet point reads:

████████████████████████████████████████

Page 95

Do you see that?

A. Yes.

Q. That's a reference to ████████████?

A. ████████████████████████████████

Q. All right. Do you know what period in which ████████████ --

Do I have that right, is she a doctor?

A. Yes.

Q. -- what period in which ████████████████████████████████████████?

A. ████████████████████████████████

Q. ████████████████████████████████████████

A. ████████████████████████████████████████

MR. PICKARD: Okay, fair enough. You could take that down.

Let's show the witness Tab 65, please.

(Whereupon, Berka Exhibit 2192 was marked for identification.)

Q. All right. Let me know when you've got the document.

Page 96

This is 2192 -- do I have that, right? Great.

A. Yes, I see it.

Q. All right. Do you recognize this document, Dr. Berka?

(Witness reading.)

A. Yes -- yes, I do.

Q. Okay. What is this document?

A. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Q. Okay. And if you could, I'd like to have you turn to Page 28.

Let me know when you're there.

And I guess before we ask you about this slide, do you know who prepared this document, Exhibit 2192?

A. I cannot say with certainty, but I think it -- yeah, I cannot say.

Q. Who do you suspect created this document?

A. ████████████████████████████████

24 (Pages 93 to 96)

8/29/2024          Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.          Jan Berka, Ph.D.

Page 109

Digital Evidence Group, L.L.C.
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

SIGNATURE PAGE
Case: Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.
Witness Name: Jan Berka, Ph.D.
Deposition Date: August 29, 2024

I do hereby acknowledge that I have read
and examined the foregoing pages
of the transcript of my deposition and that:

(Check appropriate box):
( ) The same is a true, correct and
complete transcription of the answers given by
me to the questions therein recorded.
( ) Except for the changes noted in the
attached Errata Sheet, the same is a true,
correct and complete transcription of the
answers given by me to the questions therein
recorded.

_____     _____
 DATE          WITNESS SIGNATURE


_____     _____
 DATE          NOTARY

Page 110

Digital Evidence Group, LLC
1730 M Street, NW, Suite 812
Washington, D.C.  20036
(202)232-0646


ERRATA SHEET

Case: Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.
Witness Name: Jan Berka, Ph.D.
Deposition Date: August 29, 2024
Page No.   Line No.     Change

_____     _____
Signature               Date

28 (Pages 109 to 110)

# EXHIBIT S



RSS_00044281



2

RSS_00044282



RSS_00044283



RSS_00044284



RSS_00044285

6



RSS_00044286



7

RSS_00044287



8



RSS_00044290



RSS_00044291



RSS_00044292



RSS_00044293



RSS_00044294



RSS_00044295



RSS_00044296



RSS_00044298



20

RSS_00044300



21

RSS_00044301



22

RSS_00044302



23

RSS_00044303



24

RSS_00044304



RSS_00044305



27

RSS_00044307



28

RSS_00044308



RSS_00044309



31

RSS_00044311



32

RSS_00044312



33

RSS_00044313



34

RSS_00044314

# EXHIBIT T

| From: | Saxton, Kate <Kate.Saxton@wilmerhale.com> |
|---|---|
| Sent: | Friday, February 14, 2025 2:37 PM |
| To: | David Wang; Apte, Vandana; Brady Gleason; Ryan Kaiser; Stuart V. C. Duncan Smith; Gunther, Jr., Robert J.; Laupheimer, Madeleine C; farnan@rlf.com; Metzler, Sara M.; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran; Emma L. Frank; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit |
| Cc: | ParseUW; kpascale@ycst.com; Vrana, Robert; Thomas |
| Subject: | RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL |

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady, David, and Byron,

We have taken your questions back to our client and wanted to share the information below about our document retention efforts for this case.  In short, all non-privileged, relevant ESI custodial emails *and* documents have been preserved.

1. When a Roche custodian is subject to a legal hold, ███████████████████████████████████████████████████████ .

2. Parse is limited to six email custodians per our ESI agreement.  Parse identified those six email custodians in Parse's May 30, 2024 letter: ████████████████████████████████ .

3. ████████████████████████████████████████████████████

   a. ████████████████████████████████████

      i. ███████████████████████████████████████ His documents and emails have thus been preserved.

   b. ████████████

      i. ████████████████████████████████ His documents and emails have thus been preserved.

   c. ████████████

      i. ████████████████████████████████████████████ .

      ii. ███████████████████████ Dallett Dep. at 40:25-41:3. ███████████████████████████████████

      iii. ████████ documents were also preserved. █████████████████████████████████████████████████████████████████

   d. ████████████████████████

      i. ████████████████ was added to the legal hold for this case ████████████ .

      ii. ████████████████████████████ .



1



iii. ███████████

iv. Thus, all of ██████████

case.

v. ████████ had a personal laptop and email account, which is what we collected from and produced.

e. ████████████

i. ████████████

4. ████████████

███. As we have explained, we are producing those emails now on a rolling basis. The first production was sent out on February 12, and we expect to complete the production on or before Friday, March 7. As we have told you, we are prepared to discuss whether certain depositions should be re-opened on a limited basis if appropriate.

Given that we have provided answers to your outstanding questions and are producing the documents that we had missed initially, there is no need to involve the court in this dispute. As you know, the overwhelming majority of recent District of Delaware cases have held that discovery on discovery is impermissible. *See Biohaven Therapeutics Ltd. et al v. Avilar Therapeutics, Inc. et al*, C.A. No. 23-328-JLH-CJB, D.I. 602, Oral Order (D. Del. Jan. 9, 2025) (denying the defendant's request for "further information regarding the deletion of" a custodian's files because "as a general matter, discovery on discovery (or the like) is not typically permitted in federal actions") (citing *Brit. Telecomm. PLC v. IAC/Interactivecorp*, Civil Action No. 18-366-WCB, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) (internal citations omitted); *Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corp.*, C.A. No. 21-558-MN, Oral Order (D. Del. June 8, 2022) (finding that "[d]iscovery regarding efforts undertaken by Plaintiff to preserve documents in anticipation of litigation is barred under the Court's Default Standard for Discovery of ESI and Fed. R. Civ. P. 26(b)(3)(A) and (B)"); *ECB USA, Inc. et al v. Savencia, S.A.*, C.A. No. 19-731-GBW-CJB, D.I. 306 (D. Del. Jan. 18, 2023) ("'[C]ourts are generally reluctant to order discovery on discovery…'").

We therefore ask that you withdraw your motion for an e-discovery conference.

Regards,

Kate

---

**From:** David Wang <DWang@sternekessler.com>
**Sent:** Monday, February 10, 2025 12:19 PM
**To:** Apte, Vandana <Vandana.Apte@wilmerhale.com>; Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com;

Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL SENDER**

Vandana,

Thank you. We will circulate an invite shortly.

Best,
David

---

**David Wang**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** dwang@sternekessler.com
**Direct:** 202.772.8814   **Main:** 202.371.2600

---

**From:** Apte, Vandana <Vandana.Apte@wilmerhale.com>
**Sent:** Monday, February 10, 2025 11:05 AM
**To:** David Wang <DWang@sternekessler.com>; Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

David,

Roche and our local counsel are available from 2:00pm-2:30pm ET today.

