IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCALE BIOSCIENCES, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> Defendant. <br><br> PARSE BIOSCIENCES, INC. and UNIVERSITY OF WASHINGTON, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> Counterclaim-Defendant. | Civil Action No. 22-1597-CJB |

**MEMORANDUM ORDER**

Now before the Court is the remaining unresolved portion of Defendant and Counterclaim-Plaintiff Parse Biosciences, Inc.'s ("Parse" or "Defendant") "Motion for Summary Judgment #1: The Asserted Claims of the '442, '752, and '256 Patents are Invalid for Lack of Written Description and Enablement" ("Motion"). (D.I. 314) In this case, Plaintiff and Counterclaim-Defendant Scale Biosciences, Inc. ("Scale") and Plaintiff Roche Sequencing Solutions, Inc. allege infringement of multiple asserted patent claims against Parse; among those are claim 11 of United States Patent No. 10,626,442 ("the '442 patent") and claims 1, 2, 5, and 6 of United States Patent No. 10,982,256 ("the '256 patent") (collectively, the "challenged

claims"). (D.I. 439 at 1) With the instant Motion, Parse asserts that the challenged claims are invalid for failure to satisfy the written description and enablement requirements of 35 U.S.C. § 112(a) ("Section 112(a)"). (D.I. 325 at 12-19) The remaining unresolved portion of the Motion relates to these challenged claims in the '442 and '256 patents (collectively the "challenged patents").[1]

The Court writes primarily for the parties here, who are well familiar with the facts and legal issues discussed herein.[2] Having reviewed the remaining portion of the Motion now at issue, the briefing related thereto, (D.I. 325 at 4-19; D.I. 366 at 1, 9-16; D.I. 395 at 6-9), and having held over six hours of oral argument on this portion of the Motion, (D.I. 497 (hereafter, "Tr.")), the Court hereby ORDERS that the remaining portion of the Motion is DENIED for the reasons that follow:

> (1) The challenged claims are directed to "the detection, identification, and quantification of individual target molecules in single cells of a complex cell population while retaining cell specific information regarding that target molecule." ('442 patent, col. 1:53-57)[3] Claim 11 of the '442 patent depends on dependent claim 9 and independent claim 1. The entirety of claim 1 and claim 11 are relevant for the resolution of this Motion and are recited below (with particularly important portions of the claims italicized):

---

[1] In a prior Memorandum Opinion dated October 8, 2025 ("October 8 MO"), (D.I. 466), the Court granted Parse's Motion to the extent it sought summary judgment of invalidity with respect to United States Patent No. 11,634,752 for failure to satisfy the written description and enablement requirements. For the reasons discussed in the October 8 MO, herein, even though there are other parties to the case, the Court will refer solely to Scale and Parse (and their respective positions and arguments). (*Id.* at 2-3 nn. 2-3)

[2] The Court incorporates by reference its discussion of the legal standards relating to summary judgment motions and invalidity, which were also set out in the October 8 MO. (D.I. 466 at 5-7)

[3] The challenged patents are found in various places on the docket, including at D.I. 328, Exhibits 1-2. Hereafter, the Court will cite to these patents simply by their number.

**1.** A method of uniquely labeling target molecules within a plurality of cells, the method comprising:

> (a) *coupling a common linker sequence to target molecules* within the plurality of cells;
>
> (b) dividing the plurality of cells into at least two primary reaction volumes, the at least two primary reaction volumes comprising a first primary reaction volume and a second primary reaction volume;
>
> (c) providing primary nucleic acid tags to the at least two primary reaction volumes, wherein the primary nucleic acid tags provided to the first reaction volume are different from the primary nucleic acid tags provided to a second reaction volume;
>
> (d) coupling the common linker sequences within each of the at least two primary reaction volumes with the provided primary nucleic acid tags;
>
> (e) pooling the at least two primary reaction volumes;
>
> (f) splitting the combined primary reaction volumes into at least two secondary reaction volumes, the at least two secondary reaction volumes comprising a first secondary reaction volume and a second secondary reaction volume;
>
> (g) providing secondary nucleic acid tags to each of the at least two secondary reaction volumes, wherein the secondary nucleic acid tags provided to the first secondary reaction volume are different from the secondary nucleic acid tags provided to the second reaction volume; and
>
> (h) coupling the target molecules within each of the at least two secondary reaction

