# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SCALE BIOSCIENCES, INC. and ROCHE
SEQUENCING SOLUTIONS, INC.,

*Plaintiffs*,

v.

PARSE BIOSCIENCES, INC.,

*Defendant*,

PARSE BIOSCIENCES, INC. and
UNIVERSITY OF WASHINGTON,

*Counterclaim-Plaintiffs*,

v.

SCALE BIOSCIENCES, INC.,

*Counterclaim-Defendant*.

REDACTED - PUBLIC VERSION
(Filed February 5, 2026)

Civil Action No. 1:22-cv-01597-CJB



## PARSE BIOSCIENCES INC.'S RESPONSIVE LETTER BRIEF
## TO THE HONORABLE CHRISTOPHER J. BURKE
## <u>REGARDING SCALE BIOSCIENCES INC.'S DISCOVERY DISPUTE</u>

*Of Counsel*:

Byron L. Pickard
R. Wilson Powers III, Ph.D.
Chandrika Vira
Anna G. Phillips
Christopher M. Gallo, Ph.D.
Brady P. Gleason
Louis P. Panzica, Jr.
David Y. Wang
Paige E. Cloud
Ryan N. Kaiser
Cristen A. Corry
**STERNE, KESSLER, GOLDSTEIN**
  **& FOX, P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

**YOUNG CONAWAY STARGATT & TAYLOR,
LLP**
Karen L. Pascale (No. 2903)
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant/Counterclaim-
Plaintiff Parse Biosciences, Inc.*

Dated: January 29, 2026

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|:---|
| A. | A.1. – Excerpts of the Agreement and Plan of Merger, dated October 19, 2025<br>A.2. – Schedule 1.1(b) |
| B. | Email Exchange between Counsel for the Parties, dated November 25, 2025 through January 19, 2026 |
| C. | Declaration of DeForest McDuff, Ph.D. |
| D. | Oral Order, *Speyside Med., LLC v. Medtronic CoreValve LLC*, No. 20-361-LPS-CJB (D. Del. March 2, 2021), D.I. 88 |
| E. | Native Printout of PARSE0421751 |
| F. | Mem. Op. & Order, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-0453 (D. Del. Mar. 22, 2023), D.I. 767 |
| G. | Declaration of Alex Rosenberg, Ph.D. in Support of Parse Biosciences, Inc.'s Responsive Letter Brief to the Honorable Chirstopher J. Burke Regarding ScaleBio Discovery Dispute |

Dear Judge Burke:

Scale's extraordinary request to reopen fact discovery more than 16 months after the deadline should be denied as it has failed to show good cause for such a request. Scale cannot articulate sufficient relevance for the broad discovery it seeks, much less justify relitigating expert discovery 8 months after its close, and placing an undue and unnecessary burden on Parse. Parse merged with QIAGEN back in October 2025, and has already produced the Merger Agreement, including all attachments, with minor redactions, *see infra*.

**Redactions to Merger Agreement:** Parse has redacted only  *See* Ex. A.1; Ex. A.2. Knowledge of the ▮▮▮▮▮▮▮▮ would irreparably harm and unfairly prejudice Parse by skewing any settlement negotiations with Scale or 10x (a serial litigant against Parse) and their outside counsel. *Diagnostics Sys. Corp. v. Symantec Corp.*, 2008 WL 9396386, at *9–11, 14 (C.D. Cal. Apr. 4, 2008) (permitting redactions where its disclosure "would disadvantage [the opposing party] in future potential negotiations with … [movant]"). Scale's attempt to distinguish *Diagnostics* fails: while the case involved settlements, the court's reasoning remains instructive; the same disadvantage in settlement efforts would apply to Parse. Moreover, Scale cannot show the redacted information is relevant—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and neither party's damages expert relied on ▮▮▮▮▮▮▮▮▮▮, which Scale agrees is privileged. *See* Ex. B at 15. Scale's reliance on *Acceleration Bay* and *Cirba* are inapposite as both concern documents between a *patentee* and its litigation funder related to the valuation of *patentees'* patents or standing. *AbbVie* similarly relates to *patentee's* settlement agreements involving the asserted patents. Here, Parse is not the patentee.

**Reopening discovery:** Scale argues that the discovery it seeks is "highly relevant" to willfulness, damages, infringement, and injunctive relief, but does not explain *how* the discovery is relevant to those issues. *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *2 (D. Del. May 8, 2013) (party seeking discovery has the burden to show relevance). Scale instead improperly argues relevance through a declaration from its economist, Mr. Mooney; which should be disregarded. *Intel Corp. v. Future Link Sys. LLC*, 2016 WL 6089746, at *15 n.9 (D. Del. Sept. 28, 2016) (finding argument "improperly briefed, because its bases are … in an accompanying declaration … a tactic that appears intended to circumvent the page limits"); *Nevro Corp. v. Stimwave Techs., Inc.*, 2019 WL 3322368, at *12 n. 9 (D. Del. July 24, 2019) (same). Anyway, Mr. Mooney also does not articulate sufficient relevance, *infra*.

**(1) Valuations:** Scale fails to show the relevance or even the likelihood of the existence of valuation documents. Mr. Mooney admits that QIAGEN paid a ▮▮▮▮▮▮▮▮ for Parse, without a specific breakdown of that price for any component. Ex. 1, ¶ 3. Mere speculation that the parties communicated values of individual components but did not put those valuations into the Merger Agreement (Ex. C, ¶ 3), cannot justify the extraordinary step of reopening discovery so long past the deadline. *See* Oral Order, *Speyside Med., LLC v. Medtronic CoreValve LLC*, No. 20-361-LPS-CJB (D. Del. March 2, 2021), D.I. 88 (this Court denying discovery based on speculation) (Ex. D); *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *2 (D. Del. June 12, 2020) (same). In any case, neither damages expert considered the valuation of any litigation, of Parse, or the "price allocation" of any product (contrary to Mooney's assertions,

Ex. 1, ¶ 7) in determining a reasonable royalty for Scale's patents. *See* Ex. C, ¶ 3. Moreover, it is improbable that communications during the *Parse/QIAGEN* merger would evaluate *Scale's* asserted patents, the only patents left in the case. Scale argues (improperly, through the Mooney Declaration) that these valuations and acquisition price would be relevant under the book of wisdom. Yet Mooney does not articulate how putative information exchanged before the merger, which occurred four years after the hypothetical negotiation date relied on by both parties, is relevant and not cumulative of the actual Merger Agreement. *See id.* at ¶¶ 4, 6. And the fact that Mr. Mooney did not update his analysis based on the Scale/10x merger, which presumably might have had information relevant to Scale's asserted patents, sorely undercuts Scale's argument. *See id.* at ¶ 5. In fact, Scale has asserted that discovery related to its merger with 10x is somehow not relevant to the same issues. Ex. B at 10–12. **(2) Analyses and projections for the Parse products**: Parse has already produced these documents, and further production would be cumulative. *See*, *e.g.*, Ex. E. Nor are these documents relevant, since both damages experts determined a reasonable royalty as a percentage of ongoing sales, not projections. Ex. C, ¶ 3. **(3) Discovery regarding this litigation and Scale**: Scale does not explain how its request is relevant to "the reasonableness of ScaleBio's damages claim and Parse's continued willful infringement."

Scale's cited cases are inapposite. Both *Integra* and *Quintel* involved acquisitions by the patentee, not the accused infringer. Further, *Integra* (at 871) involved *co-plaintiff's* acquisition of the original *patentee*, while *Quintel* (at 16–17) related to *patentee's* documents to support patentee's lost patent ownership theory of damages, a theory not pursued here. And *GolfSwitch* (at *1) is distinguishable because the court noted specifically that the defendants did not contend that the discovery would be unduly burdensome or costly as is the case here. In contrast, when presented with analogous facts, courts have denied discovery. *See* Order at 17, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-0453 (D. Del. Mar. 22, 2023), D.I. 767 (patentee has not articulated a "persuasive basis" to show acquisition-based information is relevant.) (Ex. F).

**Proportionality**: Scale has not and cannot meet its burden to show that the onerous discovery sought—over a year after fact discovery has closed—is proportional to the needs of the case.[1] *See* Ex. F at 16 (finding the burden or expense of discovery not proportional to needs of case "[g]iven that discovery has long since closed in this case"). And Parse's Co-founder, Dr. Alex Rosenberg, explains the undue burden and cost associated with reopening discovery into the merger. Ex. G, ¶¶ 5–7. Also, Parse and QIAGEN entered into a common interest agreement to protect applicable privileges, which would require meticulous document review to prevent inadvertent waiver and only amplifies the burden on Parse. *Id.* at ¶ 4; *see INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, 2013 WL 12171721, at *7–8 (D. Del. June 25, 2013) (common legal interest existed when both parties affected in the same way by litigation). The burden of collecting and reviewing all acquisition-related documents and communications and preparing a corporate witness for a deposition is not proportional to the needs of this case. *CR Bard* and *10x* are inapposite. *CR Bard* also concerns a *patentee's* documents. In *10x*, the dispute was about privilege, where the court did not consider either relevance or proportionality of the discovery.

---

[1] Scale's proposed order highlights its unreasonableness; it proposes Parse complete production within 10 days of a court order and allows *only* for its own expert to supplement his report.

Respectfully submitted,

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)

Enclosure: Exhibits A–G

cc:  All Counsel of Record via CM/ECF and E-mail

**EXHIBIT A**

**EXHIBIT A.1**

**EXHIBIT A.2**

**EXHIBIT B**

| | |
|---|---|
| **From:** | Brady Gleason |
| **Sent:** | Monday, January 19, 2026 12:21 PM |
| **To:** | John Pierce; David Wang; Azra Hadzimehmedovic; Wilson, Samantha; ParseUW |
| **Cc:** | wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas; Kelly Farnan; Gaza, Anne Shea; Sara Metzler; Frederick Cottrell; Scale_Parse_Service; whrss-scalelit@wilmerhale.com; Vrana, Robert; Pascale, Karen |
| **Subject:** | RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse |

John,

Parse will produce the attachments to the Qiagen/Parse agreement tomorrow.

Regards,
Brady

**Brady Gleason**
Director
bgleason@sternekessler.com

| | 202-772-8638 direct |
|---|---|
| | 202-371-2600 main |

1101 K Street NW, 10th Floor, Washington, DC 20005

---

**From:** John Pierce <john.pierce@tensegritylawgroup.com>
**Sent:** Friday, January 16, 2026 6:16 PM
**To:** David Wang <DWang@sternekessler.com>; Brady Gleason <bgleason@sternekessler.com>; Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Wilson, Samantha <SWilson@ycst.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas <THARTZELL@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Gaza, Anne Shea <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; Vrana, Robert <RVrana@ycst.com>; Pascale, Karen <kpascale@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

David—we understand that Parse is agreeing to produce all appendices, exhibits, and schedules to the Qiagen acquisition agreement. Can Parse agree to produce those attachments on Tuesday, so that we can have them in advance of our motion deadline? We agree to produce Exhibit E on the same schedule. Thank you.

Regards,
John
--
**John Pierce**



**Associate Attorney**
**TENSEGRITY LAW GROUP LLP**
1676 International Drive, Suite 910
McLean, VA 22102
571-545-7884 (office)
650-802-6001 (fax)

---

**From:** David Wang <DWang@sternekessler.com>
**Date:** Friday, January 16, 2026 at 4:54 PM
**To:** John Pierce <john.pierce@tensegritylawgroup.com>, Brady Gleason <bgleason@sternekessler.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, Wilson, Samantha <SWilson@ycst.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Hartzell, Thomas <THARTZELL@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Gaza, Anne Shea <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Frederick Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, whrss-scalelit@wilmerhale.com <whrss-scalelit@wilmerhale.com>, Vrana, Robert <RVrana@ycst.com>, Pascale, Karen <kpascale@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

John,

Parse disagrees with Scale's misplaced characterization of any type of self-imposed deadline. *See, e.g.*, Jan. 13 Email. Scale's attempt to impose yet another arbitrary deadline is not productive. But to avoid burdening the Court with this issue, and without conceding relevance, Parse is willing to produce the attachments to the Parse/Qiagen acquisition agreement.

Please let us know the status of Scale's production of Exhibit E to the Scale/10x acquisition agreement.

Thank you,
David

**David Wang**
Associate
dwang@sternekessler.com

202-772-8814 direct
202-371-2600 main

1101 K Street NW, 10th Floor, Washington, DC 20005

---

**From:** John Pierce <john.pierce@tensegritylawgroup.com>
**Sent:** Friday, January 16, 2026 3:55 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Wilson, Samantha <SWilson@ycst.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas <THARTZELL@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Gaza, Anne Shea <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; Vrana, Robert <RVrana@ycst.com>; Pascale, Karen <kpascale@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady—could we have the courtesy of Parse's response, which was promised to us multiple times and even the self-imposed deadlines for the response have passed?

Regards,
John
--
**John Pierce**



**Associate Attorney**
**TENSEGRITY LAW GROUP LLP**
1676 International Drive, Suite 910
McLean, VA 22102
571-545-7884 (office)
650-802-6001 (fax)

---

**From:** John Pierce <john.pierce@tensegritylawgroup.com>
**Date:** Thursday, January 15, 2026 at 6:01 PM
**To:** Brady Gleason <bgleason@sternekessler.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, Wilson, Samantha <SWilson@ycst.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Hartzell, Thomas <THARTZELL@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Gaza, Anne Shea <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Frederick Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, whrss-scalelit@wilmerhale.com <whrss-scalelit@wilmerhale.com>, Vrana, Robert <RVrana@ycst.com>, Pascale, Karen <kpascale@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Brady,

Parse has most recently committed to confirm whether it is producing appendices, exhibits, and schedules to the Qiagen acquisition agreement by the end of the day today. *See* B. Gleason email immediately below. We have not yet received Parse's position. Please provide Parse's position by tomorrow morning so that we can brief the disputed issues.

Thank you.

Regards,
John
--
**John Pierce**



**Associate Attorney**
**TENSEGRITY LAW GROUP LLP**
1676 International Drive, Suite 910
McLean, VA 22102
571-545-7884 (office)
650-802-6001 (fax)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Tuesday, January 13, 2026 at 7:53 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, Wilson, Samantha <SWilson@ycst.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Hartzell, Thomas <THARTZELL@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Gaza, Anne Shea <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Frederick Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, whrss-scalelit@wilmerhale.com <whrss-scalelit@wilmerhale.com>, Vrana, Robert <RVrana@ycst.com>, Pascale, Karen <kpascale@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

Your email mischaracterizes our request for clarification, asked moments after Scale materially changed its position on a matter of importance to this dispute. Judge Burke's discovery procedures demand that the parties crystallize any disputes before raising them with the court, and our request that Scale clarify its positions does not warrant Scale's accusations against Parse.

As stated in my email from earlier today, Parse continues to consider Scale's request for the full acquisition agreement. Nonetheless, Scale may proceed with filing the joint letter.

Regards,
Brady

---

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, January 13, 2026 7:11 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; Wilson, Samantha <SWilson@ycst.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas <THARTZELL@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Gaza, Anne Shea <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-

scalelit@wilmerhale.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady, our understanding is that Parse is refusing to produce acquisition-related documents regardless of our position. We are therefore proceeding with our request to the Court to schedule a conference and set a briefing schedule, and we ask that Parse stop delaying this filing.

It is patently unfair for Parse to demand immediate production from ScaleBio while refusing to produce far more relevant information itself. Parse argues that anything beyond the acquisition agreements is irrelevant (and even refuses to produce the complete acquisition agreement). Parse also only requested discovery from ScaleBio long after ScaleBio requested Parse's acquisition materials. Therefore, once the Court orders Parse to produce the discovery ScaleBio has requested, ScaleBio will produce its reciprocal discovery. This is a significant compromise intended to preserve judicial and party resources—particularly where Parse's patents have been found not infringed and a reasonable royalty analysis on them is no longer in the case.  There is thus no live discovery dispute regarding ScaleBio's production.

Please confirm that we can proceed with the joint letter.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Tuesday, January 13, 2026 at 6:28 PM
**To:** "Wilson, Samantha" <SWilson@ycst.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, "Hartzell, Thomas" <THARTZELL@ycst.com>, Kelly Farnan <Farnan@RLF.com>, "Gaza, Anne Shea" <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "Vrana, Robert" <RVrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

Please clarify what is meant by "Scale, without conceding relevance, is willing to produce reciprocal acquisition discovery." This is a substantial change in position, so it would be helpful to understand whether it means that Scale is willing to produce reciprocal acquisition discovery immediately. Or does it mean that Scale will only produce reciprocal acquisition discovery in the event the Court orders Parse to produce documents in response to a motion to compel by Scale?


Regards,
Brady




**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Wilson, Samantha <SWilson@ycst.com>
**Sent:** Tuesday, January 13, 2026 5:28 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas <THARTZELL@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Gaza, Anne Shea <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; Vrana, Robert <RVrana@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Azra – we are reviewing your email and revised letter and will response as soon as we can. We are not signed off on the revised joint letter.

**Samantha G. Wilson, Partner**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, January 13, 2026 5:18 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Hartzell, Thomas <THARTZELL@ycst.com>; Wilson, Samantha <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Gaza, Anne Shea <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; Vrana, Robert <RVrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Brady, we will file the attached, which has been slightly revised.  Our revisions confirm that ScaleBio, without conceding relevance, is willing to produce reciprocal acquisition discovery.

The scope of the dispute remains Parse's refusal to: (a) remove redactions from the acquisition agreement; (b) produce other requested acquisition-related documents; and (c) produce the entire agreement. If Parse produces the complete agreement, we will not brief that issue, but the disputes are ripe now for the Court's intervention.

We confirm, for the third time, that ScaleBio's redactions to the acquisition agreement relate to legal fees.

Parse's accusations are baseless. The record demonstrates that despite being afforded the courtesy of an additional week after the meet and confer, Parse has refused to compromise on any issue.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Tuesday, January 13, 2026 at 12:44 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

Further to my email below, Scale continues to avoid Parse's questions and unnecessarily demand immediate responses from Parse on its cherry-picked issues, as shown by Scale's recent email threatening to unilaterally file papers styled as a

*joint letter* if Scale did not receive its desired response within the time-frame it unilaterally set. That is not productive, does not follow Judge Burke's discovery procedures, and risks burdening the Court with unnecessary disputes.

Thank you for agreeing to produce Exhibit E to the 10x acquisition agreement. Parse is considering Scale's request for the attachments to the Qiagen agreement and hopes to have a response in the next day or two. But Parse will not produce an unredacted version of the Parse/Qiagen agreement for the reasons previously stated. Separately, Parse is still waiting on Scale to confirm the nature of its redactions to the 10x acquisition agreement. Although Parse understands that Scale has redacted attorney's fees that were disclosed in the 10x acquisition agreement, Scale has not confirmed whether the redactions made on page 199 or the redactions to the headers of pages 201, 204, 207, 210, 212, and 215, specifically, are redactions made to prevent the disclosure of attorney's fees. *See* Jan. 8 Email from B. Gleason to A. Hadzimehmedovic. Scale's email from Thursday evening, which simply stated "You have our answer on the redactions," is not responsive. Please provide Scale's response to Parse's redaction questions.

Finally, Parse understands Scale will not produce any documents responsive to Parse's reciprocal requests because Scale contends these requests seek information that is not relevant. If that understanding is incorrect, please let us know.

Parse continues to believe the parties could negotiate a solution to these issues without requiring Court intervention. However, given Scale's insistence on filing something with the Court rather than continuing to negotiate, here are our edits to the joint letter you circulated last week. Also, should Scale file its motion for teleconference, Parse will file a separate motion for teleconference on Parse's reciprocal requests. This document is also attached.

Regards,
Brady

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, January 13, 2026 12:30 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady, it has now been over a week since the parties met and conferred and reached an impasse. Despite extensive additional correspondence and after Parse's self-imposed deadline to provide its final response has passed, we still do not have Parse's final position. ScaleBio has been reasonable in allowing Parse an additional week after the meet and confer to address issues it should have been evaluating since November. Please provide Parse's final position immediately.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Monday, January 12, 2026 at 6:08 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce
<john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>,
Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan
<Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell
<cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-
scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

We are unable to provide a substantive response before your 7 pm deadline, an unreasonable deadline under the
circumstances as it is wholly arbitrary and falls only three hours after receipt of your email today. Nevertheless, we will
endeavor to respond later this evening or tomorrow morning.

In the meantime, you do not have our authorization to file the joint papers you circulated last week. We will have edits
to the joint letter, which we will provide with our response.

Regards,
Brady

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Monday, January 12, 2026 3:47 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW
<ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson
<SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler

<Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service
<Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady—

Please provide the update you promised by today and confirm whether Parse will produce the appendices, exhibits, and schedules to the Qiagen acquisition agreement.  Without conceding relevance, ScaleBio is willing to produce Exhibit E and a couple of other remaining corporate documents.

Regarding the remaining ScaleBio requests, we understand that Parse is unwilling to remove redactions from the acquisition agreement, to produce the other documents and communications we requested or to provide a short deposition.  If your answer is different and Parse will produce those documents and communications or produce them only if ScaleBio also produces the documents Parse has now requested, let us know.  We reiterate that Parse's belated requests for ScaleBio's acquisition-related documents seem to be an afterthought aimed at gaining leverage and Parse's requests appear to be largely irrelevant to the remaining triable issues.   Nonetheless, we need to know whether Parse is agreeing to make a production conditioned on ScaleBio making its production as well.

If we do not receive Parse's agreement to produce the requested documents by 7 pm today, we will file the papers we forwarded last week.

Regards, Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Friday, January 9, 2026 at 3:17 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce
<john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>,
Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan

<Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>

**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

As Scale is aware, since the close of fact and expert discovery, both parties have had acquisition events. Scale's position, as Parse understands it, is that documents and communications exchanged during these acquisition events are related to damages. Parse disagrees. Since the parties have produced the actual agreements related to the acquisitions, Parse does not believe that any documents and communications leading up to the executed agreement are relevant, and collecting and producing them will be unduly burdensome and unlikely to yield any relevant, non-duplicative information. However, as explained in my previous email, Parse is willing to consider Scale's requests and is working to understand their scope and relevance. Contrary to your statement, it was not at all clear on the meet and confer exactly what documents Scale was seeking and it was only upon receiving your email from yesterday that Scale, for the first time, was clear as to the scope of its requests. Further, Parse does not believe the parties are at an impasse since the following issues remain open.

First, with respect to the Parse/Qiagen acquisition agreement, Scale is insisting that Parse produce the entire agreement, with all appendices, exhibits, and schedules ("attachments"), but Scale has yet to confirm that it has produced the entirety of its own acquisition agreement with 10x. Parse's inquiries regarding potentially missing attachments from Scale's production of the 10x agreement are so that Parse could better understand Scale's position on what is or is not relevant and what should or should not be withheld. Parse is not conditioning its response on Scale's production of Exhibit E or any other attachment that may be missing from Scale's original production, but Scale cannot expect Parse to produce all attachment(s) to the Qiagen agreement if Scale believes certain attachment(s) to the 10x agreement are not relevant or should be withheld. That said, we are currently working with our client on the attachments to the Qiagen agreement and expect to have a response later this afternoon or by Monday.

Second, regarding documents and communications related to the Parse/Qiagen acquisition, Parse is working to understand Scale's position on why such documents and communications are relevant when the agreement itself, the operative document governing the acquisition, has already been produced. And as with the attachments to the agreement, Scale cannot expect Parse to produce the documents and communications related to the Qiagen acquisition if Scale believes the respective documents and communications related to the 10x acquisition are not relevant and do not need to be produced. Scale's position is also confusing as it appears to suggest that the valuation of Parse's asserted patents—which Scale notes are no longer in the case—is relevant to Scale's damages but the valuation of Scale's asserted patents in its own documents and communications is not. If it remains Scale's position that its requested documents and communications related to the Qiagen acquisition are relevant, then Scale should view the corresponding documents and communications related to the 10x acquisition as~~similarly~~ similarly relevant, especially as you note, Scale's patents remain in the case. Specifically:

- Valuations of this litigation; valuations of, representations about and discussions of the asserted Scale patents; valuations of, representations about, and discussions of the accused Scale products and their technology; and other inputs into the valuation of Scale and the acquisition price
  - Based on Scale's position, these valuations, *including valuations of Scale's asserted patents*, and representations are relevant to damages that *Scale is seeking*.
  - This request would be responsive to at least RFP Nos. 32 and 36.

- Business, competitive, and market analyses performed in connection with the transaction, including any analysis relating to Parse, prepared to justify the sale or as part of due diligence

11

- Based on Scale's position, these documents are relevant to damages and injunction because the competitive dynamics, as understood by Scale, would also inform "both sides' damages contentions" and Scale's injunction contentions.
- This request would be responsive to at least RFP No. 31.

- Analyses, valuations, and projections for the accused Scale products following the 10x acquisition
  - As Scale is the party seeking damages and injunctive relief, it is information about Scale's products that would be relevant to damages and injunctive relief.
  - This request would be responsive to at least RFP No. 33.

- Documents and communications regarding this litigation and Parse
  - Based on Scale's position, these communications are relevant to, for example: the reasonableness of Scale's damages claim and the veracity of Scale's representations in this litigation.
  - This request would be responsive to at least RFP No. 46.

Given Scale's position on the relevancy of these documents related to the Qiagen acquisition, the very same documents related to the 10x acquisition are just as relevant, if not more so. Parse asks, for the fifth time, that Scale confirm that—should Scale move to compel this information and the Court grants its request—Scale will produce these documents and communications.

Regards,
Brady

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Thursday, January 8, 2026 9:13 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady—the opening sentence in your email requires correction.  We had identified the materials we are seeking and explained their relevance at the meet and confer. It was Parse that came to the meet and confer lacking knowledge of the acquisition materials exchanged with Qiagen, despite having made extensive prior representations about documents not reviewed by your team.  We reached an impasse on the meet and confer.  Now, three days later Parse is simply delaying without any indication that it is seriously considering producing any materials in response to our requests.  Be that as it may, ScaleBio agrees to give Parse until 4 pm tomorrow to provide its final position on what it will produce, after which we will seek the Court's assistance if necessary.

You have our answer on the redactions and we are checking on Exhibit E. This issue cannot, however, delay Parse's response to our requests that is now a month and a half overdue. Parse continues to refuse to agree to produce the complete acquisition agreement (with all schedules, exhibits and appendices) and without redactions whether or not ScaleBio produces Exhibit E.

Parse's eleventh-hour request for ScaleBio acquisition materials—concerning an agreement we produced four months ago—cannot be used to delay or condition Parse's overdue production of the Qiagen acquisition materials. Parse has an independent obligation to produce the Qiagen acquisition materials, which are now a month and a half late. If we cannot reach agreement tomorrow on Parse's production of Qiagen acquisition materials, we will move.

In the meantime, please explain the relevance of each category you are now seeking—*particularly when Parse's patents are no longer in the case*—and identify RFPs that you believe you previously served to which these documents would be responsive. Once we have your explanation, we will meet and confer.

Regards, Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Thursday, January 8, 2026 at 5:00 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

Given that Scale has just identified for the first time with any specificity the categories of documents related to the Qaigen acquisition it is seeking, Parse requires some time to consider Scale's request. As such, Parse does not believe the parties have fully met and conferred on this issue and objects to Scale raising the issue before the Court today. We will advise the court accordingly should Scale unilaterally file its motion without Parse's consent.

While Parse considers Scale's requests and rationales, Parse, once again, asks Scale to confirm that it will produce the same categories of documents related to the Scale/10x acquisition agreement:

- Valuations of this litigation; valuations of, representations about and discussions of the asserted Scale patents; valuations of, representations about, and discussions of the accused Scale products and their technology; and other inputs into the valuation of Scale and the acquisition price
- Business, competitive, and market analyses performed in connection with the transaction, including any analysis relating to Parse, prepared to justify the sale or as part of due diligence
- Analyses, valuations, and projections for the accused Scale products following the 10x acquisition
- Documents and communications regarding this litigation and Parse

Regarding Scale's production of the 10x acquisition agreement, it is not readily apparent that all redactions were to legal fees. For example, there is no context for the redactions on page 199 or the redactions to the headers of pages 201, 204, 207, 210, 212, and 215, and Scale had not previously provided an explanation. Please confirm that all redactions, including the aforementioned examples, to the 10x acquisition agreement were only to redact legal fees. Additionally, Scale has not explained why Exhibit E appears to be missing from the produced agreement. If it, or any other annex, exhibit, or schedule to the 10x acquisition agreement, has been withheld, please provide Scale's basis for doing so.

Regards,
Brady

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Thursday, January 8, 2026 4:34 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel for Parse—we would like to proceed with the filing. Do you have any proposed changes?

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**

1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Date:** Thursday, January 8, 2026 at 11:57 AM
**To:** Brady Gleason <bgleason@sternekessler.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Brady—

In the meet and confer on January 5 we clearly and specifically identified categories of documents ScaleBio seeks from the acquisition negotiations and discussed their relevance.  To ensure the record is clear, we restate them here:

- Valuations of this litigation; valuations of, representations about and discussion of the asserted patents; valuations of, representations about, and discussion of the accused products and their technology; and other inputs into the valuation of Parse and the acquisition price
  - These valuations and representations are relevant to damages, including to the hypothetical negotiation under the Book of Wisdom, and to proof of infringement.
- Business, competitive, and market analyses performed in connection with the transaction, including any analysis relating to ScaleBio, prepared to justify the sale or as part of due diligence.
  - These documents are relevant to damages and injunction because the competitive dynamics inform both sides' damages contentions and ScaleBio's injunction contentions.
- Analyses, valuations, and projections for the accused Parse products following the Qiagen acquisition
  - This information is relevant to damages and injunctive relief. As discussed during the meet and confer, any such information must be produced now to prevent its introduction for the first time during post-trial proceedings.
- Documents and communications regarding this litigation and ScaleBio
  - These communications are relevant to, for example: the reasonableness of ScaleBio's damages claim; Parse's continued willful infringement without abatement or a design-around; and the veracity of Parse's representations in this litigation.

Regarding the redactions in the 10x/ScaleBio acquisition agreement, which you raised for the first time four months after that production was made, it is evident from our production that ScaleBio redacted legal fees. Is Parse suggesting that those fees are not privileged and relevant and that both parties should produce them? Either way, those redactions do not impact the ongoing dispute over Parse's improper redactions of the Qiagen acquisition agreement.

If Parse changes its mind and is willing to produce the categories of information discussed, let us know so that we can address only the disputed issues with the Court. We are also available to speak today if that would be helpful.

Based on Parse's response, a submission to the Court will be necessary, so we are attaching the draft submissions.  Please confirm whether you have changes.  We intend to file them today.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Wednesday, January 7, 2026 at 6:24 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Counsel,

Scale's cited case law does not support the broad of discovery demands it now seeks. Neither the *Glassman* decision, an unreported opinion from the Court of Chancery of Delaware, nor the *Golfswitch* decision, an older unreported opinion from the District of Arizona, are factually analogous to the present case. The *Glassman* decision, for example, concerned a motion to compel *filed during the fact discovery period* seeking documents related to a hostile takeover that was central to the plaintiff's cause of action (i.e., seeking to enjoin the underlying sale) and necessary to prove its claims of irreparable harm. 2012 WL 4859125, at *5. That is decidedly not the case here; the Parse/Qiagen acquisition agreement, which is an event not reasonably foreseeable at the time of the hypothetical negotiation, bears no relationship to Scale's reasonable royalty or irreparable harm theories. The *Golfswitch* decision, likewise, offers no persuasive analysis for reopening discovery *in this case*, which might explain why that nearly two-decades old decision has never been cited by any other court.

Parse also disagrees with Scale's claims that its requests are in any way limited or tailored to relevant information. Despite repeated attempts, Scale has not once offered to narrow its discovery demands. To the contrary, Scale has taken the sweeping position that it seeks documents and communications related to the acquisition agreement that "concern the Parse Accused Products, the Asserted Patents, ScaleBio, or this litigation." On the meet and confer, it was unclear how Scale was narrowing those requests, except to additionally request documents and communications related to the valuation of Parse's technology and business projections and future plans.

Parse therefore again asks Scale to identify with specificity the particular documents and/or communications, including by category, it believes fall within the requirements of Rule 26, including as to relevance and proportionality, that it expects Parse to collect, search, and produce, and—for each such document, communication, and/or category—why those documents are relevant and proportional and not duplicative of documents already produced in the litigation. Parse understands Scale has generally claimed that all documents and communications it now seeks are related to damages, but Scale has refused to clarify its contention with any degree of specificity or particularity. And, at times, Scale has suggested that its requests were generally relevant to other claims or defenses, but it has not been consistent on that front. Parse is willing to consider reasonable and proportional requests from Scale for specific documents, but in order to do so, Scale must first provide an itemized list of each category of documents and/or communications that Scale is requesting with a level of specificity to allow Parse to identify such documents and meaningfully meet and confer with Scale on them.

Also, Scale's claim that Parse's objections have no basis in fact is wrong. Parse addressed this in our last email and above; Scale's requests are in no way tailored to relevant information, and instead broadly seek essentially all documents and communications related to the acquisition agreement. On top of this, Scale seeks broad discovery after the close of fact and expert discovery, indeed after the parties have submitted a pretrial order, and its demands are contrary to discovery limitations agreed upon by the parties' during discovery, such as the parties' agreement limiting the collection of emails and an ESI cutoff date. Relatedly, following our meet and confer, we confirmed that there were ████████████████████████████ involved in the due diligence for the acquisition, not including communications related thereto. For at least these reasons, Scale's suggestion that it seeks limited discovery is inaccurate. Moreover, Parse's objection that Scale's request lacks proportionality has even more merit given that Parse has already produced the acquisition agreement, which naturally supersedes any of the drafts, communications, and other documents that Scale included in its broad request for supplemental production.

Next, Parse does not believe that it is required at this time to produce another version of the acquisition agreement that removes the few redactions, which—as we explained—████████████████████████████ ████████████████. The disclosure of this information would irreparably harm and unfairly prejudice Parse, particularly in any subsequent settlement negotiations. Parse's position is supported by case law. *See Diagnostics Sys. Corp. v. Symantec Corp.*, No. SA CV 06-1211 DOC, 2008 WL 9396386, at *9-11, 14 (C.D. Cal. Apr. 4, 2008) (permitting redactions where its disclosure "would disadvantage [the plaintiff] in future potential negotiations with the remaining Defendants, including [the moving defendant]"). And Scale's claim during the meet and confer that the Protective Order would prevent any prejudice to Parse ignores that those with access to this information, such as Scale's outside counsel, may advise Scale during any subsequent settlement negotiations and unintentionally use this information, which cannot be unlearned, to the disadvantage of Parse.

On a related note, Parse reminds Scale that the version of the 10x acquisition agreement Scale produced to Parse included redactions, which Scale has not explained. To the extent that Scale continues to press for unredaction of the Parse/Qiagen acquisition agreement, please explain Scale's basis for its redactions to its acquisition agreement with 10x. Scale also appears to have failed to produce all accompanying annexes, exhibits, and schedules, such as Exhibit E, to the Scale/10x acquisition agreement. If Scale has withheld Exhibit E or any other annex, exhibit, or schedule to the 10x acquisition agreement, please provide Scale's basis for doing so. Once Scale provides its rationale for redactions and/or withholdings, which will allow Parse to understand Scale's position on what information can be appropriately redacted or withheld in the acquisition context and in light of the current claims and defenses in this case, Parse will better be able to assess Scale's request.

Finally, although Parse maintains its relevancy and proportionality objections, Parse again asks Scale to confirm that—in the event Scale moves to compel this information and the Court grants its request—Scale will produce the same information related to the 10x acquisition agreement, as requested by Parse in my Aug. 13 and Aug. 19 emails.


Regards,
Brady

**Brady Gleason**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
Email: bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, January 6, 2026 8:00 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

During the parties' January 5 meet-and-confer, Parse's counsel confirmed that they did not participate in the negotiations for Qiagen's acquisition of Parse and have no knowledge of the documents exchanged. This admission demonstrates that Parse's repeated objections—on grounds of proportionality, privilege, and work product (see B. Gleason 12/19/2025 email)—have not basis in fact, as Parse cannot maintain categorical objections to materials its counsel has not reviewed. During the meet-and-confer, ScaleBio explained the relevance of these materials and now cites exemplary caselaw supporting its position that the limited discovery ScaleBio seeks into the acquisition is relevant, not privileged, timely, and should be produced—namely, the acquisition agreement in full and acquisition documents and communications that concern the Parse Accused Products, the Asserted Patents, ScaleBio, or this litigation. See, e.g., *Glassman v. Crossfit*, 2012 WL 4859125 (Del. Ch. Oct. 12, 2012); *GolfSwitch Inc. v. Incuborn Sols., Inc.*, 2008 WL 11339945 (D. Ariz. Oct. 30, 2008). ScaleBio also stated it will seek a limited deposition of a corporate fact witness concerning the Parse–Qiagen acquisition.

Parse also stated during the meet-and-confer that it would not produce an unredacted version of the acquisition agreement, claiming the redactions are necessary to avoid prejudice in potential settlement negotiations. Parse committed to provide caselaw today to support its position on the redactions.

Parse refused to commit to producing the complete acquisition agreement, including all schedules, annexes, and exhibits. ScaleBio awaits Parse's final position on this issue today. If Parse does not agree to produce the full, unredacted agreement, ScaleBio will include this request in its motion.

As discussed, the parties appear to be at an impasse.  While ScaleBio remains willing to meet and confer to resolve this dispute should Parse change its position, ScaleBio is prepared to seek relief and will forward to Parse the required draft submission after ScaleBio receives Parse's response expected today.

Regards, Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Friday, January 2, 2026 at 11:13 AM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, John Pierce <john.pierce@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

We will look into your request to produce schedules, annexes, and exhibits associated with the acquisition agreement.

We renew our request for clarification on what other documents ScaleBio is currently seeking. Your suggestion that "ScaleBio seeks only those acquisition documents and communications that concern the Parse Accused Products, the Asserted Patents, ScaleBio, or this litigation" does not clarify the scope of your request or mitigate the unreasonableness of searching, collecting, reviewing, and producing any responsive documents at this point in the case. Nor does it confirm that ScaleBio's request is meaningfully different from a request for "all acquisition-related materials," which you indicate is a mischaracterization of your demands.

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████  Meanwhile, ScaleBio is already in possession of information that is far more relevant to damages than documents and communications related to ████████████. Against this backdrop, ScaleBio's request appears to be nothing more than a fishing expedition that contravenes the parties agreed-upon limitations on discovery, such as the

parties' agreement on an ESI cutoff date. For these reasons, your claim that our proportionality objection is unsupported is incorrect.

Finally, your suggestion that our repeated (yet unsuccessful) attempts at securing clarification from ScaleBio on the scope of its demands are veiled delay tactics is unwarranted. Notwithstanding the holidays and the need to clear third-party confidentiality agreements, we produced the acquisition agreement within a few weeks of ScaleBio's request. ScaleBio has not identified any prejudice caused by this supposed delay, nor has it articulated any basis to seek expedited relief should motions practice be necessary.

We are available to meet and confer on January 5 at 1:00 pm ET.

Regards,
Brady


**Brady Gleason**
Associate
__Sterne, Kessler, Goldstein & Fox P.L.L.C.__
Email: bgleason@sternekessler.com
Direct: 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, December 30, 2025 9:44 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; John Pierce <john.pierce@tensegritylawgroup.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady,

Your repeated suggestion that ScaleBio is seeking all acquisition-related materials is misplaced. ScaleBio seeks only those acquisition documents and communications that concern the Parse Accused Products, the Asserted Patents, ScaleBio, or this litigation. Those categories are squarely responsive to ScaleBio's RFPs and are directly relevant to at least willful infringement and damages. ██████████████████████████████████████████

Parse's generalized proportionality objection is unsupported. Please identify the specific categories of information being withheld and articulate the burden you contend applies to each, so that we can have a meaningful meet-and-confer.

We also renew our request that Parse reproduce the acquisition agreement without redactions or provide a concrete justification for each redaction. At a minimum, Parse should identify the basis for each redaction and explain why the information cannot be produced under the Protective Order. Parse has also failed to produce parts of the acquisition agreement (at least the schedules, annexes and exhibits). Please confirm that the unredacted agreement, including all of its parts (such as the schedules, annexes and exhibits), will be produced this week.

Please provide your response by close of business tomorrow so we can evaluate Parse's position.

We are concerned that Parse's refusal to respond to ScaleBio's requests and its failure to make itself available for a meet and confer are dilatory tactics.  In the spirit of cooperation and with the understanding that this is the holiday season, we will proceed with the meet and confer on Monday, January 5, but we reserve the right to seek expedited relief if motion practice becomes necessary.  ScaleBio is available on January 5 at 11 am or 1 pm Eastern.

Regards,
Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Monday, December 29, 2025 at 5:27 PM
**To:** John Pierce <john.pierce@tensegritylawgroup.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "wgs-scalebiosciencesv.parse@wolfgreenfield.com" <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "whrss-scalelit@wilmerhale.com" <whrss-scalelit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

John,

To help us understand what documents ScaleBio is currently seeking, please explain how all "acquisition-related documents" are relevant and proportional to the needs of the case at this juncture. ScaleBio's assertion that this broad request may be relevant to Parse's alleged "willful infringement, damages, and the injunctive relief ScaleBio is seeking," *see* A. Hadzimehmedovic Dec. 23 Email, assumes its own conclusion and does not explain or demonstrate how this information is relevant or proportional.

We are not available to meet and confer until January 5 or 6. Please let us know your availability on those dates.

Regards,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

**From:** John Pierce <john.pierce@tensegritylawgroup.com>
**Sent:** Monday, December 29, 2025 11:11 AM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>; Brady Gleason <bgleason@sternekessler.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com; Thomas Hartzell <thartzell@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; whrss-scalelit@wilmerhale.com; rvrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

---

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

---

Brady,

We have not received a response from Parse to several requests including identification of the categories of documents it is withholding and the basis for its redactions to the acquisition agreement. Please provide a response and let us know your availability tomorrow to meet and confer regarding the outstanding issues related to Parse's acquisition. Thank you.

Regards,
John
--
**John Pierce**



**Associate Attorney**
**TENSEGRITY LAW GROUP LLP**
1676 International Drive, Suite 910
McLean, VA 22102
571-545-7884 (office)
650-802-6001 (fax)

---

**From:** John Pierce <john.pierce@tensegritylawgroup.com>
**Date:** Wednesday, December 24, 2025 at 12:16 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, Brady Gleason <bgleason@sternekessler.com>, ParseUW <parseuw@sternekessler.com>

**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Frederick Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, whrss-scalelit@wilmerhale.com <whrss-scalelit@wilmerhale.com>, rvrana@ycst.com <rvrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Brady,

We received Parse's production of the acquisition agreement last night, which contains multiple redactions. In addition to the requests set out in our prior correspondence, please provide the following information.

First, please confirm that Parse will produce an unredacted version of the agreement or, alternatively, provide Parse's basis for each of the redactions.

Second, please confirm that Parse considers its production complete.

Regards,
John
--
**John Pierce**



**Associate Attorney**
**TENSEGRITY LAW GROUP LLP**
1676 International Drive, Suite 910
McLean, VA 22102
571-545-7884 (office)
650-802-6001 (fax)

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Date:** Tuesday, December 23, 2025 at 7:39 PM
**To:** Brady Gleason <bgleason@sternekessler.com>, ParseUW <parseuw@sternekessler.com>
**Cc:** wgs-scalebiosciencesv.parse@wolfgreenfield.com <wgs-scalebiosciencesv.parse@wolfgreenfield.com>, Thomas Hartzell <thartzell@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Frederick Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, whrss-scalelit@wilmerhale.com <whrss-scalelit@wilmerhale.com>, rvrana@ycst.com <rvrana@ycst.com>
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Brady—

We have not yet received the acquisition agreement.

Separately, please provide your availability this week or early next week for a meet-and-confer regarding the remainder of our request. We also renew our request that Parse identify the categories of documents it is withholding and the basis for withholding. This information is necessary to ensure a productive discussion. By way of example, there are likely categories of documents—such as materials placed in a data room or otherwise exchanged in acquisition negotiations—that can be produced without a privilege review. To proceed efficiently, we need to understand what is being withheld and why.  We expect the acquisition documents to be relevant, at minimum, to Parse's willful infringement, damages, and the injunctive relief ScaleBio is seeking.

Regards,
Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Friday, December 19, 2025 at 6:20 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com" <WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com>, Thomas Hartzell <THARTZELL@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "WHRSS-ScaleLit@wilmerhale.com" <WHRSS-ScaleLit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

We intend to produce the agreement by next week, though we cannot commit to a date certain given the holidays.

In response to your other question, collecting, reviewing, and producing all "additional acquisition-related documents" is not proportionate to the needs of the case, at least because the vast majority of these documents would be protected from disclosure as privileged, work-product, or both. Please provide Scale's basis for its argument, if any, that these additional documents are relevant to a claim or defense still at issue and proportional to the needs of this case.


Thank you,
Brady


**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, December 16, 2025 11:06 AM
**To:** Brady Gleason <bgleason@sternekessler.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com; Thomas Hartzell <THARTZELL@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; WHRSS-ScaleLit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.


Brady—

Thank you for confirming that Parse will produce the acquisition agreement. We have not yet received it, despite sending the request on December 1. Please confirm when Parse intends to produce this acquisition agreement.

In addition, our December 1 email identified other relevant Requests for Production that cover additional acquisition-related documents that are likely to exist. Please explain why Parse is refusing to produce the full scope of the documents ScaleBio has requested. At a minimum, pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), please identify the categories of documents Parse is withholding and the specific objections to their production.

Please provide your responses promptly.

Regards, Azra


**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910

McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Wednesday, December 10, 2025 at 3:48 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com" <WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com>, Thomas Hartzell <THARTZELL@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "WHRSS-ScaleLit@wilmerhale.com" <WHRSS-ScaleLit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

We intend to produce the agreement reflecting Qiagen's acquisition of Parse, and we will do so as soon as we have obtained the requisite approval.

Thank you,
Brady

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, December 9, 2025 1:30 PM
**To:** Brady Gleason <bgleason@sternekessler.com>; ParseUW <ParseUW@sternekessler.com>
**Cc:** WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com; Thomas Hartzell <THARTZELL@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; WHRSS-ScaleLit@wilmerhale.com; rvrana@ycst.com
**Subject:** Re: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Brady—could you please provide a response by tomorrow or let us know when you are available to meet and confer this week?  Thank you.

Regards,

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

---

**From:** Brady Gleason <bgleason@sternekessler.com>
**Date:** Monday, December 1, 2025 at 3:25 PM
**To:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>, ParseUW <ParseUW@sternekessler.com>
**Cc:** "WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com" <WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com>, Thomas Hartzell <THARTZELL@ycst.com>, Samantha Wilson <SWilson@ycst.com>, Kelly Farnan <Farnan@RLF.com>, Anne Shea Gaza <agaza@ycst.com>, Sara Metzler <Metzler@rlf.com>, Fred Cottrell <cottrell@rlf.com>, Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>, "WHRSS-ScaleLit@wilmerhale.com" <WHRSS-ScaleLit@wilmerhale.com>, "rvrana@ycst.com" <rvrana@ycst.com>
**Subject:** RE: Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

Azra,

We are looking into your request and will provide a substantive response shortly.

Thank you,
Brady

---

**Brady Gleason**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** bgleason@sternekessler.com
**Direct:** 202.772.8638

---

**From:** Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Sent:** Tuesday, November 25, 2025 3:52 PM
**To:** ParseUW <ParseUW@sternekessler.com>
**Cc:** WGS-ScaleBiosciencesv.Parse@wolfgreenfield.com; Thomas Hartzell <THARTZELL@ycst.com>; Samantha Wilson <SWilson@ycst.com>; Kelly Farnan <Farnan@RLF.com>; Anne Shea Gaza <agaza@ycst.com>; Sara Metzler <Metzler@rlf.com>; Frederick Cottrell <cottrell@rlf.com>; Scale_Parse_Service <Scale_Parse_Service@tensegritylawgroup.com>; WHRSS-ScaleLit@wilmerhale.com; rvrana@ycst.com
**Subject:** Scale Biosciences, Inc. v. Parse Biosciences, Inc. (1:22-cv-01597-CJB (D. Del.)): Acquisition of Parse

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Counsel,

Qiagen has recently announced that it has entered into a definitive agreement to fully acquire Parse. In light of this development, please produce all documents and communications relating to the acquisition that concern the Parse Accused Products, the Asserted Patents, ScaleBio, or this litigation. These materials are responsive to at least ScaleBio's RFPs 3, 5, 15, 34, 55, 69, 79, 83, 89, 94, and 95.

Please confirm the timeline for this production. Although the Court is still considering the parties' motions and the trial has not been rescheduled, we do not want this issue to delay ScaleBio's ability to secure the earliest possible trial date. Accordingly, we expect Parse to proceed promptly with the collection and production of these documents.

Regards,
Azra

**AZRA HADZIMEHMEDOVIC**



**TENSEGRITY LAW GROUP LLP**
1676 International Dr., Suite 910
McLean, VA 22102
703-940-5031 (direct)
202-321-3879 (mobile)

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OFDELAWARE**

| | |
|---|---|
| SCALE BIOSCIENCES, INC., and ROCHE SEQUENCING SOLUTIONS, INC.,<br><br>   Plaintiffs,<br><br>v.<br><br>PARSE BIOSCIENCES, INC.,<br><br>   Defendant. | C.A. No. 1:22-CV-01597-CJB<br><br>████████████████████ |
| PARSE BIOSCIENCES, INC., and UNIVERSITY OF WASHINGTON,<br><br>   Counterclaim Plaintiffs,<br><br>v.<br><br>SCALE BIOSCIENCES, INC.,<br><br>   Counterclaim Defendant. | |

**DECLARATION OF DEFOREST MCDUFF,  PH.D.**

███████████████████████████████

I, DeForest McDuff, declare as follows:

1.    I am an economist and founder of Insight Economics, an economic consulting firm with a focus on applied economics and intellectual property, among other areas.[1] I have been engaged by Sterne, Kesler, Goldstein & Fox, LLP in this case to provide expert testimony in in the above-referenced matter and have submitted several expert reports: (1) an expert report on October 10, 2024 (my "Opening Report") concerning a reasonable royalty owed to Parse and UW resulting from the alleged infringement of the Asserted Parse Patents by ScaleBio; (2) a rebuttal report on November 12, 2024 (my "Rebuttal Report") in response to the opening report of Mr. Drew Mooney regarding a reasonable royalty owed to ScaleBio resulting from the alleged infringement of the Asserted ScaleBio Patents by Parse; (3) a reply report on December 13, 2024 (my "Reply Report") in response to the rebuttal report of Mr. Mooney regarding a reasonable royalty for the Asserted Parse Patents; (4) a supplemental report on September 9, 2025; and (5) an updated supplemental report on September 29, 2025.[2]

2.    For this declaration, I have reviewed and evaluated the January 22, 2026 declaration of Mr. Drew D. Mooney in support of ScaleBio's request for discovery pertaining to Parse's recent acquisition by Qiagen (the "Mooney Declaration").[3] In my opinion, the requested discovery will not be helpful or relevant to the damages inquiry, for the following reasons.

3.    <u>First</u>, neither my reasonable royalty analysis nor Mr. Mooney's depend on any value placed on this litigation, the value of Parse as a company, or the valuation of its Evercode product line. We both derive our royalty rates from comparable license agreements,[4] and none of these are materially impacted by the terms of the Merger Agreement or any related valuations or

---

[1]    My qualifications are provided in Section 1.1 of my Opening Report. Additionally, my curriculum vitae contains details on my education, experience, and testimony and is provided as Exhibit A-1 to my Opening Report, Rebuttal Report, and Reply Report.

[2]    Unless otherwise specified, my use of defined terms in this declaration is consistent with my use of those same defined terms in my Opening Report, my Rebuttal Report, and my Reply Report.

[3]    I have also reviewed the Agreement and Plan of Merger among Qiagen North American Holdings, Inc., ████████████ Parse Biosciences, Inc., and ████████████████████ dated as of October 19, 2025 (the "Merger Agreement"). PARSE0829223 and PARSE0829358.

[4]    Opening Expert Report of Drew D. Mooney, 10/10/2024, ¶¶ 218-221.
       Rebuttal Expert Report of DeForest McDuff, 11/12/2024, ¶¶ 111, 114.

forecasts.[5] Additionally, we both conclude on running royalties structured as percentages of Parse's accused net sales as they occur.[6] Parse has provided updated sales data for the Accused Parse Products through at least July 2025.[7] As such, fixed payments and forecasts prepared at the time of the Qiagen merger would not be relevant to our royalty opinions. ScaleBio also cites the Opening Mooney Report's claimed reliance on Parse's forecasts as justification for requesting production of more recent Parse forecasts;[8] however, neither expert's reasonable royalty conclusions is directly tied to Parse's forecasts, and in any case Parse's forecasts made closer to the time of the hypothetical negotiation in February 2021 are more indicative of the parties' expectations at that time.[9] There is no additional informative value in the requested forecasts, which post-date the negotiation by four years. Moreover, the Mooney Declaration speculates as to the existence of the "prospective financial information" and "other types of documents" that it seeks.[10] The Merger Agreement itself does not indicate that such information was prepared here.[11]

      4.    <u>Second</u>, any purchase price allocations or valuations associated with the Merger Agreement *would not relate to ScaleBio's Asserted Patents*. While the Mooney Declaration argues that "the purchase price allocation containing valuation information for specific identifiable assets related to Evercode is relevant information,"[12] it fails to explain how that information would inform on the valuation of the Asserted ScaleBio Patents. Indeed, Parse's products and their associated IP are distinct from the Asserted ScaleBio Patents, and the value of Parse's IP and other assets as of October 2025 is not indicative of the value of ScaleBio's patents in the February 2021

---

[5]     PARSE0000001.
        SCALEBIO_00000001.
        SCALEBIO0090216.
[6]     Rebuttal Expert Report of DeForest McDuff, 11/12/2024, ¶ 111.
        Opening Expert Report of Drew D. Mooney, 10/10/2024, ¶ 116.
[7]     PARSE0829220, ████████
[8]     Letter Brief to the Honorable Christpher J. Burke Regarding ScaleBio's Request for Discovery Pertaining to Parse's Recent Acquisition by Qiagen, 1/22/2026, p.2.
        Opening Expert Report of Drew D. Mooney, 10/10/2024, ¶¶ 179, 183.
[9]     *See, e.g.,* PARSE0421751, █████████████
[10]    Mooney Declaration, 1/22/2026, ¶ 7.
[11]    Merger Agreement, PARSE0829223 and PARSE0829358.
[12]    Mooney Declaration, 1/22/2026, ¶ 7.

hypothetical negotiation, over four years prior.[13] Therefore, any purchase price allocation for Parse's Evercode products and associated IP is not relevant to damages in this case, especially since I understand the Asserted Parse Patents are no longer at issue.

5.    Notably, Mr. Mooney did not materially alter his reasonable royalty opinion when ScaleBio was acquired by 10X,[14] which contrasts with the Mooney Declaration's assertion that additional financial information related to Parse's merger with Qiagen "is relevant information."[15] The ScaleBio and 10X transaction provided information on the value of *ScaleBio's business and IP,* ██████████████████████████████████████████████████████████████████████

██████.[16] Mr. Mooney did not change his reasonable royalty opinion based on the ScaleBio and 10X transaction or related valuations and forecasts,[17] and fails to explain why Parse's and Qiagen's valuation of this litigation would be more informative.

6.    <u>Finally</u>, the Mooney Declaration's attempt to characterize information related to the Merger Agreement as relevant under the Book of Wisdom overstretches this concept. While evidence postdating the hypothetical negotiation can be informative at times,[18] the Book of Wisdom requires the parties to consider the timing and availability of information to the parties. The Federal Circuit has stated that information post-dating the negotiation "*may be relevant, but only in an indirect and limited way—as some evidence bearing on a directly relevant inquiry into anticipated profits…*"; "*…expectations govern, not actual results.*"[19] The Book of Wisdom does not dispense with the obligation to evaluate which information postdating the negotiation

---

[13]    Letter Brief to the Honorable Christpher J. Burke Regarding ScaleBio's Request for Discovery Pertaining to Parse's Recent Acquisition by Qiagen, 1/22/2026, p. ii.
         Rebuttal Expert Report of DeForest McDuff, 11/12/2024, ¶ 109.
         Opening Expert Report of Drew D. Mooney, 10/10/2024, ¶¶ 179, 183.
[14]    *See, e.g.*, Supplemental Mooney Report, 9/9/2025, ¶ 24.
[15]    Mooney Declaration, 1/22/2026, ¶ 7.
[16]    SCALEBIO0341716, -1723-1724, -1810-1812, -1817-1818.
[17]    SCALEBIO0341716, -1723-1724, -1810-1812, -1817-1818.
[18]    *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014). ("In hypothetical negotiation terms, the core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have *anticipated* the profit-making potential of use of the patented technology to be.")
[19]    *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014). ("But [the district court] did err in treating the profits IPC actually earned during the period of infringement as a royalty cap. That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened"). Emphasis added.

reasonably approximates the parties' expectations. In this case, ample evidence from both before and shortly after the hypothetical negotiation is available, and this information better approximates the parties' expectations than the requested Qiagen-related discovery, which postdates the hypothetical negotiation by more than four years.

7.      I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on January 29, 2026 in Durham, NC.

R. D. McDuff

DeForest McDuff, Ph.D.

**EXHIBIT D**

ORAL ORDER: The Court, having reviewed the parties' joint motion to resolve a discovery dispute, (D.I. 79), in which Defendants request that the Court order Plaintiff to produce certain documents and communications (to the extent they are not privileged) relating to third-party funding or financing of this case, and the letter briefs related thereto, (D.I. 82; D.I. 83), and having heard argument on March 1, 2021, hereby ORDERS that the request is DENIED. Since Defendants did not engage on the privilege issue, Plaintiffs' argument against production for now is focused on lack of relevance. (D.I. 83) On that score, Defendants' primary argument for relevance relates to standing, as they suggest that the litigation funding agreement at issue (it is not disputed that one exists here, though the identity of the third-party funder is not known to Defendants) could be relevant to standing if it happens to contain a clause that grants the third-party funder(s) some type of actual or conditional ownership/license to the patents-in-suit in some scenario. (D.I. 82) Yet Defendants acknowledge that they have no facts or evidence to suggest that the agreement does or might have such a provision (and Plaintiff's counsel has stated to the Court, on the record, that the agreement, in fact, does not). The Court agrees with Plaintiff that this amounts to seeking discovery based on pure speculation (and not on a baseline showing of relevance), which is prohibited. See Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1326 (Fed. Cir. 1990); United Access Techs., LLC v. AT&T Corp., C.A. No. 11-338-LPS, 2020 WL 3128269, at *2 (D. Del. June 12, 2020); cf. Ashghari-Kamrani v. United Servs. Auto. Assoc., Civil Action No. 2:15-cv-478, 2016 WL 11642670, at *4-6 (E.D. Va. May 31, 2016) (permitting discovery into whether a third party provided funding or resources to the plaintiff relating to an interest in the patents-in-suit, on the ground that the discovery was relevant to the issue of standing, but only when the court was presented with "substantial facts" indicating that the third party may have, pursuant to its funding agreement with plaintiff, obtained some sort of licensing rights regarding the patents). As for Defendants' alternate theory of relevance i.e., that the materials could be relevant to damages and the value of the patents in suit one District Judge of this Court has held that litigation funding agreements "are not [] relevant to the hypothetical negotiation between the parties" and "are so far removed from the hypothetical negotiation [as to] have no relevance" in that they are little more than "informed gambling on the outcome of litigation." AVM Techs., LLC v. Intel Corp., Civil Action No. 15-33-RGA, 2017 WL 1787562, at *3 (D. Del. May 1, 2017). The Court tends to agree that this is correct (and even if there might be some factual scenario where such an agreement is marginally relevant to the hypothetical negotiation at issue, the Court has not been presented with it here). Ordered by Judge Christopher J. Burke on 3/2/2021. (dlb) (Entered: 03/02/2021)

As of March 3, 2021, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Speyside Medical, LLC v. Medtronic CoreValve LLC et al*
1-20-cv-00361 (DDE), 3/2/2021, docket entry 88

**EXHIBIT E**

Document Produced in Native Format

PARSE0421751

**EXHIBIT F**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 16-453-WCB |
| | § | |
| ACTIVISION BLIZZARD INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

In this patent case, the parties disagree about the appropriate path for moving the case forward. Plaintiff Acceleration Bay LLC ("Acceleration") argues that additional expert discovery is needed regarding damages, and after discovery is completed, the case should proceed to trial. Dkt. No. 746 at 3. Defendant Activision Blizzard Inc. ("Activision") argues that the case should be dismissed because Acceleration lacks an admissible damages theory and has therefore waived the right to a reasonable royalty. Dkt. No. 750 at 9. Acceleration's request for additional discovery is DENIED. Activision's request to dismiss the action is also DENIED.

### I.   Background

This case was originally assigned to Judge Andrews. After substantial pretrial proceedings, he stayed the case pending the Federal Circuit's disposition of the appeal in the related action of *Acceleration Bay LLC v. 2K Sports, Inc.*, No. 16-455 (D. Del.) ("*Take-Two*"). Following the Federal Circuit's issuance of its opinion in *Take-Two*, Judge Andrews lifted the stay and granted in part the motion for summary judgment that Activision filed in light of the Federal Circuit's decision. Dkt. No. 743.

1

Prior to the appeal in the *Take-Two* case, Acceleration made multiple unsuccessful proffers of expert testimony on the issue of damages in this case. In August 2018, Judge Andrews struck a portion of the reasonable royalty opinion of Dr. Christine Meyer, a damages expert retained by Acceleration. Dkt. No. 578. Dr. Meyer's opinion relied on a jury verdict from another case. *Id.* at 27–28. Because Judge Andrews viewed the exclusion of Dr. Meyer's opinion as significantly hindering Acceleration's ability to put on an acceptable damages case, he requested additional briefing from the parties regarding whether Acceleration had any remaining admissible damages theories. Dkt. No. 619 at 1. That briefing was completed in October 2018, just five days prior to the scheduled trial. Judge Andrews then continued the trial because he determined that "it would not be possible to reach a decision on [Acceleration's] damages case prior to the scheduled start of trial." *Id.* at 2.

In his order continuing the trial, Judge Andrews stated that he would give Acceleration "a final opportunity to present [the court] with an admissible damages case," and that Acceleration could "supplement its expert reports if it wishe[d] to do so." *Id.* Judge Andrews further instructed Acceleration that after all supplementation and expert discovery was completed, Acceleration would be required to provide the court with "a proffer of the case it intends to submit to the jury on damages." *Id.* That proffer, he explained, needed to consist of "a fulsome explanation of all of Plaintiff's damages theories, all the evidence it plans to put on in support of those theories, and citations to Federal Circuit precedent supporting its admissibility and sufficiency." *Id.* at 2–3. Acceleration then requested that it be permitted to submit a report from a new damages expert, Russell Parr. Judge Andrews granted that request. Dkt. No. 630.

Acceleration filed its damages proffer on February 15, 2019. Dkt. No. 641. That proffer outlined three approaches to the reasonable royalty analysis offered by Mr. Parr: a "cost-saving"

approach, *id.* at 4–14; a "revenue-based" approach, *id.* at 15–20; and a "user-based" approach, *id.* at 21. The proffer also pointed to other documentary and testimonial evidence, as well as expert opinions that, according to Acceleration Bay, provided additional support for Mr. Parr's reasonable royalty analysis. *Id.* at 22–26.

With respect to the cost-saving approach, each of Mr. Parr's damages theories under that approach relied on the expert opinion of Dr. Ricardo Valerdi, who offered opinions on "the cost of rearchitecting each of the Accused Products in this case in order to develop a new networking platform for each of the accused [video] games." Dkt. No. 692 at 5–6 (quoting Dkt. No. 444-1, Exh. C-2, at 1). Judge Andrews excluded Dr. Valerdi's opinion because it provided "no basis in fact to conclude that the creation of the infringing network saved Defendant any money over a theoretical alternative." *Id.* at 7. He also excluded Mr. Parr's testimony regarding the cost-saving approach because his testimony relating to that approach "depend[ed] entirely on Dr. Valerdi's opinion." *Id.*

With respect to the revenue-based approach, Mr. Parr's theory depended on two inputs: the "Boeing/Panthesis license" and internal customer surveys conducted by Activision. The Boeing/Panthesis license is a July 2002 agreement between Boeing Management Company ("Boeing") and Panthesis Inc. that granted Panthesis an exclusive license to the asserted patents in this case and other intellectual property, along with the right to sublicense.[1] *Id.* at 11–12; Dkt. No. 756-1 at 4.[2] In return, Panthesis agreed to provide Boeing with five percent of Panthesis's stock, $5.6 million paid over time, and 12 percent of future revenue from the licensed products. Dkt. No.

---

[1] Boeing was the assignee of the asserted patents until December 10, 2014. Dkt. No. 642-1, Exh. A ¶ 19. Accordingly, the hypothetical negotiation in this case, which Acceleration argues would have taken place in September 2012, is treated as if it were conducted between Boeing and Activision. Dkt. No. 749 at 1.

[2] All citations to Dkt. No. 756-1 refer to the page number of the PDF document.

3

692 at 11; Dkt. No. 756-1 at 16–17.  Mr. Parr adopted the 12 percent figure from the Boeing/Panthesis license as the royalty rate for his revenue-based approach to determining a reasonable royalty.  Dkt. No. 641 at 16.  The royalty base in Mr. Parr's analysis was the "world-wide revenues for the [accused] games."  Dkt. No. 641 at 16.

Mr. Parr attempted to further apportion the revenues using Activision's internal surveys regarding the accused video games.  Specifically, Mr. Parr relied on survey data indicating that "57 to 62 percent" of purchasers of Call of Duty: Black Ops III, one of the accused games, purchased the game "because of the infringing multiplayer modes."  *Id.* at 19.  Because that percentage was the lowest among the accused games, Mr. Parr took what he described as a "very conservative approach" and further apportioned the revenues for all the accused games by 57 percent.  *Id.* at 19–20.  What resulted was a measure of damages that multiplied the total revenues by the 12 percent royalty rate from the Boeing/Panthesis license, then multiplied that product by 57 percent based on the Activision survey information.  *Id.* at 20.

Judge Andrews excluded Mr. Parr's revenue-based approach for failure to apportion adequately.  In particular, Judge Andrews explained that the Activision surveys did not "attempt to discern what portion of a gamer's decision to buy the game is driven by the multiplayer functionality versus all of the other unpatented features."  Dkt. No. 692 at 9.  Judge Andrews also rejected Acceleration's suggestion—raised in two sentences in Acceleration's brief relating to the damages proffer—that the Boeing/Panthesis license could provide "built-in apportionment" for the revenue-based approach.  *Id.* at 10.  The court observed that Mr. Parr "d[id] not even mention the Boeing/Panthesis License in the apportionment section of his expert opinion," and that "Mr. Parr's apportionment opinion cannot survive on an opinion that he d[id] not express."  *Id.*  Because the Boeing/Panthesis license was a license to the patents-in-suit, Judge Andrews found that the

4

license was sufficiently technically comparable to the hypothetical license that would be applicable to a reasonable royalty calculation in this case.  Moreover, although Judge Andrews noted that there were differences between the Boeing/Panthesis license and the hypothetical license in this case, he rejected Activision's argument that the Boeing/Panthesis license is not economically comparable to the hypothetical license.  *Id.* at 12–13.  He also ruled that Mr. Parr's reliance on that license did not itself provide a basis for excluding Mr. Parr's opinions at trial.  *Id.*

With respect to the user-based approach, Mr. Parr again relied on the Boeing/Panthesis license and the Activision customer surveys.  Mr. Parr determined that the average price of the accused games was $57, then multiplied that number by the 12 percent royalty rate from the Boeing/Panthesis license and the 57 percent apportionment factor he derived from the surveys. Dkt. No. 641 at 21.  That figure, which represented a "per-user royalty," was then multiplied by the number of users of the infringing games.  *Id.*  Judge Andrews excluded that approach for the same reason that he excluded the revenue-based approach: because the user-based approach did not properly apportion the value of the patented features.  Dkt. No. 692 at 9.

Having excluded Mr. Parr's cost-based, revenue-based, and user-based approaches, Judge Andrews recognized that his decision left Acceleration "with no intact damages theories."  *Id.* at 5; *see also id.* at 7 ("As this was Plaintiff's final opportunity to present a damages case, Plaintiff will not have the opportunity to submit revised expert reports . . . .").

Undeterred, Acceleration notified the court a week later that it intended to "present a fact-based damages case based on the already developed fact record and evidence with expert support." Dkt. No. 694 at 1.  Specifically, Acceleration proposed that Mr. Parr would testify regarding (1) the *Georgia-Pacific* factors; (2) "the Boeing/Panthesis license as comparable to the hypothetical negotiation in this case"; and (3) financial information regarding the accused games.  *Id.*

Acceleration also proposed to introduce "factual evidence to establish the appropriate apportionment to the footprint of the inventions." *Id.* at 1–2.  In response to that proposal, Judge Andrews ordered Acceleration to "submit a document explaining how its proposed damages testimony . . . complies with the previous order of the Court (D.I. 619) and, in any event, proffer the factual evidence [it will introduce] to establish the appropriate apportionment to the footprint of the inventions."  Dkt. No. 699.  Acceleration filed that document on October 18, 2019.  Dkt. No. 700.  The case was stayed pending the appeal in *Take-Two* before the court ruled on Acceleration's latest damages submission.  Dkt. No. 711.  The stay has now been lifted and the case has been reassigned to me.

On November 16, 2022, I ordered further briefing from the parties on the issue of damages, with the briefing to address the following questions: "(1) whether Acceleration Bay's damages proffer at Dkt. No. 700 is consistent with the prior orders of the court; (2) whether testimony from a lay witness may be used to demonstrate apportionment; (3) the extent to which intervening events since October 2019 may affect the substance of Acceleration Bay's damages theories; and (4) how resolution of those issues would affect further proceedings in this case."  Dkt. No. 747.  The parties filed simultaneous opening and responsive briefs regarding damages.  Dkt Nos. 748–49, 752–53.  On January 18, 2023, I entered an order requesting more information from Acceleration regarding its proposed damages evidence.  Dkt. No. 754.  Acceleration filed a response to that order, Dkt. No. 756, and Activision filed a statement regarding Acceleration's response, Dkt. No. 758.  On March 20, 2023, I conducted a telephonic hearing to further explore the damages issue.

## II.    Discussion

### A.    Waiver of Reasonable Royalty

The primary issue before the court is whether Acceleration may be permitted to rely on its proposed fact-based damages theory at trial.   Activision contends that Judge Andrews gave Acceleration a final opportunity to present an admissible damages theory.  Having failed to do so, Activision argues, Acceleration has waived the right to a reasonable royalty.   Acceleration responds that its current proposed damages theory is consistent with the prior orders of the court and that it must be allowed to present a damages case because, in the event of a finding of infringement, the court is required by statute to award damages in an amount no less than a reasonable royalty.  35 U.S.C. § 284.

Cognizant of that statutory directive, the Federal Circuit has held that "reasonable royalty damages can be awarded even without [expert] testimony" in an amount that "the record evidence will support." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003).  The Federal Circuit applied that principle in *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014).   The district court in that case excluded the bulk of the parties' expert testimony on damages; based on that ruling, the district court granted summary judgment that neither party was entitled to any damages.  *Apple*, 757 F.3d at 1326.  The Federal Circuit reversed, explaining that "[i]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record." *Id.* at 1327.  The circuit court stated that a district court "may only award a zero royalty for infringement if there is no genuine issue of material fact that zero is the only reasonable royalty." *Id.* at 1328.  Such a factual issue can be presented, the court added, even if the patentee "fails to show that its royalty estimate is correct." *Id.*; *see also Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371–72 (Fed. Cir. 2015).

Numerous district courts have similarly recognized that even in the absence of expert testimony on the issue of damages the court may not award zero damages unless there is no genuine factual dispute that zero is the only reasonable royalty. *See, e.g.*, *Microsource, LLC v. Eco World Grp., LLC*, 587 F. Supp. 3d 770, 829 (N.D. Iowa 2022); *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 978731, at *5–7 (C.D. Cal. Feb. 28, 2020); *Banhazl v. Am. Ceramic Soc'y*, 602 F. Supp. 3d 198, 229 n.8 (D. Mass. 2022); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 598 (D. Mass. 2018); *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. 2:16-cv-4502, 2018 WL 6038277, at *21 (C.D. Cal. Apr. 24, 2018); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2020 WL 1933979, at *3–5 (D.N.J. Apr. 22, 2020); *Thorne Rsch., Inc. v. Xymogen*, No. 2:13-cv-784, 2018 WL 1136079, at *2–4 (D. Utah Feb. 28, 2018); *Acceleron, LLC v. Dell Inc.*, No. 1:12-cv-4123, 2022 WL 1087683, at *9 (N.D. Ga. Mar. 7, 2022); *RSA Protective Techs., LLC v. Delta Sci. Corp.*, No. 19-6024, 2021 WL 4978462, at *5–6 (C.D. Cal. Oct. 20, 2021).

I am not prepared to conclude in this case that it is clear as a factual matter that Acceleration is entitled to no damages. Although Judge Andrews excluded Mr. Parr's reasonable royalty opinions based on the Boeing/Panthesis license because Mr. Parr did not conduct a proper apportionment analysis, the existence of the Boeing/Panthesis license is strong evidence that a reasonable royalty for infringement of the asserted patents is some amount greater than zero. And Activision has not provided any evidence in support of the proposition that a reasonable royalty for the asserted patents would be zero.[3] *See Microsource*, 587 F. Supp. 3d at 829 ("The moving party itself must provide evidence and argument to support a zero royalty.").

---

[3] In its most recent submission on the damages issue, Activision mentions the existence of another license to the asserted patents, "a 2006 arms-length license agreement to the asserted patents between Boeing and Sony." Dkt. No. 758 at 13 n.2. The existence of that agreement

To be sure, the Federal Circuit has explained that a patentee may waive its right to a reasonable royalty in certain circumstances. *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) (A patentee may waive the right to a reasonable royalty "when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory."); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (remanding for a determination of "whether [the plaintiff] has waived the right to establish reasonable royalty damages under a new theory"). The *Promega* and *Finjan* cases, however, are not analogous to this case.

In *Promega*, the patentee presented evidence at trial regarding the worldwide sales of the accused products, and the jury awarded damages based on the worldwide sales figures. *Promega*, 875 F.3d at 655–57. After the trial, the defendant moved for judgment as a matter of law. The court granted that motion, holding that no reasonable jury could have found "that all of the [worldwide] accused products infringed." *Id.* at 657. Because the patentee did not dispute the defendant's "separate argument that [the patentee] presented insufficient evidence to support a lesser damages award," the district court concluded that the patentee had "waived any argument that the evidence at trial could support a damages calculation based on any subset of total sales." *Id.* at 657–58. Thus, the patentee explicitly abandoned the theory that a lesser damages award could be supported by the evidence at trial. The Federal Circuit recognized that point and held that when a patentee, after having its damages theory challenged, "does not dispute that it failed to present an alternative case for damages, a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record." *Id.* at

---

provides further support for the proposition that Acceleration would be entitled to a reasonable royalty in an amount greater than zero.

666.  In this case, although Acceleration's damages theories have been excluded on multiple occasions, Acceleration has never conceded that it lacks an alternative case for damages, nor has it expressly waived any damages theory in response to a challenge from Activision.

In *Finjan*, neither the Federal Circuit nor the district court determined whether the patentee had waived its right to a reasonable royalty.  Rather, the court of appeals held that the evidence presented at trial was insufficient to support the jury's damages award.  *Finjan*, 879 F.3d at 1312. The court recognized that "the district court must award damages in an amount no less than a reasonable royalty . . . unless the patent holder has waived the right to damages based on alternate theories."  *Id.* (citing *Promega*, 875 F.3d at 666).  The court then remanded the case to the district court to determine whether such a waiver had occurred or whether to order a new trial on damages. *Id.*  The district court never had to make that determination, as the parties agreed to dismiss the case following the issuance of the Federal Circuit's opinion.  *See Finjan, Inc. v. Blue Coat Sys.*, No. 5:13-cv-3999, Dkt. No. 595 (N.D. Cal. Mar. 5, 2018).

In view of the unique circumstances present in the *Promega* case and the absence of an actual waiver determination in *Finjan*, I am not persuaded that Acceleration's failure to introduce admissible expert testimony on the issue of damages is sufficient to effect a waiver of Acceleration's right to a reasonable royalty.  A more appropriate conclusion, in view of Judge Andrews' prior orders, is that Acceleration has waived the right to present an expert opinion regarding the reasonable royalty to be awarded in this case.  Judge Andrews' most recent order on this issue strongly suggests that the "final opportunity" provided to Acceleration to present a damages case was meant to provide Acceleration a final opportunity to present an admissible expert opinion regarding a reasonable royalty.  *See* Dkt. No. 619 at 2; Dkt. No. 692 at 7 ("As this was Plaintiff's final opportunity to present a damages case, Plaintiff will not have an opportunity

10

to submit revised expert reports . . . .").  As noted, however, the absence of an expert opinion regarding a reasonable royalty amount is not itself a sufficient basis to award no damages in the event of a finding of infringement.

The remaining question is what evidence Acceleration will be permitted to introduce at trial regarding damages.  Acceleration has indicated that it intends to present the following evidence on the issue of damages:

- Factual testimony from Fred Holt, the inventor and founder of Panthesis, regarding the negotiation of the Boeing/Panthesis license, Dkt. No. 756 at 2;

- Testimony from Acceleration's experts, including "technical opinions regarding the benefits of the patented technology to the accused products" and "a tutorial on the technology at issue and the problems it addresses," *id.* at 3;

- Factual testimony from the inventors about "how they intended to use the technology under the Boeing/Panthesis license," *id.*;

- Testimony from Mr. Parr regarding "the key terms and economic comparability of the Boeing/Panthesis license, including his general application of the *Georgia-Pacific* factors, and both qualitative and quantitative assessments of the extent of the use of the infringing technology by the accused products," *id.* at 4; and

- Documents and testimony from Activision's witnesses "regarding the extent of use and importance of the infringing multiplayer functionality, including Activision's survey evidence," *id.*

Activision opposes Acceleration's proposal to rely on those items of evidence on two grounds.  First, Activision argues that the evidence on which Acceleration seeks to rely is not

legally sufficient to support a reasonable royalty award.  Second, Activision argues that Acceleration's proposal fails to comply with the prior orders of the court.

### 1.   Apportionment

With respect to Activision's first point, I agree that the jury's damages award must satisfy the typical requirements for apportionment that have been set forth by the Federal Circuit.  That court has made clear that the reasonable royalty award in each case must be carefully tied "to the claimed invention's footprint in the market place."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  That is, when the accused product is a multi-component product, the patentee "must apportion or separate the damages between the patented improvement and the conventional components of the multi[-]component product."  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1338 (Fed. Cir. 2018).  In the context of this case, those rules mean that the reasonable royalty awarded to Acceleration, if infringement is found, must compensate Acceleration for only the value that the patented invention adds to the accused video games, and not any other features associated with those games.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

Acceleration Bay asserts that its factual evidence will satisfy the legal requirements for apportionment because the Boeing/Panthesis license contains "built-in apportionment."  Dkt. No. 756 at 2.  To the contrary, I conclude as a matter of law that the Boeing/Panthesis license does not provide built-in apportionment.  In order for a license to provide built-in apportionment, it must be "highly comparable . . . such that principles of apportionment are effectively baked into the license."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2022 WL 2800861, at *23 (D.

Del. June 15, 2022) (cleaned up).  That is, the license must "plainly reflect[] the value that the contracting parties settled on for the patent*."  Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022).

Although it is true that the Boeing/Panthesis agreement contained a license to the asserted patents in this case, it differed from the license that would result from a hypothetical negotiation between Boeing and Activision in several respects.  First, the Boeing/Panthesis license also contained licenses to other forms of intellectual property, including copyrights, trade secrets, and trademarks.  *See* Dkt. No. 756-1 at 6–7.  Second, the Boeing/Panthesis license was broader than the license that would be the subject of the hypothetical negotiation in this case because, as Acceleration acknowledged, it was an exclusive license, and it included the right to sublicense.[4]  Dkt. No. 641 at 10.  Finally, the Boeing/Panthesis license contained significant consideration beyond the 12 percent royalty rate; it also required Panthesis to pay a flat $5.6 million fee to Boeing and to grant 5% of Panthesis' stock to Boeing.  Dkt. No. 756-1 at 16–17.  Thus, it is evident that the 12 percent royalty rate does not "plainly reflect[]" the value that Boeing and Panthesis placed on a non-exclusive license to the asserted patents in particular.  *See Pavo Sols.*, 35 F.4th at 1380.

That conclusion is reinforced by the fact that Acceleration's current proposed damages theory would result in a higher damages award than Mr. Parr's revenue-based approach that was described in Acceleration's February 2019 proffer and ultimately excluded by the court.  In fact, the two theories are essentially the same, except that the current proposed theory does not apply the 57 percent apportionment rate that Mr. Parr derived from Activision's consumer surveys.  Mr. Parr's decision to further apportion the 12 percent royalty rate applied to the total revenues from

---

[4]  Mr. Parr acknowledged that the exclusive nature of the Boeing/Panthesis license distinguished it from the non-exclusive license that would have been the product of the hypothetical negotiation in this case.  Dkt. No. 642-1, Exh. A ¶¶ 110–11.

the accused games indicates that Mr. Parr (and Acceleration) believed that the Boeing/Panthesis license required further apportionment.  If Mr. Parr and Acceleration had believed that the Boeing/Panthesis license provided built-in apportionment, presumably they would have offered that theory instead of a theory that resulted in a damages award that was 43 percent lower than Acceleration's current proposal.

For those reasons, I conclude that the Boeing/Panthesis license does not contain built-in apportionment.  Thus, any damages award that reflects the 12 percent royalty rate from that license without any additional apportionment is highly unlikely to be supported by the record evidence.

Because the Boeing/Panthesis license does not contain built-in apportionment, it is difficult to predict exactly what level of apportionment might be established by the evidence that Acceleration seeks to introduce at trial.  However, that lack of clarity is insufficient to justify an award of no damages at this stage of the case, as the evidence strongly suggests that Acceleration would be entitled to some non-zero amount of damages in the event of an infringement finding.  It is true that the jury may not ultimately arrive at an award that is supported by the record, but it is "entirely speculative" to reach that conclusion before the trial has even begun and to foreclose Acceleration from even attempting to present a persuasive damages case.  *See Vaporstream*, 2020 WL 978731, at *7.  In the event that an award of damages by the jury is not supported by the record evidence, the court can resolve that issue after the close of the evidence or after the verdict, if necessary.  And if the court concludes that Acceleration has failed to present a legally sufficient damages case, it will be entitled, at least, to nominal damages.  *See AOS Holding Co. v. Bradford White Corp.*, No. 18-412, 2021 WL 5411103, at *38 (D. Del. Mar. 31, 2021), *aff'd sub nom. A.O. Smith Corp. v. Bradford White Corp.*, No. 2021-2022, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022).

## 2.    Prior Orders of the Court

With respect to Activision's second point, it is true that Judge Andrews required Acceleration to submit a "fulsome explanation" of the evidence on which it would seek to rely. Dkt. No. 619 at 2.  However, Acceleration's submission in response to that directive did mention, at least in general terms, the factual evidence on which it now seeks to rely.  *See* Dkt. No. 641 at 23–26.  To clarify the precise nature of the evidence that Acceleration will introduce, I discussed this issue during a teleconference with the parties.

As for Mr. Parr's testimony, Acceleration is correct that Judge Andrews did not exclude his testimony in its entirety.  For example, Judge Andrews did not exclude Mr. Parr's testimony on the ground that the Boeing/Panthesis license was not at least minimally comparable to the hypothetical negotiation in this case.  Dkt. No. 692 at 11–13.  And there is no indication that Judge Andrews excluded other aspects of Mr. Parr's testimony, such as his general framing of the hypothetical negotiation and the *Georgia-Pacific* factors.  To the extent Mr. Parr seeks to offer testimony that is within the scope of his report and has not been excluded, he will be permitted to do so.  *See Vaporstream*, 2020 WL 978731, at *5 (excluding the royalty rate opinion and "final reasonable royalty calculation" of the plaintiff's expert but explaining that "[b]ecause the Court did not exclude all of [the expert's] opinions, [the plaintiff] may present a damages case at trial containing [the expert's] remaining opinions, such as his analysis of the *Georgia-Pacific* factors and his analysis of the apportioned reasonable royalty base").  Regarding the other expert testimony that Acceleration seeks to introduce, those experts will of course not be permitted to offer testimony that is outside the scope of their respective reports.

To be clear, Acceleration will not be permitted to rely on damages theories that have already been excluded by the court.  For example, Acceleration will not be permitted to rely on

Activision's consumer survey evidence, which Judge Andrews held was not sufficient to demonstrate apportionment.  Dkt. No. 692 at 8–9.  Nor will Acceleration's counsel be permitted to argue that the jury should adopt a reasonable royalty based on the putative built-in apportionment of the Boeing/Panthesis license.

### B.    Additional Discovery

Acceleration has argued in its recent submissions to the court that additional discovery is required with respect to two issues.  First, Acceleration argues that it is entitled to additional expert discovery regarding a recent litigation settlement agreement between Acceleration and [REDACTED] that covers the asserted patents.  Dkt. No. 753 at 5–6.  Second, Acceleration argues that it is entitled to additional expert discovery regarding Activision's recent acquisition by Microsoft, which occurred after the parties served their expert reports in this case.  *Id.*

As a general matter, the Federal Rules of Civil Procedure make clear that discovery is limited to matters that are "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Given that discovery has long since closed in this case, I am particularly mindful of whether "the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  I find that neither of Acceleration's requests is proportional to the needs of the case; there will therefore be no additional discovery on those issues.

With regard to the Acceleration/[REDACTED] agreement, litigation settlement agreements generally "lack the probative value of licenses entered outside the framework of litigation," particularly when the agreement is "entered long after the date of the hypothetical negotiation."  *IOENGINE*, 2022 WL 2800861, at *27.  Here, the Acceleration/[REDACTED] agreement was executed in April 2020, more than seven years after the hypothetical negotiation in this case would have taken place.  Dkt. No. 756-1 at 152.  And the license itself is unlikely to be

16

particularly helpful to the jury, given that it also contains a cross-license to [REDACTED] patent portfolio.[5]  *Id.* at 139.  Beyond that, Judge Andrews made clear that no additional expert reports would be permitted on the issue of damages.  Dkt. No. 692 at 7.  Under these circumstances, I do not find that the likely benefit of additional discovery regarding the Acceleration/[REDACTED] agreement outweighs the significant burden of re-opening discovery at this late stage of the case.

With regard to Activision's acquisition by Microsoft, Acceleration has not articulated a persuasive basis to conclude that information about that acquisition is relevant.  Acceleration has suggested that "a significant portion of the value attributed to Activision is tied to the accused products," but it has not explained how that fact would impact the reasonable royalty analysis in the case, particularly in the absence of an expert opinion on the reasonable royalty to be awarded.  *See* Dkt. No. 756 at 5–6.  Thus, as in the case of the Acceleration/[REDACTED] agreement, the probative value of discovery regarding the acquisition does not outweigh the burden of re-opening discovery in this case.  *See Qualcomm Inc. v. Broadcom Corp.*, No. 05-1662, 2007 WL 9776716, at *3–4 (S.D. Cal. Jan. 13, 2007) (declining to allow discovery on a corporate acquisition made by the alleged infringer due to a lack of relevance).

### III.  <u>Conclusion</u>

In summary, Activision's request to dismiss the case for lack of admissible proof of damages is DENIED.  Acceleration's requests for additional discovery are also DENIED.  During the teleconference I discussed scheduling issues with the parties.  The week beginning October 30,

---

[5]  Acceleration stated in the Acceleration/[REDACTED] agreement that it valued the cross-license from [REDACTED], Dkt. No. 756-1 at 137, which presumably represents a large portion of the value that Acceleration intends to attribute to the asserted patents through that agreement.  However, self-serving statements in a settlement agreement about what the settlement's value is cannot "be the basis of a reliable calculation."  *Brandeis Univ. v. Keebler Co.*, No. 1:12-cv-01508, 2013 WL 5911233, at *8 (N.D. Ill. Jan. 18, 2013).

2023, was tentatively set for the five-day trial in this case, subject to the parties' determination that their witnesses are available during that period.  By no later than March 29, 2023, the parties should notify the court by letter whether that week will be suitable for the trial in this case.  If the week of October 30 is not suitable, the parties should confer and propose at least three alternative trial dates in their letter.

In an abundance of caution, this order has been filed under seal because many of the parties' submissions regarding issues discussed in this order were filed under seal.  Within three business days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED.

SIGNED this 22nd day of March, 2023.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

**EXHIBIT G**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SCALE BIOSCIENCES, INC. and ROCHE
SEQUENCING SOLUTIONS, INC.,

*Plaintiffs*,

v.

PARSE BIOSCIENCES, INC.,

*Defendant*,

Civil Action No. 1:22-cv-01597-CJB



PARSE BIOSCIENCES, INC. and
UNIVERSITY OF WASHINGTON,

*Counterclaim-Plaintiffs*,

v.

SCALE BIOSCIENCES, INC.,

*Counterclaim-Defendant.*

### DECLARATION OF ALEX ROSENBERG, PH.D. IN SUPPORT OF PARSE BIOSCIENCES, INC.'S RESPONSIVE LETTER BRIEF TO THE HONORABLE CHRISTOPHER J. BURKE REGARDING SCALEBIO DISCOVERY DISPUTE

I, Alex Rosenberg, Ph.D., declare as follows:

1.      I am the Head of Single Cell Genomics Business and co-founder of Parse

Biosciences, Inc. ("Parse"). I was the Chief Executive Officer of Parse from its founding until

December 2, 2025.

2.      I have personal knowledge of the facts contained in this Declaration and, if called

upon to do so, I could and would testify competently to the matters set forth herein.

3.      On October 19, 2025, Parse entered into an agreement ("Merger Agreement") to

merge with Qiagen North American Holdings, Inc. ("Qiagen").

1

4. ███████████████████████████████████████

████████████████████████████████████████████

█████████████████████

5.     As part of the due-diligence process, █████████████████████

██████████████████████████████.

6.     Additionally, the parties and their lawyers exchanged a vast number of emails during the negotiating process.

7. ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed in Seattle, Washington this 29th day of January, 2026.

_____
Alex Rosenberg, Ph.D.

## <u>CERTIFICATE OF SERVICE</u>

I, Karen L. Pascale, Esquire, hereby certify that on January 29, 2026, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record by electronic mail:

---

*Attorneys for Plaintiff and Counterclaim Defendant, Scale Biosciences, Inc., and Plaintiff, Roche Sequencing Solutions, Inc.:*

Frederick L. Cottrell III ................................................................. cottrell@rlf.com
Kelly E. Farnan ........................................................................... farnan@rlf.com
Sara M. Metzler.............................................................................metzler@rlf.com
Danielle I. Bell .................................................................................bell@rlf.com
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

*Attorneys for Plaintiff and Counterclaim Defendant, Scale Biosciences, Inc.:*

WOLF, GREENFIELD & SACKS, P.C.    **wgs-scalebiosciencesv.parse@wolfgreenfield.com**

Stephen S. Rabinowitz ....................................... srabinowitz@wolfgreenfield.com
605 Third Avenue
New York, NY 10158

Chelsea A. Loughran .............................................cloughran@wolfgreenfield.com
Stuart V. C. Duncan Smith ..............................sduncansmith@wolfgreenfield.com
Arden Bonzo .................................................... arden.bonzo@wolfgreenfield.com
600 Atlantic Avenue
Boston, MA 02210

TENSEGRITY LAW GROUP LLP        **Scale_Parse_Service@tensegritylawgroup.com**

Matthew D. Powers.............................. matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich..............................................paul.ehrlich@tensegritylawgroup.com
William P. Nelson ..................................william.nelson@tensegritylawgroup.com
Daniel M. Radke ........................................daniel.radke@tensegritylawgroup.com
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065

*(Continued . . . .)*

Azra M. Hadzimehmedovic ......................................azra@tensegritylawgroup.com
Aaron M. Nathan........................................aaron.nathan@tensegritylawgroup.com
Samantha A. Jameson ...................... samantha.jameson@tensegritylawgroup.com
Daniel Kazhdan ...................................... daniel.kazhdan@tensegritylawgroup.com
Danielle C. Pfifferling ...................... danielle.pfifferling@tensegritylawgroup.com
Nathaniel D. Cook...................................nathaniel.cook@tensegritylawgroup.com
John C. Pierce.................................................john.pierce@tensegritylawgroup.com
Richa Patel......................................................richa.patel@tensegritylawgroup.com
Sidhi Gosain ................................................. sidhi.gosain@tensegritylawgroup.com
1676 International Drive
Suite 910
McLean, VA 22102

*Attorneys for Plaintiff, Roche Sequencing Solutions, Inc.:*

**WILMERHALE**                                    **WHRSS-ScaleLit@wilmerhale.com**

Robert J. Gunther ............................................... Robert.Gunther@wilmerhale.com
Barish Ozdamar Ph.D........................................ Barish.Ozdamar@wilmerhale.com
Christopher R. Noyes ................................... Christopher.Noyes@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Madeleine C. Laupheimer ...................... Madeleine.Laupheimer@wilmerhale.com
Kate Saxton ...........................................................Kate.Saxton@wilmerhale.com
60 State Street
Boston, MA 02109

January 29, 2026                    **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
Anne Shea Gaza (#4093) [agaza@ycst.com]
Samantha G. Wilson (No. 5816) [swilson@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Parse Biosciences, Inc.*
*and University of Washington*