# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCALE BIOSCIENCES, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PARSE BIOSCIENCES, INC., <br><br> Defendant. <br><hr> PARSE BIOSCIENCES, INC. and UNIVERSITY OF WASHINGTON, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> SCALE BIOSCIENCES, INC., <br><br> Counterclaim-Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 22-1597-CJB |

## MEMORANDUM ORDER

The Court has reviewed Plaintiff Scale Biosciences, Inc.'s ("Scale") motion to exclude certain expert opinions of Dr. DeForest McDuff on reliability grounds regarding his apportionment of the value of the patents asserted by Scale ("Motion"), (D.I. 306), and the briefing related thereto, (D.I. 307 at 43-49; D.I. 359 at 43-48; D.I. 391 at 21-25), and has considered the relevant legal standards, (*see* D.I. 487). It hereby ORDERS that the Motion is GRANTED-IN-PART and DENIED-IN-PART in the manner and for the reasons that follow:

(1) To the extent that the Motion requests that Dr. McDuff's opinions be excluded as to his use of a "stacking provision" drawn from a particular Scale-related licensing agreement (hereafter, the "Agreement") in order to obtain an "effective"

royalty rate for the Agreement (i.e., by deducting a certain percentage relating to royalties owed to a third party from the otherwise applicable royalty percentage in the Agreement), (*see, e.g.*, D.I. 319, ex. 37 at ¶ 78), it is DENIED. Scale's objection to this aspect of Dr. McDuff's analysis is that Dr. McDuff was wrong to use the stacking provision this way, because when Scale and its counterparty entered into the Agreement, they did not know whether Scale would need to actually take any other intellectual property ("IP") licenses for the development of its products (and that this scenario differs from the state of affairs in the hypothetical negotiation at issue here between Scale and Parse). (D.I. 307 at 46; *see also* D.I. 391 at 21-22) But Dr. McDuff has a reasonable response to this—i.e., he cites to facts that informed his view that, even at the time of the Agreement, Scale *did* expect to pay other royalties to use IP other than that covered by the Agreement. (D.I. 362, ex. K at 174-77; *see also id.*, ex. E at 39-40; D.I. 359 at 44) Thus, the issue here is simply one where Scale and Dr. McDuff reasonably disagree about the import of certain facts, and that is no reason to strike an expert's opinion under *Daubert*.

(2) However, the Motion also requests that Dr. McDuff's opinions be excluded as to his use of the stacking provision as a benchmark for apportioning the value of the now-asserted IP that was licensed in the Agreement (i.e., the four licensed patents/applications that relate to the four asserted patents here, hereafter the "asserted IP") from the value of the remaining licensed IP in the Agreement (a very large number of other patents/applications, hereafter referred to as the "other licensed IP"). (*See, e.g.*, D.I. 319, ex. 36 at ¶¶ 83-84) In that regard, the Motion is GRANTED. The Court so concludes not just because Dr. McDuff and Parse cite to no case, article, study or other piece of literature wherein a stacking provision (i.e., a provision that is used to reduce a royalty obligation relative to third-party IP) was used to apportion the value of asserted licensed IP relative to the total licensed IP included in a particular licensing agreement. (D.I. 307 at 45, 48; D.I. 391 at 24) And it does so not only because in trying to explain how his use of the stacking provision in this way was reliable, Dr. McDuff appeared to make only conclusory and vague assertions. (D.I. 362, ex. K at 189-95 (Dr. McDuff saying only that he believes that using the stacking provision in this way is "economically analogous" or "economically comparable" to the way the provision is used to value licensed IP relative to third party IP, because both uses are "based on the importance

2

of the asserted patents relative to what's licensed in those agreements"); D.I. 307 at 47; D.I. 391 at 24-25)  The Court also does so because the stacking provision (and its relevant percentages, and the overall reason for its use) seems to have *absolutely nothing to do with* the actual characteristics of (and value of) the other licensed IP as compared to the actual characteristics of (and value of) the asserted IP in that particular agreement. (D.I. 362, ex. K at 355-56; D.I. 307 at 46-47; D.I. 391 at 21, 24)  Moreover, Parse's reliance on *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, C.A. No. 15-152-RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018), (D.I. 359 at 47-48), on this point was not encouraging. *Bio-Rad* may be a helpful citation in support of Parse's position as to the reliability of Dr. McDuff having used a stacking provision in the first instance in order to assess the effective royalty rate in the Agreement. *See Bio-Rad*, 2018 WL 4691047, at *4 (rejecting a *Daubert* motion as to an expert's reliance on a royalty stacking provision to reduce the royalty rate for a product subject to multiple royalty payments, where the opposing side attacked the expert's 50% stacking reduction as "arbitrary" and as an example of double-counting, and where the expert had "reasonable support" for his contrary analysis); (D.I. 359 at 48).  But *Bio-Rad*'s facts had nothing to do with an expert using a stacking provision as a tool to apportion the value of the asserted patents at issue from the total licensed IP in an agreement. (D.I. 391 at 23-24)  And so it is of no help to Parse here. *See, e.g.*, *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 596 (E.D. Va. 2013) (finding an expert's methodology unreliable, where he identified the weighted importance of a given feature within a product as determined by customer surveys to be 4.0%, and then used that same percentage as a proxy for the percentage of advertising revenue that is generated by that given feature—without sufficient explanation as to why the weighted importance of a feature to a user directly correlates to a certain percentage of the defendant's revenue); *see also Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, 225 F. Supp. 3d 1233, 1252 (D. Kan. 2016).

For all of these reasons, the Motion is GRANTED-IN-PART and DENIED-IN-PART.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order.  Any such redacted version

shall be submitted no later than **February 25, 2026** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  February 20, 2026

                                          _____
                                          Christopher J. Burke
                                          UNITED STATES MAGISTRATE JUDGE