**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SCALE BIOSCIENCES, INC. and )
ROCHE SEQUENCING SOLUTIONS, )
INC., )
        )
       Plaintiffs, )
        )
     v. )     Civil Action No. 22-1597-CJB
        )
PARSE BIOSCIENCES, INC., )    REDACTED VERSION
        )
       Defendant. )
_____ )
PARSE BIOSCIENCES, INC. and )
UNIVERSITY OF WASHINGTON, )
        )
       Counterclaim-Plaintiffs, )
        )
     v. )
        )
SCALE BIOSCIENCES, INC., )
        )
       Counterclaim-Defendant. )
        )

**MEMORANDUM ORDER**

The Court has reviewed Defendant Parse Biosciences, Inc.'s ("Parse") "Motion to Exclude Drew D. Mooney, CPA, ABV, CFF's Opinions Relying on the Roche License for Failure to Apportion" ("Motion"), (D.I. 311), and the briefing related thereto, (D.I. 325 at 36-42; D.I. 366 at 33-43; D.I. 395 at 19-22), and has considered the relevant legal standards relating to this *Daubert* motion, *see 360Heros, Inc. v. GoPro, Inc.*, 569 F. Supp. 3d 198, 201-02 (D. Del. 2021); *Pers. Audio, LLC v. Google LLC*, Civil Action No. 17-1751-CFC-CJB, 2021 WL 5038740, at *1-2 (D. Del. Oct. 25, 2021). It hereby ORDERS that the Motion is DENIED for the reasons that follow:

(1) With its Motion, Parse criticizes Mr. Mooney's reliance on a ███ royalty rate found in the July 15, 2020 license agreement (the "Roche Agreement") between Plaintiff Scale Biosciences, Inc. ("Scale") and Plaintiff Roche Sequencing Solutions, Inc. ("Roche")—a rate that Mr. Mooney uses as a starting point for his reasonable royalty analysis regarding the hypothetical negotiation relevant to Scale's infringement case. (D.I. 325 at 37; D.I. 319, ex. 36 at ¶ 43 & n. 138)

(2) As an initial matter, it is worth noting that even Parse's damages expert, Dr. DeForest McDuff, agrees that the Roche Agreement is "the most informative license to the hypothetical negotiation for" Scale's patents-in-suit ("the Asserted Scale Patents");[1] indeed, Dr. McDuff uses the Roche Agreement as a basis for his own opinion as to what is the appropriate royalty for the Asserted Scale Patents. (D.I. 366 at 33; D.I. 319, ex. 37 at ¶ 113; *see also id*. at ¶ 111)

(3) Parse's first argument is that because Mr. Mooney has not opined that any "*Scale* product *practices* the Asserted Scale Patents" this fact "guts his opinion that the Roche [Agreement] was related to the same product-types as the Parse products." (D.I. 325 at 39; *see also* D.I. 395 at 21) But the Court does not see (and Parse does not further explain) how there is any reasonable dispute in the record regarding this point. As Scale notes, (D.I. 366 at 36), Dr. McDuff himself agreed that the Roche Agreement is "informative because it includes Scale[] as a party to the agreement, licenses a portfolio of intellectual property that includes the Asserted Scale[] Patents, outlines payment in the form of a running royalty, and *relates to comparable products to the Accused Parse Products*." (D.I. 319, ex. 37 at ¶ 112 (emphasis added); *see also* D.I. 319, ex. 36 at ¶ 46))

(4) Parse's second argument is that Mr. Mooney's methodology is unreliable because he allocated the entire ███ royalty rate paid by Scale (via the Roche Agreement) to the value of the Asserted Scale Patents, despite the fact that in the Roche Agreement, Scale additionally obtained a license to ███ ███ (D.I. 325 at 37, 39; D.I. 395 at 19, 21) But Mr. Mooney provided some factual basis for doing so, i.e.,: (1) the testimony of and his conversations with Scale's CEO,

---

[1] The Asserted Scale Patents are patents owned by Roche, as to which Scale became an exclusive licensee via the Roche Agreement. (D.I. 319, ex. 36 at ¶ 43)

Giovanna Prout, who explained her understanding that at the time of the Roche Agreement negotiations, the Asserted Scale Patents were deemed ████████████████████████████ ███████████████████████████████████████████ and (2) Scale's infringement expert Dr. Peter Sims's testimony that the technology of the Asserted Scale Patents is in fact "foundational" to Parse's accused products ("the Accused Parse Products"). (D.I. 313, ex. 35 at ¶¶ 62, 130 & nn. 266-68; 146 & n. 304, 185-92; D.I. 329, ex. 24 at 186-87; D.I. 397, ex. 37 at 157; D.I. 366 at 36, 42)

(5) Parse asserts that Mr. Mooney cannot rely on his conversations with Ms. Prout or Ms. Prout's testimony because this content is "hearsay and non-expert testimony" that is "unsupported by any other evidence in the record." (D.I. 325 at 39)[2] But pursuant to Fed. R. Evid. 703 and otherwise, it is not necessarily improper for an expert to rely on conversations with a key employee of his client in formulating his opinion— particularly where the employee (as here) is expected to testify at trial about the underlying subject matter. *See, e.g.*, *10x Genomics, Inc. v. Parse Biosciences, Inc.*, Civil Action No. 22-1117, 2025 WL 572788, at *7 (D. Del. Feb. 21, 2025); *Allscripts Healthcare, LLC v. Andor Health, LLC*, CIVIL ACTION NO. 21-704-MAK, 2022 WL 17403121, at *2 (D. Del. Aug. 9, 2022); *Brit. Telecomms. PLC v. IAC/Interactivecorp, Match Grp.*, Inc., Civil Action No. 18-366-WCB, 2020 WL 13749385, at *6-7 (D. Del. July 15, 2020); *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 693-94 (D. Del. 2017), *aff'd sub nom. Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674

---

[2] The case Parse relies on in making this point, *Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*, Civil Action No. 21-339-RGA, 2025 WL 459916 (D. Del. Feb. 11, 2025), is distinguishable. There, the court excluded plaintiff's damages expert's testimony in part because he purportedly relied on conversations with plaintiff's "personnel that negotiated [certain] licenses" for the proposition that the "four asserted patents drove negotiations over the comparable licenses." *Fundamental*, 2025 WL 459916, at *12. But in *Fundamental*, the expert's statements on the issue were "conclusor[y,]" no declarations were offered from the personnel at issue, there was no indication that the personnel were to testify at trial about the subject matter of their statements, and the Court found that the plaintiff was simply using its expert as a mere "conduit[] for hearsay[.]" *Id*. Here, in contrast, Ms. Prout will testify at trial on the subject matter, Mr. Mooney has cited to other evidence of record to support his opinion in this regard, and there is no indication that Mr. Mooney (who has put forward a fulsome expert report) is being used as a mere "conduit" for anything.

3

(Fed. Cir. 2019); *see also P & P Imports LLC v. Johnson Enters., LLC*, Case No. 8:19-cv-00523-DOC-JDEX, 2024 WL 1136336, at *5 (C.D. Cal. Jan. 24, 2024); (D.I. 366 at 39-40; *id*. at 43-44 (citing, *e.g., Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346, 364 (Fed. Cl. 2024)).

(6)   As for Parse's suggestion that Mr. Mooney may not rely on Ms. Prout's testimony because Ms. Prout was not yet working at Scale at the time of the 2020 negotiations between Scale and Roche, (D.I. 329 at 39), the Court cannot now use that as a basis to grant the Motion. As Scale's CEO and the person in charge of overseeing all of Scale's operations, it stands to reason that Ms. Prout may have a strong understanding of facts relevant to important company matters—both matters that occurred after she came to the company and those occurring before her arrival. As such, it seems at least possible that Ms. Prout could have a non-hearsay basis to testify at least about how important the Scale Asserted Patents were to Scale at the time of the prior negotiations with a key partner like Roche (and how important they still are to Scale today). And even if Ms. Prout's contribution here amounts to hearsay, there are scenarios where experts like Mr. Mooney can rely on hearsay to form their opinions, pursuant to Rule 703. *See, e.g., Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS, 2017 WL 10765194, at *2 (D. Del. Aug. 1, 2017).

(7)   Parse also asserts that Mr. Mooney failed to properly account for the material differences between the Roche Agreement and the hypothetical negotiation—particularly the fact that pursuant to the agreement, Roche received ███████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████ (D.I. 325 at 37-38, 40-42 (citing *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021)) But Mr. Mooney attributed the value of ██████████████ (which, he explained, was not insignificant in comparison to the value of the █████ royalty rate) to the ███████████████ (D.I. 313, ex. 35 at ¶¶ 145 & n.304, 213-15; D.I. 328, ex. 16 at ¶¶ 88-91) And he provided some factual basis for doing so, i.e., that the Asserted Scale Patents assertedly were ███████████████████████████████████████ ███████████████████████ (D.I. 328, ex. 16 at ¶ 91; *see also id*. at ¶¶ 88-89 (Mr. Mooney noting that

certain aspects of Dr. McDuff's testimony further support Mr. Mooney's conclusions in this regard)); *see also RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, Civil Action No. 19-1515-RGA, 2022 WL 17084156, at *2 (D. Del. Nov. 18, 2022) (denying a *Daubert* motion premised in part on the assertion that a damages expert had not accounted for the fact that license agreements upon which he based his rates included other non-asserted patents, where the expert addressed the additional licensed patents and provided reasoning for why he did not think they impacted his overall calculation). The Court's job is not to assess whether that factual basis will be a winner in a jury's mind; it is simply to assess whether it provides a sufficiently reliable foundation for the expert's testimony. The Court is unsure about the former, but it has concluded that the latter threshold is met.

(8) The above, as well as Parse's other quibbles regarding the substance of Mr. Mooney's testimony on these matters, (*see, e.g.*, D.I. 325 at 40-41), are the stuff that cross-examination is for. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

For all of these reasons, the Motion is DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **October 24, 2025** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  October 17, 2025

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE