# ATTACHMENT



# ScaleBio's Motion for Reargument of Parse MSJ #1

*Scale Biosciences, Inc. et al. v. Parse Biosciences, Inc.*

Case No. 1:22-CV-01597-CJB | June 24, 2026

# 752 Patent Claim 1



1. A kit for split-pool barcoding target molecules that are in or on cells or cell organelles, comprising:

 (i) at least two sets of ==assayable polymer subunit (APS) oligonucleotides==, wherein each set comprises at least 10 APS oligonucleotides that each comprise:

 ==a 5′ end sequence that is common to the APS oligonucleotides== in the set,

 ==a 3′ end sequence that is common to the APS oligonucleotides== in the set, and

 ==an internal sequence that distinguishes the APS oligonucleotides== in the set from one another, and

 (ii) one or more linking oligonucleotides, wherein a linking oligonucleotide is ==complementary to the 5′ end sequence of the APS oligonucleotides of one set and the 3′ end sequence of the APS oligonucleotides of another set==,

 wherein the APS oligonucleotides from different sets are ==configured to link together in an ordered fashion== in the presence of the one or more linking oligonucleotides to form all or part of a cell or organelle origination barcode.

752 Patent at 57:50-58:3

SCALE biosciences    2

# 752 Patent Claim 5



5. The kit of claim 1, wherein the APS oligonucleotides of at least one of the sets of APS oligonucleotides comprise a unique binding agent (UBA).

752 Patent at 58:14-16

SCALE biosciences    3

# Nolan Quantum Barcoding Patents





752 Patent at cover, Fig. 2

# Nolan Quantum Barcoding Patents



**ESB**
Epitope Specific Barcode

**Single APS**
Assayable Polymer Subunit

**UBA**
Unique Binding Agent

**COB**
Cell Origination Barcode

752 Patent at cover, Fig. 2

# Nolan Quantum Barcoding Patents



752 Patent at cover, Fig. 2

# Nolan Quantum Barcoding Patents



**ESB**
Epitope Specific Barcode

**Single APS**
Assayable Polymer Subunit

**UBA**
Unique Binding Agent

**COB**
Cell Origination Barcode



UBAs are molecules or assemblies that are designed to bind with at least one target molecule, at least one target molecule surrogate, or both; and can, under appropriate conditions, form a molecular complex comprising the UBA and the target molecule. Examples of target molecules include, but are not limited to, proteins, nucleic acids, lipids, carbohydrates, ions, small molecules, organic monomers, and drugs. For convenience only, most of the embodiments

752 Patent at cover, Fig. 2, 17:24-31

SCALE biosciences    7

# Nolan Quantum Barcoding Patents



**ESB**
Epitope Specific Barcode

**Single APS**
Assayable Polymer Subunit

**UBA**
Unique Binding Agent

**COB**
Cell Origination Barcode



specific barcode (ESB). Each ESB comprises a unique code that can be associated to a specific target molecule. ESBs are molecules or assemblies that are designed to bind with at least one UBA or part of an UBA; and can, under appropriate conditions, form a molecular complex comprising the ESB, the UBA and the target molecule.

752 Patent at cover, Fig. 2, 20:36-41

# Nolan Quantum Barcoding Patents



**ESB**
Epitope Specific Barcode

**Single APS**
Assayable Polymer Subunit

**UBA**
Unique Binding Agent

**COB**
Cell Origination Barcode



In some embodiments, the COB is composed of one or more assayable polymer subunit (APS). Certain aspects of the present invention relate to the selection of a library or population of designed (e.g., synthetic sequences) APS. In some embodiments, the present invention provides a population of designed (e.g. synthetic) APS wherein said APS comprises an unique sequence and/or a detectable molecule, and wherein the combination of one or more different APS in each COB has a detectable signal or sequence that distinguishes it from other COBs in said population. In some

752 Patent at cover, Fig. 2, 17:1-10

# UBAs/ESBs/COBs



**UBA**
binds target



**ESB**
identifies target



**COB**
identifies cell

In some embodiments, the invention provides unique binding agents (UBA) for the analysis of target molecules. In some embodiments, the invention provides an UBA population for use in a multiplexed assay. Each UBA in the population is specific for a target molecule. Thus, the UBA provides the specificity for the target molecule recognized in a cell. The binding of the target molecules to the UBAs is then detected using epitope specific barcodes (ESB) and cell origination barcodes (COB). Each ESB comprises a unique code that can be associated to a specific target molecule. Each COB comprises a unique code that can be associated to a specific cell of origin.

752 Patent at 16:47-58

# APS Oligonucleotide Structure (Figure 4)

- Common 3' and 5' ends, configured to link to other APSs, internal distinguishing sequence



later addition of cell specific tagging information. FIG. **4** is Step 2 shows the start of the split pool synthesis. In this example, the cell population is split into 20 tubes. Cell populations can be split into wells, bead or any suitable surfaces known in the art. In Step 3 an APS unit is added to each tube. The APS binds the UBA/ESB complex via the complementary CLs in the APS and the ESB. In Step 4, each

752 Patent at Fig. 4, 36:24-30

11

## Court Rules All UBAs Within the Claim Must Be Described and Enabled

patent, col. 58:14-16)  And above, the Court has concluded that claim 5's language means that that UBAs—and more specifically here, functional antibodies, aptamers, etc.—fall within the scope of the "APS oligonucleotides" described in claim 1.  From there, *Alcon Rsch.* shows us that the '752 patent needs to disclose and teach a POSITA how to make and use such UBAs, in order to describe and enable the full scope of claim 1.  (Tr. at 99, 133); *McRO, Inc.*, 959 F.3d at 1100 ("Once the precise scope of the claimed invention is defined, the question is whether undue experimentation is required to make and use the full scope of embodiments of the invention claimed."); *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1074 (7th Cir. 2019) (citing *Alcon Rsch.* and explaining that if a limitation in a dependent claim is not enabled, since this limitation necessarily would have fallen within the scope of the independent claim from which it depends, that means that the full scope of the independent claim is not enabled and that both claims are invalid).[11]

D.I. 466 (Mem. Op.) at 20

## Court Rules All UBAs Within the Claim Must Be Described and Enabled

a potential written description or enablement challenge: "[F]or a multi-element invention, a claim to an invention comprising A, B, and C will include within its scope an embodiment which is A, B, C, and D . . . [b]ut in order to [describe or] enable the claim to A, B, and C, you do not need to describe [or enable] that optional feature." (Tr. at 131; *see also id.* at 132) The Court certainly agrees with Plaintiff that this is the law. But in such a scenario, a party *would* need to describe and enable the invention as to the full scope of what *is* claimed—i.e., to the apparatus comprising A, B, and C. (Tr. at 110) And here, in light of the Court's claim construction analysis above, the UBA referenced in claim 5 is not something that was absent from claim 1 and was only separately added by the dependent claim. Instead, a UBA is a *part of* what *is encompassed* within the scope of the actual elements listed in claim 1 (i.e., a part of the "A, B, and C" of claim 1). And so the patent must describe and enable a kit that contains a set of APS oligonucleotides that include a UBA. (D.I. 395 at 1; Tr. at 148)

D.I. 466 (Mem. Op.) at 25

cols. 17:23-20:33, 58:16) In all, *In re Entresto* is not contrary to the Court's conclusion that UBAs are encompassed within the full scope of claim 1 in the '752 patent and must be described and enabled by the patent.[14]

D.I. 466 (Mem. Op.) at 27

# Court Rules Antibody and Aptamer UBAs Are Not Described or Enabled

Now that it has been established that the '752 patent's specification must describe and enable UBAs for claim 1 to be valid, the remainder of the invalidity analysis can be summarized as follows:

(1) UBAs include, *inter alia*, antibodies and aptamers designed to bind to at least one target molecule. ('752 patent, cols. 4:24-26, 5:48-50, 7:33-35, 9:49-52, 11:46-48, 17:24-34, 18:5-65; 19:25-20:14; D.I. 118);

(2) Therefore, antibodies and aptamers that are capable of performing the requisite functionality must be described and enabled. (D.I. 395 at 1; *see* D.I. 366 at 9);

(3) Defendant has provided ample evidence to support its argument that the asserted claims cover a vast number of antibodies and aptamers for targeting a vast number of target molecules, but that the patent's disclosure does not indicate how to determine or predict the full scope of which antibodies and aptamers will bind to which targets. ('752 patent, cols. 18:5-19:24, 19:28-35, 19:45-49; D.I. 328, ex. 11 at ¶¶ 88, 195; *id.*, ex. 13 at ¶ 339; D.I. 329, ex. 18 at ¶¶ 48-49, 118, 129-30; *id.*, ex. 19 at ¶¶ 68-71, 102, 124, 148-56;

D.I. 466 (Mem. Op.) at 27

# Court Rules Antibody and Aptamer UBAs Are Not Described or Enabled

*id.* ex. 22 at 40-45, 47-48, 61, 67, 80-81, 84-86, 113-14, 122, 129, 134-36, 138-39, 145-48, 154; *id.*, ex. 25 at 137-38); and

(4) Plaintiff's sole evidence for enablement of the '752 patent are declarations of its expert, Dr. Peter Sims, which do not address enablement or description of UBAs, including antibodies or aptamers. (D.I. 383 at ¶¶ 33-35; *id.*, ex. B at ¶¶ 263-90, 481-537; *see also* D.I. 366 at 9 (Plaintiff noting that its "evidence shows that the specification describes and enables the invention *defined by* the [claims at issue]") (emphasis added); Tr. at 97 (Defendant's counsel explaining that Plaintiff had not challenged Defendant's evidentiary basis for asserting invalidity here, and instead that Plaintiff's challenge was purely a legal one (i.e., as to whether UBAs are claimed in claim 1 and must be fully described and enabled)); D.I. 395 at 1, 4 (Defendant making the same point in its briefing))

As a result, there is no genuine dispute of material fact that the full scope of claim 1 is not sufficiently described or enabled. *See Amgen*, 598 U.S. at 613-15; *Baxalta Inc.*, 81 F.4th at 1366-67. And there is no question that the remaining asserted claims of the patent rise and fall

D.I. 466 (Mem. Op.) at 28

15

## Reargument Is Required

- *Teva Pharms. v. Eli Lilly* decision in April 2026 (and its elevation of *Fuetterer*) established that genus element claimed as part of a different invention need not be described and enabled under traditional genus test

- Court's new claim construction of 752 Patent, if sustained, confines UBAs to the structure of APS oligonucleotides and creates new issue of fact for trial

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties

**Teva's claim**

17. A method for reducing incidence of or treating headache in a human, comprising administering to the human an effective amount of an anti-CGRP antagonist antibody, wherein said anti-CGRP antagonist antibody is a human monoclonal antibody or a humanized monoclonal antibody.

30. The method of claim 17, wherein said anti-CGRP antagonist antibody is a humanized monoclonal antibody.

*Teva's* US Patent No. 8,586,045

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

In sum, a reasonable jury could only have found that (1) the Patents-in-Suit claimed a ==new genus== of antibodies for a functional purpose, (2) G1 was ==the only covered species== of the genus identified in the Patents-in-Suit, (3) the number of additional candidate antibodies (e.g., the genus size) was ==unknowable==, (4) there is a ==very large number of potential candidate antibodies== that would have to be identified and tested to determine whether they could inhibit CGRP, (5) the inventors of the Patents-in-Suit at the very least ==did not possess species that bound to all three epitopes== of CGRP, and (6) the ==accused antibody gmab was different== from G1 in multiple respects.

*Teva Pharms. Int'l v. Eli Lilly & Co.*, No. 18-cv-12029-ADB, 2023 WL 6282898, at *19 (D. Mass. Sept. 26, 2023), *rev'd*, 172 F.4th 1367

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

"A method for reducing incidence of or treating headache in a human, comprising administering to the human an effective amount of an anti-CGRP antagonist antibody, wherein said anti-CGRP antagonist antibody is a ... humanized monoclonal antibody."

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 172 F.4th 1367, 1372 (Fed. Cir. 2026) (quoting Teva's claim)

"[The] claim pertains to a well-known genus that is not, itself, the invention."

*Id.* at 1374

## Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva (summarizing Fuetterer plurality)*

"In *Fuetterer*, the claim was to a composition for tire-tread stock, one component of which was 'an inorganic salt that is capable of holding a mixture ... in colloidal suspension in water.' 319 F.2d at 260–61."

*Teva*, 172 F.4th at 1375 (quoting In re Fuetterer, 319 F.2d 259 (C.C.P.A. 1963) (Plurality Op.))

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties

**Fuetterer's claim**

"**38.** A rubber stock for producing tire treads including as the base portion a major proportion of rubber, a sufficient amount of a vulcanizing agent to vulcanize the rubber, and a reinforcing agent in an amount sufficient to provide a tread stock having high abrasive resistance, said rubber stock also including in addition to the base portion a mixture of a nonadhesive protein and a carbohydrate which mixture is substantially insoluble in cold water and which is homogenously [sic] distributed throughout the base portion of the rubber stock, said mixture of carbohydrate and protein being approximately of a particle size that is fine enough to pass through a 300 mesh screen and being present in an effective amount ranging from more than incidental impurities up to 20% by weight of the base portion of the rubber stock, and an inorganic salt that is capable of holding a mixture of said carbohydrate and protein in colloidal suspension in water, said inorganic salt being in a sufficiently finely divided state to form a homogeneous [sic] mixture with the base portion of the rubber stock and being homogenously [sic] distributed throughout the base portion of the rubber stock and being present in an effective amount ranging from more than incidental impurities up to 20% by weight of the base portion of the rubber stock and in an amount sufficient to hold the mixture of carbohydrate and protein in colloidal suspension in a film of water which forms around a tire tread composed of the stock when the tread rotatably engages a wet or icy road or pavement and small particles of the base portion of the rubber stock and small particles of the carbohydrate, protein, and the inorganic salt are worn from the tread."

*Fuetterer*, 319 F.2d at 260

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva (summarizing Fuetterer plurality)*

"The specification disclosed only four such salts. [*Fuetterer*, 319 F.2d] at 265. The Patent and Trademark Office had rejected the claim under § 112 ¶ 1, 'believing that not all inorganic salts are capable of performing' the specified function and that 'one skilled in the art would not know offhand which inorganic salts are capable of so functioning.' *Id.*"

*Teva*, 172 F.4th at 1375 (quoting Fuetterer, 319 F.2d at 265)

# Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva (summarizing Fuetterer plurality)*

"Appellant's invention is the combination claimed and not the discovery that certain inorganic salts have colloid suspending properties. We see nothing in patent law which requires appellant to discover which of all those salts have such properties and which will function properly in his combination. The invention description clearly indicates that any inorganic salt which has such properties is usable in his combination. If others in the future discover what inorganic salts additional to those enumerated do have such properties, it is clear appellant will have no control over them per se, and equally clear his claims should not be so restricted that they can be avoided merely by using some inorganic salt not named by appellant in his disclosure.

\* \* \*

[Fuetterer] 'has not invented, and is not claiming, colloid suspending agents.'"

Teva, 172 F.4th at 1376 (quoting Fuetterer, 319 F.2d at 265, 266)

## Written Description: For Combination Claims, the Inventor Does Not Need to Discover Which Underlying Elements Have the Necessary Properties



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

"The circumstances here fit well within this line of precedent. The headache patents make clear that their claimed invention is the use of anti-CGRP antagonist antibodies, or humanized versions thereof, *to treat headache*—not such antibodies themselves."

*Teva*, 172 F.4th at 1376

"The jury therefore could have reasonably found that the specification disclosed a representative number of species of humanized anti-CGRP antagonist antibodies for purposes of the claimed invention, thus rendering JMOL of no written description improper."

*Id.* at 1377

# Written Description: Nolan's Claimed Invention Is the Combination of an APs and Linking Oligonucleotides for Forming Cell Barcodes



1. A kit for split-pool barcoding target molecules that are in or on cells or cell organelles, comprising:

(i) at least two sets of assayable polymer subunit (APS) oligonucleotides, wherein each set comprises at least 10 APS oligonucleotides that each comprise:

a 5′ end sequence that is common to the APS oligonucleotides in the set,

a 3′ end sequence that is common to the APS oligonucleotides in the set, and

an internal sequence that distinguishes the APS oligonucleotides in the set from one another, and

(ii) one or more linking oligonucleotides, wherein a linking oligonucleotide is complementary to the 5′ end sequence of the APS oligonucleotides of one set and the 3′ end sequence of the APS oligonucleotides of another set,

wherein the APS oligonucleotides from different sets are configured to link together in an ordered fashion in the presence of the one or more linking oligonucleotides to form all or part of a cell or organelle origination barcode.

752 Patent at 57:50-58:3

# Written Description: Nolan Did Not Claim to Have Invented New UBAs

In some embodiments, <mark>the UBA is an antibody</mark>.

\* \* \*

The skilled artisan will appreciate that <mark>antibody can be obtained from a variety of sources</mark>, including but not limited to polyclonal antibody, monoclonal antibody, monospecific antibody, recombinantly expressed antibody, humanized antibody, plantibodies, and the like; and can be obtained from a variety of animal species, including rabbit, mouse, goat, rat, human, horse, bovine, guinea pig, chicken, sheep, donkey, human, and the like. <mark>A wide variety of antibodies are commercially available and custom-made antibodies can be obtained from a number of contract labs</mark>.

\* \* \*

[A] vast number of commercially available antibodies, including labeled or unlabeled; polyclonal, monoclonal, and monospecific antibodies, as well as immunoreactive components thereof; custom antibody suppliers and the like <mark>can be found on the World Wide Web</mark> at, among other places, the Antibody Search page at biocompare.com, the Antibody Resource Page at antibodyresource.com, and the Antibody Explorer page at sigmaaldrich.com.

752 Patent at 18:5, 27-36, 57-65

# Written Description: Nolan Did Not Claim to Have Invented New UBAs

In some embodiments, the UBA is an aptamer.

\* \* \*

Nucleic acid aptamers, including speigelmers, are identified by an in vitro
selection process known as systematic evolution of ligands by exponential amplification (SELEX).

\* \* \*

The skilled artisan will understand that nucleic acid aptamers and peptide aptamers can be obtained following conventional procedures and without undue experimentation. Detailed descriptions of aptamers, including relevant protocols, can be found in, among other places, L. Gold, J. Biol. Chem., 270(23):13581 84 (1995); S. Jayasena, Clin. Chem., 45:1628-50 (1999); V. Sieber et al., Nat Biotechnol. 16 (10):955-60 (1998); D. Wilson and J. Szostak, Ann. Rev. Biochem. 68:611-47 (1999); L. Jermutus et al., Eur. Biophys. J., 31:179-84 (2002); S S. Spada et al., Biol. Chem., 378:445-56 (1997); B. Wlotzka et al., Proc. Natl. Acad. Sci., 99:8898-8902 (2002).

752 Patent at 19:25, 42-44, 55-67

SCALE biosciences    27

# Enablement: There Is a Difference Between Claiming a Genus and Claiming the Use of a Genus



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

"Enablement and written description 'often rise and fall together.' *Ariad*, 598 F.3d at 1352. So it is here.

\* \* \*

Lilly's no-enablement argument concerns the ==purported breadth== associated with the genus of humanized anti-CGRP antagonist antibodies.

\* \* \*

First, ==we will assume that a reasonable jury could have only found that making all anti-CGRP antagonist antibodies would have required screening and testing a very large number of candidate antibodies to determine which ones do, in fact, antagonize CGRP.== Second, ==we will assume that==, even if a reasonable jury could have found that such making, screening, and testing would have been routine in this field as of the priority date, … ==the amount of time and expense required to make (and humanize) all anti-CGRP antagonist antibodies would have constituted undue experimentation==[.]"

*Teva*, 172 F.4th at 1380-81

# Enablement: There Is a Difference Between Claiming a Genus and Claiming the Use of a Genus



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

"With these assumptions in mind, we note that ==Lilly's argument might be more persuasive if the asserted claims were to the genus of humanized anti-CGRP antagonist antibodies themselves. If that were so, this case would resemble *Amgen*==.

\* \* \*

We later applied a similar analysis and reached a similar conclusion in ==Baxalta==, which involved facts 'materially indistinguishable from those in *Amgen*.'"

*Teva*, 172 F.4th at 1380-81

# Enablement: There Is a Difference Between Claiming a Genus and Claiming the Use of a Genus



**Case Law:** *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*

"The asserted claims here are unlike the claims in Amgen and Baxalta, however, because ==they do not claim humanized anti-CGRP antagonist antibodies *themselves*; instead, they claim only the use of such antibodies for the different, limited purpose of treating headache==."

*Teva*, 172 F.4th at 1380-81

# Enablement: Comparing *Teva* and *Scale*

**Teva's claim**

17. A method for reducing incidence of or treating headache in a human, comprising administering to the human an effective amount of an anti-CGRP antagonist antibody, wherein said anti-CGRP antagonist antibody is a human monoclonal antibody or a humanized monoclonal antibody

**Fuetterer's claim**

38. A rubber stock for producing tire treads including as the base portion a major proportion of rubber, a sufficient amount of a vulcanizing agent to vulcanize the rubber … and an inorganic salt that is capable of holding a mixture of said carbohydrate and protein in colloidal suspension in water.

**Nolan's claim**

1. A kit for split-pool barcoding target molecules that are in or on cells or cell organelles, comprising:
   (i) at least two sets of assayable polymer subunit (APS) oligonucleotides …

5. …wherein the APS oligonucleotides of at least one of the sets of APS oligonucleotides comprise a unique binding agent (UBA).

# Reargument Is Required

## Court's new claim construction of 752 Patent, if sustained, confines UBAs to the structure of APS oligonucleotides and creates new issue of fact for trial

- **Intrinsic evidence, including Parse's citations, support A-B-C-D modularity**

- **Court's A-B-C construction reads out all preferred embodiments**

- **Parse failed to identify any embodiment that meets the claim language and is not enabled**

# Court's Order on Law of "Multi-element Inventions"

disclose or enable unclaimed elements")) During oral argument on the Motion, at times Plaintiff's counsel suggested that this is what Plaintiff was driving at. There, counsel addressed a potential written description or enablement challenge: "[F]or a multi-element invention, a claim to an invention comprising A, B, and C will include within its scope an embodiment which is A, B, C, and D . . . [b]ut in order to [describe or] enable the claim to A, B, and C, you do not need to describe [or enable] that optional feature." (Tr. at 131; *see also id.* at 132) The Court certainly agrees with Plaintiff that this is the law. But in such a scenario, a party *would* need to describe and enable the invention as to the full scope of what *is* claimed—i.e., to the apparatus comprising A, B, and C. (Tr. at 110) And here, in light of the Court's claim construction analysis above, the UBA referenced in claim 5 is not something that was absent from claim 1 and was only separately added by the dependent claim. Instead, a UBA is a *part of* what *is encompassed* within the scope of the actual elements listed in claim 1 (i.e., a part of the "A, B, and C" of claim 1). And so the patent must describe and enable a kit that contains a set of APS oligonucleotides that include a UBA. (D.I. 395 at 1; Tr. at 148)

D.I. 466 (Mem. Op.) at 25

# Court's Order on APSs and UBAs in 752 Patent Claims

### 1. The Parties' Arguments

As to this patent, Defendant's multi-step argument for invalidity goes as follows:

(1) The asserted claims of the '752 patent encompass UBAs.;

(2) The patent's specification together with the Court's prior claim construction explains that UBAs may be, among other things, antibodies and aptamers, and that they have the ability to specifically bind to target molecules.;

(3) Therefore, UBAs that are antibodies and aptamers and that have the above-referenced functionality are within the full scope of the claims at issue.; but

(4) The '752 patent "is fatally lacking written description for the full scope of UBAs that are capable of binding to the full scope of targets within or on the full scope of cells" and "fails to comport with the enablement requirement given the vast breadth of the asserted claims and their functional requirements."

D.I. 466 (Mem. Op.) at 9

SCALE biosciences    34

# Court's Order on APSs and UBAs in 752 Patent Claims

The Court sides with Defendant here. It explains why below.

Pursuant to the claim construction principles set out above, claim 5 should be read to narrow what can make up the "APS oligonucleotides" referenced therein (i.e., of at least one of the sets of APS oligonucleotides recited in claim 1). It does so by specifying that these APS oligonucleotides "comprise a UBA[.]" ('752 patent, col. 58:15-16) In other words, the way someone typically reading a patent like this would understand claims 1 and 5, read together, is that: (1) claim 1's reference to a set of "APS oligonucleotides" is a reference to an item that can encompass within its scope a UBA; and (2) that claim 5 is now requiring that at least one set of such "APS oligonucleotides" *must* include a UBA. (Tr. at 99-100; D.I. 325 at 5)

D.I. 466 (Mem. Op.) at 15

SCALE biosciences    35

# Court's Order on APSs and UBAs in 752 Patent Claims

Instead, during oral argument, in opposing the conclusion discussed above, Plaintiff's counsel asserted that "APS oligonucleotides" could not include a "UBA" because the two terms have been construed to perform different functions. (Tr. at 137-38) That is, counsel stated that the function of APS oligonucleotides is to "convey information" or to "carr[y] a packet of information that helps you determine where a target molecule came from" while a UBA's function is to "bind[] to one or more target molecules." (*Id.* at 137) But so far as the Court can tell, even in light of this, there is no reason why a "UBA" couldn't fall within the scope of what a set of "APS oligonucleotides" can be understood to refer to in the asserted kit claims of the '752 patent. Both UBAs and APS oligonucleotides can be the same type of molecule. (*Compare* '752 patent, col. 19:25-27 ("In some embodiments, the UBA is an aptamer. Aptamers include nucleic acid aptamers (i.e., single-stranded DNA molecules[).") *with id.*, col. 37:31 ("The APS can be specific strands of DNA[.]")) So, it could be the case that while "APS oligonucleotides" refers to an item that conveys or provides a package of information, that term—as the patentee used it in claim 1 and claim 5—is *also* broad enough to include within its scope a component (i.e., a UBA) that permits the execution of an *additional* function (i.e., binding).

D.I. 466 (Mem. Op.) at 17-18

# Court Rules the Specification Must Describe Antibodies and Aptamers Capable of Performing the Requisite Functionality

Having now set out the contours of the *In re Entresto* decision, the Court turns back to

Plaintiff's argument about the opinion. That argument was difficult for the Court to

understand—both after reading it in Plaintiff's briefing and after hearing it during oral argument

on the Motion. But Plaintiff's argument appeared to include the following points:

- Plaintiff repeatedly asserted its view that the '752 patent does not need to fully describe and enable what the asserted claims "encompass" or "cover[]"; instead, it must fully describe and enable only the "invention defined by the limitation that those claims recite" or the "recited element[s]" of the asserted claims—i.e., "only what is 'claimed.'" (D.I. 366 at 3, 5-6, 8; Tr. at 120, 127, 129, 156-57)

- What does that distinction mean, in practice, to Plaintiff? Plaintiff's counsel further (somewhat confusingly, in the Court's view) described Plaintiff's position as meaning that "the invention claimed in [c]laim 1 must be enabled for its full scope, but the specification does not have to enable or describe everything that falls within the scope of [c]laim 1. In other words, everything that would infringe [c]laim 1." (Tr. at 116)

D.I. 466 (Mem. Op.) at 23-24

# 752 Patent Claim 5



5. The kit of claim 1, wherein the APS oligonucleotides of at least one of the sets of APS oligonucleotides comprise a unique binding agent (UBA).

752 Patent at 58:14-16

# UBAs and APSs Depicted Consistently as Modular



Figure 2

752 Patent at Fig. 2

# Parse Asserts UBAs and APSs Need Not Be Modular

More importantly, the specification makes clear that UBAs *need not* be "modular, separable, and joinable things." *Contra* Mot. at 5. As the Court correctly observed, "[b]oth UBAs and APS oligonucleotides can be the same type of molecule," such as an aptamer. *See* D.I. 466 at 17–18 (citing '752 patent, 19:25–27, 37:31). Additionally, the specification is replete with examples of UBAs *that are part* of APSs. For example, the patent recites that, "[i]n certain embodiments, the UBAs comprise an identity portion or *at least part of an identity portion*, for example, . . . a COB." '752 patent, 17:57–59 (emphasis added). A COB, in turn, may be "generated with the APSs from the ordered set of APSs." *Id.*, 7:41–43. Thus, a UBA may comprise the APSs that make up a COB.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 7

SCALE biosciences    40

# Parse Asserts UBAs and APSs Need Not Be Modular

More importantly, the specification makes clear that UBAs *need not* be "modular, separable, and joinable things." *Contra* Mot. at 5. As the Court correctly observed, "[b]oth UBAs and APS oligonucleotides can be the same type of molecule," such as an aptamer. *See* D.I. 466 at 17–18 (citing '752 patent, 19:25–27, 37:31). Additionally, the specification is replete with examples of UBAs *that are part* of APSs. For example, the patent recites that, "[i]n certain embodiments, the UBAs comprise an identity portion or *at least part of an identity portion*, for example, . . . a COB." '752 patent, 17:57–59 (emphasis added). A COB, in turn, may be "generated with the APSs from the ordered set of APSs." *Id.*, 7:41–43. Thus, a UBA may comprise the APSs that make up a COB.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 7

# Specification Confirms Modularity

- Specification reference to aptamers made of nucleic acids does not contradict modularity

In some embodiments, the UBA is an aptamer. Aptamers include nucleic acid aptamers (i.e., single-stranded DNA molecules or single-stranded RNA molecules) and peptide

The APS can be specific strands of DNA or DNA-mimics.

752 Patent at 19:25-27, 37:31

# Parse Asserts UBAs and APSs Need Not Be Modular

More importantly, the specification makes clear that UBAs *need not* be "modular, separable, and joinable things." *Contra* Mot. at 5. As the Court correctly observed, "[b]oth UBAs and APS oligonucleotides can be the same type of molecule," such as an aptamer. *See* D.I. 466 at 17–18 (citing '752 patent, 19:25–27, 37:31). Additionally, the specification is replete with examples of UBAs *that are part* of APSs. For example, the patent recites that, "[i]n certain embodiments, the UBAs comprise an identity portion or *at least part of an identity portion*, for example, . . . a COB." '752 patent, 17:57–59 (emphasis added). A COB, in turn, may be "generated with the APSs from the ordered set of APSs." *Id.*, 7:41–43. Thus, a UBA may comprise the APSs that make up a COB.

# Specification Confirms Modularity

UBA can have
two distinct portions:

1.  "reaction portion" (binding)

2.  "identity portion" (ESB or COB)

> UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like.
>
> In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. In certain

> or extension via polymerization. In some embodiments, a cell origination barcode (COB) is generated with the APSs from the ordered set of APSs. In some embodiments, each

752 Patent at 17:49-59, 7:41-43

# Specification Confirms Modularity

Either the APSs are within the UBA (rather than vice versa) or "comprise" here means "further comprise"

UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like. In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. In certain

or extension via polymerization. In some embodiments, a cell origination barcode (COB) is generated with the APSs from the ordered set of APSs. In some embodiments, each

752 Patent at 17:49-59; 7:41-43

SCALE biosciences    45

# Parse Asserts UBAs and APSs Need Not Be Modular

More importantly, the specification makes clear that UBAs *need not* be "modular, separable, and joinable things." *Contra* Mot. at 5. As the Court correctly observed, "[b]oth UBAs and APS oligonucleotides can be the same type of molecule," such as an aptamer. *See* D.I. 466 at 17–18 (citing '752 patent, 19:25–27, 37:31). Additionally, the specification is replete with examples of UBAs *that are part* of APSs. For example, the patent recites that, "[i]n certain embodiments, the UBAs comprise an identity portion or *at least part of an identity portion*, for example, . . . a COB." '752 patent, 17:57–59 (emphasis added). A COB, in turn, may be "generated with the APSs from the ordered set of APSs." *Id.*, 7:41–43. Thus, a UBA may comprise the APSs that make up a COB.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 7

46

# Parse's Description of Attaching Antibodies Confirms Modularity

And the patent tells one precisely how to attach antibodies and aptamers to the internal distinguishing nucleic acid sequence of an APS. It provides that "[m]ethods to attach nucleic acids to antibodies are known in the art," and that "[a]ny suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention." *Id.*, 19:1–4. The specification identifies at least a handful of such methods. *See id.*, 19:4–24. Similarly, the specification informs that UBA aptamers, which can bind to targets "in a sequence-specific, a conformation-specific manner, or both" can also be attached to an APS's internal distinguishing nucleic acid sequence. *Id.*, 17:49–56. Attaching an antibody or aptamer along this sequence would not upset its structure and thus would fall within the scope of what is claimed in claim 1. *Id.*, 57:50–58:3.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 9

# Specification Confirms Modularity

- Attaching confirms modularity and does not suggest a UBA <u>within</u> an APS oligonucleotide

ESB. Methods to attach nucleic acids to antibodies are known in the art. Any suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention. The antibodies described herein can be attached to a

UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like. In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. In certain

752 Patent at 19:1-4, 17:49-59

48

# Parse's Description of Attaching Antibodies Confirms Modularity

And the patent tells one precisely how to attach antibodies and aptamers to the internal distinguishing nucleic acid sequence of an APS. It provides that "[m]ethods to attach nucleic acids to antibodies are known in the art," and that "[a]ny suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention." *Id.*, 19:1–4. The specification identifies at least a handful of such methods. *See id.*, 19:4–24. Similarly, the specification informs that UBA aptamers, which can bind to targets "in a sequence-specific, a conformation-specific manner, or both" can also be attached to an APS's internal distinguishing nucleic acid sequence. *Id.*, 17:49–56. Attaching an antibody or aptamer along this sequence would not upset its structure and thus would fall within the scope of what is claimed in claim 1. *Id.*, 57:50–58:3.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 9

# Specification Confirms Modularity

- Specification describes two separable portions, not an "identity" portion that also functions as a "reaction" portion

UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like. In certain embodiments, the UBAs comprise an identity portion or at least part of an identity portion, for example, an ESB, a COB, an ESB and/or a linker oligo. In certain

752 Patent at 17:49-59

# Parse Has No Support For Internal Attachment of UBAs

And the patent tells one precisely how to attach antibodies and aptamers to the internal distinguishing nucleic acid sequence of an APS. It provides that "[m]ethods to attach nucleic acids to antibodies are known in the art," and that "[a]ny suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention." *Id.*, 19:1–4. The specification identifies at least a handful of such methods. *See id.*, 19:4–24. Similarly, the specification informs that UBA aptamers, which can bind to targets "in a sequence-specific, a conformation-specific manner, or both" can also be attached to an APS's internal distinguishing nucleic acid sequence. *Id.*, 17:49–56. Attaching an antibody or aptamer along this sequence would not upset its structure and thus would fall within the scope of what is claimed in claim 1. *Id.*, 57:50–58:3.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 9

SCALE biosciences 51

# Claim Construction

- **The parties' specification cites confirm the invention of the 752 Patent claims is in A, B, C (claim 1), D (claim 5) format**

  - Antibodies and aptamers attach to COB/APS oligonucleotides but are not part of them
  - UBAs may comprise APSs, not the other way around

- **Parse has not identified any specification disclosure of a UBA <u>within</u> an APS oligonucleotide**

# Claims Should Be Construed to Align With the Description of the Invention

**Case Law:** *GlaxoSmithKline v. Glenmark Pharms*

"In addition to the words of the Claims, the Court should look to other intrinsic evidence. For example, the Court should analyze the patent specification, which may reveal a special definition given to a claim term that differs from the meaning that term would otherwise possess. In that case, the inventor's lexicography governs. Even if the specification does not contain a special definition of the term at issue, it is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the Single best guide to the meaning of a disputed term.

* * *

[C]ourts should keep in mind that the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. 14-877-LPS-CJB, 2017 WL 8948972, at *3-4 (D. Del. May 24, 2017)

# Two Potential Outcomes on Claim Construction

**1** **Where claims are in A, B, C (claim 1), D (claim 5) format, element D need not be described or enabled in claim 1**

**2** **If a UBA were <u>within</u> an APS oligonucleotide (part C') within the 3'-5' structure of claim 1, Parse must identify non-enabled embodiments**

# Court Ordered that "D" in an "A, B, C, D" Dependent Claim Need Not Be Described or Enabled in Independent Claim

disclose or enable unclaimed elements")) During oral argument on the Motion, at times Plaintiff's counsel suggested that this is what Plaintiff was driving at. There, counsel addressed a potential written description or enablement challenge: "[F]or a multi-element invention, a claim to an invention comprising A, B, and C will include within its scope an embodiment which is A, B, C, and D . . . [b]ut in order to [describe or] enable the claim to A, B, and C, you do not need to describe [or enable] that optional feature." (Tr. at 131; *see also id.* at 132) The Court certainly agrees with Plaintiff that this is the law. But in such a scenario, a party *would* need to describe and enable the invention as to the full scope of what *is* claimed—i.e., to the apparatus comprising A, B, and C. (Tr. at 110) And here, in light of the Court's claim construction analysis above, the UBA referenced in claim 5 is not something that was absent from claim 1 and was only separately added by the dependent claim. Instead, a UBA is a *part of* what *is* *encompassed* within the scope of the actual elements listed in claim 1 (i.e., a part of the "A, B, and C" of claim 1). And so the patent must describe and enable a kit that contains a set of APS oligonucleotides that include a UBA. (D.I. 395 at 1; Tr. at 148)

D.I. 466 (Mem. Op.) at 25

SCALE biosciences  55

## Under Court's New A, B, C Claim Construction Reargument Is Needed to Address Lack of SJ Showing on Section 112

- **Neither Parse nor Parse's expert identifies an embodiment where a UBA is <u>within</u> an APS oligonucleotide**

---

- **No summary judgment record on whether any A-B-C embodiment is not enabled or not described**

# 752 Patent Claim 1



1. A kit for split-pool barcoding target molecules that are in or on cells or cell organelles, comprising:

(i) at least two sets of assayable polymer subunit (APS) oligonucleotides, wherein each set comprises at least 10 APS oligonucleotides that each comprise:

a 5′ end sequence that is common to the APS oligonucleotides in the set,

a 3′ end sequence that is common to the APS oligonucleotides in the set, and

an internal sequence that distinguishes the APS oligonucleotides in the set from one another, and

(ii) one or more linking oligonucleotides, wherein a linking oligonucleotide is complementary to the 5′ end sequence of the APS oligonucleotides of one set and the 3′ end sequence of the APS oligonucleotides of another set,

wherein the APS oligonucleotides from different sets are configured to link together in an ordered fashion in the presence of the one or more linking oligonucleotides to form all or part of a cell or organelle origination barcode.

752 Patent at 57:50-58:3

SCALE biosciences    57

# Parse Argues Aptamers Are Not Described or Enabled

And the patent tells one precisely how to attach antibodies and aptamers to the internal distinguishing nucleic acid sequence of an APS. It provides that "[m]ethods to attach nucleic acids to antibodies are known in the art," and that "[a]ny suitable method to attach nucleic acids to antibodies is encompassed in the methods of the invention." *Id.*, 19:1–4. The specification identifies at least a handful of such methods. *See id.*, 19:4–24. Similarly, the specification informs that UBA aptamers, which can bind to targets "in a sequence-specific, a conformation-specific manner, or both" can also be attached to an APS's internal distinguishing nucleic acid sequence. *Id.*, 17:49–56. Attaching an antibody or aptamer along this sequence would not upset its structure and thus would fall within the scope of what is claimed in claim 1. *Id.*, 57:50–58:3.

D.I. 483 (Parse's Opp'n to Pls.' Mot. for Reargument) at 9

# Parse Argues Aptamers Are Not Described or Enabled

UBAs comprise at least one reaction portion that allow them to bind to or interact with at least one target molecule, at least one part of at least one target molecule, at least one target molecule surrogate, at least part of a target molecule surrogate, or combinations thereof; typically in a sequence-specific, a confirmation-specific manner, or both; for example but not limited to antigen-antibody binding, aptamer-target binding, and the like.

752 Patent at 17:49-56

244.    Dr. Pachter alleges that Nolan 2012 "does not provide sufficient guidance for selecting a UBA from "the group consisting of antibody, peptide, aptamer, peptoid and nucleic acid" for the full scope of nucleic acid targets. ¶ 178 (citing '256 Patent, 7:28-29). I disagree with Dr. Pachter. The term "UBA" is not a technical term of art and a POSA would understand it as shorthand terminology used to identify the concepts that the term encompasses. For example,

Sims Rebuttal Rpt.

# *McRO*: Non-Enablement Requires Identification of Non-Enabled Embodiments Within the Claim



**Case Law:** *McRO, Inc. v. Bandai Namco Games*

Given our construction of the term "morph weight sets," however, both bones animation and the BALDI system are clearly "outside the scope of the claims" and are thus "irrelevant to enablement."

\* \* \*

Without bones animation and the BALDI process available as claim-covered techniques that must be enabled, the district court's reasoning is too abstract and too conclusory to support summary judgment.

\* \* \*

We see no reason in this case to depart from our usual requirement that the challenger identify specifics that are or may be within the claim but are not enabled. Specifics have always mattered.

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1103-04 (Fed. Cir. 2020)

# Parse's Waiver Argument

- **Parse asserts that arguments about enablement of UBAs <u>within</u> APS oligonucleotides are "waived"**

---

- **Issue was never litigated**

  - Claim construction limiting APS oligonucleotides to those that function as UBAs was never proposed

  - Parse (with the burden of proof) relied solely on antibodies and aptamers in A, B, C, D configurations

# Parse Previously Argued APSs Are Solely Subunits of COBs

Similarly, the specification ('442 Patent at Fig. 2) shows that APSs are the sub-units that are linked together to make up COBs:



Parse's construction conveys the meaning and function of an APS, as well as its relationship to a COB, as shown in the figure above. Specifically, as shown in the figure, the APSs are (1) "polymer subunits," which can also be described as "small molecules" (indicated by individual hexagon shapes), (2) the APS units can be "linked to each other" (indicated by overlapping hexagon shapes), and (3) the APS units are "within a COB" (indicated with COB label and brackets). Puglisi Oct. 13 Decl. ¶65. Parse's proposed construction therefore reflects the specification's depiction of APSs.[11]

D.I. 101 (The Parties' Joint Claim Construction Br.) at 40

62

# Parse Previously Argued UBAs, ESBs, and COBs Are Distinct

unstated, Dr. Sims implies that ESBs are not necessary if COBs can also be unique. Again, Dr. Sims cannot be correct because the specification identifies disparate purposes for ESBs and COBs: ESBs encode target molecules, whereas COBs indicate *cell of origin*." Ex. 1, 16:49-52 (emphasis added). Both are unique by design to accomplish different tasks; nothing in here suggests COBs can simultaneously function as ESBs. Ex. 19, ¶ 146. And, again, the names given to these molecule reflect concepts: all that matter is the functions each molecule provides.

*Third*, Dr. Sims indicates that the '752 patent does not suffer the same flaw because its claims are not directed to "target molecules" but instead kits. Ex. 13, ¶ 498. But, as explained in Section II.D of MSJ#3, the preamble of these claims is limiting, which means the claims recite and the specification must describe "[a] kit for split-pool barcoding target molecules that are in or on cells or cell organelles." Ex. 4 ('752 patent). Again, the specification discloses only one way of labeling target molecules, which is to use both UBAs *and* ESBs. The kit claims omit both features, and fail under § 112 for the same reasons as every other asserted claim.

D.I. 325 (Countercl. Pls.' Omnibus Opening Br. in Supp. of Mots. for Summ. J. and Mot. to Exclude Expert Ops. and Test.) at 22

SCALE biosciences    63