**Vandana Apte | WilmerHale**
She/her/hers
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6550 (t)
+1 212 230 8888 (f)
vandana.apte@wilmerhale.com

**Please consider the environment before printing this email.**

---

3

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** David Wang <DWang@sternekessler.com>
**Sent:** Monday, February 10, 2025 9:20 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

Thank you for meeting and conferring with us on Friday. As agreed, please provide a time today before 3:00 PM EST that Roche, including its Delaware counsel, is available to continue our discussions.

Best regards,
David

---

**David Wang**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** dwang@sternekessler.com
**Direct:** 202.772.8814   **Main:** 202.371.2600

-----Original Appointment-----
**From:** David Wang
**Sent:** Friday, February 7, 2025 2:39 PM
**To:** Brady Gleason; Saxton, Kate; Apte, Vandana; Ryan Kaiser; Stuart V. C. Duncan Smith; Gunther, Jr., Robert J.; Laupheimer, Madeleine C; farnan@rlf.com; Metzler, Sara M.; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran; Emma L. Frank; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit
**Cc:** ParseUW; kpascale@ycst.com; Vrana, Robert; Thomas
**Subject:** Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL
**When:** Friday, February 7, 2025 3:30 PM-4:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:**

Apologies, all, please find an updated meeting link below:

https://sternekessler.webex.com/sternekessler/j.php?MTID=m4407998b0dd0d687a4a199c2fbb5be47

Meeting number: 2425 409 6479

Password: efEGGMEf365

Join by video system
Dial 24254096479@sternekessler.webex.com
You can also dial 173.243.2.68 and enter your meeting number.

Join by phone
+1-202-860-2110 United States Toll (Washington D.C.)
1-844-621-3956 United States Toll Free

Access code: 242 540 96479

_____

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Friday, February 7, 2025 9:57 AM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

Kate,

Let's meet and confer at 3:30 pm. We will circulate an invite shortly. As to your three points:

*First*, as you are aware, most of Roche's fact witness deposition occurred well after the close of fact discovery. This includes the August 15 deposition of ███████████, a 30(b)(6) witness would could not testify (because he was not adequately prepared) on the date Roche issued a litigation hold in this case. This prompted our request for this information two weeks later, on September 3rd. Thus, your claim that we waited until October 7 to seek this information is flatly wrong.

*Second*, your claim that we have not sent you Delaware case is also incorrect. *See* Jan. 15 email; Dec. 10 email. The case law cited in these emails includes *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, which recognized "a growing trend of waiver of privilege to require production of documents," such as the litigation holds themselves, "where spoliation has occurred." 886 F. Supp. 2d 466, 482 (D. Del. 2012) (collecting cases).

*Third*, Roche's refusal to provide the requested information, which is necessary to support any claim that no relevant documents or emails were destroyed, is further evidence that spoliation has occurred. This evidence, of course, is in



███████████████████████████████████████ "████████████████████████████████████ ████████████████████," *see* 6/12/24 Letter from M. Laupheimer to B. Gleason. That is, "███████████████████████," *id.*, ████████████████ ███

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Thursday, February 6, 2025 3:21 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Parse's repeated demands for information regarding Roche's privileged litigation hold notices are improper.

*First*, fact discovery closed on August 2, 2024—more than *six months ago*. Parse was given a full opportunity to depose Roche witnesses but never raised the issue of the timing of the litigation hold until well after the close of fact discovery. Indeed, the first time that Parse raised this issue was in an email dated Monday, October 7—more than *three months* after the close of fact discovery. Despite the fact that Parse's email came more than three months after the close of fact discovery, Roche was willing to consider Parse's untimely request and provide the requested information. Moreover, at no point—either during or in the numerous months after the close of fact discovery—has Parse identified any document that it believes is missing from Roche's production. Parse's only complaint has been that too few emails were produced. As the District of Delaware has held, additional discovery is not warranted where there has been a failure to "articulate with specificity withheld or overlooked documents." *International Business Machines Corporation v. Zynga Inc.*, 22-590-GBW, D.I. 127, Oral Order (D. Del. Aug. 14, 2023). Again, despite Parse's untimely request to investigate, Roche did so at Parse's request. As set forth in my email below, we have investigated your concerns and have agreed to produce any additional responsive emails consistent with our ESI agreement. Your response to our willingness to provide additional email was to threaten Roche, making it clear that Parse is not actually interested in additional documents, but is endeavoring to waste Roche's time and money. This conduct is entirely improper, particularly in a case where Roche is a party only as the licensee of the asserted patents, having licensed them ███████████████████ ██████████████.

*Second*, as Roche has repeatedly maintained, information regarding litigation hold notices is privileged, and Parse has failed to identify any District of Delaware caselaw to the contrary. The District of Delaware has found that "[d]iscovery regarding efforts undertaken by Plaintiff to preserve documents in anticipation of litigation is barred under the Court's Default Standard for Discovery of ESI and Fed. R. Civ. P. 26(b)(3)(A) and (B)." *Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corp.*, C.A. No. 21-558-MN, Oral Order (D. Del. June 8, 2022); *see also ECB USA, Inc. et al v. Savencia, S.A.*, C.A. No. 19-731-GBW-CJB, D.I. 306 (D. Del. Jan. 18, 2023) ("'[C]ourts are generally reluctant to order discovery on discovery…'") (quoting *Brit. Telecommunications PLC v. IAC/Interactivecorp*, No. CV 18-366-WCB, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020)). Your repeated request for this information is in direct violation of Delaware law.

*Third*, to the extent Parse is alleging spoliation, there has been no "failure to preserve documents relevant to this case." To the contrary, Roche recently identified additional repositories of email and intends to produce any responsive

6

emails consistent with our ESI agreement on a rolling basis. Moreover, despite your unsupported assertion below, all relevant email was preserved consistent with Roche's obligations. ██████████████████████ ████████████████, ███████████████████████████████████████████ █ ██████████ Dep. at 40:25-41:3. █████████████████████████████████████████████ █████████████████████████████████████████████████████████████ . Moreover, as you know, Roche licensed the asserted patents to Scale in █████████████, ███████████████ ████████████████████████████████████████████████████ . Indeed, the Third Circuit affirmed a case holding that there is "no factual basis whatsoever" to support a finding of intentional destruction of email where, as here, there is an automatic deletion policy to purge email accounts within ninety days and the litigation does not commence until a year after the deletion occurred. *Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 378–80 (M.D. Pa. 2016), *aff'd*, 710 F. App'x 94 (3d Cir. 2017); *see also Graco Inc. et al v. Carlisle Construction Materials, LLC*, C.A. No. 21-245-JFM, D.I. 191, Oral Order (D. Del. Nov. 17, 2023) (finding that "further discovery into Plaintiffs' document retention efforts" was not warranted where Defendants had not "credibly supported their allegations of spoilation and failure to preserve documents.").

We are available to discuss on Friday at 3:30 pm ET. However, to be clear, we reserve all rights to the extent Parse continues to pursue untimely and improper discovery.

Regards, Kate

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, February 4, 2025 10:33 AM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

Your email does not respond to any of the issues identified in my earlier email. Nor does it provide any of the information requested therein. R████████████████████████████████████████████████ ████████████████ which has and will continue to prejudice our ability to prosecute our case. Your refusal to provide the information we requested weeks ago confirms that the parties are at an impasse.

Please provide your availability to meet and confer. We are available Thursday afternoon.

We intend to discuss Roche's failure to preserve documents relevant to this case, ████████████████████ ████████████████████████████████████████ . Neither issue can continue unresolved any longer—we have no choice but to bring these issues to the Court's attention before the close of discovery to preserve our ability to seek the appropriate relief.

Regards,
Brady

7

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Monday, February 3, 2025 10:47 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady-

Thank you for your email.  We disagree that Roche has delayed in responding to Parse's requests, and, as we have explained, we disagree with your assertion that Roche has failed to properly preserve documents that may be relevant to this litigation.  Moreover, we have investigated your concerns regarding Roche's email production in this litigation.  As part of this inquiry, we identified additional repositories of email and are in the process of reviewing that email.  To the extent we identify responsive emails consistent with the agreed ESI protocol, we will produce those emails on a rolling basis as soon as possible.  No impasse exists between the parties, and Parse's assertion that it will bring this issue to the Court on February 10 is misplaced.

To the extent you have questions regarding this matter, please provide your availability this week and Roche will be happy to discuss this matter.

Best regards, Kate

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, January 30, 2025 4:14 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

Roche cannot continue to delay its response to our requests due to your travel schedule. We are prepared to bring this issue to the Court's attention no later than February 10th.

Please let us know your availability to meet and confer on Monday.

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Friday, January 24, 2025 10:13 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady-

I am not available this week due to travel.  We are investigating the requests below and will respond as soon as possible.

Best regards,

Kate

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, January 23, 2025 12:05 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-

ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

We have yet to receive the information requested in my previous email, which remains unanswered. Please provide your availability to meet and confer next week.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, January 15, 2025 10:11 AM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

Kate,

However, given that we just now learned that ████████████ t, we ████████████ and any additional litigation hold(s) that Roche is relying on to support any claim that no relevant documents or emails were destroyed.

As you are aware, this dispute arose because ████████████ a number confirmed by Roche itself. *See* 6/12/24 Letter from M. Laupheimer to B. Gleason. ████████████ that did not involve Roche individuals, and the ████████████ only contained emailer header information without the message body. When we first raised the issue about the lack of emails in Roche's production, *see* 5/30/2024 Letter from B. Gleason to S. Duncan Smith and M. Laupheimer, we were told that it was ████████████." *See* 6/12/24 Letter from M. Laupheimer to B. Gleason. It was, therefore, imperative that Roche had issued a legal hold as soon as litigation was reasonably foreseeable to preserve relevant emails. However, when Parse attempted to confirm that a

10

timely hold was put in place and inquired about the date it was issued, *see* 9/3/2024 email from R. Kaiser, Roche refused to provide that information until your December 18, 2024 email.

███████████████████████████████████████████. As the owners of the patent-in-suit, and with Dr. ███████████████████████████, Roche reasonably foresaw litigation and should have issued a litigation hold no later than notice of Scale's original complaint and—based on documents produced in this case—potentially far earlier. *See*, *e.g.*, SCALEBIO0272905. Where, as here, a party neglects its duty to preserve evidence, courts have found that the attorney-client privilege is lost and litigation hold letters are no longer protected. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 482, 491 (D. Del. 2012) (granting motion to compel production of litigation hold letter and explaining that, "[a]lthough, in general, litigation hold letters are privileged, courts have adopted the view that when spoliation occurs those letters become discoverable"), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07–127–LPS–MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014).

Therefore, we request that Roche provide by January 21:

1. A ████████████████████████████
2. The date each of the following Roche custodians and Roche IT ██████████████████████████:
    a. ███████████
    b. █████████
    c. ████████████
    d. █████████
    e. ██████████
    f. ████████████
    g. ███████████
3. The date on which Roche IT and the individuals listed above ████████████████████████████
4. To the extent that Roche claims that other litigation holds would have prevented the deletion or destruction of relevant documents and emails, to which your email alludes, we also request the same information associated with those holds that is requested in items (1), (2), and (3) above.

If Roche is unwilling to provide the information above, please provide your availability to meet and confer next week.

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Wednesday, December 18, 2024 6:33 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas

<THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady-

As we have repeatedly stated, we believe the date of Roche's litigation hold notice is privileged.  None of the case law you have identified supports the assertion that it is not privileged.  Fact discovery in this matter closed months ago, and the parties are well into expert discovery.  We therefore do not understand Parse's insistence on this information, particularly because courts generally disfavor discovery regarding discovery.  *See Brit. Telecommunications PLC v. IAC/Interactivecorp*, No. CV 18-366-WCB, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) (finding that the plaintiff's complaints about the defendant's document production were "not sufficiently supported to justify the kind of discovery on discovery that [was] proposed" in the plaintiff's 30(b)(6) topics); *Comair Ltd. v. Boeing Co.*, No. C23-176 RSM, 2024 WL 4696125, at *2 (W.D. Wash. Nov. 6, 2024) ("'[D]iscovery on discovery' is disfavored, and requests for this information are 'closely scrutinized.'") (quoting *Anstead v. Va. Mason Med. Ctr.*, No. C21-0447JCC-JRC, 2022 WL 1641425, at *5 (W.D. Wash. May 24, 2022)).

All Roche witnesses deposed in this litigation, as well as those listed in Roche's Initial Disclosures, were subject to prior litigation holds predating this litigation by several years. Nonetheless, in an effort to resolve this dispute and further avoid wasting resources on this matter, we note that an additional ███████████ to ██████████████████████████.  In providing this information, Roche is not agreeing that Roche's litigation hold is not privileged; we maintain that it is, and will object to further discovery on Roche's litigation hold.

Finally, with regard to Dr. O'Huallachain's documents, as well as those Roche documents identified in your email, we have reviewed both sets and anticipate providing updated privilege logs and any de-designated documents this week.

To the extent you believe a meet and confer is necessary, please provide some times on Friday that will work.

Regards,

Kate

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, December 18, 2024 12:51 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

12

**EXTERNAL SENDER**

Kate,

We have not received a response to my prior email. Please let us know your availability to meet and confer tomorrow or Friday.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, December 10, 2024 4:52 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

Kate,

As the case law we cited in our prior emails demonstrates, the date a legal issue hold was issued is purely factual and privilege does not extend to such information. *See In re Intel Corp. Microprocessor Antitrust Litig.*, No. CIV.A. 05-441-JJF, 2009 WL 2030967, at *2 (D. Del. July 7, 2009) (compelling 30(b)(6) witness to answer a question "regarding when [a party] learned that a certain event occurred" because an the "answer to simple factual question that does not reveal any confidential communications with attorney for the purpose of securing legal advice or services is not protected by the attorney-client privilege"); *see also Shire Dev. Inc. v. Cadila Healthcare Ltd.*, No. CA 10-581-KAJ, 2012 WL 5247315, at *4 (D. Del. June 15, 2012) ("[T]here can be no real dispute that purely factual information is not privileged."); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992) ("The protection of the privilege extends only to communications and not to facts." (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981))). If Roche intends to maintain its invocation of privilege over this information, then please let us know your availability to meet and confer by Friday.

Regarding your intention to down designate and produce certain documents collected from Dr. O'Huallachain and listed in Dr. O'Huallachain's privilege log: when do you intend to complete this production? And when do you anticipate serving an updated privilege log?

Relatedly, does Roche intend to similarly down designate and produce documents from its own collection that were withheld solely on the basis of work product? Our November 20th email indicates that the same issue shown in Dr. O'Huallachain's privilege log is apparent in Roche's privilege log, but your December 6th response does not indicate

13

whether you are looking into the Roche entries identified in my prior email as you are for O'Huallachain's documents or other, similar entries. *See, e.g.,* Roche Privilege Log Vol001 Entry Nos. 27, 291, 850 (

); 352, 367, 368, 369, 394, 500, 807, 813 (

); 372, 373, 965, 968-973, 976, 980-986, 991, 995-997, 980-986, 991, 995-997 (

); 498 (

); 614, 615 (

); 644, 824, 895, 920, 967 (

); 680 (

); 823, 831, 964 (

); 828 (

); 850 (

); 880, 881 (

); 897 (

); 942, 944-958 (

); 1001 (

).

If not, is it Roche's position that it reasonably anticipated litigation as of the date of each of these documents, or any other pre-suit document reflected in Roche's privilege log withheld solely on the basis of work product? *See* Roche Privilege Log Vol001 Entry Nos. 254 (

); 436 (

); 447 (

); 510 (

); 517 (

); 518 (

); 521 (

); 530 (

); 538 (

); 543 (

); 577 (

); 597 (

); 613 (

); 617 (

); 618 (

); 644 (

).

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Friday, December 6, 2024 3:45 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady-

I have been traveling and therefore delayed in responding to this email.  With regard to the litigation hold date, we disagree that the information is not privileged.  Do you have any authority from Delaware to the contrary that we can consider?

With regard to Dr. O'Huallachain's documents, we are reviewing the documents you have identified, and will provide an updated privilege log, as well as production of any documents that we believe can be down designated shortly.

Best regards,

Kate

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, December 4, 2024 11:28 AM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL SENDER**

Kate,

Our prior email has gone unanswered. Please provide dates and times you are available to meet and confer regarding your invocation of privilege and work product, outlined below.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Brady Gleason
**Sent:** Wednesday, November 20, 2024 5:33 PM
**To:** 'Saxton, Kate' <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran

<Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

Kate,

The date that a legal hold was issued is not privileged information. *See LifeScan, Inc. v. Smith*, No. CV 17-5552, 2024 WL 3823488, at *5 (D.N.J. July 11, 2024) (holding that "our courts are clear that litigants are entitled to know certain basic facts surrounding the implementation of the litigation hold. That is, a party is entitled to know when a litigation hold was implemented, who received the litigation hold, what categories of ESI the recipients were instructed to preserve and collect and what specific actions the recipients were instructed to take.").

Given Roche's ███████████████████████████████████████████████████████████
███ , *see, e.g.*, RSS_00016932, the date Roche issued its legal hold in this case is critical in determining whether or not relevant documents were ███████████████ . ███████████████████████████████
████████████████ *ee* 6/12/24 Letter from M. Laupheimer to B. Gleason. ██████████████████████████
█████████████████████████████████████████████████████████████████████████████
████████████████████████████ *See, e.g.*, SCALEBIO0054902; SCALEBIO0064394.

████████████████████████████████████████████████████████████████████████████████
Roche designated Dr. Albert to testify on Topic 49 regarding Roche's document retention policies and document destruction policies. *See* 7/19/2024 Letter from K. Saxton to B. Picard. ██████████████████████████
███████████████████████████████████████████████ *See* Albert Transcript at 174:12-175:13. And, as noted in my prior email, counsel for Roche did not object to this line of questions during the deposition on the basis of privilege.

Relatedly, there are several documents reflected in Dr. O'Huallachain's privilege log that have been withheld solely on the basis of work product. *See, e.g.*, Roche Privilege Log Vol002 Entry Nos. 1030, 1033, 1036, 1039, 1062, 1068 (█████████████████████████████████████████████); 1031, 1034, 1037, 1040, (████████
████████████████████████████████████████████). Similar entries are also present in Roche's own privilege logs. *See, e.g.*, Roche Privilege Log Vol001 Entry Nos. 27, 291, 850 (██████████████████████
███████████████████████); 372, 373 (████████████████████████████
██████████████); 823, 831, 964 (████████████████████████████████████). This is improper as the District of Delaware has found "there is a general consensus among courts that the work product doctrine does not *categorically* apply to patent prosecution work because patent prosecution is not an adversarial, litigation-type proceeding, but a wholly *ex parte* proceeding before the PTO." *Dueppen v. Guardant Health, Inc.*, No. 23-MC-216-GBW, 2023 WL 6621362, at *2 (D. Del. Oct. 11, 2023). Roche cannot withhold these documents under a theory of work product unless they were prepared in anticipation of litigation. And, if they were prepared in anticipation of litigation, Roche should have issued a legal hold prior to the earliest withheld document.

We are available to meet and confer regarding the basis for Roche's aforementioned invocation of privilege and work product on November 22 or 25.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**

**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Thursday, October 24, 2024 12:42 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Counsel,

*First*, we disagree that the date of the legal hold notice is not privileged and note that Parse has not identified a single District of Delaware case to support its position.  The District of Delaware has found that "[d]iscovery regarding efforts undertaken by Plaintiff to preserve documents in anticipation of litigation is barred under the Court's Default Standard for Discovery of ESI and Fed. R. Civ. P. 26(b)(3)(A) and (B)."  *Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corp.*, C.A. No. 21-558-MN, Oral Order (D. Del. June 8, 2022).

*Second*, we disagree that privilege has been waived.  Paragraph 10(A) of the Protective Order (Dkt. 41) in this case clearly states that "the production or disclosure of any information…or other items (including information and Protected Material) that is or asserted by a Party or Non-Party to be protected by the attorney-client privilege, work-product immunity, or some other privilege or immunity ('Privileged Material') shall not constitute, operate, or be a waiver of any such privilege or immunity in this action or in any other federal, state, or administrative proceeding."  Moreover, a witness, like Dr. Albert, who merely discusses the circumstances surrounding the legal hold does not waive privilege.  *See Coleman v. Am. Broad. Companies, Inc.*, 106 F.R.D. 201, 209 (D.D.C. 1985) (Finding that "[t]he mere fact" that agents of the defendant "testified about the actions they took and the facts in [the] case in no way constitute[d] waiver of the attorney-client privilege.").

We are available to meet and confer on Tuesday, October 29 between 10am-12pm.

Please find the privilege log for Dr. O'Huallachain's documents attached.  The production of Dr. O'Huallachain's responsive documents was completed on Tuesday, October 15.

Best regards, Kate

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, October 17, 2024 4:30 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas

17

<THARTZELL@ycst.com>

**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

Roche's newfound claim of privilege is improper for two reasons. *First*, the requested information—i.e., the date when Roche's legal hold was issued for this lawsuit—is not privileged. That is because "basic identifying information" related to litigation holds, such as "the dates that the notices were issued," is not privileged or otherwise immune from discovery. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. 22MD03047YGRPHK, 2024 WL 1808607, at *2 (N.D. Cal. Apr. 25, 2024) (citing *Doe LS 340 v. Uber Tech., Inc.*, 710 F. Supp. 3d 794, 802, 2024 WL 107929, at *3 (N.D. Cal. Jan. 9, 2024) ("granting plaintiffs' request for 'basic information' concerning defendant's litigation holds, including 'the names, job titles, and dates of employment of the recipients of the hold notices, the dates of issue, and what litigation or claim the holds relate to,' and rejecting defendant's assertion that such information is protected by attorney-client privilege and/or work product doctrine"); *see also Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068-PMP, 2011 WL 3495987, at *3 (D. Nev. Aug. 10, 2011) (concluding that "the basic details surrounding the litigation hold," such as "when and to whom the litigation hold letter was given" is not privileged).

*Second*, even if the requested information were privileged—which it is not—Roche would have waived privilege. ████████████████████████████████████████████████████████████████████████████████████ Moreover, we asked you to identify the date Roche's legal hold was issued for this lawsuit on September 3, 2024. Only now, well over a month later, has Roche indicated for the first time that it would object to the disclosure of this information on the basis of privilege.

If Roche intends to maintain its position that this information is privileged, then please let us know your availability to meet and confer.

Separately, we recently received a number of document productions that appear to be documents collected in response to Dr. O'Huallachain's subpoena. These productions include documents that Roche has redacted or withheld, apparently on the basis of privilege. *See, e.g.*, RSS_00111217; RSS_00111218; RSS_00111219. Please provide Roche's bases for its privilege assertions over any documents redacted or withheld for privilege in these productions.

Relatedly, could you please confirm whether you have completed the production of Dr. O'Huallachain's responsive documents or, if not, when you expect to complete this production?

We will follow up regarding the stipulation and the 30(b)(6) testimony soon.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Tuesday, October 15, 2024 4:47 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Apte, Vandana <Vandana.Apte@wilmerhale.com>; Ryan Kaiser

<RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>

Cc: ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>

Subject: RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Brady-

With regard to the date of Roche's litigation hold notice, it is Roche's position that this information is privileged and therefore not a proper subject of discovery.  To the extent Parse has case law to the contrary, please provide that case law for our consideration.

With regard to Topic Nos. 5 and 9, please see attached stipulation.

Finally, with regard to Topic No. 29, Roche identifies the following testimony responsive to that Topic: Bedilion Dep. Tr. 21:23 - 22:2; Albert Dep. Tr. 58:8-58:12, 158:24-159:13, 167:5-168:15.

Best regards,

Kate

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Monday, October 7, 2024 2:38 PM
**To:** Apte, Vandana <Vandana.Apte@wilmerhale.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL SENDER**

---

Counsel,

Two weeks ago, on September 23, 2024, Roche stated that it would respond under separate cover to our request for the date when Roche's legal hold was issued for this lawsuit. In the same email, Roche also promised a draft stipulation regarding 30(b)(6) Topic Nos. 5 and 9 and to identify the testimony responsive to Topic 29. However, to date, we have not received any of these materials.

Please let us know when we can expect to receive these materials.

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Apte, Vandana <Vandana.Apte@wilmerhale.com>
**Sent:** Wednesday, October 2, 2024 11:20 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; wgs-scalebiosciencesv.parse@wolfgreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** Re: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Thank you for confirming.  October 30th at 9AM PT (12PM ET) works for Dr. O'Huallachain.

**Vandana Apte | WilmerHale**
She/her/hers

7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6550 (t)
+1 212 230 8888 (f)
vandana.apte@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, October 2, 2024 11:06 AM
**To:** Apte, Vandana <Vandana.Apte@wilmerhale.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com <farnan@rlf.com>; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com <Stephen.Rabinowitz@WolfGreenfield.com>; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>; Jenni.Hoffman@WolfGreenfield.com <Jenni.Hoffman@WolfGreenfield.com>; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Vandana,

Thank you. We intend to proceed with Dr. O'Huallachain's remote deposition on October 30th **at 9:00 am PT** (12:00 pm ET), unless Dr. O'Huallachain would prefer an earlier start time.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Apte, Vandana <Vandana.Apte@wilmerhale.com>
**Sent:** Tuesday, October 1, 2024 5:44 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** Re: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Dr. O'Huallachain has offered an alternative deposition date of October 30th (remote). We anticipate that Dr. O'Huallachain's document production will be completed well before October 30th, so please let us know by **EOD on October 14th** if Parse intends to proceed with Dr. O'Huallachain's remote deposition on October 30th.

**Vandana Apte | WilmerHale**
She/her/hers
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6550 (t)
+1 212 230 8888 (f)
vandana.apte@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Monday, September 30, 2024 at 11:05 AM
**To:** Apte, Vandana <Vandana.Apte@wilmerhale.com>, Saxton, Kate <Kate.Saxton@wilmerhale.com>, Ryan Kaiser <RKAISER@sternekessler.com>, Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>, Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>, Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>, farnan@rlf.com <farnan@rlf.com>, Metzler, Sara M. <Metzler@rlf.com>, Stephen.Rabinowitz@WolfGreenfield.com <Stephen.Rabinowitz@WolfGreenfield.com>, Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>, Emma L. Frank <Emma.Frank@wolfgreenfield.com>, WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com <WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com>, Jenni.Hoffman@WolfGreenfield.com <Jenni.Hoffman@WolfGreenfield.com>, WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>, kpascale@ycst.com <kpascale@ycst.com>, Vrana, Robert <RVrana@ycst.com>, Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Vandana,

We cannot take Dr. O'Huallachain's deposition until the production of her documents responsive to the subpoena is complete. Given your approaching deadline and inability to confirm when said production will be complete, please provide another date for Dr. O'Huallachain's deposition that is reasonably after the expected completion of the relevant production.

Best regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Apte, Vandana <Vandana.Apte@wilmerhale.com>
**Sent:** Friday, September 27, 2024 12:42 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

The production of Dr. O'Huallachain's documents is already underway with the RSS_Vol008 production of 1,245 documents last Friday.  We anticipate another production of ~1,500 documents by Monday.  We had originally anticipated completion of Dr. O'Huallachain's document production by October 4, but given Parse's additional search term modifications, we anticipate that the final production will take some additional time.

Please let us know by **COB on Tuesday, October 1** if you intend to proceed with Dr. O'Huallachain's deposition on October 11.  Dr. O'Huallachain is a third party, has several competing obligations, and is holding her schedule open for this deposition.

**Vandana Apte | WilmerHale**
She/her/hers
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6550 (t)
+1 212 230 8888 (f)
vandana.apte@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Thursday, September 26, 2024 5:24 PM
**To:** Apte, Vandana <Vandana.Apte@wilmerhale.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser

23

<RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>

**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>

**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Vandana,

We have no objection to Roche's edit, as shown in blue in your email. Please let us know when we can expect your production of Dr. O'Huallachain's documents.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Apte, Vandana <Vandana.Apte@wilmerhale.com>
**Sent:** Thursday, September 26, 2024 4:10 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Roche will agree to your search term counterproposal if the following change (in blue) is made:

From "Maeve O'Huallachain – Roche Search Terms (1/25/24)" list:

1.

24



Again, this modification is consistent with the parties' past practice of eliminating terms that include the company's name. References to "███████*" were again bringing in documents solely because of email address domain names.

Roche intends to proceed with the counterproposal above and notes that any additional modifications would make this review unduly burdensome—especially because Dr. O'Huallachain is a third party. We understand that this resolves Parse's questions regarding search terms for Dr. O'Huallachain's document production.

**Vandana Apte | WilmerHale**
She/her/hers
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6550 (t)
+1 212 230 8888 (f)
vandana.apte@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Tuesday, September 24, 2024 5:08 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

We would like to review the documents that you agreed to produce in response to the subpoena upon Dr. O'Huallachain before settling on a date for her deposition. Once we review the documents you produce, we will do our best to

25

accommodate Dr. O'Huallachain's schedule should a deposition prove necessary, but the determinative factor in all of this is when we will receive Dr. O'Huallachain's documents, which we requested over two months ago.

As to the search terms: we do not object to the removal of ███████████████████ to the extent these terms were essentially standalone search terms. However, where these terms are components of a larger search string appropriately conditioned on hitting other relevant terms, then their omission is unwarranted. For those search term wherein ████████████████ ought to be included as components, our counter-proposals are copied below (our edits are noted in red font). Otherwise, we are fine with your remaining search terms.

From "Maeve O'Huallachain – Roche Search Terms (1/25/24)" list:

1.

10. ██████████████████████████████████████

From "Maeve O'Huallachain – Roche Additional Terms" list:

2.01 ██████████████████████████████████████

2.02 ██████████████████████████████████████

2.03 ██████████████████████████████████████

3.06 ██████████████████████████████████████

3.07 ██████████████████████████████████████

3.08 ██████████████████████████████████████

26



We are also available for a call if you would like to discuss the search terms to keep the process moving quickly. As noted above, we requested these documents over 2 months ago and would appreciate your attention to their production.

Best regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Monday, September 23, 2024 12:32 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Brady-

With regard to your email below, please find our responses.

*First*, we are considering your rationale for the relevance of the date Roche issued its legal hold, and will respond under separate cover.

*Second*, Roche will prepare a draft Stipulation regarding Topic Nos. 5 and 9, and will also identify the deposition testimony  responsive to Topic 29.

*Third*, your understanding is correct.

*Fourth*, with regard to Dr. O'Huallachain's documents, we do not have exact figures for each individual term or component of a term because many of the terms appeared both within the same broader string or across multiple terms.  However, we know that the term "▮▮▮▮*" by itself hit on over 33,000 documents, while the terms "▮▮▮▮" and "▮▮▮▮" each hit on over 26,000 documents standing alone.  With respect to "▮▮*", that term hits on all of the same documents brought in by "▮▮▮▮*" which, as I noted, was hitting on documents due to email domain names.  The inclusion of these terms collectively brought in tens of thousands of additional documents by themselves.

*Finally*, does Parse intend to proceed with Dr. O'Huallachain's remoate deposition on October 11?

Best regards,

Kate

28

**From:** Brady Gleason <bgleason@sternekessler.com>
**Sent:** Wednesday, September 18, 2024 3:58 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Ryan Kaiser <RKAISER@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Kate,

Thank you for your response. My answers to your questions are below.

*First*, the date Roche issued its litigation hold is relevant because the failure to implement a timely litigation hold may result in the destruction of relevant evidence. The date that Roche issued its litigation hold is particularly important, given Roche's general document destruction policies. For this reason, Roche must disclose the date it issued its litigation hold.

*Second*, as to your offer regarding Topic Nos. 5 & 9, please propose language stipulating that Roche did not contribute to the development of any ScaleBio products or the inventions disclosed in the Asserted ScaleBio patents. As to your offer regarding Topic No. 29, please identify the precise deposition testimony that Roche will agree to designate as Rule 30(b)(6) testimony.

*Third*, based on your response, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If our understanding is incorrect or incomplete, please advise.

*Fourth*, we are considering the search terms you proposed for Ms. Huallachain. Could you provide hit counts for each of the terms you propose removing from the list originally negotiated by the parties and applied to Roche's custodians? For example, how many unique documents are hitting solely because:

- the term "▮▮▮▮" was included as a search term or component of a search term;
- the term "▮▮▮" was included as a search term or component of a search term;
- the term "▮▮▮" was included as a search term or component of a search term; and
- the term "▮▮▮" was included as a search term or component of a search term.

Regards,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Saxton, Kate <Kate.Saxton@wilmerhale.com>
**Sent:** Thursday, September 12, 2024 11:52 AM
**To:** Ryan Kaiser <RKAISER@sternekessler.com>; Brady Gleason <bgleason@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel-

With regard to the below questions, please find our responses.

*First*, with regard to the date that Roche issued its litigation hold notice, please explain the relevance of this request as we do not understand why Parse is seeking this information.

*Second*, with regard to Rule 30(b)(6) Topic Nos. 5 and 9, as we have explained, Roche did not contribute to the development of any ScaleBio products, or the inventions disclosed in the Asserted ScaleBio patents, and therefor does not have a witness it can offer on these Topics. To the extent Parse insists on testimony on these Topics, Roche is prepared to stipulate that it did not contribute to the development of any ScaleBio products, or the inventions disclosed in the Asserted ScaleBio patents. With respect to Topic 29, Roche has already tendered witnesses that have provided testimony regarding the appraisals and valuations of the patents and technology that relate to the Asserted Scale Patents and Asserted Parse patents. For instance, ███████████████████████████████████████ ███████████████████. *See* Bedilion Dep. Tr. 21:23 - 22:2; Albert Dep. Tr. 58:8-58:12. ████ ████████████████████████████████████████████████████████████ *See* Albert Dep. Tr. 158:24-159:13. ████████████████████████████████████████████████ ████████████████████████ *See* Albert Dep. Tr. 167:5-168:15. Thus, Roche has provided witnesses to testify regarding Topic 29 and will agree to designate this testimony as Rule 30(b)(6) testimony.

*Third*, with regard to RFP Nos. 11 and 12, we confirm that Roche produced an executed copy of the license, which can be found at RSS_00000001 - RSS_00000033.

*Fourth*, with respect to the production of Ms. O'Huallachain's documents, please find attached the search terms we are applying to the review and production of those materials. These terms are identical to those negotiated by the parties and applied to Roche's custodians with certain exceptions. We have removed the words "████," "████," and "████" as search terms or components of a search term. We have also revised certain search terms that used the term "████" to include only "████" and "████████".

These changes are consistent with the parties' past practice of eliminating terms or components of terms that include the company's name. That is particularly appropriate where, as here, references to "████" or "████" were bringing in documents solely because of email address domain names without any terms hitting on the substance or body of those documents. We are in the process of reviewing any responsive, non-privileged documents and will be making a rolling production over the next few weeks.

Finally, Dr. O'Huallachain is available for deposition on **October 11** remotely.  Please confirm Parse will proceed on this date.

Best regards,

Kate

---

**From:** Ryan Kaiser <RKAISER@sternekessler.com>
**Sent:** Tuesday, September 3, 2024 12:34 PM
**To:** Saxton, Kate <Kate.Saxton@wilmerhale.com>; Brady Gleason <bgleason@sternekessler.com>; Stuart V. C. Duncan Smith <sduncansmith@wolfgreenfield.com>; Gunther, Jr., Robert J. <Robert.Gunther@wilmerhale.com>; Laupheimer, Madeleine C <Madeleine.Laupheimer@wilmerhale.com>; farnan@rlf.com; Metzler, Sara M. <Metzler@rlf.com>; Stephen.Rabinowitz@WolfGreenfield.com; Chelsea A. Loughran <Chelsea.Loughran@WolfGreenfield.com>; Emma L. Frank <Emma.Frank@wolfgreenfield.com>; WGS-ScaleBiosciencesv.Parse@WolfGreenfield.com; Jenni.Hoffman@WolfGreenfield.com; WH RSS-Scale Lit <WHRSS-ScaleLit@wilmerhale.com>
**Cc:** ParseUW <ParseUW@sternekessler.com>; kpascale@ycst.com; Vrana, Robert <RVrana@ycst.com>; Thomas <THARTZELL@ycst.com>
**Subject:** RE: Case No. 22-1597-CJB: Scale Biosciences, Inc. v. Parse Biosciences, Inc. et al - HIGHLY CONFIDENTIAL

**EXTERNAL SENDER**

Counsel,

We write regarding various discovery issues.

First, during his deposition, Dr. Albert was unable to provide the date when Roche's legal hold was issued for this lawsuit. *See* Albert Dep. Tr. 174:24-175:13. Could you please let us know when that happened?

Second, Roche still has not provided a substantive response to our July 15 letter regarding Roche's objections and responses to Parse and UW's 30(b)(6) notice. You indicated in your August 12 email that you would respond to that letter under separate cover, but we have not yet received any response. It has now been nearly a month and a half since we sent the letter. Please provide a date certain by which we can expect a response.

Third, in response to Parse's RFP Nos. 11 and 12 to Roche, Roche agreed to produce documents sufficient to show the terms of any licenses to the Asserted ScaleBio Patents. Please confirm that Roche has produced executed copies of all licenses and amendments thereto to the Asserted ScaleBio Patents.

Fourth, regarding Dr. O'Huallachain's documents, you noted on August 12 that your team was in the process of uploading those documents for review and that you would revert with proposed search terms. Please provide a status update.

Regards,
Ryan

---

**Ryan Kaiser**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** rkaiser@sternekessler.com
**Direct:** 202.772.8537   **Main:** 202.371.2600

31

**EXHIBIT U**

RSS_00000933.xlsx



# EXHIBIT V

RSS_00103972.xlsx



RSS_00103972.xlsx



RSS_00103972.xlsx

RSS_00103972.xlsx



# EXHIBIT W



RSS_00103975.xlsx



- 2

RSS_00103975.xlsx

- 3





RSS_00103975.xlsx



# EXHIBIT X

RSS_00103976.xlsx



RSS_00103976.xlsx

- 2



RSS_00103976.xlsx



**EXHIBIT Y**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC., <br><br> and <br><br> ROCHE SEQUENCING SOLUTIONS, INC., <br><br>     Plaintiffs, <br><br>   v. <br><br> PARSE BIOSCIENCES, INC., <br><br>     Defendant. | C.A. No. 22-1597-CJB |
| PARSE BIOSCIENCES, INC., <br><br> and <br><br> UNIVERSITY OF WASHINGTON, <br><br>     Counterclaim Plaintiffs, <br><br>   v. <br><br> SCALE BIOSCIENCES, INC., <br><br>     Counterclaim Defendant. | |

**ROCHE SEQUENCING SOLUTIONS, INC.'S OBJECTIONS AND RESPONSES TO
COUNTERCLAIM-PLAINTIFFS' NOTICE OF SUPPLEMENTAL DEPOSITION OF
<u>ROCHE SEQUENCING SOLUTIONS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the Local Civil

Rules of the United States District Court for the District of Delaware, Plaintiff Roche Sequencing

Solutions, Inc. ("Roche" or "Plaintiff") hereby objects and responds to Counterclaim-Plaintiffs

Parse Biosciences, Inc. and University of Washington's ("Counterclaim-Plaintiffs") Notice of

Supplemental Deposition of Roche Sequencing Solutions, Inc. Pursuant to Rule 30(b)(6), dated

August 21, 2025 (the "Notice").

Roche reserves the right to revise, correct, add to, supplement, modify, or clarify its

testimony as to any Topic pursuant to Federal Rule of Civil Procedure 26(a), in any manner it

deems appropriate.  These responses are made without prejudice to Plaintiff's right to present at trial additional evidence or individuals as may be discovered or produced.

## GENERAL OBJECTIONS

Roche incorporates each of the following General Objections into its responses to each of the Topics for Examination ("Topics"), whether or not each such General Objection is expressly referred to in response to a specific Topic.

1.      Roche hereby incorporates by reference its General Objections set forth in Roche Sequencing Solution Inc.'s Objections and Responses to Parse Biosciences, Inc.'s Notice of 30(b)(6) Deposition (May 31, 2024) as if fully set forth herein.

2.      Roche objects to the Definition of "Relevant Matters" as overly broad, unclear and ambiguous as to its use of the phrases "include, but are not limited to."

## OBJECTIONS AND RESPONSES TO SPECIFIC TOPICS

## TOPIC NO. 1

The substance of Roche's Verified Statement.

## RESPONSE TO TOPIC NO. 1

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Roche objects to this Topic to the extent that seeks information beyond the topics specifically requested for deposition in Paragraph 3 of Parse's Proposed Order D.I. 358.  The Court's Order required Roche to "designate a witness to provide testimony pursuant to Federal Rule of Civil Procedure 30(b)(6) on Topics 2.a through 2.e."  (D.I. 412; D.I. 358).

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in

Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement on Topics 2.a through 2.e of Parse's Proposed Order D.I. 358, namely: (2.a) Roche's document retention, document destruction, and legal hold policies; (2.b) Roche's actual practices regarding document retention, document destruction, and legal hold(s) in this litigation; (2.c) Ms. Carolina Dallett's involvement in relevant matters from July 1, 2019 until November 23, 2023; (2.d) ███████ ███████████████████████████████████████████████████ when litigation commenced on December 14, 2022; (2.e) The earliest date Roche claims that it reasonably could have anticipated litigation and all non-privileged bases for that claim, including any reason Roche claims it did not anticipate litigation ████████████.

## TOPIC NO. 2

The information, documents, and/or witnesses relied on or reviewed by Roche's corporate representative(s) for purposes of becoming knowledgeable about the topics set forth in Roche's Verified Statement.

## RESPONSE TO TOPIC NO. 2

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Roche objects to this Topic to the extent that it seeks information beyond the topics specifically requested for deposition in Paragraph 3 of Parse's Proposed Order D.I. 358. The Court's Order required Roche to "designate a witness to provide testimony pursuant to Federal Rule of Civil Procedure 30(b)(6) on Topics 2.a through 2.e." (D.I. 412; D.I. 358).

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to the information, documents, and/or witnesses relied on or reviewed by Mr. Rosengren for purposes

3

of becoming knowledgeable about Topics 2.a through 2.e of Parse's Proposed Order D.I. 358, namely:  (2.a) Roche's document retention, document destruction, and legal hold policies; (2.b) Roche's actual practices regarding document retention, document destruction, and legal hold(s) in this litigation; (2.c) Ms. Carolina Dallett's involvement in relevant matters from July 1, 2019 until November 23, 2023; (2.d) ████████████████████████████████████ ████████████████████████████████████████████; (2.e) The earliest date Roche claims that it reasonably could have anticipated litigation and all non-privileged bases for that claim, including any reason Roche claims it did not anticipate litigation ███████.

## TOPIC NO. 3

Roche's document retention, document destruction, and legal hold policies.

## RESPONSE TO TOPIC NO. 3

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to Topic 2.a of Parse's Proposed Order D.I. 358, namely:  (2.a) Roche's document retention, document destruction, and legal hold policies.

## TOPIC NO. 4

Roche's actual practices regarding document retention, document destruction, and legal hold(s) in this litigation.

4

**RESPONSE TO TOPIC NO. 4**

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to Topic 2.b of Parse's Proposed Order D.I. 358, namely:  (2.b) Roche's actual practices regarding document retention, document destruction, and legal hold(s) in this litigation.

**TOPIC NO. 5**

Ms. Carolina Dallett's involvement in Relevant Matters from July 1, 2019 until November 23, 2023.

**RESPONSE TO TOPIC NO. 5**

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to Topic 2.c of Parse's Proposed Order D.I. 358, namely:  (2.c) Ms. Carolina Dallett's involvement in relevant matters from July 1, 2019 until November 23, 2023.

**TOPIC NO. 6**

5

**RESPONSE TO TOPIC NO. 6**

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to Topic 2.d of Parse's Proposed Order D.I. 358, namely:  (2.d) ███████████████████████

████████████████████████████████████████████████████

███

**TOPIC NO. 7**

The earliest date Roche claims that it reasonably could have anticipated litigation and all non-privileged bases for that claim, including any reason(s) Roche claims it did not anticipate litigation ███████████.

**RESPONSE TO TOPIC NO. 7**

Roche objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, Roche designates Garth Rosengren to testify regarding relevant, non-privileged, factual information in Roche's possession as set forth in Mr. Rosengren's June 18, 2025 verified statement relating to Topic 2.e of Parse's Proposed Order D.I. 358, namely:   (2.e) The earliest date Roche claims that it reasonably could have anticipated litigation and all non-privileged bases for that claim, including any reason Roche claims it did not anticipate litigation in ██████████.

OF COUNSEL:

Robert J. Gunther Jr.
**WILMER CUTLER PICKERING HALE AND DORR**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8830
Robert.Gunther@wilmerhale.com

Madeleine C. Laupheimer
**WILMER CUTLER PICKERING HALE AND DORR**
60 State Street
Boston, MA 02109
617-526-6107
Madeleine.Laupheimer@wilmerhale.com

*Counsel for Roche Sequencing Solutions*

/s/ Sara M. Metzler
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
920 North King Street
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
metzler@rlf.com

*Counsel for Roche Sequencing Solutions, Inc.*

Dated: August 25, 2025

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

<table>
<tr><td><b><u>BY ELECTRONIC MAIL</u></b></td><td><b><u>BY ELECTRONIC MAIL</u></b></td></tr>
<tr><td>Karen L. Pascale<br>Robert M. Vrana<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801</td><td>Byron L. Pickard<br>R. Wilson Powers III, Ph.D.<br>Chandrika Vira<br>Christopher M. Gallo, Ph.D.<br>Brady P. Gleason<br>David Y. Wang<br>Louis P. Panzica, Jr.<br>Jamie Dohopolski<br>Ryan N. Kaiser<br>Cristen A. Corry<br>Anna G. Phillips<br>Paige E. Cloud<br>Sterne, Kessler, Goldstein & Fox, P.L.L.C.<br>1101 K Street, NW, 10th Floor<br>Washington, DC 20005</td></tr>
</table>

<i>/s/ Sara M. Metzler</i>
Sara M. Metzler (#6509)
metzler@rlf.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> *Defendant*, <br> PARSE BIOSCIENCES, INC. and UNIVERSITY OF WASHINGTON, <br><br> *Counterclaim-Plaintiffs*, <br><br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> *Counterclaim-Defendant*. | Civil Action No. 1:22-cv-01597-CJB |

**[PROPOSED] ORDER**

At Wilmington, Delaware this _____ day of _____, 2025,

WHEREAS, the Court having reviewed Parse Biosciences, Inc.'s ("Parse") Motion for Trial Sanctions Under Fed. R. Civ. P. 37(e) (Expedited Consideration Requested)[1] (D.I. ___) and the briefing related thereto (the "Motion");

IT IS HEREBY ORDERED that the Motion is **GRANTED**, as follows:

1.    Plaintiffs' Motion *in Limine* No. 3: Motion to Exclude Rosengren Testimony, is DENIED;

---

[1] The parties are in the process of negotiating a proposed expedited briefing schedule for this Motion, which Parse hopes to submit to the Court in short order.

1

2.      Parse may present evidence and argument to the jury at trial regarding Roche

Sequencing Solutions, Inc.'s ("Roche's") failure to preserve electronically stored information

("ESI"), including through the testimony by deposition of Garth Rosengren; and

3.      Parse's request for a jury instruction regarding Roche's failure to preserve ESI, in

substantially the same form as set forth in Appendix A, is GRANTED.


_____
The Honorable Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

**FAILURE TO PRESERVE EVIDENCE**

You should take into account that Roche had the ability to maintain its electronically stored information ("ESI"), but did not do so. You may consider what effect, if any, the unavailability of such information to Parse has had on its ability to support the positions that it has advanced during this trial. If you conclude that it has had such an effect, you may consider it when evaluating the evidence in accordance with the other instructions that I will read to you about how you are to do so.[2]

---

[2] *Intex Recreation Corp. v. Bestway USA Inc.*, C.A. No. 16-3300-JAK-EX, 2025 WL 2020012, at *8 (C.D. Cal. July 14, 2025).