3

> volumes with the provided secondary nucleic acid tags. . . .
>
> **11.** The method of claim **9,** wherein the target molecules are RNA and wherein step (a) *comprises hybridizing the common linker to the RNA*.

('442 patent, cols. 57:62-58:25, 58:62-64 (emphasis added)) With regard to the '256 patent, the relevant claim for our purposes is claim 1 (the remaining asserted claims all depend from claim 1). Claim 1 (with particularly important portions italicized below) recites as follows:

> **1.** A method for identifying whether a plurality of nucleic acid targets is present in a plurality of cells comprising:
>
> > a) *binding to the nucleic acid targets* in the plurality of cells *a plurality of unique binding agent (UBA) nucleic acid tags*;
> >
> > b) extending the UBAs bound to the targets, and
> >
> > c) assembling cell originating barcodes (COB) on the extended UBAs by subsequently adding multiple assayable polymer subunit (APS) oligonucleotides to each of the extended UBAs in the plurality of cells in an ordered manner during successive rounds of split pool synthesis wherein the APS oligonucleotides in each round anneal to the APS from a previous round and are covalently linked to the adjacently annealed APS to create unique codes that represent the identities of individual cells in which the tags are bound, and wherein the method does not include a step of isolating each cell in the plurality of cells.

('256 patent, col. 58:11-28 (emphasis added))

(2) As can be seen, the challenged claims set out above claim a "common linker sequence" or a "plurality of unique binding

4

    agent (UBA) nucleic acid tags." At least for purposes of resolving this portion of the present Motion, the parties did not dispute that these aspects of the challenged claims can include or implicate UBAs. (*See* Tr. at 8, 89, 93-94, 238; D.I. 496 at 252-53) During the claim construction phase of the case, the Court construed "UBA" to mean "a molecule or assembly that is designed to bind with at least one target molecule, at least one target molecule surrogate, or both[.]" (D.I. 118) And for background purposes, it is also important to note that pursuant to the shared patent specifications, a UBA can be, *inter alia*, an aptamer or an antibody. (*See* D.I. 466 at 3-4 (citing '442 patent, cols. 4:18-20, 5:42-44, 7:27-29, 11:42-44, 17:66, 19:18); D.I. 315 at ¶¶ 2-5)

(3) From there, the Court turns to Parse's opening brief. Therein, Parse argued that this portion of its Motion should be granted because: (a) in the asserted claims above, Scale claims include UBAs, and among the subcategories of UBAs are antibodies and aptamers; but (b) in the challenged patents, Scale did not describe or enable the full scope of all antibodies and aptamers that are UBAs that bind to the full scope of claimed targets. (*See, e.g.*, D.I. 325 at 4-5)

(4) In its answering brief, Scale pushed back. It did so in part by asserting that the challenged claims did *not* implicate *all* antibodies or aptamers that bind to a vast group of targets. (D.I. 366 at 9, 14) Instead, Scale argued that because the challenged claims describe "hybridizing" (or, in the case of the '256 patent, "binding") the UBAs to "RNA" or to "nucleic acid targets," that means that of the group of UBAs that are antibodies or aptamers, the UBAs referred to in these claims could only be *nucleic acid aptamers* (and not antibodies or the other category of aptamers—i.e., peptide aptamers). (*Id.* at 10-12, 14; D.I. 368 at ¶¶ 21-22, 25, 27; Tr. at 11, 90-94) And in its reply brief, Parse did not contest that point, at least for purposes of the Court's review of this portion of the Motion. (D.I. 395 at 6-7 & n.2) Therefore, Parse's position here now turned on whether Scale's challenged patents describe and enable the full scope of *nucleic acid aptamer UBAs* having the functionality set out in the challenged claims. (Tr. at 128-29; D.I. 496 at 261) That is the question the Court will take up below in assessing the remaining portion of the Motion.

(5) But before assessing the merits, the Court first needs to discuss and set out the appropriate legal standards that it should use in evaluating this written description and enablement challenge.

5

It will start with written description caselaw. The Court does so because in the relevant briefing, the parties focused much more on written description law than on enablement law. (Tr. at 191-92, 232; D.I. 496 at 254) Generally, in order to satisfy the written description requirement of Section 112(a), "a patent applicant . . . must describe his or her invention so that the public will know what it is and that he or she has truly made the claimed invention." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298 (Fed. Cir. 2014). That is, "the written description requirement with respect to particularly claimed subject matter is met if the specification shows that the stated inventor has in fact invented what is claimed, that he had *possession* of it." *Id*. at 1299 (emphasis added) (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)) In its opening brief, however, Parse identified a line of written description caselaw that applies specifically to functionally-defined genus claims. (D.I. 325 at 12, 14-15; *see also* D.I. 395 at 7) For example, in *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330 (Fed. Cir. 2021), the United States Court of Appeals for the Federal Circuit stated that "[f]or genus claims using functional language, . . . the written description must demonstrate that the applicant has made a generic invention that achieves the claimed result and do so by showing that the applicant has invented species sufficient to support a claim to the functionally-defined genus." 10 F.4th at 1335 (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010) (en banc)) (internal quotation marks and citations omitted). The court in *Juno* went on to say that "a genus can be sufficiently disclosed by either [1] a representative number of species falling within the scope of the genus or [2] structural features common to the members of the genus so that one of skill in the art can visualize or recognize the members of the genus." *Id*. (internal citations and quotation marks omitted).

(6) In its answering brief, Scale contested that this genus/species caselaw was applicable here in one respect—i.e., by asserting that since the challenged claims claim *methods* and not *compounds*, Parse was wrong to argue that Scale had to describe the genus of all nucleic acid aptamers possessing the claimed functionality. (D.I. 366 at 15-16 (citing *Ariad*, 598 F.3d at 1355-58; *Dolbear v. Am. Bell Tel. Co.*, 126 U.S. 1, 537-39 (1888))) But if the Court ultimately did not agree with this position (i.e., if the Court did not agree that just because the asserted claims are method claims, then the *Juno* line of genus/species caselaw does not apply), in its brief, Scale

6

otherwise indicated that the Court would then *apply Juno*'s test. And Scale argued that if the Court did so, it should still prevail on this portion of the Motion. (Tr. at 157-58) In support of this position, Scale cited to genus/species caselaw for the proposition that "functional claim language can meet the written description requirement when the art has established a correlation between structure [i.e., the structural features common to the genus at issue] and function." (*Id.* at 12 (citing *Ariad*, 598 F.3d at 1350)) Scale then went on to explain why the challenged patents sufficiently disclosed "the structural features needed for complementary nucleic acids to hybridize [to each other]." (*Id.* at 12-14; *see also* Tr. at 4-5)

(7) However, during oral argument on this portion of the Motion, Scale pivoted. There, its counsel acknowledged that in its answering brief, Scale had argued (as the Court has noted above) that simply because the challenged claims were to methods (and not to compounds), then the genus/species caselaw discussed above would not apply. (Tr. at 133) But Scale's counsel said that Scale was now discarding that argument, and that this was no longer its position. (*Id.* at 133-34, 144-45)[4] Instead, Scale's counsel said that Scale was now making the following argument: (1) the "novel aspect" of the challenged claims, or what the claims are directed to, is "split-pool barcoding in a cell"—such that the claims are *not* directed to a class of nucleic acid aptamer compounds; (2) it is the "novel aspect" of split-pool barcoding that must be described (and enabled), nothing else; and (3) because split-pool barcoding is not a genus of compounds, *this* is why the genus/species line of caselaw is not applicable. (*Id.* at 129-30, 133-34; 151-57, 181-83) And so for this reason, Scale's counsel argued that instead of relying on written description caselaw that discusses how a patentee would sufficiently describe a functionally-defined genus, the Court should instead focus on caselaw that simply makes use of the broader "possession" standard for assessing written description; that is, "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter [here, the novel aspect of the invention] as of the filing date." *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F. 4th 1289, 1305 (Fed. Cir.

---

[4] Had Scale not done so, the Court likely would have found this argument unpersuasive. *See, e.g., Ariad*, 598 F.3d at 1354-58; *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 926 (Fed. Cir. 2004); (D.I. 395 at 9; Tr. at 80-81).

7

2025) (internal quotation marks and citations omitted); *see also* (Tr. at 129-30, 133-34, 181-83).

(8) Scale could be correct that a court should not employ the genus/species line of written description caselaw when assessing claims like these. But it has waived or forfeited this argument for purposes of the Court's review of this portion of the Motion. As the Court explained during the Motion hearing, that is because Scale's (new) "novel aspect"/split-pool barcoding argument simply was not made (or was not made in any reasonably comprehensible way) in Scale's briefing. (D.I. 366 at 9-16; Tr. at 138-50, 226-33)[5] Permitting a party to

---

[5] Scale's counsel claimed otherwise—asserting that the argument *was* fairly made on pages 9 and 15-16 of Scale's answering brief. (Tr. at 131-50) In the Court's view, that is simply not correct.

On page 9 of that brief, Scale included a paragraph at the beginning of Section I.B—i.e., an introductory paragraph that set out an argument that it would continue to make on pages 10-14 of its brief in the remainder of that sub-section. (D.I. 366 at 9, 10-14) This argument on page 9 was clearly meant to and did preview the very argument that Scale articulated on the next five pages of sub-section I.B. That argument was as follows: (1) claim 11 of the '442 patent only concerns *nucleic acid aptamer* UBAs and not *antibody* UBAs or *peptide aptamer* UBAs; (2) therefore, written description cases where the technology at issue is about "*antibodies* and *peptides*[,]" like *Amgen Inc. v. Sanofi*, 598 U.S. 594 (2023) or *Juno*, are not particularly helpful; and (3) thus, *using the language and teachings of genus/species written description caselaw*, Scale would demonstrate why there was a genuine issue of material fact as to whether it disclosed sufficient information to show that "the art has established a correlation between structure and function" regarding how the *class of nucleic acid aptamers* hybridize to nucleic acid targets as discussed in claim 11. (D.I. 366 at 9-14 (emphasis added) (citing explicitly to genus/species written description caselaw, including *Ariad* and *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342 (Fed. Cir. 2019) to make this very argument); *see also* Tr. at 227-28 (Parse's counsel, making just this same point during the Motion hearing))

And then on pages 15 and 16 of its answering brief, in Section I.D of that brief, Scale made the argument that it later discarded during the hearing on this portion of the Motion—i.e., that simply because the challenged claims were *method* claims, genus/species written description caselaw should not apply. (D.I. 366 at 15-16; Tr. at 144-50) This is clearly indicated by the title of that sub-section of the brief, which states that the argument set out therein is that "MSJ #1 Should Be Denied for the Separate and Independent Reason That the '442 and '256 Patents *Claim Methods, Not Compounds*." (D.I. 366 at 15 (emphasis added); Tr. at 144-45) The Court disagrees with Scale's assertion that somehow the last sentence of the concluding paragraph of this sub-section raised the argument that its counsel was making during the Motion hearing. That particular paragraph has two sentences in it. The first sentence refers back to the arguments made in Section "I.B and I.C" of the brief, the gist of which the Court has discussed above. (D.I. 366 at 16) And the second and last sentence of this paragraph states: "MSJ #1 should be denied

8

make new arguments during a motion hearing—i.e., arguments that were not fairly raised in that party's briefing—is really harmful. It promotes inefficiency in federal district court proceedings, and it is fundamentally unfair to the opposing side (who, like the Court, is left blindsided by this type of new argument). *See Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (holding that arguments raised for the first time at oral argument in the district court were waived because concluding otherwise would "deprive one's opponent of any meaningful opportunity to respond"); *Light v. Davis*, 694 F. Supp. 3d 541, 560-61 (D. Del. 2023) (noting that the requirement that a party not make new arguments for the first time during a hearing "is not simply a formality[,]" as "it is meant to avoid the exact situation . . . where the Court and the opposing party are left blindsided by arguments raised for the first time at a hearing" and "helps ensure that judicial resources are not wasted, and that each side has a full and fair opportunity to develop the record and meaningfully respond to its opponent's arguments"), *aff'd in relevant part, vacated in part, remanded,* 2024 WL 4144066 (3d Cir. Sept. 11, 2024).

(9) As a result, the Court will address the written description inquiry by asking whether there is a genuine dispute of material fact as to whether the second prong of the functional genus test (the prong that, at least in the briefing, all agreed was at issue here) has been met: i.e., whether the specification demonstrates possession of structural features common to the members of the genus, so that one of skill in the art can visualize or recognize the members of the genus. (Tr. at 4, 157-58; D.I. 496 at 253) As Scale noted in its briefing, in this regard, the patentee "can meet the written description requirement when the art has established a correlation between structure and function." *Ariad*, 598 F.3d at 1350; (Tr. at 4; D.I. 496 at 257, 262). Here, the function at issue is the

---

for the separate and independent reason that description and enablement of the *challenged method claims* of the '442 and '256 Patents do not require describing and enabling the entire class of compounds that can be used to carry out these *methods*." (*Id*. (emphasis added)) In that sentence, Scale is simply summarizing the argument made in Section I.D of the brief and that is captured by the title of this sub-section—i.e., that genus/species written description caselaw does not apply, because the challenged claims "[c]laim [m]ethods, [n]ot [c]ompounds[.]" (*Id*. at 15-16; *see also* Tr. at 146-50 (Scale's counsel acknowledging the difficult nature of Scale's argument to the contrary, by stating "[w]y they put [this argument] in that section [of the brief], I don't know"))

9

function of nucleic acid aptamers binding or linking to nucleic acid target molecules. (Tr. at 26-27; D.I. 496 at 264)

(10) The Court next turns to the relevant enablement standard. As noted above, the parties gave short shrift to this topic in their briefing. Parse's opening brief at least identified its view that: (a) generally, the specification must contain sufficient information to allow a person of ordinary skill in the art ("POSITA") "to make and use the full scope of the claimed invention without undue experimentation[,]" (D.I. 325 at 18 (citing *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012))); and that (b) "[w]here, as here, 'a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a [POSITA] to make and use *the entire class*.'" (*Id*. (citing *Amgen Inc. v. Sanofi*, 598 U.S. 594, 610 (2023)); *see also* Tr. at 6; D.I. 496 at 262, 265) As with the written description issue, during oral argument Scale's counsel argued that this is *not* the proper standard for assessing enablement for these claims—asserting that this was so because the challenged claims aren't directed to a genus, but instead to a novel method for split-pool barcoding. (Tr. at 126, 129, 174, 198) And again, the problem with Scale's argument in this regard is that it did not clearly set out this position *in its briefing*.[6] And so Scale has also waived or forfeited, for purposes of the Court's resolution of this portion of the Motion, its new, contrary position about what strain of enablement law applies.

(11) All that being said, both sides agreed with the following: (a) the evidence underlying enablement and written description is largely the same here, (*see, e.g.*, D.I. 366 at 12-13, 15 (treating the evidence for written description and enablement as the same); D.I. 395 at 8 (same); Tr. at 192, 200); and (b) the briefing on this portion of the Motion treated

---

[6] In its answering brief, as with the written description inquiry, Scale addressed enablement by attempting to demonstrate that there was a dispute of fact as to whether the challenged patents enabled the "specific *class* of nucleic acid aptamers that bind to nucleic acid targets." (D.I. 366 at 13 (certain emphasis added, certain emphasis omitted)) Scale never argued that it need not do so because the claims are directed to a novel method of split-pool barcoding. Indeed, during oral argument on the Motion, Scale focused only on one case that is both specific to the enablement inquiry and was cited in the relevant portion of its brief—a citation that was in no way sufficient to raise such an argument. (D.I. 366 at 16 (citing *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1309 (Fed. Cir. 2012)); D.I. 491-3 at 71; Tr. at 197-99)

the enablement-related outcome as rising and falling with the outcome on the written description inquiry, (*see, e.g.*, D.I. 366 at 13; Tr. at 191-92, 232-33). As such, the Court will also treat these inquiries as rising and falling together. *See Osseo Imaging, LLC v. Planmeca USA Inc.*, CA. No. 17-1386-LPS, 2020 WL 6318724, at *6 (D. Del. Oct. 28, 2020), *aff'd*, 116 F.4th 1335 (Fed. Cir. 2024).

(12) Having now addressed the relevant legal standards it will apply, the Court turns to the merits. At the outset, a few relevant matters are undisputed and worth noting. First, it is not disputed that the challenged claims encompass nucleic acid aptamers linking to nucleic acid target molecules via *hybridization*—i.e., binding that is sequence-specific. (Tr. at 22-23, 56-57, 65-66, 76, 81-82; D.I. 368 at ¶¶ 18, 20, 37) Second, it is also undisputed that the common specification of the challenged patents sufficiently correlates the structure of nucleic acid aptamers and nucleic acid targets to the claimed function of *hybridizing* such aptamers to such targets (via the use of Watson-Crick base pairing rules)—such that the patents' disclosure sufficiently describes and enables *that* type of binding. ('442 patent, cols. 13:59-62, 15:3-21; D.I. 368 at ¶¶ 18, 38, 48, 57; Tr. at 40, 42-43, 53, 56, 110, 172, 185-86; D.I. 496 at 267-69) Third (and relatedly), Parse does not dispute that if the only thing that the challenged claims required disclosure of was nucleic acid aptamers binding to nucleic acid targets via hybridization, then Scale would have demonstrated that at least a genuine dispute of material fact exists regarding whether the challenged claims are sufficiently described and enabled. (Tr. at 40, 42-43, 110)

(13) However, Parse claims that the specification's disclosure of nucleic acid aptamers that bind via hybridization is *not* sufficient to describe and enable the full scope of the challenged claims. That is because, according to Parse, at times such nucleic acid aptamers can bind not just via *hybridization* but also by, *inter alia*, *conformational binding*—i.e., binding that is shape-dependent. (Tr. at 11, 15-19, 23, 42-43, 71; D.I. 496 at 259-60) And Parse argues that the specification does not sufficiently disclose the structural components of nucleic acid aptamers that correlate to those aptamers' ability to bind in this shape-dependent manner, nor does it enable how to make that type of conformational binding of nucleic acid aptamers work without undue experimentation. (D.I. 395 at 7; Tr. at 71; D.I. 496 at 269) As the Court now understands it, Parse's argument in this regard

11

goes as follows: (a) While claim 11 of the '442 patent discusses "hybridizing the common linker to the RNA" (a concept that is sufficiently disclosed and enabled in the patents via the specification's discussion of Watson-Crick base pairing), claim 11 *also* states that the method at issue "comprises" this concept.; (b) The claim's use of "comprises" would allow for one practicing the claimed method to also make use of the process of conformational binding, which is not sufficiently disclosed or enabled by the patents.; (c) Claim 1 of the '256 patent claims "binding" nucleic acid tags to nucleic acid targets, and the concept of "binding" is sufficiently broad to encompass not only binding via hybridization (disclosed and enabled) but also additionally conformational binding (neither disclosed nor enabled).; and (d) Thus, since the full scope of the asserted claims must be disclosed and enabled, and since the claims fail that test here, summary judgment should be granted to Parse on this portion of the Motion. (Tr. at 40-47, 71)

(14) As an initial matter, Parse waived or forfeited this argument by not clearly making it in its briefing. (D.I. 325 at 18-19; D.I. 395 at 6-9) As can be seen above, its position here hinges in part on an argument about what the challenged claims of the two patents at issue cover and what they do not—and *why certain words found in those claims* help support Parse's view that the claims cover or include conformational binding. (Tr. at 234-40; D.I. 496 at 259-60) As even Parse's counsel acknowledged during oral argument on the Motion, this type of argument about the import of the words in the relevant challenged claims (and the evidence supporting it) was never clearly raised in Parse's briefing. (Tr. at 11-12 (Parse's counsel acknowledging that "I will candidly tell Your Honor we didn't point out this slight distinction and the important distinction . . . in the claim language of the '256 and the '442 [patents in Parse's briefing]"); *see also id*. at 111-13, 121-22, 236) The Court certainly was unaware of it after reading the briefing. In turn, this meant that the Court could not sufficiently prepare to address questions about the issue during the lengthy oral argument held on this portion of the Motion. (*Id*. at 12, 45-47; D.I. 496 at 250-51) So for the same reasons set out above in the Court's earlier discussion regarding waiver and forfeiture, Parse's failure to sufficiently front this argument in its briefing is fatal to its overall position.

>   (15) However, even if Parse was permitted to now make this type of written description and enablement argument, the evidentiary record would still be insufficient to grant summary judgment in its favor. For example, in support of its argument that enabling and describing the full scope of the challenged claims means the specification must sufficiently disclose and enable conformational binding of nucleic acid aptamers to nucleic acid targets, Parse pointed prominently to a declaration submitted by its expert, Dr. Lior Pachter (the "Pachter reply declaration")—and particularly to paragraphs 67-72 of that declaration. (D.I. 395 at 7 (citing D.I. 399 at ¶¶ 67-72); *see also* D.I. 399 at ¶¶ 42-66; Tr. at 31, 33) The problem is that Parse didn't submit this evidence alongside its opening brief. Instead, this declaration was first submitted along with Parse's reply brief. As a result, Scale and its expert had no ability to respond to it when Scale submitted its answering brief. It would be fundamentally unfair for Parse to prevail on this portion of the Motion by relying on evidence that Scale did not have a fair opportunity to address in the briefing process. *Cf. FinancialApps, LLC v. Envestnet, Inc.*, Civil Action No. 19-1337-GBW-CJB, 2023 WL 4975373, at *2 n.2 (D. Del. July 31, 2023), *report and recommendation adopted*, 2024 WL 4297664 (D. Del. Sept. 26, 2024); *INVISTA N. Am. S.ă.r.l. v. M & G USA Corp.*, 951 F. Supp. 2d 626, 651 (D. Del. 2013); *see also e.g.*, *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006); *160 Lee St. Condo. Homeowners' Ass'n v. Mid-Century Ins. Co.*, CASE NO. C17-1170-MJP, 2018 WL 1994059, at *6 (W.D. Wash. Apr. 27, 2018); (Tr. at 34-35, 98-110, 215).[7]

---

[7] This all likely occurred because, in its opening brief, Parse was making a broad argument that, as to the '256 and '442 patents, Scale was required to enable the full scope of *all antibodies and aptamers* (including both peptide aptamers and nucleic acid aptamers) that possess the claimed functionality. (D.I. 325 at 18-19; Tr. at 99, 102) Then (as discussed above) in Scale's answering brief, Scale made the case that the challenged claims only implicated the functionality of *nucleic acid aptamers* binding to *nucleic acid* target molecules. (D.I. 366 at 9-15; Tr. at 102) Thus, only as of its reply brief did Parse first muster evidence particular to such nucleic acid aptamers—i.e., evidence like that found in paragraphs 67-72 of the Pachter reply declaration. (Tr. at 223 (Parse's counsel acknowledging that, on this point, "candidly, Your Honor, a lot of what you see in the reply brief is not in the opening brief"); *id*. at 102, 209-13, 219-22; D.I. 496 at 247-48) It may well be that (as Scale contends), (Tr. at 96-110, 123), Parse should be blamed for having failed to put forward this type of evidence along with its opening brief—since Parse should have recognized earlier that the focus of the challenged claims is on *nucleic acid aptamers alone*. That said, it is also probably true that (as Parse argues), Scale could have filed a motion to strike the Pachter reply declaration if it felt like it was untimely— and yet Scale did not do so. (Tr. at 211-13; *see INVISTA*, 951 F. Supp. 2d at 651; *Abbott Lab'ys*

13

Thus, the Court will not consider the Pachter reply declaration herein.

(16) Apart from this testimony by Dr. Pachter, Parse otherwise failed to develop a sufficient factual record to support grant of summary judgment. To prevail, Parse would have to point to other record evidence that pretty conclusively demonstrates that: (a) nucleic acid aptamers of the type described in the challenged claims can bind to nucleic acid targets via both hybridization *and* conformational binding; and (b) the challenged patents don't sufficiently disclose or enable how to accomplish this via conformational binding. (Tr. at 65, 75, 213-17) In trying to make a showing of undisputed fact as to that first step (i.e., the idea that the record makes clear that the claimed binding can incorporate conformational binding), Parse cites to a few portions of the specification that state, *inter alia*, that "UBAs . . . bind to or interact with at least one target molecule . . . typically in a sequence-specific, a conf[o]rmation-specific manner, or both" and that "[a]ptamers bind target molecules in a highly specific, conformation-dependent manner[.]" ('442 patent, cols. 17:43-48, 19:21-22; Tr. at 20-21, 216-17, 240-42; *see also* D.I. 368 at ¶ 46) But though these portions of the specification make reference to *UBAs* or *aptamers* binding (at least at times) in a conformation-specific manner, there is nothing in these portions of the challenged patents to conclusively indicate that this description applies to how *nucleic acid aptamers* bind to *nucleic acid targets*—i.e., the particular type of binding scenario required by the challenged claims. (Tr. at 21-22, 95-96, 240-42) It might be that these references simply relate to binding scenarios involving *non-nucleic acid aptamers* (e.g., peptide aptamers) or *non-nucleic acid targets*. (*Id*.) And in his expert declaration, Scale's expert Dr. Sims does not directly state otherwise—i.e., that the patent needs to describe or enable conformational binding between nucleic acid aptamers and nucleic acid targets. Instead, his declaration only suggests that the patent's description of how those entities bind via hybridization in a sequence-specific manner

---

*v. Lupin Ltd.*, Civil Action No. 09–152–LPS, 2011 WL 1897322, at *6 (D. Del. May 19, 2011). But in any event, the bottom line is that under these circumstances, the Court is simply not comfortable granting summary judgment in Parse's favor by relying on evidence that was provided for the first time with Parse's reply brief. This evidence seemingly *could* have been provided earlier in the briefing process. And with Scale not having had a fair opportunity to respond to it, any other course would be unjust. (Tr. at 31-32, 74-75)

14

is sufficient to describe and enable the challenged claims. (D.I. 368 at ¶¶ 18, 38, 48, 57-59, 62; Tr. at 62-65)  Because nothing in the record definitively tells the Court otherwise, there is at least a dispute of fact as to whether the challenged patents' shared specification sufficiently discloses and enables what is claimed in the challenged claims.  (Tr. at 157-58, 164-66)

For all of the reasons set out above, the remaining portion of the Motion is DENIED.

Dated:  December 10, 2025

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE